UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MCDONALD'S CORPORATION,                         :
                                                :      **MEMORANDUM AND ORDER**
                                    Plaintiff,  :      19-CV-06471 (DLI) (ST)
                                                :
             -against-                          :
                                                :
VANDERBILT ATLANTIC HOLDINGS LLC,               :
                                                :
                                    Defendant.  :
---------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On November 15, 2019, McDonald's Corporation ("Plaintiff") filed this action against Vanderbilt Atlantic Holdings LLC ("Defendant") seeking a declaratory judgment that Defendant has not cooperated in good faith with the dispute resolution procedure for calculating Plaintiff's rent obligations as set forth in the parties' lease agreement. *See*, Complaint ("Compl."), Dkt. Entry No. 1, at ¶¶ 75-84. Plaintiff also seeks a declaratory judgment stating the role of a third appraiser, if one is necessary, in the parties' dispute resolution procedure. *Id.* ¶¶ 85-94. Plaintiff, a citizen of Delaware and Illinois, properly invoked this Court's diversity jurisdiction pursuant to 28 U.S.C. 1332(a)(1) as Defendant is a citizen of New York, and the jurisdictional threshold amount is satisfied.

Defendant moves to compel arbitration of Plaintiff's claims under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, and to dismiss or stay the action pending arbitration. *See*, Defendant's Motion to Compel Arbitration and to Dismiss or Stay the Action ("Def.'s Mot."), Dkt. Entry No. 8-1. Plaintiff opposed the motion. *See*, Plf.'s Opp'n to Def.'s Mot. ("Plf.'s Opp'n"), Dkt. Entry No. 10. Defendant replied. *See*, Def.'s Rep. in Supp. of Def.'s Mot. ("Def.'s Rep."), Dkt. Entry No. 12. For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

On March 18, 1998, Plaintiff entered into a twenty-year lease agreement with Anthony M. Musto, a landlord, as the tenant of a parcel of real property. Compl. ¶¶ 12, 17. Plaintiff constructed a McDonald's restaurant on the property located at 840 Atlantic Avenue in Brooklyn, New York. *Id.* ¶¶ 12, 16. Plaintiff's lease term ran from April 9, 1999 through April 8, 2019 and, upon its expiration, it automatically was extended for four successive five-year periods through April 8, 2039. *Id.* ¶¶ 17, 21. On November 30, 2017, Defendant assumed all of the rights, interests, and obligations of the landlord under the lease. *Id.* ¶ 26.

On April 8, 2019, Plaintiff's lease term expired and automatically was extended for the first five-year period. *Id.* ¶¶ 20, 23. The lease provided that rent for the first five-year extension period was to be calculated as specified in the Option Rent Addendum ("ORA"). *Id.* ¶ 21. Under the addendum's terms, Plaintiff was to pay a monthly rent of $16,032.58 or an annual rent equal to 80% of the fair market value ("FMV") of the premises as of April 8, 2019, as determined by written agreement of the parties. *Id.* ¶ 25; *See*, ORA, Exhibit C to Def.'s Mot., Dkt. Entry No. 8-5. Once the parties agree to the rent calculation for the first five-year extension period, every five years the rent will increase 15% through the end of the lease term on April 8, 2039. Compl. ¶ 25. If the parties disagree about the calculation of the property's FMV, the addendum contains a dispute resolution procedure that is the subject of Defendant's motion.

The procedure provides that, if the parties cannot reach an agreement about the property's FMV, they each shall appoint a "qualified MAI [Member Appraisal Institute] or SREA [Society of Real Estate Appraisers] real estate appraiser[] with five years [of] experience in appraising commercial property in the county in which the [property] is located" to estimate the FMV. ORA

at 2. The parties agreed to the following procedure to reach a final and binding decision once the appraisers have calculated their estimates in a letter opinion of value:

> "If, within 20 days from their appointment, the two appraisers can agree to the FMV not differing by more than 15%, then an average of the two appraisals shall be used for the Fair Market Rental Value of the Demised Premises. If the two appraisals differ by more than 15%, then the two appraisers shall appoint a third appraiser chosen from a list of three appraisers designated by the National Headquarters of the American Institute of Real Estate Appraisers or, if it is no longer in existence, a similar or successor organization. The three appraisers so appointed shall then, within 20 days of the date the third appraiser is appointed, estimate, by means of a letter opinion of value, the FMV. The decisions of the appraisers, or a majority of them, shall be binding upon the parties. If the appraisers, or a majority of them, cannot agree on the FMV, it shall be determined by adding all three estimates and dividing the total of all three estimates by the number three."

*Id*. Notably, the parties agreed that, if either party "fails to cooperate in any way so that the process described above cannot be completed prior to 120 days of the expiration of the primary term of this Lease, the FMV of the one appraiser chosen by the cooperating party shall be used to determine the rent during the extension periods." *Id.* at 3.

