UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MCDONALD'S CORPORATION,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　　　　　　Plaintiff,　　　　:　　**19-CV-06471 (DLI) (ST)**
　　　　　　　　　　　　　　　　　　　　:
　　　　-against-　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
VANDERBILT ATLANTIC HOLDINGS LLC,　 :
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendant.　　　:
---------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

On January 10, 2020, Vanderbilt Atlantic Holdings, LLC ("Defendant") moved to dismiss and compel arbitration of McDonald's Corporation's ("Plaintiff") claims in this landlord-tenant rent dispute. *See*, Dkt. Entry No. 8-1. On September 30, 2020, the Court denied Defendant's motion finding that Plaintiff's claims fell outside of the scope of the parties' arbitration agreement. *See*, Memorandum and Order ("M&O"), Dkt. Entry No. 22. On November 2, 2020, Defendant appealed this Court's decision to the United States Court of Appeals for the Second Circuit pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1)(C).[1] *See*, Dkt. Entry No. 25.

Defendant now moves to stay this action, including discovery, pending the Second Circuit's decision on its appeal. *See*, Def.'s Mot. to Stay ("Mot."), Dkt. Entry No. 37-1. Plaintiff opposed the motion. *See*, Plf.'s Opp'n to Mot. to Stay ("Opp'n"), Dkt. Entry No. 37-6. Defendant replied. *See*, Def.'s Rep. in Supp. of Mot. to Stay ("Rep."), Dkt. Entry No. 37-8. For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

The Court assumes the parties' familiarity with the facts underlying this action, which are

---

[1] The Court possesses subject matter jurisdiction while Defendant's appeal is pending as the Second Circuit has not stayed this action. *See*, *Motorola Credit Corp. v. Uzan*, 388 F. 3d 39, 53-54 (2d Cir. 2004).

summarized more fully in the Court's Memorandum and Order dated September 30, 2020. *See*, M&O at 2-4.

On March 18, 1998, Plaintiff entered into a twenty-year lease agreement with Anthony M. Musto, a landlord, as the tenant of a parcel of real property. *See*, Complaint ("Compl."), Dkt. Entry No. 1 at ¶¶ 12, 17. Plaintiff constructed a McDonald's restaurant on the property located at 840 Atlantic Avenue in Brooklyn, New York. *Id.* ¶¶ 12, 16. Plaintiff's lease term ran from April 9, 1999 through April 8, 2019 and, upon its expiration, it automatically was extended for four successive five-year periods through April 8, 2039. *Id.* ¶¶ 17, 21. On November 30, 2017, Defendant assumed the rights, interests, and obligations of the landlord under the lease. *Id.* ¶ 26.

On April 8, 2019, Plaintiff's lease term expired and automatically was extended for the first five-year period. *Id.* ¶¶ 20, 23. The lease provided that rent for the first five-year extension period was to be calculated as specified in the Option Rent Addendum ("ORA"). *Id.* ¶ 21. Under the addendum's terms, Plaintiff was to pay a monthly rent of $16,032.58 or an annual rent equal to 80% of the fair market value ("FMV") of the premises as of April 8, 2019, as determined by written agreement of the parties. *Id.* ¶ 25; ORA, Exhibit 1 to Compl., Dkt. Entry No. 1-1 at 31. Once the parties agree to the rent calculation for the first five-year extension period, every five years the rent will increase 15% through the end of the lease term on April 8, 2039. Compl. ¶ 25.

If the parties cannot reach a consensus about the property's FMV, they agreed to submit their dispute to real estate appraisers for binding arbitration. ORA at 31. Under the terms of their arbitration agreement, each party appoints an appraiser to "estimate" the FMV in a "letter opinion of value." *Id.* If the two appraisals differ by more than 15%, the two appraisers appoint a third appraiser, and the three appraisers provide an "estimate" of the FMV in a "letter opinion of value[.]" *Id.* The appraisers' collective or majority decision on the property's FMV binds the

2

parties. *Id.* If the appraisers or a majority cannot agree on the property's FMV, the FMV is determined by adding the three appraisers' estimates and dividing the total by three. *Id.* The arbitration agreement further provides that, if one of the parties "fails to cooperate in any way so that the process described [] cannot be completed prior to 120 days of the expiration of the primary term of this Lease, the FMV of the one appraiser chosen by the cooperating party shall be used to determine the rent during the extension periods." *Id.* at 32. The agreement does not identify who decides if a party has cooperated or what constitutes a failure to cooperate.

