# EXHIBIT BBB

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CASE NO. 1:19-cv-06471

- - - - - - - - - - - - - - - - - - - - - - - - x

McDONALD'S CORPORATION,

                        Plaintiff,


        v.


VANDERBILT ATLANTIC HOLDINGS LLC,


                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - x

                    CONFIDENTIAL


            ZOOM VIDEOCONFERENCE DEPOSITION OF

                    MICHAEL MEYER

                    August 17, 2021



                MAGNA LEGAL SERVICES

                  (866) 624-6221

                 www.MagnaLS.com



1                    CONFIDENTIAL

2          ZOOM VIDEOCONFERENCE ORAL 30(b)6

3    DEPOSITION OF MICHAEL MEYER, taken pursuant to

4    Notice, commencing August 17, 2021, at 10:00

5    o'clock a.m., on the above date, before Catherine

6    M. Donahue, a Certified Court Reporter and Notary

7    Public in the State of New Jersey.

8

9    Magna Job No. 740596

10

11

12

13

14

15

16              MAGNA LEGAL SERVICES

17                 (866) 624-6221

                www.MagnaLS.com

18

19

20

21

22

23

24

25



Page 3

```
 1   A P P E A R A N C E S:

 2   (All parties present via Zoom Remote)

 3

 4   PASHMAN STEIN WALDER HAYDEN P.C.

 5   BY:  BRENDAN M. WALSH, ESQ.

 6        DENISE ALVAREZ, ESQ.

 7   Court Plaza South

 8   21 Main Street, Suite 200

 9   Hackensack, New Jersey  07601

10   (201) 488-8200

11   bwalsh@pashmanstein.com

12   dalvarez@pashmanstein.com

13   Attorneys for Plaintiff

14

15   MEISTER SEELIG & FEIN LLP

16   BY:  HOWARD S. KOH, ESQ.

17        AMIT SHERTZER, ESQ.

18   125 Park Avenue, 7th Floor

19   New York, New York 10017

20   (212) 655-3500

21   hsk@msf-law.com

22   as@msf-law.com

23   Attorneys for Defendant

24

25
```



Page 4

1    A P P E A R A N C E S: (Cont'd)

2    (All parties present via Zoom Remote)

3

4    ALSO PRESENT:

5        Stacy Howard

6        Sam Rottenberg

7        Tom Li

8        Carol DeMarco

9        Nat Lopez, Magna Tech

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



```
1                    I N D E X

2

3   Witness:                              Page

4   MICHAEL MEYER

5    Examination by Mr. Koh............... 10, 222

6    Examination by Mr. Walsh..............  226

7

8

9

10

11

12

13

14

15

16

17

18

19

20   August 17, 2021

21

22

23

24

25
```



```
                                                               Page 6
 1                     E X H I B I T S
 2    Exhibit Name        Description                Page No.
 3
 4    A             Notice of Deposition                 17
 5    B             McDonald's Corporation               32
                    Privilege Log
 6
      C             Ground Lease for 840 Atlantic         35
 7                  Avenue site
 8    D             Option Rent Addendum                  37
 9    E             Document bearing Bates stamp          68
                    MCD006445 through 006447
10
      F             Document bearing Bates stamp          77
11                  MCD006375 through 006376
12    G             Document bearing Bates stamp          79
                    MCD006371 through 006375
13
      H             Document bearing Bates stamp          86
14                  MCD000294 through 000306
15    I             Document bearing Bates stamp          89
                    MCD000343 through 000350
16
      J             Document bearing Bates stamp          92
17                  MCD006026 through 006028
18    K             Document bearing Bates stamp         100
                    MCD006633 through 006636
19
      L             Document bearing Bates stamp         103
20                  MCD006023 through 006025
21    M             Document bearing Bates stamp         111
                    MCD006325 through 006331
22
      N             Document bearing Bates stamp         128
23                  MCD007200 through 007248
24    O             Document bearing Bates stamp         141
                    MCD00888 through 000889
25
```



Page 7

```
 1                    E X H I B I T S
 2    Exhibit Name        Description          Page No.
 3
 4    P              Document bearing Bates stamp    143
                     MCD003003
 5
      Q              Document bearing Bates stamp    147
 6                   MCD002897 and 002898
 7    R              Document bearing Bates stamp    150
                     MCD002952 through 002954
 8
      S              Document bearing Bates stamp    153
 9                   MCD007579 through 007582
10    T              Document bearing Bates stamp    156
                     MCD006513
11
      U              Document bearing Bates stamp    162
12                   MCD001240 through 001253
13    V              Document bearing Bates stamp    164
                     MCD002908 through 002909
14
      V(a)           Document bearing Bates stamp    165
15                   MCD007924 through 007925
16    W              Document bearing Bates stamp    168
                     MCD001697 through 001705
17
      X              Document bearing Bates stamp    180
18                   MCD002976 through 002998
19    Y              Document bearing Bates stamp    182
                     MCD003138
20
      Z              Document bearing Bates stamp    185
21                   MCD006617 through 006619
22    AA             Document bearing Bates stamp    187
                     MCD000938 through 000939
23
      BB             Document bearing Bates stamp    193
24                   MCD000317 through 000342
25
```



```
                                                          Page 8
 1                    E X H I B I T S
 2   Exhibit Name       Description              Page No.
 3
 4   CC           Document bearing Bates stamp      194
                  MCD008060 through 008061
 5
     DD           Document bearing Bates stamp      196
 6                MCD000543 through 000579
 7   EE           Complaint                         198
 8   P-39         Document bearing Bates stamp      223
                  MCD 003848 through 003852
 9
     P-40         Document bearing Bates stamp      224
10                MCD 006017
11
12
13
14         (Exhibits attached with transcript.)
15
16
17
18
19
20
21
22
23
24
25
```



```
 1                DEPOSITION SUPPORT INDEX

 2

 3         Instruction To Witness Not To Answer

 4                     PAGE        LINE

 5                    None Marked

 6        Request for Production of Documents

 7                     PAGE        LINE

 8                      126          6

 9

10                    Marked Text

11                 PAGE        LINE

12                    None Marked

13

14

15

16

17

18

19

20

21

22

23

24

25
```



```
 1                      (The witness is sworn by the
 2               court reporter.)
 3  M I C H A E L     M E Y E R,  called as a witness
 4         by (Defendant), having been first duly
 5         sworn by Catherine M. Donahue, a Notary
 6         Public within and for the State of New
 7         Jersey, was examined and testified as
 8         follows:
 9  EXAMINATION BY MR. KOH:
10         Q.   Good morning, Mr. Meyer.  My name is
11  Howard Koh.  As you know, I'm counsel for the
12  defendant in this matter, Vanderbilt Atlantic
13  Holdings.
14               Throughout this deposition, I'm
15  going to refer to the defendant as Vanderbilt.
16               Will that be okay with you?
17         A.   Good morning.
18               Yes, that's fine.
19         Q.   Have you ever been deposed before?
20         A.   Yes.
21         Q.   How many times?
22         A.   Approximately, five or six.
23         Q.   You are an attorney; is that
24  correct?
25         A.   Correct.
```



1          Q.   So I assume that you're familiar

2    with the process, but just to go over the basic

3    ground rules, which are the same as you heard

4    when Mr. Walsh deposed Mr. Rottenberg, if you do

5    not hear or understand a question, please let us

6    know so that I may repeat or rephrase.

7               Does that sound fair?

8          A.   It does.

9          Q.   And if at any time you would like to

10   take a break, please answer the question that's

11   on the record and then we can arrange to take a

12   break.

13              Does that sound fair?

14         A.   Yes.

15         Q.   So, you said you have been deposed

16   five or six times.  Is that what your testimony

17   was?

18         A.   Correct.

19         Q.   Okay.

20              And what were the nature of those

21   cases?

22         A.   The nature of the first several

23   depositions was I served as a corporate

24   representative for a real estate developer in a

25   bankruptcy Chapter 11 matter, or a number of



MAGNA

LEGAL SERVICES

Page 12

1    matters.

2              And then, the second was a legal

3    malpractice claim involving a company I used to

4    work for.

5         Q.   Any other depositions -- instances

6    where you have been deposed other than what you

7    have just described?

8         A.   No.

9         Q.   Okay.

10             You said you were the corporate

11   representative for a real estate developer in a

12   bankruptcy matter.

13             Can you tell us who that real estate

14   developer was?

15        A.   The name -- so the Chapter 11

16   bankruptcy proceedings involved 20-ish related

17   companies, but the primary operating company was

18   called PRM Realty Group, LLC.

19        Q.   And where was that bankruptcy

20   pending?

21        A.   The Northern District of Texas.

22             MR. WALSH:  Howard, before we

23          keep going, I just want to put something

24          on the record.

25             I just -- during the deposition,



Page 13

```
 1          I don't intend to object every single
 2          time you ask a question that I consider
 3          outside the scope of the 30(b)(6)
 4          topics.
 5               So I just want to -- in order to
 6          keep things moving, I'm not going to
 7          object every single time.  I sort of
 8          just want to have a standing objection
 9          and just sort of reserve my right to do
10          that down the road.
11               Of course, if you don't agree, I
12          will object every time, but I don't
13          think that's probably not the most
14          productive use of our time today.
15               MR. KOH:  Well, I agree it is not
16          a productive use.  We don't have any
17          stipulations.  I'm prepared to proceed
18          under the rules that apply by virtue of
19          the Federal Rules of Civil Procedure and
20          the local rules of the Eastern District
21          of New York.
22               Does that sound fair to you, Mr.
23          Walsh?
24               MR. WALSH:  Well, will you
25          stipulate that I don't need to object
```



Page 14

```
 1              every single time that something may be

 2              outside of the scope of the 30(b)(6)?  I

 3              think it is an easy ask.

 4                   MR. KOH:  Yes, if you want to

 5              preserve those objections and raise them

 6              after we get the transcript back, I

 7              suppose we could go through that.

 8                   Let's work through that offline

 9              because I would like to know when I'm

10              going to get those objections in case I

11              need to deal with them.

12                   MR. WALSH:  Okay.

13                   That's fine.  Thank you.

14                   MR. KOH:  Very well.  All right.

15                   Catherine, can you read back the

16              last question and answer?

17                        (Record read.)

18  BY MR. KOH:

19       Q.   With respect to the legal

20  malpractice claim, you were the corporate

21  representative for what entity?

22       A.   I wasn't serving as the corporate

23  representative.  This was also related to PRM

24  Realty Group, but it was a dispute between two

25  parties unrelated to PRM Realty Group.
```


MAGNA ▶
LEGAL SERVICES

Page 15

```
 1          Q.   So you were testifying in your

 2     capacity as a nonparty witness?

 3          A.   Yes, I guess.  I don't know the

 4     technical term but, yes, that's sound right.

 5          Q.   Okay.

 6               Have you testified at any other time

 7     other than what we have discussed so far?

 8          A.   No.

 9          Q.   You testified earlier that you are a

10     lawyer.  In what jurisdictions are you admitted

11     to practice?

12          A.   The State of Illinois.

13          Q.   Are you admitted to any federal

14     courts?

15          A.   No.

16          Q.   How long have you been a lawyer?

17          A.   I graduated law school in 2007.

18          Q.   From what law school?

19          A.   Loyola University, Chicago School of

20     Law.

21          Q.   Is anybody in the room with you

22     while we're doing this video deposition?

23          A.   Not at the moment.  But I did want

24     to just note that there may be some dog barking

25     and kids coming in and out.  School starts
```



Page 16

1    tomorrow.

2         Q.   Good luck with the first day of

3    school.  You must be relieved.

4              If anybody associated with this

5    case, including lawyers, joins you in the room,

6    will you please let us know?

7         A.   Yes.

8         Q.   Do you have any apps open while

9    you're testifying now, other than the apps

10   associated with this deposition?

11        A.   Just Zoom and the Google Chrome with

12   the AgileLaw website up.

13        Q.   Do you have your cell phone with

14   you?

15        A.   I do not.

16        Q.   Are you appearing today pursuant to

17   a 30(b)(6) notice that was served on McDonald's?

18        A.   I believe so.

19             MR. KOH:  Nat, can you bring up

20        Exhibit 1, please.

21             Let's mark that as Defendant's

22        Exhibit A.

23                  (Notice of Deposition was

24        marked as Defendant's Exhibit A for

25        identification, as of this date.)



Page 17

1    BY MR. KOH:

2           Q.   Mr. Meyer, can you see Defendant's

3    Exhibit A?

4           A.   Yes.

5           Q.   Do you recognize it?

6           A.   Yes.

7           Q.   When for the first time did you see

8    it?

9           A.   Approximately around the time it was

10   served.

11          Q.   And you are appearing pursuant to

12   this Notice of Deposition?

13          A.   Yes.

14          Q.   Have you reviewed each of the topics

15   that are numbered 1 through 13 on the Notice of

16   Deposition and appear on pages 3 and 4?

17          A.   Yes.

18          Q.   Are you prepared to testify on

19   behalf of McDonald's with respect to each of

20   those topics?

21          A.   Yes.

22          Q.   Is there any topic listed there that

23   you are not prepared to testify upon?

24          A.   No.

25          Q.   What did you do to prepare for



Page 18

1    today's deposition?

2           A.   I met with counsel several times and

3    reviewed a number of documents.

4           Q.   Can you recall how many times you

5    met with counsel?

6           A.   I believe four, plus a call with

7    Magna tech.

8           Q.   And what documents do you remember

9    reviewing?

10          A.   Many documents that were in the --

11   that were produced by McDonald's.  I don't

12   remember specifically.  There was lots.

13          Q.   When you say you met with counsel,

14   was that Mr. Walsh?

15          A.   Mr. Walsh, Ms. Alvarez and

16   Ms. Howard.

17          Q.   Did you meet with anybody else

18   besides Mr. Walsh, Ms. Alvarez and Ms. Howard?

19          A.   As part of those meetings, we met

20   with Brian Cheung from McDonald's for a short

21   portion of one of the meetings and then the same

22   with Carol DeMarco for a short portion for one

23   of the meetings.

24          Q.   Did you speak to anybody outside of

25   the presence of the attorneys you have listed in



Page 19

1    order to prepare for this deposition?

2         A.   No.

3         Q.   Is there anything that would prevent

4    you from testifying here truthfully today?

5         A.   No.

6         Q.   What have you done to search for

7    documents related to this case, if anything?

8         A.   As part of the preservation hold

9    process, I received an e-mail.  I believe it is

10   called a litigation hold or a preservation hold,

11   and it has a number of categories of documents.

12             And then I had a call with a

13   paralegal from our in-house litigation team and

14   walked through all those categories and

15   identified which categories I had documents

16   related to this matter.

17        Q.   Who sent you the litigation hold?

18        A.   I don't recall.  It would have been

19   one of the litigation department paralegals.  I

20   don't remember which one.

21        Q.   Who was the paralegal that you met

22   with when you walked through the documents

23   related to this matter?

24        A.   The same.  I don't recall.  I can

25   get you that information.



Page 20

```
 1          Q.    Okay.

 2                Do you remember approximately when

 3     you received the litigation hold?

 4          A.    It would have been, I believe, July

 5     of 2019.

 6          Q.    This case was filed in November of

 7     2019.  Is it your testimony that the July before

 8     that November, approximately five months before,

 9     is when the litigation hold went out?

10          A.    I believe so.

11          Q.    Do you know who at McDonald's was

12     responsible for the collection and preservation

13     of documents related to this litigation?

14          A.    The litigation, in-house litigation

15     team.

16          Q.    Is there a head of the in-house

17     litigation team?

18          A.    Yes.

19          Q.    Who is that?

20          A.    Hal Merck.

21          Q.    Can you spell that, please?

22          A.    Hal, H-a-l.  Merck, M-e-r-c-k.

23          Q.    Does Mr. Merck have a title at

24     McDonald's?

25          A.    Vice president.
```



Page 21

1           Q.   Is Mr. Merck vice president of a

2     particular division, anything like that?

3           A.   Commercial litigation.

4           Q.   And physically who was responsible,

5     if you know, for the review of documents that

6     were produced to Vanderbilt in connection with

7     this litigation?

8           A.   Our counsel, Pashman Stein.

9           Q.   So I'm correct the way that it

10    roughly worked is that you or McDonald's issued

11    a litigation hold, documents were sent to

12    Pashman Stein, Pashman Stein did the review?

13               MR. WALSH:  Objection to the

14          form.

15               And I just want to remind the

16          witness not to reveal any privileged

17          information during the course of your

18          answers.

19               MR. KOH:  I will withdraw the

20          question and rephrase.

21    BY MR. KOH:

22          Q.   Let's break this down into steps.

23               Is the first thing that happened in

24    terms of production of documents related to this

25    litigation that the litigation hold was issued?



Page 22

1          A.    Yes.

2          Q.    And then did there come a time when

3     documents were gathered to be sent to Pashman

4     Stein so that they could be reviewed to

5     determine if they should be produced?

6          A.    Documents were uploaded to a

7     database -- documents that were received that

8     were gathered as part of the litigation hold

9     were uploaded to a software.

10          Q.    And what devices were reviewed to

11     create that upload?

12          A.    I don't recall.  I mean, I don't

13     know for every, for every -- what do you call

14     it -- person with potentially relevant

15     documents, I don't know which devices were

16     gathered for each of them.

17               But as I said, the litigation hold

18     lists all number of platforms, devices,

19     et cetera.

20          Q.    Well, let's talk about your devices.

21     What devices that you had access to were

22     reviewed and had information uploaded from them?

23          A.    My laptop computer.  A paper file, I

24     believe.  And then there were a number of

25     categories or types of, you know, areas of



Page 23

1    storage that didn't apply to me; different

2    drives, shared drives, different software, cell

3    phone.

4              Yes, I think those are the big --

5    the broad categories.

6         Q.   Just so I understand, your personal

7    cell phone was reviewed, and if there was data

8    on it, it was uploaded?

9                   MR. WALSH:  Objection to form.

10                  MR. KOH:  I will withdraw and

11           rephrase.

12   BY MR. KOH:

13        Q.   Did you turn over your cell phone so

14   that it could be reviewed for relevant

15   documents?

16        A.   I have a work cell phone, and there

17   were no relevant documents on my work cell

18   phone.

19        Q.   Did somebody check or is that just

20   you're reporting that there were no relevant

21   documents on it?

22        A.   We have to certify to all these

23   categories as part of the litigation hold, each

24   of the employees that receive the preservation

25   hold.



Page 24

1      Q.    Okay.

2            That wasn't -- I appreciate that you

3      had to certify.  But my question was, did

4      anybody other than you review your cell phone

5      for relevant documents?

6      A.    No.

7      Q.    Do you know if McDonald's servers

8      were reviewed for relevant documents?

9      A.    I assume so.

10     Q.    But you're not certain?

11     A.    I wasn't involved in that.  Yes, I

12     wasn't involved in the actual gathering.

13     Q.    Do you know if Carol DeMarco's

14     devices were reviewed in connection with the

15     production of documents related to this action?

16     A.    She received the same litigation

17     hold.  Same process; had a hold, had an

18     interview with our litigation department and

19     identified the areas where -- or the forums

20     where there may be relevant documents, and then

21     they were reviewed.

22     Q.    Did you participate in that

23     interview?

24     A.    No.

25     Q.    Do you have any personal knowledge



Page 25

1    of what devices belonging to Ms. DeMarco or
2    accessible by Ms. DeMarco were reviewed?
3            A.    No.
4            Q.    So I would have to ask Ms. DeMarco
5    to know the answer to that question?
6            A.    Other than I had seen, you know,
7    obviously her e-mails in the production.
8            Q.    With respect to your personal
9    information, were any other platforms reviewed
10   other than what you have told us so far today?
11           A.    I'm not sure.  I don't understand
12   the question.
13           Q.    Let me ask you, do you know if any
14   of your text messages were reviewed?
15           A.    I don't believe so.
16           Q.    Do you know -- do you use any social
17   media communication apps like What's App or
18   Slack?
19                 MR. WALSH:  Objection to form.
20           A.    No.
21   BY MR. KOH:
22           Q.    Besides being a licensed attorney,
23   do you hold any other professional licenses?
24           A.    No.
25           Q.    What is your current job title with



Page 26

1    McDonald's?

2         A.   Senior counsel in the asset

3    management legal group.

4         Q.   What is the asset management legal

5    group?

6         A.   It is the team, the legal team that

7    supports the asset management function of the

8    U.S. real estate business.

9         Q.   So what are the assets that are

10   within the jurisdiction of the asset management

11   legal group?

12        A.   Properties that McDonald's leases

13   from a third party in the United States.  And

14   then there's some exclusions.

15        Q.   What are the exclusions?

16        A.   Special venues, like shopping malls,

17   airports, military bases.  A few others that I'm

18   not recalling.

19        Q.   You mentioned properties that were

20   leased by McDonald's.  Does the asset management

21   group legal team also have jurisdiction over any

22   properties that are owned by McDonald's?

23        A.   We do not.

24        Q.   Is that under the jurisdiction of a

25   separate group?



Page 27

```
 1              A.   We don't really call it
 2    jurisdiction, but --
 3              Q.   How about responsibility, is that a
 4    better word?
 5              A.   Yes, sure.  The property management
 6    legal team handles matters related to owned
 7    properties and other -- they have other
 8    responsibilities, as well.
 9              Q.   So how long have you been senior
10    counsel in McDonald's asset management legal
11    team?
12              A.   Approximately seven years.
13              Q.   Have you ever held any other
14    positions at McDonald's?
15              A.   I held the position of counsel for
16    the first year at McDonald's.
17              Q.   Was that counsel in any specific
18    unit, like the asset management legal team, or
19    was it just general?
20              A.   Same unit.  Same team.
21              Q.   Okay.
22                   So you went from counsel to senior
23    counsel?
24              A.   Correct.
25              Q.   And that happened about seven years
```



Page 28

1    ago?

2          A.    Correct.

3          Q.    Besides counsel and senior counsel,

4    did you have any other employment with

5    McDonald's?

6          A.    I have some other responsibilities

7    related to the senior counsel and counsel

8    role -- well, senior counsel roles having to do

9    with sustainability initiatives.

10          Q.    Well, let's talk about what your

11    responsibilities are as senior counsel at

12    McDonald's; and specifically, what are your

13    responsibilities as part of the asset management

14    legal team?

15          A.    I support the asset managers in

16    certain geographic areas of the U.S.

17          Q.    Which areas are those?

18          A.    It is -- the U.S. is divided up into

19    field offices, and the two field offices I cover

20    are the Stamford field office and a portion of

21    the Bethesda field office.

22                So I generally say that I cover from

23    Philadelphia to Maine on the eastern coast.

24          Q.    Stamford, Connecticut; Bethesda,

25    Maryland?



Page 29

1          A.    Correct.

2          Q.    The Bethesda field office really

3     doesn't go south of Philadelphia, is that what

4     you're telling me?

5          A.    No, I only handle the portion of

6     Bethesda field office restaurants there in

7     Pennsylvania, Delaware and New Jersey that are

8     part of the Bethesda field office, and another

9     attorney covers the other states that are

10    included in the Bethesda field office.

11         Q.    Okay.

12               And when you say you support the

13    asset managers, can you describe what that

14    entails?

15         A.    The asset managers are real estate

16    professionals who work for McDonald's that have

17    a portfolio of leased restaurants that they

18    manage, whether it be extending leases,

19    purchasing lease sites, otherwise renegotiating

20    leases.

21               There's a number of

22    responsibilities, but those are, I think, the

23    primary ones.

24         Q.    Other than what you have described,

25    do you have any other responsibilities as senior



Page 30

1    counsel in McDonald's asset management legal

2    team currently?

3            A.    I manage, I manage six paralegals.

4            Q.    Anything else?

5            A.    Occasional special projects,

6    et cetera, with the team.

7            Q.    What are your responsibilities, if

8    any, that are outside the asset management legal

9    team at McDonald's?

10           A.    I support the global impact team in

11   relation to climate action matters, packaging,

12   recycling, water, waste.

13                 And then I manage a pro bono

14   project, Bankruptcy Center of Excellence for the

15   U.S., for the U.S. legal team.

16                 Those are the main ones.  I'm sure

17   there's other things that come up.

18           Q.    Can you describe your familiarity

19   with the real estate market in Brooklyn, New

20   York?

21                 MR. WALSH:  Objection to form.

22                 MR. KOH:  Well, let me ask a

23            different question then.

24   BY MR. KOH:

25           Q.    How familiar are you with the real



Page 31

```
 1   estate market in Brooklyn, New York?

 2                 MR. WALSH:  Same objection.

 3   BY MR. KOH:

 4        Q.   Go ahead and answer that question,

 5   please.

 6        A.   Not very familiar.

 7        Q.   So, what you described in your job

 8   responsibilities so far, would it be accurate to

 9   say it comprises of providing legal advice?

10        A.   Yes.

11        Q.   Do your job responsibilities include

12   anything other than providing legal advice?

13        A.   Not that I can think of.

14        Q.   Do you ever provide general business

15   advice to anybody at McDonald's?

16                 MR. WALSH:  Objection to form.

17   BY MR. KOH:

18        Q.   You can answer.  Let me ask the

19   question.

20                 Do you understand what I mean by

21   general business advice?

22        A.   Not really.

23        Q.   Okay.

24                 Have you ever discussed business

25   subjects with anyone at McDonald's?
```



Page 32

1           MR. WALSH:  Objection to form.

2    BY MR. KOH:

3         Q.   You can answer that question.

4         A.   Can you repeat the question?

5         Q.   Do you ever discuss business

6    subjects with anyone at McDonald's?

7         A.   Yes, as a part of providing legal

8    advice.

9         Q.   Do you ever negotiate business terms

10   on behalf of McDonald's?

11        A.   No.

12             MR. WALSH:  Object to the form.

13             MR. KOH:  Nat, can you bring up

14          what we have marked as Exhibit 2 and

15          designate that as Defendant's Exhibit B,

16          please.

17                  (McDonald's Corporation

18                  Privilege Log was marked as

19                  Defendant's Exhibit B for

20                  identification, as of this date.)

21   BY MR. KOH:

22        Q.   Mr. Meyer, I've placed before you

23   what we have marked for identification as

24   Defendant's Exhibit B.

25             Do you recognize this document?



Page 33

1          A.    I'm just scrolling through here.
2     Yes.
3          Q.    Tell us what it is.
4          A.    It is McDonald's corporate privilege
5     log dated May 17, 2021.
6          Q.    Did you have any role in the
7     preparation of Defendant's Exhibit B?
8          A.    No.
9          Q.    Do you know who prepared it?
10         A.    Our counsel, Pashman Stein.
11         Q.    Do you have any knowledge as to how
12    it was determined what documents would appear on
13    Defendant's Exhibit B, the privilege log?
14              MR. WALSH:   I just want to just
15          pose an objection to the extent that
16          this calls for Mr. Meyer to reveal any
17          privileged information and caution him
18          not to reveal any privileged information
19          in the course of responding to this
20          answer.
21              MR. KOH:   Okay.
22              Well, let's slow this down and
23          take it one at a time so we don't break
24          the privilege here.
25



Page 34

1    BY MR. KOH:

2         Q.   Please answer the next question as

3    yes or no.  Do you have any knowledge as to how

4    the documents which were listed on the privilege

5    log were determined to be privileged?

6              You can answer that yes or no.

7         A.   Yes.

8         Q.   Yes, okay.

9              And how did you obtain that

10   knowledge?

11             MR. WALSH:  Once again, I'll

12        object to the extent that it calls for

13        privileged information.

14   BY MR. KOH:

15        Q.   Did you obtain that knowledge

16   through any other means than discussing with

17   McDonald's counsel?

18        A.   No.

19        Q.   Did you have any input - again,

20   please answer this yes or no - in determining

21   what documents would be listed as privileged?

22             MR. WALSH:  Once again, I'm going

23        to object.  You're asking Mr. Meyer to

24        reveal privileged or potentially asking

25        him to reveal potentially privileged



Page 35

```
 1          information.
 2               I'll advise Mr. Meyer to the
 3          extent that in responding to this
 4          question it requires disclosure of
 5          privileged information, not to reveal
 6          that information.
 7               MR. KOH:  Okay.
 8               I'll ask the question again.
 9  BY MR. KOH:
10       Q.   Did you have any input in
11  determining which documents listed on the
12  privilege log would be designated as privileged?
13       A.   There was discussions with counsel,
14  but I don't want to say anything more.
15       Q.   Okay.  Fair enough.
16               MR. KOH:  Let's bring up what we
17          have designated, Nat, in the file as
18          No. 3, and mark that as Defendant's
19          Exhibit C.
20                   (Ground Lease for 840
21              Atlantic Avenue site was marked as
22              Defendant's Exhibit C for
23              identification, as of this date.)
24  BY MR. KOH:
25       Q.   I have placed before you what we
```



Page 36

1    have marked for identification as Defendant's

2    Exhibit C.

3              Do you recognize that?

4         A.   I'm trying to scroll here.  I can

5    only see the first page.

6              Okay, here we go.  Got it.

7              This is the ground lease for the 840

8    Atlantic restaurant site.

9         Q.   When for the first time did you see

10   the ground lease?

11        A.   I don't recall.

12        Q.   Was it within the last three years

13   or earlier than that?

14        A.   I certainly saw it in 2018, but I

15   don't recall if there was a prior -- if I had

16   seen it prior to that.

17        Q.   Am I correct that you had no

18   involvement in the negotiation and drafting of

19   Defendant's Exhibit C?

20        A.   You are correct.

21        Q.   Do you know who on behalf of

22   McDonald's was involved in the negotiation and

23   drafting of Defendant's Exhibit C?

24        A.   I do not.

25        Q.   If you needed to find that -- excuse



Page 37

1   me.  Let me rephrase that.

2           If you needed to learn that

3   information, where would you look or what would

4   you do?

5       A.   I would have to -- I think we would

6   have to -- or I would have to talk with various

7   people in the legal department and on the

8   business side to see who was responsible for

9   this area of the country at the time it was

10  negotiated.

11      Q.   And who would those people be?

12      A.   I'm not even sure, you know, who

13  would be or if there are people that would know.

14          MR. KOH:  Let's bring up what we

15      have marked as Exhibit 4 and mark that

16      as Defendant's Exhibit D for

17      identification.

18              (Option Rent Addendum was

19          marked as Defendant's Exhibit D for

20          identification, as of this date.)

21  BY MR. KOH:

22      Q.   Mr. Meyer, do you recognize

23  Defendant's Exhibit D?

24      A.   Yes.

25      Q.   Tell us what it is, please.



Page 38

```
 1            A.   It is the option rent addendum that
 2    is attached to the ground lease that we just
 3    talked about.
 4            Q.   I would like you to turn to the
 5    second page of that document.
 6                 Do you have it in front of you, sir?
 7            A.   Yes.
 8            Q.   Can you tell us -- I would like you
 9    to look at the second paragraph on that page,
10    which begins "The rental value."
11                 Do you see that paragraph?
12            A.   Yes.
13            Q.   Can you tell us what that paragraph
14    means to you?
15                 MR. WALSH:  Objection to form.
16    BY MR. KOH:
17            Q.   You may answer.
18            A.   It is describing how the rental
19    value shall be established for the option
20    periods which this option rent addendum or the
21    option period for which it is talking about.
22            Q.   Okay.
23                 Would it be fair to say that the
24    rental value based on this paragraph should
25    reflect the highest -- let me rephrase that.
```



Page 39

1              Would it be fair to say that the

2    fair market rental value based on this paragraph

3    would reflect property's highest and best use?

4                   MR. WALSH:  Objection to form and

5              also object insofar as it is calling for

6              a legal conclusion.

7                   MR. KOH:  Yes.

8    BY MR. KOH:

9         Q.   You may answer.

10        A.   Can you repeat the question?

11                  MR. KOH:  Please read it back.

12                  (Record read.)

13        A.   I mean, just reading the paragraph,

14   knowing all the uses to which the property can

15   be put without duress on either party.

16             So it doesn't say highest and best

17   use and, you know, this isn't the, I guess, end

18   of the story in terms of the meaning of the

19   paragraph.

20   BY MR. KOH:

21        Q.   Well, what do you think the end of

22   the story is in terms of the meaning of the

23   paragraph?

24                  MR. WALSH:  Objection to form.

25



Page 40

1  BY MR. KOH:

2          Q.   You can answer that question.

3          A.   I was just referencing, you know,

4  that there are -- there is case law and, you

5  know, appraiser interpretation, you know, based

6  on appraisal standards as to exactly what this

7  means.

8          Q.   What case law are you referring to?

9              MR. WALSH:  Objection to form.

10         A.   Well, I don't have a -- I don't know

11  the universe of case law.  You know, one

12  particular case that is relevant is -- I believe

13  it is the Second Avenue case.

14  BY MR. KOH:

15         Q.   Any other cases that you remember?

16             MR. WALSH:  Objection to form.

17         A.   Not off the top of my head.

18  BY MR. KOH:

19         Q.   If you needed to refresh your

20  recollection as to any other case law, what

21  would you do?

22             MR. WALSH:  Objection to form.

23             I'll just -- I just want to put on the

24             record that this witness is being

25             presented as a 30(b)(6) witness and not



Page 41

```
 1            as a legal expert.
 2                  But if you can answer, you can
 3            try to go ahead without revealing any
 4             privileged information.
 5       A.   Can you repeat the question?
 6                  MR. KOH:  Please read it back.
 7                    (Record read.)
 8       A.   The first thing I would do is
 9  discuss with counsel.
10  BY MR. KOH:
11       Q.   Anything else?
12       A.   No.
13       Q.   Okay.
14            You also mentioned appraisal
15  standards.  To what appraisal standards were you
16  referring?
17                  MR. WALSH:  Objection to the
18            form.
19       A.   USPAP standards.  I'm not an expert
20  in them, but that's the standard that comes to
21  mind.
22  BY MR. KOH:
23       Q.   Besides counsel, who have you
24  discussed Exhibit D with?
25                  MR. WALSH:  Objection to form.
```



Page 42

```
 1                    And also, I just want to remind
 2             the witness not to reveal any privileged
 3             information in your answer.
 4   BY MR. KOH:
 5        Q.   Yes or no, have you discussed
 6   Exhibit D with Carol DeMarco?
 7        A.   Yes.
 8        Q.   How often?
 9                    MR. WALSH:  Objection to form.
10        A.   I don't know how often.
11   BY MR. KOH:
12        Q.   What have you discussed about
13   Exhibit D with Ms. DeMarco?
14                    MR. WALSH:  Objection to form.
15                    And also, just I again want to
16             caution the witness, who is a lawyer at
17             McDonald's Corporation and provides
18             advice to Ms. DeMarco, as he previously
19             testified.
20                    And so, I would caution the
21             witness not to reveal any privileged
22             information during the course of your
23             response.
24                    And I'm not sure -- you know, if
25             you cannot answer the question without
```



Page 43

```
 1            revealing privileged information, then I
 2            advise you not to answer it.
 3  BY MR. KOH:
 4       Q.   Can you answer the question,
 5  Mr. Meyer?
 6       A.   Can you repeat the question?
 7            MR. KOH:   Please read it back,
 8        and answer the question bearing in mind
 9        Mr. Walsh's instruction.
10                  (Record read.)
11       A.   That would be privileged
12  information.
13  BY MR. KOH:
14       Q.   I assume you know who Sharon
15  Locatell is?
16       A.   Yes.
17       Q.   She is the appraiser that McDonald's
18  hired to perform an appraisal as part of the
19  process outlined in the option rent addendum,
20  correct?
21       A.   Correct.
22       Q.   Have you discussed the option rent
23  addendum with Ms. Locatell?
24       A.   I believe so.
25       Q.   Tell me what you discussed with her.
```



Page 44

1          A.    I don't recall specific discussions.

2    I mean, I do recall that as part of her

3    retention, we sent the option rent addendum, you

4    know, so that she was aware that when the

5    formal -- when and if the formal process was

6    initiated, that she would be valuing the

7    property in accordance with the option rent

8    addendum.

9          Q.    You said you didn't recall

10   specifically what you discussed with

11   Ms. Locatell.

12                Can you think of anything that would

13   refresh your recollection concerning your

14   discussions with Ms. Locatell?

15         A.    I mean, if there were documents that

16   might, but nothing else.

17         Q.    Did you make any notes when you had

18   discussions with Ms. Locatell?

19         A.    I don't believe so.

20         Q.    Is that consistent with your usual

21   practice, not to make notes of discussions with

22   appraisers that McDonald's hires?

23                MR. WALSH:  Objection to form.

24   BY MR. KOH:

25         Q.    You can answer that question.



Page 45

1          A.    It depends.

2          Q.    What does it depend on?

3          A.    You know, what's the subject matter,

4    who I'm talking to.  Lots of things.  I don't

5    have notes.

6          Q.    Is there any --

7                MR. WALSH:  Objection.

8                Mr. Meyer was in the middle of

9           finishing --

10               MR. KOH:  I apologize.

11         A.    Go ahead.

12   BY MR. KOH:

13         Q.    Is there any reason why you chose

14   not to make notes of your conversation with

15   Ms. Locatell?

16               MR. WALSH:  Objection to form.

17         A.    I don't recall.

18   BY MR. KOH:

19         Q.    We were looking at this first or the

20   second full paragraph on the second page of

21   Exhibit D.

22               Do you recall whether or not you

23   discussed that paragraph with Ms. Locatell?

24         A.    I don't recall discussing that

25   paragraph with Ms. Locatell.



Page 46

1          Q.    Let's look at the paragraph below

2    that.  Read it to yourself, please, and let me

3    know when you're finished.

4                It begins "The standard market

5    data."

6          A.    Okay.

7          Q.    Do you have an understanding of what

8    the standard market data approach technique is

9    as referred to in this paragraph?

10         A.    Generally.

11         Q.    Tell us what it is, please, what

12    your understanding is.

13         A.    It should just be the standard

14    appraisal approach that an appraiser would use

15    to value vacant land.  You know, I don't know

16    beyond what it says here.

17         Q.    Have you ever heard the term

18    comparable or comps in connection with an

19    appraisal?

20         A.    Yes.

21         Q.    What does that mean to you?

22         A.    It means, it means comparable.

23         Q.    Comparable what?

24         A.    It depends, the context.  In this

25    context, comparable leases.



