UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X          19 Civ 06471 (DLI) (SLT)
MCDONALD'S CORPORATION,

                              Plaintiff,                            **Oral Argument Requested**

          v.

VANDERBILT ATLANTIC
HOLDINGS LLC,

                              Defendant.
--------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Meister Seelig & Fein LLP
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500

*Attorneys for Defendant*
*Vanderbilt Atlantic Holdings LLC*

April 29, 2022

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

    A.   The ORA controls the determination of the FMV ............................................ 3

    B.   Vanderbilt acquires the "sandwich" lease position ........................................... 5

    C.   The parties' dispute and the September 2019 Agreement ................................. 5

    D.   The party-appraisers' estimates of FMV ......................................................... 6

    E.   Vanderbilt did not corrupt Tener's appraisal ................................................... 7

    F.   The M.M.B. – Vanderbilt Lease is an irrelevant smokescreen ......................... 9

ARGUMENT ..................................................................................................................... 10

    I.   MCDONALD'S CANNOT CARRY ITS BURDEN OF PROOF .................................. 10

        A.   The party-appraisers simply hold different opinions on whether the zoning potential of the Premises can be feasibly exploited over the remaining term ...... 12

        B.   Regardless, *936 Second Ave.* does not apply ....................................... 17

        C.   McDonald's prevented the "collaboration" issue from being resolved in the order the parties explicitly agreed to in the September 2019 Agreement ............. 19

        D.   Neither Tener nor Locatell sought the M.M.B-Vanderbilt ground lease in connection with their FMV appraisals ................................................................. 21

    II.   VANDERBILT'S COUNTERCLAIM IS IRREFUTABLE ........................................... 23

CONCLUSION ................................................................................................................... 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*936 Second Ave. L.P. v. Second Corp. Dev. Co. Inc.*,
   10 N.Y.3d 628 (2008) ................................................................................................ passim

*Advanstar Commc'ns Inc. v. Beckley-Cardy, Inc.*,
   No. 93-CV-4230 (KTD), 1994 WL 176981 (S.D.N.Y. May 6, 1994) ................................... 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................. 10, 11

*Campeau Corp. v. May Dep't Stores Co.*,
   723 F. Supp. 224 (S.D.N.Y. 1989) ...................................................................................... 16

*Lin v. Table for Eight, Inc.*,
   No. 19-CV-01119 (DLI) (MMH), 2022 WL 74165 (E.D.N.Y. Jan. 7, 2022) ......................... 10

*Maxon Hyundai Mazda v. Carfax, Inc.*,
   726 F. App'x 66 (2d Cir. 2018) ........................................................................................... 11

*McAllister Bros. v. A & S Transp. Co.*,
   621 F.2d 519 (2d Cir. 1980) ................................................................................................ 16

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ................................................................................................ 10

*McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*,
   858 F.2d 825 (2d Cir. 1988) ................................................................................................ 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................ 16

*Omni Tech Corp. v. MPC Solutions Sales, LLC*,
   432 F.3d 797 (7th Cir. 2005) .............................................................................................. 16

*Osagiede v. Carlo Shipping Int'l Inc.*,
   No. 18-CV-07358 (DLI) (SJB), 2022 WL 43750 (E.D.N.Y. Jan. 5, 2022) ............................ 10

*Parker v. Mandarich Law Grp., LLP*,
   No. 19-CV-6313, 2021 WL 2351177 (E.D.N.Y. June 9, 2021) ............................................ 11

*Parker v. Sony Pictures Entm't, Inc.*,
   260 F.3d 100 (2d Cir. 2001) ................................................................................................ 11

*Severstal U.S. Holdings, LLC v. RG Steel, LLC*,
    865 F. Supp. 2d 430 (S.D.N.Y. 2012).........................................................................16

*Talegen Holdings, Inc. v. Fremont Gen. Corp.*,
    No. 98-CV-366, 1998 WL 513066 (S.D.N.Y. Aug. 19, 1998)..................................16

*Velasquez v. United States Postal Serv.*,
    155 F. Supp. 3d 218 (E.D.N.Y. 2016) .....................................................................11

*Weg v. Macchiarola*,
    995 F.2d 15 (2d Cir. 1993)........................................................................................10

## **Statutes**

9 U.S.C. § 1.................................................................................................................16

## **Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................10

Defendant, Vanderbilt Atlantic Holdings LLC ("Vanderbilt"), submits this memorandum of law in support of its Motion for Summary Judgment dismissing the Complaint of Plaintiff, McDonald's Corporation ("McDonald's"), and awarding Vanderbilt summary judgment declaring that McDonald's failed to cooperate in the process set forth in the Option Rent Addendum to the parties' lease (the "Lease") and, as a result, the Fair Market Rental Value ("FMV") of the leased premises during the first five-year option term is set at $1,348,000 per year.

## PRELIMINARY STATEMENT

McDonald's commenced this action for a declaration that Vanderbilt "failed to cooperate" with a fair market rental value rent re-set process set forth in the Lease's "Option Rent Addendum" (the "ORA"), which sets the rent that McDonald's must pay during the twenty-year option term of its Lease (from 2019 to 2039) for real property at 840 Atlantic Avenue (the "Premises"). McDonald's cannot carry its burden of proof.

There is not a shred of evidence supporting the claim that Vanderbilt failed to cooperate in the process set forth for resetting McDonald's rent during the option term. All relevant witnesses have testified that no improper directions were given to Vanderbilt's appraiser Thomas Tener ("Tener"), and Tener has confirmed that his conclusions were his own. Vanderbilt did not assert privilege and turned over all of its attorney Morris Missry's communications with Tener.

