UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MCDONALD'S CORPORATION, | : |
| Plaintiff, | : No. 1:19-cv-06471-DLI-ST |
| v. | : **DECLARATION OF BRENDAN M.** |
| | : **WALSH IN OPPOSITION** |
| VANDERBILT ATLANTIC HOLDINGS LLC, | : **TO DEFENDANT'S MOTION** |
| | : **FOR SUMMARY JUDGMENT** |
| Defendant. | : |

BRENDAN M. WALSH, an attorney admitted to practice law in the State of New York and in this Court, declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a partner at the law firm of Pashman Stein Walder Hayden, P.C., attorneys for Plaintiff McDonald's Corporation in this matter.

2. I submit this declaration in support of McDonald's opposition to Defendant Vanderbilt Atlantic Holdings LLC's motion for summary judgment. I make this declaration based on personal knowledge unless otherwise stated herein.

3. I deposed Pinchus "Sam" Rottenberg, the principal of Vanderbilt, on August 12, 2021 in connection with this matter. He was deposed as Vanderbilt's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6). A true and correct copy of McDonald's amended deposition notice to Vanderbilt, dated July 21, 2021, is attached as Exhibit 1.[1]

---

[1] Consistent with Vanderbilt's moving papers, this declaration uses the same exhibit numbers as those used at the depositions in this matter. For that reason, the exhibit numbers in this declaration will not be continuous.

1

4.      During his deposition, Rottenberg uttered the phrases "I don't know," "I don't recall," "I can't recall," "I don't remember," "I can't remember," "I can't even remember," or "I wouldn't remember" more than 270 times in response to my questions.

5.      Rottenberg testified: "I don't remember a lot of stuff." (Declaration of Howard S. Koh Ex. AAA ("Rottenberg Dep. Tr.") 218:7-9.) At one point, he testified: "I'm not sure what I believed at which given time or what I knew at given time. I'm not very good at dates, what's said at which time, so, you know . . . I don't know my kids' birthdays, so . . . ." (Rottenberg Dep. Tr. 142:24-143:7.)

6.      Rottenberg has now submitted a 151 paragraph, 42-page sworn declaration dated April 28, 2022 in support of Vanderbilt's motion for summary judgment (the "Rottenberg Declaration").

7.      The Rottenberg Declaration contains a number of statements that differ from the sworn testimony that Rottenberg gave during his August 12, 2021 deposition in this matter. Some examples follow.

8.      At paragraph 119 of the Rottenberg Declaration, Rottenberg states: "[T]he Court should understand that, when Vanderbilt entered into the ground lease with M.M.B., I owned an interest in M.M.B. Thus, the M.M.B.-Vanderbilt transaction was a related-party transaction . . . ."

9.      Rottenberg testified at his deposition that he is the 100% owner of an entity called 840 Atlantic Holdings, LLC (Rottenberg Dep Tr. 37:9-15) and that 840 Atlantic Holdings, LLC is a 20% owner of M.M.B. Associates, LLC (38:16-39:10). However, when I asked him multiple times and multiple ways when 840 Atlantic Holdings, LLC acquired an ownership interest in M.M.B. Associates, including whether it occurred before or after Vanderbilt entered into its November 30, 2017 ground lease with M.M.B. Associates (the "Vanderbilt Lease"), Rottenberg

2

repeatedly testified he could not remember when that occurred and testified that the two transactions were "unrelated." Rottenberg testified:

> Q. Okay. When did 840 Atlantic Holdings, LLC become of a member of M.M.B. Associates?
> A. I can't remember times.
> Q. Do you remember, was it around the same time that Vanderbilt entered into its lease with M.M.B.?
> A. I can't remember.
> Q. Was it – do you remember in your life when it happened? Was it 10 years ago? 20 years ago? Five years ago?
> A. I can't remember.

(Rottenberg Dep. Tr. 39:14-25.)