The addendum requires the appraisers to utilize specific methods for calculating their appraisals, including a "standard market data approach" for valuing vacant land. *Id.* The appraisers are directed to adjust appropriately all comparable leases and prepare written reports indicating the reasons for the adjustments made. *Id.* If adequate comparable leases are not available, the appraisers are directed to use a "land residual technique," as defined by the American Institute of Real Estate Appraisers, calculating real estate income based on economic rental for hypothetical improvements, not business income. *Id.*

The parties disagreed about the property's FMV and initiated the dispute resolution procedure. Compl. ¶ 35. They each appointed an appraiser to estimate the property's FMV. Plaintiff's appraiser valued the property at $350,000, whereas Defendant's appraiser valued the property at $1,348,000, amounting to a difference of more than 15% in their respective FMV

3

estimates. *Id.* ¶ 41. Rather than proceeding to the next stage whereby the appraisers appoint a third appraiser and the appraisers make a final decision as to the FMV, Plaintiff filed this action.

Plaintiff seeks a declaratory judgment that Defendant did not cooperate in good faith with the appraisal process for two reasons. First, Plaintiff alleges that Defendant's appraiser did not utilize the valuation methods the parties agreed upon in the lease for calculating FMV. *Id.* ¶¶ 43-47, 61-65, 68. Plaintiff claims that, despite Plaintiff's requests, Defendant has refused to direct its appraiser to comply with the valuation methods set forth in the lease. *Id.* ¶¶ 51-52, 57, 60-61, 72-73. Second, Plaintiff alleges that Defendant refuses to allow the parties' appraisers to communicate with a third appraiser and work collaboratively to prepare a single letter opinion of value, if the parties reach that stage. *Id.* ¶¶ 54, 79. Plaintiff seeks a declaratory judgment, if necessary, that the three appraisers may work together for that purpose. *Id.* ¶ 94.

Defendant argues that the dispute resolution procedure in the ORA is a mandatory arbitration clause under the FAA that applies to Plaintiff's claims, and the appraisers should determine the parameters of the appraisal process and whether the parties participated properly. *See*, Def.'s Mot. at 5. Plaintiff contends that the parties did not intend for the appraisers to decide the role of the third appraiser or whether a party has failed to cooperate in good faith with the appraisal process and, thus, the arbitration clause does not apply to Plaintiff's claims. *See*, Plf.'s Opp'n at 26, 29.

## DISCUSSION

"The Federal Arbitration Act ('FAA') creates a body of federal substantive law of arbitrability applicable to arbitration agreements affecting interstate commerce." *Ragone v. Atlantic Video*, 595 F.3d 115, 121 (2d Cir. 2010) (internal citation, alteration, and quotation marks omitted). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration

4

agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). The Supreme Court "repeatedly [has] described the [FAA] as embodying a national policy favoring arbitration, and a liberal federal policy favoring arbitration agreements[.]" *Id.* at 346 (internal citations, alterations, and quotation marks omitted).

When a party seeks to compel arbitration under the FAA, the Court must engage in a four-step inquiry: "[f]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988). "In deciding motions to compel [arbitration], courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). This standard "requires a court to 'consider all relevant, admissible evidence submitted by the parties and contained in the pleadings[.]'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." *Id.*

The Court finds that the parties' lease agreement is a contract "involving commerce" under the FAA, and the parties agreed to arbitrate by utilizing a third appraiser to resolve disputes as to the FMV between the parties' appraisers. 9 U.S.C. § 2. An enforceable arbitration clause in a contract "clearly manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution." *McDonnell Douglas Fin. Corp.*, 858 F.2d at 830. The FMV appraisal process described in the lease's ORA is an enforceable arbitration clause within the

meaning of the FAA. The parties agreed to submit disputes about the calculation of the property's FMV to appraisers for a binding decision. *See*, *Milligan v. CCC Info. Servs., Inc.*, 920 F.3d 146, 152 (2d Cir. 2019) (agreement to submit disputes regarding "the amount of loss" in an insurance policy to appraisers for a binding decision "constitute[d] arbitration for purposes of the FAA").

The Court next must determine the scope of the parties' arbitration agreement. "Once it is determined that the parties to a contract have created an enforceable arbitration clause, then the policies inherent in the Federal Arbitration Act dictate that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability.'" *McDonnell Douglas Fin. Corp.*, 858 F.2d at 831 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). However, "federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope." *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir. 1977). "The scope of an arbitration clause, like any contract provision, is a question of the intent of the parties." *S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 193 (2d Cir. 1984).

"To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a three-part inquiry. First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001). "Where the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" *Id.* (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)).