The parties could not agree about the property's FMV and opted to arbitrate their dispute. Compl. ¶ 35. Plaintiff's appraiser valued the property at $350,000, whereas Defendant's appraiser valued the property at $1,348,000, amounting to a difference of more than 15% in their respective FMV estimates. *Id.* ¶ 41. Instead of proceeding to the next stage whereby the appraisers appoint a third appraiser and the appraisers make a final decision as to the FMV, Plaintiff filed this action.

Plaintiff seeks a declaratory judgment that Defendant failed to cooperate with the appraisal process, and Defendant's appraisal consequently should not be used. *Id.* ¶¶ 75-84. Specifically, Defendant's appraiser used a valuation methodology that was not authorized by the parties in their lease or consistent with New York law. *Id.* ¶¶ 43-47, 62-63. Plaintiff claims that despite its repeated requests for Defendant to correct this issue, Defendant refused to direct its appraiser to comply with the valuation methods the parties agreed to in their lease. *Id.* ¶¶ 51-52, 57-61, 72-73. Plaintiff further alleges that Defendant refuses to allow the parties' appraisers to communicate with a third appraiser and work collaboratively to prepare a single letter opinion of value, if the parties reach that stage. *Id.* ¶¶ 54, 79. Plaintiff seeks a declaratory judgment, if necessary, that the three appraisers may work together for that purpose. *Id.* ¶ 94.

Defendant moved to compel arbitration of Plaintiff's claims. *See*, Dkt. Entry No. 8-1.

Defendant argued that the parties intended for the appraisers both to decide if a party had cooperated and to explain the parameters of the appraisal process. *Id.* at 5, 12, 17-19. Plaintiff responded that the parties did not intend for the appraisers to decide its claims, which require legal determinations from the Court. *See*, Dkt. Entry No. 10 at 6. The Court denied Defendant's motion, finding that Plaintiff's claims fell outside of the scope of the parties' arbitration agreement.

The Court explained that the parties agreed for the appraisers to provide "estimate[s]" of the FMV in "letter opinion[s] of value," not opinions about a party's cooperation with the appraisal process or explanations regarding the third appraiser's role. M&O at 8. The arbitration agreement also was not susceptible to Defendant's interpretation. When a party fails to cooperate, that party's appraisal cannot be used. *Id.* at 11. The cooperating party's appraisal controls, and there is no need for the parties' appraisers to appoint a third appraiser. *Id.* Therefore, the parties could not have intended for the third appraiser to decide if a party has cooperated. *Id.* If the third appraiser also were to decide that a party had not cooperated with the appraisal process, its mandatory obligation to appraise the property would be obviated and rendered meaningless as the cooperating party's appraisal, once again, controls. *Id.* Thus, Defendant's interpretation was incompatible and inconsistent with the framework of the parties' arbitration agreement.

Defendant appealed this Court's decision denying its motion to compel arbitration to the Second Circuit pursuant to 9 U.S.C. § 16(a)(1)(C). Defendant now moves to stay this action, including discovery, pending the Second Circuit's decision on its appeal. *See*, Mot. Plaintiff opposes the motion. *See*, Opp'n. Defendant replied. *See*, Rep.

## **LEGAL STANDARD**

"A stay is not a matter of right, even if irreparable injury might otherwise result. It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the

circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (internal alterations, quotation marks, and citations omitted).

The Court must consider four factors when deciding a motion to stay an action pending an appeal: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first and second factors are the "most critical." *Id.* "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other[s]." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (internal alterations, quotation marks, and citations omitted); *See also*, *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) ("The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [Defendant] will suffer absent the stay.") (citation omitted).