Page 47

1          Q.   Did you discuss this paragraph that
2     begins "The standard market data approach" on
3     Exhibit D with Ms. Locatell?
4          A.   Yes.
5          Q.   What do you remember discussing with
6     Ms. Locatell?
7          A.   That the valuation technique
8     requires her to use comparable leases to value
9     the property or the fair market rental value of
10    the property.
11         Q.   What if there are no comparable
12    leases available?
13         A.   There were comparable leases
14    available.
15         Q.   That wasn't my question.
16              What does the agreement, to your
17    understanding, say about what to do if there
18    aren't comparable leases available?
19                   MR. WALSH:  Objection to form
20               insofar as the document speaks for
21               itself.
22    BY MR. KOH:
23         Q.   You can go ahead and answer.
24         A.   It says if adequate comparable
25    leases are not available, then a land residual



Page 48

1    technique as defined by American Institute of

2    Real Estate Appraisers shall be used.

3           Q.    Do you know what a land residual

4    technique is?

5           A.    Generally.

6           Q.    Tell us what your understanding is.

7    I understand that you're not an appraiser, but

8    what is your understanding as a lawyer?

9           A.    I believe it requires a calculation

10   of different costs in order to sort of build out

11   a value.

12          Q.    Anything else?

13          A.    And it would also include building

14   out sort of the rental income.

15          Q.    And when you say building out, do

16   you mean physically building out or something

17   else?

18          A.    No, I mean researching and then

19   applying that to a formula.

20          Q.    Building out an economic model,

21   would that be an appropriate way to describe it?

22               MR. WALSH:  Objection to form.

23          A.    Yes, I believe so.

24               MR. KOH:  Did you get the answer?

25                    (Record read.)



Page 49

1    BY MR. KOH:

2          Q.   A few moments ago you testified that

3    there were comparable leases available.

4               Do you remember that?

5          A.   I do.

6          Q.   How do you know that?

7          A.   Because Ms. Locatell included

8    comparable leases in her appraisal report.

9          Q.   Did you make any -- did McDonald's

10   make any independent evaluation to determine if

11   the leases included in the appraisal report, in

12   fact, were comparable?

13         A.   No.

14         Q.   So is it accurate to say that

15   McDonald's came to the determination that

16   comparable leases were available was based

17   solely on the advice of Ms. Locatell?

18              MR. WALSH:  Object to form.

19         A.   Based on her professional judgment

20   and appraisal.  Her letter of opinion of value

21   report, to be more specific.

22   BY MR. KOH:

23         Q.   Do you know if McDonald's made any

24   effort to determine if any comparable leases

25   were available with respect to the property at



Page 50

1    840 Atlantic Avenue?

2                    MR. WALSH:  Objection to form.

3    BY MR. KOH:

4         Q.   You can answer.

5         A.   McDonald's provided Ms. Locatell

6    with potentially comparable leases from broker

7    contacts, from McDonald's own leases.  We sent a

8    number to her for her to decide whether those

9    were comparable.

10        Q.   Why did McDonald's do that?

11                   MR. WALSH:  Objection to form.

12        A.   McDonald's did that because leases

13   are not a matter of public record and we wanted

14   to give Sharon the most information that we

15   could for her to make -- you know, to do her

16   valuation.

17   BY MR. KOH:

18        Q.   How did McDonald's determine which

19   leases they would send to Ms. Locatell?

20        A.   With respect to the leases that we

21   obtained or lease information that we obtained

22   from brokerage firms, we didn't make a

23   determination.  We just sent her what we

24   received.

25                   With respect to McDonald's leases,



Page 51

1    we looked at, for ground leases, free-standing

2    restaurants in the boroughs.

3              I believe Sharon gave us --

4    Ms. Locatell gave us some parameters.  And

5    again, just provided leases that fit that

6    category, those categories.

7         Q.    Turn to the first page of Exhibit D.

8    Please take a look at the last paragraph on that

9    page and then the first paragraph on the bottom

10   of page 2 of Exhibit D.

11             And let me know when you're ready to

12   have some questions on those paragraphs.

13        A.    Okay.

14        Q.    Is it accurate to say that the

15   appraiser appointed by McDonald's and the

16   appraiser appointed by Vanderbilt, Ms. Locatell

17   and Mr. Tener, respectively, could not agree on

18   the fair market value by differing by not more

19   than 15 percent or by more than 15 percent?

20             Let me rephrase that question.  It

21   came out horrible garble, and I apologize.

22             Is it accurate to say that

23   McDonald's appraiser, Ms. Locatell, and

24   Vanderbilt's appraiser, Mr. Tener, could not

25   agree on the fair market value of the property


MAGNA
LEGAL SERVICES

Page 52

1    as contemplated in the option rent addendum,

2    Exhibit D?

3           A.    That's accurate.

4           Q.    And is it accurate to say that they

5    differed by more than 15 percent?

6                 MR. WALSH:  Objection to form.

7           A.    Yes.

8    BY MR. KOH:

9           Q.    So is it accurate to say that under

10   the agreement when that happened, each party or

11   each party's appraiser attempts to work together

12   to appoint a third appraiser; is that correct?

13                MR. WALSH:  Objection to form and

14                also object insofar as it calls for a

15                legal conclusion and insofar as it also

16                assumes facts not in the record.

17                MR. KOH:  Let me rephrase the

18                question.

19   BY MR. KOH:

20          Q.    Did there come a time when the party

21   appraisers attempted to agree on a third

22   appraiser as provided by Exhibit D?

23          A.    Yes.

24          Q.    And when was that time?

25          A.    I believe it was May of 2019.



Page 53

1          Q.   And was a third appraiser ever

2     agreed upon?

3          A.   Yes.

4               MR. WALSH:  Objection to form;

5          also as far as it calls for a legal

6          conclusion.

7               And I'll also just remind

8          Mr. Meyer to just give me a second or

9          two to lodge any objection before you

10         answer so we're not speaking over each

11         other.

12    BY MR. KOH:

13         Q.   Who was that third appraiser?

14         A.   Marc Nakleh.  I'm not sure how to

15    pronounce his last name.

16         Q.   Do you know how to spell it?

17         A.   N-a-k-l-e-h.

18         Q.   I believe you're correct.

19              Let's take a look at paragraph D

20    which begins "If one of the parties."

21              Do you see that?

22         A.   Yes.

23         Q.   And it says "If one of the parties

24    fails to choose an appraiser within the

25    specified time period or fails to cooperate in



Page 54

```
 1    any way so that the process described above
 2    cannot be completed prior to 120 days of the
 3    expiration of the primary term of this lease,
 4    the FMV of the one appraiser chosen by the
 5    cooperating party shall be used to determine the
 6    rent during the extension periods."
 7              Do you see that?
 8        A.    Yes.
 9        Q.    Did one of the parties not
10    cooperate?
11        A.    Yes.
12        Q.    And which party was that?
13        A.    Vanderbilt.
14        Q.    Was an appraiser able to be chosen
15    within the 120-day period?
16              MR. WALSH:  Objection to form and
17               also insofar as it calls for a legal
18               conclusion.
19              MR. KOH:  I will rephrase the
20               question.
21    BY MR. KOH:
22        Q.    Did any party to the option term
23    rent agreement, Exhibit D, fail to choose an
24    appraiser within the specified time period?
25              MR. WALSH:  Same objection.
```



Page 55

1                    You can answer, if you can.

2          A.    As I said before, the part -- the

3    appraisers agreed upon a third appraiser.

4    BY MR. KOH:

5          Q.    And did they do so timely under the

6    agreement, to your knowledge?

7                    MR. WALSH:  Objection to the form

8             and also insofar as it calls for a legal

9             conclusion.

10   BY MR. KOH:

11         Q.    Does McDonald's contend that

12   Vanderbilt failed to timely appoint any

13   appraiser?

14         A.    McDonald's contends that we did

15   not -- or that -- that Vanderbilt did not timely

16   appoint an appraiser in that we were never able

17   to enter into an engagement agreement with a

18   third appraiser because there was a disagreement

19   about the process by which the third appraiser

20   would do their job under the option rent

21   addendum.

22         Q.    Does McDonald's contend that

23   Vanderbilt failed to cooperate so that the

24   process described in the option rent addendum,

25   Exhibit D, could not be completed prior to 120



Page 56

1   days of the expiration of the primary term of

2   the lease?

3          A.   Yes.

4          Q.   And how does McDonald's believe that

5   Vanderbilt failed to cooperate?

6                 MR. WALSH:  Objection to form.

7             All this information is already in the

8             pleadings.

9                 But, Mr. Meyer, you can try to

10            answer, if you can.

11  BY MR. KOH:

12         Q.   Please answer the question.  We can

13  have it read back if you would like to do that.

14         A.   Please.

15                MR. KOH:  Please read the

16            question back.

17                   (Record read.)

18         A.   No. 1 would be what I just described

19  in that Vanderbilt refused to allow the third

20  appraiser, and the landlord and tenant selected

21  appraisers to complete the formal process as

22  described in the option rent addendum.

23                And then, No. 2, Vanderbilt

24  submitted an appraisal that was not in

25  compliance with the lease.



Page 57

 1   BY MR. KOH:

 2        Q.   Describe how Vanderbilt refused to

 3   allow the third appraiser and the landlord- and

 4   tenant-selected appraisers to complete the

 5   formal process as described in the option rent

 6   addendum.

 7              MR. WALSH:  Objection to form.

 8              You can answer, if you can.

 9        A.   Vanderbilt insisted on a process by

10   which they -- three appraisers all submit letter

11   opinions of value without discussion or an

12   ability to come to a consensus or a majority

13   opinion.

14   BY MR. KOH:

15        Q.   And McDonald's believes that process

16   wasn't allowed under the option rent term

17   addendum?

18        A.   Can you rephrase the question?

19        Q.   Sure.

20              Am I correct that McDonald's

21   believes that the option rent addendum does not

22   permit a process where all three appraisers

23   submit letter opinions of values without any

24   discussion or ability to come to a consensus or

25   a majority opinion?



Page 58

1              MR. WALSH:  Objection.

2              MR. KOH:  I'm not finished.  I'm

3         sorry.  Let me start again and rephrase.

4    BY MR. KOH:

5         Q.   Am I correct that McDonald's

6    believes that the option rent addendum does not

7    permit a process where all three appraisers

8    submit individual letter opinions of values

9    without any discussion or ability to come to a

10   consensus or a majority opinion?

11              Am I correct about that?

12        A.   Yes, that's correct.

13        Q.   Okay.

14              And is there anything specifically

15   in the option rent addendum that McDonald's is

16   relying upon for that conclusion?

17              MR. WALSH:  Objection to form.

18              All this information, as I said

19          before, is in the pleadings.

20              But, Mr. Meyer, you can attempt

21          to answer, if you can.

22        A.   Yes.

23   BY MR. KOH:

24        Q.   And what specific portion of the

25   option rent addendum is McDonald's relying on?



Page 59

 1                    MR. WALSH:  Same objection.

 2          A.   On page 1, the last paragraph, the

 3   last three sentences.

 4   BY MR. KOH:

 5          Q.   Anything else?

 6                    MR. WALSH:  Objection to form and

 7               also insofar as you're asking this

 8               witness to provide a legal opinion.

 9                    MR. KOH:  I stand by the

10               question.

11          A.   Sorry, what was the question?

12   BY MR. KOH:

13          Q.   The question was other than what you

14   have just described, is there anything else

15   you're relying on for the conclusion that the

16   option rent addendum does not permit the three

17   appraisers to submit individual letter opinions

18   of value without discussion?

19                    MR. WALSH:  Same objection.  Same

20               objection.  I'm sorry.

21          A.   Those are, I believe, the relevant

22   language from the option rent addendum.

23   BY MR. KOH:

24          Q.   Are you aware, Mr. Meyer, that

25   McDonald's has agreed to allow the three



Page 60

1    appraisers to discuss their letter opinions of

2    value as part of the process set forth in the

3    option rent addendum?

4                    MR. WALSH:  Objection to form.

5          A.   I don't understand the question.

6    BY MR. KOH:

7          Q.   Are you aware that at some point

8    during this litigation, Vanderbilt agreed to

9    allow the three appraisers to discuss their

10   letter opinions of value and attempt to come to

11   a consensus?

12                   MR. WALSH:  Objection to form.

13         A.   Allow during this litigation?  I

14   just don't understand the question.

15                   MR. KOH:  All right.  I will

16           withdraw the question.

17                   Bear with me one moment.  I want

18           to check a transcript reference.

19   BY MR. KOH:

20         Q.   You testified earlier that

21   Vanderbilt submitted an appraisal that was not

22   in compliance with the lease.  Explain how so.

23                   MR. WALSH:  Objection to form and

24           also insofar as it calls for a legal

25           conclusion.



```
 1                   But Mr. Meyer can answer, to the
 2            extent he can.
 3     BY MR. KOH:
 4            Q.   Go ahead, Mr. Meyer.
 5            A.   The first appraisal that landlord
 6     submitted used a land sales comparison approach
 7     which is not permitted under the lease.
 8            Q.   Was there another appraisal that was
 9     submitted that corrected that?
10                   MR. WALSH:  Objection to form and
11              also insofar as it calls for a legal
12              conclusion.
13     BY MR. KOH:
14            Q.   You mentioned the first appraisal
15     that Vanderbilt submitted.  How many appraisals
16     did Vanderbilt submit?
17            A.   I believe two.
18            Q.   Okay.
19                   When were those submitted?
20            A.   The first was submitted
21     approximately June or July of 2019.  The second
22     was submitted in approximately September,
23     October of 2019, but dated July 2019.
24            Q.   Was the appraisal submitted in June
25     or July of 2019 in writing or was that a
```



Page 62

1    discussion?

2                    MR. WALSH:  Objection to form.

3              I'm not sure what everyone is talking

4              about with the term submitted.

5                    MR. KOH:  I think that was the

6              word that your client used.  That's why

7              I chose it.

8                    So since he understands what he

9              meant, because I think most people

10             understand what they mean when they say

11             something, I would like him to answer

12             the question.

13        A.    Maybe the better term is issued.

14   Tom Tener issued a letter opinion of value.

15                  Like I said, I don't remember the

16   exact date, but I think it was in June or July

17   of 2019.

18   BY MR. KOH:

19        Q.    And then there was a subsequent

20   letter opinion of value?

21        A.    There was a second letter opinion of

22   value that was sent by, I believe -- I believe

23   by Morris Missry later in, like I said,

24   September, October.

25        Q.    What, if anything, was the



Page 63

1    difference between the two letter opinions of

2    value that Vanderbilt submitted?

3          A.    The value was the same.  I believe

4    the methodology was purportedly different.

5          Q.    Explain how the methodology was

6    purportedly different.

7                MR. WALSH:  I'm just going to

8             object insofar as the documents speak

9             for themselves.

10               But to the extent Mr. Meyer

11            recalls and can answer, he can answer.

12               MR. KOH:  I understand.

13   BY MR. KOH:

14         Q.    Explain how the methodology was

15   purportedly different.

16         A.    I believe the first appraisal, like

17   I said, was based on a land sales comparison

18   approach, and I believe the second appraisal was

19   based on both a land sales comparison report and

20   some type of land residual technique.

21         Q.    You said the methodology was

22   purportedly different.  Why did you say

23   purportedly?

24         A.    I'm not an expert in appraisal

25   methodology or technique, but I understood that



Page 64

1    from -- I believe from Morris Missry, that Tom
2    Tener had used a different technique.
3         Q.   So once the second letter opinion of
4    value was submitted, why couldn't the appraisal
5    process move forward?
6              MR. WALSH:  Objection to form.
7         A.   Because we believed that appraisal
8    was done in bad faith and not compliant with the
9    lease.
10   BY MR. KOH:
11        Q.   Why does McDonald's believe that the
12   second letter opinion of value was done in bad
13   faith and not in compliance with the lease?
14             MR. WALSH:  Objection to form
15        and --
16             MR. KOH:  Mr. Walsh, can I ask
17        you to confine your objections to form,
18        so just say objection to form.
19             MR. WALSH:  That's exactly what I
20        just said.
21             MR. KOH:  Yes, but I've noticed
22        that a number of your objections you
23        have also explained what the problem was
24        with the form.  If I need that
25        explanation, I'll ask you.



Page 65

1           MR. WALSH:  Okay.

2           And I'll make my objections as I

3      see fit.

4           MR. KOH:  Understood.

5      A.   Can you repeat the question?

6           MR. KOH:  Please read back the

7      question, Catherine.

8                (Record read.)

9      A.   First, the lease requires that the

10     valuation be done based on comparable leases and

11     that report was not.

12          And then secondly, the second

13     appraisal report again purported to take into

14     account the encumbrance of the 20-year lease but

15     somehow ended up with the same value as the

16     report that did not incorporate the encumbrance

17     of the 20-year lease.

18     BY MR. KOH:

19     Q.   Other than what you have just

20     testified to, does McDonald's have any other

21     reason to believe that the second appraisal was

22     done in bad faith and not in compliance with the

23     lease?

24          MR. WALSH:  Objection to form.

25          Also, in so far as it calls for a legal



Page 66

1          conclusion.

2          A.   The fact that the appraisal or the

3    letter opinion of value was dated July 30th and

4    Vanderbilt's agreement that the encumbrance of

5    the lease need be -- you had included as part of

6    the valuation didn't occur until months or a

7    month or so or more later than that.

8    BY MR. KOH:

9          Q.   Any other reasons that McDonald's

10   believes that the second opinion, letter opinion

11   of value from Vanderbilt was done in bad faith

12   and not in compliance with the lease?

13               MR. WALSH:  Same objections.

14         A.   Off the top of my head, no.  But we

15   would have laid them out in our pleadings were

16   there others.

17   BY MR. KOH:

18         Q.   When did McDonald's first learn that

19   Vanderbilt had acquired the ground lease

20   position at 840 Atlantic Avenue?

21         A.   I believe in late 2018.

22         Q.   And how did it learn that?

23         A.   I believe it was as a result of

24   Sharon Locatell's firm doing research on the

25   site as part of their valuation.



Page 67

```
 1          Q.   You said it was late 2018.  Could
 2    you possibly have meant late 2017, if you
 3    recall?
 4          A.   It's possible.
 5          Q.   Okay.
 6               And when for the first time -- I'm
 7    sorry, withdraw that question.
 8               When for the first time did
 9    McDonald's begin to evaluate the fair market
10    value of the lease premise at 840 Atlantic
11    Avenue?
12               MR. WALSH:  Objection to form.
13    BY MR. KOH:
14          Q.   You can go ahead and answer that, if
15    you know.
16          A.   McDonald's didn't evaluate the
17    valuation or the value of the property.  We
18    engaged Sharon Locatell, I believe, in early
19    2018 to do so.
20          Q.   Okay.
21               Prior to engaging Sharon Locatell,
22    did McDonald's take any steps to determine what
23    the fair market value of the lease for 840
24    Atlantic Avenue was?
25               MR. WALSH:  Objection to form.
```



Page 68

```
 1              A.   I don't, I don't recall.
 2                   MR. KOH:  Okay.
 3                   Let's bring up what's designated
 4              in my stack, Nat, as Exhibit No. 5 and
 5              mark it as Defendant's Exhibit E.
 6                        (Document bearing Bates
 7                   stamp MCD006445 through 006447 was
 8                   marked as Defendant's Exhibit E for
 9                   identification, as of this date.)
10   BY MR. KOH:
11         Q.   I have placed before you what has
12   been marked as Defendant's Exhibit E.
13              Can you tell us what this is?
14         A.   Let me look at it here.
15                   MR. WALSH:  If I can just jump in
16              for a moment.  I see this document is
17              stamped with the "Confidential - Subject
18              to Protective Order."
19                   I don't have the protective order
20              right in front of me, but I just request
21              that the parties comply with the
22              protective order insofar as depositions
23              are concerned.
24                   MR. KOH:  Would you like to
25              designate this portion of the deposition
```



Page 69

1          as confidential, Mr. Walsh?

2                  MR. WALSH:  Yes, if that is what

3          it calls for, which I assume it is.

4                  MR. KOH:  Well, I don't have the

5          document in front of me either.  That is

6          my assumption, as well.

7                  I'm happy to designate this

8          portion of the deposition transcript as

9          confidential.

10   BY MR. KOH:











Page 72









Page 74









Page 76

███████████████████████████

██████████████████

```
 3              MR. KOH:  All right.
 4              We have been going about 90
 5         minutes and that's usually as much as a
 6         lot of people can take.
 7              I suggest we take a 10-minute
 8         break, and we can return at 20 minutes
 9         to noon, or I guess 20 to 11 Illinois
10         time.
11              THE WITNESS:  Okay.
12              MR. KOH:  All right.
13              Thank you.
14              Off the record.
15                   (Whereupon, at 11:30 o'clock
16              a.m., a recess was taken until 11:40
17              o'clock a.m.)
18              MR. KOH:  Back on the record.
19              Nat, please put up what's marked
20         as 6 and mark that as Defendant's
21         Exhibit F.
22                   (Document bearing Bates
23              stamp MCD006375 through 006376 was
24              marked as Defendant's Exhibit F for
25              identification, as of this date.)
```



Page 77

1    BY MR. KOH:

2         Q.   Mr. Meyer, have you seen Defendant's

3    Exhibit F before?

4         A.   I'm copied, but I don't recall the

5    e-mail.

6         Q.   Okay.

7              Who is Jared Jones?

8         A.   He is an employee of Bohler

9    Engineering which is an engineering firm that we

10   work with.

11        Q.   And this Exhibit F also refers to

12   Mindy Monsees.  Who is that?

13        A.   She was -- I believe her title was

14   coordinator.  She worked in the Stamford field

15   office I think as a contractor.

16        Q.   Was Bohler ever engaged by

17   McDonald's to prepare a zoning analysis for the

18   site at 840 Atlantic Avenue?

19        A.   I don't recall one.

20        Q.   Was any kind of zoning analysis ever

21   prepared at McDonald's request for 840 Atlantic

22   Avenue?

23              MR. WALSH:  Objection to form.

24              MR. KOH:  Let me rephrase that.

25



Page 78

1    BY MR. KOH:

2         Q.   Did McDonald's receive any kind of

3    zoning analysis for the property at 840 Atlantic

4    Avenue from any of its contractors?

5              MR. WALSH:  Objection to form.

6    BY MR. KOH:

7         Q.   You can answer.

8         A.   It's possible.

9         Q.   That means it might have been, but

10   you don't know?

11        A.   I don't know.

12        Q.   Why was McDonald's seeking a zoning

13   analysis for the property at 840 Atlantic

14   Avenue?

15        A.   It could be for any number of

16   reasons.  I don't know why Carol was asking for

17   one in this e-mail, but there could be lots of

18   reasons.

19        Q.   Such as?

20        A.   In conjunction with a major remodel

21   project would be one.

22        Q.   Anything else?

23              MR. WALSH:  Objection to form.

24        A.   I don't know.

25



Page 79

1    BY MR. KOH:

2          Q.   Could McDonald's have used a zoning

3    analysis in connection with the fair market

4    value rent appraisal provided for in the option

5    rent addendum?

6                    MR. WALSH:  Objection to form.

7          A.   Possibly.  Like I said, I don't

8    remember one.

9                    MR. KOH:  Please bring up

10              Exhibit 7 and mark that as Defendant's

11              Exhibit G, please.

12                       (Document bearing Bates

13              stamp MCD006371 through 006375 was

14              marked as Defendant's Exhibit G for

15              identification, as of this date.)

16   BY MR. KOH:

17         Q.   Have you seen Exhibit G before?

18         A.   Yes.

19         Q.   Tell us what it is.

20         A.   It is a letter from Vanderbilt

21   Atlantic Holdings LLC stating the estimate of

22   the fair market value of the demised premises.

23         Q.   I notice that no one from McDonald's

24   countersigned it.  I assume, not correct, that

25   it was never countersigned?



Page 80

1          A.    I don't recall.

2          Q.    Okay.

3                In the Exhibit G in the second

4   paragraph, Vanderbilt writes that "Landlord has

5   determined that the fair market value of the

6   demised premises is $975,000".

7                Did McDonald's agree with that?

8          A.    No.

9          Q.    And what was the basis for the

10  disagreement?

11               MR. WALSH:  Objection to form.

12  BY MR. KOH:

13         Q.    Let me ask it more simply.  Why did

14  McDonald's disagree?

15         A.    Based on analysis that Ms. Locatell

16  had conducted.

17         Q.    What was that?  I'm sorry, were you

18  finished?

19         A.    Yes.

20         Q.    Okay.

21               What was the analysis that

22  Ms. Locatell had conducted?

23         A.    She had done some initial valuation

24  work.

25         Q.    Describe it, please.



Page 81

1           A.   I mean, I don't know how to describe

2      it beyond that.  She provided --

3           Q.   Go ahead and finish your answer.

4           A.   She provided initial information

5      about her -- how she valued the property, and it

6      was less than the amount in the letter.

7           Q.   And was this initial information in

8      written form?

9           A.   I don't recall the dates.

10          Q.   Did McDonald's engage any outside

11     contractors to help Ms. DeMarco -- I'm sorry,

12     Ms. Locatell, come up with this conclusion that

13     $975,000 was not the fair market rental value?

14               MR. WALSH:  Objection to form.

15     BY MR. KOH:

16          Q.   You can answer.

17          A.   Not that I recall.

18          Q.   Do you recall if McDonald's provided

19     any information to Ms. Locatell to assist

20     Ms. Locatell in evaluating whether $975,000 was

21     an accurate estimate of the fair market value --

22     fair market rental value of the demised

23     premises?

24          A.   Again, I don't remember the timing

25     exactly.  We did provide potential comparable



Page 82

1    leases to her.  It may have been after this,

2    though.  I don't remember the date.

3         Q.   Who specifically at McDonald's made

4    the decision not to countersign Exhibit G and

5    accept Vanderbilt's proposed fair market value

6    of $975,000?

7         A.   I don't recall if there was a formal

8    process or who decided.

9         Q.   Well, did you decide?

10        A.   No.

11        Q.   And you don't recall who did?

12        A.   I don't.

13        Q.   Who was involved in the decision to

14   reject the $957,000 fair market value estimate

15   that Vanderbilt provided?

16        A.   Carol DeMarco.  Potentially Dave

17   Kearns.

18        Q.   Anyone else?

19        A.   Not that I recall.

20        Q.   Who is David Kearns?

21        A.   He's Carol's boss.

22        Q.   What is his title at McDonald's?

23        A.   I believe portfolio director.

24        Q.   What are Ms. DeMarco's

25   responsibilities --



Page 83

1                MR. WALSH:  Objection to form.

2   BY MR. KOH:

3        Q.   -- at McDonald's?

4        A.   She is an asset manager.  And as I

5   described previously, she is responsible for

6   leased McDonald's sites in the Stamford -- in a

7   portion of the Stamford field office territory.

8        Q.   And David Kearns is the portfolio

9   director at McDonald's.  What are his

10  responsibilities?

11               MR. WALSH:  Objection to form.

12       A.   He manages the asset managers.  So

13  technically there's around 10 asset managers

14  around the country, and he manages that team.

15               He may have other responsibilities,

16  as well.  I believe that's the primary

17  responsibility.

18  BY MR. KOH:

19       Q.   You said there were 10 asset

20  managers throughout the country.  Am I correct

21  that Ms. DeMarco was one of those 10 asset

22  managers?

23       A.   Yes.

24       Q.   How did McDonald's determine to

25  select Sharon Locatell as its appraiser as part



Page 84

1    of the FMV process described in the option term

2    rent addendum?

3                MR. WALSH:  Objection to form.

4         A.   Ms. Locatell has worked with

5    McDonald's for a number of years in valuing real

6    estate in the New York City area.

7    BY MR. KOH:

8         Q.   How many assignments, to your

9    knowledge, has Ms. Locatell completed for

10   McDonald's?

11               MR. WALSH:  Objection to form.

12        A.   I don't know the number.

13   BY MR. KOH:

14        Q.   Is it more than five?

15        A.   I believe so.

16        Q.   Is it more than 10?

17        A.   Like I said, I don't know the

18   number.

19        Q.   Is it more than 50?

20               MR. WALSH:  Objection to form.

21         He said he doesn't know the number.

22               MR. KOH:  I know he doesn't know

23          the exact number.  That's what he

24          testified to.  I'm trying to get a sense

25          of a range.  The question is proper.



Page 85

1    BY MR. KOH:

2          Q.   Is it more than 50?

3          A.   I don't know.

4          Q.   Who made the decision to hire

5    Ms. Locatell for this particular assignment in

6    connection with 840 Atlantic Avenue?

7          A.   Carol.

8          Q.   Do you know if McDonald's considered

9    any other appraisers before they selected

10   Ms. Locatell for this assignment at 840 Atlantic

11   Avenue?

12         A.   I don't believe so.

13         Q.   What do you recall McDonald's doing

14   after it received Exhibit G --

15              MR. WALSH:   Objection to form.

16   BY MR. KOH:

17         Q.   -- in terms of the property at 840

18   Atlantic Avenue?

19              MR. WALSH:   Same objection.

20         A.   I recall thereafter, and I believe

21   before, there were discussions between Carol and

22   Sam Rottenberg about attempting to negotiate

23   fair market rental value.

24   BY MR. KOH:

25         Q.   Do you recall McDonald's doing



Page 86

1    anything else in connection with the property at

2    840 Atlantic Avenue?

3                   MR. WALSH:  Objection to form.

4         A.   No, I don't remember McDonald's

5    doing anything else.

6    BY MR. KOH:

7         Q.   I would like you to --

8                   MR. KOH:  Well, let's bring up

9              what's No. 8 in the stack, please, and

10             we'll mark that as Exhibit H.

11                       (Document bearing Bates

12              stamp MCD000294 through 000306 was

13              marked as Defendant's Exhibit H for

14              identification, as of this date.)

15   BY MR. KOH:

16        Q.   Mr. Meyer, have you seen Exhibit H

17   before?

18        A.   Hold on, I'm taking a look here.

19        Q.   Okay.

20        A.   Yes, I have seen this before.

21        Q.   And what is it?

22        A.   It is a letter from Sharon Locatell

23   to McDonald's valuing the 840 Atlantic Avenue

24   property.

25        Q.   Did you view this letter on or about



Page 87

1    December 12th as the letter is dated?

2         A.   I don't recall.

3         Q.   There's some handwriting on the

4    first page.  It says, I believe, "Delivered

5    vacant/redevelopment site."

6              Whose handwriting is that?

7         A.   I don't know.

8         Q.   Turn to page 9 of this document

9    bearing Bates Stamp No. 302.

10        A.   Okay.

11        Q.   Am I correct that Ms. Locatell

12   valued the land at 840 Atlantic Avenue at

13   $9,900,000?

14             MR. WALSH:  Objection to form.

15        A.   It says "It is our opinion that the

16   value of those subject sites is currently

17   estimated at $9,900,000".

18   BY MR. KOH:

19        Q.   And then Ms. Locatell writes

20   "Appropriate ground rent rates range from 4

21   percent to 6 percent".

22             Do you see that?

23        A.   Yes.

24        Q.   So is it accurate to say that

25   Ms. Locatell concludes that applying those



Page 88

1    factors at a hundred percent the rent range is

2    from 396,000 to $594,000, correct?

3                    MR. WALSH:  Objection to form.

4        A.   Yes, this is -- I think this is

5    the -- these are -- I know there was more than

6    one initial valuation that she did prior to the

7    formal process to assist in, you know, the

8    negotiation process between Carol and Sam.

9    BY MR. KOH:

10       Q.   Was it to assist -- was it for any

11   other purpose other than to assist in the formal

12   negotiation process between Carol and Sam?

13                   MR. WALSH:  Objection to form.

14       A.   I mean, she was giving her initial

15   valuation of the property, but it was -- that's

16   what was going on with this transaction at the

17   time.

18   BY MR. KOH:

19       Q.   Am I correct that in Exhibit H,

20   Ms. Locatell used a sales comparison approach to

21   value the property?

22                   MR. WALSH:  Objection to form.

23       A.   Yes, that's correct.

24   BY MR. KOH:

25       Q.   Is the use of the sales comparison



Page 89

1    approach something that McDonald's asked

2    Ms. Locatell to do?

3            A.   I don't know if we asked her -- I

4    know she did multiple valuation reports at this

5    time based on different methodologies.

6                    MR. KOH:  Let's bring up the next

7               document, which is No. 9 in the stack,

8               and mark it as Defendant's Exhibit I.

9                       (Document bearing Bates

10              stamp MCD000343 through 000350 was

11              marked as Defendant's Exhibit I for

12              identification, as of this date.)

13   BY MR. KOH:

14           Q.   Do you have that in front of you?

15           A.   I do.

16           Q.   Do you recognize this document?

17           A.   Yes.

18           Q.   So what is Defendant's Exhibit I?

19           A.   It is another one of the initial

20   valuations Ms. Locatell did at this time.

21           Q.   There's handwriting on the first

22   page that appears to me to read "Net Lease

23   Comps."

24                    Do you know whose handwriting that

25   is?



Page 90

```
 1          A.    I don't.
 2          Q.    Both Exhibits H and I are addressed
 3    specifically to you.  Did you personally request
 4    these evaluations?
 5          A.    I did not.
 6          Q.    Do you know who did?
 7          A.    I don't.
 8          Q.    What appraisal methodology is used
 9    in Defendant's Exhibit I?
10                MR. WALSH:  Objection to form.
11          A.    It appears to be a comparable lease
12    methodology.
13    BY MR. KOH:
14          Q.    And am I correct to conclude that
15    under that methodology, Ms. Locatell concludes
16    that the fair market rental value - and this is
17    on page 5 of the document, Bates stamped 347, is
18    300,800?
19                MR. WALSH:  Objection to form.
20          A.    Yes, it says "We estimate a ground
21    lease value at $80 a square foot of gross
22    building area or fair market value of
23    approximately 300,000".
24    BY MR. KOH:
25          Q.    Turn to page 3 of Defendant's
```


MAGNA
LEGAL SERVICES

Page 91

1    Exhibit I.

2         A.   Okay.

3         Q.   In the last paragraph on that page,

4    the second sentence reads "Just three somewhat

5    comparable leases were uncovered."

6              Do you recall seeing that sentence

7    before?

8         A.   I don't recall specifically.

9         Q.   Do you recall any discussions with

10   Ms. Locatell in or around December or November

11   of 2018 concerning finding comparable leases for

12   the property at 840 Atlantic Avenue?

13        A.   I don't remember any specific

14   discussions.

15        Q.   Why did McDonald's choose to have

16   valuation for this property compared both under

17   the sales or rental comparison approach and

18   under the land sale value approach?

19        A.   This was in the negotiation period,

20   so it would be typical for us to look at the

21   valuation in a number of different ways in order

22   to, you know, to talk apples to apples with the

23   landlord.

24              So Carol just had, you know, the

25   largest amount of information when she was



Page 92

1    talking to Mr. Rottenberg about the valuation or

2    about an agreed-upon fair market rental value.

3                    MR. KOH:  Please bring up what we

4            have marked as No. 10 in the stack, and

5            we'll mark that as Exhibit J.

6                        (Document bearing Bates

7                stamp MCD006026 through 006028 was

8                marked as Defendant's Exhibit J for

9                identification, as of this date.)

10   BY MR. KOH:

11           Q.   Have you seen any part of Exhibit J

12   before?

13           A.   Give me a minute.

14           Q.   Sure.

15           A.   Okay.

16           Q.   Do you know what Exhibit J is?

17           A.   Yes.

18           Q.   Tell us what it is, please.

19           A.   It is an e-mail chain between Carol

20   DeMarco and other McDonald's folks regarding the

21   exercise of the 840 Atlantic Avenue lease

22   option.

23                    MR. WALSH:  And, Mr. Meyer, are

24           you done with your answer?

25                    THE WITNESS:  Yes.



```
1              MR. WALSH:  I just would like to
2         designate this portion of the deposition
3         as confidential, as well.
4              I see that this is also marked as
5         Confidential, Subject to Protective
6         Order.
7              MR. KOH:  That's fine.  I assumed
8         we hadn't come out, frankly.  But if we
9         haven't, we'll stay in.  If we did come
10        out at some point, we're back in.
```







Page 95









Page 97





Page 98











17          MR. KOH:  Now let's bring up the

18     document in the stack that's numbered

19     11, please, and we'll mark that as

20     Exhibit K.

21               (Document bearing Bates

22          stamp MCD006633 through 006636 was

23          marked as Defendant's Exhibit K for

24          identification, as of this date.)

25











Page 103

```
 1              MR. KOH:  Now, please let's bring
 2         up Exhibit 12 and mark that as
 3         Exhibit L.
 4                   (Document bearing Bates
 5              stamp MCD006023 through 006025 was
 6              marked as Defendant's Exhibit L for
 7              identification, as of this date.)
```





Page 104

















text1

Page 108





Page 109





Page 110



```
19                    MR. KOH:  All right.
20                    Let's bring up what's marked as
21            No. 13, please, and let's mark that as
22            Defendant's Exhibit M.
23                    (Document bearing Bates
24            stamp MCD006325 through 006331 was
25            marked as Defendant's Exhibit M for
```



Page 111

1                    identification, as of this date.)





Page 112

















Page 116





Page 117





























Page 124





Page 125





Page 126





[redacted]

Page 128

```
 1                    MR. KOH:  All right.
 2                    Let's bring up what has been
 3           marked as No. 14, and mark it as
 4           Defendant's Exhibit N as in Nancy.
 5                         (Document bearing Bates
 6              stamp MCD007200 through 007248 was
 7              marked as Defendant's Exhibit N for
 8              identification, as of this date.)
 9                    MR. WALSH:  Howard, how long --
10           I'm not trying to nail you down to a
11           specific time.  We have been going for
12           about an hour and 20 minutes.
13                    How long do you expect to talk
14           about this document?  I'm wondering if
15           we should take a break now.
16                    MR. KOH:  I was going to try to
17           work my way through this document, but
18           if everybody feels now is a good time to
19           break, we can do that and we can come
20           back at the end of lunch.
21                    I want to defer -- the most
22           important person in this room is
23           actually our court reporter, and the
24           second most important is Mr. Meyer.
25                    So if they want to break, that's
```



Page 129

```
1          what we're going to do.  And I'm happy
2          to do that now.  You know, it is about,
3          you know, 1:00 o'clock here.  We started
4          at 10, so it has been three hours.
5               I can go another half hour or we
6          can stop now.  It is up to you, unless
7          either Mr. Meyer or Ms. Donahue overrule
8          me.
9               MR. WALSH:  Whatever Mr. Meyer
10         and the court reporter would like to do.
11         Now seems like a decent time, but I'm
12         flexible.
13              MR. KOH:  I'm happy to stop now
14         if that's what you want to do, Brendan.
15         We'll adjourn for a half hour and we'll
16         come back at 1:30, and I think that's
17         great.
18              Off the record.
19                   (Whereupon, at 1:00 o'clock
20         p.m., a recess was taken until 1:30
21         o'clock p.m.)
22
23
24
25
```



Page 130

1          A F T E R N O O N   S E S S I O N

2                  1:30 o'clock p.m.