In all events, McDonald's problem with Tener's appraisal relates to the application of the rule set forth in *936 Second Ave. L.P. v. Second Corp. Dev. Co. Inc.*, 10 N.Y.3d 628 (2008), which, "absent an agreement to the contrary," requires that an appraiser take into account the restrictions contained in the subject lease. However, *936 Second Ave.* does not apply here, as McDonald's urges, because doing so, according to McDonald's, requires the appraisers to disregard "all of the uses to which" the hypothetically vacant property can be put, and that in turn requires the Court to

1

disregard the express terms for the ORA, which call for the appraiser to consider exactly that — "all of the uses to which the property can be put…"

McDonald's alternative grounds for finding Vanderbilt "failed to cooperate" are equally unavailing. The issue whether the appraisers should "collaborate" does not raise a triable issue of fact because the plain text of the ORA requires that the appraisers' written FMV opinions were to be issued non-collaboratively. In any event, the parties modified the ORA in September 2019 — after the "collaboration" issue emerged — and agreed to hire Marc Nakleh ("Nakleh") as the neutral third appraiser by October 7, 2019, and then address that issue with Nakleh, but McDonald's refused to hire Nakleh and thus cut off the process, without seeking an order tolling the agreed-upon deadline to hire Nakleh. By breaching the September 2019 agreement, McDonald's became the non-cooperating party.

Nor does the M.M.B.-Vanderbilt ground lease for the Premises raise a triable issue as McDonald's contends. The valuation of the *ground lease* has nothing to do with the valuation of the *land* (*i.e.*, the Premises). Even under McDonald's revised theory, the rent payable under the ground lease is not a "comp" that the party appraisers should have reviewed. Under the M.M.B. lease, rent begins after McDonald's leaves and is an accommodative construction-period rent, which recognizes Vanderbilt's multi-million-dollar commitment to re-zone and redevelop the property. In any event, the party-appraisers never sought the ground lease — even though a memorandum thereof appeared of record — and both issued their written FMV opinions without any disclaimer mentioning the alleged non-furnishing of the M.M.B.-Vanderbilt ground lease.

In contrast, Vanderbilt has made out an irrefutable case for the granting of summary judgment on its counterclaim. The parties entered into an agreement on September 16, 2019 unconditionally obligating both parties to engage Nakleh by October 7, 2019. McDonald's

violated that agreement, which modified and supplemented the ORA, without first seeking a tolling or stay order from the Court.  As a result, McDonald's caused vast delays and failed to cooperate.

In consequence, the Court should enter an order granting Vanderbilt summary judgment dismissing McDonald's claim and granting Vanderbilt summary judgment on its counterclaim, finding that McDonald's failed to cooperate and that Vanderbilt's appraisal alone controls.

## STATEMENT OF FACTS

In 1998, McDonald's signed a lease for the Premises (the "Lease").  The ORA was attached to the Lease.  The ORA provided at the commencement of the first option term (in 2019), the rent will be set at eighty percent of the then FMV for the first five-year option term.  Thereafter, the rent increases an additional fifteen percent during each of the next three five-year periods.  Thus, the FMV determination controls the setting of rent for the entirety of the aggregate twenty-year optional term.  (Rottenberg Decl. ¶¶ 4, 10.)

### A.  The ORA controls the determination of the FMV

The ORA explicitly states that the rental value of the Premises shall be assessed "as the price which an average well-informed tenant would pay and an average well-informed landlord would accept, exclusive of Tenant's improvements, *knowing all of the uses to which the property can be put…*" (italics added).  In other words, the FMV is predicated on the Premises being valued as if it were vacant land taking into account the highest and best use to which the property can be put (*i.e.*, improved) under then applicable zoning laws and regulations.  (Rottenberg Decl. ¶ 5, 18.)

The ORA further provides that if Vanderbilt and McDonald's cannot agree on FMV, each side must appoint a party-appraiser to estimate the FMV of the premises.  If the party-appraisers' estimates of the FMV differ by more than fifteen percent, the two party-appraisers are required to jointly appoint a third appraiser to resolve the dispute.  (Rottenberg Decl. ¶ 6.)

If a third (neutral) appraiser is required, the ORA goes on to specify that the decision of the three appraisers of the FMV shall govern, or if they cannot reach a unanimous decision, the decision of a majority of the three appraisers shall govern. If a majority decision cannot be reached, the ORA specifies that the separate (and conflicting) appraisals of FMV by the three appraisers shall be averaged and that average determines the FMV. (Rottenberg Decl. ¶ 7.)

Specifically, the ORA provides:

> If, … the two appraisers can agree to the FMV not differing by more than 15%, then an average of the two appraisals shall be used for the Fair Market Rental Value of the Demised Premises. If the two appraisals differ by more than 15%, then the two appraisers shall appoint a third appraiser… The three appraisers so appointed shall then … estimate, by means of a letter opinion of value, the FMV. The decisions of the appraisers, or a majority of them, shall be binding upon the parties. If the appraisers, or a majority of them, cannot agree on the FMV, it shall be determined by adding all three estimates and dividing the total of all three estimates by the number three.

(Rottenberg Decl., Exhibit D, page 1.)

In determining the FMV of the Premises as if vacant, at the property's highest and best use, the ORA specifies that the party-appraisers (and the third appraiser if one is needed) shall utilize the "standard market data technique for valuing vacant land" (which involves gathering and analyzing "comparable sales" from other actual recent past transactions for similar properties in similar neighborhoods) and thereafter adjusting for "comparable leases," but if "adequate comparable leases are not available," the ORA specifies that the "land residual technique" shall be utilized. The land residual technique involves valuing the subject (hypothetically vacant) property as if developed to its highest and best use, and then, after deducting from that value, the hard and soft costs of construction fixing the vacant land value as the remaining or "residual" value.

The ORA also provides:

If one of the parties fails to chose [sic] an appraiser within the specified time period or fails to cooperate in any way so that the process described above cannot be

4

completed prior to 120 days of the expiration of the primary term of this Lease, the FMV of the one appraiser chosen by the cooperating party shall be used to determine the rent during the extension periods.

(Rottenberg Decl., Exhibit D, page 2.)

## B. Vanderbilt acquires the "sandwich" lease position

In 2017, M.M.B. Associates LLC ("M.M.B."), as successor in interest to Anthony Musto as lessor, and Vanderbilt as lessee entered into a lease transaction pursuant to which Vanderbilt became the ground lessee of the Premises, subject to the pre-existing Lease with McDonald's. In consequence, McDonald's became Vanderbilt's sublessee, and continued to occupy the Premises under the Lease. (Rottenberg Decl. ¶ 11.)