> Q. So you did not receive – your testimony is that you did not receive any compensation from anybody from brokering [the Vanderbilt Lease]?
> A. Correct.
> Q. But as part of this deal you became or an entity that you control became a member of M.M.B. Associates?
> A. Correct – no, no. Sorry. I take that back. I'm not sure. What was your question?
> (Pending question is read back.)
> A. ***That was no relation so [sic] [the Vanderbilt Lease]***. I became a member of M.M.B. but ***there is no relation to [the Vanderbilt Lease]***.
> Q. So when – did you become a member of M.M.B. Associates before or after [the Vanderbilt Lease] –
> A. You asked me that question before and I said I don't remember.
> Q. But you said just that it's unrelated. So I'm just trying to understand the timing. You know –
> A. I don't remember the timing. ***It's unrelated, but I don't remember the timing***.

(Rottenberg Dep. Tr. 63:19-64:21 (emphases added).)

> Q. Were you – when the [Vanderbilt Lease] was being negotiated were you at the time on both side of the negotiations or only on behalf of Vanderbilt?
> A. On behalf of Vanderbilt.
> Q. So you were not involved at the time with any of the negotiations with M.M.B.?
> A. Yeah, I was.
> Q. As a member of M.M.B.?

3

    A. I don't know at which role. I just was involved without any specific role.
    Q. So at the time – I guess what I'm trying to understand is, at the time of [the Vanderbilt Lease], were you on both sides of the transaction or on only the Vanderbilt side of the transaction?
    A. I was on the Vanderbilt side of the transaction?
    Q. Only?
    A. I don't know what means "only." I was on Vanderbilt.
    Q. So you can't answer that question?
    A. What is the question? I was on the Vanderbilt side of the transaction. That is my answer.
    Q. Were you also on the M.M.B. side of the transaction?
    A. Yeah. I might have been an interest in the M.M.B. side. But for [the Vanderbilt Lease] I was on the Vanderbilt side.
    Q. Only; is that correct?
    A. I don't know. I can't remember it was only or not only.

(Rottenberg Dep. Tr. 91:18-93:4.)

10.     At paragraph 21 of his declaration, Rottenberg states:

As a threshold matter, the [Option Rent Addendum] explicitly provides that the Premises are to be valued as if vacant "knowing *all* of the uses to which the property can be put…". Exhibit D, page 2 (emphasis added.) Of course, zoning and other laws regulating the improvement of real property (in effect on the commencement of the first option term) control the universe of uses to which the property can be put. It is therefore clear from the text of the ORA that the drafter of the ORA wanted "all" the legal uses under zoning and related laws to be considered by the appraisers. Full stop. However, as discussed in more detail below, McDonald's has taken the position that under *936 Second Ave. L.P. v. Second Corp. Dev. Co.*, 10 N.Y.3d 628 (2008), the fact that the Lease has a limited term, and that, in McDonald's view, the full zoning potential of the property cannot be feasibly exploited over the remaining term of the Lease, means that the appraisers must not take into account all the uses allowable. This is a perverted reading of *936 Second Avenue*, which really requires that use limitations in a lease be taken into account, and in any event not when doing so contravenes the express terms of the Lease, as that ends up frustrating rather than implementing the intent of the drafter. Again, here the Lease (via the ORA) explicitly requires that "all" uses be considered by the appraisers (and all lawful uses are explicitly allowed under the Lease.) Nevertheless, as discussed more fully below, in a good faith effort to resolve the matter, Vanderbilt—without prejudice to its contention that McDonald's misreads *936 Second Avenue*—agreed

that its appraiser would take into account the remaining term of the Lease.

(Rottenberg Dec. ¶ 21.)

11. Rottenberg continued his discussion of the *936 Second Avenue* case and its application to the McDonald's Lease at Paragraphs 22-28 of his declaration. He concluded the discussion by stating: "I elaborate on this disagreement below but, again, say that *936 Second Avenue* cannot be applied as McDonald's contends it should be, because doing so contravenes the express terms of the ORA." (Rottenberg Dec. ¶ 28.)