If the arbitration clause is narrow, "the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* (quoting *Rochdale Vill., Inc. v. Pub. Serv. Emps. Union*, 605 F.2d 1290, 1295 (2d Cir. 1979)). "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Id.* "[A] narrow arbitration clause must be construed in light of the presumption in favor of arbitration, [but] the court is not free to disregard the explicit boundaries set by the agreement between the parties." *Chevron U.S.A., Inc. v. Consolidated Edison Co.*, 872 F.2d 534, 537-38 (2d Cir. 1989).

Plaintiff maintains that the parties' arbitration clause is narrow and grants the appraisers the authority only to appraise the value of the property, in accordance with the terms of the lease. *See*, Plf.'s Opp'n at 23-24. Defendant contends that the arbitration clause is broad and applies to "all disputes about the renewal rent." *See*, Def.'s Rep. at 6. The Court finds that the arbitration clause is a narrow one. Contrary to Defendant's contention, the clause does not apply to "all disputes" about the renewal rent and does not contain such broad language. The clause applies specifically to disagreements between the parties regarding their respective estimates of the property's FMV.

This fact is reflected in the language of the clause. If the parties disagreed about the FMV, each agreed to appoint an appraiser who would provide an "estimate" of the FMV by means of "a letter opinion of value." ORA at 2. If the appraisers' estimates differ by more than 15%, the two appraisers appoint a third appraiser, and the three appraisers provide an "estimate," also by means of "a letter opinion of value." *Id.* If the appraisers, or a majority of them, cannot agree on the FMV, the FMV is determined by "adding all three estimates" and "dividing the total" by three. *Id.*

7

Therefore, the clause specifically creates a method for the parties to resolve disagreements about their respective estimates of the FMV, resulting in one final number that binds the parties.

Having found that the arbitration clause is narrow, the Court now must determine whether the plaintiff's claims fall within the purview of the clause. Plaintiff seeks a declaratory judgment that Defendant did not cooperate in good faith with the appraisal process for two reasons. First, Plaintiff alleges that the methodology used by Defendant's appraiser to calculate the FMV did not comport with the terms of the parties' lease. Compl. ¶¶ 43-47, 61-65, 68. In addition, despite Plaintiff's requests, Defendant refused to direct its appraiser to comply with the valuation methods agreed to by the parties in their lease. *Id.* ¶¶ 51-52, 57, 60-61, 72-73. Second, Plaintiff alleges that Defendant refuses to allow the parties' appraisers to communicate and work collaboratively with a third appraiser, if the parties reach that stage, to prepare a single letter opinion of value. *Id.* ¶¶ 54, 79. Plaintiff seeks a declaratory judgment, if necessary, stating that the three appraisers may work together for that purpose. *Id.* ¶ 94.

The Court finds that these claims fall outside of the scope of the narrow arbitration clause and the parties did not intend to submit them to the appraisers. First, the parties clearly defined and limited the appraisers' responsibilities. The appraisers are to provide "estimate[s]" of the FMV in "letter opinion[s] of value," not opinions about the parties' compliance with the terms of the lease or explanations regarding the third appraiser's role. ORA at 2. Plaintiff's claims cannot be resolved by an estimate of the three appraisers in a letter opinion of value or by adding the three appraisers' estimates and dividing the total by three.

Second, the arbitrators are real estate appraisers. They are not equipped to address claims concerning a party's good faith or the role of the third appraiser, which is a matter of contract interpretation. *See*, *McDonnell Douglas Fin. Corp.*, 858 F.2d at 832 (finding arbitrator's expertise

"significant" when determining scope of arbitration agreement). In *McDonnell Douglas*, for example, the Second Circuit found that the parties did not intend to submit their disputes about a party's good faith to a tax counsel for arbitration. *Id.* The Court explained that the tax counsel the parties selected was not "an arbitrator of more general expertise" and "[h]ad the parties intended to submit all issues regarding the [defendant's] good faith to an arbitrator, we do not believe that they would have chosen a tax counsel." *Id.* at 832-33. Similarly, here, the real estate appraisers do not have "general expertise[;]" rather they have specialized expertise in appraising commercial properties. *Id.* at 832; ORA at 2. If the parties intended to submit disputes about a party's good faith or the role of the third appraiser to arbitration, they would not have selected real estate appraisers as their arbitrators.

Defendant argues that Plaintiff's disagreement with its appraiser's methodologies is a dispute about the FMV calculation, and, therefore, the arbitration clause applies. *See*, Def.'s Rep. at 9-12. Defendant misunderstands the nature of Plaintiff's claim. Plaintiff does not dispute the FMV calculated by Defendant's appraiser *per se*. Rather, Plaintiff argues that Defendant failed to direct its appraiser to comply with the valuation methods set forth in the parties' lease agreement, despite Plaintiff's requests, and, consequently, Defendant's appraisal *should not be used*. Compl. ¶¶ 71, 84. Plaintiff's claim concerns Defendant's good faith in the appraisal process, not the FMV calculated by Defendant's appraiser alone.