## DISCUSSION

### I. Likelihood of Success on the Merits

Defendant has not made a strong showing that it is likely to succeed on the merits of its appeal. This factor requires more than a "mere possibility of relief[.]" *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Defendant must demonstrate "a *substantial possibility*, although less than a likelihood, of success[.]" *Mohammed*, 309 F.3d at 101 (emphasis added) (citation omitted). There must be "serious questions" going to the merits of the dispute with the balance of hardships tipping decidedly in Defendant's favor. *In re A2P SMS Antitrust Litig.*, 2014 WL 4247744, at *2 (S.D.N.Y. Aug. 27, 2014) (quoting *Citigroup Global Mkts., Inc. v. VCG*

*Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).

Defendant makes two primary arguments in its appeal. First, it contends that the failure to cooperate language in the arbitration agreement applies only when a party delays the appraisal process and does not cover disputes between the parties' appraisers about the appropriate valuation methodology. Mot. at 12. Defendant claims that it cooperated timely with the appraisal process and the dispute between the appraisers should have been submitted to arbitration. *Id.* at 14-15.

Second, Defendant argues that this Court failed to follow the Second Circuit's decision in *XL Capital, Ltd. v. Kronenberg*, 145 F. App'x 384 (2d Cir. 2005), which set forth a "close relationship" test the Court must apply when interpreting a specialized arbitration agreement. *Id.* at 15-17. Namely, if the parties' dispute bears a close relationship to the process of determining the property's FMV, the dispute must be submitted to arbitration. *Id.* Defendant asserts that its alleged failure to "direct" its appraiser to comply with the valuation methods set forth in the lease was "closely related" to the appraisers' process of determining FMV. *Id.* at 17. Therefore, the Court should have applied the close relationship test and granted Defendant's motion to compel arbitration. *Id.* Defendant argues that, even if the Court is unpersuaded by the merits of its appeal, the Court should grant its motion to stay because the Second Circuit "may disagree" with the Court's decision. *Id.* at 19.

Plaintiff contends that Defendant has not made a strong showing that it is likely to succeed on the merits of its appeal or that there are serious questions about the merits of this Court's decision. Opp'n at 10-14. Plaintiff reiterates that the parties did not intend for the appraisers to decide its claims. Opp'n at 11-12. Defendant's interpretation that "cooperation" only concerns delay also requires a legal determination from the Court, and the neutral third appraiser is not qualified to make this decision. *Id.* at 13-14. Plaintiff fails to address Defendant's argument about

the applicability of the "close relationship" test from *XL Capital, Ltd*. to Plaintiff's claims.

Initially, the Court rejects Defendant's argument that it should grant Defendant's motion to stay because the Second Circuit "may disagree" with the Court's decision. As the Supreme Court has made clear, the "mere possibility of relief" is insufficient. *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Defendant must demonstrate a "substantial possibility" of success and "serious questions" going to the merits of the dispute with the balance of hardships tipping decidedly in its favor. *Citigroup Global Mkts., Inc.*, 598 F.3d at 35; *Mohammed*, 309 F.3d at 101. Defendant has not met this burden for the following three reasons.

First, Defendant did not raise its argument about the parties' intended meaning of "cooperation" in its motion to compel arbitration. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Mhany Mgmt. v. Cnty. of Nassau*, 819 F.3d 581, 615 (2d Cir. 2016) (citation omitted); *See, e.g.*, *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 129-31 (2d Cir. 2012) (finding defendant forfeited an argument in support of its motion to compel arbitration by not raising it in the district court). The Second Circuit is not likely to consider Defendant's arguments that the failure to cooperate language exclusively concerned "delay" or that Defendant cooperated timely with the appraisal process.