3              MR. KOH:  Back on the record.













Page 133





Page 134





Page 135





















Page 140





Page 141

█

█████████████

█        █        █████████████████

█        █        ████

█                 █████████████████████

██████████████████████████████████████

██████████████████████████████████████

█        ████████

█        █        ██████████████

```
 9                    MR. KOH:  Let's bring up what's
10              been marked -- stacked as No. 15, and
11              mark it as Exhibit O as in ostrich.
12                           (Document bearing Bates
13              stamp MCD00888 through 000889 was
14              marked as Defendant's Exhibit O for
15              identification, as of this date.)
16     BY MR. KOH:
17              Q.   Have you seen Exhibit O before?
18              A.   Yes.
19              Q.   And that's a letter that you signed
20     and sent to Tom Li at Vanderbilt?
21              A.   That's correct.
22              Q.   And why did you send this letter?
23              A.   Pursuant to the option rent
24     addendum, it is required that once it is clear
25     that the parties are unable to agree upon the
```



Page 142

1     fair market value of the demised premises, a

2     letter or notification needs to be sent in order

3     to initiate the formal three-appraiser process.

4          Q.   How did it become clear that the

5     parties were unable to reach an agreement?

6          A.   After multiple conversations between

7     Carol and Sam Rottenberg, the parties were very

8     far apart on what the rental amount should be.

9          Q.   Did you participate in any of these

10    conversations that you just described?

11         A.   I don't believe I ever was on the

12    phone with Carol and Sam.

13         Q.   Did Carol tell you what happened

14    during these telephone calls between her and Sam

15    Rottenberg?

16         A.   Not blow-by-blow, but certain

17    discussions.

18         Q.   And what did she tell you?

19         A.   One thing I recall is that Sam had

20    asked what McDonald's was going to do if the

21    rent was higher than they were willing to pay.

22              And otherwise, just never a, you

23    know, a real discussion about, you know, numbers

24    in terms of where they could compromise.

25         Q.   Why did McDonald's choose to send



Page 143

1    out this letter on April 15th as opposed to an

2    earlier date or a later date?

3          A.   I don't recall specifically.  It may

4    happen -- it may have to do with the timeframe

5    set forth in the option rent addendum.

6          Q.   Did it have anything to do with when

7    the extended term of George Michell's operator's

8    lease began, which was April 8, 2019?

9          A.   Not to my knowledge.

10         Q.   Okay.

11              MR. KOH:  Let's bring up what has

12          been marked as No. 16, please, and mark

13          it as Exhibit P as in Peter.

14                   (Document bearing Bates

15              stamp MCD003003 was marked as

16              Defendant's Exhibit P for

17              identification, as of this date.)

18   BY MR. KOH:

19         Q.   Have you seen Exhibit 16 before,

20   Mr. Meyer -- I'm sorry, Exhibit P?

21         A.   I wasn't copied, but I have seen it.

22         Q.   Okay.

23              This is an e-mail from Sharon

24   Locatell to Ms. DeMarco and Ellen Benjamin.

25              Do you see that?



Page 144

```
 1          A.   Yes.

 2          Q.   And just for the record, can you

 3   tell us who Ellen Benjamin is?

 4          A.   She works for Sharon's appraisal

 5   firm, Appraisers and Planners.

 6          Q.   And Ms. Locatell writes "Hi Carol, I

 7   spoke with Tom Tener."

 8               You understand Tom Tener was

 9   Vanderbilt's appraiser, right?

10          A.   Yes.

11          Q.   And she writes, "His side is pushing

12   for us to select the third appraiser.  I told

13   him I'm not ready, that I need to do work and

14   will circle back to him the first full week of

15   May."

16               Do you see that?

17          A.   That's what it says.

18          Q.   Yes.

19               Do you understand why Ms. Locatell

20   wouldn't have been ready to select the third

21   appraiser?

22                    MR. WALSH:  Objection to the

23                form.

24          A.   I don't know specifically why she

25   wasn't ready, but the option rent addendum
```



Page 145

1    provides for timeframes by which these things

2    need to happen, and I don't believe that time

3    period had expired or was -- there was still

4    time under the option rent addendum.

5             And I believe in addition to

6    selecting the third appraiser, there would have

7    been additional work Sharon would have needed to

8    do.

9             So she's saying she's not ready and

10   she has additional work to do.

11   BY MR. KOH:

12        Q.   Do you recall discussing with

13   Ms. Locatell why she wasn't ready?

14        A.   Not specifically to this e-mail or

15   time period.  I mean, she's busy.  That would be

16   my assumption.

17        Q.   The letter also says -- I'm sorry,

18   the e-mail which we have marked as Exhibit P

19   also says "In the meantime, Ellen will continue

20   to work on collecting new data."

21             Do you have any understanding of

22   what that data was?

23             MR. WALSH:  Objection to the

24        form.

25        A.   I don't.  I don't know what she's



Page 146

1    referencing.

2    BY MR. KOH:

3         Q.   Did you ever discuss with

4    Appraisers and Planners the need to collect new

5    data or about the time McDonald's invoked the

6    third appraiser process?

7              MR. WALSH:  Objection to the form

8         insofar as it assumes facts not in the

9         record.

10             MR. KOH:  All right.

11             I'll correct that.

12   BY MR. KOH:

13        Q.   Do you ever recall discussing with

14   Sharon Locatell in or about April of 2019

15   collecting new data?

16        A.   No, other than we were -- she and we

17   were collecting potentially comparable ground

18   leases since, as I said before, that those

19   aren't a public record.  So it was -- that was

20   ongoing.

21        Q.   If Ms. Locatell had already provided

22   two appraisal reports to McDonald's, why was

23   additional data needed?

24             MR. WALSH:  Objection to the

25        form.



Page 147

1          A.   Because there's always leases being

2     signed.  You know, there's always a use for

3     additional data.

4               MR. KOH:  Let's bring up what has

5          been put in the stack as No. 17, and

6          mark it as Exhibit Q, please.

7                    (Document bearing Bates

8          stamp MCD002897 and 002898 was

9          marked as Defendant's Exhibit Q for

10         identification, as of this date.)

11    BY MR. KOH:

12         Q.   Have you seen Exhibit Q before?

13         A.   I was not copied on it, but I have

14    seen it.

15         Q.   In this e-mail, again from

16    Ms. Locatell to Ms. DeMarco, Ms. Locatell

17    writes, "Hi Carol, Tom Tener has reached out and

18    wants us to pick the third appraiser."

19              Do you see that?

20         A.   Yes.

21         Q.   So this is the second time that

22    Vanderbilt's appraiser wanted to pick the third

23    appraiser, correct?

24              MR. WALSH:  Objection to the

25         form.



Page 148

1          A.   I mean, based on the previous

2     exhibit, I don't know if this is additional

3     reach-out or if -- I don't know if this -- you

4     know, how she came about that information.

5     BY MR. KOH:

6          Q.   Then in the next paragraph,

7     Ms. Locatell writes, "Ellen has been working on

8     rezoning scenarios and has spoken with a land

9     use attorney for some general guidance."

10              Do you see that?

11         A.   I do.

12         Q.   Did McDonald's ask Appraisers and

13    Planners to work on rezoning scenarios?

14         A.   Not that I know of.

15         Q.   Did McDonald's ask Appraisers and

16    Planners to speak with a land use attorney?

17         A.   I don't believe so.

18         Q.   Do you have any understanding as to

19    why Appraisers and Planners was working on

20    rezoning scenarios?

21              MR. WALSH:  Objection to form.

22         A.   I mean, I'm assuming it is part of

23    their appraisal valuation process.

24    BY MR. KOH:

25         Q.   At any time, did you discuss



Page 149

1    rezoning scenarios with any representatives from

2    Appraisers and Planners?

3          A.   I mean, I generally recall some

4    discussions about it in that I think from Tom

5    and Sharon's discussions, that rezoning was part

6    of Tom's valuation.

7               And then I -- again, I don't

8    remember the specifics of those discussions, but

9    ultimately we decided it wasn't necessary.

10         Q.   When you say we decided it wasn't

11   necessary, who did you mean by "we"?

12         A.   McDonald's and Appraisers and

13   Planners.

14         Q.   Why did you decide it wasn't

15   necessary?

16         A.   We reviewed the case law and

17   determined that the valuation was to be done,

18   including all encumbrances of the lease and

19   current zoning.

20         Q.   Do you know if Mr. Tener agreed with

21   that conclusion?

22         A.   I don't know what he believed.  I

23   know what his appraisal reports indicated.

24         Q.   What do you remember discussing with

25   Ms. Locatell concerning a land use attorney in



Page 150

1    connection with this fair market appraisal

2    process?

3         A.    I recall she recommended a number of

4    land use attorneys that she had worked with

5    before.  And again, we ultimately decided we

6    didn't -- there was no need to engage a land use

7    attorney.

8         Q.    And again, that was a decision that

9    both McDonald's and Appraisers and Planners

10   made?

11        A.    Yes.

12             MR. KOH:  All right.

13             Let's bring up the next document

14          which is No. 18, and mark it as

15          Exhibit R.

16                  (Document bearing Bates

17             stamp MCD002952 through 002954 was

18             marked as Defendant's Exhibit R for

19             identification, as of this date.)

20   BY MR. KOH:

21        Q.    Have you seen Exhibit R before?

22        A.    I'm taking a look here.  Yes, I've

23   seen it.

24        Q.    What is it?

25        A.    It is an e-mail chain between



Page 151

1   Sharon, Carol and Ellen.

2        Q.   And in the e-mail dated May 6, 2019

3   at 2:57, Ms. Benjamin writes "Carol, Sharon is

4   asking for recent net leases signed by

5   McDonald's.  I told her you were going to get us

6   information on the following," and then there's

7   a list of places, including North Babylon,

8   Valley Stream, Bruckner Boulevard and Oakdale.

9             And then Ms. DeMarco responds to

10  that e-mail a little bit later that day.  "Hi

11  Ellen and Sharon, I need to discuss internally

12  for approval.  I thought that would help for

13  20th Avenue."

14            What does 20th Avenue refer to, if

15  you know?

16       A.   I believe it is referring to another

17  restaurant location.

18       Q.   So this was another appraisal

19  assignment that Appraisers and Planners was

20  working on for McDonald's?

21            MR. WALSH:  Objection to the

22       form.

23  BY MR. KOH:

24       Q.   Was this another appraisal

25  assignment that Appraisers and Planners was



Page 152

1    working on for McDonald's?

2                    MR. WALSH:   Object to the form.

3           A.   I believe so.

4    BY MR. KOH:

5           Q.   And then Ms. DeMarco writes, "As we

6    discussed, McD," which I assume is McDonald's,

7    "doesn't typically use their deals as comps."

8                    Was that some kind of policy at

9    McDonald's?

10          A.   It is sort of an informal policy.

11          Q.   And what's their rationale behind

12   that informal policy?

13          A.   McDonald's leases are not a matter

14   of public record.  So we don't like to make them

15   public or share them to the extent we don't need

16   to.

17          Q.   So is that why Ms. DeMarco needed

18   internal approval?

19          A.   That's what she says here.

20          Q.   Then Ms. DeMarco writes, "If there

21   is no other good data, I will advise."

22                    Does that mean that there could be

23   exceptions to the policy about using McDonald's

24   own leases as comps?

25                    MR. WALSH:  Objection to form.



Page 153

1   BY MR. KOH:

2        Q.   Well, what do you understand the

3   sentence "If there is no other good data" and

4   then the second sentence to mean?

5        A.   I understand this e-mail to mean

6   that she is going to ask and will advise what

7   she finds out.

8              MR. KOH:  All right.

9              Let's please bring up No. 19, and

10        mark it as Defendant's Exhibit S.

11                  (Document bearing Bates

12            stamp MCD007579 through 007582 was

13            marked as Defendant's Exhibit S for

14            identification, as of this date.)

15   BY MR. KOH:

16        Q.   Have you seen Defendant's Exhibit S

17   before, Mr. Meyer?

18        A.   Let me scroll through.

19        Q.   Sure.

20        A.   This is an e-mail chain between

21   Morris Missry and I.

22        Q.   And who did you understand Morris

23   Missry to be in connection with the property at

24   840 Atlantic Avenue?

25        A.   Counsel for Vanderbilt.



Page 154

```
 1          Q.   And what were you discussing in this
 2    e-mail chain?
 3          A.   It starts with me attempting to set
 4    up a call in order to discuss and come to an
 5    agreement on the appraisal process for the fair
 6    market value lease option.
 7          Q.   And why was there a need to come to
 8    an agreement for the appraisal process?  Was
 9    that not laid out in the option rent term
10    addendum?
11                MR. WALSH:  Objection to form.
12                MR. KOH:  I will withdraw and
13           rephrase.
14    BY MR. KOH:
15          Q.   Why was there a need to come to an
16    agreement on the fair market value process?
17                MR. WALSH:  Same objection.
18          A.   Because there was a disagreement.
19    BY MR. KOH:
20          Q.   What was the nature of the
21    disagreement?
22          A.   The nature of the disagreement was
23    that the option rent addendum sets forth how the
24    formal process is supposed to work, and Morris
25    Missry on behalf of Vanderbilt believed that
```



Page 155

1  that process involved each appraiser doing a
2  letter opinion of value and then the three being
3  averaged.
4          Q.   Was it the three being averaged or
5  only the three being averaged if the third
6  appraiser didn't agree with one of the party
7  appraisers?
8          A.   Well, Mr. Missry believed that the
9  three parties would never have the opportunity
10 to discuss and agree.
11              So unless two appraisers came to --
12 independently came to the same value to the cent
13 without any discussion, then the appraisals or
14 the letter of opinions of value would need to be
15 averaged.
16         Q.   And Mr. Missry writes in the first
17 e-mail dated May 15th, "Mike, please let me know
18 when you're going to get back to me.  I read the
19 provision again and I don't see where the three
20 appraisers would issue one letter opinion of
21 value."
22              Did you discuss that specific issue
23 with Mr. Missry?
24         A.   I'm not sure what he means there.
25 It to me is a mischaracterization of our reading



Page 156

1    of the lease.

2          Q.   Do you believe that it was a

3    mischaracterization that Mr. Missry made in bad

4    faith?

5          A.   I don't -- I have no idea.

6          Q.   At the time that Exhibit S was

7    prepared, May 15, 2019, had the parties

8    exchanged -- let me rephrase that -- had the

9    party appraisers presented their opinions of

10   fair market value to each other?

11         A.   I don't believe so.

12              MR. KOH:  Let's bring up what's

13          marked in the stack as No. 20, and mark

14          that as Exhibit T.

15                   (Document bearing Bates

16               stamp MCD006513 was marked as

17               Defendant's Exhibit T for

18               identification, as of this date.)

19   BY MR. KOH:

20         Q.   Are you familiar with Exhibit T,

21   Mr. Meyer?

22         A.   Let me read through it.

23         Q.   Sure.

24         A.   Yes, I was copied on it.

25         Q.   And this is an e-mail that



Page 157

1    Ms. DeMarco sent to Mr. Kearns, correct?

2           A.    Correct.

3           Q.    And Mr. Kearns was the portfolio

4    director.  Is that what his title was?

5           A.    I believe so.

6           Q.    And it refers to a discussion about

7    the site at 840 Atlantic Avenue, correct?

8                 MR. WALSH:  Objection to form.

9           A.    I don't know if it refers to a

10   discussion.  It is looking to schedule a call

11   for a discussion.

12   BY MR. KOH:

13          Q.    Yes.

14                Do you know if that call was ever

15   scheduled?

16          A.    I don't remember.

17          Q.    Okay.

18                Do you remember if at any time

19   Ms. DeMarco discussed background and status of

20   the issues at 840 Atlantic Avenue with

21   Mr. Kearns?

22          A.    I recall being on at least one call

23   with Dave Kearns and Carol on this topic.

24          Q.    And what -- I'm sorry, what did

25   Carol DeMarco say to Dave Kearns during that



Page 158

1    call?

2                    MR. WALSH:  I'm just going to

3            object insofar as it calls for

4            privileged information.

5                    You can answer insofar as you can

6            without revealing the nature of any

7            potential privileged discussions that

8            were had on that call.

9                    But any non-privileged

10           information, I have no objection to.

11                   MR. KOH:  Right.  I assumed that

12           non-privileged information included

13           background and status as distinct from

14           legal advice.  And that's why I asked

15           what Ms. DeMarco said to Mr. Kearns

16           about 840 Atlantic Avenue.

17   BY MR. KOH:

18           Q.   So to the extent you can answer that

19   question - I don't believe it calls for

20   privileged information and it is not my intent

21   to learn privileged information - please answer

22   the question.

23                   MR. WALSH:  Again, I just don't

24           necessarily disagree, but it is possible

25           that Ms. DeMarco could have shared her



Page 159

1           understanding in the nature of her

2           communications based upon discussions

3           that she had with Mike.

4                I just caution the witness not to

5           reveal any privileged information, but

6           please answer fully with respect to any

7           non-privileged information that was

8           discussed on that call.

9      A.   I don't recall specifically what

10   background and status information Carol gave to

11   Dave on that call.  I was participating in order

12   to provide legal advice to the two of them.

13   BY MR. KOH:

14        Q.   What was Mr. Kearns' role with

15   respect to the issue of the appraiser and rent

16   to be paid at 840 Atlantic Avenue?

17             MR. WALSH:  Objection to the

18        form.

19             MR. KOH:  I'm sorry?

20             MR. WALSH:  I objected to the

21        form.

22        A.   He is Carol's boss, so he was

23   assisting with decision-making, approvals,

24   et cetera.

25



Page 160

1    BY MR. KOH:

2         Q.   What sort of decisions was

3    Mr. Kearns assisting with?

4              MR. WALSH:  Objection to the

5          form.

6              And again, I would caution the

7          witness not to reveal the nature of any

8          privileged discussions.

9    BY MR. KOH:

10        Q.   To the extent you can answer without

11   revealing the nature of privileged discussions,

12   I think you can, please do so.

13             MR. WALSH:  Objection.

14        A.   Can you repeat the question?

15             MR. KOH:  Please read the

16          question back.

17             MR. WALSH:  And I object to you

18          telling the witness that you think he

19          can answer without revealing privileged

20          information.  That is up to the witness

21          to decide.

22             MR. KOH:  I think it is actually

23          up to the judge to decide ultimately.

24             But go ahead and answer the

25          question to the best of your ability.



Page 161

```
 1                    (Record read.)
 2          A.   I guess I don't understand the
 3    question.  Just decisions on how to, you know --
 4    on next steps, et cetera.
 5    BY MR. KOH:
 6          Q.   All right.
 7               In an earlier answer, you told me
 8    that Mr. Kearns was Ms. DeMarco's boss, so he
 9    was assisting with decision-making, approvals,
10    et cetera?
11          A.   Yes.
12          Q.   So what kind of decisions?
13          A.   How McDonald's would proceed.  I
14    don't remember any specific items for decision.
15               I mean, in addition to that, this
16    would have also been an update on what was going
17    on with the transaction.
18          Q.   What transaction are you referring
19    to?
20          A.   840 Atlantic Avenue rent reset.
21               MR. KOH:  All right.
22               Please bring up No. 21, and we'll
23             mark that as Exhibit U.  I'm sorry,
24             that's a duplicate.  Don't do that.
25               Ignore 21 and please bring up
```



1           No. 22, and mark that as Defendant's

2           Exhibit U.

3                    (Document bearing Bates

4               stamp MCD001240 through 001253 was

5               marked as Defendant's Exhibit U for

6               identification, as of this date.)

7    BY MR. KOH:

8           Q.   Do you recognize Defendant's

9    Exhibit U, Mr. Meyer?

10          A.   I'm scrolling through.  I don't

11   remember it specifically, but it looks like a

12   draft letter opinion of value from Sharon

13   Locatell.

14          Q.   Do you see that it is signed on

15   page 10 and certification on page 11?

16               MR. WALSH:  Object to the form

17            and characterization.

18          A.   I do, but I also see some internal

19   notes that makes me think it is a draft.

20   BY MR. KOH:

21          Q.   Specifically, what internal notes do

22   you see?

23          A.   On page 18, Bates No. 1247, it says

24   "EB stopped here."

25          Q.   Right.



Page 163

```
 1                    Do you have any understanding of
 2     what that means?
 3            A.   I don't.
 4            Q.   You say page 18.  Did you mean to
 5     say page 8?
 6            A.   Yes, Bates stamp 1247.
 7            Q.   Do you have any idea why
 8     Ms. Locatell sent this to you?
 9            A.   I don't know that she did.  I don't
10     know if she did or why.
11            Q.   Do you recall reviewing this draft
12     on or about May 22, 2019?
13            A.   I don't recall.
14            Q.   Do you see on page 10 it uses the
15     $9.9 million land value?
16                    Do you see that?
17            A.   I see that.
18            Q.   Do you have any understanding of why
19     Ms. Locatell at this point was using the land --
20     withdraw that question.  Let me ask another one
21     instead.
22                    Do you have any idea why as of
23     May 2019 Ms. Locatell was evaluating 840
24     Atlantic Avenue using the sales comparison
25     approach?
```



Page 164

```
 1                    MR. WALSH:  Object to the form
 2            and object insofar as it assumes facts
 3            not in the record.
 4    BY MR. KOH:
 5            Q.   You can answer.
 6            A.   I don't know why.
 7                    MR. KOH:  All right.
 8                    Let's bring up what's marked as
 9            No. 23, and we'll mark it as Exhibit V.
10                        (Document bearing Bates
11                    stamp MCD002908 through 002909 was
12                    marked as Defendant's Exhibit V for
13                    identification, as of this date.)
14    BY MR. KOH:
15            Q.   Mr. Meyer, do you know what that is?
16            A.   It is an e-mail chain between
17    Sharon, Carol and myself.
18            Q.   All right.
19                    And is there an attachment to that
20    e-mail, to your knowledge?  Can you tell by
21    looking at the document?
22            A.   In my e-mail dated May 28th at 8:52
23    a.m., I say "Please see the attached draft
24    engagement letter for the third appraiser."
25                    So, yes.
```



Page 165

```
 1          Q.   Okay.
 2               MR. KOH:  Let's bring up
 3          Exhibit 40 in my stack, and let's mark
 4          that as Exhibit V(a).
 5                    (Document bearing Bates
 6               stamp MCD007924 through 007925 was
 7               marked as Defendants' Exhibit V(a)
 8               for identification, as of this
 9               date.)
10     BY MR. KOH:
11          Q.   Is this Exhibit V(a) the attachment
12     that's referred to in Exhibit V, Mr. Meyer?
13               MR. WALSH:  I'm just going to
14          object here, Howard, because you
15          obviously have our document production.
16          You would know from the document
17          production what was actually attached
18          that you're asking Mr. Meyer about.
19               I don't think it is a fair
20          question to ask him more than two years
21          later what specific document was
22          attached.  I think he said there was an
23          attachment to this e-mail, and you would
24          know what that e-mail -- what attachment
25          that was.
```



Page 166

```
 1              So I don't know if you can make a
 2         representation about where this came
 3         from.
 4              MR. KOH:  It is my understanding
 5         that it was, but I wanted to find out if
 6         there was any disagreement.
 7              So that's what I can tell you,
 8         but it isn't clear.
 9    BY MR. KOH:
10         Q.   Let's turn back to Exhibit V.
11         A.   Exhibit V as in Victor?
12         Q.   I'm sorry, Exhibit V as in Victor.
13              Ms. Locatell writes to you "I would
14    take out the reference to Prospect Heights
15    neighborhood."
16              Do you understand what that refers
17    to?
18         A.   Not beyond -- apparently there was a
19    reference to the Prospect Heights neighborhood
20    that she wanted removed.
21         Q.   Do you understand why Ms. Locatell
22    wanted it removed?
23              MR. WALSH:  Object to the form.
24         A.   No.
25
```



Page 167

1   BY MR. KOH:

2          Q.   And then Ms. Locatell writes "I

3   thought you were going to add language

4   highlighting the fact that the renewal option

5   calls for consideration of comparable leases to

6   determine the fair market rental value."

7               Do you see that?

8          A.   Yes.

9          Q.   Do you recall discussing that

10  subject with Ms. Locatell?

11         A.   Not other than this e-mail.

12         Q.   Okay.

13              And then it says "Highlighted it is

14  for a 5-year rental term".

15              Do you recall discussing that

16  subject with Ms. Locatell?

17              MR. WALSH:  Object.  That's not

18         actually what it says.  It says for a

19         five-year renewal term.

20              MR. KOH:  Yes, let me rephrase

21         that.

22  BY MR. KOH:

23         Q.   Do you recall discussing with

24  Ms. Locatell to highlight it is for a five-year

25  renewal term?



Page 168

1              MR. WALSH:  Object to the form

2          and the characterization.

3          A.   What's the question?

4    BY MR. KOH:

5          Q.   The question is do you recall

6    discussing -- hold on.

7              The question is with respect to this

8    draft letter that's being discussed in

9    Exhibit V, do you recall any other discussions

10   with Ms. Locatell concerning the length of the

11   renewal term?

12         A.   Not in addition to this, other than

13   this e-mail.

14             MR. KOH:  Okay.

15             Let's bring up No. 25, and we'll

16          mark that as Exhibit W.

17                  (Document bearing Bates

18             stamp MCD001697 through 001705 was

19             marked as Defendant's Exhibit W for

20             identification, as of this date.)

21   BY MR. KOH:

22         Q.   Do you recognize what Exhibit W is?

23         A.   I'm going through.  It is a letter

24   of opinion value from Sharon Locatell.

25         Q.   Did you receive it -- I'm sorry,



Page 169

1   this wasn't sent to you.  It was sent to

2   Ms. DeMarco.

3            Do you have any understanding of why

4   that is?

5              MR. WALSH:  Object to the form

6         and the characterization.

7         A.   What's the question?

8   BY MR. KOH:

9         Q.   This letter is not addressed to you

10  as some of the other letter opinions of value

11  are.  It is addressed only to Ms. DeMarco.

12           Do you have any understanding as to

13  why this was only addressed to Ms. DeMarco?

14             MR. WALSH:  Object to the form.

15             MR. KOH:  Okay.

16  BY MR. KOH:

17        Q.   The date on the letter is June 17,

18  2019.

19           Do you see that?

20        A.   Yes.

21        Q.   Do you recall attending a meeting

22  with Ms. DeMarco and Mr. Rottenberg and

23  Mr. Missry on or about June 19th?

24        A.   I do.

25        Q.   Besides those people who I just



Page 170

1   listed there, who else was, if anybody, was

2   present at this meeting?

3        A.   Myself, Carol, Sharon, Tom Li, Tom

4   Tener, Sam and Morris Missry.

5        Q.   What happened during this meeting?

6             MR. WALSH:  Object to the form.

7        A.   We discussed, primarily discussed --

8   well, we talked about a lot of things, but I

9   believe most of the discussion was around Tom

10  Tener's valuation.

11  BY MR. KOH:

12       Q.   Okay.

13            Where was this meeting held?

14       A.   Morris Missry's office in Manhattan.

15       Q.   And what specifically do you

16  remember being discussed concerning Tom Tener's

17  valuation of the premise at 840 Atlantic Avenue?

18       A.   Tom Tener walked us through his

19  approach to valuing the property and his

20  conclusions.

21       Q.   And what do you remember Mr. Tener

22  saying about his approach?

23       A.   That his conclusion was that the

24  fair market rental value was 1.3 million and

25  that the 80 percent fair market rental value was



Page 171

1    over a million dollars; that he looked at land

2    sales to come up with that valuation and then

3    applied a rent -- or a cap rate to the land

4    value to come up with a value that the, that the

5    cap rate was based on.

6              I think he said 50 ground leases

7    that he had in his office.  I mean, I'm sure

8    there was more, but those are the highlights

9    that I remember of his discussing his valuation.

10         Q.   You used the term cap rate.  This is

11   the second time in this deposition you have used

12   it.

13              Can you tell us what you understand

14   that to mean?

15         A.   I certainly could be using it wrong,

16   but I am referring to a percentage that you

17   apply to the land value to come up with a rent.

18              So whether it be 4 percent or 10

19   percent, and that percentage, in my experience,

20   is related to the creditworthiness of the

21   tenant.

22         Q.   How is it related to the

23   creditworthiness of the tenant?

24         A.   That an owner or a purchaser of land

25   would be willing to accept a lower percentage or



Case 1:19-cv-06471-DLI-ST   Document 62-26   Filed 06/24/22   Page 173 of 260 PageID #: 2212

Page 172

1    a lower return if the tenant's creditworthiness

2    was higher or had a better credit rating or was

3    deemed more creditworthy than if a tenant had

4    lesser credit, and then an owner would demand a

5    higher return for the commensurate risk.

6        Q.   What else do you remember being

7    discussed at this meeting besides Mr. Tener's

8    approaches and conclusions with respect to his

9    valuation of the premise at 840 Atlantic Avenue?

10       A.   I recall bringing to Mr. Missry's

11   attention that the New York case law that

12   states, I'm paraphrasing, that unless the

13   formula for determining the value expressly

14   states that the value will be determined as

15   unencumbered by the lease, that the encumbrance

16   of the lease and the current zoning and current

17   condition of the property should be incorporated

18   as part of the valuation.

19            And Mr. Missry's response was that

20   he would look into that, you know.

21            And then there was significant

22   discussion between Sharon and Tom Tener about,

23   you know, their assumptions and comparable

24   ground leases, which I don't recall a lot of the

25   detail of that discussion.

Page 172

1    a lower return if the tenant's creditworthiness

2    was higher or had a better credit rating or was

3    deemed more creditworthy than if a tenant had

4    lesser credit, and then an owner would demand a

5    higher return for the commensurate risk.

6        Q.   What else do you remember being

7    discussed at this meeting besides Mr. Tener's

8    approaches and conclusions with respect to his

9    valuation of the premise at 840 Atlantic Avenue?

10       A.   I recall bringing to Mr. Missry's

11   attention that the New York case law that

12   states, I'm paraphrasing, that unless the

13   formula for determining the value expressly

14   states that the value will be determined as

15   unencumbered by the lease, that the encumbrance

16   of the lease and the current zoning and current

17   condition of the property should be incorporated

18   as part of the valuation.

19            And Mr. Missry's response was that

20   he would look into that, you know.

21            And then there was significant

22   discussion between Sharon and Tom Tener about,

23   you know, their assumptions and comparable

24   ground leases, which I don't recall a lot of the

25   detail of that discussion.



Page 173

```
1         Q.   Is there anything else you can
2    remember being discussed at this meeting?
3         A.   I know there was some continued
4    discussion about how the formal or the
5    three-appraiser process would work and just a
6    continued disagreement on that topic.
7         Q.   Was anything discussed about using
8    the land residual during this meeting?
9         A.   Yes, Sharon and Tom had -- as they
10   were kind of getting into the weeds of the
11   underlying assumptions, you know, I think they
12   felt that that might be in the spirit of
13   compromise, sort of setting aside what the lease
14   required; that that might be an avenue for them
15   to, you know -- again, I think I said this
16   before, but kind of compare apples to apples
17   since they were using two totally different
18   methodologies in their letter opinions of value.
19              And there was some discussion about
20   whether, you know, if we wanted to continue kind
21   of a compromise discussion, that that might be
22   an avenue to pursue.
23        Q.   Did anybody take any notes during
24   this meeting?
25              MR. WALSH:  Object to the form.
```



Page 174

1          A.   I don't, I don't -- I've seen some

2   notes in the document production.

3   BY MR. KOH:

4          Q.   Do you recall seeing anybody at this

5   meeting taking notes?

6          A.   I don't recall specifically.

7          Q.   Did you meet with anybody prior to

8   this meeting to prepare for the meeting?

9          A.   I met with Carol and met with

10  Sharon.

11          Q.   Did you meet with Carol and Sharon

12  at the same time or separately?

13          A.   I met with Carol separately and then

14  met with Carol and Sharon all together.

15          Q.   About how many times did you meet

16  with Sharon or Carol and Sharon all together in

17  order to prepare for this meeting?

18          A.   I believe I arrived a day before.  I

19  could be getting this wrong.  I don't remember

20  the timing.  I mean, I arrived I think the day

21  before the meeting and met with Sharon at least

22  once.

23               Carol and I were together

24  separately.  I think both days we did, I believe

25  we toured the site, but that could have been a



Page 175

1    different -- I'm getting confused now.

2              I had several trips to New York, and

3    we looked at the actual -- looked at this

4    location and others, but I can't recall if we

5    looked at this location when I was there for the

6    meeting or separately.

7         Q.   Okay.

8              Do you recall preparing for this

9    meeting by telephone or video conference with

10   anyone?

11        A.   Definitely not video conference.  I

12   don't recall a separate telephone preparation.

13        Q.   Okay.

14             In the one meeting that we have

15   established -- at least one meeting that we

16   established that you had with Ms. DeMarco and

17   Ms. Locatell to prepare for the June 19th

18   meeting, describe what occurred during that

19   preparation meeting.

20             MR. WALSH:  I'm sorry, did you

21        ask about this meeting with Ms. Locatell

22        or Ms. DeMarco?

23             MR. KOH:  Well, apparently

24        Ms. DeMarco and Ms. Locatell were there.

25        That's my understanding.



Page 176

1    BY MR. KOH:

2           Q.   Is that correct, Mr. Meyer?

3           A.   Yes, that's correct.

4           Q.   Okay.

5                Describe what happened at that

6    meeting.

7           A.   We, we being Carol and I, went to

8    Sharon's offices.  I mean, mainly discussed --

9    it was just a continued discussion of additional

10   comps that could potentially be, you know,

11   additional sites or leases that could be

12   considered comparable sites, and Sharon was

13   compiling those into a large spreadsheet.  So I

14   believe it included other sites.

15               And in addition to the comps that

16   she included in her letter opinion of value, I

17   think with the intention of, you know, if

18   Vanderbilt or Tom Tener didn't like the comps

19   that we included in the letter opinion of value,

20   that that might be an area for fruitful

21   compromise discussion about, you know, if you

22   don't like these comps, what about these other

23   sites that could be comparable.

24               It was really just trying to have as

25   much information as possible ahead of the



Page 177

1   meeting so that, you know, to the extent there

2   was a topic that, again, would be fruitful for

3   trying to -- I mean, the point of the meeting

4   was to try to come to an agreement on the fair

5   market rental value.

6            So we wanted to have as much

7   information as possible, you know, to be ready

8   to have a discussion if we were able.

9        Q.   Do you remember anything else that

10  occurred during this meeting in advance of the

11  June 19th meeting with Mr. Rottenberg,

12  Mr. Missry and others that occurred?

13       A.   Nothing other than what I have

14  talked about so far.

15       Q.   Were any documents exchanged during

16  the June 19th meeting which Ms. Locatell,

17  Mr. Rottenberg, Mr. Missry, you and Ms. DeMarco

18  and Mr. Li attended?

19       A.   I'm not certain.  I have a memory

20  of -- this is might be a better question for

21  Sharon, but I think we may have provided a list

22  of that spreadsheet of comps, but I'm not

23  certain.

24       Q.   At this meeting, did McDonald's

25  agree to take any other steps after the meeting?



Page 178

1              MR. WALSH:  Object to the form.

2         A.   I think there was two things.

3              Not that McDonald's would take

4     steps, but Sharon and Tom would continue the

5     discussion, you know, into the, you know, the

6     assumptions and to see if they could find common

7     ground.

8              There was a discussion with Morris

9     Missry, I believe, about putting together some

10    type of letter agreement that would allow

11    continued compromise discussions.

12    BY MR. KOH:

13         Q.   Did you have any discussions after

14    the June 19th meeting with Ms. Locatell

15    concerning what occurred during the June 19th

16    meeting?

17         A.   I don't -- I know there were some

18    e-mails exchanged, but I don't recall any

19    telephone calls.

20         Q.   What about in-person discussions?

21         A.   I think we, you know, had sort of --

22    as we walked out of the building, that we had --

23    I don't remember the specifics, but just

24    basically saying good-bye and kind of

25    reiterating the action items that were discussed



Page 179

1    in the meeting.

2         Q.   Did McDonald's believe that after

3    this meeting that litigation was inevitable?

4              MR. WALSH:  Objection to the

5         form.

6              MR. KOH:  Let me withdraw.

7    BY MR. KOH:

8         Q.   After this meeting, did McDonald's

9    reach a decision that it needed to issue a

10   litigation hold?

11        A.   I don't --

12             MR. WALSH:  Object to the form.

13        A.   I don't remember -- I don't recall

14   exactly when that was determined.  I don't

15   believe we felt that litigation was inevitable,

16   but -- but, you know, that it was certainly

17   possible.

18             MR. KOH:  Okay.  All right.

19             It is almost 3:00 o'clock.  I'm

20        probably going to turn to another area.

21        So I propose we take a 10-minute break

22        and return at just after 3.

23             THE WITNESS:  Thank you.

24             MR. KOH:  Thank you.

25             Off the record.



Page 180

```
 1                          (Whereupon, at 2:53 o'clock
 2                  p.m., a recess was taken until 3:08
 3                  o'clock p.m.)
 4                      MR. KOH:  Back on the record.
 5                          Nat, can you please bring up
 6                  No. 42, and mark it as Exhibit X.
 7                          (Document bearing Bates
 8                  stamp MCD002976 through 002998 was
 9                  marked as Defendant's Exhibit X for
10                  identification, as of this date.)
11  BY MR. KOH:
12         Q.   Do you recognize Exhibit X,
13  Mr. Meyer?
14         A.   I don't -- I'm not sure about the
15  version, but it is an appraisal letter or letter
16  opinion of value from Sharon Locatell.
17         Q.   All right.
18              This is also dated June 17th?
19         A.   It is dated June 17th.
20         Q.   As was Exhibit W, correct?
21              MR. WALSH:  Objection to the form
22           and characterization.  I don't have the
23           metadata available.  I'm not sure what
24           you mean by dated.
25
```



Page 181

1   BY MR. KOH:

2        Q.   On the first page of Exhibit W, the

3   date says June 17, 2019, correct?