## C. The parties' dispute and the September 2019 Agreement

McDonald's exercised its option for the first option term. The parties, however, could not agree on the FMV and each party appointed an appraiser. McDonald's appointed Sharon Locatell ("Locatell") and Vanderbilt appointed Tener. Locatell's and Tener's estimates of the FMV differed by more than fifteen percent and, in May 2019, Locatell and Tener selected Nakleh as the third appraiser. (Rottenberg Decl. ¶¶ 29, 39, 40.)

Although Locatell and Tener selected Nakleh as the third appraiser, the parties disputed how Nakleh would perform his duties. Vanderbilt contended that the ORA required Nakleh to independently appraise the Premises and issue a written opinion of the Premises' FMV. McDonald's, in contrast, believed that the ORA required the third appraiser and Locatell and Tener to "collaborate," *i.e.*, discuss the party appraisals before the third appraiser issues his written estimate of the FMV. McDonald's also complained that Tener did not prepare his appraisal in accordance with the instructions set forth in the ORA. (Rottenberg Decl. ¶¶ 43, 74, 85.)

On September 16, 2019, in an attempt to resolve these disputes, the parties signed an

agreement on McDonald's letterhead (the "September 2019 Agreement"), which, among other things, designated Nakleh as the agreed-upon third appraiser and unconditionally obligated both parties to "engage" Nakleh within 21 days, *i.e.*, by October 7, 2019. The September 2019 Agreement provided:

> 1.      Within three (3) weeks from the date of this letter, each Party's appraiser will send to the other Party's appraiser his or her respective (i) updated letter opinion of value estimating each appraiser's Fair Market Rental Value as defined in the Option Rent Addendum and stating the methodology of valuation and conclusions; and (ii) identifying the comparable transactions on which the conclusions are based.
>
> ***
>
> 3.      The Parties have selected Mark [sic] Nakleh as the third appraiser pursuant to the terms of the Lease and agree to engage Mr. Nakleh within 21 days of this agreement. The parties further agree that their appraisers shall jointly communicate with Mr. Nakleh that the Parties intend to retain him upon agreement regarding the process set forth in the Lease. Neither Party, their appraisers, nor other representatives shall engage in ex parte oral or written communications with the third appraiser without the presence of the other Party or its representative.

(Rottenberg Decl., Exhibit AA at page 1.)

### D.  The party-appraisers' estimates of FMV

Thereafter, Locatell and Tener met in late September 2019 and exchanged their final appraisals. Locatell, estimated the FMV at $350,000 per year (making the rent, at 80% thereof, during the first five-year option term, $280,000 annually). Vanderbilt's appraiser, Tener, estimated the FMV at $1,348,000 per year (making the 80% rent $1,078,400). (Rottenberg Decl. ¶¶ 20, 48.)

Locatell concluded that the highest and best use to which the (hypothetically vacant) property could be put was as it is currently used, namely a "pad rental site" for a quick service restaurant with ground level customer parking or other similar tenant. In contrast, Tener concluded that the highest and best use to which the (hypothetically vacant) property could be put, during the remaining twenty-years of the option term, would be to develop it to the full extent allowed under applicable zoning law as a two-story retail project. That is, Tener concluded that because the

maximum zoning potential of the property was only a two-story structure, such a small, inexpensive structure could be feasibly built by a tenant who had only twenty years of remaining term. The difference of opinion between the party-appraisers resulted because, once it was agreed that the Lease term would be considered under *936 Second Ave.*, the two appraisers disagreed over the highest and best use to which the (hypothetically vacant) property could feasibly be put during the remaining twenty-year option term. (Rottenberg Decl. ¶¶ 23, 27, 28.)

At the time of the September 2019 Agreement, while the parties had not agreed upon the procedures to be followed by the three appraisers, the parties nevertheless expressly agreed, without condition or qualification, that they each would "engage" Nakleh within 21 days of the September 2019 Agreement, that is, by October 7, 2019. Vanderbilt was committed to engaging Nakleh by October 7, 2019 but McDonald's refused to do so. Thereafter, McDonald's filed this action on November 15, 2019. (Rottenberg Decl. ¶¶ 31, 51.)

**E. Vanderbilt did not corrupt Tener's appraisal**

Discovery has established that Tener came to his own conclusions regarding the FMV without influence from Vanderbilt. Tener testified that his estimate of the FMV was not influenced by anything that Vanderbilt wished him to conclude with respect to the FMV. At his deposition, Tener testified that Vanderbilt did not tell him the "range of valuations it was looking for." (Tener Dep. at 95/14-95/16.).[1] Indeed, when McDonald's counsel followed up at Tener's Deposition, Tener replied, "I don't recall any discussion of value." (Tener Dep. at 96/8-96/13). Tener also testified that neither Morris Missry nor anyone else told his firm, KTR, what appraisal method would be used to determine the [FMV]." (Tener Dep. at 96/14-96/19.).

After Tener prepared his appraisal, he sent it to Morris Missry, Vanderbilt's attorney, and

---

[1] Citations to deposition transcripts will be expressed as follows: [Deponent] Dep. [page]/[line] to [page]/[line]. Copies of the deposition transcripts are attached to the accompanying Declaration of Howard Koh.

copied Vanderbilt's principal Sam Rottenberg ("Rottenberg") asking if they had comments on the report. Missry did not comment, but Rottenberg wrote in an email, "The only comment (to the extent I have one) is that perhaps there might be a little room to be a bit more aggressive on the residential valuation." (Tener Decl., Exhibit 33.) When asked at his deposition about this at his reaction to Rottenberg's comment, Tener testified his reaction was "[s]ame as I have to any client, the things that I'm not in agreement with them in terms of their viewpoint on value, I'm the professional, I don't -- if you want to present facts to me I will consider them but if you say things like that I basically ignore them." When asked if he, in fact, ignored Rottenberg's comment, Tener said he did. (Tener Dep. 120/19-121/14.)

Tener also testified that no one suggested how he should estimate the market value of the Premises or the ground rent percentage:

> Neither gentlemen [*i.e.*, Rottenberg or Missry] suggested anything about how I appraise the property in terms of what methods, what approach. The input that Morris Missry gave me was limited to the applicability of the *Second Avenue* case, the input from Sam was limited to what you saw, some critiques of whether I was high enough in his opinion of land value. Nothing about methodology or appraisal techniques. That was left up to me, the expert.