12. But at his deposition, Rottenberg repeatedly testified that he is "not familiar" with the *936 Second Avenue* case and "ha[s] no idea what it is." And despite appearing at the deposition as Vanderbilt's corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) (Rottenberg Dep. Tr. 15:3-14), Rottenberg disclaimed knowledge as to Vanderbilt's position on the applicability of the rule announced in *936 Second Avenue*. Rottenberg testified:

> Q. Mr. Rottenberg, are you familiar with the New York Court of Appeals decision in 936 Second Avenue V. Second Corporate Development Corp.?
> A. No.
> Q. I'll refer to it as the Second Avenue case and it's described in our – have you reviewed our complaint in this case?
> A. I know it's described but ***I'm not sure what it is***.
> Q. So it basically talks about, you know, under what circumstances a property that is encumbered by a lease, under what circumstances appraisal needs to consider the encumbrance of the lease in the valuation.
> Are you familiar with there being a case that lays out some rules as to when an encumbrance of a lease or zoning –
> A. I've heard that terminology about that case but ***I'm not familiar with that case and I have no idea what it is***.
> Q. So –
> A. I leave this to the attorneys and appraisals.

(Rottenberg Dep. Tr. 239:19-240:20 (emphases added).)

5

> Q. Well, I'm asking if this refreshes your recollection about whether you had any discussions with anybody about the applicability of the rule announced in [the *936 Second Avenue*] case before Tom completed his April 2019 letter opinion of value?
> A. No. I told you I remembered hearing about that case and referenced that Second Avenue case but that's the extent I bothered to know or wanted even to know, so...

(Rottenberg Dep. Tr. 249:6-16.)

> Q. Okay. What is Vanderbilt's position about whether the Option Rent Addendum requires the fair market value to be determined with consideration of the encumbrances on the property?
> MR. KOH: Objection. Go ahead and answer to the extent you can.
> A. I don't think Vanderbilt has an opinion. It's an opinion of appraisers and/or attorneys.
> Q. So Vanderbilt doesn't have a position as to whether encumbrances needed to be considered under the fair market value process outlined in the Option Rent Addendum?
> A. I don't think so. I mean, I defer to attorneys and appraisers on that matter.
> Q. But I'm asking you what Vanderbilt's position is?
> A. I don't have a position, other than what I heard from my professionals.
> Q. So Vanderbilt doesn't have a position?
> A. Other than what I heard from third parties, from guys that I hired that I defer to.
> Q. So what have you heard?
> A. I heard various discussions relating to that matter.
> Q. And what do you mean by that?
> A. Various discussions, whether you have to take into – the encumbrances of the lease into account or not.
> Q. And based upon those discussions, what is your understanding?
> A. ***I have no understanding.***

(Rottenberg Dep. Tr. 255:5-256:17.)

13.   McDonald's deposition notice to Vanderbilt (attached as Exhibit 1) sought testimony from Vanderbilt on a number of topics, including:

   a. "All internal communications at Vanderbilt about whether the New York Court of Appeals' decision in *936 Second Avenue L.P. v. Second Corporate Development*

6

*Co. Inc.*, 10 N.Y.3d 628 (2008), applies to the estimation of the FMV of the Property." (Ex. 1 at 5, ¶ 9.)

b. "Vanderbilt's position regarding whether encumbrances on the Property must be considered in determining the FMV of the Property and the factual basis for same." (Ex. 1 at 5, ¶ 10.)

14. Rottenberg reviewed the deposition notice at the start of his deposition and testified under oath that he was knowledgeable on each of the topics. (Rottenberg Dep. Tr. 19:24-20:4.)

15. In multiple paragraphs in his declaration, Rottenberg states that Vanderbilt's appraiser never asked for a copy of the Vanderbilt Lease. (Rottenberg Dec. ¶¶ 106, 109-110, 113-114, 118.) At paragraph 106 of his declaration, Rottenberg states: "McDonald's is lying. As discovery shows, Vanderbilt was never asked for the [Vanderbilt Lease], and did not withhold it."