The Court finds *Xl Capital Ltd. v. Kronenberg III*, 2004 WL 2101952 (S.D.N.Y. Sept. 20, 2004), *aff'd*, 145 F. App'x 384 (2d Cir. 2005) instructive concerning this distinction. In that case, the parties agreed to submit disputes arising under a stock purchase agreement to a panel of three arbitrators as well as specific disputes concerning the calculation of an earned payout amount to an accounting firm. *Id.* at 1. The petitioner provided to the respondents a worksheet calculating

9

the earned payout amount, to which the respondents objected asserting claims of fraud, deceitful conduct, negligent misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing. *Id.* at 2. The respondents wanted their claims submitted to the arbitrators, whereas the petitioner argued that they should be decided by the accounting firm. *Id.*

The Court found that the respondents' arbitration demand "did not challenge the [w]orksheet as a matter of accounting *per se*" but asserted that petitioner engaged in "unlawful conduct . . . which had the effect of reducing the [e]arned [p]ayout [a]mount." *Id.* Thus, the Court concluded that respondents' claims were "not, in their essence, accounting issues," and denied petitioner's motion to compel respondents to submit their claims to the accounting firm. *Id.* The Second Circuit affirmed and rejected petitioner's argument that the respondents' claims were simply "accounting issues in disguise[.]" 145 F. App'x at 385. The Circuit explained that respondents' claims were "not the calculation errors themselves," but concerned the "operative acts" performed by the petitioner, which led to a lower earn out payment. *Id.* Similarly, here, Plaintiff's claim is not a disguised disagreement about Defendant's FMV calculation. Plaintiff's claim concerns Defendant's alleged refusal to direct its appraiser to comply with the valuation methods set forth in the lease which, if true, may invalidate the Defendant's appraisal.

Defendant relies on several cases from the Southern District of New York and this district to support its argument that Plaintiff's claim is arbitrable. *See*, Def.'s Rep. at 9-11 (citing *Duafala v. Globecomm Sys. Inc.*, 91 F. Supp.3d 330, 337 (E.D.N.Y. 2015); *E.S. Originals Inc. v. Totes Isotoner Corp.*, 734 F. Supp.2d 523, 532 (S.D.N.Y. 2010); *Luxottica Group S.p.A. v. Bausch & Lomb, Inc.*, 160 F. Supp.2d 552, 555 (S.D.N.Y. 2001); *Advanstar Comm., Inc. v. Beckley-Cardy, Inc.*, 1994 WL 176981, at *3 (S.D.N.Y. May 6, 1994)). Aside from not being binding precedent as decisions from courts of concurrent jurisdiction, Defendant's reliance on these cases is

misplaced. The parties' arbitration clause here differs from the arbitration clauses in these cases in a critical respect. Specifically, the parties here agreed that, if one party fails to cooperate "in any way" with the appraisal process, "the FMV of the one appraiser chosen by the cooperating party *shall be used to determine the rent during the extension periods*." ORA at 3. (emphasis added).

The arbitration clause does not indicate who decides if a party has cooperated with the appraisal process, and Defendant argues that this decision should be left to the appraisers. *See*, Def.'s Mot. at 5. Common sense and logic dictates that this cannot be what the parties intended. When a party fails to cooperate, that party's appraisal is a nullity. The cooperating party's appraisal alone binds the parties and there is no need for a third appraiser. Thus, the parties could not have intended for the third appraiser to decide if a party has cooperated. If the parties intended for the appraisers to decide this question collectively, the third appraiser also would need to decide whether the cooperating party's appraisal controls. However, if the third appraiser decides that a party has not cooperated, the third appraiser's mandatory obligation to appraise the property's FMV would be obviated and rendered meaningless. *See*, ORA at 2; *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp.2d 616, 624 (S.D.N.Y. 2010) ("[P]arties are not free to interpret a contract in a way that frustrates the purpose of that contract or that makes any provision of the contract meaningless."). Thus, the clause is not susceptible to Defendant's interpretation.

As the arbitration clause does not encompass Plaintiff's claims regarding the Defendant's lack of good faith in the appraisal process and the role of the third appraiser, Defendant's motion to compel arbitration and to dismiss or stay the action pending arbitration is denied.

## **CONCLUSION**

For the reasons set forth above, Defendant's motion to compel arbitration and to dismiss or stay this action pending arbitration is denied.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2020

/s/
DORA L. IRIZARRY
United States District Judge