Second, Defendant's purported cooperation was not the issue before this Court in Defendant's motion to compel arbitration. Indeed, the Court did not decide whether Defendant cooperated or failed to cooperate with the appraisal process. The issue presented was whether the parties intended for the appraisers to decide this question, and the Court concluded that they did not. Defendant repeatedly mischaracterizes this holding in its appeal, stating that the Court found a party *appraiser's* alleged failure to cooperate could not be submitted to the third neutral appraiser for arbitration. *See*, Exhibit C to Mot., Dkt. Entry No. 37-5 at 10, 23.

7

In a reversal of course, Defendant also seeks to persuade the Second Circuit that it cooperated with the parties' appraisal process despite having argued in its motion to compel arbitration that the appraisers must decide this question. *See*, Dkt. Entry No. 8-1 at 5, 12, 17-19; Dkt. Entry 37-5 at 25-26, 44-48. The Court is not persuaded by Defendant's shifting, inconsistent positions, which do not raise "serious questions" about the merits of this Court's decision.

Third, Defendant did not argue that the "close relationship" test from *XL Capital, Ltd.* applied to Plaintiff's claims in its motion to compel arbitration. Thus, the Second Circuit is not likely to consider this issue on appeal. *See*, *Mhany Mgmt.*, 819 F.3d at 615. The *XL Capital, Ltd.* decision also is a non-precedential summary order that is not binding on this Court. *See*, *United States v. Pirk*, 2018 WL 6629679, at *15 (W.D.N.Y. Dec. 19, 2018) (citing *United States v. Wider*, 184 F. Supp.3d 10, 16 (E.D.N.Y. 2016) and 2d Cir. Local Rule 32.1.1.). Defendant's argument that the Court failed to apply the "close relationship" test in *XL Capital, Ltd.*, even if true, would not constitute error. *See*, *Yang v. Navigators Grp., Inc.*, 18 F. Supp.3d 519, 528 (S.D.N.Y. 2014) ("definitive and specific" standard set forth in Second Circuit's summary order was "not binding[]" on the district court).

For these reasons, Defendant has not made a strong showing that it is likely to succeed on the merits of its appeal. Therefore, this factor weighs heavily against staying the action.

**II.     Irreparable Injury Absent a Stay**

This factor weighs slightly in favor of a stay. "Irreparable harm must be 'neither remote nor speculative, but actual and imminent.'" *Doe v. Trump Corp.*, 2020 WL 2538400, at *4 (S.D.N.Y. May 18, 2020) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (internal quotation marks and citation omitted)). "[S]imply showing some possibility of irreparable injury fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35

8

(internal quotation marks and citation omitted).

Defendant argues that it will suffer irreparable harm absent a stay because it will be forced to litigate this case, which it contends is subject to arbitration. Mot. at 19-20. Defendant claims that the statutory right to an immediate appeal of this Court's decision under 9 U.S.C. § 16 demonstrates an "implied 'Congressional finding' of irreparable harm[.]" *Id.* at 20. Namely, if Defendant is entitled to arbitration, Defendant should not be required to litigate to the point of a trial court judgment, as this harm cannot be remedied by an appeal at the end of the case. *Id.* at 19-20. Plaintiff contends that there is no automatic right to stay a district court's proceeding under 9 U.S.C § 16, and there is no harm in allowing discovery to proceed. Opp'n at 14-15. Plaintiff further argues that Defendant consented to the Magistrate Judge's discovery schedule, and discovery will be useful to the parties whether Plaintiff's claims are decided by the Court or the appraisers in arbitration. *Id.* at 15.

According to the original discovery schedule set by the Magistrate Judge, the parties were required to complete all discovery by August 20, 2021. *See* November 2, 2020 ECF Order. Defendant explained that it was unlikely that the Second Circuit would rule on its appeal before then, and the Court's supervised discovery will be broader and costlier than the discovery that takes place, if at all, during arbitration. Rep. at 7, 10. Defendant asserted that it would lose the benefits of arbitration if it had to proceed with the original discovery schedule. *Id.* at 10-11. Following the parties' briefing on the instant motion, the Magistrate Judge revised the discovery schedule. The new deadline for the parties to complete all discovery is now October 20, 2021. *See*, April 28, 2021 ECF Order. This modification does not alter this Court's analysis and undercuts Defendant's argument.[2]

---

[2] Notably, the Second Circuit has scheduled oral argument on Defendant's appeal for June 25, 2021.