4        A.   Correct.

5        Q.   That's the first date that appears

6   on the first page of Exhibit X, correct?

7        A.   Exhibit X?

8        Q.   Yes.

9        A.   Exhibit X is dated on the first page

10  of June 17, 2019.

11       Q.   So do you have any understanding of

12  the difference between the two documents?

13            MR. WALSH:  Objection to the

14        form.

15       A.   Between which two documents?

16  BY MR. KOH:

17       Q.   W and X.

18       A.   Other than one is 9 pages and one is

19  23 pages.  That's the only -- I don't know.

20       Q.   Did you see Exhibit X before the

21  June 19th meeting?

22            MR. WALSH:  Object to the form.

23       A.   I'm not sure if I saw this document.

24  BY MR. KOH:

25       Q.   You're not sure if you have seen



1    this document at all before or you don't

2    remember the first time?

3         A.   I have seen versions of letter

4    opinions of value from Appraisers and Planners.

5    I just don't know if I have seen this particular

6    version.

7                   MR. KOH:  Let's bring up

8              Exhibit 27, and mark that as Exhibit Y,

9              please.

10                     (Document bearing Bates

11             stamp MCD003138 was marked as

12             Defendant's Exhibit Y for

13             identification, as of this date.)

14   BY MR. KOH:

15        Q.   Do you recognize Exhibit Y,

16   Mr. Meyer?

17        A.   It hasn't popped up yet.

18        Q.   Oh.  Let us know when it comes up,

19   please.

20        A.   Okay.

21             I have Exhibit 27.

22        Q.   No, Exhibit Y.

23        A.   Document 27, Exhibit Y, okay.

24        Q.   Right.

25        A.   Okay.



Page 183

```
 1          Q.   So this exhibit contains an e-mail
 2    dated June 19th from Ms. Locatell to you and
 3    Ms. DeMarco, correct?
 4                    MR. WALSH:  Object to the form.
 5          A.   Yes, it looks like an e-mail chain
 6    between Carol, Sharon, Ellen and myself.
 7    BY MR. KOH:
 8          Q.   Okay.
 9                    And it says in the 12:41 p.m.
10    e-mail, Ms. Locatell writes "Enjoyed our meeting
11    (believe or not).  For the residual analysis, we
12    need to figure out if the site could be
13    developed with a basement.  To that end, do you
14    have any site plans or reports that may indicate
15    development likelihood?"
16                    Do you see that?
17          A.   I do.
18          Q.   And Ms. DeMarco writes, "Let me
19    check with construction" -- excuse me, "Let me
20    check with construction team and their file."
21                    Do you see that?
22          A.   Yes.
23          Q.   Do you have any understanding as to
24    why it was important to determine whether the
25    site could be developed with a basement?
```



Page 184

```
 1              MR. WALSH:  Object to the form
 2          and characterization.
 3          A.   Not to that specific question, but
 4   this is again -- relates to our earlier
 5   discussion of the June 19th meeting where Tom
 6   and Carol -- or, excuse me, Tom and Sharon
 7   discussed the land residual as potentially a
 8   path, you know, to continue the conversation
 9   outside of the lease.
10   BY MR. KOH:
11          Q.   And what was it about a basement?
12              Do you have an understanding as to
13   why Ms. Locatell thought that was particularly
14   -- why she wanted to know that information?
15          A.   I don't.
16          Q.   Do you recall discussing the issue
17   of whether the property could be developed with
18   a basement being discussed by Ms. Locatell?
19          A.   No.
20              MR. KOH:  Please bring up No. 28,
21          and mark that as Defendant's Exhibit Z.
22                  (Document bearing Bates
23                  stamp MCD006617 through 006619 was
24                  marked as Defendant's Exhibit Z for
25                  identification, as of this date.)
```



1    BY MR. KOH:

2         Q.    Do you recognize Defendant's

3    Exhibit Z, Mr. Meyer?

4         A.    I'm just scrolling through here.  I

5    recognize it.

6         Q.    Tell us what it is.

7         A.    It is a letter signed by me to

8    Morris Missry.

9         Q.    Why did you send this letter on

10   behalf of McDonald's to Mr. Missry?

11        A.    It recaps what the lease requires,

12   recaps some of the discussion from the June 19th

13   meeting, including the discussion about whether

14   the property is to be valued as encumbered by

15   the lease, and demands that Vanderbilt cause its

16   appraiser to prepare a new estimate of fair

17   market value consistent with the lease and New

18   York law.

19        Q.    Did you have any communications with

20   Mr. Missry between the June 19th meeting and

21   sending this letter?

22        A.    It is possible.  I don't, I don't

23   recall.

24        Q.    Do you have any understanding as to

25   why it took from June 19th to July 23rd to send



Page 186

1   out a letter that recaps the meeting and makes

2   the demand that it makes?

3                MR. WALSH:  Object to the form

4             and characterization.

5        A.   I don't, I don't know why -- I don't

6   remember why this was sent on July 23rd

7   specifically.

8   BY MR. KOH:

9        Q.   Did you have any discussions with

10  Ms. Locatell between the June 19th meeting and

11  the July 23rd meeting -- I'm sorry, the sending

12  of the July 23rd letter that we have marked as

13  Exhibit Z?

14       A.   Between the June 19th meeting and

15  the July 23rd letter?

16       Q.   Yes.

17       A.   I don't recall any discussions other

18  than e-mails, including the one we just talked

19  about.

20       Q.   Okay.

21            Do you recall any other e-mails?

22       A.   I'm not sure.  I know there were

23  other e-mails, but I don't know the timeframes

24  exactly.

25       Q.   Okay.



Page 187

```
 1                    MR. KOH:  Let's bring up No. 41,
 2           and mark it Exhibit AA.
 3                         (Document bearing Bates
 4                    stamp MCD000938 through 000939 was
 5                    marked as Defendant's Exhibit AA for
 6                    identification, as of this date.)
 7     BY MR. KOH:
 8           Q.   Do you recognize Exhibit AA,
 9     Mr. Meyer?
10           A.   I do.
11           Q.   Can you tell us what it is?
12           A.    It is a letter agreement between
13     Vanderbilt and McDonald's regarding next steps
14     to attempt to compromise on the fair market
15     rental value.
16           Q.   And it was countersigned by Tom Li,
17     correct?
18           A.   Correct.
19           Q.   So let's go through this letter.
20                The first paragraph, No. 1, says
21     "Within three weeks from the date of this
22     letter, each party's appraiser will send to the
23     other party's appraiser his or her respective
24     (i) updated letter opinion of value estimating
25     each appraiser's fair market rental value as
```



Page 188

1    defined in the option rent addendum and stating

2    the methodology of valuation and conclusions;

3    and (ii) identifying the comparable transactions

4    on which the conclusions are based."

5            Did that happen?

6        A.   I don't, I don't know if it happened

7    in the three weeks.

8        Q.   Okay.

9            So when do you believe it did

10   happen?

11       A.   I don't, I don't remember the dates,

12   you know, between this date and end of October.

13   I just don't remember the specific date.

14       Q.   Other than the timing and when the

15   documents and information might have been

16   exchanged, did each party comply with

17   paragraph 1 of the September 16, 2019 letter

18   which we have marked as Exhibit AA?

19           MR. WALSH:  Object to the form.

20       A.   I believe -- we received, as

21   discussed earlier, another letter of opinion

22   value done by Tom Tener at some point after

23   this.

24           I assume Sharon sent her or we sent

25   her letter of opinion value to Vanderbilt.  I



just don't remember the dates.
BY MR. KOH:
Q. No. 2 says "The respective appraisers will engage in a non-prejudicial and non-binding discussion and engage" -- and excuse me, "and exchange of information for the purposes of assisting the parties in reaching a negotiated FMV as defined in the lease."
Did that happen?
A. I believe there was a discussion between the appraisers.
Q. I take it there was no agreement concerning the FMV as defined in the lease?
A. Correct.
Q. No. 3 says "The parties have selected Marc Nakleh as the third appraiser pursuant to the terms of the lease and agree to engage Mr. Nakleh within 21 days of this agreement."
Did that happen?
A. No.
Q. Okay.
Did the parties, in fact, select Mr. Nakleh?
A. Tom Tener and Sharon selected Marc

Page 190

1    Nakleh.

2         Q.   But he was not engaged within 21

3    days of the agreements?

4         A.   Correct.

5         Q.   Was Mr. Nakleh ever engaged?

6         A.   No.

7         Q.   Why not?

8         A.   Because Vanderbilt continued to

9    argue their position that the option rent

10   addendum requires an exchange of letter opinions

11   of value without discussion between the

12   appraisers.

13        Q.   So, am I correct to say that -- am I

14   correct in saying that it was McDonald's who

15   would not agree to engage Mr. Nakleh?

16             MR. WALSH:  Object to the form.

17        A.   That's not correct.

18   BY MR. KOH:

19        Q.   It's not correct.

20             Was it Vanderbilt who refused to

21   engage Mr. Nakleh?

22        A.   Vanderbilt refused to comply with

23   the lease.

24        Q.   What specific -- did Vanderbilt

25   comply with the September 16th agreement marked



Page 191

1    as Defendant's Exhibit AA?

2                    MR. WALSH:  Object to the form

3             and to the extent it calls for a legal

4             conclusion.

5        A.   Marc Nakleh was not engaged.

6    BY MR. KOH:

7        Q.   I understand that.  We answered

8    that.

9                    My question was, did Vanderbilt fail

10   to comply with Defendant's Exhibit AA?

11                   MR. WALSH:  Same objection.

12       A.   I don't understand the question.

13   Paragraph 3 says that the parties have selected

14   Marc Nakleh.  Then it says "and agree to engage

15   Mr. Nakleh within 21 days of this agreement."

16                   And he was not engaged.  So no, they

17   did not comply with the letter.

18   BY MR. KOH:

19       Q.   And your testimony was that that was

20   because, in McDonald's view, Vanderbilt did not

21   comply with the lease; is that correct?

22                   MR. WALSH:  Object to the form

23             and characterization.

24       A.   Correct.  They would not engage

25   Mr. Nakleh in a way that was required by the



Page 192

```
 1   lease.
 2   BY MR. KOH:
 3        Q.   Is there anything in Defendant's
 4   Exhibit AA that requires Vanderbilt to engage
 5   Mr. Nakleh in a particular way?
 6             MR. WALSH:  Object to the form.
 7        A.   Yes, it says that the parties intend
 8   to retain him upon agreement regarding the
 9   process as set forth in the lease.
10   BY MR. KOH:
11        Q.   And was that intent condition
12   precedent to the obligation to engage
13   Mr. Nakleh?
14             MR. WALSH:  Object to the form
15        and to the extent it calls for a legal
16        conclusion.
17   BY MR. KOH:
18        Q.   Do you understand what I mean by
19   condition precedent, Mr. Meyer?
20        A.   Not really.  There had to be an
21   agreement regarding the process set forth in the
22   lease in order for the parties to engage
23   Mr. Nakleh, and there was no agreement regarding
24   the process.
25        Q.   Where did it say there had to be an
```



Page 193

1    agreement?

2          A.   It says "The parties further agree

3    that their appraisers shall jointly communicate

4    with Mr. Nakleh that the parties intend to

5    retain him upon agreement regarding the process

6    set forth in the lease."

7          Q.   Why was there a failure to agree on

8    the process set forth in the lease?

9                    MR. WALSH:  Object to the form.

10         A.   Because Vanderbilt continued to

11   assert their position that there could be no

12   discussion between the three appraisers.

13                   MR. KOH:  Okay.

14                   Let's bring up the document

15             that's in the stack as No. 30, and we'll

16             mark that as Exhibit BB.

17                        (Document bearing Bates

18             stamp MCD000317 through 000342 was

19             marked as Defendant's Exhibit BB for

20             identification, as of this date.)

21   BY MR. KOH:

22         Q.   Do you recognize Exhibit BB,

23   Mr. Meyer?

24         A.   This is a letter opinion of value

25   with the date of September 20, 2019 on the first



Page 194

1    page from Appraisers and Planners.

2         Q.   Was this the letter opinion of value

3    that was sent pursuant to the agreement that we

4    were just looking at which is marked as

5    Exhibit AA?

6         A.   I'm not sure if this was the version

7    that was sent.

8         Q.   Okay.

9              MR. KOH:  Let's bring up 31, and

10         mark that as Exhibit CC.

11                   (Document bearing Bates

12              stamp MCD008060 through 008061 was

13              marked as Defendant's Exhibit CC for

14              identification, as of this date.)

15   BY MR. KOH:

16        Q.   Do you recognize Exhibit CC?

17        A.   It looks like an e-mail chain

18   between Morris Missry and myself.

19        Q.   And that was sent on or about -- or

20   you responded to Mr. Missry on or about

21   October 21, 2019?

22        A.   Correct.

23        Q.   And what were you and Mr. Missry

24   trying to communicate at or about -- when this

25   e-mail was sent?



Page 195

1          A.   I just want to read Morris' e-mail.
2     I think he's trying to schedule a call.
3          Q.   And the call was going to include
4     Ms. Locatell and Mr. Tener?
5          A.   That was his request, I think, based
6     on my e-mail response.
7          Q.   Did you have any understanding of
8     what the agenda of the call would be?
9          A.   I'm a little confused.  It looks as
10    though there's an e-mail missing at the bottom.
11    October 18, 2019 at 9:59 a.m. Morris Missry
12    wrote -- blank.
13             But so, no, I don't know what
14    exactly the agenda would be.
15         Q.   Okay.
16             That's how it came to us.  There's a
17    long website there.
18             Do you have any idea what that was?
19         A.   It is wmllp.com.  Url, which would
20    be Wachtel Missry LLP.  So I don't know what
21    that link is for.
22         Q.   All right.
23             MR. KOH:  Please bring up No. 32,
24         and mark that as Exhibit DD.
25                      (Document bearing Bates



Page 196

```
 1                stamp MCD000543 through 000579 was

 2                marked as Defendant's Exhibit DD for

 3                identification, as of this date.)

 4   BY MR. KOH:

 5        Q.   Exhibit DD appears to be a series of

 6   handwritten notes.  Look through that document

 7   and tell me if you know whose notes these are.

 8                MR. WALSH:  Howard, just a

 9                technology question here.  I see a bunch

10                of people looking sideways.  There

11                doesn't seem to be a way for us to

12                rotate the document because it is not

13                all the same orientation.

14                Do you know if that's possible?

15                MR. KOH:  Nat might be better.  I

16                see that on my screen.  I believe I have

17                that, the ability to rotate those

18                documents.

19                Nat, do you know?

20                MAGNA TECH:  At the top of the

21                screen right next to the Zoom percentage

22                option on the left-hand side, there

23                should be an arrow with half a circle

24                almost.

25                MR. KOH:  I'm seeing an expand
```



Page 197

```
 1              page vertical arrow and a horizontal

 2              arrow, but I don't see the rotate coming

 3              up on my screen.

 4                   MR. WALSH:  So this is Brendan.

 5              That actually was helpful.

 6                   There's a link, at least on the

 7              way I can view it.  Next to the Zoom

 8              level, there's -- if you hover over, it

 9              says document options and then it gives

10              me an option.  It says orientation, and

11              I can either rotate page --

12                   MR. KOH:  Yes, there it is.

13                   MR. WALSH:  But I can rotate it.

14                   Mr. Meyer and anybody else, to

15              the extent that you need to rotate it,

16              either you can try to do it yourself or

17              you can ask.

18                   MR. KOH:  I bet if you put that

19              on a landscape screen, those options may

20              spell out or populate.

21    BY MR. KOH:

22         Q.   In any event, the question is,

23    Mr. Meyer, do you recognize whose notes these

24    are?

25              A.   I see some e-mails that are only --
```



Page 198

1    that only include Sharon.  So that would be my

2    guess, but I really don't know.

3              Q.   Okay.

4                   MR. KOH:  Let's put that document

5               away and bring up No. 33, and mark it as

6               Exhibit EE, which is the Complaint in

7               this action.

8                        (Complaint was marked as

9                   Defendant's Exhibit EE for

10                  identification, as of this date.)

11             A.   Okay.

12   BY MR. KOH:

13             Q.   All right.

14                  I assume you have seen the Complaint

15   before?

16             A.   Yes.

17             Q.   And did you review it before it was

18   filed with the court?

19             A.   Yes.

20             Q.   Did you speak with anybody else

21   concerning the substance of this Complaint at

22   McDonald's before it was filed with the courts?

23                  MR. WALSH:  Object insofar as it

24              requests information that may be covered

25              by the attorney/client privilege, but --



Page 199

```
 1                    MR. KOH:  First of all, I just
 2            want to know if he spoke to anybody, and
 3            then my next question is going to be
 4            who.  And then I'll stop asking
 5            questions.  So I'm taking it one at a
 6            time.
 7  BY MR. KOH:
 8            Q.   Did you speak to anybody at
 9  McDonald's concerning this Complaint before it
10  was filed?
11            A.   Yes.
12            Q.   Who was that?
13            A.   You want me to list them?
14            Q.   Yes.  If you can, give me the names
15  unless you want to claim a privilege on the
16  names alone.
17                    MR. WALSH:  No, and I can jump in
18            real quick.  I don't believe that we
19            have any basis to claim privilege over
20            actual names.
21                    I just would caution Mr. Meyer
22            not to reveal the content of any
23            discussions you may have had with any
24            attorneys, either in house at McDonald's
25            or outside counsel.
```



Page 200

```
 1            A.   So I would have spoke to Monica
 2   Mosby, Sara Lee, Hal Merck, Mahrukh Hussain.
 3   BY MR. KOH:
 4            Q.   Sorry, what was that name?
 5            A.   Mahrukh Hussain.
 6            Q.   Okay.
 7            A.   Carol, I believe.  Dave Kearns.  I
 8   may be forgetting some.
 9            Q.   Who is Monica Mosby?
10            A.   She is an attorney in our litigation
11   department.
12            Q.   And who is Sara Lee?
13            A.   She is an attorney in the asset
14   management legal team.
15            Q.   Okay.
16                 You said Mahrukh Hussain?
17            A.   Mahrukh.  M-a-h-r-u-k-h, I believe.
18   H-u-s-s-e-i-n.
19            Q.   And who is Mahrukh Hussain?
20            A.   At the time, she was the general
21   counsel for the U.S. McDonald's business.
22            Q.   All right.
23                 Let's turn to paragraph 28 of that
24   Complaint, and read it to yourself.
25            A.   Okay.
```



Page 201

1          Q.   What were the factual basis or bases
2     for the allegations in paragraph 28 of the
3     Complaint?
4                    MR. WALSH:  Object to the form,
5               but you can answer, if you recall.
6          A.   With regard to Vanderbilt entering
7     into a new 99-year ground lease for the
8     property, I believe we learned that via the
9     research that Appraisers and Planners had at the
10    outset seen, the acris forms showing the
11    transfer.
12    BY MR. KOH:
13         Q.   You mentioned acris, a-c-r-i-s?
14         A.   Yes.
15         Q.   I just want to make sure that comes
16    out right in the transcript.
17         A.   And then with respect to the goal of
18    having the property rezoned for the purpose of
19    developing the property with a more lucrative
20    high-density residential building, that was
21    based on public news articles about Vanderbilt
22    seeking an up zone of the property.
23         Q.   Do you remember specifically what
24    articles McDonald's saw that it used as the
25    basis for that allegation?



Page 202

1                   MR. WALSH:  Object to the form
2            and characterization.
3    BY MR. KOH:
4            Q.   What articles were you referring to,
5    if you remember?
6            A.   I don't remember the specific
7    publications, but there were at least one
8    article that was describing the Vanderbilt's
9    plans and I believe also had discussion about
10   the -- I think it was community board hearings
11   or meetings on the topic.
12           Q.   Paragraph 29, that says "Public
13   records reveal that during the period from
14   August 3, 2018 through August 31, 2019,
15   Vanderbilt paid the lobbying firm Slater &
16   Beckerman, P.C. in excess of $50,000 to lobby
17   city and state officials on land use matters,
18   including rezoning, related to the property and
19   adjacent properties."
20                   What public records were you
21   referring to or was McDonald's referring to?
22           A.   I'm not sure.
23           Q.   Paragraph 30 reads "Upon information
24   and belief, Vanderbilt has already presented
25   plans to various city and community officials



Page 203

1    for a 19-story building on the property in place

2    of the existing McDonald's restaurant."

3              What information was McDonald's

4    relying upon for that allegation?

5              MR. WALSH:  Object to the form.

6         A.   I believe it was the news articles,

7    and then I think there were also public records

8    of the community board meetings.  But I know for

9    certain that it was based on the articles.

10   Article or articles.

11   BY MR. KOH:

12        Q.   Paragraph 32, McDonald's alleges

13   "Upon information and belief, Vanderbilt is

14   determined to cause McDonald's to vacate the

15   property substantially earlier than April 2039."

16              What was the information that

17   McDonald's was relying upon to make that

18   allegation?

19              MR. WALSH:  Object to the form.

20        A.   Vanderbilt's behavior in trying to

21   set -- I told you this was going to happen.

22   BY MR. KOH:

23        Q.   That's okay.  Dogs do that.  That's

24   why I don't have one.

25        A.   Sorry, can you repeat the question?



Page 204

1          Q.   Well, there are a number of

2   reasons -- sure.

3               Paragraph 32 -- let me rephrase

4   that.

5               In paragraph 32, McDonald's alleges

6   "Upon information and belief, Vanderbilt is

7   determined to cause McDonald's to vacate the

8   property substantially earlier than April of

9   2039."

10              What was the information that

11  McDonald's was relying upon to make that

12  allegation?

13              MR. WALSH:  Object to the form

14         and characterization.

15         A.   A combination of things.

16              One, the discussions that Carol had

17  with Sam Rottenberg, you know, in the

18  negotiation period under the lease, you know,

19  where he was focused on what was McDonald's

20  going to do if, if the rent was too high for

21  their liking; the behavior during the attempt to

22  set the rent; the fact that during all of this,

23  Vanderbilt was seeking to rezone the property

24  and build a development that would not include

25  McDonald's.



Page 205

 1   BY MR. KOH:

 2          Q.    Anything else?

 3                MR. WALSH:  Object to the form.

 4          A.    I think that's it.

 5   BY MR. KOH:

 6          Q.    The date April 2039 appears in

 7   paragraph 32.

 8                Why that date?

 9          A.    That's the date on which -- or the

10   month on which all of McDonald's options under

11   the ground lease expire.

12          Q.    Is it fair to say that under the

13   ground lease, McDonald's controls the use of the

14   property through April 2039?

15                MR. WALSH:  Object to the form.

16          A.    McDonald's has a series of five-year

17   options that, if exercised, allow us to remain

18   on the property until April of 2039.

19   BY MR. KOH:

20          Q.    Provided McDonald's pays the rent

21   and otherwise complies with the lease, correct?

22                MR. WALSH:  Object to the form.

23          A.    Correct.

24   BY MR. KOH:

25          Q.    Turn to paragraph 46.  That's on



Page 206

1    page 10.  Paragraph 46 says "Under New York law

2    and the plain language of the lease, the

3    parties' appraisers are required to determine

4    FMV, giving consideration to all encumbrances on

5    the property, including current zoning

6    regulations and the existence of the lease

7    itself."

8               Can you tell us what New York law

9    paragraph 46 refers to?

10              MR. WALSH:  Object to the form.

11        A.   The Second Avenue case that we have

12   been referencing is the -- is what comes to

13   mind.  There may be other cases similar.

14   BY MR. KOH:

15        Q.   And what language of the lease is

16   McDonald's referring to in that paragraph?

17              MR. WALSH:  Object to the form.

18        A.   The fact that the lease does not

19   specifically state that the property is to not

20   be valued as an unencumbered by the lease.

21   BY MR. KOH:

22        Q.   Paragraph 59 of the Complaint marked

23   as Exhibit EE reads "Vanderbilt advised

24   McDonald's at that time that it had directed its

25   appraiser, Mr. Tener, to prepare a new FMV



Page 207

1    estimate in accordance with the terms of the

2    lease and New York law."

3            Do you see that?

4        A.   Yes.

5        Q.   First of all, who specifically on

6    behalf of Vanderbilt advised, advised McDonald's

7    of those purported facts?

8        A.   Morris Missry.

9        Q.   Did Mr. Missry -- did anybody else

10   besides Mr. Missry give that advice to

11   McDonald's?

12           MR. WALSH:   Object to the form.

13       A.   Not that I am aware of.

14   BY MR. KOH:

15       Q.   Okay.

16           Specifically as you can, tell us

17   what Mr. Missry said when he advised McDonald's

18   that it had given its appraiser directions.

19       A.   This was an ongoing discussion

20   between myself and Morris Missry starting with

21   the June 19th meeting when he said he would

22   consider the New York law that I cited in that

23   meeting.

24           Thereafter, I continued to press him

25   on that issue.  And eventually, I believe it was



Page 208

1    on a phone call, he said, you know, to the

2    effect of we'll concede that and we'll have Tom

3    Tener redo his appraisal.

4          Q.   What exactly did Mr. Missry say he

5    would concede?

6          A.   That the Second Avenue case applies

7    to this situation and that the property is to be

8    valued as encumbered by the lease, current

9    zoning and current zoning.

10         Q.   Was this purported concession ever

11   reduced to a writing anywhere by anyone?

12         A.   I don't believe -- I don't recall

13   Morris reducing this to a writing.

14         Q.   Did you reduce it to a writing?

15         A.   Yes.

16         Q.   Can you describe that writing for

17   me?

18         A.   Not without revealing privileged

19   information.

20         Q.   Was this writing ever sent to anyone

21   else besides McDonald's?

22         A.   Counsel.

23         Q.   So it was never sent to Mr. Missry?

24         A.   I don't recall if I sent him a

25   separate writing.  I know I followed up on this



Page 209

1    multiple times.

2            Q.    How did you follow up?

3            A.    Phone calls and I believe e-mails.

4            Q.    Did Mr. Missry ever countersign any

5    agreements that memorialized his purported

6    concession?

7            A.    Not that I recall.

8            Q.    Did he ever send you an e-mail --

9    did Mr. Missry ever send you an e-mail stating

10   that he was making this concession that you

11   described?

12           A.    Not that I recall.

13           Q.    Okay.

14                 Let's look at paragraph 65.

15   Paragraph 65, you write "But neither

16   Vanderbilt" -- I'm sorry, let me rephrase.

17                 Paragraph 65 of McDonald's Complaint

18   alleges "But neither Vanderbilt nor Mr. Tener

19   has explained why the commercial ground leases

20   that Ms. Locatell considered in arriving at her

21   FMV estimate for the property, which McDonald's

22   has identified to Vanderbilt, are not

23   comparable, or why Mr. Tener could not use any

24   of the 50 comparable leases he claims to have

25   used in his previous analysis to support an



Page 210

1    8 percent capitalization rate."

2              Do you see that?

3         A.   Yes.

4         Q.   Does this still accurately describe

5    McDonald's position?

6              MR. WALSH:  Object to the form.

7         A.   Yes.

8    BY MR. KOH:

9         Q.   So as we sit here today, McDonald's

10   has never received an explanation from

11   Vanderbilt or Mr. Tener as to why he considered

12   Ms. Locatell's commercial ground leases to be

13   inappropriate comps?

14             MR. WALSH:  Object to the form.

15   BY MR. KOH:

16        Q.   Is that correct, Mr. Meyer?

17        A.   As far as I know.

18        Q.   Okay.

19             Is it also true, as you sit here

20   today, McDonald's has never received an

21   explanation from either Vanderbilt or Mr. Tener

22   as to why Mr. Tener has not used any of the

23   purported 50 comparable leases to support an

24   8 percent capitalization rate?

25             MR. WALSH:  Object to the form.



Page 211

1          A.   He has not explained why those

2    leases were comparable for the purposes of

3    determining an 8 percent capitalization rate,

4    but that they were not comparable in order to

5    use them as comparable leases pursuant to the

6    option rent addendum.

7    BY MR. KOH:

8          Q.   Thank you.

9               Go to paragraph 78.  McDonald's

10   alleges that "Vanderbilt has failed to cooperate

11   in good faith by, among other things, not

12   appraising FMV in accordance with the lease, New

13   York law, and usual customary appraisal

14   practices."

15              Do you see that?

16        A.   Yes.

17        Q.   What usual and customary appraisal

18   practices is McDonald's referring to there?

19                   MR. WALSH:  Object to the form.

20        A.   I don't know specifically, but we

21   found many comparable -- or Sharon found many

22   comparable leases, and none of them were used by

23   Tom Tener's appraisal, is what I read that to

24   mean.

25



Page 212

1    BY MR. KOH:

2         Q.   And isn't it possible that Mr. Tener

3    could have, for whatever reason, concluded those

4    leases were not valid comparables?

5              MR. WALSH:  Object to the form.

6         A.   I don't know.

7    BY MR. KOH:

8         Q.   Have you ever heard the phrase pad

9    lease before?

10        A.   Yes.

11        Q.   What do you understand pad lease to

12   mean?

13        A.   It means -- I mean, I've heard it in

14   many contexts, but it would be as opposed to a

15   lease that is part of the larger building.  I

16   sort of see it synonymous with ground lease.

17        Q.   Earlier in your deposition you

18   testified about a remodeling of the McDonald's

19   restaurant at 840 Atlantic Avenue.

20              To your knowledge, has that

21   remodeling been completed?

22        A.   Yes.

23        Q.   Do you have any understanding of

24   what the cost of that remodeling was?

25              MR. WALSH:  Object to the form



Page 213

1           and insofar as it is outside of the

2           30(b)(6) notice.

3                   But Mr. Meyer can answer, if he

4           has knowledge.

5    BY MR. KOH:

6           Q.   Do you know what the cost of the

7    remodeling was, Mr. Meyer?

8           A.   I believe I know the approximate

9    amount of the remodel.

10          Q.   Tell us what you know.

11          A.   I believe it was in excess of a

12   million five.  I don't recall the specific

13   number.

14          Q.   How about in excess of a million and

15   a half dollars --

16          A.   Yes.

17          Q.   -- but less than two million.

18               Is that your recollection?

19                   MR. WALSH:  Object to the form.

20          A.   Yes.

21   BY MR. KOH:

22          Q.   And who paid that?

23          A.   I don't know specifically in this

24   case, but typically it would be -- it would be

25   paid between the franchisee and McDonald's.



Page 214

```
 1              And at various times there's an
 2    agreement between the franchisees and McDonald's
 3    as to what percentage McDonald's will pay and
 4    what percentage a franchisee will pay, but that
 5    kind of changes from time to time depending on,
 6    you know, what initiatives are going on.
 7         Q.   Does McDonald's from time to time
 8    finance the franchisee's portion of these
 9    remodels?
10              MR. WALSH:  Object to the form.
11         A.   I don't, I don't know what you mean
12    by finance.
13    BY MR. KOH:
14         Q.   Give a loan to the franchisee to pay
15    for the franchisee's portion which the
16    franchisee must pay back.
17              MR. WALSH:  Object to the form.
18         A.    I think in some cases there is a
19    payment over time, but I don't -- I don't
20    believe there's -- I don't know if there's an
21    interest like you would typically see, you know,
22    in the quote/unquote financing.
23    BY MR. KOH:
24         Q.   Do you know if with this particular
25    remodel the franchisee was permitted to pay its
```



Page 215

1    share of the remodeling costs over time?

2            A.   I don't know in this case.

3                    MR. WALSH:  Object to the form.

4    BY MR. KOH:

5            Q.   Bear with me for a moment, please.

6                 Did you discuss the 936 Second

7    Avenue case with Ms. Locatell?

8            A.   I believe so.

9            Q.   What do you recall discussing with

10   her?

11                   MR. WALSH:  Object to the form.

12                   MR. KOH:  I'll withdraw.

13   BY MR. KOH:

14           Q.   What about the 936 Second Avenue

15   case did you discuss with Ms. Locatell?

16                   MR. WALSH:  Object to the form.

17           A.   I don't remember specifically, but

18   just in general that it was applicable.

19   BY MR. KOH:

20           Q.   Did you give any instructions to

21   Ms. Locatell concerning how she was to prepare

22   her opinion of value under the option rent term

23   agreements?

24           A.   Can you repeat that?

25           Q.   Yes.



1          Did you give any instructions to

2   Ms. Locatell concerning how she was to prepare

3   the opinion of value for the FMV process?

4               MR. WALSH:  Object to the form.

5        A.   No, no instructions about how she

6   was to prepare her letter opinion of value.

7   BY MR. KOH:

8        Q.   Did you discuss with Ms. Locatell

9   what impact any encumbrances on the property

10  might have concerning the fair market value of

11  the property at 840 Atlantic Avenue?

12       A.   Not that I recall.

13       Q.   Did you discuss the length of the

14  encumbrance at the property at 840 Atlantic

15  Avenue resulting from the option rent provisions

16  in the lease with Ms. Locatell?

17               MR. WALSH:  Object to the form.

18               MR. KOH:  Let me rephrase that.

19  BY MR. KOH:

20       Q.   Did you and Ms. Locatell discuss how

21  long McDonald's lease encumbered the property at

22  840 Atlantic Avenue?

23               MR. WALSH:  Object to the form.

24       A.   I still don't understand the

25  question.  Sorry.



Page 217

1    BY MR. KOH:

2         Q.   You understand that there are four

3    five-year option terms under the lease, correct?

4         A.   Correct.

5         Q.   Did you have any discussions with

6    Ms. Locatell concerning whether the encumbrance

7    created by the option term should be a five-year

8    period or a 20-year period?

9              MR. WALSH:  Object to the form.

10        A.   I don't recall any specific

11   discussions, but we certainly -- I mean, it

12   would have been left to her judgment as to the

13   time period.

14   BY MR. KOH:

15        Q.   I understand it would ultimately be

16   left to her judgment.

17             My question was do you recall any

18   discussions about that issue with Ms. Locatell?

19             MR. WALSH:  Object to the form.

20        A.   Like I said, I don't recall any

21   specific discussions.

22   BY MR. KOH:

23        Q.   Besides yourself, who else from

24   McDonald's had discussions with Ms. Locatell

25   concerning this assignment?



Page 218

1          A.    I believe only Carol DeMarco.

2          Q.    Do you remember Ms. DeMarco giving

3     any instructions to Ms. Locatell concerning this

4     assignment?

5               MR. WALSH:  Object to the form.

6          A.    No, no instructions.

7     BY MR. KOH:

8          Q.    Do you remember if -- strike that.

9               Were you present during any

10    conversations between Ms. DeMarco and

11    Ms. Locatell where the subject of how to prepare

12    Ms. Locatell's appraisal came up?

13              MR. WALSH:  Object to the form.

14         A.    No.

15              MR. KOH:  All right.

16              We have been going for about

17         probably 70 minutes.  I think it would

18         be a good time to take our next break so

19         I can review where I am and see how much

20         I have to do.

21              So why don't we take -- let's

22         take 10 minutes and come back at 4:20.

23              MR. WALSH:  Okay.  Thank you.

24              MR. KOH:  Thank you.

25              Off the record.



Page 219

```
1                      (Whereupon, at 4:10 o'clock
2              p.m., a recess was taken until 4:24
3              o'clock p.m.)
4                      MR. KOH:  Back on the record.
5                      I have decided that I have
6              concluded.  So, we can put that on the
7              record.
8                      But, Brendan, do you have any
9              questions for your witness?
10                     MR. WALSH:  You know, I expect
11             to.  One question that I have is just
12             more technology.  If I wanted to show
13             Mr. Meyer some documents that have not
14             been introduced yet, how would I do
15             that?
16                     Because I think I do want to ask
17             him just a few questions.  I think it
18             will take only a few minutes.
19                     And I think there are some
20             documents that have not been marked that
21             I may want to ask him some questions
22             about.
23                     MR. KOH:  All right.
24                     Nat, if you have views, you can
25             also e-mail them to me and I can get
```



MAGNA
LEGAL SERVICES

Page 220

```
 1          them uploaded and I can bring them up
 2          for you.  Beyond that, I'm not sure.
 3                MAGNA TECH:  One of the options,
 4          you can just e-mail me and we can add
 5          them on to AgileLaw.  If you want it to
 6          be quicker, you can also -- I don't know
 7          if you would want to do this or if you
 8          want me to go ahead and do it for you,
 9          you can share your screen if you have
10          them right in front of you.  It really
11          just depends how you feel more
12          comfortable using the exhibits.
13                MR. WALSH:  If we e-mail them to
14          you, could you -- it is probably easier
15          as long as -- I guess it looks like we
16          ended our exhibits the last time around
17          P-38.  So the first exhibit is P-39.
18                Can we keep the designation
19          instead of the letters that Mr. Koh has
20          been using?
21                MR. KOH:  The answer to that is
22          I'm sure you can.  I have no objection.
23                MAGNA TECH:  I can add the label
24          and just put P-39 on it.
25                MR. WALSH:  I think what we'll do
```


MAGNA
LEGAL SERVICES

Page 221

1           is -- I think there's two documents.

2                   What e-mail address should we

3           send them to you?

4                   MAGNA TECH:  I'll drop my e-mail

5           in the chat right now.  One second.

6                   You can send it to that e-mail,

7           and then I'll just need a couple minutes

8           to add them to AgileLaw and I can

9           display them for you.

10                  MR. WALSH:  I'll just refer to

11          them by Bates number when I introduce

12          them.

13                  MAGNA TECH:  Does the file name

14          have the Bates number?

15                  MR. WALSH:  Yes, they do.

16                  MAGNA TECH:  Perfect.

17                  MR. WALSH:  I just hit send.

18                  And then if you could just put

19          me, Ms. Howard, Ms. Alvarez in a

20          breakout room, and we'll come back in

21          just a few minutes.  We just want to

22          make sure we're all on the same page.