(Tener Dep. 131/13-131/23.)

Rottenberg and Missry corroborated Tener's testimony. Rottenberg testified that KTR did not ask him how FMV was supposed to be calculated. (Rottenberg Dep. at 232/13-232/18.) Rottenberg further testified that he did not give Tener any instructions on how to prepare his valuation. (Rottenberg Dep. 253/12-253/16.)

Similarly, when asked what his goal was with respect to the rent re-set process, Missry testified: "My goal was to advise my client on the process and the interpretation of the particular lease clause. I don't have any skin in the game in terms of the highest rent, the lowest rent, the average rent. It's not relevant to me." (Missry Dep. 40/16-40/22.)

Missry also testified that he did not discuss any appraisal methods with Tenner. (Missry Dep. 79/13-79/19 and 91/6-91/15.) During his deposition Rottenberg testified:

> Q. So you left it to Tom to determine how the property should be appraised in accordance with the Option Rent Addendum to the lease?
>
> A. I left it to Tom and to the attorney, yes.

(Rottenberg Dep. 253/21-254/2.) Rottenberg also denied that he directed KTR to use the "land sales comparison approach." (Tener Dep. 260/15-261/13.)

### F. The M.M.B. – Vanderbilt Lease is an irrelevant smokescreen

McDonald's complaint erroneously conflates the value of the ground lease with the value of the land. That is, the ORA requires that the FMV be set at 80 percent of "the Fair Market Rental Value of the *Demised Premises*" as of the commencement of the first option term. Recall that the Lease was entered into in 1998, two decades before the M.M.B.-Vanderbilt "sandwich" ground lease was entered into, and therefore at that time Anthony Musto (the original lessor) owned the land, and the land was the "Demised Premises." (McDonald's built the building after entering into the Lease with Mr. Musto.) As such, the appraisals by both party-appraisers (Tener and Locatell) value the land (and the rental value of the land), which has nothing whatever to do with the value of the M.M.B.-Vanderbilt ground lease. (Rottenberg Decl. ¶ 99.)

Thus, the entire premise of the complaint — insofar as the $7 million value (for transfer tax purposes) of M.M.B.- Vanderbilt ground lease is concerned — is wrong. Vanderbilt did not enter into the ground lease "for the sum of $7 million" and the parties' (M.M.B. and Vanderbilt's) valuation of the ground lease at $7 million for transfer tax purposes has no bearing on the valuation of the fee title interest in the land (*i.e.*, the Demised Premises). Thus, there is no inconsistency between Mr. Tener's "land" valuation in 2019 of $16.85 million and the $7 million "leasehold" valuation on the state transfer tax returns in 2017, which reported on value of the then

created ground lease, not the land.  (Rottenberg Decl. ¶¶ 101, 102.)

Nor is there any substance to any claim that because the rent under the M.M.B.-Vanderbilt ground lease was close to the rent estimated by Ms. Locatell that Vanderbilt had failed to cooperate by refusing to turn over the ground lease to Ms. Locatell or for that matter Mr. Tener. Discovery has demonstrated that McDonald's never asked for the M.M.B.-Vanderbilt lease even though the existence of the lease was a matter of public record.  Locatell Dep. 174/3-175/10.) Additionally, Locatell's original and updated FMV opinions do not contain any disclaimer language — as they would if McDonald's spoke the truth — that the appraisal was done without the appraiser having been given a copy of the 2017 ground lease.  (Rottenberg Decl. ¶¶ 104, 108.)

## ARGUMENT

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 202 (2d Cir. 2007) (affirming district court's grant of summary judgment).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  Once the moving party demonstrates the absence of genuine issues of material fact, "the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists."  *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir. 1993); *see also Lin v. Table for Eight, Inc*., No. 19-CV-01119 (DLI) (MMH), 2022 WL 74165, at *2 (E.D.N.Y. Jan. 7, 2022); *Osagiede v. Carlo Shipping Int'l Inc.*, No. 18-CV-07358 (DLI) (SJB), 2022 WL 43750, at *3 (E.D.N.Y. Jan. 5, 2022).

## I.  MCDONALD'S CANNOT CARRY ITS BURDEN OF PROOF

Although Vanderbilt as the proponent of a motion for summary judgment dismissing

McDonald's claim bears the burden, on that motion, of showing that it is entitled to dismissal and that no triable issue of fact exists, there is no question that at trial McDonald's bears the burden of proof on its claim. (And correlatively Vanderbilt at trial would bear the burden of proof on its counterclaim). *Parker v. Mandarich Law Grp., LLP*, No. 19-CV-6313, 2021 WL 2351177, at *11 (E.D.N.Y. June 9, 2021) ("It is well-settled that, '[i]n a civil case, the plaintiff bears the burden of proving the elements of his claim by a preponderance of the evidence.'") (quoting *Velasquez v. United States Postal Serv.*, 155 F. Supp. 3d 218, 227 (E.D.N.Y. 2016)).

In consequence, when seeking dismissal of a plaintiff's claim, the defendant is entitled to judgment if it shows that the plaintiff, based on the record, cannot carry its burden. *Parker*, 2021 WL 2351177, at *3 (granting summary judgment to defendant and noting "[n]o genuine issue of material fact exists 'unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party'") (quoting *Anderson*, 477 U.S. at 249); *Maxon Hyundai Mazda v. Carfax, Inc.*, 726 F. App'x 66, 68 (2d Cir. 2018) (summary order) (affirming summary judgment in favor of defendant and noting that "'[a] defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial,' but, rather, can satisfy its burden by 'point[ing] to an absence of proof on plaintiff's part'") (quoting *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001)). Here, McDonald's cannot carry its burden of proof, and therefore, Vanderbilt is entitled to dismissal of McDonald's' claim.

The ORA provides:

> If one of the parties fails to chose [sic] an appraiser within the specified time period or fails to cooperate in any way so that the process described above cannot be completed prior to 120 days of the expiration of the primary term of this Lease, the FMV of the one appraiser chosen by the cooperating party shall be used to determine the rent during the extension periods.