16. But at his deposition, Rottenberg acknowledged under oath that Vanderbilt's appraiser, Tom Tener, specifically asked in his engagement letters for "Copies of any leases that are on the properties." Rottenberg testified:

> Q. And above that it says, "In addition, in order to initiate the assignment the following information, if available, should be provided as soon as possible." And the first bullet is "Copies of any leases that are on the properties."
> Do you see that?
> A. I do.

(Rottenberg Dep. Tr. 184:12-19.)

> Q. On the second page right above the bullets it says, "In order to initiate the assignment the following, if available, should be provided as soon as possible." And again they ask for any leases that encumber the properties.
> . . .
> Q. Okay. Did you or anyone else at Vanderbilt ever ask KTR why they needed a copy of any leases that encumbered the properties?
> A. What?

7

> Q. Did you or anyone else at Vanderbilt asked KTR why they needed copies of leases that encumbered the properties?
> A. I don't know.

(Rottenberg Dep. Tr. 237:20-238:15.)

17. At paragraph 114 of his declaration, Rottenberg states: "And, it is no wonder, neither party-appraiser asked for the [Vanderbilt Lease]. It is completely irrelevant to the FMV." And in paragraphs 115-117 of his declaration, Rottenberg explains why, in his view, the Vanderbilt Lease, had no relevance to the FMV process.

18. But at his deposition, he testified under oath that leases that encumber a property "could have an [e]ffect on the value one way or the other." Rottenberg testified:

> Q. Okay. As a real estate broker, do you have an opinion on whether McDonald's lease would affect the value of the property?
> MR. KOH: Objection, you may answer.
> A. That's not a question that -- given my role, I'm not sure I can answer that question. Just I'm not sure I would have the answer to that question.
> Q. So you don't have an opinion as a broker?
> A. No.
> Q. But KTR asked for that document, right? It asked for the ground lease with McDonald's?
> A. You showed it to me in the engagement letter that they asked for it, right?
> Q. Right. So they asked for it, right?
> A. Yeah.
> Q. So does that suggest to you that the appraisers thought it could affect the value?
> A. ***I think an appraiser looks at all aspects of the properties, everything that's encumbered on the property, involved or everything involved in the property an appraiser looks at.***
> Q. ***And that's because those things affect the value, right?***
> A. ***Yeah. It could have an affect [sic] on the value one way or the other. Everything related to a property could impact the value, of course.***

(Rottenberg Dep. Tr. 189:3-191:10 (emphasis added).)

8

19. Michael Meyer testified on August 17, 2021 only in his capacity as a corporate representative of McDonald's. Vanderbilt did not request to depose Meyer in his individual capacity.

20. I am not aware of any evidence in the record indicating that, before 2022, Vanderbilt ever requested or demanded that McDonald's pay more than $16,032.58 per month in rent while the process of determining the rent amount for the first extension period remains ongoing.

21. I am not aware of any evidence in the record indicating that Simon Dushinsky owns any interest in M.M.B., directly or indirectly.

22. A copy of the Vanderbilt Lease is attached as Exhibit 4 to the Declaration of Pinchus "Sam" Rottenberg.

23. Attached hereto as Exhibit 7 is a true and correct copy of an email dated February 10, 2017 from Tony Musto to Rottenberg.

24. Attached hereto as Exhibit 8 is a true and correct copy of email correspondence from January 2018 between Vanderbilt and Slater & Beckerman PC, and an attached engagement letter for Slater & Beckerman to provide lobbying services to Vanderbilt.

25. Attached hereto as Exhibit 12 is a true and correct copy of excerpts of an Environmental Assessment Statement dated February 25, 2021 prepared by an environmental consultant retained by Vanderbilt for its redevelopment proposal.

26. Attached hereto as Exhibit 14 is a true and correct copy of an email from Murray Schneier, counsel to Vanderbilt, to Michael Meyer of McDonald's dated February 16, 2018.

27. Attached hereto as Exhibit 17 is a true and correct copy of an email from Tom Li of Vanderbilt dated May 30, 2018 attaching a signed engagement for BBG, Inc. to perform an

appraisal "of the [Property] based on comparable land sales and a residual analysis if necessary, in addition to an analysis of the projected ground rent for McDonald's." (Ex. 17 at VA 015256.)