Courts in the Second Circuit have acknowledged that Section 16 of the FAA "evidences a congressional determination that a wrongful denial of the right to have [a] case sent promptly to arbitration is a harm that cannot be adequately remedied by an appeal at the end of the case." *Meyer v. Kalanick*, 203 F. Supp.3d 393, 396 (S.D.N.Y. 2016); *See also*, *Starke v. SquareTrade, Inc.*, 2017 WL 11504834, at *2 (E.D.N.Y. Dec. 15, 2017). In *Meyer*, the court found that the defendants made a strong showing of irreparable harm absent a stay because of "the Congressional determination [of harm] that is implicit in [Section 16]." 203 F. Supp.3d at 396. Similarly in *Starke*, the court found that the defendant demonstrated irreparable harm because the defendant would be "forced to litigate in court an action that it contends is subject to arbitration, thus depriving it of the favorable procedures available to it in arbitration." 2017 WL 11504834, at *2.

*Meyer* and *Starke* are distinguishable factually from this case in that they were complex putative class action lawsuits whereas this is a relatively simple landlord-tenant contract dispute between only two parties. Moreover, contrary to Defendant's position, those cases do not stand for the proposition that a defendant automatically or presumptively is entitled to a stay of district court proceedings when it appeals the denial of its motion to compel arbitration. Congress did not provide for an automatic stay in Section 16, even though it easily could have. The Court has jurisdiction to "continue with the case" pending the outcome of Defendant's appeal, as the Second Circuit has not stayed this action. *Motorola Credit Corp.*, 388 F. 3d at 53; *See also*, *Doe*, 2020 WL 2538400 at *5-6 (denying defendants' motions to stay noting that the implied Congressional finding of irreparable harm in Section 16 did not preclude the court from proceeding with the litigation).

The Court recognizes that "[t]he popularity of arbitration rests in considerable part on its asserted efficiency and cost-effectiveness─characteristics said to be at odds with full-scale

10

litigation in the courts, and especially at odds with the broad-ranging discovery made possible by the Federal Rules of Civil Procedure." *Nat'l Broad. Co., Inc. v. Bear Stearns & Co., Inc.*, 165 F.3d 184, 190-91 (2d Cir. 1999) (citing *Allied Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995)). When a party appeals an order denying its motion to compel arbitration, the party faces ongoing litigation costs while its appeal is pending. However, "litigation costs do not rise to the level of irreparable injury." *Lucy v. Bay Area Credit Svc LLC*, 2011 WL 13344167, at *2 (D. Conn. July 28, 2011) (quoting *Daniels v. City of New York*, 138 F. Supp.2d 562, 564 (S.D.N.Y. 2001)). In addition, "no matter what the outcome of the appeal is—whether [the] case is heard by a federal judge or an arbitrator—the parties will need to conduct discovery to ensure an informed resolution to the case." *Adams v. Suozzi*, 393 F. Supp.2d 175, 178 (E.D.N.Y. 2005). "[A]ny depositions or other discovery taken . . . during the pendency of the appeal could be used in any arbitration[] that eventually might take place." *United States v. Stein*, 452 F. Supp.2d 281, 283 (S.D.N.Y. 2006). Therefore, "it is difficult to regard such discovery as irreparable injury." *Id.*

The litigation costs that Defendant incurs as the matter proceeds in this Court do not constitute irreparable injury. The discovery the parties exchange can also be used in any arbitration. Significantly, this is a relatively straightforward and simple case. The Court ordered discovery limited to the question of whether Defendant cooperated in good faith with the appraisal process, which goes to the heart of the dispute here. *See*, September 30, 2020 ECF Order. This is not the type of case where there will be many thousands of documents to review or many witnesses to depose as in a class action matter. While Defendant will be forced to continue litigating this action that it contends is subject to arbitration, this factor weighs only slightly in favor of a stay.