23                  MAGNA TECH:  No problem.

24                  MR. WALSH:  Off the record.

25                      (Whereupon, at 4:28 o'clock



Page 222

```
 1                    p.m., a recess was taken until 4:31

 2                    o'clock p.m.)

 3                         MR. WALSH:  Back on the record.

 4

 5   EXAMINATION BY MR. WALSH:

 6         Q.   Mr. Meyer, I just wanted to clarify

 7   a few different things.  I don't have the

 8   transcript in front of me, but I have some

 9   questions about things I thought I may have

10   heard you say, and I just wanted to just clarify

11   a couple of things.

12                    First, there was a question early on

13   in the deposition about what Mr. Koh marked as

14   Exhibit G, and that is a May 10, 2018 letter

15   from Vanderbilt to McDonald's in which it said

16   it determined the FMV of the premises is

17   $975,000.

18                    And I thought I heard you say that

19   Ms. Locatell or an analysis she had done was

20   used at that time to, I guess, make the decision

21   by McDonald's not to countersign that.

22                         MR. WALSH:  Magna, if you can

23              pull up the document MCD 003848, and

24              mark that as P-39.

25                              (Document bearing Bates
```



Page 223

```
 1                stamp MCD 003848 through 003852 was

 2                marked as Exhibit P-39 for

 3                identification, as of this date.)

 4   BY MR. WALSH:

 5        Q.   Mr. Meyer, please take a look at

 6   this e-mail and attachment.  If you could just

 7   take a look and let me know when you're ready.

 8        A.   My screen says presenter has locked

 9   your screen.

10                Now I've got it.  All right.  P-39.

11                MR. WALSH:  Just for the record,

12             it is a five-page exhibit, MCD 003848

13             and then ending at 3852.

14   BY MR. WALSH:

15        Q.   And this is an e-mail chain and

16   attachment.  It looks like an engagement letter

17   with Ms. Locatell from October 2018; is that

18   right?

19        A.   That's right.

20        Q.   So does this refresh your

21   recollection as to when McDonald's began working

22   with Ms. Locatell in relation to, you know, 840

23   Atlantic Avenue?

24        A.   Yes.

25        Q.   And when did McDonald's begin
```



Page 224

1    working with Ms. Locatell on the 840 Atlantic

2    Avenue property?

3            A.    On or around October 2018.

4            Q.    Okay.

5                  So was Ms. Locatell involved in May

6    of 2018?

7            A.    It looks like no.

8            Q.    Okay.

9                  Again, my notes may be wrong, but I

10   thought I heard you testify during the

11   deposition that McDonald's first learned that

12   Vanderbilt acquired the lease, the McDonald's

13   lease and its own ground lease, in I thought you

14   said the end of December 2018.

15                    MR. WALSH:  Magna, if you could

16              please introduce MCD 006017 as P-40.

17                         (Document bearing Bates

18              stamp MCD 006017 was marked as

19              Exhibit P-40 for identification, as

20              of this date.)

21   BY MR. WALSH:

22        Q.    Mr. Meyer, if you could, please

23   review this e-mail.

24        A.    Okay.

25        Q.    Does this refresh your recollection



Page 225

1    about when McDonald's learned that Vanderbilt

2    had acquired the McDonald's lease or had become

3    McDonald's landlord?

4           A.    Yes.

5           Q.    And what is your recollection now

6    that you have seen this document?

7           A.    That we learned that in January of

8    2018.  I think I was referencing the details of

9    the transfer from the acris forms previously as

10   opposed to when we learned that Vanderbilt was

11   the landlord.

12          Q.    Okay.

13                And then, finally, there's been some

14   discussion today about the two analyses that

15   Ms. Locatell sent to McDonald's in December of

16   2018.

17                What was the purpose of having her

18   prepare those analyses at that time?

19          A.    The purpose -- I think multiple

20   purposes, but -- and those were, on one hand,

21   Carol was in the midst of negotiating with Sam

22   the fair market rental value.

23                So she wanted to have an

24   understanding, you know, of what, you know -- a

25   third-party understanding of valuation.



Page 226

1            And also, we were -- she was getting

2    ready to get approvals to exercise the blind

3    fair market value, blind fair market value

4    option.  And so, needed to populate the

5    reacquisition package with, you know, a range of

6    potential fair market value rents, you know, up

7    to the, you know, what could be the worst case

8    to, I guess, what could be the best case.

9         Q.   Okay.

10           And at that time in December of

11   2018, had McDonald's given Ms. Locatell any

12   instructions on how to factor in the encumbrance

13   of the lease or current zoning?

14        A.   No, at that point we were not

15   focused on the formal process.  We were focused

16   on, like I said, the negotiation and the

17   exercise of the blind fair market value option.

18             MR. WALSH:  Okay.

19             I don't believe I have any

20         further questions.

21             MR. KOH:  I may have a follow-up.

22         Bear with me.

23             Yes, one follow-up.

24

25   FURTHER EXAMINATION BY MR. KOH:





Page 227

1          Q.   Mr. Meyer -- maybe more than one.
2     The question is, did there ever come a time when
3     McDonald's gave Ms. Locatell any instructions on
4     how to factor in the encumbrance of the lease or
5     current zoning?
6               MR. WALSH:  Objection to form.
7          A.   No, not instructions about how to
8     incorporate the encumbrance of the lease or
9     current zoning.  Just that that Second Avenue
10    case required that the valuation incorporate the
11    encumbrance of the lease and current zoning.
12    BY MR. KOH:
13         Q.   And when did that discussion occur
14    in the process?
15         A.   I don't remember the exact date, but
16    sometime in -- prior to that June 19th meeting.
17              MR. KOH:  Okay.
18              I don't have anything further.
19              MR. WALSH:  Okay.
20              MR. KOH:  All right.  This
21         deposition is concluded.
22              Off the record.
23                  (Whereupon, at 4:42 o'clock
24         p.m., the deposition was concluded.)
25



Page 228

1                    INSTRUCTIONS TO WITNESS

2

3         Read your deposition over carefully.  It is

4    your right to read your deposition and make

5    changes in form or substance.  You should assign a

6    reason in the appropriate column on the errata

7    sheet for any change made.

8         After making any change in the form or

9    substance, and which have been noted on the

10   following errata sheet, along with the reason for

11   any change, sign your name on the errata sheet and

12   date it.

13        Then sign your deposition at the end of your

14   testimony in the space provided.  You are signing

15   it subject to the changes you have made in the

16   errata sheet, which will be attached to the

17   deposition before filing.  You must sign it in

18   front of a notary public.  Any competent adult may

19   witness your signature.

20        Return the original errata sheet to the court

21   reporter promptly.  Court rules require filing

22   within 30 days after you receive deposition.

23

24

25



Page 229

 1                        ERRATA SHEET

 2

 3     PAGE      LINE#     CHANGE                REASON

 4     _____     _____     _____    _____

 5     _____     _____     _____    _____

 6     _____     _____     _____    _____

 7     _____     _____     _____    _____

 8     _____     _____     _____    _____

 9     _____     _____     _____    _____

10     _____     _____     _____    _____

11     _____     _____     _____    _____

12     _____     _____     _____    _____

13     _____     _____     _____    _____

14     _____     _____     _____    _____

15     _____     _____     _____    _____

16     _____     _____     _____    _____

17     _____     _____     _____    _____

18     _____     _____     _____    _____

19     _____     _____     _____    _____

20     _____     _____     _____    _____

21     _____     _____     _____    _____

22     _____     _____     _____    _____

23     _____     _____     _____    _____

24     _____     _____     _____    _____

25     _____     _____     _____    _____



Page 230

1                    SIGNATURE PAGE

2                        OF

3                   MICHAEL MEYER

4

5        I hereby acknowledge that I have read the

6   foregoing deposition, dated August 17, 2021, and

7   that the same is a true and correct transcription

8   of the answers given by me to the questions

9   propounded, except for the changes, if any, noted

10  on the attached errata sheet.

11

12

    SIGNATURE: _____

13

14  WITNESSED BY: _____

15

    DATE: _____

16

17

18

19

20

21

22

23

24

25



Page 231

```
 1                 C E R T I F I C A T E
 2    STATE OF NEW JERSEY)
 3                      )SS:
 4    COUNTY OF MONMOUTH )
 5
 6        I, CATHERINE M. DONAHUE, a Certified Court
 7    Reporter and Notary Public within and for the
 8    State of New Jersey, do hereby certify:
 9        That the witness whose deposition is
10    hereinbefore set forth was duly sworn by me and
11    that such deposition is a true record of the
12    testimony given by such witness.
13        I further certify that I am not related to
14    any of the parties to this action by blood or
15    marriage, and that I am in no way interested in
16    the outcome of this matter.
17        IN WITNESS WHEREOF, I have hereunto set my
18    hand this 26th day of August, 2021.
19
20                    _____
                      CATHERINE M. DONAHUE, CCR
21                    License No. 30X100223700
22
23
24
25
```



## A

a-c-r-i-s 201:13
a.m 2:5 76:16,17
  164:23 195:11
AA 7:22 187:2,5,8
  188:18 191:1,10
  192:4 194:5
ability 57:12,24
  58:9 160:25
  196:17
able 54:14 55:16
  74:16 102:9 177:8
accept 82:5 126:16
  171:25
access 22:21
accessible 25:2
account 65:14
  110:7
accounting 99:14
  100:10
accounts 97:16
Accum.PV 124:12
accumulated
  124:12
accurate 31:8
  49:14 51:14,22
  52:3,4,9 81:21
  87:24 136:10
accurately 210:4
acknowledge 230:5
acquired 66:19
  120:7 224:12
  225:2
acris 201:10,13
  225:9
acronym 70:21
action 24:15 30:11
  111:16 118:14
  178:25 198:7
  231:14
actual 24:12 105:16
  116:1 175:3
  199:20
add 105:6 167:3
  220:4,23 221:8

added 110:3
addendum 6:8
  37:18 38:1,20
  43:19,23 44:3,8
  52:1 55:21,24
  56:22 57:6,17,21
  58:6,15,25 59:16
  59:22 60:3 79:5
  84:2 116:21
  141:24 143:5
  144:25 145:4
  154:10,23 188:1
  190:10 211:6
adding 105:20
addition 108:15
  133:3 145:5
  161:15 168:12
  176:15
additional 105:3
  123:23 139:8
  145:7,10 146:23
  147:3 148:2 176:9
  176:11
address 221:2
addressed 90:2
  169:9,11,13
adequate 47:24
adjacent 202:19
adjourn 129:15
adjust 139:11
adjusted 140:5,19
  140:23
adjustment 105:6
  105:14,19 109:19
  110:4,6
admitted 15:10,13
adult 228:18
advance 177:10
advice 31:9,12,15
  31:21 32:8 42:18
  49:17 158:14
  159:12 207:10
advise 35:2 43:2
  152:21 153:6
advised 206:23
  207:6,6,17

agenda 195:8,14
AgileLaw 16:12
  220:5 221:8
ago 28:1 49:2
agree 13:11,15
  51:17,25 52:21
  80:7 138:9 141:25
  155:6,10 177:25
  189:17 190:15
  191:14 193:2,7
agreed 53:2 55:3
  59:25 60:8 134:3
  149:20
agreed-upon 92:2
  134:12
agreement 47:16
  52:10 54:23 55:6
  55:17 66:4 99:2
  108:10,14 120:22
  120:23 130:13,15
  131:24 132:1
  133:4,11 136:3
  142:5 154:5,8,16
  177:4 178:10
  187:12 189:12,19
  190:25 191:15
  192:8,21,23 193:1
  193:5 194:3 214:2
agreements 190:3
  209:5 215:23
agrees 112:17
ahead 31:4 41:3
  45:11 47:23 61:4
  67:14 81:3 112:14
  160:24 176:25
  220:8
airports 26:17
  113:15
allegation 201:25
  203:4,18 204:12
allegations 201:2
alleges 203:12
  204:5 209:18
  211:10
allow 56:19 57:3
  59:25 60:9,13

  178:10 205:17
allowed 57:16
Alvarez 3:6 18:15
  18:18 221:19
amended 136:22
  137:3
American 48:1
AMIT 3:17
amount 73:15 81:6
  91:25 98:9 105:15
  105:19 118:22
  122:2,20 124:18
  124:25 125:3,9
  134:3,12,13
  137:11,17 138:15
  139:8,11 142:8
  213:9
analyses 225:14,18
analysis 77:17,20
  78:3,13 79:3
  80:15,21 123:19
  183:11 209:25
  222:19
and/or 126:8
annual 104:7,8
  106:14
annualized 107:16
answer 9:3 11:10
  14:16 25:5 31:4
  31:18 32:3 33:20
  34:2,6,20 38:17
  39:9 40:2 41:2
  42:3,25 43:2,4,8
  44:25 47:23 48:24
  50:4 53:10 55:1
  56:10,12 57:8
  58:21 61:1 62:11
  63:11,11 67:14
  74:15 78:7 81:3
  81:16 92:24
  115:21 140:12
  158:5,18,21 159:6
  160:10,19,24
  161:7 164:5 201:5
  213:3 220:21
answered 191:7

answers 21:18
  230:8
Anthony 99:7,23
  114:9
anybody 15:21
  16:4 18:17,24
  24:4 31:15 170:1
  173:23 174:4,7
  197:14 198:20
  199:2,8 207:9
apart 142:8
apologize 45:10
  51:21 94:7 123:13
App 25:17
apparently 101:21
  166:18 175:23
appear 17:16 33:12
appeared 95:2
appearing 16:16
  17:11
appears 74:12
  89:22 90:11
  130:20 134:17
  181:5 196:5 205:6
apples 91:22,22
  173:16,16
applicable 215:18
applied 116:23
  171:3
applies 208:6
apply 13:18 23:1
  122:19 138:16,16
  171:17
applying 48:19
  87:25
appoint 52:12
  55:12,16
appointed 51:15,16
appraisal 40:6
  41:14,15 43:18
  46:14,19 49:8,11
  49:20 56:24 60:21
  61:5,8,14,24
  63:16,18,24 64:4
  64:7 65:13,21
  66:2 79:4 90:8



95:3 102:5,22,25
117:11,13 125:18
125:19 140:24
144:4 146:22
148:23 149:23
150:1 151:18,24
154:5,8 180:15
208:3 211:13,17
211:23 218:12
**appraisals** 61:15
112:7 155:13
**appraiser** 40:5
43:17 46:14 48:7
51:15,16,23,24
52:11,12,22 53:1
53:13,24 54:4,14
54:24 55:3,13,16
55:18,19 56:20
57:3 83:25 144:9
144:12,21 145:6
146:6 147:18,22
147:23 155:1,6
159:15 164:24
185:16 187:22,23
189:16 206:25
207:18
**appraiser's** 187:25
**appraisers** 44:22
48:2 52:21 55:3
56:21 57:4,10,22
58:7 59:17 60:1,9
85:9 95:4 101:21
144:5 146:4
148:12,15,19
149:2,12 150:9
151:19,25 155:7
155:11,20 156:9
182:4 189:4,11
190:12 193:3,12
194:1 201:9 206:3
**appraising** 211:12
**appreciate** 24:2
**approach** 46:8,14
47:2 61:6 63:18
88:20 89:1 91:17
91:18 163:25

170:19,22
**approaches** 172:8
**appropriate** 48:21
87:20 228:6
**approval** 75:5
111:16 112:24
114:21 115:11,22
116:2,17 151:12
152:18
**approvals** 73:18
111:12 159:23
161:9 226:2
**approve** 115:23
**approved** 124:4,5
**approvers** 111:15
115:23
**approximate** 213:8
**approximately**
10:22 17:9 20:2,8
27:12 61:21,22
90:23 107:25
**apps** 16:8,9 25:17
**April** 136:8,9 143:1
143:8 146:14
203:15 204:8
205:6,14,18
**area** 37:9 71:4
75:13,22 76:1
84:6 90:22 176:20
179:20
**areas** 22:25 24:19
28:16,17
**argue** 190:9
**arithmetic** 97:9
112:11 138:10
**arrange** 11:11
**arrived** 174:18,20
**arriving** 209:20
**arrow** 196:23 197:1
197:2
**article** 133:15,17
202:8 203:10
**articles** 201:21,24
202:4 203:6,9,10
**as@msf-law.com**
3:22

**aside** 173:13
**asked** 89:1,3
113:22 140:11
142:20 158:14
**asking** 34:23,24
59:7 78:16 151:4
165:18 199:4
**assert** 193:11
**asset** 26:2,4,7,10,20
27:10,18 28:13,15
29:13,15 30:1,8
83:4,12,13,19,21
111:7,9,17 119:7
200:13
**assets** 26:9
**assign** 228:5
**assignment** 85:5,10
130:14,14 151:19
151:25 217:25
218:4
**assignments** 84:8
**assist** 81:19 88:7,10
88:11
**assisting** 159:23
160:3 161:9 189:7
**associated** 16:4,10
**assume** 11:1 24:9
43:14 69:3 73:5
79:24 94:19 95:6
98:9 107:10 138:6
152:6 188:24
198:14
**assumed** 93:7
158:11
**assumes** 52:16
146:8 164:2
**assuming** 95:4
110:12 148:22
**assumption** 69:6
145:16
**assumptions**
172:23 173:11
178:6
**Atlantic** 1:10 6:6
10:12 35:21 36:8
50:1 66:20 67:10

67:24 72:18 77:18
77:21 78:3,13
79:21 85:6,10,18
86:2,23 87:12
91:12 92:21
100:14 119:8
136:11 153:24
157:7,20 158:16
159:16 161:20
163:24 170:17
172:9 212:19
216:11,14,22
223:23 224:1
**attached** 8:14 38:2
103:20 126:3
133:8 134:14
141:5 164:23
165:17,22 228:16
230:10
**attaches** 101:21
**attachment** 164:19
165:11,23,24
223:6,16
**attempt** 58:20
60:10 127:19
187:14 204:21
**attempted** 52:21
**attempting** 85:22
115:5 154:3
**attempts** 52:11
**attended** 177:18
**attending** 169:21
**attention** 101:7
172:11
**attorney** 10:23
25:22 29:9 148:9
148:16 149:25
150:7 200:10,13
**attorney/client**
198:25
**attorneys** 3:13,23
18:25 150:4
199:24
**August** 1:18 2:4
5:20 120:8,14
202:14,14 230:6

231:18
**authorized** 130:25
**available** 47:12,14
47:18,25 49:3,16
49:25 74:6 180:23
**avenue** 3:18 6:7
35:21 40:13 50:1
66:20 67:11,24
72:19 77:18,22
78:4,14 85:6,11
85:18 86:2,23
87:12 91:12 92:21
100:14 119:8
136:11 151:13,14
153:24 157:7,20
158:16 159:16
161:20 163:24
170:17 172:9
173:14,22 206:11
208:6 212:19
215:7,14 216:11
216:15,22 223:23
224:2 227:9
**averaged** 155:3,4,5
155:15
**aware** 44:4 59:24
60:7 102:20
112:17 207:13

---

**B**

**B** 6:1,5 7:1 8:1
32:15,19,24 33:7
33:13 134:17,21
136:22
**Babylon** 151:7
**back** 14:6,15 39:11
41:6 43:7 56:13
56:16 65:6 76:18
93:10 105:7 106:7
109:4 112:9,10
128:20 129:16
130:3 139:17
144:14 155:18
160:16 166:10
180:4 214:16
218:22 219:4



221:20 222:3
**background** 157:19
158:13 159:10
**bad** 64:8,12 65:22
66:11 123:13
156:3
**bankruptcy** 11:25
12:12,16,19 30:14
**barking** 15:24
**base** 134:13 137:21
138:17,25 139:1
**based** 38:24 39:2
40:5 49:16,19
63:17,19 65:10
71:3 73:5 80:15
89:5 96:7 116:22
117:3,16 122:11
134:4 139:24
148:1 159:2 171:5
188:4 195:5
201:21 203:9
**basement** 183:13
183:25 184:11,18
**bases** 26:17 113:15
201:1
**basic** 11:2 73:9
133:21 134:2,12
137:10,12,17
**basically** 109:8
178:24
**basics** 69:18
**basis** 80:9 137:8
139:21 199:19
201:1,25
**Bates** 6:9,10,12,13
6:15,16,18,19,21
6:22,24 7:4,5,7,8
7:10,11,13,14,16
7:17,19,20,22,23
8:4,5,8,9 68:6
76:22 79:12 86:11
87:9 89:9 90:17
92:6 93:13,23,25
100:21 103:4
110:23 128:5
141:12 143:14

147:7 150:16
153:11 156:15
162:3,23 163:6
164:10 165:5
168:17 180:7
182:10 184:22
187:3 193:17
194:11 195:25
221:11,14 222:25
224:17
**BB** 7:23 193:16,19
193:22
**Bear** 60:17 215:5
226:22
**bearing** 6:9,10,12
6:13,15,16,18,19
6:21,22,24 7:4,5,7
7:8,10,11,13,14
7:16,17,19,20,22
7:23 8:4,5,8,9
43:8 68:6 76:22
79:12 86:11 87:9
89:9 92:6 100:21
103:4 110:23
128:5 141:12
143:14 147:7
150:16 153:11
156:15 162:3
164:10 165:5
168:17 180:7
182:10 184:22
187:3 193:17
194:11 195:25
222:25 224:17
**Beckerman** 202:16
**began** 143:8 223:21
**beginning** 74:2
75:4 103:22
119:16
**begins** 38:10 46:4
47:2 53:20 71:1
103:16 131:24
**behalf** 17:19 32:10
36:21 154:25
185:10 207:6
**behavior** 203:20

204:21
**belief** 202:24
203:13 204:6
**believe** 16:18 18:6
19:9 20:4,10
22:24 25:15 40:12
43:24 44:19 48:9
48:23 51:3 52:25
53:18 56:4 59:21
61:17 62:22,22
63:3,16,18 64:1
64:11 65:21 66:21
66:23 67:18 69:21
77:13 82:23 83:16
84:15 85:12,20
87:4 94:6 96:1
97:1 98:24 99:14
99:23 101:5,14,18
104:14 106:5,10
106:17 107:13
108:20,22 109:1,7
109:22 110:1
111:20 112:3
113:8 114:7
119:12,15 121:16
122:10 124:13
130:22 131:14
132:17 133:15
139:7 142:11
145:2,5 148:17
151:16 152:3
156:2,11 157:5
158:19 170:9
174:18,24 176:14
178:9 179:2,15
183:11 188:9,20
189:10 196:16
199:18 200:7,17
201:8 202:9 203:6
207:25 208:12
209:3 213:8,11
214:20 215:8
218:1 226:19
**believed** 64:7
149:22 154:25
155:8

**believes** 57:15,21
58:6 66:10
**belonging** 25:1
**Benjamin** 143:24
144:3 151:3
**best** 39:3,16 160:25
226:8
**bet** 197:18
**Bethesda** 28:21,24
29:2,6,8,10
**better** 27:4 62:13
97:8 105:15 107:8
172:2 177:20
196:15
**beyond** 46:16 81:2
166:18 220:2
**big** 23:4
**binding** 141:6
**bit** 75:3 151:10
**blank** 127:1,5,7
195:12
**blind** 100:6,12
226:2,3,17
**blood** 231:14
**blow-by-blow**
142:16
**board** 202:10 203:8
**Bohler** 77:8,16
**bono** 30:13
**borne** 140:25
**boroughs** 51:2
**boss** 82:21 159:22
161:8
**bottom** 51:9 96:24
122:22 124:7
195:10
**Boulevard** 151:8
**box** 114:23 115:1,5
115:9,16 118:1,14
121:25 124:2,3
**boxes** 95:18 114:20
121:11 123:24
124:14
**break** 11:10,12
21:22 33:23 76:8
128:15,19,25

137:16 179:21
218:18
**breakout** 221:20
**Brendan** 3:5
129:14 197:4
219:8
**Brian** 18:20 99:24
99:25 104:17
139:24
**bring** 16:19 32:13
35:16 37:14 68:3
79:9 86:8 89:6
92:3 100:17
102:11 103:1
110:20 128:2
141:9 143:11
147:4 150:13
153:9 156:12
161:22,25 164:8
165:2 168:15
180:5 182:7
184:20 187:1
193:14 194:9
195:23 198:5
220:1
**bringing** 172:10
**broad** 23:5
**broker** 50:6
**brokerage** 50:22
**Brooke** 69:19 71:19
**Brooklyn** 30:19
31:1 71:4 72:19
**Bruce** 113:24
**Bruckner** 151:8
**build** 48:10 204:24
**building** 48:13,15
48:16,20 90:22
118:12 178:22
201:20 203:1
212:15
**bullet** 75:9 112:13
112:25
**bunch** 196:9
**business** 26:8 31:14
31:21,24 32:5,9
37:8 200:21



**businesses** 76:1
**busy** 145:15
**bwalsh@pashma...**
  3:11

**C**

**C** 3:1 4:1 6:6 10:3
  35:19,22 36:2,19
  36:23 231:1,1
**calculated** 132:16
**calculation** 48:9
**calculator** 122:19
**call** 18:6 19:12
  22:13 27:1 109:23
  126:1 154:4
  157:10,14,22
  158:1,8 159:8,11
  195:2,3,8 208:1
**called** 10:3 12:18
  19:10 70:9 71:25
  95:18 96:24 98:23
  106:21 108:5
  118:1,14 121:11
  121:14,25 123:18
  132:4 135:9,14
**calling** 39:5 72:21
**calls** 33:16 34:12
  52:14 53:5 54:17
  55:8 60:24 61:11
  65:25 69:3 139:15
  142:14 158:3,19
  167:5 178:19
  191:3 192:15
  209:3
**cap** 116:23 171:3,5
  171:10
**capacity** 15:2
**capitalization**
  210:1,24 211:3
**caps** 124:15
**carefully** 228:3
**Carol** 4:8 18:22
  24:13 42:6 78:16
  82:16 85:7,21
  88:8,12 91:24
  92:19 94:19

  111:20 116:2
  142:7,12,13 144:6
  147:17 151:1,3
  157:23,25 159:10
  164:17 170:3
  174:9,11,13,14,16
  174:23 176:7
  183:6 184:6 200:7
  204:16 218:1
  225:21
**Carol's** 82:21
  159:22
**case** 1:3 14:10 16:5
  19:7 20:6 40:4,8
  40:11,12,13,20
  73:14 74:21
  114:15 116:5
  117:21 133:2
  134:9 139:12
  149:16 172:11
  206:11 208:6
  213:24 215:2,7,15
  226:7,8 227:10
**cases** 11:21 40:15
  206:13 214:18
**cash** 96:12,12,13,15
  96:20,25 97:3,15
  97:22,24 98:1,6
  107:7,11,22 108:1
  109:2,14,22 110:8
  110:11 116:10
  127:20
**categories** 19:11,14
  19:15 22:25 23:5
  23:23 51:6
**category** 51:6
**Catherine** 2:5 10:5
  14:15 65:7 231:6
  231:20
**cause** 185:15
  203:14 204:7
**caution** 33:17
  42:16,20 159:4
  160:6 199:21
**CC** 8:4 194:10,13
  194:16

**CCR** 231:20
**cell** 16:13 23:2,7,13
  23:16,17 24:4
**cent** 155:12
**Center** 30:14
**certain** 24:10 28:16
  73:15 114:16
  118:22 119:11
  142:16 177:19,23
  203:9
**certainly** 36:14
  126:19 171:15
  179:16 217:11
**certification** 162:15
**Certified** 2:6 231:6
**certify** 23:22 24:3
  231:8,13
**cetera** 22:19 30:6
  76:2 159:24 161:4
  161:10
**cf** 96:20,24 107:10
  108:24 109:13,20
  110:4
**chain** 69:24 92:19
  150:25 153:20
  154:2 164:16
  183:5 194:17
  223:15
**change** 136:17
  140:3 228:7,8,11
  229:3
**changed** 136:18
**changes** 74:19
  139:13 214:5
  228:5,15 230:9
**Chapter** 11:25
  12:15
**characteristics**
  75:18,25
**characterization**
  162:17 168:2
  169:6 180:22
  184:2 186:4
  191:23 202:2
  204:14
**chart** 94:16,17,21

  95:2,17,18,25
  103:21,24 104:4
  104:18 106:7
  107:15 110:5
  116:11,12 117:19
  118:1 122:23
  123:21 127:25
**charts** 103:20
**chat** 221:5
**check** 23:19 60:18
  72:13 131:21
  183:19,20
**Cheung** 18:20
  99:24,25 104:18
  139:25
**Chicago** 15:19
**choose** 53:24 54:23
  91:15 142:25
**chose** 45:13 62:7
**chosen** 54:4,14
**Christine** 130:19
**Chrome** 16:11
**circle** 144:14
  196:23
**circulated** 124:21
**cited** 207:22
**city** 84:6 202:17,25
**Civil** 13:19
**claim** 12:3 14:20
  199:15,19
**claims** 127:13
  209:24
**clarify** 222:6,10
**clear** 95:10 127:16
  141:24 142:4
  166:8
**click** 102:10
**client** 62:6
**climate** 30:11
**closed** 104:19,22
  105:17 110:9
  118:16
**coast** 28:23
**code** 135:8
**collect** 138:22
  146:4

**collecting** 145:20
  146:15,17
**collection** 20:12
**column** 120:13,18
  120:20 121:14,20
  121:22 122:1,3
  124:11 125:4,9
  137:10 228:6
**columns** 116:14
**combination**
  204:15
**come** 22:2 30:17
  52:20 57:12,24
  58:9 60:10 81:12
  93:8,9 121:7
  122:20 128:19
  129:16 136:20
  154:4,7,15 171:2
  171:4,17 177:4
  218:22 221:20
  227:2
**comes** 41:20 99:4
  133:20 182:18
  201:15 206:12
**comfortable** 220:12
**coming** 15:25 197:2
**commencement**
  136:6,8
**commencing** 2:4
**commensurate**
  172:5
**comments** 119:13
**commercial** 21:3
  209:19 210:12
**committed** 119:3
**common** 178:6
**communicate**
  193:3 194:24
**communication**
  25:17
**communications**
  159:2 185:19
**community** 202:10
  202:25 203:8
**Comp** 121:21
**companies** 12:17



company 12:3,17
comparable 46:18
  46:22,23,25 47:8
  47:11,13,18,24
  49:3,8,12,16,24
  50:6,9 65:10
  81:25 90:11 91:5
  91:11 146:17
  167:5 172:23
  176:12,23 188:3
  209:23,24 210:23
  211:2,4,5,21,22
comparables 212:4
compare 173:16
compared 91:16
comparison 61:6
  63:17,19 88:20,25
  91:17 163:24
competent 228:18
compiling 176:13
Complaint 8:7
  198:6,8,14,21
  199:9 200:24
  201:3 206:22
  209:17
complete 56:21
  57:4
completed 54:2
  55:25 84:9 95:3
  119:20 212:21
compliance 56:25
  60:22 64:13 65:22
  66:12
compliant 64:8
complies 205:21
comply 68:21
  188:16 190:22,25
  191:10,17,21
comprises 31:9
compromise
  142:24 173:13,21
  176:21 178:11
  187:14
comps 46:18 89:23
  152:7,24 176:10
  176:15,18,22

177:22 210:13
compute 122:14
  125:5 138:14
computed 97:22
  108:21 122:8,10
  124:25
computer 22:23
concede 208:2,5
concerned 68:23
concerning 44:13
  91:11 149:25
  168:10 170:16
  178:15 189:13
  198:21 199:9
  215:21 216:2,10
  217:6,25 218:3
concession 208:10
  209:6,10
conclude 90:14
concluded 119:16
  212:3 219:6
  227:21,24
concludes 87:25
  90:15
conclusion 39:6
  52:15 53:6 54:18
  55:9 58:16 59:15
  60:25 61:12 66:1
  71:10,12 81:12
  110:10 117:16
  139:16 149:21
  170:23 191:4
  192:16
conclusions 170:20
  172:8 188:2,4
condition 172:17
  192:11,19
conducted 80:16,22
confer 126:20
conference 175:9
  175:11
confidential 1:14
  2:1 68:17 69:1,9
  93:3,5
confine 64:17
confused 175:1

195:9
confusion 94:7
conjunction 78:20
Connecticut 28:24
connection 21:6
  24:14 46:18 79:3
  85:6 86:1 150:1
  153:23
consensus 57:12,24
  58:10 60:11
consent 130:14
consider 13:2
  207:22
consideration
  167:5 206:4
considered 85:8
  176:12 209:20
  210:11
considers 70:1
consistent 44:20
  185:17
construction
  183:19,20
Cont'd 4:1
contacts 50:7
contains 183:1
contemplated 52:1
contend 55:11,22
contends 55:14
content 199:22
context 46:24,25
contexts 212:14
continue 145:19
  173:20 178:4
  184:8
continued 173:3,6
  176:9 178:11
  190:8 193:10
  207:24
contractor 77:15
contractors 78:4
  81:11
Controller 100:8
controls 205:13
conversation 45:14
  184:8

conversations
  142:6,10 218:10
cooperate 53:25
  54:10 55:23 56:5
  211:10
cooperating 54:5
coordinator 77:14
copied 77:4 101:5
  103:11 143:21
  147:13 156:24
corporate 11:23
  12:10 14:20,22
  33:4 114:8
Corporation 1:5
  6:5 32:17 42:17
correct 10:24,25
  11:18 21:9 27:24
  28:2 29:1 36:17
  36:20 43:20,21
  52:12 53:18 57:20
  58:5,11,12 71:18
  79:24 83:20 87:11
  88:2,19,23 90:14
  96:21 99:21
  101:22 102:4
  106:24 108:1,16
  112:7 117:3,22,23
  119:6 120:7 132:5
  132:8,20 133:5,10
  133:13,16,20
  137:21 141:21
  146:11 147:23
  157:1,2,7 176:2,3
  180:20 181:3,4,6
  183:3 187:17,18
  189:14 190:4,13
  190:14,17,19
  191:21,24 194:22
  205:21,23 210:16
  217:3,4 230:7
corrected 61:9
cost 74:22 140:25
  212:24 213:6
costs 48:10 215:1
counsel 10:11 18:2
  18:5,13 21:8 26:2

27:10,15,17,22,23
  28:3,3,7,7,8,11
  30:1 33:10 34:17
  35:13 41:9,23
  153:25 199:25
  200:21 208:22
countersign 82:4
  209:4 222:21
countersigned
  79:24,25 187:16
country 37:9 83:14
  83:20
COUNTY 231:4
couple 221:7
  222:11
course 13:11 21:17
  33:19 42:22
court 1:1 2:6 3:7
  10:2 128:23
  129:10 198:18
  228:20,21 231:6
courts 15:14
  198:22
cover 28:19,22
covered 198:24
covers 29:9
create 22:11
created 217:7
credit 172:2,4
creditworthiness
  171:20,23 172:1
creditworthy 172:3
Crown 113:24
current 25:25 96:8
  96:11,19 119:24
  120:2,4 149:19
  172:16,16 206:5
  208:8,9 226:13
  227:5,9,11
currently 30:2
  87:16 136:12
customary 211:13
  211:17

_____
**D**
_____
D 5:1 6:8 37:16,19



37:23 41:24 42:6
42:13 45:21 47:3
51:7,10 52:2,22
53:19 54:23 55:25
dalvarez@pash...
3:12
data 23:7 46:5,8
47:2 145:20,22
146:5,15,23 147:3
152:21 153:3
database 22:7
date 2:5 16:25
32:20 35:23 37:20
62:16 68:9 76:25
79:15 82:2 86:14
89:12 92:9 100:24
103:7 111:1 112:6
115:17 119:6
120:13,14 121:4
128:8 136:6,7,8,9
141:15 143:2,2,17
147:10 150:19
153:14 156:18
162:6 164:13
165:9 168:20
169:17 180:10
181:3,5 182:13
184:25 187:6,21
188:12,13 193:20
193:25 194:14
196:3 198:10
205:6,8,9 223:3
224:20 227:15
228:12 230:15
dated 33:5 61:23
66:3 69:24 87:1
93:19 103:17
121:12 151:2
155:17 164:22
180:18,19,24
181:9 183:2 230:6
dates 81:9 119:12
188:11 189:1
Dave 82:16 157:23
157:25 159:11
200:7

David 82:20 83:8
day 16:2 151:10
174:18,20 231:18
days 54:2 56:1
112:5 174:24
189:18 190:3
191:15 228:22
DD 8:5 195:24
196:2,5
deal 14:11 112:16
112:19 113:7,9,11
113:13,16,17
deals 71:4 112:15
113:6 114:18
152:7
December 87:1
91:10 93:20
103:17 104:20,22
104:25 112:3,6
224:14 225:15
226:10
decent 129:11
decide 50:8 82:9
149:14 160:21,23
decided 82:8 149:9
149:10 150:5
219:5
decision 82:4,13
85:4 111:12
124:10 150:8
161:14 179:9
222:20
decision-making
159:23 161:9
decisions 160:2
161:3,12
decrease 121:23
deduction 106:25
107:4
deemed 172:3
defendant 1:12
3:23 10:4,12,15
Defendant's 16:21
16:24 17:2 32:15
32:19,24 33:7,13
35:18,22 36:1,19

36:23 37:16,19,23
68:5,8,12 69:12
76:20,24 77:2
79:10,14 86:13
89:8,11,18 90:9
90:25 92:8 100:23
103:6 110:22,25
111:3 128:4,7
141:14 143:16
147:9 150:18
153:10,13,16
156:17 162:1,5,8
164:12 168:19
180:9 182:12
184:21,24 185:2
187:5 191:1,10
192:3 193:19
194:13 196:2
198:9
Defendants' 165:7
defer 128:21
defined 48:1 188:1
189:8,13
Definitely 175:11
definition 116:20
Delaware 29:7
Delivered 87:4
demand 172:4
186:2
demands 185:15
DeMarco 4:8 18:22
25:1,2,4 42:6,13
42:18 69:22,25
70:2,8,13 71:2,9
71:13 81:11 82:16
83:21 92:20 93:18
101:10,20 102:21
104:17 105:5
111:20 123:9
143:24 147:16
151:9 152:5,17,20
157:1,19,25
158:15,25 169:2
169:11,13,22
175:16,22,24
177:17 183:3,18

218:1,2,10
DeMarco's 24:13
82:24 161:8
demised 79:22 80:6
81:22 142:1
DENISE 3:6
department 19:19
24:18 37:7 200:11
depend 45:2
depending 114:15
214:5
depends 45:1 46:24
220:11
deposed 10:19 11:4
11:15 12:6
deposition 1:16 2:3
6:4 9:1 10:14
12:25 15:22 16:10
16:23 17:12,16
18:1 19:1 68:25
69:8 74:14 93:2
171:11 212:17
222:13 224:11
227:21,24 228:3,4
228:13,17,22
230:6 231:9,11
depositions 11:23
12:5 68:22
derived 139:9
describe 29:13
30:18 48:21 57:2
80:25 81:1 96:3
98:14 175:18
176:5 208:16
210:4
described 12:7
29:24 31:7 54:1
55:24 56:18,22
57:5 59:14 73:10
83:5 84:1 95:19
142:10 209:11
describing 38:18
75:18,25 202:8
Description 6:2 7:2
8:2
designate 32:15