Rottenberg Decl., Exhibit D at page 2. McDonald's contends that the Tener appraisal itself is

evidence that Vanderbilt failed to cooperate. First, McDonald's complains that Tener did not gather, compare, and adjust rental data in comparable leases. Second, McDonald's complains that Tener initially did not apply the rule of *936 Second Ave*. Third, McDonald's complains that Tener's estimate of the FMV did not change after Tener, per an instruction the parties agreed he would be given, applied the holding in *936 Second Ave.* to his analysis. Fourth, McDonald's complains Tener failed to consider the M.M.B.-Vanderbilt Lease. These allegations, even if true, do not demonstrate that Vanderbilt failed to cooperate.

## A. The party-appraisers simply hold different opinions on whether the zoning potential of the Premises can be feasibly exploited over the remaining term

The large difference between Tener's and Locatell's estimates of FMV is driven by their differing opinions concerning whether the undisputed zoning potential of the Premises (*i.e.*, "all of the uses to which the property can be put") can be exploited over the remaining twenty-year option term. The necessary predicate for this difference of opinion, in turn, is the application of *936 Second Ave.*, because absent the application of that holding, the remaining term of the Lease (which McDonald's contends is one of the "restrictions" imposed by the Lease) would be of no moment.

In any event, this difference of opinion is not unusual. During his deposition, Vanderbilt's expert, Michael Hedden, explained:

> Given the magnitude of the differential between the two appraisers, when this occurs, oftentimes it is as a result of a highest and best use conclusion that causes the information to go as vastly wide as it has, and that's why when the lease called for a differential of more than 15 percent, that a third-party appraiser would be called in to reconcile the two opinions.

(Hedden Dep. 54/11-54/21.)

Later in his deposition, Hedden confirmed this testimony when McDonald's counsel questioned him concerning Locatell's final appraisal dated September 20, 2019:

Q. And what highest and best use did she [Locatell] conclude was appropriate?

A. Well, my recollection was that it was for a pad site.

Q. And did you -- and that's a big deal, right, because a different highest and best use could dramatically change the value of the property; right?

A. I think I testified to that earlier, yes.

(Hedden Dep. 181/24-182/9.)

Locatell does not dispute this conclusion and there is no dispute that the ORA requires the party-appraisers to appraise the Premises at its highest and best use. At her deposition, Locatell testified:

Q. Taking your assumption, would it be fair to say that the option rent addendum directs that the property be appraised at its highest and best use taking into account whatever the term is?

MR. WALSH: Objection to form.

A. It directs us to determine the rental value based on highest and best use relative to the term, yes.

(Locatell Dep. 25/12-25/25.)

McDonald's expert, Amanda Aaron ("Aaron"), similarly concluded that the ORA directed the party-appraisers to estimate the FMV at the Premises "highest and best use given other limitations of the appraisal problem and the language in the lease." (Aaron Dep. at 45/14-45/20.)

At her deposition, Locatell also confirmed that she disagreed with Tener's conclusion on the highest and best use of the Premises. Locatell testified:

Q. So the two of you disagreed on the highest and best use. Would that be fair to say?

MR. WALSH: Objection to form.

A. Tom -- that's not the only thing we did not agree on.

Q. You at least disagreed on what the 2 highest and best use for the property was,

13

as encumbered by the 20-year lease term, correct?

A. That is correct.

(Locatell Dep. 188/19-189/5.)[2] But tellingly, Locatell confirmed that Nakleh, the agreed-upon neutral third appraiser, would have been easily able to address her and Tener's disagreement over the Premises' highest and best use. Again, Locatell testified:

> Q. Is that something that Mr. Nakleh would be capable of determining, what the highest and best use of the property was as encumbered by a 20-year lease term?
>
> MR. WALSH: Objection to form.
>
> A. May I answer?
>
> Q. Yes.
>
> A. Yes. Mr. Nakleh would. That is why I selected him, and felt comfortable with him being a neutral here, because he does have experience in reading these ground leases and he would be capable of concluding the highest and best use based upon comparable lease transactions which were out in the market.

(Locatell 189/6-189-20.)

Aaron (McDonald's expert) also testified that "[p]art of the neutral's job is to determine who [*i.e.*, which appraiser] is correct and who is not correct, if [this dispute] were permitted to … to go there." (Aaron Dep. 75/8-75/11.)

Allowing the neutral third appraiser to resolve Locatell's and Tener's difference of opinion over whether the property could be developed to its full zoning potential during the remaining twenty-year term was precisely what the parties agreed in the ORA. That is what should have occurred here. Additionally, even when given the chance, Locatell would not characterize her difference of opinion with Tener as a failure to cooperate. Locatell testified:

---

[2] In her final appraisal, Locatell wrote: "We are specifically tasked with determining the FMV of the subject land as unimproved based on highest and best use, and in consideration of a *5-year* renewal term and other provisions of the lease." Rottenberg Decl., Ex. BB at 2 (emphasis added.) Because the ability to extend the option term to twenty years was entirely within McDonald's control, Locatell should not have limited the remaining term on the lease to 5 years.

Q. Do you believe Mr. Tener was being deliberately deceptive?

MR. WALSH: Objection to form.

A. I did not say that. I said that I believe Mr. Tener submitted a report that is not responsive to the lease document that we are required to by accepting the assignment produce and I believe that Mr. Nakleh, acting as the third appraiser and recognizing the fact there was a potential to average these numbers, would have gone back to Tom [Tener] and directed him to do a report that was responsive to what the lease was directing us to do.

Q. Do you believe Mr. Tener was being uncooperative?

MR. WALSH: Objection to form.

A. I didn't say that. We never got to the point of actually interacting with Marc or submitting our reports to him as far as I remember. I believe that -- I think you asked me previously if Marc had even been officially retained, so I'm not saying that Tom [Tenner] was being uncooperative. I'm saying that his report was not prepared correctly and I do believe that if we continued along the process, that Mr. Nakleh would have had issues with the report that KTR put forth as being responsive to what we were directed to do per the terms of the option agreement or option addendum.

(Locatell Dep. 205/6- 206/13.)