28. Attached hereto as Exhibit 18 is a true and correct copy of an appraisal of the Property prepared by BBG, Inc. for Rottenberg, dated July 9, 2018, with a valuation date of June 26, 2018.

29. Attached hereto as Exhibit 19 is a true and correct copy of a June 7, 2018 email from Tener to Rottenberg.

30. Attached hereto as Exhibit 20 is a true and correct copy of Tener's June 27, 2018 engagement letter with Vanderbilt. On page 2 of the letter, Tener asks Vanderbilt to provide him "as soon as possible" with "Copies of any leases that encumber the properties."

31. Attached hereto as Exhibit 22 is a true and correct copy of Tener's appraisal report for the Property dated August 30, 2018.

32. Attached hereto as Exhibit 23 is a true and correct copy of a draft appraisal report prepared for Vanderbilt by Republic Valuations, dated January 31, 2019.

33. Attached hereto as Exhibit 24 is a true and correct copy of an engagement letter between Vanderbilt and Metropolitan Valuation Services dated February 14, 2019.

34. Attached hereto as Exhibit 25 is a true and correct copy of a February 26, 2019 email from David Lyon of Metropolitan Valuation Services to Rottenberg and Missry, and an accompanying attachment containing Metropolitan's review of one of Tener's appraisal reports.

35. Attached hereto as Exhibit 28 is a true and correct copy of Tener's March 8, 2019 engagement letter with Morris Missry, Esq., counsel for Vanderbilt, for Tener to serve as Vanderbilt's appraiser for the FMV process under the McDonald's Lease. On page 2 of the letter,

Tener asks that he be provided "as soon as possible" with "Copies of any leases that encumber the properties."

36. Attached hereto as Exhibit 29 is a true and correct copy of an email from Tener to Missry, with a copy to Rottenberg, dated April 1, 2019 at 9:46 a.m.

37. Attached hereto as Exhibit 30 is a true and correct copy of an email from Tener to Missry, and accompanying attachment, dated April 1, 2019 at 4:28 p.m.

38. Attached hereto as Exhibit 40 is a true and correct copy of an email from Katrina Rainey of McDonald's to Carol DeMarco and Yolanda Holmes of McDonald's dated January 17, 2018.

39. Attached hereto as Exhibit 41 is a true and correct copy of an email chain showing that Rottenberg sent a copy of the McDonald's Lease to Jay Levinton of Westerman Ball Ederer Miller Zucker & Sharfstein, LLP on February 26, 2017.

40. Attached hereto as Exhibit 43 is a true and correct copy of an email from Jonathan Imani of IMC Architecture to Rottenberg and Dushinsky, among others, dated March 13, 2018, with accompanying attachments.

41. Attached hereto as Exhibit 44 is a true and correct copy of an email from Christina Szczepanski of Philip Habib & Associates to Rottenberg, among others, attaching a draft Reasonable Worst Case Development Scenario Form to be submitted to the Department of City Planning.

42. Attached hereto as Exhibit 54 is a true and correct copy of an Interdivisional Meeting Record from the New York City Department of City Planning dated December 13, 2018 concerning a meeting held on November 19, 2018.

43. Attached hereto as Exhibit 63 is a true and correct copy of typewritten notes produced by Vanderbilt in this matter.

44. Attached hereto as Exhibit 80 is a true and correct copy of an email from Tener to Rottenberg and Missry dated July 9, 2019.

45. Attached hereto as Exhibit 82 is a true and correct copy of an email chain between Tener and Missry from June 18, 2019 through July 30, 2019, and an accompanying attachment.

46. Attached hereto as Exhibit 105 is a true and correct copy of the Assignment and Assumption of Lease between M.M.B. Associates, LLC and Vanderbilt Atlantic Holdings LLC dated November 30, 2017.