### III.     Substantial Injury to Plaintiff

Plaintiff has not demonstrated that it will suffer substantial injury if a stay is granted.  "In evaluating the prospect of such injury, the measure is not irreparable harm, but [] substantial harm." *Doe*, 2020 WL 2538400 at *6 (citing *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) and *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 2015 WL 5051769, at *4 (S.D.N.Y. Aug. 26, 2015)).  Defendant argues that the only harm arising from a stay is a slight delay in the adjudication of Plaintiff's claims.  Mot. at 21.  Plaintiff will not suffer any financial harm because Plaintiff has a market capitalization of $160 billion dollars, and it is currently paying the original term rent of $16,032.58 per month.  *Id.*; Rep. at 6.  Even if Plaintiff's appraisal controls, Plaintiff would owe more than this amount in monthly rent.  Mot. at 21.

Plaintiff counters that it is accruing an unknown liability equal to the difference between the original term rent and the new rent, which has not been decided yet.  Opp'n at 16.  Plaintiff also must decide whether to renew its lease by early 2024.  *Id.*  Defendant's appeal may not be resolved until the end of this year or early 2022.  *Id.* at 16-17.  If this Court reaches a final judgment within one year after the Second Circuit issues its decision, then any later appeal of this Court's decision may last until 2024.  *Id.* at 17.  Therefore, Plaintiff may not have certainty as to the rent that it will owe before it must decide whether to renew its lease and this is a significant risk of substantial harm.  *Id.*  Defendant counters that this harm is both speculative and remote, as it cannot be realized until 2024.  Rep. at 11.

Plaintiff has not demonstrated that it will suffer substantial harm if a stay is granted.  Plaintiff is paying the original term rent of $16,032.58 per month, not more, and any unknown liability Plaintiff will owe Defendant for the first five-year extension period must be paid regardless of the Court's decision on Defendant's motion to stay the action.  In addition, Plaintiff's

12

concern that it may not know the rent that it will owe by 2024 in time to make a renewal decision is based on conjecture. Plaintiff makes a series of assumptions, each contingent upon one another, regarding the timing of the Second Circuit's decision, the length of a possible stay, the Court's issuance of a final judgment, and the conclusion of any appeal. The Court cannot predict when the Second Circuit will issue its decision and declines to speculate about the future procedural posture of this case. Accordingly, this factor does not weigh against a stay.

### IV.     Public Interest

Defendant argues that the public has an interest in judicial economy, which is served by honoring the FAA's liberal policy of enforcing arbitration agreements. Mot. at 21. Plaintiff counters that this is a private commercial dispute that does not affect the public and a stay will delay final resolution of this action instead of promoting judicial economy. Opp'n at 17.

"[C]onsiderations of judicial economy counsel . . . against investment of court resources in proceedings that may prove to have been unnecessary." *Sutherland v. Ernst & Young LLP*, 856 F. Supp.2d 638, 644 (S.D.N.Y. 2012). "[A]lthough the public has an interest in the speedy resolution of every case, the public is also not served by any wasting of judicial resources." *Credit Suisse, Secs., (USA), LLC v. Laver*, 2019 WL 2325609, at *4 (S.D.N.Y. May 29, 2019) (internal quotation marks and citations omitted). If Defendant succeeds on its appeal, Plaintiff's claims will be submitted to the appraisers for arbitration and no further court proceedings or judicial resources will be necessary. However, as this is a private commercial dispute that does not impact the public, this factor weighs only slightly in favor of a stay.

13

**CONCLUSION**

Considering the factors set forth in *Nken*, Defendant has not made a strong showing that it is likely to succeed on the merits of its appeal. The balance of hardships and the public interest weigh only slightly in Defendant's favor but not enough to overcome the strong likelihood that Defendant's appeal will not be successful. Accordingly, Defendant's motion to stay this action, including discovery, pending the outcome of its appeal is denied.

SO ORDERED.

Dated: Brooklyn, New York
May 5, 2021

/s/
DORA L. IRIZARRY
United States District Judge