68:25 69:7 93:2
designated 35:12
35:17 68:3 135:1
135:18
designation 135:12
220:18
desk-type 70:17
detail 172:25
details 225:8
determination
49:15 50:23
determine 22:5
49:10,24 50:18
54:5 67:22 83:24
116:24 167:6
183:24 206:3
determined 33:12
34:5 80:5 105:18
125:11 149:17
172:14 179:14
203:14 204:7
222:16
determining 34:20
35:11 172:13
211:3
developed 183:13
183:25 184:17
developer 11:24
12:11,14
developing 201:19
development 71:23
72:3 113:25 114:1
183:15 204:24
devices 22:10,15,18
22:20,21 24:14
25:1
differed 52:5
difference 63:1
97:2,10,17 181:12
different 23:1,2
30:23 48:10 63:4
63:6,15,22 64:2
73:4 89:5 91:21
97:7,11,15,19,20
99:20 173:17
175:1 222:7



differential 96:23
differing 51:18
directed 206:24
directions 207:18
director 71:23 72:3
82:23 83:9 114:1
114:7,11 157:4
disagree 80:14
158:24
disagreement
55:18 80:10
154:18,21,22
166:6 173:6
disclosure 35:4
discuss 32:5 41:9
47:1 60:1,9 71:12
146:3 148:25
151:11 154:4
155:10,22 215:6
215:15 216:8,13
216:20
discussed 15:7
31:24 41:24 42:5
42:12 43:22,25
44:10 45:23
112:15 133:15
152:6 157:19
159:8 168:8 170:7
170:7,16 172:7
173:2,7 176:8
178:25 184:7,18
188:21
discussing 34:16
45:24 47:5 145:12
146:13 149:24
154:1 167:9,15,23
168:6 171:9
184:16 215:9
discussion 57:11,24
58:9 59:18 62:1
118:12 139:24
142:23 155:13
157:6,10,11 170:9
172:22,25 173:4
173:19,21 176:9
176:21 177:8

178:5,8 184:5
185:12,13 189:5
189:10 190:11
193:12 202:9
207:19 225:14
227:13
discussions 35:13
44:1,14,18,21
85:21 91:9,14
142:17 149:4,5,8
158:7 159:2 160:8
160:11 168:9
178:11,13,20
186:9,17 199:23
204:16 217:5,11
217:18,21,24
display 221:9
dispute 14:24
distinct 158:13
distinction 133:25
District 1:1,2 12:21
13:20
divided 28:18
132:12
dividing 122:14
division 21:2
document 6:9,10
6:12,13,15,16,18
6:19,21,22,24 7:4
7:5,7,8,10,11,13
7:14,16,17,19,20
7:22,23 8:4,5,8,9
32:25 38:5 47:20
68:6,16 69:5
71:16 76:22 79:12
86:11 87:8 89:7,9
89:16 90:17 92:6
93:23 94:5,14
95:7,11 100:18,21
101:2 103:4
110:23 111:11,16
123:17 124:20,22
126:25 128:5,14
128:17 131:3,8
139:11,18 141:12
143:14 147:7

150:13,16 153:11
156:15 162:3
164:10,21 165:5
165:15,16,21
168:17 174:2
180:7 181:23
182:1,10,23
184:22 187:3
193:14,17 194:11
195:25 196:6,12
197:9 198:4
222:23,25 224:17
225:6
documents 9:6 18:3
18:8,10 19:7,11
19:15,22 20:13
21:5,11,24 22:3,6
22:7,15 23:15,17
23:21 24:5,8,15
24:20 33:12 34:4
34:21 35:11 44:15
63:8 113:21
125:14,15 126:3,8
126:24 127:4,10
130:16 141:5
177:15 181:12,15
188:15 196:18
219:13,20 221:1
DocuSign 111:15
113:21
dog 15:24
Dogs 203:23
doing 15:22 66:24
85:13,25 86:5
102:12 104:23
155:1
dollar 124:25 125:3
125:9 134:9,10
dollars 171:1
213:15
Donahue 2:6 10:5
129:7 231:6,20
downtime 104:19
105:14,24 109:19
110:7
draft 72:17,21 73:6

162:12,19 163:11
164:23 168:8
drafting 36:18,23
drives 23:2,2
drop 221:4
DTF 118:15
due 140:3,22
duly 10:4 231:10
duplicate 161:24
duress 39:15

_____

E

E 3:1,1 4:1,1 5:1
6:1,9 7:1 8:1 10:3
10:3,3 68:5,8,12
69:12 130:1,1
231:1,1
e-mail 19:9 69:22
69:23 71:1,19
72:15,17,22 77:5
78:17 92:19 93:17
95:15 100:4
101:20 103:12,16
114:21 143:23
145:14,18 147:15
150:25 151:2,10
153:5,20 154:2
155:17 156:25
164:16,20,22
165:23,24 167:11
168:13 183:1,5,10
194:17,25 195:1,6
195:10 209:8,9
219:25 220:4,13
221:2,4,6 223:6
223:15 224:23
e-mails 25:7 178:18
186:18,21,23
197:25 209:3
earlier 15:9 36:13
60:20 93:19
113:14 143:2
161:7 184:4
188:21 203:15
204:8 212:17
early 67:18 222:12

earns 132:1
easier 117:9 220:14
eastern 1:2 13:20
28:23
easy 14:3
EB 162:24
economic 48:20
EE 8:7 198:6,9
206:23
effect 208:2
Effective 120:13
effort 49:24
either 39:15 69:5
116:8 119:12
129:7 197:11,16
199:24 210:21
Ellen 143:24 144:3
145:19 148:7
151:1,11 183:6
employed 72:5
101:16
employee 77:8
99:12
employees 23:24
employment 28:4
encumbered
185:14 208:8
216:21
encumbrance
65:14,16 66:4
172:15 216:14
217:6 226:12
227:4,8,11
encumbrances
149:18 206:4
216:9
ended 65:15 116:7
122:13 220:16
engage 81:10 150:6
189:4,5,18 190:15
190:21 191:14,24
192:4,12,22
engaged 67:18
77:16 190:2,5
191:5,16
engagement 55:17



164:24 223:16
**engaging** 67:21
**engineering** 77:9,9
**English** 106:12
**Enjoyed** 183:10
**entails** 29:14
**enter** 55:17
**entering** 201:6
**entitled** 138:22
**entity** 14:21
**entries** 134:25
**EOTF** 118:25 119:13
**equals** 96:15 107:21 122:7
**errata** 228:6,10,11 228:16,20 229:1 230:10
**error** 125:5
**ESQ** 3:5,6,16,17
**established** 38:19 175:15,16
**estate** 11:24 12:11 12:13 26:8 29:15 30:19 31:1 48:2 69:20 75:19 84:6 114:2 122:2
**estimate** 71:3 79:21 81:21 82:14 90:20 185:16 207:1 209:21
**estimated** 87:17 96:6,9 106:1 110:8 116:7 117:1 127:24
**estimating** 187:24
**et** 22:19 30:6 76:2 159:24 161:4,10
**evaluate** 67:9,16 127:19
**evaluating** 81:20 163:23
**evaluation** 49:10
**evaluations** 90:4
**event** 197:22
**eventually** 207:25

**everybody** 128:18
**exact** 62:16 71:4 84:23 118:21 227:15
**exactly** 40:6 64:19 81:25 179:14 186:24 195:14 208:4
**Examination** 5:5,6 10:9 222:5 226:25
**examined** 10:7
**exceed** 134:13 137:18
**Excel** 125:2
**Excellence** 30:14
**exception** 72:18,20 73:3,9,17 75:6
**exceptions** 152:23
**excess** 74:4 202:16 213:11,14
**exchange** 189:6 190:10
**exchanged** 156:8 177:15 178:18 188:16
**exclamation** 124:15
**exclusions** 26:14,15
**excuse** 36:25 100:1 110:18 183:19 184:6 189:5
**executed** 141:6
**execution** 72:1
**exercise** 92:21 100:13 115:24 226:2,17
**exercised** 205:17
**exhibit** 6:2 7:2 8:2 16:20,22,24 17:3 32:14,15,19,24 33:7,13 35:19,22 36:2,19,23 37:15 37:16,19,23 41:24 42:6,13 45:21 47:3 51:7,10 52:2 52:22 54:23 55:25 68:4,5,8,12 69:12

76:21,24 77:3,11 79:10,11,14,17 80:3 82:4 85:14 86:10,13,16 88:19 89:8,11,18 90:9 91:1 92:5,8,11,16 93:13 94:2,9 99:6 99:9,10 100:20,23 102:5,11,15,22 103:2,3,6,10 110:22,25 111:4 112:24 120:25 127:11 128:4,7 130:6,7 141:5,11 141:14,17 143:13 143:16,19,20 145:18 147:6,9,12 148:2 150:15,18 150:21 153:10,13 153:16 156:6,14 156:17,20 161:23 162:2,5,9 164:9 164:12 165:3,4,7 165:11,12 166:10 166:11,12 168:9 168:16,19,22 180:6,9,12,20 181:2,6,7,9,20 182:8,8,12,15,21 182:22,23 183:1 184:21,24 185:3 186:13 187:2,5,8 188:18 191:1,10 192:4 193:16,19 193:22 194:5,10 194:13,16 195:24 196:2,5 198:6,9 206:23 220:17 222:14 223:2,12 224:19
**exhibits** 8:14 90:2 220:12,16
**existence** 206:6
**existing** 96:9 123:22 124:8 203:2

**expand** 112:14 196:25
**expect** 128:13 219:10
**expense** 106:22 107:3
**experience** 118:25 171:19
**expert** 41:1,19 63:24
**expiration** 54:3 56:1 136:7,9
**expire** 205:11
**expired** 145:3
**explain** 60:22 63:5 63:14 105:11 133:25
**explained** 64:23 209:19 211:1
**explanation** 64:25 210:10,21
**expressly** 172:13
**extended** 143:7
**extending** 29:18
**extension** 54:6
**extent** 33:15 34:12 35:3 61:2 63:10 126:4 136:17 139:15 152:15 158:18 160:10 177:1 191:3 192:15 197:15

**F**
**F** 6:10 76:21,24 77:3,11 130:1 231:1
**fact** 49:12 66:2 167:4 189:23 204:22 206:18
**factor** 226:12 227:4
**factors** 88:1
**facts** 52:16 75:5 146:8 164:2 207:7
**factual** 201:1
**fail** 54:23 191:9

**failed** 55:12,23 56:5 211:10
**fails** 53:24,25
**failure** 193:7
**fair** 11:7,13 13:22 35:15 38:23 39:1 39:2 47:9 51:18 51:25 67:9,23 72:23 79:3,22 80:5 81:13,21,22 82:5,14 85:23 90:16,22 92:2 105:23 106:4 116:19,20,23 127:9 140:18,21 140:23 142:1 150:1 154:5,16 156:10 165:19 167:6 170:24,25 177:4 185:16 187:14,25 205:12 216:10 225:22 226:3,3,6,17
**faith** 64:8,13 65:22 66:11 156:4 211:11
**familiar** 11:1 30:25 31:6 74:18 156:20
**familiarity** 30:18
**far** 15:7 25:10 31:8 53:5 65:25 141:4 141:8 142:8 177:14 210:17
**farther** 75:3
**federal** 13:19 15:13
**fee** 108:6,8,16,20 132:4,6,13,19,23 132:25
**feel** 220:11
**feels** 128:18
**fees** 98:25 99:3 110:2
**FEIN** 3:15
**felt** 173:12 179:15
**field** 28:19,19,20,21 29:2,6,8,10 69:21



71:24,25 72:3
77:14 83:7 99:13
100:3 101:15
114:11 135:22
140:1
**fields** 127:1
**figure** 107:16
122:14 137:7
183:12
**figured** 113:22
**figuring** 131:25
**file** 22:23 35:17
94:5 135:10
183:20 221:13
**filed** 20:6 198:18,22
199:10
**filing** 228:17,21
**filled** 125:15
**finally** 225:13
**finance** 99:13 100:2
100:10 114:8,11
123:7 139:25
140:1 214:8,12
**financial** 104:18
**Financials** 122:1
**financing** 214:22
**find** 36:25 72:11
123:5 125:21,23
131:18 140:5
166:5 178:6
**finding** 91:11
**finds** 153:7
**fine** 10:18 14:13
70:7 93:7 126:21
**finish** 81:3
**finished** 46:3 58:2
69:15 80:18
**finishing** 45:9
**firm** 66:24 77:9
144:5 202:15
**firms** 50:22
**first** 10:4 11:22
16:2 17:7 21:23
27:16 36:5,9 41:8
45:19 51:7,9 61:5
61:14,20 63:16

65:9 66:18 67:6,8
69:25 74:1 75:10
87:4 89:21 95:17
103:11,16 109:19
112:12,25 113:2
122:1 126:24
127:13 137:10
144:14 155:16
181:2,5,6,9 182:2
187:20 193:25
199:1 207:5
220:17 222:12
224:11
**fit** 51:5 65:3
**five** 10:22 11:16
20:8 84:14 106:14
213:12
**five-page** 223:12
**five-year** 100:15,16
115:24 167:19,24
205:16 217:3,7
**fixed** 73:16,16,20
74:6,23 123:23
124:6
**flexible** 129:12
**Floor** 3:18
**flow** 96:12,12,13,15
96:20,25 97:3,15
97:22,24 98:1,6
107:7,12,22 108:1
109:2,14,23 110:8
110:11 116:10
127:20
**FMV** 54:4 84:1
100:6,12 116:13
117:11 189:8,13
206:4,25 209:21
211:12 216:3
222:16
**focus** 75:11 93:12
93:17 101:7
**focused** 204:19
226:15,15
**focusing** 133:14
**folks** 92:20
**follow** 126:10 209:2

**follow-up** 226:21
226:23
**followed** 208:25
**following** 75:5
103:12 123:24
151:6 228:10
**follows** 10:8
**foot** 90:21
**foregoing** 230:6
**forget** 125:25
**forgetting** 200:8
**form** 21:14 23:9
25:19 30:21 31:16
32:1,12 38:15
39:4,24 40:9,16
40:22 41:18,25
42:9,14 44:23
45:16 47:19 48:22
49:18 50:2,11
52:6,13 53:4
54:16 55:7 56:6
57:7 58:17 59:6
60:4,12,23 61:10
62:2 64:6,14,17
64:18,24 65:24
67:12,25 70:4,11
73:9 74:9 75:16
75:23 77:23 78:5
78:23 79:6 80:11
81:8,14 83:1,11
84:3,11,20 85:15
86:3 87:14 88:3
88:13,22 90:10,19
94:18 96:5 97:5
97:18,23 98:13,20
99:8 102:6,23
105:12 106:2,16
107:17 108:2,17
109:6 110:14
111:11,19,23
112:2,20 115:7,12
115:18 117:5
119:10 120:9
121:2 122:9,17
123:11 127:2,15
127:22 131:15

132:14 136:14,23
138:11 139:14
140:6 144:23
145:24 146:7,25
147:25 148:21
151:22 152:2,25
154:11 157:8
159:18,21 160:5
162:16 164:1
166:23 168:1
169:5,14 170:6
173:25 178:1
179:5,12 180:21
181:14,22 183:4
184:1 186:3
188:19 190:16
191:2,22 192:6,14
193:9 201:4 202:1
203:5,19 204:13
205:3,15,22
206:10,17 207:12
210:6,14,25
211:19 212:5,25
213:19 214:10,17
215:3,11,16 216:4
216:17,23 217:9
217:19 218:5,13
227:6 228:5,8
**formal** 44:5,5 56:21
57:5 82:7 88:7,11
116:9 142:3
154:24 173:4
226:15
**forms** 98:19 201:10
225:9
**formula** 48:19
125:4 172:13
**forth** 60:2 116:10
143:5 154:23
192:9,21 193:6,8
231:10
**forums** 24:19
**forward** 64:5 73:19
100:6 115:24
**found** 211:21,21
**four** 18:6 75:9

116:13 217:2
**fourth** 70:25
**franchise** 99:2
104:9 108:10,14
119:8 120:8,22,22
121:1 130:13,15
132:1 133:3,11
136:3,11 139:25
**franchisee** 96:13
98:1,2,16,22 99:1
106:11,13 107:25
108:8 109:1,4,16
109:22,23,24
118:11 120:3,5,21
120:25 121:6
130:15 131:11
133:4 134:4 137:8
137:12 139:8
213:25 214:4,14
214:16,25
**franchisee's** 109:8
138:23 214:8,15
**franchisees** 214:2
**franchises** 131:13
131:19
**franchising** 130:23
131:21,23
**frankly** 93:8
**free-standing** 51:1
113:17
**front** 38:6 68:20
69:5 89:14 102:10
220:10 222:8
228:18
**fruitful** 176:20
177:2
**full** 45:20 70:16
144:14
**fully** 141:5 159:6
**function** 26:7
100:11
**further** 193:2
226:20,25 227:18
231:13
**future** 118:9,25



## G

**G** 6:12 79:11,14,17
80:3 82:4 85:14
127:11 222:14
**garble** 51:21
**gathered** 22:3,8,16
**gathering** 24:12
**general** 27:19
31:14,21 148:9
200:20 215:18
**generally** 28:22
46:10 48:5 136:15
149:3
**generated** 109:14
**geographic** 28:16
**George** 72:19
119:25 120:2
121:5 131:10
133:9,11 136:3
143:7
**getting** 107:15,25
173:10 174:19
175:1 226:1
**Gino** 101:12
**give** 50:14 53:8
92:13 199:14
207:10 214:14
215:20 216:1
**given** 75:4 110:12
110:15 119:1
207:18 226:11
230:8 231:12
**gives** 197:9
**giving** 88:14 206:4
218:2
**global** 30:10
**globally** 119:2
**go** 11:2 14:7 29:3
31:4 36:6 41:3
45:11 47:23 61:4
67:14 81:3 102:13
102:14 106:7
112:14 123:23
129:5 160:24
187:19 211:9

220:8
**goal** 201:17
**goes** 107:3 118:12
**going** 10:15 12:23
13:6 14:10 34:22
63:7 75:3 76:4
88:16 110:5
115:23 126:1
128:11,16 129:1
130:9 136:20
139:17 142:20
151:5 153:6
155:18 158:2
161:16 165:13
167:3 168:23
179:20 195:3
199:3 203:21
204:20 214:6
218:16
**good** 10:10,17 16:2
75:22 128:18
152:21 153:3
211:11 218:18
**good'** 75:13
**good-bye** 178:24
**goodness** 94:3
**Google** 16:11
**graduated** 15:17
**great** 129:17
**gross** 90:21 104:7,8
105:24 108:11,21
121:15,17 122:11
122:20 132:6
134:4 138:2,6,23
**ground** 6:6 11:3
35:20 36:7,10
38:2 51:1 66:19
71:5 87:20 90:20
113:17 146:17
171:6 172:24
178:7 201:7
205:11,13 209:19
210:12 212:16
224:13
**group** 12:18 14:24
14:25 26:3,5,11

26:21,25 100:8
114:2,8,8 123:7
130:23 131:21
**guess** 15:3 39:17
76:9 122:18 161:2
198:2 220:15
222:20 226:8
**guidance** 148:9

## H

**H** 6:1,13 7:1 8:1
10:3 86:10,13,16
88:19 90:2 95:11
102:5,7,11,15
**H-a-l** 20:22
**H-u-s-s-e-i-n**
200:18
**Hackensack** 3:9
**Hal** 20:20,22 200:2
**half** 129:5,15
196:23 213:15
**hand** 225:20
231:18
**handed** 94:4
**handle** 29:5
**handles** 27:6
**handwriting** 87:3,6
89:21,24
**handwritten** 196:6
**happen** 143:4
145:2 188:5,10
189:9,20 203:21
**happened** 21:23
27:25 52:10
142:13 170:5
176:5 188:6
**happy** 69:7 129:1
129:13
**hashtag** 124:15
**HAYDEN** 3:4
**head** 20:16 40:17
66:14 101:15
117:7
**heading** 109:19
**hear** 11:5
**heard** 11:3 46:17

212:8,13 222:10
222:18 224:10
**hearings** 202:10
**Heights** 166:14,19
**held** 27:13,15
170:13
**Hello** 100:5
**help** 81:11 117:15
151:12
**helpful** 119:23
197:5
**hereinbefore**
231:10
**hereunto** 231:17
**Hi** 144:6 147:17
151:10
**high** 117:2 204:20
**high-density**
201:20
**higher** 142:21
172:2,5
**highest** 38:25 39:3
39:16
**highlight** 167:24
**Highlighted** 167:13
**highlighting** 167:4
**highlights** 171:8
**hire** 85:4
**hired** 43:18
**hires** 44:22
**history** 120:1
121:12
**hit** 221:17
**hold** 19:8,10,10,17
20:3,9 21:11,25
22:8,17 23:23,25
24:17,17 25:23
86:18 168:6
179:10
**Holdings** 1:10
10:13 79:21
**hope** 114:3
**horizontal** 197:1
**horrible** 51:21
**hour** 128:12 129:5
129:15

**hours** 129:4
**house** 199:24
**hover** 197:8
**Howard** 3:16 4:5
10:11 12:22 18:16
18:18 93:21
112:21 128:9
165:14 196:8
221:19
**hsk@msf-law.com**
3:21
**Huelskoetter** 114:5
114:7
**Human** 72:13
**hundred** 88:1
119:11 140:16,24
**Hussain** 200:2,5,16
200:19

## I

**idea** 156:5 163:7,22
195:18
**identification** 16:25
32:20,23 35:23
36:1 37:17,20
68:9 76:25 79:15
86:14 89:12 92:9
100:24 103:7
111:1 128:8 135:7
141:15 143:17
147:10 150:19
153:14 156:18
162:6 164:13
165:8 168:20
180:10 182:13
184:25 187:6
193:20 194:14
196:3 198:10
223:3 224:19
**identified** 19:15
24:19 209:22
**identify** 135:8
**identifying** 188:3
**Ignore** 161:25
**ii** 188:3
**III** 133:16,17



**Illinois** 15:12 76:9
**immediately**
 104:16
**impact** 30:10 95:19
 96:14 97:3,14
 114:25 115:17
 116:6 117:19,25
 124:10 127:20,24
 216:9
**impacted** 116:10
**important** 128:22
 128:24 183:24
**in-house** 19:13
 20:14,16
**in-person** 178:20
**inappropriate**
 210:13
**include** 31:11 48:13
 98:19 195:3 198:1
 204:24
**included** 29:10
 49:7,11 66:5
 115:10 116:3,17
 126:23 127:11,17
 127:24 158:12
 176:14,16,19
**includes** 98:7,21,24
 104:18
**including** 16:5
 101:11 149:18
 151:7 185:13
 186:18 202:18
 206:5
**income** 48:14 95:19
 97:3,14 98:19
 106:8 115:1 116:6
 117:19 118:1
 122:2 127:25
**incorporate** 65:16
 227:8,10
**incorporated**
 172:17
**increase** 96:8,14,16
 121:23 140:14,16
**increases** 137:17
**independent** 49:10

**independently**
 155:12
**INDEX** 9:1
**indicate** 120:19
 136:1 183:14
**indicated** 149:23
**individual** 58:8
 59:17
**inevitable** 179:3,15
**informal** 152:10,12
**information** 19:25
 21:17 22:22 25:9
 33:17,18 34:13
 35:1,5,6 37:3 41:4
 42:3,22 43:1,12
 50:14,21 56:7
 58:18 81:4,7,19
 91:25 95:24
 119:19 126:8
 148:4 151:6 158:4
 158:10,12,20,21
 159:5,7,10 160:20
 176:25 177:7
 184:14 188:15
 189:6 198:24
 202:23 203:3,13
 203:16 204:6,10
 208:19
**initial** 80:23 81:4,7
 88:6,14 89:19
 132:19,23
**initiate** 142:3
**initiated** 44:6 119:2
**initiatives** 28:9
 214:6
**input** 34:19 35:10
**insisted** 57:9
**insofar** 39:5 47:20
 52:14,15 54:17
 55:8 59:7 60:24
 61:11 63:8 68:22
 146:8 158:3,5
 164:2 198:23
 213:1
**installments** 133:1
**instances** 12:5

**Institute** 48:1
**instruction** 9:3
 43:9
**instructions** 215:20
 216:1,5 218:3,6
 226:12 227:3,7
 228:1
**intend** 13:1 192:7
 193:4
**intent** 158:20
 192:11
**intention** 176:17
**interest** 131:12,19
 214:21
**interested** 131:25
 231:15
**internal** 75:17
 118:6 135:3,7,12
 152:18 162:18,21
**internally** 118:8
 151:11
**internet** 70:19
**interpretation** 40:5
**interview** 24:18,23
**introduce** 221:11
 224:16
**introduced** 219:14
**invest** 73:11
**invoked** 146:5
**involved** 12:16
 24:11,12 36:22
 82:13 155:1 224:5
**involvement** 36:18
**involves** 113:13
**involving** 12:3
**IOV** 70:9,14,15,20
 70:22
**issue** 155:20,22
 159:15 179:9
 184:16 207:25
 217:18
**issued** 21:10,25
 62:13,14
**issues** 157:20
**items** 161:14
 178:25

| **J** |
|---|
**J** 6:16 92:5,8,11,16
 94:2,9 99:9,10
**January** 104:20,22
 104:25 225:7
**Jared** 77:7
**Jersey** 2:7 3:9 10:7
 29:7 231:2,8
**job** 2:9 25:25 31:7
 31:11 55:20
**Johanna** 99:22
**joins** 16:5
**jointly** 193:3
**Jones** 77:7
**judge** 160:23
**judgment** 49:19
 217:12,16
**July** 20:4,7 61:21
 61:23,25 62:16
 66:3 185:25 186:6
 186:11,12,15
**jump** 68:15 199:17
**June** 61:21,24
 62:16 169:17,23
 175:17 177:11,16
 178:14,15 180:18
 180:19 181:3,10
 181:21 183:2
 184:5 185:12,20
 185:25 186:10,14
 207:21 227:16
**jurisdiction** 26:10
 26:21,24 27:2
**jurisdictions** 15:10

| **K** |
|---|
**K** 6:18 100:20,23
**Kearns** 82:17,20
 83:8 157:1,3,21
 157:23,25 158:15
 160:3 161:8 200:7
**Kearns'** 159:14
**keep** 12:23 13:6
 220:18
**Kelley** 99:22
**kids** 15:25

**kind** 77:20 78:2
 113:18 116:4
 118:6,7 152:8
 161:12 173:10,16
 173:20 178:24
 214:5
**know** 10:11 11:6
 14:9 15:3 16:6
 20:11 21:5 22:13
 22:15,25 24:7,13
 25:5,6,13,16 33:9
 36:21 37:12,13
 39:17 40:3,5,5,10
 40:11 42:10,24
 43:14 44:4 45:3
 46:3,15,15 48:3
 49:6,23 50:15
 51:11 53:16 67:15
 69:14 70:5,13,20
 70:22,24 71:9
 72:8 73:16 74:7
 74:17,20,24 78:10
 78:11,16,24 81:1
 84:12,17,21,22,22
 85:3,8 87:7 88:5,7
 89:3,4,24 90:6
 91:22,24 92:16
 94:17 95:1,12
 102:24 103:13
 104:21 105:2
 109:7 114:13,14
 114:17,24 116:4
 118:10,20 122:25
 123:9 124:16
 125:19 126:14
 127:17 129:2,3
 130:24 131:17
 134:20 135:17,20
 136:15 139:9,18
 140:2 141:4,8
 142:23,23 144:24
 145:25 147:2
 148:2,3,4,14
 149:20,22,23
 151:15 155:17
 157:9,14 161:3



163:9,10 164:6,15
165:16,24 166:1
172:20,23 173:3
173:11,15,20
176:10,17,21
177:1,7 178:5,5
178:17,21 179:16
181:19 182:5,18
184:8,14 186:5,22
186:23 188:6,12
195:13,20 196:7
196:14,19 198:2
199:2 203:8
204:17,18 208:1
208:25 210:17
211:20 212:6
213:6,8,10,23
214:6,11,20,21,24
215:2 219:10
220:6 223:7,22
225:24,24 226:5,6
226:7
**knowing** 39:14
**knowledge** 24:25
33:11 34:3,10,15
55:6 84:9 115:25
136:21,24 137:2,5
143:9 164:20
212:20 213:4
**Koh** 3:16 5:5 10:9
10:11 13:15 14:4
14:14,18 16:19
17:1 21:19,21
23:10,12 25:21
30:22,24 31:3,17
32:1,3,21 33:21
34:1,14 35:7,9,16
35:24 37:14,21
38:16 39:7,8,11
39:20 40:1,14,18
41:6,10,22 42:4
42:11 43:3,7,13
44:24 45:10,12,18
47:22 48:24 49:1
49:22 50:3,17
52:8,17,19 53:12

54:19,21 55:4,10
56:11,15 57:1,14
58:2,4,23 59:4,9
59:12,23 60:6,15
60:19 61:3,13
62:5,18 63:12,13
64:10,16,21 65:4
65:6,18 66:8,17
67:13 68:2,10,24
69:4,10 70:6,12
75:1,20 76:3,12
76:18 77:1,24
78:1,6 79:1,9,16
80:12 81:15 83:2
83:18 84:7,13,22
85:1,16,24 86:6,8
86:15 87:18 88:9
88:18,24 89:6,13
90:13,24 92:3,10
93:7,11 94:3,11
94:20 96:17 97:6
97:21 98:4,17
99:5,10,15 100:17
101:1 102:8 103:1
103:8 105:22
106:3,19 107:23
108:4,19 109:11
110:17,19 111:2
111:21,24 112:4
112:23 113:2,4
115:8,13,15,19
117:8 119:22
120:10,12 121:8
122:12,21 123:12
123:14 125:25
126:12,18,21,22
127:3,8,18 128:1
128:16 129:13
130:3,4 131:16
132:15 136:19
137:1 138:12,13
139:20 140:9
141:9,16 143:11
143:18 145:11
146:2,10,12 147:4
147:11 148:5,24

150:12,20 151:23
152:4 153:1,8,15
154:12,14,19
156:12,19 157:12
158:11,17 159:13
159:19 160:1,9,15
160:22 161:5,21
162:7,20 164:4,7
164:14 165:2,10
166:4,9 167:1,20
167:22 168:4,14
168:21 169:8,15
169:16 170:11
174:3 175:23
176:1 178:12
179:6,7,18,24
180:4,11 181:1,16
181:24 182:7,14
183:7 184:10,20
185:1 186:8 187:1
187:7 189:2
190:18 191:6,18
192:2,10,17
193:13,21 194:9
194:15 195:23
196:4,15,25
197:12,18,21
198:4,12 199:1,7
200:3 201:12
202:3 203:11,22
205:1,5,19,24
206:14,21 207:14
210:8,15 211:7
212:1,7 213:5,21
214:13,23 215:4
215:12,13,19
216:7,18,19 217:1
217:14,22 218:7
218:15,24 219:4
219:23 220:19,21
222:13 226:21,25
227:12,17,20

---
**L**
---

**L** 6:19 10:3 103:3,6
103:10

**label** 220:23
**laid** 66:15 154:9
**land** 46:15 47:25
48:3 61:6 63:17
63:19,20 71:5
87:12 91:18 94:21
102:17 117:4,16
117:20 148:8,16
149:25 150:4,6
163:15,19 171:1,3
171:17,24 173:8
184:7 202:17
**landlord** 56:20
61:5 80:4 91:23
107:21 134:9
138:20,21 225:3
225:11
**landlord-** 57:3
**landscape** 197:19
**language** 59:22
167:3 206:2,15
**laptop** 22:23
**large** 176:13
**larger** 212:15
**largest** 91:25
**late** 66:21 67:1,2
**law** 15:17,18,20
40:4,8,11,20
149:16 172:11
185:18 206:1,8
207:2,22 211:13
**lawyer** 15:10,16
42:16 48:8
**lawyers** 16:5
**learn** 37:2 66:18,22
158:21
**learned** 201:8
224:11 225:1,7,10
**lease** 6:6 29:19
35:20 36:7,10
38:2 50:21 54:3
56:2,25 60:22
61:7 64:9,13 65:9
65:14,17,23 66:5
66:12,19 67:10,23
70:1 71:6 73:14

73:15 74:24 89:22
90:11,21 92:21
99:14 100:14,16
106:22 107:3,24
108:1 113:17,18
123:18 130:13
133:5,8,14 137:3
140:4,22 143:8
149:18 154:6
156:1 172:15,16
173:13 184:9
185:11,15,17
189:8,13,17
190:23 191:21
192:1,9,22 193:6
193:8 201:7
204:18 205:11,13
205:21 206:2,6,15
206:18,20 207:2
208:8 211:12
212:9,11,15,16
216:16,21 217:3
224:12,13,13
225:2 226:13
227:4,8,11
**leased** 26:20 29:17
83:6
**leases** 26:12 29:18
29:20 46:25 47:8
47:12,13,18,25
49:3,8,11,16,24
50:6,7,12,19,20
50:25 51:1,5
65:10 82:1 91:5
91:11 146:18
147:1 151:4
152:13,24 167:5
171:6 172:24
176:11 209:19,24
210:12,23 211:2,5
211:22 212:4
**Lee** 200:2,12
**left** 73:15 124:2,2,7
217:12,16
**left-hand** 196:22
**legal** 1:21 2:16 12:2



14:19 26:3,4,6,11 26:21 27:6,10,18 28:14 30:1,8,15 31:9,12 32:7 37:7 39:6 41:1 52:15 53:5 54:17 55:8 59:8 60:24 61:11 65:25 139:15 158:14 159:12 191:3 192:15 200:14
**length** 168:10 216:13
**lesser** 172:4
**let's** 14:8 16:21 21:22 22:20 28:10 33:22 35:16 37:14 46:1 53:19 68:3 69:18 72:15 73:8 86:8 89:6 100:17 103:1,15 106:7 110:20,21 112:12 115:14 121:10 123:15 128:2 131:23 137:7 141:9 143:11 147:4 150:13 153:9 156:12 164:8 165:2,3 166:10 168:15 182:7 187:1,19 193:14 194:9 198:4 200:23 209:14 218:21
**letter** 49:20 57:10 57:23 58:8 59:17 60:1,10 62:14,20 62:21 63:1 64:3 64:12 66:3,10 79:20 81:6 86:22 86:25 87:1 126:11 127:12 130:12,17 141:19,22 142:2 143:1 145:17 155:2,14,20 162:12 164:24

168:8,23 169:9,10 169:17 173:18 176:16,19 178:10 180:15,15 182:3 185:7,9,21 186:1 186:12,15 187:12 187:19,22,24 188:17,21,25 190:10 191:17 193:24 194:2 216:6 222:14 223:16
**letters** 220:19
**level** 197:8
**Li** 4:7 141:20 170:3 177:18 187:16
**License** 231:21
**licensed** 25:22
**licenses** 25:23
**light** 72:25
**likelihood** 183:15
**liking** 204:21
**line** 9:4,7,11 94:21 97:3,4,14,15 104:4 106:8,21 107:9 108:5,23 109:12,19 114:11 114:12 116:12 117:19 122:22 123:1 132:3 135:24 139:2 229:3
**lines** 97:11 109:18
**lingo** 75:17,24 118:6,17
**link** 195:21 197:6
**list** 102:10 126:24 127:9 151:7 177:21 199:13
**listed** 17:22 18:25 34:4,21 35:11 119:25 135:23 170:1
**lists** 22:18
**litigation** 19:10,13 19:17,19 20:3,9

20:13,14,14,17 21:3,7,11,25,25 22:8,17 23:23 24:16,18 60:8,13 179:3,10,15 200:10
**little** 73:4 75:3 151:10 195:9
**LLC** 1:10 12:18 79:21
**LLP** 3:15 195:20
**loan** 214:14
**lobby** 202:16
**lobbying** 202:15
**local** 13:20
**Locatell** 43:15,23 44:11,14,18 45:15 45:23,25 47:3,6 49:7,17 50:5,19 51:4,16,23 67:18 67:21 80:15,22 81:12,19,20 83:25 84:4,9 85:5,10 86:22 87:11,19,25 88:20 89:2,20 90:15 91:10 95:8 117:22 143:24 144:6,19 145:13 146:14,21 147:16 147:16 148:7 149:25 162:13 163:8,19,23 166:13,21 167:2 167:10,16,24 168:10,24 175:17 175:21,24 177:16 178:14 180:16 183:2,10 184:13 184:18 186:10 195:4 209:20 215:7,15,21 216:2 216:8,16,20 217:6 217:18,24 218:3 218:11 222:19 223:17,22 224:1,5 225:15 226:11

227:3
**Locatell's** 66:24 210:12 218:12
**location** 75:13 104:9 151:17 175:4,5
**locked** 223:8
**lodge** 53:9
**log** 6:5 32:18 33:5 33:13 34:5 35:12
**long** 15:16 27:9 128:9,13 195:17 216:21 220:15
**longer** 99:17
**look** 37:3 38:9 46:1 51:8 53:19 68:14 72:15 86:18 91:20 94:13 102:7 112:9 112:10,12 114:25 117:9 118:9 127:23 131:23 150:22 172:20 196:6 209:14 223:5,7
**looked** 51:1 102:5 102:22 112:7 114:23 171:1 175:3,3,5
**looking** 45:19 74:2 93:23 94:1 99:6 117:25 157:10 164:21 194:4 196:10
**looks** 71:21 109:17 117:18 125:2 133:1 162:11 183:5 194:17 195:9 220:15 223:16 224:7
**Lopez** 4:9
**losing** 109:9
**lot** 76:6 170:8 172:24
**lots** 18:12 45:4 78:17
**low** 117:2