Aaron similarly testified that if two appraisers had differing views as the highest and best use, "[i]t could result in very different value conclusions." (Aaron Dep. at 45/21-46/22.)

The mere existence of a difference of opinion does not mean that a party failed to cooperate. If a difference of opinion were evidence of a failure to cooperate, then virtually any time the appraisers estimated FMV differently, one of the parties could bring the mandatory rent reset process to a halt simply by alleging the difference of opinion amounted to a failure to cooperate.

This was not what the drafter of the ORA intended. The drafter of the ORA established a mechanism for resolving differences of opinion between the party appraisers: *i.e.*, the appointment of the neutral, third appraiser to break the impasse. To allow McDonald's to circumvent the ORA requirement of the appointment of a neutral, third appraiser to resolve differences in the party-

appraisers' estimates of the FMV would, in effect, replace the parties' bargained-for mandatory dispute resolution process with a court-ordered resolution. Such an end-run around the provisions of the ORA would strip Vanderbilt of its bargained-for right to have these disputes resolved by professional appraisers, not courts. This is contrary to the policy of the Federal Arbitration Act. 9 U.S.C. § 1 et. seq. (the "FAA").

The FAA reflects a congressional policy that broadly favors enforcement of parties' bargained-for arbitration clauses. If there exists "any doubts concerning the scope of the arbitrable issues[, it] should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "Arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 522 (2d Cir. 1980) (citation omitted). Additionally, even narrow arbitration clauses are still subject to "the federal presumption in favor of arbitration." *McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988); *see also Advanstar Commc'ns Inc. v. Beckley-Cardy, Inc.*, No. 93-CV-4230 (KTD), 1994 WL 176981, at *3 (S.D.N.Y. May 6, 1994) (noting that even a "narrow arbitration clause must be construed in favor of arbitration").

Courts have consistently held that valuation disputes that contain alternative dispute mechanism, like this one, are an arbitration for purposes of FAA. *Severstal U.S. Holdings, LLC v. RG Steel, LLC*, 865 F. Supp. 2d 430, 439 (S.D.N.Y. 2012); *Talegen Holdings, Inc. v. Fremont Gen. Corp.*, No. 98-CV-366, 1998 WL 513066, at *3 (S.D.N.Y. Aug. 19, 1998); *Advanstar Commc'ns Inc.*, 1994 WL 176981, at *3; *Campeau Corp. v. May Dep't Stores Co.*, 723 F. Supp. 224, 228 (S.D.N.Y. 1989) (case stayed in favor of dispute resolution by independent accounting firm); *see also Omni Tech Corp. v. MPC Solutions Sales, LLC*, 432 F.3d 797 (7th Cir. 2005).

16

## B.  Regardless, *936 Second Ave.* does not apply

Vanderbilt anticipates that McDonald's will contend that Vanderbilt's initial failure to apply the rule in *936 Second Ave.* to Tener's estimate of FMV is evidence of Vanderbilt's failure to cooperate.  That argument is wrongheaded.  The reality is that Vanderbilt correctly interpreted the ORA, when it concluded that the ORA required the appraisers to consider "all of the uses to which the property can be put."  That mandate means that *936 Second Ave.* does not apply.  Indeed, McDonald's application of *936 Second Ave.* to the FMV determination in this case contorts the ORA to mean precisely the opposite of what it says.

Properly read, *936 Second Ave.* requires that "use" limitations or similar "restrictions" in a lease be ignored if doing so contravenes the express terms of the Lease, as that ends up frustrating rather than implementing the intent of the drafter.  Thus, the Court of Appeals, in *936 Second Ave.*, held that "*absent an agreement to the contrary*, the effect of a net lease must be considered in valuing property for the purpose of setting rent for a renewal lease term" (emphasis added).  Here, the ORA's express direction that the FMV appraisers consider "all of the uses to which the property can be put" amounts to an "agreement otherwise" and thus commands that the remaining term not be considered a "restriction" that must be taken into account under *936 Second Ave.*  Indeed, the ORA drafter knew, when the drafter drafted the ORA, that only 20 years would remain as of the end of the original term, and yet still the ORA commanded the appraisers to consider "all uses to which the property can be put."  The ORA drafter would never have expressly directed the appraisers to consider "all the uses to which the property can be put" if the drafter intended that those very uses then not be considered based on the twenty years the drafter knew would be remaining under the Lease.  Had that been the ORA drafter's intent, the drafter would have written "knowing all uses to which the property can be *feasibly put over the remaining term of the Lease.*"

It is easy to understand how the *936 Second Ave.* decision is supposed to work. If a lease has a use clause limiting the use of the demised premises (*e.g.*, to a restaurant use) and the zoning laws permit other more profitable uses, an appraiser is not supposed to consider those other uses when assessing rental value. But, here, there was an explicit direction to consider "all" potential uses, the use clause in the Lease expressly permits all lawful uses,[3] and it was known that the remaining term could not exceed 20 years. To use that limited term to stop the appraisers from considering "all" potential uses mangles the express words of the ORA and the Lease's use clause.

This is how Missry interpreted *936 Second Ave.* At deposition, Missry testified:

> When you read the provision of the option to rider, I believe it says you have to assume that it's vacant land and that the premises are not encumbered by the improvements. And there was some other language in there and based upon my reading of that particular provision and this case, it was my opinion at the time that it had the necessary language to exclude taking the lease into account.

(Missry Dep. 116/18-117/3.)

Ultimately, however, this dispute became moot after the June 2019 meeting at which Vanderbilt said it would instruct Tener to apply the *936 Second Ave.* rule. But Vanderbilt did not agree that *936 Second Ave.* applied, and Vanderbilt did not commit to changing the outcome of Tener's appraisal, as McDonald's would have this Court believe. The nub of the dispute between Locatell and Tener is that while both agree the Premises, assumed vacant, could be developed under prevailing zoning laws to a substantially greater degree than the current improvements, Tener believes the maximum improvement allowed under zoning law could be feasibly constructed and the investment returned with a profit with only 20 years of remaining term, while Locatell believes the remaining term is too short to make that development feasible. Thus, the appraisers understandably disagree on FMV because even taking the rule of *936 Second Ave.* into

---

[3] The lease provides the Premises can be used for "any lawful purpose or purposes." Rottenberg Decl., Ex. C at section 7(A), page 7.

account (and Vanderbilt does not concede it applies though it undertook to apply the rule), the appraisers disagree on the economic feasibility of making those improvements given the remaining term.