47. Attached hereto as Exhibit 106 is a true and correct copy of a letter that I sent to Morris Missry, Esq. dated November 1, 2019. On November 8, 2019, Morris Missry sent me, as McDonald's outside counsel, an email stating: "Thank you for your letter. My client is assessing it and its position and will come back to you with it's [sic] response." Vanderbilt did not provide a substantive response to this letter by November 8, 2019, or at any point before McDonald's filed this action on November 15, 2019.

48. Attached hereto as Exhibit 107 is a true and correct copy of a letter from Cassie O'Connor of McDonald's to Simon Dushinsky of Vanderbilt dated December 11, 2017 requesting a number of documents from Vanderbilt, including "A copy of the Ground Lease conveying the subject property to [Vanderbilt.]"

49. Attached hereto as Exhibit 108 is a true and correct copy of an email chain from December 2017 regarding McDonald's requests for a copy of the Vanderbilt Lease.

50. Attached hereto as Exhibit 109 is a true and correct copy of the highly redacted version of the Vanderbilt Lease that Vanderbilt sent to McDonald's in December 2017.

51. Attached hereto as Exhibit 110 is a true and correct copy of McDonald's July 8, 2021 notice of the deposition of Rottenberg.

52. Attached hereto as Exhibit 111 is a true and correct copy of a letter from Vanderbilt to McDonald's dated April 2, 2019.

53. Attached hereto as Exhibit 112 is a true and correct copy of emails between McDonald's, Locatell, and Locatell's colleague—Ellen Benjamin—from December 2018 and April 2019 concerning the $7 million valuation of the Vanderbilt Lease reported by Vanderbilt and M.M.B to the New York City of Department of Finance.

54. Attached hereto as Exhibit 113 is a true and correct copy of an excerpt of internal McDonald's emails from December 15, 2018 (non-confidential portions only) showing a request for a copy of the Vanderbilt Lease and a response from Carol DeMarco stating "We have a copy [of] the 99 yr lease but many paragraphs including rents are redacted."

55. Attached hereto as Exhibit 114 is a true and correct copy of an email from Carol DeMarco of McDonald's to Rottenberg dated February 8, 2018.

56. Attached hereto as Exhibit 115 is a true and correct copy of DeMarco's handwritten notes from her May 24, 2018 call with Rottenberg.

57. Attached hereto as Exhibit 116 is a true and correct copy of an email from Sharon Locatell to DeMarco and Meyer dated May 9, 2019.

58. Attached hereto as Exhibit 117 is a true and correct copy of an email from Tener to Missry and Rottenberg dated May 9, 2019.

59. Attached hereto as Exhibit 118 is a true and correct copy of an email chain among Missry, Tener, and Rottenberg from May 6, 2019 through May 14, 2019.

60. Attached hereto as Exhibit 119 is a true and correct copy of an email chain among Missry, Meyer, Rottenberg, and DeMarco from May 20, 2019 through May 31, 2019.

61. Attached hereto as Exhibit 120 is a true and correct copy of a letter from Meyer to Missry dated July 23, 2019.

62. Attached hereto as Exhibit 121 is a true and correct copy of the PowerPoint presentation used by Vanderbilt in its March 4, 2021 meeting before the Community Board 8 Land Use Committee.

63. Attached hereto as Exhibit 122 is a true and correct copy of lobbying records filed with the Office of City Clerk, City of New York through June 8, 2022 for work performed on behalf of Vanderbilt through December 31, 2021.

64. Attached hereto as Exhibit QQ is a true and correct copy of Locatell's letter opinion of value dated September 20, 2019 provided to Tener on September 27, 2019.

65. Attached hereto as Exhibit YY is a true and correct copy of the expert report of Amanda Aaron, MAI, CRE dated November 12, 2021.

66. A video of the March 4, 2021 meeting of the Brooklyn Community Board 8 Land Use Committee is available on the Community Board's YouTube channel at https://youtu.be/xS_hRoQwSlM. The portion of the meeting regarding Vanderbilt's application for a rezoning of the Property begins at approximately the 1:32:24 mark of the recording.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 10, 2022                            /s/ Brendan M. Walsh
                                                 Brendan M. Walsh