**lower** 171:25 172:1
**Loyola** 15:19
**luck** 16:2
**lucrative** 201:19
**lunch** 128:20

---

**M**

**M** 2:6 3:5 6:21 10:3 10:3,5 110:22,25 111:4 112:24 120:25 231:6,20
**M-a-h-r-u-k-h** 200:17
**M-e-r-c-k** 20:22
**Magna** 1:21 2:9,16 4:9 18:7 196:20 220:3,23 221:4,13 221:16,23 222:22 224:15
**Mahrukh** 200:2,5 200:16,17,19
**MAI** 95:3 101:22 117:20,21
**main** 3:8 30:16
**Maine** 28:23
**major** 74:21 78:20 104:23 119:5
**majority** 57:12,25 58:10
**making** 209:10 228:8
**malls** 26:16 113:15
**malpractice** 12:3 14:20
**manage** 29:18 30:3 30:3,13
**management** 26:3 26:4,7,10,20 27:5 27:10,18 28:13 30:1,8 111:7,9,17 119:7 200:14
**manager** 69:20 83:4
**managers** 28:15 29:13,15 83:12,13 83:20,22



manages 83:12,14
Manhattan 170:14
Marc 53:14 189:16
189:25 191:5,14
margin 109:8
122:23
mark 16:21 35:18
37:15 68:5 76:20
79:10 86:10 89:8
92:5 100:19 103:2
110:21 114:3
128:3 141:11
143:12 147:6
150:14 153:10
156:13 161:23
162:1 164:9 165:3
168:16 180:6
182:8 184:21
187:2 193:16
194:10 195:24
198:5 222:24
marked 9:5,10,12
16:24 32:14,18,23
35:21 36:1 37:15
37:19 68:8,12
76:19,24 79:14
86:13 89:11 92:4
92:8 93:4 94:9
100:23 103:6
110:20,25 117:25
126:7 127:11
128:3,7 141:10,14
143:12,15 145:18
147:9 150:18
153:13 156:13,16
162:5 164:8,12
165:7 168:19
180:9 182:11
184:24 186:12
187:5 188:18
190:25 193:19
194:4,13 196:2
198:8 206:22
219:20 222:13
223:2 224:18
market 30:19 31:1

39:2 46:4,8 47:2,9
51:18,25 67:9,23
79:3,22 80:5
81:13,21,22 82:5
82:14 85:23 90:16
90:22 92:2 116:19
116:20,24 140:24
142:1 150:1 154:6
154:16 156:10
167:6 170:24,25
177:5 185:17
187:14,25 216:10
225:22 226:3,3,6
226:17
marriage 231:15
Maryland 28:25
math 105:20 117:7
mathematical
122:7
matrix 74:20
matter 10:12 11:25
12:12 19:16,23
45:3 50:13 152:13
231:16
matters 12:1 27:6
30:11 202:17
McD 8:8,10 93:24
107:9 152:6
222:23 223:1,12
224:16,18
MCD000294 6:14
86:12
MCD000317 7:24
193:18
MCD000343 6:15
89:10
MCD000543 8:6
196:1
MCD000938 7:22
187:4
MCD001240 7:12
162:4
MCD001697 7:16
168:18
MCD002897 7:6
147:8

MCD002908 7:13
164:11
MCD002952 7:7
150:17
MCD002976 7:18
180:8
MCD003003 7:4
143:15
MCD003138 7:19
182:11
MCD006023 6:20
103:5
MCD006026 6:17
92:7
MCD006325 6:21
110:24
MCD006371 6:12
79:13
MCD006375 6:11
76:23
MCD006445 6:9
68:7
MCD006513 7:10
156:16
MCD006617 7:21
184:23
MCD006633 6:18
100:22
MCD007200 6:23
128:6
MCD007579 7:9
153:12
MCD007924 7:15
165:6
MCD008060 8:4
194:12
MCD00888 6:24
141:13
McDONALD'S 1:5
6:5 16:17 17:19
18:11,20 20:11,24
21:10 24:7 26:1
26:12,20,22 27:10
27:14,16 28:5,12
29:16 30:1,9
31:15,25 32:6,10

32:17 33:4 34:17
36:22 42:17 43:17
44:22 49:9,15,23
50:5,7,10,12,18
50:25 51:15,23
55:11,14,22 56:4
57:15,20 58:5,15
58:25 59:25 64:11
65:20 66:9,18
67:9,16,22 70:15
72:6 73:11,23
75:17,19,24 77:17
77:21 78:2,12
79:2,23 80:7,14
81:10,18 82:3,22
83:3,6,9,24 84:5
84:10 85:8,13,25
86:4,23 89:1
91:15 92:20 96:13
97:25 98:3,7,10
98:22 99:1,12,17
99:18 101:17
105:25 107:5,10
107:11,15,20,22
107:25 108:9
109:15 118:6,17
119:2,8 120:21
124:21 131:13
132:1 134:3,8
138:21,23 140:4,8
140:22 141:6
142:20,25 146:5
146:22 148:12,15
149:12 150:9
151:5,20 152:1,6
152:9,13,23
161:13 177:24
178:3 179:2,8
185:10 187:13
190:14 191:20
198:22 199:9,24
200:21 201:24
202:21 203:2,3,12
203:14,17 204:5,7
204:11,19,25
205:10,13,16,20

206:16,24 207:6
207:11,17 208:21
209:17,21 210:5,9
210:20 211:9,18
212:18 213:25
214:2,3,7 216:21
217:24 222:15,21
223:21,25 224:11
224:12 225:1,2,3
225:15 226:11
227:3
mean 22:12 31:20
39:13 44:2,15
46:21 48:16,18
62:10 75:14 81:1
88:14 99:9 104:6
106:12 107:11,14
108:25 120:15,24
125:2 135:6
145:15 148:1,22
149:3,11 152:22
153:4,5 161:15
163:4 171:7,14
174:20 176:8
177:3 180:24
192:18 211:24
212:12,13 214:11
217:11
meaning 39:18,22
118:23
means 34:16 38:14
40:7 46:22,22
78:9 105:11,13
109:1,5 110:1
118:18,20,21
119:5 155:24
163:2 212:13
meant 62:9 67:2
70:3,13 75:21
106:9 109:12
122:23 124:11
media 25:17
meet 18:17 126:20
174:7,11,15
meeting 169:21
170:2,5,13 172:7



173:2,8,24 174:5
174:8,8,17,21
175:6,9,14,15,18
175:19,21 176:6
177:1,3,10,11,16
177:24,25 178:14
178:16 179:1,3,8
181:21 183:10
184:5 185:13,20
186:1,10,11,14
207:21,23 227:16
**meetings** 18:19,21
18:23 202:11
203:8
**MEISTER** 3:15
**memorialized**
209:5
**memory** 177:19
**mentioned** 26:19
41:14 61:14 93:19
201:13
**Merck** 20:20,22,23
21:1 200:2
**message** 125:6
**messages** 25:14
**met** 18:2,5,13,19
19:21 174:9,9,13
174:14,21
**metadata** 180:23
**methodologies** 89:5
173:18
**methodology** 63:4
63:5,14,21,25
90:8,12,15 188:2
**Meyer** 1:17 2:3 5:4
10:10 17:2 32:22
33:16 34:23 35:2
37:22 43:5 45:8
53:8 56:9 58:20
59:24 61:1,4
63:10 74:15 77:2
86:16 92:23 111:3
128:24 129:7,9
130:7 143:20
153:17 156:21
162:9 164:15

165:12,18 176:2
180:13 182:16
185:3 187:9
192:19 193:23
197:14,23 199:21
210:16 213:3,7
219:13 222:6
223:5 224:22
227:1 230:3
**MICHAEL** 1:17
2:3 5:4 230:3
**Michell** 72:19
119:25 120:2,4
121:6 131:10,12
131:19 133:9,11
140:13,19 141:1,7
**Michell's** 136:3
143:7
**middle** 45:8
**midst** 225:21
**Mike** 155:17 159:3
**military** 26:17
113:15
**million** 102:1 106:1
117:4,11,13,17
132:10,12 138:7
163:15 170:24
171:1 213:12,14
213:17
**mind** 41:21 43:8
99:4 206:13
**Mindy** 77:12
**minimum** 134:5
137:14,15
**minute** 92:13
**minutes** 76:5,8
128:12 218:17,22
219:18 221:7,21
**miscellaneous**
98:25
**mischaracterizat...**
155:25 156:3
**mispronounce**
114:4
**missing** 195:10
**misspoke** 99:10

**Missry** 62:23 64:1
153:21,23 154:25
155:8,16,23 156:3
169:23 170:4
177:12,17 178:9
185:8,10,20
194:18,20,23
195:11,20 207:8,9
207:10,17,20
208:4,23 209:4,9
**Missry's** 170:14
172:10,19
**mistaken** 130:18
**misunderstanding**
93:22
**model** 48:20
**modernization**
118:11
**modernized** 118:22
119:9
**modernizing** 119:4
**modified** 136:22
137:3
**moment** 15:23
60:17 68:16 215:5
**moments** 49:2
**money** 98:15 109:3
**Monica** 200:1,9
**MONMOUTH**
231:4
**Monsees** 77:12
**month** 66:7 132:7
138:20 205:10
**monthly** 124:17,25
125:4,9 132:12
134:6 137:8,10,12
137:17,21 138:17
138:25 139:1,9
**months** 20:8 66:6
105:17 110:9
**morning** 10:10,17
**Morris** 62:23 64:1
153:21,22 154:24
170:4,14 178:8
185:8 194:18
195:11 207:8,20

208:13
**Morris'** 195:1
**Mosby** 200:2,9
**move** 64:5 73:19
**moving** 13:6 100:6
117:24
**MRP** 74:21,22
118:16 119:5,13
**MRPs** 74:4
**multiple** 89:4 142:6
209:1 225:19
**multiply** 138:7

## N

**N** 3:1 4:1 5:1 6:22
128:4,7 130:1,1,1
130:6,7 141:5
**N-a-k-l-e-h** 53:17
**nail** 128:10
**Nakleh** 53:14
189:16,18,24
190:1,5,15,21
191:5,14,15,25
192:5,13,23 193:4
**name** 6:2 7:2 8:2
10:10 12:15 53:15
70:16 114:4 119:1
200:4 221:13
228:11
**named** 101:11
130:18
**names** 199:14,16
199:20
**Nancy** 128:4
**Nat** 4:9 16:19 32:13
35:17 68:4 76:19
180:5 196:15,19
219:24
**nature** 11:20,22
114:15 154:20,22
158:6 159:1 160:7
160:11
**necessarily** 158:24
**necessary** 149:9,11
149:15
**need** 13:25 14:11

64:24 66:5 74:5
112:8,13 144:13
145:2 146:4 150:6
151:11 152:15
154:7,15 155:14
183:12 197:15
221:7
**needed** 36:25 37:2
40:19 72:11 123:5
125:21 131:18
145:7 146:23
152:17 179:9
226:4
**needs** 142:2
**negotiate** 32:9
85:22
**negotiated** 37:10
189:8
**negotiating** 225:21
**negotiation** 36:18
36:22 88:8,12
91:19 116:8
204:18 226:16
**neighborhood**
166:15,19
**neither** 209:15,18
**net** 89:22 107:7,9
107:11 151:4
**never** 55:16 79:25
142:22 155:9
208:23 210:10,20
**new** 1:2 2:7 3:9,19
3:19 10:6 13:21
29:7 30:19 31:1
84:6 96:15 103:21
112:18 120:23
121:1 145:20
146:4,15 172:11
175:2 185:16,17
201:7 206:1,8,25
207:2,22 211:12
231:2,8
**news** 201:21 203:6
**Nocito** 71:20,22
72:5,16 73:7
93:18



nomenclature
  118:5
non-binding 189:5
non-prejudicial
  189:4
non-privileged
  158:9,12 159:7
Nonmodernized
  118:20
nonmodernized-E
  118:15
nonparty 15:2
nontraditional
  112:15,19 113:5,7
  113:12
noon 76:9
North 151:7
northeast 71:25
Northern 12:21
notary 2:6 10:5
  228:18 231:7
note 15:24 74:12
  104:12 126:13
noted 228:9 230:9
notes 44:17,21 45:5
  45:14 162:19,21
  173:23 174:2,5
  196:6,7 197:23
  224:9
notice 2:4 6:4 16:17
  16:23 17:12,15
  74:14 79:23
  114:10 213:2
noticed 64:21
notification 142:2
Nov 105:7
November 20:6,8
  91:10 107:19,19
  110:16 121:12
  122:13
number 11:25 18:3
  19:11 22:18,24
  29:21 50:8 64:22
  78:15 84:5,12,18
  84:21,23 91:21
  93:25 95:2 106:22

113:20 114:20
118:7 119:3
124:14 135:3
137:20 139:3
150:3 204:1
213:13 221:11,14
numbered 17:15
  100:18
numbers 97:7,10
  97:19 109:17
  110:3 117:18
  142:23

O

O 6:24 130:1,1,1
  141:11,14,17
o'clock 2:5 76:15
  76:17 129:3,19,21
  130:2 179:19
  180:1,3 219:1,3
  221:25 222:2
  227:23
O/O 108:24 109:20
Oakdale 151:8
object 13:1,7,12,25
  32:12 34:12,23
  39:5 49:18 52:14
  63:8 131:15
  138:11 152:2
  158:3 160:17
  162:16 164:1,2
  165:14 166:23
  167:17 168:1
  169:5,14 170:6
  173:25 178:1
  179:12 181:22
  183:4 184:1 186:3
  188:19 190:16
  191:2,22 192:6,14
  193:9 198:23
  201:4 202:1 203:5
  203:19 204:13
  205:3,15,22
  206:10,17 207:12
  210:6,14,25
  211:19 212:5,25

213:19 214:10,17
215:3,11,16 216:4
216:17,23 217:9
217:19 218:5,13
objected 159:20
objection 13:8
  21:13 23:9 25:19
  30:21 31:2,16
  32:1 33:15 38:15
  39:4,24 40:9,16
  40:22 41:17,25
  42:9,14 44:23
  45:7,16 47:19
  48:22 50:2,11
  52:6,13 53:4,9
  54:16,25 55:7
  56:6 57:7 58:1,17
  59:1,6,19,20 60:4
  60:12,23 61:10
  62:2 64:6,14,18
  65:24 67:12,25
  70:4,11 74:9,11
  75:16,23 77:23
  78:5,23 79:6
  80:11 81:14 83:1
  83:11 84:3,11,20
  85:15,19 86:3
  87:14 88:3,13,22
  90:10,19 94:18
  96:5 97:5,18,23
  98:13,20 99:8
  102:6,23 105:12
  106:2,16 107:17
  108:2,17 109:6
  110:14 111:19,23
  112:2,20 115:7,12
  115:18 117:5
  119:10 120:9
  121:2 122:9,17
  123:10 127:2,6,15
  127:22 132:14
  136:14,23 139:14
  140:6 144:22
  145:23 146:7,24
  147:24 148:21
  151:21 152:25

154:11,17 157:8
158:10 159:17
160:4,13 179:4
180:21 181:13
191:11 220:22
227:6
objections 14:5,10
  64:17,22 65:2
  66:13
obligated 108:9
  136:12
obligation 192:12
obtain 34:9,15
  111:12
obtained 50:21,21
  73:18 116:20
obviously 25:7
  165:15
Occasional 30:5
occur 66:6 227:13
occurred 175:18
  177:10,12 178:15
October 61:23
  62:24 69:24
  188:12 194:21
  195:11 223:17
  224:3
offhand 70:20
office 28:20,21 29:2
  29:6,8,10 69:21
  71:24 72:4 77:15
  83:7 100:3 101:15
  135:22 140:1
  170:14 171:7
officer 114:12
offices 28:19,19
  176:8
officially 119:20
officials 202:17,25
offline 14:8
Oh 182:18
okay 10:16 11:19
  12:9 14:12 15:5
  20:1 24:1 27:21
  29:11 31:23 33:21
  34:8 35:7,15 36:6

38:22 41:13 46:6
51:13 58:13 61:18
65:1 67:5,20 68:2
69:16 71:17 72:14
73:2,22 76:11
77:6 80:2,20
86:19 87:10 91:2
92:15 94:10,15,25
95:13,16,22 96:2
96:18 98:5 99:16
99:19 101:9,19
103:9,14 104:2
106:6,20 107:2
113:3,10,19
115:20 120:17
121:19 123:8
124:19 125:7,12
131:6 132:9,18
133:24 134:19
135:4 137:6,15,19
137:23 138:5,12
138:19 140:10
141:3 143:10,22
157:17 165:1
167:12 168:14
169:15 170:12
175:7,13 176:4
179:18 182:20,23
182:25 183:8
186:20,25 188:8
189:22 193:13
194:8 195:15
198:3,11 200:6,15
200:25 203:23
207:15 209:13
210:18 218:23
224:4,8,24 225:12
226:9,18 227:17
227:19
old 119:19
once 34:11,22 64:3
  141:24 174:22
one-time 132:25
ones 29:23 30:16
ongoing 146:20
  207:19



**open** 16:8 110:12
**operating** 12:17
  98:3
**operation** 75:19
  122:7
**operator** 130:13
  133:8
**operator's** 133:5,14
  137:3 143:7
**opinion** 49:20
  57:13,25 58:10
  59:8 62:14,20,21
  64:3,12 66:3,10
  66:10 87:15 155:2
  155:20 162:12
  168:24 176:16,19
  180:16 187:24
  188:21,25 193:24
  194:2 215:22
  216:3,6
**opinions** 57:11,23
  58:8 59:17 60:1
  60:10 63:1 155:14
  156:9 169:10
  173:18 182:4
  190:10
**opportunity** 69:11
  131:2 155:9
**opposed** 143:1
  212:14 225:10
**option** 6:8 37:18
  38:1,19,20,21
  43:19,22 44:3,7
  52:1 54:22 55:20
  55:24 56:22 57:5
  57:16,21 58:6,15
  58:25 59:16,22
  60:3 79:4 84:1
  92:22 100:6,12,13
  115:25 116:21
  124:8 127:14
  141:23 143:5
  144:25 145:4
  154:6,9,23 167:4
  188:1 190:9
  196:22 197:10

211:6 215:22
  216:15 217:3,7
  226:4,17
**options** 124:10
  197:9,19 205:10
  205:17 220:3
**ORAL** 2:2
**order** 13:5 19:1
  48:10 68:18,19,22
  73:11 91:21 93:6
  142:2 154:4
  159:11 174:17
  192:22 211:4
**ordered** 70:23
**orientation** 196:13
  197:10
**original** 125:23
  228:20
**originally** 124:21
**ostrich** 141:11
**outcome** 231:16
**outlined** 43:19 95:5
**outset** 201:10
**outside** 13:3 14:2
  18:24 30:8 74:13
  81:10 184:9
  199:25 213:1
**overrule** 129:7
**owed** 137:8 139:12
**owned** 26:22 27:6
**owner** 119:24
  171:24 172:4
**owner-operators**
  109:23
**owner/operator**
  112:16,17 120:1

**P**

**P** 3:1,1 4:1,1 7:4
  143:13,16,20
  145:18
**P-38** 220:17
**P-39** 8:8 220:17,24
  222:24 223:2,10
**P-40** 8:9 224:16,19
**P.C** 3:4 202:16

**p.m** 93:20 103:18
  129:20,21 130:2
  180:2,3 183:9
  219:2,3 222:1,2
  227:24
**PAC** 123:2
**package** 111:8,10
  111:18 114:21
  115:23 116:18
  119:7 121:5 124:4
  124:5 125:24
  226:5
**packaging** 30:11
**pad** 212:8,11
**page** 5:3 6:2 7:2 8:2
  9:4,7,11 36:5 38:5
  38:9 45:20 51:7,9
  51:10 59:2 71:15
  87:4,8 89:22
  90:17,25 91:3
  93:13,13 94:14,16
  101:8 103:22
  112:12 113:1,2
  115:1 117:10,24
  121:10 123:15,16
  125:13 130:18
  131:24 132:2,3
  133:7,12 134:17
  162:15,15,23
  163:4,5,14 181:2
  181:6,9 194:1
  197:1,11 206:1
  221:22 229:3
  230:1
**pages** 17:16 181:18
  181:19
**paid** 98:1 107:21
  109:4 116:1
  132:22 133:1
  134:6 159:16
  202:15 213:22,25
**paper** 22:23 94:5
**paragraph** 38:9,11
  38:13,24 39:2,13
  39:19,23 45:20,23
  45:25 46:1,9 47:1

51:8,9 53:19 59:2
  69:25 70:8,25
  74:1 75:4 80:4
  91:3 104:16 132:3
  132:20 148:6
  187:20 188:17
  191:13 200:23
  201:2 202:12,23
  203:12 204:3,5
  205:7,25 206:1,9
  206:16,22 209:14
  209:15,17 211:9
**paragraphs** 51:12
**paralegal** 19:13,21
**paralegals** 19:19
  30:3
**parameters** 51:4
**paraphrasing**
  172:12
**parentheses** 106:23
**parenthesis** 118:16
  118:16
**Park** 3:18
**part** 18:19 19:8
  22:8 23:23 28:13
  29:8 32:7 43:18
  44:2 55:2 60:2
  66:5,25 83:25
  92:11 115:10
  116:2 148:22
  149:5 172:18
  212:15
**participate** 24:22
  142:9
**participating**
  159:11
**particular** 21:2
  40:12 85:5 110:16
  182:5 192:5
  214:24
**particularly** 184:13
**parties** 3:2 4:2
  14:25 53:20,23
  54:9 68:21 141:25
  142:5,7 155:9
  156:7 189:7,15,23

191:13 192:7,22
  193:2,4 231:14
**parties'** 206:3
**party** 26:13 39:15
  52:10,20 54:5,12
  54:22 155:6 156:9
  188:16
**party's** 52:11
  187:22,23
**Pashman** 3:4 21:8
  21:12,12 22:3
  33:10
**pass-through**
  133:21 134:7,8
  136:4,5,17 139:3
  139:11 140:3,15
**path** 184:8
**pay** 108:9 136:12
  137:13 139:8
  142:21 214:3,4,14
  214:16,25
**paying** 106:14
**payment** 214:19
**pays** 98:22 99:1
  107:5 134:8
  205:20
**Pct** 122:3
**pending** 12:20
**Pennsylvania** 29:7
**people** 37:7,11,13
  62:9 76:6 101:11
  113:20 114:16
  169:25 196:10
**percent** 51:19,19
  52:5 75:13,15
  87:21,21 88:1
  102:1,18,19
  108:10,21 116:13
  116:14,14,14,15
  116:19,22 117:12
  117:14 119:11
  122:6,6,19 132:6
  132:11 137:25
  138:2,8,17,17,22
  140:16,25 170:25
  171:18,19 210:1



210:24 211:3
**percentage** 121:21
121:23 122:4,11
122:24 123:2
133:21 134:4,11
137:24 138:15
171:16,19,25
196:21 214:3,4
**Perfect** 221:16
**perform** 43:18
**period** 38:21 53:25
54:15,24 73:21
91:19 107:19
118:23 122:13
127:14 145:3,15
202:13 204:18
217:8,8,13
**periods** 38:20 54:6
124:8
**permit** 57:22 58:7
59:16
**permitted** 61:7
214:25
**person** 22:14 100:2
117:6 128:22
**personal** 23:6
24:25 25:8
**personally** 90:3
**Peter** 143:13
**Petrozza** 99:7
100:5 114:9
**Philadelphia** 28:23
29:3
**phone** 16:13 23:3,7
23:13,16,18 24:4
142:12 208:1
209:3
**phrase** 212:8
**physically** 21:4
48:16
**pick** 147:18,22
**picture** 105:16
**place** 203:1
**placed** 32:22 35:25
68:11
**places** 151:7

**plain** 106:12 206:2
**Plaintiff** 1:6 3:13
**plan** 118:2,4,10
**Planned** 118:14
**Planners** 95:4
101:22 144:5
146:4 148:13,16
148:19 149:2,13
150:9 151:19,25
182:4 194:1 201:9
**planning** 118:13
**plans** 183:14 202:9
202:25
**platforms** 22:18
25:9
**Plaza** 3:7
**pleadings** 56:8
58:19 66:15
**please** 11:5,10 16:6
16:20 20:21 31:5
32:16 34:2,20
37:25 39:11 41:6
43:7 46:2,11 51:8
56:12,14,15 65:6
71:16 76:19 79:9
79:11 80:25 86:9
92:3,18 100:19
103:1 110:21
121:10 130:11
132:2 143:12
147:6 153:9
155:17 158:21
159:6 160:12,15
161:22,25 164:23
180:5 182:9,19
184:20 195:23
215:5 223:5
224:16,22
**plus** 18:6 98:1
**point** 60:7 93:10
112:13,25 115:25
124:15 137:16
163:19 177:3
188:22 226:14
**points** 75:9
**policy** 74:4,8,19

114:17 152:8,10
152:12,23
**popped** 182:17
**populate** 197:20
226:4
**portfolio** 29:17
82:23 83:8 114:11
157:3
**portion** 18:21,22
28:20 29:5 58:24
68:25 69:8 83:7
93:2 214:8,15
**portions** 131:7
**pose** 33:15
**position** 27:15
66:20 99:20
130:24 190:9
193:11 210:5
**positions** 27:14
**positive** 119:21
**possible** 67:4 78:8
158:24 176:25
177:7 179:17
185:22 196:14
212:2
**possibly** 67:2 79:7
**potential** 81:25
158:7 226:6
**potentially** 22:14
34:24,25 50:6
82:16 146:17
176:10 184:7
**Potesta** 101:12,16
**practice** 15:11
44:21 139:19,23
**practices** 211:14,18
**pre-debt** 109:8
**precedent** 192:12
192:19
**preceding** 132:7
**premise** 67:10
170:17 172:9
**premises** 79:22
80:6 81:23 136:11
140:19 142:1
222:16

**preparation** 33:7
175:12,19
**prepare** 17:25 19:1
77:17 174:8,17
175:17 185:16
206:25 215:21
216:2,6 218:11
225:18
**prepared** 13:17
17:18,23 33:9
77:21 94:17
105:25 107:15
111:17 120:25
134:20 156:7
**preparing** 175:8
**presence** 18:25
**present** 3:2 4:2,4
123:18 124:12
170:2 218:9
**presented** 40:25
156:9 202:24
**presenter** 223:8
**preservation** 19:8
19:10 20:12 23:24
**preserve** 14:5
**president** 20:25
21:1
**press** 207:24
**prevent** 19:3
**previous** 117:10
148:1 209:25
**previously** 42:18
83:5 95:7 225:9
**primarily** 170:7
**primary** 12:17
29:23 54:3 56:1
83:16
**prior** 36:15,16 54:2
55:25 67:21 88:6
121:24 174:7
227:16
**privilege** 6:5 32:18
33:4,13,24 34:4
35:12 198:25
199:15,19
**privileged** 21:16

33:17,18 34:5,13
34:21,24,25 35:5
35:12 41:4 42:2
42:21 43:1,11
158:4,7,20,21
159:5 160:8,11,19
208:18
**PRM** 12:18 14:23
14:25
**pro** 30:13
**probably** 13:13
114:4 179:20
218:17 220:14
**problem** 64:23
221:23
**Procedure** 13:19
**proceed** 13:17
161:13
**proceedings** 12:16
**process** 11:2 19:9
24:17 43:19 44:5
54:1 55:19,24
56:21 57:5,9,15
57:22 58:7 60:2
64:5 82:8 84:1
88:7,8,12 115:11
116:9,17 118:7
140:24 142:3
146:6 148:23
150:2 154:5,8,16
154:24 155:1
173:5 192:9,21,24
193:5,8 216:3
226:15 227:14
**produced** 18:11
21:6 22:5 126:5
126:17
**production** 9:6
21:24 24:15 25:7
126:2,7 165:15,17
174:2
**productive** 13:14
13:16
**prof** 104:11
**professional** 25:23
49:19



**professionals** 29:16
**profit** 109:8
**program** 119:1
**project** 30:14 73:19
74:21 78:21
104:24 119:5,14
119:15,20
**projects** 30:5
**promptly** 228:21
**pronounce** 53:15
**proper** 84:25
**properties** 26:12,19
26:22 27:7 202:19
**property** 27:5
39:14 44:7 47:9
47:10 49:25 51:25
67:17 78:3,13
81:5 85:17 86:1
86:24 88:15,21
91:12,16 98:11
116:24 119:24
120:5 135:8 137:9
153:23 170:19
172:17 184:17
185:14 201:8,18
201:19,22 202:18
203:1,15 204:8,23
205:14,18 206:5
206:19 208:7
209:21 216:9,11
216:14,21 224:2
**property's** 39:3
**proposal** 114:23
117:10
**propose** 179:21
**proposed** 82:5
**propounded** 230:9
**Prospect** 166:14,19
**protective** 68:18,19
68:22 93:5
**provide** 31:14 59:8
70:17 81:25
111:15 159:12
**provided** 50:5 51:5
52:22 79:4 81:2,4
81:18 82:15

146:21 177:21
205:20 228:14
**provides** 42:17
145:1
**providing** 31:9,12
32:7
**provision** 139:10
155:19
**provisions** 216:15
**public** 2:7 10:6
50:13 146:19
152:14,15 201:21
202:12,20 203:7
228:18 231:7
**publications** 202:7
**pull** 222:23
**purchaser** 171:24
**purchasing** 29:19
**purported** 65:13
207:7 208:10
209:5 210:23
**purportedly** 63:4,6
63:15,22,23
**purpose** 88:11
115:22 201:18
225:17,19
**purposes** 189:7
211:2 225:20
**pursuant** 2:3 16:16
17:11 99:1 108:9
141:23 189:17
194:3 211:5
**pursue** 173:22
**pushing** 144:11
**put** 12:23 39:15
40:23 76:19 147:5
197:18 198:4
219:6 220:24
221:18
**putting** 178:9

_____
           **Q**
_____
**question** 11:5,10
13:2 14:16 21:20
24:3 25:5,12
30:23 31:4,19

32:3,4 34:2 35:4,8
39:10 40:2 41:5
42:25 43:4,6,8
44:25 47:15 51:20
52:18 54:20 56:12
56:16 57:18 59:10
59:11,13 60:5,14
60:16 62:12 65:5
65:7 67:7 72:23
72:24 73:8 84:25
97:8,16 107:8
123:13,13 158:19
158:22 160:14,16
160:25 161:3
163:20 165:20
168:3,5,7 169:7
177:20 184:3
191:9,12 196:9
197:22 199:3
203:25 216:25
217:17 219:11
222:12 227:2
**questions** 51:12
199:5 219:9,17,21
222:9 226:20
230:8
**quick** 70:17 199:18
**quicker** 220:6
**quote/unquote**
214:22

_____
           **R**
_____
**R** 3:1 4:1 7:7 10:3
130:1 150:15,18
150:21 231:1
**R&SF** 109:25
**raise** 14:5
**range** 71:3 84:25
87:20 88:1 96:10
102:1,18 116:3,17
117:13 226:5
**rate** 116:23 171:3,5
171:10 210:1,24
211:3
**rated** 75:12,15
**rates** 87:20

**rating** 172:2
**rationale** 152:11
**re-up** 120:22
**re-upped** 121:1
**reach** 117:15 142:5
179:9
**reach-out** 148:3
**reached** 72:9
147:17
**reaching** 189:7
**reacquisition** 111:8
111:10,18 119:7
121:5 124:4
125:24 226:5
**read** 14:15,17
39:11,12 41:6,7
43:7,10 46:2
48:25 56:13,15,17
65:6,8 89:22
117:12 121:3
155:18 156:22
160:15 161:1
195:1 200:24
211:23 228:3,4
230:5
**reading** 39:13
69:13,15 95:14
107:18 112:21,23
132:24 155:25
**reads** 74:3 75:4,12
91:4 202:23
206:23
**ready** 51:11 144:13
144:20,25 145:9
145:13 177:7
223:7 226:2
**real** 11:24 12:11,13
26:8 29:15 30:19
30:25 48:2 69:20
75:18 84:5 105:20
114:1 122:1
142:23 199:18
**really** 27:1 29:2
31:22 176:24
192:20 198:2
220:10

**Realty** 12:18 14:24
14:25
**reason** 45:13 65:21
72:24 102:20
125:8 212:3 228:6
228:10 229:3
**reasons** 66:9 78:16
78:18 204:2
**rebuild** 73:13
**rebuilt** 118:24
**recall** 18:4 19:18,24
22:12 36:11,15
44:1,2,9 45:17,22
45:24 67:3 68:1
77:4,19 80:1 81:9
81:17,18 82:7,11
82:19 85:13,20,25
87:2 91:6,8,9
142:19 143:3
145:12 146:13
149:3 150:3
157:22 159:9
163:11,13 167:9
167:15,23 168:5,9
169:21 172:10,24
174:4,6 175:4,8
175:12 178:18
179:13 184:16
185:23 186:17,21
201:5 208:12,24
209:7,12 213:12
215:9 216:12
217:10,17,20
**recalling** 26:18
**recalls** 63:11
**recaps** 185:11,12
186:1
**receive** 23:24 78:2
168:25 228:22
**received** 19:9 20:3
22:7 24:16 50:24
85:14 97:24 98:2
98:6,15 106:11
188:20 210:10,20
**receiving** 98:10
107:20



**recess** 76:16 129:20 180:2 219:2 222:1
**recognize** 17:5 32:25 36:3 37:22 89:16 101:2 162:8 168:22 180:12 182:15 185:2,5 187:8 193:22 194:16 197:23
**recollection** 40:20 44:13 213:18 223:21 224:25 225:5
**recommend** 75:5
**recommended** 150:3
**recommends** 100:5
**record** 11:11 12:24 14:17 39:12 40:24 41:7 43:10 48:25 50:13 52:16 56:17 65:8 76:14,18 126:14 129:18 130:3 144:2 146:9 146:19 152:14 161:1 164:3 179:25 180:4 218:25 219:4,7 221:24 222:3 223:11 227:22 231:11
**records** 133:17 202:13,20 203:7
**recycling** 30:12
**redevelopment** 73:12
**redo** 208:3
**reduce** 208:14
**reduced** 208:11
**reducing** 208:13
**refer** 10:15 100:13 118:3 133:7 151:14 221:10
**reference** 60:18 166:14,19
**references** 136:4

**referencing** 40:3 146:1 206:12 225:8
**referred** 46:9 165:12
**referring** 40:8 41:16 103:17 151:16 161:18 171:16 202:4,21 202:21 206:16 211:18
**refers** 70:9 77:11 101:25 113:5 157:6,9 166:16 206:9
**reflect** 38:25 39:3 121:22
**reflected** 117:14
**reflects** 71:18
**refresh** 40:19 44:13 223:20 224:25
**refused** 56:19 57:2 190:20,22
**regard** 201:6
**regarding** 92:20 187:13 192:8,21 192:23 193:5
**region** 112:15 135:18
**regulations** 206:6
**reiterating** 178:25
**reject** 82:14
**related** 12:16 14:23 19:7,16,23 20:13 21:24 24:15 27:6 28:7 171:20,22 202:18 231:13
**relates** 184:4
**relation** 30:11 223:22
**relevant** 22:14 23:14,17,20 24:5 24:8,20 40:12 59:21
**relieved** 16:3
**relying** 58:16,25

59:15 203:4,17 204:11
**remain** 205:17
**remains** 74:23
**remember** 18:8,12 19:20 20:2 40:15 47:5 49:4 62:15 79:8 81:24 82:2 86:4 91:13 149:8 149:24 157:16,18 161:14 162:11 170:16,21 171:9 172:6 173:2 174:19 177:9 178:23 179:13 182:2 186:6 188:11,13 189:1 201:23 202:5,6 215:17 218:2,8 227:15
**remind** 21:15 42:1 53:7
**remodel** 73:13 74:21 78:20 104:23 119:5 213:9 214:25
**remodeled** 118:23
**remodeling** 212:18 212:21,24 213:7 215:1
**remodels** 214:9
**Remote** 3:2 4:2
**removed** 166:20,22
**renegotiating** 29:19
**Renegotiation** 123:18
**renewal** 167:4,19 167:25 168:11
**rent** 6:8 37:18 38:1 38:20 43:19,22 44:3,7 52:1 54:6 54:23 55:20,24 56:22 57:5,16,21 58:6,15,25 59:16 59:22 60:3 74:23 79:4,5 84:2 87:20

88:1 96:8,8,9,9,14 96:15 97:25 98:7 98:9,10,18,21 100:13 102:1,18 106:10,14 107:5 107:21 108:15 110:1 116:1,3,8 116:21,25 117:1 123:22,23 124:5 124:17 125:1,4,9 125:10 127:13,21 133:15,17,20,21 134:2,5,7,8,11,12 136:5,12,17 137:11,12,17,24 138:15 139:3,12 139:12 140:3,3,14 140:15,19,21 141:23 142:21 143:5 144:25 145:4 154:9,23 159:15 161:20 171:3,17 188:1 190:9 204:20,22 205:20 211:6 215:22 216:15
**rental** 38:10,18,24 39:2 47:9 48:14 81:13,22 85:23 90:16 91:17 92:2 106:8 107:16 116:21 122:23 142:8 167:6,14 170:24,25 177:5 187:15,25 225:22
**rents** 73:16,20 74:6 96:7 116:7 124:8 127:24 133:21,22 226:6
**repeat** 11:6 32:4 39:10 41:5 43:6 65:5 160:14 203:25 215:24
**rephrase** 11:6 21:20 23:11 37:1 38:25 51:20 52:17

54:19 57:18 58:3 77:24 97:12 120:11 140:20 154:13 156:8 167:20 204:3 209:16 216:18
**report** 49:8,11,21 63:19 65:11,13,16 104:14 105:25
**reported** 138:23
**reporter** 2:6 10:2 128:23 129:10 228:21 231:7
**reporting** 23:20
**reports** 89:4 133:18 146:22 149:23 183:14
**represent** 139:6
**representation** 166:2
**representative** 11:24 12:11 14:21 14:23 130:25
**representatives** 149:1
**represents** 139:7
**request** 9:6 68:20 73:3 75:6 77:21 90:3 126:7 195:5
**requesting** 72:18 74:3
**requests** 198:24
**require** 228:21
**required** 73:20 74:22 141:24 173:14 191:25 206:3 227:10
**requirements** 73:13
**requires** 35:4 47:8 48:9 65:9 185:11 190:10 192:4
**requisite** 73:18 111:15
**research** 66:24 70:19 201:9



**researching** 48:18
**reserve** 13:9
**reset** 161:20
**residential** 201:20
**residual** 47:25 48:3
  63:20 173:8
  183:11 184:7
**Resources** 72:13
**respect** 14:19 17:19
  25:8 49:25 50:20
  50:25 118:11
  159:6,15 168:7
  172:8 201:17
**respective** 187:23
  189:3
**respectively** 51:17
**responded** 194:20
**responding** 33:19
  35:3
**responds** 151:9
**response** 42:23
  172:19 195:6
**responsibilities**
  27:8 28:6,11,13
  29:22,25 30:7
  31:8,11 82:25
  83:10,15
**responsibility** 27:3
  83:17
**responsible** 20:12
  21:4 37:8 83:5
  140:14
**restaurant** 36:8
  73:12 75:19 98:3
  104:19,21 109:15
  110:9,11 118:9
  132:7,11 151:17
  203:2 212:19
**restaurants** 29:6,17
  51:2 119:4
**result** 66:23 98:2
  140:23
**resulting** 216:15
**Retail** 70:16
**retain** 192:8 193:5
**retention** 44:3