During his deposition, McDonald's aggressively questioned Tener about why applying the holding in *936 Second Ave.* did not alter Tener's conclusion about FMV.  Tener responded that it was "because the retail component ended up driving most of the value."  (Tener Dep. 115/8-115/10.)  Tener continued, "the low cost of the retail and the relative value or rent that you could achieve from that once you amortized the cost of constructing a single-story retail on the site ended up at a value that closely proximated [sic] the conclusion exclusive of the period of control being unlimited."  (Tener Dep. 115/11-115/18).  Later in the deposition, Tener reiterated this point, testifying that:

> the economics did not materially change because the retail component building and inexpensive single-story retail add extremely low cost of what a D type construction retail would cost provided adequate return over a 20-year period. So in this case because retail drove so much of the value that it ended up being economically feasible in my opinion and my analysis which is included in my July 30th report.

(Tenner Dep. 137/13-137/24.)

At bottom, *936 Second Ave.* does not apply here because the ORA contains "an agreement otherwise."  Regardless, all of these facts demonstrate that Vanderbilt's handling of the *936 Second Ave.* case does not show that Vanderbilt failed to cooperate.

## C.  McDonald's prevented the "collaboration" issue from being resolved in the order the parties explicitly agreed to in the September 2019 Agreement

Vanderbilt also anticipates that McDonald's will argue that Vanderbilt's position that the party arbitrators could not discuss the property or their appraisals with the neutral third appraiser before he issued his appraisal is also evidence of Vanderbilt's failure to cooperate.  This position, however, sets the truth on its head.

In the September 2019 Agreement the parties outlined the process by which the mandatory FMV dispute-resolution process would continue to move forward. Specifically, the September 2019 Agreement contained an unconditional obligation for the parties to engage Nakleh by October 7, 2019, twenty-one days after the September 2019 Agreement was signed. The September 2019 Agreement specifies that the two party-appraisers would not have any "ex parte" communications with the third appraiser, and that neither would release their written FMV opinion to the third appraiser unless and until both parties agreed in writing that the party-appraisers' updated written FMV opinions could be disclosed to the third appraiser. But McDonald's breached the September 2019 Agreement by refusing to engage Nakleh, and, instead, filing this action.

Nevertheless, however one interprets the ORA on the "collaboration" issue, it is undisputed that Missry's view was that, following the two party-appraisers being unable to reach agreement on FMV values that do not differ by more than 15%, the third appraiser would issue his written FMV opinion, and then they "can discuss it" and failing a majority agreement the average governs. (Missry Dep. 187/22-187/24.)

Moreover, regardless of how one interprets the ORA insofar as the collaboration issue is concerned, the parties modified and supplemented the ORA in September 2019 by agreeing in writing: (a) that there would be no *ex parte* conversations between the party-appraisers and the third appraiser, (b) that the party-appraisers would update their FMV opinions, (c) that those updated FMV opinions would not be given to the third appraiser unless and until both parties agreed that could happen, and (d) that Nakleh would be engaged by the parties by October 7, 2019.

McDonald's breached the clear unconditional mandate of hiring Nakleh by October 7, 2019, and thus he never got to read the ORA, and offer his opinion on the collaboration issue. Instead, McDonald's simply let the October 7, 2019 deadline pass without engaging Nakleh and

without seeking a Court order tolling its time to perform. Then on November 15, 2019, McDonald's filed its complaint. By allowing the agreed deadline to pass without hiring Nakleh, McDonald's breached the September 2019 Agreement and cut off the agreed upon process for resolving the collaboration issue. Thus, it is McDonald's, not Vanderbilt, who failed to cooperate with respect to the collaboration issue.

### D. Neither Tener nor Locatell sought the M.M.B-Vanderbilt ground lease in connection with their FMV appraisals

McDonald's also contends that Vanderbilt acquired the ground lease position at the Premises in 2017 for $7 million and that is inconsistent with Tenner's final appraisal that valued the property at $16.8 million. But the price Vanderbilt reported on its real property transfer tax filing when it acquired its *ground lease* interest in the property is irrelevant to the price at which *fee title* to the property would trade. Land and a lease in land do not have equal values.

Separately, the "value" reflected in the transfer tax form was not a cash payment but a value estimate.[4] Vanderbilt did not "pay" key money or up-front cash upon the entering into of the sandwich lease. But, apparently, McDonald's saw the amount of tax paid on the ground lease, and concluded (incorrectly) that $7 million was actually paid in cash by Vanderbilt to M.M.B. upon entering into the ground lease, and alleged that the ground lease was entered into "for $7 million."

It seems McDonald's has now realized both that no cash was paid for the sandwich lease and that in any event, the estimated value of the leasehold has no bearing on the value of the land. As a result, McDonald's now claims that the M.M.B-Vanderbilt Lease is relevant because it is a prospective "rental comp" which Vanderbilt withheld.

---

[4] Indeed, an earlier draft of the transfer tax form valued the ground lease acquisition at $10 million. *See* Rottenberg Decl., Ex. 5.

But that dog won't hunt. McDonald's has marshaled no evidence that it ever sought the M.M.B.-Vanderbilt Lease, although it clearly knew Vanderbilt had acquired the "sandwich" position. (Locatell Dep. 174/17-175/7.)[5]

Indeed, Locatell testified that the M.M.B.-Vanderbilt Lease was not relevant to the FMV analysis and admitted that the seeing the M.M.B.-Vanderbilt Lease would not affect her conclusions concerning the FMV "at all." (Locatell Dep. 174/3-174/10). Moreover, Locatell's original and updated FMV opinions do not contain any disclaimer language — as they would if McDonald's spoke the truth — that the appraisal was done with the appraiser asking for but not being given a copy of the 2017 ground lease.