**return** 76:8 172:1,5
  179:22 228:20
**reveal** 21:16 33:16
  33:18 34:24,25
  35:5 42:2,21
  159:5 160:7
  199:22 202:13
**revealing** 41:3 43:1
  158:6 160:11,19
  208:18
**review** 21:5,12 24:4
  69:12 131:3
  198:17 218:19
  224:23
**reviewed** 17:14
  18:3 22:4,10,22
  23:7,14 24:8,14
  24:21 25:2,9,14
  73:4 95:7 149:16
**reviewing** 18:9
  163:11
**revise** 136:16
**revised** 74:4,7
**revision** 74:18,25
**rewrite** 120:18,20
  121:7 135:24
  136:3
**rezone** 204:23
**rezoned** 201:18
**rezoning** 148:8,13
  148:20 149:1,5
  202:18
**right** 13:9 14:14
  15:4 60:15 68:20
  69:17 70:7 73:1
  75:2 76:3,12
  94:12 95:9 96:22
  102:16 110:19
  112:8 114:19
  115:4,13 121:9
  124:3,9 126:9
  127:1,5 128:1
  130:19 131:22
  133:19,22,23
  134:23 144:9
  146:10 150:12

153:8 158:11
  161:6,21 162:25
  164:7,18 179:18
  180:17 182:24
  195:22 196:21
  198:13 200:22
  201:16 218:15
  219:23 220:10
  221:5 223:10,18
  223:19 227:20
  228:4
**risk** 172:5
**Rita** 71:19,22
**road** 13:10
**role** 28:8 33:6
  159:14
**roles** 28:8
**room** 15:21 16:5
  128:22 221:20
**rotate** 196:12,17
  197:2,11,13,15
**Rottenberg** 4:6
  11:4 85:22 92:1
  142:7,15 169:22
  177:11,17 204:17
**roughly** 21:10
**royalties** 97:25
  98:8,12
**royalty** 98:23
**rules** 11:3 13:18,19
  13:20 228:21
**RVS** 70:9,14,15,22
**RWT/PASS-TH...**
  135:25

_____

**S**

**S** 3:1,16 4:1 6:1 7:1
  7:8 8:1 130:1,1,1
  153:10,13,16
  156:6
**sale** 91:18
**sales** 61:6 63:17,19
  88:20,25 91:17
  104:5,7,8,15
  105:6,15,16,21,24
  108:11,21 121:11

121:14,15,16,17
  122:11,20 132:6
  134:5,13,13
  137:18,21 138:3,7
  138:18,24,25
  163:24 171:2
**Sam** 4:6 85:22 88:8
  88:12 142:7,12,14
  142:19 170:4
  204:17 225:21
**Sara** 200:2,12
**saw** 36:14 181:23
  201:24
**saying** 106:18
  145:9 170:22
  178:24 190:14
**says** 46:16 47:24
  53:23 69:25 72:25
  75:10 87:4,15
  90:20 94:21 95:3
  96:19 101:23
  104:11 106:8
  107:9 108:3,13,18
  108:23 109:20
  112:14 115:17
  116:12 117:11,20
  118:15 119:13
  121:20 122:1
  123:1 135:24
  137:11 139:3
  144:17 145:17,19
  152:19 162:23
  167:13,18,18
  181:3 183:9
  187:20 189:3,15
  191:13,14 192:7
  193:2 197:9,10
  202:12 206:1
  223:8
**SBQ** 135:15
**scenario** 106:13
  116:5
**scenarios** 148:8,13
  148:20 149:1
**schedule** 134:14,16
  134:17,21 136:2

136:13,16,22
  157:10 195:2
**scheduled** 157:15
**schedules** 130:13
**school** 15:17,18,19
  15:25 16:3
**scope** 13:3 14:2
  74:13
**screen** 130:5
  196:16,21 197:3
  197:19 220:9
  223:8,9
**scroll** 36:4 153:18
**scrolling** 33:1
  101:3 133:6
  162:10 185:4
**search** 19:6
**second** 12:2 38:5,9
  40:13 45:20,20
  53:8 61:21 62:21
  63:18 64:3,12
  65:12,21 66:10
  69:23 74:3 80:3
  91:4 93:12 100:4
  101:8 122:22
  128:24 130:18
  147:21 153:4
  171:11 206:11
  208:6 215:6,14
  221:5 227:9
**secondly** 65:12
**Section** 112:25
**see** 17:2,7 36:5,9
  37:8 38:11 53:21
  54:7 65:3 68:16
  71:7,24 75:7
  87:22 93:4 94:23
  95:20 102:2,3,11
  103:15,23 104:1
  105:9 107:8 113:3
  125:16 126:23,25
  134:24 139:4
  143:25 144:16
  147:19 148:10
  155:19 162:14,18
  162:22 163:14,16



163:17 164:23
167:7 169:19
178:6 181:20
183:16,21 196:9
196:16 197:2,25
207:3 210:2
211:15 212:16
214:21 218:19
seeing 91:6 174:4
196:25
seeking 78:12
111:13 201:22
204:23
SEELIG 3:15
seen 25:6 36:16
77:2 79:17 86:16
86:20 92:11 101:6
103:10,13,21
111:3 130:7
141:17 143:19,21
147:12,14 150:21
150:23 153:16
174:1 181:25
182:3,5 198:14
201:10 225:6
select 83:25 144:12
144:20 189:23
selected 56:20 85:9
189:16,25 191:13
selecting 145:6
send 50:19 73:3
102:21 141:22
142:25 185:9,25
187:22 209:8,9
221:3,6,17
sending 185:21
186:11
senior 26:2 27:9,22
28:3,7,8,11 29:25
113:25 114:1
sense 84:24
sent 19:17 21:11
22:3 44:3 50:7,23
62:22 102:24
130:17 131:3
141:20 142:2

157:1 163:8 169:1
169:1 186:6
188:24,24 194:3,7
194:19,25 208:20
208:23,24 225:15
sentence 74:3 91:4
91:6 153:3,4
sentences 59:3
separate 26:25
175:12 208:25
separately 174:12
174:13,24 175:6
September 61:22
62:24 188:17
190:25 193:25
series 121:11,13
196:5 205:16
served 11:23 16:17
17:10
servers 24:7
service 99:3 108:5
108:15,20 110:1
132:4,5,12,23
Services 1:21 2:16
70:17
serving 14:22
session 118:13
set 60:2 95:18
116:10 127:21
143:5 154:3 192:9
192:21 193:6,8
203:21 204:22
231:10,17
sets 154:23
setting 173:13
seven 27:12,25
share 152:15 215:1
220:9
shared 23:2 158:25
sharing 73:6
Sharon 43:14 50:14
51:3 66:24 67:18
67:21 83:25 86:22
143:23 145:7
146:14 151:1,3,11
162:12 164:17

168:24 170:3
172:22 173:9
174:10,11,14,16
174:16,21 176:12
177:21 178:4
180:16 183:6
184:6 188:24
189:25 198:1
211:21
Sharon's 144:4
149:5 176:8
shed 72:25
sheet 125:3 228:7
228:10,11,16,20
229:1 230:10
SHERTZER 3:17
shopping 26:16
short 18:20,22
show 115:6 219:12
showing 109:9
115:10,17 201:10
shows 96:6,7,8,11
101:25 116:6
123:21 124:3,7,9
124:22
side 37:8 144:11
196:22
sideways 196:10
sign 114:16 228:11
228:13,17
sign-off 114:10
signature 228:19
230:1,12
signed 133:9,11
141:19 147:2
151:4 162:14
185:7
significant 172:21
signing 228:14
signs 114:17 133:4
similar 206:13
Similarly 75:24
simply 80:13
single 13:1,7 14:1
sir 38:6 115:2
sit 210:9,19

site 6:7 35:21 36:8
66:25 70:18 73:14
75:12,14 77:18
87:5 104:11
118:10 121:6
135:5,13 157:7
174:25 183:12,14
183:25
sites 29:19 83:6
87:16 118:9
176:11,12,14,23
situation 208:7
six 10:22 11:16
30:3 112:5
Slack 25:18
Slater 202:15
slightly 97:15
slow 33:22
slowly 115:14
social 25:16
software 22:9 23:2
solely 49:17
somebody 23:19
94:4
somewhat 91:4
sorry 58:3 59:11,20
67:7 75:10 80:17
81:11 112:22
117:12 140:20
143:20 145:17
157:24 159:19
161:23 166:12
168:25 175:20
186:11 200:4
203:25 209:16
216:25
sort 13:7,9 48:10
48:14 72:25 74:10
116:3 118:13
134:5 152:10
160:2 173:13
178:21 212:16
sorts 118:12
sound 11:7,13
13:22 15:4
sounds 112:8

118:17
south 3:7 29:3
space 228:14
speak 18:24 63:8
148:16 198:20
199:8
speaking 53:10
speaks 47:20
special 26:16 30:5
113:14
specific 27:17 44:1
49:21 58:24 74:17
74:24 91:13
114:15 128:11
155:22 161:14
165:21 184:3
188:13 190:24
202:6 213:12
217:10,21
specifically 18:12
28:12 44:10 58:14
74:12 82:3 90:3
91:8 143:3 144:24
145:14 159:9
162:11,21 170:15
174:6 186:7
201:23 206:19
207:5,16 211:20
213:23 215:17
specifics 149:8
178:23
specified 53:25
54:24
spell 20:21 53:16
197:20
spirit 173:12
spoke 144:7 199:2
200:1
spoken 148:8
spreadsheet 176:13
177:22
square 90:21
SS 231:3
stack 68:4 86:9
89:7 92:4 100:18
147:5 156:13



165:3 193:15
**stacked** 141:10
**Stacy** 4:5
**stakeholders** 118:8
**Stamford** 28:20,24
  69:21 71:24 72:3
  77:14 83:6,7
  100:3 101:15
  135:22
**stamp** 6:9,10,12,13
  6:15,16,18,19,21
  6:22,24 7:4,5,7,8
  7:10,11,13,14,16
  7:17,19,20,22,23
  8:4,5,8,9 68:7
  76:23 79:13 86:12
  87:9 89:10 92:7
  100:22 103:5
  110:24 128:6
  141:13 143:15
  147:8 150:17
  153:12 156:16
  162:4 163:6
  164:11 165:6
  168:18 180:8
  182:11 184:23
  187:4 193:18
  194:12 196:1
  223:1 224:18
**stamped** 68:17
  90:17 93:24
**stand** 59:9 122:4
**standard** 41:20
  46:4,8,13 47:2
  118:21
**standards** 40:6
  41:15,15,19
**standing** 13:8
  74:11
**stands** 70:21
**start** 58:3 69:18
**started** 119:15
  129:3
**starting** 207:20
**starts** 15:25 154:3
**state** 2:7 10:6 15:12

202:17 206:19
  231:2,8
**states** 1:1 26:13
  29:9 172:12,14
**stating** 79:21 188:1
  209:9
**status** 157:19
  158:13 159:10
**stay** 93:9
**Stein** 3:4 21:8,12
  21:12 22:4 33:10
**steps** 21:22 67:22
  125:22 161:4
  177:25 178:4
  187:13
**stipulate** 13:25
**stipulations** 13:17
**stop** 129:6,13 199:4
**stopped** 162:24
**storage** 23:1
**store** 134:25 135:3
**storefront** 113:17
**story** 39:18,22
**Stream** 151:8
**Street** 3:8
**strike** 218:8
**subject** 45:3 68:17
  71:1,2 87:16 93:5
  167:10,16 218:11
  228:15
**subjects** 31:25 32:6
**submit** 57:10,23
  58:8 59:17 61:16
**submitted** 56:24
  60:21 61:6,9,15
  61:19,20,22,24
  62:4 63:2 64:4
  111:14,22 112:1
  121:5 125:24
**subsequent** 62:19
  123:24
**substance** 198:21
  228:5,9
**substantially**
  203:15 204:8
**Sugaski-Hartman**

69:19 71:19 72:16
  73:1,6
**suggest** 76:7
**suggestion** 126:16
**Suite** 3:8
**sum** 109:16
**summary** 114:23
  117:10
**support** 9:1 28:15
  29:12 30:10
  209:25 210:23
**supporting** 125:14
  125:14 126:2,24
  126:25 127:4
**supports** 26:7
**suppose** 14:7
**supposed** 120:18
  154:24
**sure** 25:11 27:5
  30:16 37:12 42:24
  53:14 57:19 62:3
  73:2 92:14 97:13
  101:4 118:4,19
  119:18 120:16
  123:4 126:12
  153:19 155:24
  156:23 171:7
  180:14,23 181:23
  181:25 186:22
  194:6 201:15
  202:22 204:2
  220:2,22 221:22
**sustainability** 28:9
**sworn** 10:1,5
  231:10
**synonymous**
  212:16
**system** 96:11,15,19
  96:20,24,25 97:3
  97:15,22 109:12
  110:4,7 116:9
  127:20

---

**T**

**T** 6:1 7:1,10 8:1
  130:1 156:14,17

156:20 231:1,1
**table** 96:7
**take** 11:10,11 33:23
  51:8 53:19 65:13
  67:22 69:14 72:15
  76:6,7 125:22
  128:15 131:23
  166:14 173:23
  177:25 178:3
  179:21 189:12
  218:18,21,22
  219:18 223:5,7
**taken** 2:3 76:16
  129:20 180:2
  219:2 222:1
**talk** 22:20 28:10
  37:6 91:22 118:8
  128:13
**talked** 38:3 113:14
  135:23 170:8
  177:14 186:18
**talking** 38:21 45:4
  62:3 92:1 132:11
**taxes** 133:17
**team** 19:13 20:15
  20:17 26:6,6,21
  27:6,11,18,20
  28:14 30:2,6,9,10
  30:15 72:1 83:14
  140:1 183:20
  200:14
**tech** 4:9 18:7
  196:20 220:3,23
  221:4,13,16,23
**technical** 15:4
**technically** 83:13
**technique** 46:8
  47:7 48:1,4 63:20
  63:25 64:2
**technology** 196:9
  219:12
**telephone** 142:14
  175:9,12 178:19
**tell** 12:13 33:3
  37:25 38:8,13
  43:25 46:11 48:6

68:13 79:19 92:18
  97:9 104:15 111:6
  118:18 138:14
  140:11 142:13,18
  144:3 164:20
  166:7 171:13
  185:6 187:11
  196:7 206:8
  207:16 213:10
**telling** 29:4 122:16
  160:18
**tenant** 56:20
  171:21,23 172:3
**tenant's** 172:1
**tenant-selected**
  57:4
**Tener** 51:17,24
  62:14 64:2 144:7
  144:8 147:17
  149:20 170:4,18
  170:21 172:22
  176:18 188:22
  189:25 195:4
  206:25 208:3
  209:18,23 210:11
  210:21,22 212:2
**Tener's** 170:10,16
  172:7 211:23
**tense** 72:2
**tenure** 72:18,20
  73:3,9,17 74:4,7
  74:18,23,23 75:6
**term** 15:4 46:17
  54:3,22 56:1
  57:16 62:4,13
  74:6 75:21 84:1
  100:13,16 113:5
  120:23 121:1
  123:23 124:6,8
  143:7 154:9
  167:14,19,25
  168:11 171:10
  215:22 217:7
**terms** 21:24 32:9
  39:18,22 76:1
  85:17 104:3



112:16,18 142:24
189:17 207:1
217:3
**territory** 83:7
**testified** 10:7 15:6,9
42:19 49:2 60:20
65:20 84:24
212:18
**testify** 17:18,23
224:10
**testifying** 15:1 16:9
19:4
**testimony** 11:16
20:7 191:19
228:14 231:12
**Texas** 12:21
**text** 9:10 25:14
**Thank** 14:13 76:13
99:11 179:23,24
211:8 218:23,24
**thing** 21:23 41:8
98:15 142:19
**things** 13:6 30:17
45:4 97:20 145:1
170:8 178:2
204:15 211:11
222:7,9,11
**think** 13:13 14:3
23:4 29:22 31:13
37:5 39:21 44:12
62:5,9,16 70:16
73:10 77:15 88:4
93:21 103:16
105:3 108:10
111:14 114:22,23
118:15 121:18
124:24 129:16
135:15 136:4
149:4 160:12,18
160:22 162:19
165:19,22 171:6
173:11,15 174:20
174:24 176:17
177:21 178:2,21
195:2,5 202:10
203:7 205:4

214:18 218:17
219:16,17,19
220:25 221:1
225:8,19
**third** 26:13 52:12
52:21 53:1,13
55:3,18,19 56:19
57:3 75:11 144:12
144:20 145:6
146:6 147:18,22
155:5 164:24
189:16
**third-party** 225:25
**thought** 151:12
167:3 184:13
222:9,18 224:10
224:13
**three** 36:12 57:10
57:22 58:7 59:3
59:16,25 60:9
91:4 109:16 129:4
134:1 155:2,4,5,9
155:19 187:21
188:7 193:12
**three-appraiser**
116:9 142:3 173:5
**throws** 110:11
**time** 11:9 13:2,7,12
13:14 14:1 15:6
17:7,9 22:2 33:23
36:9 37:9 52:20
52:24 53:25 54:24
67:6,8 69:14
71:25 73:15,20
74:19,19 76:10
88:17 89:5,20
99:13 100:15
101:14 105:3,25
107:14 112:9
118:22 120:24
128:11,18 129:11
132:22 145:2,4,15
146:5 147:21
148:25 156:6
157:18 171:11
174:12 182:2

199:6 200:20
206:24 214:5,5,7
214:7,19 215:1
217:13 218:18
220:16 222:20
225:18 226:10
227:2
**timeframe** 143:4
**timeframes** 145:1
186:23
**timely** 55:5,12,15
**times** 10:21 11:16
18:2,4 174:15
209:1 214:1
**timing** 81:24
174:20 188:14
**title** 20:23 25:25
77:13 82:22 157:4
**today** 13:14 16:16
19:4 25:10 71:6
210:9,20 225:14
**today's** 18:1
**told** 25:10 144:12
151:5 161:7
203:21
**Tom** 4:7 62:14 64:1
141:20 144:7,8
147:17 149:4
170:3,3,9,16,18
172:22 173:9
176:18 178:4
184:5,6 187:16
188:22 189:25
208:2 211:23
**Tom's** 149:6
**tomorrow** 16:1
**top** 40:17 66:14
69:24 94:21
103:24 104:4
112:13 115:3
116:12 123:22
124:2,3 132:3
196:20
**topic** 17:22 157:23
173:6 177:2
202:11

**topics** 13:4 17:14
17:20
**totally** 173:17
**tough** 114:6
**toured** 174:25
**trade** 75:13,22 76:1
**traditional** 113:8
113:11,16
**traffic** 76:2
**Trailing** 121:16
**transaction** 88:16
114:16 161:17,18
**transactions** 188:3
**transcript** 8:14
14:6 60:18 69:8
126:6 201:16
222:8
**transcription** 230:7
**transfer** 201:11
225:9
**transmitted** 95:24
**transmitting**
130:12
**trips** 175:2
**true** 210:19 230:7
231:11
**truthfully** 19:4
**try** 41:3 56:9
125:23 128:16
137:7 177:4
197:16
**trying** 36:4 84:24
128:10 176:24
177:3 194:24
195:2 203:20
**TTM** 104:4 105:7
108:24 109:12
**turn** 23:13 38:4
51:7 71:15 87:8
90:25 121:10
123:15 132:2
134:16 166:10
179:20 200:23
205:25
**two** 14:24 28:19
53:9 61:17 63:1

98:14 105:17
109:18 110:3,9
112:6 146:22
155:11 159:12
165:20 173:17
178:2 181:12,15
213:17 221:1
225:14
**type** 63:20 113:15
114:18 178:10
**types** 22:25 76:1
**typical** 91:20
**typically** 116:4
152:7 213:24
214:21

_____

**U**

**U** 7:11 161:23
162:2,5,9
**U.S** 26:8 28:16,18
30:15,15 100:8
114:1 119:2
200:21
**ultimate** 110:10
**ultimately** 149:9
150:5 160:23
217:15
**unable** 141:25
142:5
**uncovered** 91:5
**underlying** 173:11
**understand** 11:5
23:6 25:11 31:20
48:7 60:5,14
62:10 63:12 70:2
95:23 96:3 104:3
115:9,16 134:24
144:8,19 153:2,5
153:22 161:2
166:16,21 171:13
191:7,12 192:18
212:11 216:24
217:2,15
**understanding**
46:7,12 47:17
48:6,8 73:24



105:13 113:12
116:16 134:2
139:22 141:2
145:21 148:18
159:1 163:1,18
166:4 169:3,12
175:25 181:11
183:23 184:12
185:24 195:7
212:23 225:24,25
**understands** 62:8
**understood** 63:25
65:4
**unencumbered**
172:15 206:20
**unit** 27:18,20
**United** 1:1 26:13
**universe** 40:11
**University** 15:19
**unrelated** 14:25
**update** 161:16
**updated** 119:19
187:24
**upload** 22:11
**uploaded** 22:6,9,22
23:8 220:1
**Url** 195:19
**USCG** 100:5,7
**use** 13:14,16 25:16
39:3,17 46:14
47:8 88:25 147:2
148:9,16 149:25
150:4,6 152:7
202:17 205:13
209:23 211:5
**uses** 39:14 70:1
163:14
**USPAP** 41:19
**usual** 44:20 211:13
211:17
**usually** 76:5

_____ V _____

**v** 1:8 7:13 164:9,12
165:12 166:10,11
166:12 168:9

**V(a)** 7:14 165:4,7
165:11
**vacant** 46:15
**vacant/redevelop...**
87:5
**vacate** 203:14
204:7
**valid** 212:4
**Valley** 151:8
**valuation** 47:7
50:16 65:10 66:6
66:25 67:17 70:16
71:2,3 80:23 88:6
88:15 89:4 91:16
91:21 92:1 117:4
117:16 148:23
149:6,17 170:10
170:17 171:2,9
172:9,18 188:2
225:25 227:10
**valuations** 70:18
89:20 101:22
**value** 38:10,19,24
39:2 46:15 47:8,9
48:11 49:20 51:18
51:25 57:11 59:18
60:2,10 62:14,20
62:22 63:2,3 64:4
64:12 65:15 66:3
66:11 67:10,17,23
71:5 79:4,22 80:5
81:13,21,22 82:5
82:14 85:23 87:16
88:21 90:16,21,22
91:18 92:2 94:22
95:4 102:17
116:19,21,24
117:20 123:18
124:12,15 125:5
140:24 142:1
154:6,16 155:2,12
155:14,21 156:10
162:12 163:15
167:6 168:24
169:10 170:24,25
171:4,4,17 172:13

172:14 173:18
176:16,19 177:5
180:16 182:4
185:17 187:15,24
187:25 188:22,25
190:11 193:24
194:2 215:22
216:3,6,10 225:22
226:3,3,6,17
**valued** 81:5 87:12
185:14 206:20
208:8
**values** 57:23 58:8
117:1 124:22,24
**valuing** 44:6 84:5
86:23 170:19
**Vanderbilt** 1:10
10:12,15 21:6
51:16 54:13 55:12
55:15,23 56:5,19
56:23 57:2,9 60:8
60:21 61:15,16
63:2 66:11,19
79:20 80:4 82:15
107:6 127:12,13
134:9 139:12
140:4,23 141:20
153:25 154:25
176:18 185:15
187:13 188:25
190:8,20,22,24
191:9,20 192:4
193:10 201:6,21
202:15,24 203:13
204:6,23 206:23
207:6 209:16,18
209:22 210:11,21
211:10 222:15
224:12 225:1,10
**Vanderbilt's** 51:24
66:4 82:5 144:9
147:22 202:8
203:20
**variety** 101:11
**various** 37:6
202:25 214:1

**vendor** 70:15
**venues** 26:16
113:14
**version** 94:1 180:15
182:6 194:6
**versions** 126:15
182:3
**versus** 102:25
**vertical** 197:1
**vice** 20:25 21:1
**Victor** 166:11,12
**video** 15:22 175:9
175:11
**VIDEOCONFE...**
1:16 2:2
**view** 70:18 86:25
191:20 197:7
**views** 219:24
**virtue** 13:18
**Vision** 118:1,4

_____ W _____

**W** 7:16 168:16,19
168:22 180:20
181:2,17
**Wachtel** 195:20
**WALDER** 3:4
**walked** 19:14,22
170:18 178:22
**walks** 134:14
**Walsh** 3:5 5:6 11:4
12:22 13:23,24
14:12 18:14,15,18
21:13 23:9 25:19
30:21 31:2,16
32:1,12 33:14
34:11,22 38:15
39:4,24 40:9,16
40:22 41:17,25
42:9,14 44:23
45:7,16 47:19
48:22 49:18 50:2
50:11 52:6,13
53:4 54:16,25
55:7 56:6 57:7
58:1,17 59:1,6,19

60:4,12,23 61:10
62:2 63:7 64:6,14
64:16,19 65:1,24
66:13 67:12,25
68:15 69:1,2 70:4
70:11 74:9 75:16
75:23 77:23 78:5
78:23 79:6 80:11
81:14 83:1,11
84:3,11,20 85:15
85:19 86:3 87:14
88:3,13,22 90:10
90:19 92:23 93:1
93:21 94:18 96:5
97:5,18,23 98:13
98:20 99:8 102:6
102:23 105:12
106:2,16 107:17
108:2,17 109:6
110:14 111:19,23
112:2,20 113:1,3
115:7,12,18 117:5
119:10 120:9
121:2 122:9,17
123:10 126:9,13
126:19 127:2,6,15
127:22 128:9
129:9 131:15
132:14 136:14,23
138:11 139:14
140:6 144:22
145:23 146:7,24
147:24 148:21
151:21 152:2,25
154:11,17 157:8
158:2,23 159:17
159:20 160:4,13
160:17 162:16
164:1 165:13
166:23 167:17
168:1 169:5,14
170:6 173:25
175:20 178:1
179:4,12 180:21
181:13,22 183:4
184:1 186:3



MAGNA
LEGAL SERVICES

188:19 190:16
191:2,11,22 192:6
192:14 193:9
196:8 197:4,13
198:23 199:17
201:4 202:1 203:5
203:19 204:13
205:3,15,22
206:10,17 207:12
210:6,14,25
211:19 212:5,25
213:19 214:10,17
215:3,11,16 216:4
216:17,23 217:9
217:19 218:5,13
218:23 219:10
220:13,25 221:10
221:15,17,24
222:3,5,22 223:4
223:11,14 224:15
224:21 226:18
227:6,19
**Walsh's** 43:9
**want** 12:23 13:5,8
14:4 15:23 21:15
33:14 35:14 40:23
42:1,15 60:17
73:2 74:11 75:10
93:17 117:6
128:21,25 129:14
134:16 195:1
199:2,13,15
201:15 219:16,21
220:5,7,8 221:21
**wanted** 50:13 140:2
147:22 166:5,20
166:22 173:20
177:6 184:14
219:12 222:6,10
225:23
**wants** 147:18
**wasn't** 14:22 24:2
24:11,12 47:15
57:16 101:5
119:19 125:8
143:21 144:25

145:13 149:9,10
149:14 169:1
**waste** 30:12
**water** 30:12
**way** 21:9 48:21
54:1 97:8 121:3
128:17 136:22
137:4 191:25
192:5 196:11
197:7 231:15
**ways** 91:21 98:14
**we'll** 86:10 92:5
93:9 100:19
129:15,15 161:22
164:9 168:15
193:15 208:2,2
220:25 221:20
**we're** 15:22 53:10
74:1 93:10,22
94:1 129:1 221:22
**website** 16:12
195:17
**weeds** 173:10
**week** 144:14
**weeks** 187:21 188:7
**went** 20:9 27:22
105:2 176:7
**WHEREOF**
231:17
**willing** 142:21
171:25
**withdraw** 21:19
23:10 60:16 67:7
73:24 120:10
123:12 154:12
163:20 179:6
215:12
**witness** 5:3 9:3 10:1
10:3 15:2 21:16
40:24,25 42:2,16
42:21 59:8 76:11
92:25 159:4 160:7
160:18,20 179:23
219:9 228:1,19
231:9,12,17
**WITNESSED**

230:14
**wmllp.com** 195:19
**wondering** 128:14
**word** 27:4 62:6
**words** 112:24
**work** 12:4 14:8
23:16,17 29:16
52:11 77:10 80:24
105:3 120:21
128:17 144:13
145:7,10,20
148:13 154:24
173:5
**worked** 21:10
77:14 84:4 99:13
150:4
**working** 148:7,19
151:20 152:1
223:21 224:1
**works** 99:23 100:2
108:12 130:22
139:18,22 144:4
**worst** 116:5 226:7
**wouldn't** 144:20
**write** 209:15
**writes** 69:23 71:2
72:17 73:1 80:4
87:19 100:5
104:17 105:5
144:6,11 147:17
148:7 151:3 152:5
152:20 155:16
166:13 167:2
183:10,18
**writing** 61:25
101:10 208:11,13
208:14,16,20,25
**written** 81:8
**wrong** 73:7 94:5
171:15 174:19
224:9
**wrote** 195:12
**www.MagnaLS.c...**
1:22 2:17

**x** 1:4,13 5:1 6:1 7:1
7:17 8:1 180:6,9
180:12 181:6,7,9
181:17,20

---

**Y**

**Y** 7:19 10:3 182:8
182:12,15,22,23
**year** 27:16 110:12
110:13,15,16
121:24
**yearly** 118:13
**years** 27:12,25
36:12 74:5 84:5
119:3 121:13
165:20
**Yeoman** 130:19,21
131:3
**York** 1:2 3:19,19
13:21 30:20 31:1
84:6 172:11 175:2
185:18 206:1,8
207:2,22 211:13

---

**Z**

**Z** 7:20 184:21,24
185:3 186:13
**ZFAs** 95:4
**zone** 201:22
**zoning** 77:17,20
78:3,12 79:2
149:19 172:16
206:5 208:9,9
226:13 227:5,9,11
**Zoom** 1:16 2:2 3:2
4:2 16:11 196:21
197:7

---

**0**

**000306** 6:14 86:12
**000342** 7:24 193:18
**000350** 6:15 89:10
**000579** 8:6 196:1
**000889** 6:24 141:13
**000939** 7:22 187:4
**001253** 7:12 162:4

**001705** 7:16 168:18
**002898** 7:6 147:8
**002909** 7:13 164:11
**002954** 7:7 150:17
**002998** 7:18 180:8
**003848** 8:8 222:23
223:1,12
**003852** 8:8 223:1
**006017** 8:10 224:16
224:18
**006025** 6:20 103:5
**006026** 93:24
**006028** 6:17 92:7
**006331** 6:21 110:24
**006375** 6:12 79:13
**006376** 6:11 76:23
**006447** 6:9 68:7
**006619** 7:21 184:23
**006636** 6:18 100:22
**007248** 6:23 128:6
**007582** 7:9 153:12
**007925** 7:15 165:6
**008061** 8:4 194:12
**030** 135:19
**07601** 3:9

---

**1**

**1** 16:20 17:15 56:18
59:2 113:2 187:20
188:17
**1,000** 75:12,15
**1.3** 170:24
**1:00** 129:3,19
**1:19-cv-06471** 1:3
**1:30** 129:16,20
130:2
**10** 5:5 74:5 83:13
83:19,21 84:16
92:4 99:6 127:12
129:4 162:15
163:14 171:18
206:1 218:22
222:14
**10-minute** 76:7
179:21
**10:00** 2:4



**100** 6:18
**10017** 3:19
**103** 6:19
**11** 11:25 12:15 76:9
   100:19 162:15
**11:30** 76:15
**11:40** 76:16
**111** 6:21
**12** 103:2 132:12
**12-month** 121:16
**12/18/2018** 121:4
**12:41** 183:9
**120** 54:2 55:25
**120-day** 54:15
**1247** 162:23 163:6
**125** 3:18
**126** 9:8
**128** 6:22
**12th** 87:1 112:6
**13** 17:15 110:21
**14** 93:20 103:17
   122:6,6,19 128:3
   138:17
**14-1/2** 137:25 138:2
   138:17,22
**14.5** 138:8
**141** 6:24
**143** 7:4
**147** 7:5
**15** 51:19,19 52:5
   141:10 156:7
**150** 7:7
**151,024** 108:12
**153** 7:8
**156** 7:10
**15th** 143:1 155:17
**16** 143:12,19
   188:17
**162** 7:11
**164** 7:13
**165** 7:14
**168** 7:16
**16th** 190:25
**17** 1:18 2:4 5:20 6:4
   33:5 147:5 169:17
   181:3,10 230:6

**173,000** 137:18
**17th** 180:18,19
**18** 112:3 150:14
   162:23 163:4
   195:11
**180** 7:17
**182** 7:19
**185** 7:20
**187** 7:22
**19** 153:9
**19-story** 203:1
**193** 7:23
**194** 8:4
**196** 8:5
**198** 8:7
**19th** 169:23 175:17
   177:11,16 178:14
   178:15 181:21
   183:2 184:5
   185:12,20,25
   186:10,14 207:21
   227:16

**2**

**2** 32:14 51:10 56:23
   189:3
**2:53** 180:1
**2:57** 151:3
**2:58** 103:18
**20** 76:8,9 128:12
   156:13 193:25
**20-ish** 12:16
**20-year** 65:14,17
   217:8
**200** 3:8
**2007** 15:17
**201** 3:10
**2013** 121:13
**2017** 67:2 69:24
   104:25 107:19
   110:16 120:14
**2018** 36:14 66:21
   67:1,19 91:11
   93:20 103:18
   105:1,4 107:19
   110:16 112:3

119:13,16,17
   121:13 122:14
   127:12 202:14
   222:14 223:17
   224:3,6,14 225:8
   225:16 226:11
**2019** 20:5,7 52:25
   61:21,23,23,25
   62:17 121:7 136:9
   143:8 146:14
   151:2 156:7
   163:12,23 169:18
   181:3,10 188:17
   193:25 194:21
   195:11 202:14
**2021** 1:18 2:4 5:20
   33:5 120:8 230:6
   231:18
**2024** 136:9
**2039** 203:15 204:9
   205:6,14,18
**20th** 151:13,14
**21** 3:8 120:8,14
   161:22,25 189:18
   190:2 191:15
   194:21
**212** 3:20
**22** 162:1 163:12
**222** 5:5
**223** 8:8
**224** 8:9
**226** 5:6
**23** 164:9 181:19
**23105** 135:1
**23rd** 185:25 186:6
   186:11,12,15
**25** 168:15
**25,125** 137:11
**250** 71:5
**26th** 231:18
**27** 182:8,21,23
**28** 93:24 184:20
   200:23 201:2
**28th** 164:22
**29** 202:12

**3**

**3** 17:16 35:18 90:25
   179:22 189:15
   191:13 202:14
**3,775,000** 105:20
**3,775,604** 105:7
**3:00** 179:19
**3:08** 180:2
**30** 122:13 193:15
   202:23 228:22
**30(b)(6)** 13:3 14:2
   16:17 40:25 74:13
   213:2
**30(b)6** 2:2
**300,000** 71:5 90:23
**300,800** 90:18
**302** 87:9
**30th** 66:3 121:12
**30X100223700**
   231:21
**31** 194:9 202:14
**316,800** 117:2
**32** 6:5 195:23
   203:12 204:3,5
   205:7
**327** 115:1,3 117:25
**329** 123:16
**33** 198:5
**331** 125:13
**347** 90:17
**35** 6:6
**362** 105:19
**362,600** 105:6
**37** 6:8
**370,000** 107:22
   108:1
**370,682** 107:16
**3852** 223:13
**396,000** 88:2

**4**

**4** 17:16 37:15 87:20
   102:1,18 106:1
   108:10,21 116:14
   116:22 117:11,13
   132:6,10,11,12

138:7 171:18
**4,138,204** 105:8
**4,245,840** 122:15
**4,609.41** 139:3
**4/8/2019** 123:25
**4:10** 219:1
**4:20** 218:22
**4:24** 219:2
**4:28** 221:25
**4:31** 222:1
**4:42** 227:23
**40** 165:3
**41** 187:1
**42** 180:6
**46** 205:25 206:1,9
**46,000** 109:10
**488-8200** 3:10

**5**

**5** 68:4 69:24 90:17
**5-year** 167:14
**5:11** 93:20
**50** 84:19 85:2 171:6
   209:24 210:23
**50,000** 202:16
**537,000** 107:20
   122:2
**537,974** 122:15
**538,000** 106:15
**580,000** 138:8
**59** 206:22
**594,000** 88:2

**6**

**6** 9:8 76:20 87:21
   102:1,19 116:14
   116:22 117:12,14
   151:2
**6024** 103:22
**6028** 94:14
**616,212** 110:13
**624-6221** 1:22 2:17
**633,600** 117:3
**65** 209:14,15,17
**655-3500** 3:20
**6634** 93:14,15



101:8
**68** 6:9

---
**7**

**7** 79:10 113:2
116:14,22
**70** 218:17
**7202** 131:24
**7207** 132:2
**7220** 133:12
**7222** 133:7
**7241** 134:17
**740596** 2:9
**77** 6:10
**78** 211:9
**780,000** 127:14,21
**79** 6:12
**7th** 3:18

---
**8**

**8** 86:9 116:15,22
136:9 143:8 163:5
210:1,24 211:3
**8:52** 164:22
**80** 90:21 116:13,19
170:25
**800,000** 74:5
**840** 6:6 35:20 36:7
50:1 66:20 67:10
67:23 72:18 77:18
77:21 78:3,13
85:6,10,17 86:2
86:23 87:12 91:12
92:21 100:14
119:8 136:11
153:24 157:7,20
158:16 159:16
161:20 163:23
170:17 172:9
212:19 216:11,14
216:22 223:22
224:1
**86** 6:13
**866** 1:22 2:17
**89** 6:15

---
**9**

**9** 87:8 89:7 132:20
136:8 181:18
**9,900,000** 87:13,17
94:22 95:1 102:17
**9.9** 102:1 117:4,11
117:13,17 163:15
**9:59** 195:11
**90** 76:4
**92** 6:16
**936** 215:6,14
**957,000** 82:14
**975,000** 80:6 81:13
81:20 82:6 222:17
**99-year** 201:7