Additionally, the M.M.B-Vanderbilt Lease was a much different transaction than a simple rental of a pad site as was contemplated by the 1998 lease between McDonald's and Musto. The heart of the bargain between M.M.B. and Vanderbilt is that Vanderbilt would re-zone the land to enable a more substantial development once McDonald's leaves. Indeed, Vanderbilt promised M.M.B. in the ground lease to spend at least $500,000 cash on the re-zoning process. What is more, once the property is re-zoned by Vanderbilt and McDonald's leaves, Vanderbilt will redevelop the property in accordance with the rezoning. The rezoning would allow for the property's residential use and would permit a significant increase in the number of buildable square feet. In the end, Vanderbilt would spend millions redeveloping the land, and of course, that new building would revert to M.M.B. upon the conclusion of the term of the 2017 ground lease. And, if Vanderbilt is unsuccessful in re-zoning the property, the 2017 ground lease ends no later than 10 years after McDonald's leaves, and Vanderbilt loses all its time and money. Given these facts,

---

[5] Tener, too, did not seek a copy of the M.M.B.-Vanderbilt ground lease in connection with preparing his appraisal of the FMV. Tener did seek a copy of the M.M.B.-Vanderbilt ground lease in connection with a previous report he prepared for Vanderbilt estimating the fee interest in the property.

it is not all that unusual or surprising that the M.M.B-Vanderbilt lease provides for an accommodative rent for the reconstruction period after McDonald's leaves, while Vanderbilt is redeveloping the rezoned land. That rent is utterly irrelevant as a "comp" because the ground lease has all these other terms including those compelling Vanderbilt to spend millions on rezoning and redevelopment and clearly the rent during the construction period was set at an accommodative level. All of these facts demonstrate that Vanderbilt's purported failure to turn over the M.M.B-Vanderbilt ground lease is a red herring.

## II.     VANDERBILT'S COUNTERCLAIM IS IRREFUTABLE

In contrast to McDonald's, Vanderbilt's case rests upon incontrovertible direct evidence. Vanderbilt's "failure to cooperate" case is based simply on McDonald's undisputable failure and refusal to submit the dispute between the party-appraisers to the agreed upon third appraiser, Nakleh, as and when unconditionally required by the September 2019 Agreement (which modified and supplemented the ORA).

It is clear from even a cursory reading of the ORA, that, when it came to a "failure to cooperate," the drafter's focus was on delay. In relevant part, the ORA provides that a party "fails to cooperate" if that party "fails to cooperate in any way so that the process described above cannot be completed prior to 120 days of the expiration of the primary term of this Lease…". (Rottenberg Decl., Ex. D at page 2.) The primary term expired on April 9, 2019, putting the 120-day mark at August 7, 2019. It is now nearly three years since the 120-day deadline. These facts demonstrate McDonald's acted (or failed to act) "in any way" that violated its obligations under the ORA and September 2019 Agreement, which ended up causing delay.

McDonald's had absolutely no evidence when it filed suit — and still has none now even after discovery has been completed — demonstrating that Vanderbilt failed to cooperate. Indeed,

the record here shows just the opposite: that Vanderbilt (unlike McDonald's) acted swiftly and with alacrity at every step of the way to comply with the streamlined deadlines built into the ORA. Indeed, Vanderbilt went above and beyond its contractual duty to cooperate by making compromises it did not have to make (*e.g.*, agreeing to apply *936 Second Ave.*) in a good faith effort to resolve the dispute. After agreeing to apply *936 Second Ave.*, Tener delivered his updated final appraisal to Locatell in late September 2019, and thereafter sought to get McDonald's to engage Nakleh as McDonald's had promised to do by October 7, 2019. McDonald's, however, broke that promise.

Thus, McDonald's "failed to cooperate" by breaching the ORA, as modified and supplemented by the September 2019 Agreement, when, in contravention of that agreement, McDonald's refused to engage Nakleh as and when it unconditionally agreed to do so. Having drafted the September 2019 Agreement in an unconditional manner with respect to Nakleh's engagement, and McDonald's having signed that agreement, if McDonald's wanted to bring suit and not engage Nakleh, it was incumbent upon McDonald's to have sought from this Court an order — in furtherance of the relief it is seeking in this action — staying or tolling its time to engage Nakleh. Thus, the Court, after dismissing McDonald's claim for the reasons set forth above, should grant Vanderbilt's counterclaim and rule that Tener's appraisal alone governs the FMV determination.

## CONCLUSION

There is not a shred of evidence that Vanderbilt corrupted the process set forth in the ORA for estimating the FMV or that Vanderbilt "failed to cooperate" with that process. All the evidence shows that Tener simply disagreed with Locatell on whether the zoning potential of the Premises could be feasibly exploited over the remaining twenty-year term.

Regardless, *936 Second Ave.* does not apply because the ORA's command that the appraisers consider "all of the uses to which the property can be put," coupled with the unrestricted use clause in the Lease, constitute an "agreement otherwise." As a result, applying *936 Second Ave.* as McDonald's urges contravenes the express terms of the ORA. Thus, Tener was correct to consider the full zoning potential even if Locatell was correct that that full potential could not have been feasibly exploited over the remaining twenty years.

For all these reasons, McDonald's cannot carry its burden of proof, and no triable issues are raised.

In contrast, Vanderbilt has made out an irrefutable case for the granting of summary judgment on its counterclaim. The parties entered into an agreement on September 16, 2019 unconditionally obligating both parties to engage Nakleh by October 7, 2019. McDonald's violated that agreement, which modified and supplemented the ORA, without first seeking a tolling or stay order from the Court. As a result, McDonald's caused vast delays and failed to cooperate.

For these reasons and the others set forth in Vanderbilt's other papers submitted on this motion, the Court should dismiss McDonald's Complaint and award Vanderbilt summary judgment declaring that McDonald's failed to cooperate in the process set forth in the ORA and, as a result, the FMV of the Premises during the first five-year option term is set at $1,348,000 per year making the annual rent during that term $1,078,400.

Dated: New York, New York
      April 29, 2022

                              MEISTER SEELIG & FEIN LLP

                                   /s/ Stephen B. Meister
                              By: Stephen B. Meister
                                 Howard S. Koh
                              125 Park Avenue – 7th Floor
                              New York, New York 10017
                              (212) 655-3500