# EXHIBIT 41

Message

---

**From**:        Sam Rottenberg [sam.rottenberg@gmail.com]
**Sent**:        11/22/2017 8:46:49 PM
**To**:          Tom Li [tli@sprgp.com]
**Subject**:     FW: 840 Atlantic Avenue Brooklyn / McDonalds Lease
**Attachments**: McDonaldsLease.pdf

**Flag**:        Follow up

---

**From:** Sam Rottenberg [mailto:sam.rottenberg@gmail.com]
**Sent:** Sunday, February 26, 2017 3:53 PM
**To:** 'Jay Levinton' <jlevinton@westermanllp.com>
**Subject:** 840 Atlantic Avenue Brooklyn / McDonalds Lease

Jay-

Attached is something that I also wanted to discuss...

Regards

Sam Rottenberg
SPR Group
134 Broadway Suite 206

"This email message and any attachments are intended solely for the use of the individual or entity to which it is addressed and may contain information that is confidential or legally privileged.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this message or its attachments is strictly prohibited.  If you have received this message in error, please notify the sender immediately and permanently delete this message and attachments. All information furnished herein is deemed reliable and is submitted subject to errors, omissions, change of terms and conditions, prior sale, or withdrawal without notice.  We do not represent or guarantee the accuracy of any information and are not liable for any reliance thereon."

---

 Virus-free. www.avast.com

**Exhibit**
**P41**

VA 033610

City, State: Brooklyn, New York
Address: 840 Atlantic Ave.
L/C: 31/2093

# GROUND LEASE

## Table of Contents

1. Demised Premises                                                     1

2 Lease Term                                                            1

3. Rent                                                                 1

4. Landlord's Warranties and Covenants                                 1

   A. Zoning                                                           1
   B. Utilities                                                        2
   C. Demolition and Site Preparation                                 2
   D. Possession                                                      2
   E. Taxes                                                           2
   F. Covenant of Title and Quiet Enjoyment                          3
   G. Covenant Not to Compete and Setback Restriction                3
   H. Tenant's Remedies                                              4

5. Tenant's Covenants                                                  4

   A. Rent                                                            4
   B. Liens and Encumbrances                                         4
   C. Insurance and Indemnity                                        4
   D. Repairs                                                        5
   E. Utilities                                                      5
   F. Compliance with Law                                            5
   G. Zoning Variance                                                5

6. Right to Terminate                                                  5

   A. Permits                                                        5
   B. Evidence of Title                                              5
   C. Survey                                                         6
   D. Soil Tests                                                     6
   E. Payment (Intentionally deleted)                                6
   F. Phase I Environmental Assessment                               6
   G. Off-Site and Extraordinary Cost Contingency                    6

7. Use, Alterations and Title to Improvements                          6

   A. Use                                                            7
   B. Alterations and Title to Improvements                          7

VA 033611

# GROUND LEASE

## Table of Contents (Page 2)

| | |
|---|---|
| 8. Assignment and Subletting | 7 |
| 9. Mortgaging of Leasehold Estate | 7 |
| 10. Landlord's Right of Re-Entry | 8 |
| 11. Holding Over | 8 |
| 12. Condemnation | 8 |
| 13. Option to Extend | 9 |
| 14. Tenant's Right of First Refusal to Lease | 9 |
| 15. Option to Purchase and Right of First Refusal to Purchase | 9 |
| 16. Trade Fixtures, Machinery and Equipment | 9 |
| 17. Recording | 9 |
| 18. Subordination | 9 |
| 19. Miscellaneous Provisions | 10 |
|    A. Invalidity | 10 |
|    B. Successors, etc. | 10 |
|    C. Writing | 10 |
|    D. Construction | 10 |
|    E. Notices | 10 |
|    F. Force Majeure | 11 |
| 20. Rule Against Perpetuities | 11 |
| 21. Conflicts of Interest | 11 |
| 22. Authority to Sign | 11 |
| 23. Addenda and Exhibits | 11 |

VA 033612

City, State: Brooklyn, New York.
Address: 840 Atlantic Ave.
L/C: 31/2093

## GROUND LEASE

**THIS LEASE**, dated _March 18_____, 1998, is between Anthony M. Musto ("Landlord"), married to _____ of New York in the City of Long Island City, County of Queens, State of New York, a New York corporation, and McDonald's Corporation, a Delaware corporation ("Tenant").

1. **Demised Premises:** Landlord, for and in consideration of the covenants contained in this Lease and made on the part of Tenant, does hereby demise and lease unto Tenant, and Tenant does hereby lease from Landlord, the parcel of land which is located in Brooklyn, County of Kings, State of New York, having a frontage of not less than 170 feet on Atlantic Avenue, containing not less than 29,000 square feet (not including roads or public rights-of-way), being more particularly described in Exhibit A, together with all of Landlord's easement rights and appurtenances thereto, all buildings and improvements now located on the property, and all necessary easements and appurtenances in Landlord's adjoining and adjacent land, highways, roads, streets, lanes, whether public or private, reasonably required for the installation, maintenance, operation and service of sewers, water, gas, drainage, electricity and other utilities and for driveways and approaches to and from abutting highways, for the use and benefit of the above described parcel of real estate, including the improvements to be erected on the property (collectively referred to as "Demised Premises"). If Tenant has the Demised Premises surveyed, then, at Tenant's option, the parties shall execute a recordable amendment by which a survey description shall be inserted in lieu of the description contained in Exhibit A, but Tenant shall not be obligated to lease less than is described above.

2. **Lease Term:** Tenant shall have and hold the Demised Premises for a term commencing on the date of the last execution of this Lease and ending twenty (20) years from the date upon which the McDonald's restaurant referred to in this Lease is opened for business to the public. When the term of this Lease is ascertainable and specifically fixed, or otherwise agreed to by Landlord and Tenant, Landlord and Tenant shall enter into a supplement, suitable for recording, which shall specify the actual date for the expiration of the original term of this Lease and for the commencement of accrual of rent payable by Tenant. If Landlord fails to execute and return the supplement within fifteen (15) days after delivery to Landlord, Tenant may execute the supplement on behalf of Landlord and Landlord hereby appoints Tenant as its attorney-in-fact for such purpose.

3. **Rent:** Tenant's liability for rent shall commence to accrue on the date specified in the Rent Commencement Addendum, attached hereto as Exhibit B. Tenant, in consideration of the covenants made by Landlord, covenants and agrees to pay to Landlord rent as set forth in Exhibit C, payable one each on the 1st day of every calendar month for the then current month. In the event that the commencement date of the rent shall be on a day other than the first day of the month, the first rental payment and last rental payment, if applicable, shall be adjusted for the proportionate fraction of the whole month.

4. **Landlord's Warranties and Covenants:** Landlord covenants, represents and warrants as follows:

A. **Zoning:** That without cost to Landlord, Landlord shall use reasonable efforts to assist Tenant to obtain the approval of all public and governmental authorities as to all matters relating to zoning, subdivision, lot splits, lot ties, replats or similar requirements for use of the Demised Premises as a McDonald's restaurant in accordance with Tenant's plans and specifications as will permit Tenant to obtain all necessary permits, licenses and approvals referred to in Article 6(A) below. Landlord further agrees to dedicate or grant any easements for public ways required as a condition of approval and recordation of the final parcel map or subdivision plat.



VA 033613

B. **Utilities:** That all water and gas mains, electric power lines, and sanitary and storm sewers are located in the public right-of-way at the property line of the Demised Premises.

C. **Demolition and Site Preparation:** That Landlord shall demolish and remove all existing improvements, including building foundations, encroachments, signs and underground storage tanks, if any, located on the Demised Premises. Landlord shall also fill, grade and compact the site to Tenant's specifications attached hereto as Exhibit D. All such demolition and site preparation shall commence within thirty (30) days from the date Landlord has sole and actual possession of the Demised Premises from the existing tenants and shall be completed within sixty (60) days of such date. Landlord shall use the contractor specified on Exhibit E, attached hereto, to perform the demolition of the existing improvements on the Demised Premises. Upon submission of evidence of payment of such charges to such contractor, Tenant shall reimburse Landlord for up to fifty percent (50%) of the cost of demolition of all existing improvements including building foundations, encroachments and signs, provided that Tenant's share shall not exceed $25,000. Landlord shall solely bear cost to remove underground storage tanks and complete remediation consistent with Article 6F. Landlord represents and warrants that the Demised Premises shall be free of hazardous substances and that any activity involving hazardous substances on the Demised Premises was conducted in compliance with applicable law.

D. **Possession:** At the time of delivery of possession of the Demised Premises to Tenant, that the Demised Premises shall be free and clear of all tenancies, whether oral or written. Landlord acknowledges that the existing leased tenancies last through 8/31/98 and warrants that he will use best and necessary efforts to deliver sole and actual possession by or before 9/1/98. Tenant acknowledges that Landlord may not be able to deliver the Demised Premises by or before 9/1/98, but if Landlord fails to deliver the Demised Premises free and clear of all tenancies, whether oral or written on or before 8/31/99, Tenant may elect to terminate this Lease by written notice to Landlord after such date.

E. **Taxes:** (See Tax Addendum, Exhibit F).

F. **Covenant of Title and Quiet Enjoyment:** That Landlord is well seized of and has good title to the Demised Premises and all improvements located on it on the date of this Lease, free and clear of all liens, encumbrances, easements, tenancies and restrictions. Landlord warrants and will defend the title, and will indemnify Tenant against any damage and expense which Tenant may suffer by reason of any claim against title or defect in the title or description of the Demised Premises. If, at any time, Landlord's title or right to receive rent under this Lease is disputed, or there is a change of ownership of Landlord's estate by act of the parties or operation of law, Tenant may withhold rent thereafter accruing until Tenant is furnished proof satisfactory to it as to the party entitled to the rent. Landlord shall provide Tenant with any and all non-disturbance agreements, in form acceptable to Tenant, from any underlying lessor or holder of an encumbrance within 14 days of a request by Tenant.

G. **Covenant Not To Compete and Setback Restriction:** Landlord covenants and agrees that no property (other than the Demised Premises) now or hereafter owned, leased or controlled, directly or indirectly, by Landlord or, if Landlord is a corporation, any subsidiary of Landlord, adjacent or contiguous to the Demised Premises or within one (1) mile of the perimeter of the Demised Premises (whether or not such other property is subsequently voluntarily conveyed by Landlord) shall, during the term of this Lease and any extensions, be leased, used or occupied as a restaurant, food service establishment, drive-in or walk-up eating facility. This covenant shall not apply to a nearby premises

MAR 1 8 1998

INITIAL & DATE

- 2 -

VA 033614

known as 809-17 Atlantic Avenue, Brooklyn, NY of which the Landlord has a minority interest of 25%.

Landlord further covenants and agrees that, if during the term of this Lease or any extensions, Landlord shall own or control any land other than the Demised Premises, which land is adjacent or contiguous to the Demised Premises, or which constitutes a parcel or parcels out of which the Demised Premises are comprised, any building(s) or other improvements constructed upon such other land shall be set back 50 feet from the public rights-of-way, provided however that this restriction shall not be applicable with regard to existing improvements on land owned or controlled by Landlord as of the date of execution of this Lease, or with regard to any improvements existing on land which subsequently comes under Landlord's ownership or control on the date that Landlord acquires such ownership or control. Tenant acknowledges that such 50 foot setback shall not apply to the property cross-hatched on Exhibit A-1 ("Excepted Lot"), provided that Landlord shall not construct any new improvements on the Excepted Lot, without the prior written approval of Landlord's construction plans by Tenant, which consent shall not be unreasonably withheld or delayed. Tenant may withhold its consent to the approval of such plans, if such new construction materially interferes with the visibility of the McDonald's restaurant on the Demised Premises from any of the adjacent roadways. It is mutually agreed that the covenants set forth above shall run with the land, and if Tenant shall purchase the Demised Premises pursuant to any option to purchase or right of first refusal to purchase in this Lease, such covenants shall remain in effect for a period of twenty (20) years from the date of closing under such option or right. Landlord agrees to provide legal descriptions of all property involved and execute recordable documents, if required by Tenant, to effectuate the foregoing.

If one or both of these covenants be broken, one-half (1/2) of all payments required to be made by Tenant under this Lease shall be abated for so long as such breach continues. The total sums so abated shall be liquidated damages for such breach and not a penalty, the parties agreeing that Tenant inevitably must sustain proximate and substantial damages from such breach, but that it will be very difficult, if not impossible, to ascertain the amount of such damage. In addition to this remedy, Tenant shall be entitled to injunctive and other appropriate relief, whether under the provisions of this Lease or otherwise.

H. **Tenant's Remedies:** Landlord acknowledges that Tenant is relying upon all of the above covenants, representations and warranties in executing this Lease and that matters so represented and warranted are material ones. Landlord accordingly agrees that if Landlord does not cure or diligently commence to cure a default within thirty (30) days after written notice from Tenant, any breach of warranty or misrepresentation shall be grounds for Tenant to elect, at its option, to terminate this Lease or cure Landlord's default(s) and deduct its costs to cure the default(s) from rent thereafter accruing. Tenant shall not, however, have the right to terminate this Lease under this Article 4 after it commences construction of its improvements. These remedies are in addition to all other remedies Tenant may have in law or equity.

5. **Tenant's Covenants:** Tenant covenants and agrees, during the term of this Lease and for such further time as Tenant, or any person claiming under it, shall hold the Demised Premises or any part of it:

A. **Rent:** To pay the rent, additional rent and/or reserved rent on the days and in the manner as provided in this Lease.

B. **Liens and Encumbrances:** Not to allow the estate of Landlord in the Demised Premises at any time during the term or any extension to become subject to any lien, charge or encumbrance

- 3 -

VA 033615

whatsoever, and to indemnify and keep indemnified Landlord against all such liens, charges and encumbrances. It is expressly agreed that Tenant shall have no authority, expressed or implied, to create any lien, charge or encumbrance upon the estate of Landlord in the Demised Premises, except as provided for in this Lease. Tenant reserves the right to bond over any such lien, charge or encumbrance.

C. **Insurance and Indemnity:** At its own expense to insure and keep insured, from the date of actual possession, the building and improvements constructed by Tenant on the Demised Premises against loss or damage by fire and other casualties normally covered by standard fire and extended coverage policies for not less than eighty percent (80%) of their actual cash value in responsible insurance companies licensed in the state in which the Demised Premises are located. Subject to the terms of this Lease, such insurance is to be made payable in case of loss to Tenant.

Tenant shall also maintain and keep in force for the mutual benefit of Landlord and Tenant general public liability insurance against claims for personal injury, death or property damage occurring in, on or about the Demised Premises (other than easements and common areas under the control of Landlord) to afford protection to the limit of not less than $3,000,000.00 with respect to bodily injury or death and to property damage. Tenant shall name Landlord as an additional insured on such policy. Tenant shall deliver to Landlord, upon request, a certificate of insurance and of any renewals from time to time during the term of this Lease and notify Landlord of any policy cancellations.

Tenant further agrees to indemnify, defend and save Landlord harmless from any liability, loss, cost, expense or claim of any nature resulting from any damage to person or property arising out of the failure of Tenant, or Tenant's agents, employees, servants, licensees or contractors, in any respect, to keep the Demised Premises (other than easements and common areas under the control of Landlord) in a safe condition or to comply with and perform all of the requirements and provisions of this Lease. The terms of this indemnity shall survive the termination of this Lease for claims made after termination of this Lease for occurences during the term of this Lease.

Tenant shall have the sole and exclusive right to retain counsel of its choice, to determine all litigation issues including, without limitation, trial strategy, trial preparation, discovery techniques and strategy, right of appeal, and settlement decisions all at Tenant's expense. In the event of an adverse judgment against Landlord on such claims, the judgment having become final, and the time for all appeals having expired, Tenant agrees to cause such judgment to be satisfied within thirty (30) days, and agrees to indemnify and hold Landlord harmless from and against any and all losses, costs, expenses, damages, liabilities or attorney's fees that arise if such judgment is not so satisfied.

Landlord agrees to notify Tenant in writing by delivery to Tenant within ten (10) days, and by telephone immediately after Landlord receives any such complaint or claim. The delivery of written notification shall include a copy of all pleadings if a complaint is filed, or of all correspondence and exhibits if a claim is filed.

Notwithstanding any provision in the lease to the contrary, Tenant may self-insure for all of the insurance coverages required in this lease to the extent that it is not prohibited by law from doing so. This provision will not be applicable, however, if this lease is assigned or sublet to any entity that is not a subsidiary or parent of the Tenant.

D. **Repairs:** To keep the Demised Premises in a safe and good condition and repair, subject to ordinary wear and tear and to Landlord's obligations under this Lease, if any.

- 4 -

VA 033616

E. **Utilities:** To pay when due all charges for all utility services used on the Demised Premises.

F. **Compliance with Law:** To comply with all governmental laws, rules and regulations applicable to the use, development or operation of the Demised Premises.

G. **Zoning Variance:** At Tenant's option, Tenant may attempt to obtain, at Tenant's sole cost and expense, to obtain a variance for a change in use of the left rear portion of the Demised Premises containing approximately 7,500 square feet as specifically cross-hatched on in Exhibit A-2. Should Tenant be denied such a variance, Tenant shall be entitled to a rent credit of $5,000 annually during the term of this Lease and any extenstions thereof.

6. **Right to Terminate:**

A. **Permits:** Tenant has entered into this Lease in the expectation of obtaining, after expiration of all applicable appeal periods, all permits, variances, special use permits, licenses, permissions or other authorizations (collectively called "Permits") necessary for the construction and operation of a complete McDonald's restaurant facility, including Tenant's signs and special service windows, built according to Tenant's plans and specifications (including without limitation curb cuts in connection with the facility deemed necessary or desirable by Tenant.)

Tenant agrees to apply for Permits without unreasonable delay after last execution of this Lease and Landlord agrees to execute such documents, make such appearances and do such other things as Tenant may reasonably request. Tenant or Landlord may (but shall not be obligated to) terminate this Lease if, after first application, Permits are denied or are not obtained within one hundred twenty (120) days. If Landlord elects to terminate this Lease as provided in this Article 6(A), Tenant shall have ten (10) days after receiving Landlord's written notice of termination to waive, in writing, the Permit contingency. If Tenant does not waive the Permit contingency, this Lease will terminate and be of no further force and effect, ten (10) days after Tenant's receipt of the notice.

B. **Evidence of Title:** Within thirty (30) days from the date of last execution of this Lease, Tenant shall apply for leasehold title insurance, with extended coverage, from a title company acceptable to Tenant, with a policy amount of not less than $500,000.00 or that required by law or the title insurer, covering the date of recording of the Memorandum of Lease as provided in Article 17, showing title to the Demised Premises and appurtenant easements in Landlord. If the report on title, title binder or commitment discloses any conditions, restrictions, liens, encumbrances, easements or covenants which, in Tenant's opinion, would affect Tenant's use and enjoyment of the Demised Premises and appurtenant easements, Landlord shall have thirty (30) days from the date Tenant notifies Landlord of such defects to make a good faith effort to cure such defects and to furnish a title report, binder or commitment showing such defects cured or removed. If such defects in title are not so cured within thirty (30) days, Tenant may, at its option, terminate this Lease. Immediately upon final execution of this Lease, Landlord shall deliver to Tenant's title company, if so required, Landlord's prior title evidence, such as title policies, a current abstract or attorney's opinions.

C. **Survey:** Tenant may order a current certified topographical survey by a licensed surveyor within thirty (30) days from the date of last execution of this Lease. If the survey discloses unsuitable or interfering easements, party wall agreements or encroachments, or that the location, area,

- 5 -

Demised Premises are not as represented by Landlord, then Tenant shall have the right to terminate this Lease and declare it null and void and of no further force and effect.

D. **Soil Tests:** This Lease is further contingent upon Tenant obtaining, within sixty (60) days from the date of last execution of this Lease, soil boring, percolation and other soil tests as may be required to determine the physical characteristics of the sub-strata of the Demised Premises. If the reports indicate, in Tenant's sole judgment, that the structure of the soil on the Demised Premises are unsatisfactory for Tenant's intended use, Tenant may, at its option, declare this Lease to be null and void and of no further force and effect by written notice to Landlord within ninety (90) days of final execution of this Lease. If Tenant gives Landlord such notice, if Landlord makes such structure of the soil satisfactory to Tenant within sixty (60) days of such notice from Tenant, this Lease shall be reinstated as if Tenant had never served such notice to terminate. If Tenant does not notify Landlord of such election within ninety (90) days of final exeuction of this Lease, Tenant's right to terminate this Lease pursuant to this Article 6.D. shall be deemed to have been waived.

Upon forty-eight (48) hours prior oral notice to Landlord, Landlord hereby grants to Tenant, its agents and contractors, the right to enter upon the Demised Premises to make the soil tests and surveys.

E. (Intentionally Deleted).

F. **Phase I Environmental Assessment:** Landlord agrees to deliver to Tenant, within 60 days after final execution of this Lease, a written Phase I Environmental Assessment ("Assessment") of the Demised Premises which shall include a detailed physical inspection of the Demised Premises and adjacent properties. The Assessment shall disclose any site characteristics that indicate the possible or actual presence of above or below grade site contamination of soils or ground water, and an investigation of any chemical use, storage, disposal or treatment on the Demised Premises. The Assessment shall also include a complete documentary review of the Demised Premises, including, but not limited to, a 50-year chain of title, all applicable permits, environmental spill or upset records and filings from all state and local agencies, aerial photographs, interviews, and any other reasonably obtainable federal, state or local government records.

The Assessment shall be conducted by an environmental professional, acceptable to Tenant, having experience in the preparation and filing of such Assessments, and who is qualified to perform Phase I Environmental Assessments. If the Assessment discloses any known or suspected environmental contamination, Tenant shall notify Landlord of such contamination and Landlord shall have sixty (60) days to remediate any such contamination in a manner satisfactory to Tenant. If Landlord fails to remediate such contamination with such sixty (60) day period, Tenant may declare this Lease to be null and void and of no further force and effect.

G. **Off-Site and Extraordinary Cost Contingency:** This Lease is further contingent upon Tenant's total off-site and extraordinary costs not exceeding $50,000. "Off-site and extraordinary costs" shall be defined as all costs and expenses other than construction costs for Tenant's standard building and site improvements. Off-site and extraordinary costs shall include, but not be limited to: costs to extend utility lines to the site; and costs to construct off-site drainage or sewage treatment facilities. If Tenant determines that the total off-site and extraordinary costs will exceed the amount stated above, Tenant may, at its option, declare this Lease to be null and void and of no further force and effect. However, Landlord shall have the option by written notice to Tenant within ten (10) days of Tenant exercising its right to terminate thie Lease pursuant to this Article 6.G., to elect to bear costs exceeding $50,000 and this Lease shall remain valid and in further force and effect.

7. **Use, Alterations and Title to Improvements:**



MAR 1 8 1998

- 6 -

A. **Use:** Notwithstanding any other provision herein to the contrary, Tenant shall have the right to use or occupy the Demised Premises for any lawful purpose or purposes.

B. **Alterations and Title to Improvements:** Tenant shall have the right to make, or permit any subtenant to make, alterations, additions and improvements to the Demised Premises from time to time. All of such alterations, additions and improvements constructed by Tenant or such subtenant during the term of this Lease and any extension of this Lease, shall be and remain the property of Tenant or any subtenant, as the case may be, at all times during the term of this Lease and any extensions or renewals. Landlord agrees to execute such documents, make such appearances and do such other things as Tenant may reasonably request so as to comply with the intent of this Article. Tenant and any subtenant shall have the right to remove any such alterations, additions and improvements at any time during the term of this Lease or any extension or renewal, and for a period of thirty (30) days after the termination of this Lease, or any extension or renewal, by lapse of time or otherwise and, for such purpose, to enter upon the Demised Premises. However, Tenant shall not be required to remove any such alterations, additions or improvements, and Tenant's failure to do so after the expiration of such period of thirty (30) days shall be deemed to be an abandonment and the same shall, at such time, be and become a part of the real estate with title vesting in the owner of the land. In case of removal of any building by Tenant or any subtenant occurring at or after the termination of this Lease, Tenant shall level the area formerly occupied by any building so removed.

8. **Assignment and Subletting:** Tenant may, without the consent of Landlord, sublease or assign this Lease or its rights under this Lease. In such event, Tenant shall remain liable for the payment of all rent required to be paid under this Lease and for the performance of all terms, covenants, and conditions undertaken by Tenant. Without limitation, it is agreed that Tenant shall have the right to mortgage or otherwise encumber its leasehold interest.

9. **Mortgaging of Leasehold Estate:** If Tenant mortgages its leasehold estate and the mortgagee or holders of the indebtedness secured by the leasehold mortgage or trust deed shall notify Landlord, in the manner provided for the giving of notice, of the execution of such mortgage or trust deed and name the place for service of notice upon such mortgagee or holder of indebtedness, then, in such event, Landlord agrees for the benefit of such mortgagees or holders of indebtedness from time to time:

A. That Landlord will give to any such mortgagee or holder of indebtedness simultaneously with service on Tenant, a duplicate of any and all notices or demands given by Landlord to Tenant. Such notices shall be given in the manner and be subject to the terms of the notice provisions of this Lease.

B. That such mortgagee or holder of indebtedness shall have the privilege of performing any of Tenant's covenants under this Lease, of curing any default of Tenant or of exercising any election, option or privilege conferred upon Tenant by the terms of this Lease.

C. That Landlord shall not terminate this Lease or Tenant's right of possession for any default of Tenant if, within a period of twenty (20) days after the expiration of the period of time within which Tenant might cure such default under the provisions of this Lease, such mortgagee or holder of indebtedness commences to eliminate the cause of such default and proceeds diligently and with reasonable dispatch as provided.

- 7 -

VA 033619

D.   That, except for the rights to terminate contained in this Lease, no rights, privilege or option to cancel or terminate this Lease, available to Tenant, shall be deemed to have been exercised effectively unless joined in by any such mortgagee or holder of the indebtedness.

E.   That no liability for the payment of rental or the performance of any of Tenant's covenants and agreements shall attach to or be imposed upon any mortgagee, trustee under any trust deed or holder of any indebtedness secured by any mortgage or trust deed upon the leasehold estate, unless such mortgagee, trustee or holder of indebtedness forecloses its interest and becomes the Tenant under this Lease.

10.  **Landlord's Right of Re-Entry:**  If Tenant shall fail to pay any installments of rent promptly on the day when they shall become due and payable, and shall continue in default for a period of thirty (30) days after written notice by Landlord, or if Tenant shall fail to promptly keep and perform any other affirmative covenants of this Lease strictly in accordance with the terms of this Lease and shall continue in default for a period of thirty (30) days after written notice by Landlord of default and demand for performance, then, as often as any such event shall occur, Landlord may (a) declare the term ended, and enter into the Demised Premises and expel Tenant or any person occupying the same in or upon the Demised Premises and repossess and enjoy the Demised Premises as in Landlord's former estate; and/or (b) re-let the Demised Premises, applying the rent from the new tenant on this Lease, and Tenant shall be responsible for no more than the balance that may be due, should a balance exist. Anything contained in this Lease to the contrary notwithstanding, if any default shall occur other than in the payment of money, which cannot with due diligence be cured within a period of thirty (30) days, and Tenant, prior to the expiration of thirty (30) days from and after the giving of the notice, commences to eliminate the cause of such default, then Landlord shall not have the right to declare the term ended and/or relet the Demised Premises by reason of such default.

11.  **Holding Over:**  If Tenant continues to occupy the Demised Premises after the last day of the term, or after the last day of any extension of the term, and Landlord elects to accept rent thereafter, a tenancy from month-to-month only shall be created, and not for any longer period.

12.  **Condemnation:**  If the whole or any part of the Demised Premises is taken or condemned by any competent authority for any public use or purpose during the term or any extension of this Lease, Tenant reserves unto itself the right to claim and prosecute its claim in all appropriate courts and agencies for an award or damages for such taking based upon its leasehold interest and ownership of buildings, alterations and improvements without impairing any rights of Landlord for the taking of or injury to the reversion.

If a part of the Demised Premises shall be taken or condemned which, in the sole judgment of Tenant, is sufficient to render the remaining portion unsuitable for its continued use or occupancy, then Tenant may, at any time, either prior to or within a period of sixty (60) days after the date when possession of the Demised Premises shall be required by the condemning authority, elect to terminate this Lease, or, if an option to purchase the Demised Premises is conferred upon Tenant by any other provision of this Lease, may as an alternative to such termination of this Lease, elect to purchase the Demised Premises in accordance with such purchase option, except that there shall be deducted from the purchase price to be paid for the Demised Premises all of Landlord's award from the condemnation proceeding.

If Tenant shall not exercise any option to terminate this Lease or to purchase the Demised Premises, then and in either such event, this Lease shall continue in effect with respect to the portion of the Demised Premises not so taken, except that the annual rent payable shall be reduced by a fraction, the numerator of which shall be the number of square feet taken or condemned, and the denominator of which shall be the

- 8 -

VA 033620

square footage of the Demised Premises prior to the taking or condemnation. Tenant will, with all due diligence and at its own cost and expense, repair and restore the Demised Premises or what may remain of it to its former condition, and until the completion of such work, the obligation of Tenant to pay rent and real estate taxes shall abate.

13. **Option To Extend:** Landlord agrees that the term of this Lease shall be automatically extended for four successive option periods of five (5) years each upon the same terms and conditions as contained in this Lease, except that the rent shall be as specified in the Option Rent Addendum attached hereto as Exhibit G. No notice or act, whatsoever, shall be required by Tenant to extend this Lease. However, Tenant may, in its sole discretion, elect to do the following by sending written notice to Landlord at least ninety (90) days prior to the expiration of the primary term or any option period:

    (A)    terminate this Lease as of the end of the primary term or any option period, whichever is applicable; or

    (B)    exercise all or any part of the remaining options at the time of the notice.

The options contained in this Article shall not be affected or terminated by the receipt or rejection of any offers relating to other options, including, but not limited to, rights of first refusal to purchase or lease, if any, contained in this Lease.

14. **Tenant's Right of First Refusal to Lease:** INTENTIONALLY OMITTED

15. **Option to Purchase and Right of First Refusal to Purchase:** INTENTIONALLY OMITTED

16. **Trade Fixtures, Machinery and Equipment:** Landlord agrees that all trade fixtures, machinery, equipment, furniture or other personal property of whatever kind and nature kept or installed in the Demised Premises by Tenant or Tenant's subtenants shall not become the property of Landlord or a part of the realty no matter how affixed to the Demised Premises and may be removed by Tenant or Tenant's subtenants, in their discretion, at any time and from time to time during the entire term of this Lease and any extensions. Upon request of Tenant or Tenant's assignees or any subtenant, Landlord shall execute and deliver any real estate consent or waiver forms submitted by any vendors, lessors, chattel mortgagees or holders or owners of any trade fixtures, machinery, equipment, furniture or other personal property of any kind and description kept or installed in the Demised Premises by any subtenant setting forth the fact that Landlord waives, in favor of such vendors, lessors, chattel mortgagees or any holders or owners, any lien, claim, interest or other right superior to that of such vendors, lessors, chattel mortgagees, owners or holders. Landlord shall further acknowledge that property covered by such consent or waiver forms is personal property and is not to become a part of the realty no matter how affixed to it, and that such property may be removed from the Demised Premises by the vendors, lessors, chattel mortgagees, owners or holders at any time upon default by the subtenant in the terms of such chattel mortgage or other similar documents, free and clear of any claim or lien of Landlord.

17. **Recording:** Tenant and Landlord agree to execute and record a short form or memorandum of this Lease as soon as Tenant has obtained an approved survey and legal description of the Demised Premises including appurtenant easements, if any. The cost of all documentary stamps, conveyancing or transfer taxes and recording fees shall be paid equally by the parties.

18. **Subordination:** This Lease shall be subordinate to all future mortgages which may encumber the real property of which the Demised Premises are a part, provided Landlord shall deliver to Tenant a Non-

- 9 -

VA 033621

Disturbance, Attornment and Subordination Agreement in form acceptable to Tenant, executed by the holder of such mortgage.

19. **Miscellaneous Provisions:**

A. **Invalidity:** If any term or provision of this Lease or the application to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances other than those as to which it is held invalid or unenforceable, shall not be affected.

B. **Successors, etc.:** The terms, conditions and covenants of this Lease shall be binding upon and shall inure to the benefit of each of the parties, their heirs, personal representatives, successors or assigns, and shall run with the land; and where more than one party shall be lessors under this Lease, the word "Landlord" whenever used in this Lease shall be deemed to include all lessors jointly and severally.

C. **Writing:** No waivers, alterations or modifications of this Lease or any agreements in connection with this Lease shall be valid unless in writing duly executed by both Landlord and Tenant.

D. **Construction:** The captions appearing in this Lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such paragraphs of this Lease or in any way affect this Lease. Any gender used shall be deemed to refer to any other gender more grammatically applicable to the party to whom such use of gender relates. The use of singular shall be deemed to include the plural and, conversely, the plural shall be deemed to include the singular.

E. **Notice:** If at any time after the execution of this Lease, it shall become necessary or convenient for one of the parties to serve any notice, demand or communication upon the other party, such notice, demand or communication shall be in writing signed by the party serving notice, sent by registered or certified United States mail, return receipt requested and postage prepaid. If intended for Landlord, the notice shall be addressed to:

c/o Crosstown Realty
29-27 41st Avenue
Long Island City, New York 11101

If intended for Tenant, the notice shall be addressed to :

One McDonald's Plaza
Oak Brook, Illinois 60523
Attention: Director, Legal Department - Real Estate Practice Group
L/C: 031-2093

or such other address as either party may have furnished to the other in writing as a place for the service of notice. Notwithstanding the foregoing, a notice sent to Landlord at the address to which rental payments are being sent at the time of the notice shall be deemed adequate for the purpose of exercising any option right contained in this Lease, including, but not limited to, purchase options,

- 10 -

VA 033622

rights of first refusal and options to terminate, if any.  Any notice so mailed shall be deemed to have been given as of the time it is deposited in the United States mail.

F. **Force Majeure:** Time is of the essence with respect to the obligations contained in this Lease, except, if there shall occur any strikes, lock-outs or labor disputes, inability to obtain adequate sources of energy, labor or materials or reasonable substitutes, acts of God, governmental restrictions, regulations, orders, guidelines or programs, enemy or hostile governmental action, rior, civil commotion, fire or other casualty or any other condition, whether similar or dissimilar to those enumerated above, which are beyond the reasonable control of any party, these conditions shall be deemed "unavoidable delays."  If either party shall, as a result of any unavoidable delay, fail to punctually perform any obligation specified in this Lease and such party gives ten (10) days of its occurrence, then such failure shall not be deemed a breach or default.  The applicable time periods in which to perform shall be extended, but only to the extent and for the period occasioned by an unavoidable delay.

20. **Rule Against Perpetuities:**  If this Lease has not been previously terminated pursuant to its terms and provisions and if the term of this Lease has not been ascertained within five (5) years from the date appearing on Page 1 of this Lease, then and in that event, this Lease shall then become null and void and have no further force and effect whatsoever in law or equity.

21. **Conflicts of Interest:**  Landlord and (if Landlord is not an individual) the party(ies) executing this Lease for or on behalf of Landlord, or as a representative of Landlord, hereby represent that, to the best of his/her/their knowledge, he/she/they, or any person connected directly or indirectly with Landlord is/are not (an) agent(s), employee(s), servant(s), supplier(s), licensee(s) or officer(s) of Tenant or any subsidiary, affiliate or parent corporation thereof, or related to any agent, employee, servant, supplier, licensee or officer of Tenant or any subsidiary, affiliate or parent corporation.  The parties executing this Lease acknowledge that the foregoing representations are and shall be relied upon by Tenant as inducement to enter into this Lease.

22. **Authority to Sign:**  No employee or agent of Tenant (other than an authorized officer) has authority to make a lease or any other warranty, representation, agreement or undertaking. The submission of this document for examination and negotiation does not constitute an offer to lease or a reservation of or option for the Demised Premises, and this document will become effective and binding only upon execution and delivery by Landlord and an authorized officer of Tenant.   All negotiations, considerations, representations and understandings between the parties are incorporated in this document and may be modified or altered only by agreement in writing between the parties, and no act or omission of any employee or agent of the parties or any broker, if any, shall alter, change or modify any of the provisions of this Lease.  The parties executing this Lease on behalf of Landlord and Tenant represent that they have authority and power to sign this Lease on behalf of Landlord and Tenant.

23. **Addenda and Exhibits:**  This Lease includes the following Addenda and/or Exhibits, which shall take precedence over conflicting provisions (if any) of this Lease, and are made an integral part of this Lease and fully incorporated by reference:

Exhibit A (Legal Description)
Exhibit A-1 (Excepted Lot)
Exhibit A-2 (Variance Lot)
Exhibit B (Rent Schedule)
Exhibit C (Rent Commencement Addendum)

VA 033623

Exhibit D (Tenant's Fill, Grade and Compaction Requirements)
Exhibit E  (Demolition Contractor's Bid)
Exhibit F (Tax Addendum)
Exhibit G (Option Rent Addendum)
Exhibit H (Environmental Remediation Addendum)

**LANDLORD AND TENANT,** by their execution below, indicate their consent to the terms of this lease.

**LANDLORD:**

_Anthony Musto_ (SEAL)

_____ (SEAL)

DATE: _____

WITNESS: _____

_____

Landlord's Federal Taxpayer
Identification Number:

090 - 48 - 6321

**TENANT:**  McDonald's Corporation

By: _____
     Catherine A. Griffin, Assistant Vice President

ATTEST:

_____ (SEAL)
Robert A. Ohlhausen, Staff Director

DATE:  March 18, 1998

WITNESS: _____
               Janet Tangorra

               Judy Lemm

## (ATTACH ACKNOWLEDGMENT CERTIFICATES BY A NOTARY PUBLIC)

L:\RELEGAL\FORMS\LEASES\GLEASBLA.DOC (6-95)

- 12 -

## ACKNOWLEDGMENT - McDONALD'S
### (Attestation required)

STATE OF ILLINOIS)
) SS:
COUNTY OF DUPAGE )

I, Karen Marie Billman, a Notary Public in and for the county and state aforesaid, DO HEREBY CERTIFY that Catherine A. Griffin, Assistant Vice President, and Martin W. Chmura, Home Office Director, of McDonald's Corporation, a Delaware corporation, who reside at One McDonald's Plaza, Oak Brook, Illinois 60523, who are personally known to me to be the same persons whose names are subscribed to the foregoing instrument as such Assistant Vice President and Home Office Director appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act as such Assistant Vice President and Home Office Director respectively and as the free and voluntary act of said corporation for the uses and purposes therein set forth.

Given under my hand and notarial seal, this day of March __18__, 1998.

_____    My commission expires:
Karen Marie Billman, Notary Public

OFFICIAL SEAL
KAREN MARIE BILLMAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:08/19/99

### ACKNOWLEDGMENT - CORPORATE

STATE OF _____ )
) SS:
COUNTY OF _____ )

I, _____, a Notary Public in and for the county and state aforesaid, DO HEREBY CERTIFY that _____, President and _____, Secretary of _____ a(n) _____ corporation, who reside at _____, who are personally known to me to be the persons whose names are subscribed to the foregoing instrument as such President and Secretary, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act as such President and Secretary respectively and as the free and voluntary act of said corporation for the uses and purposes therein set forth.

Given under my hand and notarial seal, this _____ day of _____, 19_____.

_____    My commission expires _____.
Notary Public

VA 033625

## ACKNOWLEDGMENT - INDIVIDUAL

STATE OF _New York_ )
                  ) SS:
COUNTY OF _Nassau_ )

I, _Chandra M. Ortiz_, a Notary Public in and for the county and state aforesaid, DO HEREBY CERTIFY that _Anthony M. Musto_ and _____ of _____ who (is)(are) personally known to me to be the same person(s) whose name(s) (is)(are) subscribed to the foregoing instrument appeared before me this day in person and acknowledged that (he)(she)(they) signed, sealed and delivered the said instrument as (his)(her)(their) free and voluntary act for the uses and purposes therein set forth.

Given under my hand and notarial seal, this _10th_ day of _March_, 19 _98_.

_____
Notary Public

My commission expires _May 11, 1999_.

CHANDRA M. ORTIZ
Notary Public, State of New York
No. 4892452
Qualified in Nassau County
Commission Expires May 11, 19___

## ACKNOWLEDGMENT - CORPORATE

STATE OF _____ )
              ) SS:
COUNTY OF _____ )

I, _____, a Notary Public in and for the county and state aforesaid, DO HEREBY CERTIFY that _____, President and _____, Secretary of _____, a(n) _____ corporation, who is personally known to me to be the person whose name is subscribed to the foregoing instrument as such President, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act as such President and Secretary respectively and as the free and voluntary act of said corporation for the uses and purposes therein set forth.

Given under my hand and notarial seal, this _____ day of _____, 19_____.

_____
Notary Public

My commission expires _____.

**SCHEDULE A** (Description)

*First American Title Insurance Company of New York*
TITLE #: 563-K-6731

(Old Tax Lot 1)

All that certain plot, piece or parcel of land, with the build-
ings and improvements thereon erected, situate, lying and being
in the Borough of Brooklyn, County of Kings, City and State of
New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Vanderbilt Avenue,
at the point distant 100 feet northerly from the northeasterly
corner of Vanderbilt Avenue and Pacific Street;

RUNNING THENCE northerly, along Vanderbilt Avenue, 25 feet;

THENCE easterly, parallel with Pacific Street, 70 feet;

THENCE southerly, parallel with Vanderbilt Avenue, 25 feet;

THENCE westerly, parallel with Pacific Street, 70 feet to Van-
derbilt Avenue, to the point or place of BEGINNING.

EXHIBIT A - Page  2  of  5

VA 033627

*First American Title Insurance Company of New York*
SCHEDULE A (Description)

TITLE #: 563-K-6731

Lot 5

All that certain plot, piece or parcel of land, with the build-
ings and improvements thereon erected, situate, lying and being
in the Borough of Brooklyn, County of Kings, City and State of
New York, bounded and described as follows:

BEGINNING at a point on the southwesterly side of Atlantic Ave-
nue, distant 70 feet southeasterly from the corner formed by the
intersection of the southeasterly side of Vanderbilt Avenue as
widened, with the southwesterly side of Atlantic Avenue;

RUNNING THENCE southwesterly parallel with Vanderbilt Avenue,
100 feet;

THENCE southeasterly parallel with Atlantic Avenue, 50 feet;

THENCE northeasterly parallel with Vanderbilt Avenue, 100 feet
to the southwesterly side of Atlantic Avenue;

THENCE northwesterly along the southwesterly side of Atlantic
Avenue, 50 feet to the point or place of BEGINNING.

EXHIBIT A - Page 3 of 5

VA 033628

*First American Title Insurance Company of New York*
SCHEDULE A (Description)

TITLE #: 563-K-6731

Lot 7 and 68

All that certain plot, piece or parcel of land, with the build-
ings and improvements thereon erected, situate, lying and being
in the Borough of Brooklyn, County of Kings, City and State of
New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Atlantic Avenue,
distant 120 feet easterly from the corner formed by the inter-
section of the southerly side of Atlantic Avenue with the east-
erly side of Vanderbilt Avenue;

RUNNING THENCE easterly along the southerly side of Atlantic
Avenue, 50 feet;

THENCE southerly parallel with Vanderbilt Avenue, 200 feet to
the northerly side of Pacific Street;

THENCE westerly along the northerly side of Pacific Street, 75
feet;

THENCE northerly parallel with Vanderbilt Avenue, 100 feet;

THENCE easterly parallel with Atlantic Avenue, 25 feet;

THENCE northerly parallel with Vanderbilt Avenue, 100 feet;
to the southerly side of Atlantic Avenue, at the point or place
of BEGINNING.

EXHIBIT A - Page __4__ of __5__

VA 033629

SCHEDULE A (Description)

*First American Title Insurance Company of New York*
Title No. 555-R-6751

Lot 71

All that certain plot, piece or parcel of land, with the build-
ings and improvements thereon erected, situate, lying and being
in the Borough of Brooklyn, County of Kings, City and State of
New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the north-
erly side of Pacific Street with the easterly side of Vanderbilt
Avenue;

RUNNING THENCE easterly along the northerly side of Pacific
Street 45 feet;

THENCE northerly parallel with Vanderbilt Avenue 100 feet;

THENCE westerly parallel with Pacific Street, 45 feet to the
easterly side of Vanderbilt Avenue;

THENCE southerly along the easterly side of Vanderbilt Avenue,
100 feet to the point or place of BEGINNING.

EXHIBIT A - Page __5__ of __5__

VA 033630

*First American Title Insurance Company of New York*

SCHEDULE A (Description)

TITLE #: 563-K-6731

Tax Lot 1 (Old Tax Lot 2)

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Vanderbilt Avenue, distant 25 feet southerly from the corner formed by the intersection of the Easterly side of Vanderbilt Avenue with the Southerly side of Atlantic Avenue;

RUNNING THENCE Easterly parallel with Atlantic Avenue, 70 feet;

THENCE Southerly, parallel with Vanderbilt Avenue, 50 feet;

THENCE Westerly, and again parallel with Atlantic Avenue, 70 feet to the easterly side of Vanderbilt Avenue;

THENCE Northerly, along the easterly side of Vanderbilt Avenue, 50 feet to the point or place of BEGINNING.

Old Tax Lot 4)

All that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southeasterly side of Vanderbilt Avenue with the southwesterly side of Atlantic Avenue;

RUNNING THENCE southeasterly, along the southwesterly side of Atlantic Avenue, 70 feet;

THENCE southwesterly, parallel with Vanderbilt Avenue, 25 feet;

THENCE northwesterly, parallel with Atlantic Avenue, 70 feet to the southeasterly side of Vanderbilt Avenue;

THENCE northeasterly along the southeasterly side of Vanderbilt Avenue, 25 feet to the point or place of BEGINNING.

EXHIBIT A - Page 1 of 5

VA 033631



## PACIFIC STREET

R6   M-1   M-1

LAND NOT AVAILABLE

EXCEPTED LOT

VANDERBILT AVENUE
SECONDARY ROAD

## ATLANTIC AVENUE
PRIMARY ROAD

EXHIBIT A - 1

## CONCEPT PLAN

TOTAL SITE AREA: 21,555 SQ. FT. (0.48 ACRES)
PROPERTY ZONING: M-1
BUILDING TYPE: 1897 SERIES 1960
SEATS: 60 SHOWN (UP TO 110 WITH MODIFICATIONS AND BATS)
BUILDING AREA: 3,348 SQ. FT. (INCL. FREEZER/COOLER)
FREEZER/COOLER AREA: 230 SQ. FT.
PARKING SPACES: 25

VA 033632



## CONCEPT PLAN F

EXHIBIT A - 2

TOTAL SITE AREA 21,533 SQ. FT. (0.49 ACRES)
PROPERTY ZONING M-1
BUILDING TYPE 1997 SERIES 1560
SEATS 80 SHOWN (UP TO 110 WITH MODIFICATIONS AND BAYS)
BUILDING AREA 3,349 SQ. FT. (INCL. FREEZER/COOLER)
FREEZER/COOLER AREA 230 SQ. FT.
PARKING SPACES: 23

VA 033633

## RENT:

Tenant promises to pay rent to Landlord at the address provided in the Notices section of this Lease (or such other address as Landlord may designate in writing from time to time) according to the following schedule:

A. From the rent commencement date specified in Exhibit C, attached hereto, until the last day of the month which is 60 months from the date a McDonald's Restaurant opens for business on the Demised Premises, Tenant shall pay $9,166.67 per month.

B. For the next 60 months, Tenant shall pay $10,541.67 per month.

C. For the next 60 months, Tenant shall pay $12,122.92 per month.

D. For the remainder of the term, Tenant shall pay $13,941.00 per month.

If the rent commencement date is other than the first day of the month, the first rental payment and the last rental payment shall be adjusted for the proportionate fraction of the whole month. All rental payments shall be made on 1st of every month for the then-current month.

_____          _____   MAR 1 8 1998
Landlord's Initials              Tenant's Initials

**EXHIBIT B**

EXHIBIT B - PAGE __1__ of __1__

VA 033634

## RENT COMMENCEMENT ADDENDUM

THIS IS AN ADDENDUM TO A LEASE dated __March 18__, 1998, between Anthony M. Musto (Landlord) and McDonald's Corporation (Tenant).

Tenant's liability for rent shall commence to accrue upon the first to occur of the following two events:

1. The date a McDonald's restaurant opens for business to the public on the Demised Premises; or

2. One Hundred Twenty (120) days after the last of the following conditions have been satisfied:

(a) Tenant has obtained all necessary permits and governmental approvals for the construction of Tenant's desired improvements have been obtained pursuant to Article 6.A; and

(b) all conditions precedent set forth in Article 6 of this Lease have been satisfied; and

(c) Landlord is not in breach of any warranty or covenant contained in the Lease; and

(d) a memorandum of lease and all required non-disturbance agreements have been recorded; and

(e) Landlord has completed all demolition and site work to Tenant's specifications, pursuant to Article 4.C.; and

(f) Landlord shall have delivered possession of the Demised Premises clear of all tenancies; and

(g) Landlord shall have delivered possession of the Demised Premises to Tenant free of all contamination in compliance with applicable laws and consistent with Environmental Remediation Addendum attached hereto as Exhibit H.

Landlord and Tenant agree to execute a Supplement setting forth the rental commencement date and the term of this Lease when these dates become ascertainable or are otherwise agreed to by the parties.

| | |
|---|---|
| _____ | _____ MAR 1 8 1998 |
| Landlord's Initials | Tenant's Initials |

## EXHIBIT C

C. Impervious Fill: Place and compact impervious fill material over drainage backfill to final subgrade.

3.14    FILL

A.    Preparation: Remove vegetation, topsoil, debris, wet, and unsatisfactory soil materials, obstructions, and deleterious materials from ground surface prior to placing fills.

1.    Plow strip, or break up sloped surfaces steeper than 1 vertical to 4 horizontal so fill material will bond with existing surface.

B.    When subgrade or existing ground surface to receive fill has a density less than that required for fill, break up ground surface to depth required, pulverize, moisture condition or aerate soil and recompact to required density.

C.    Place fill material in layers to required elevations for each location listed below.

1.    Under grass, use satisfactory excavated or borrow soil material.
2.    Under walks and pavements, use subbase or base material, or satisfactory excavated or borrow soil material.
3.    Under steps and ramps, use subbase material.
4.    Under building slabs, use drainage fill material.
5.    Under footings and foundations, use engineered fill.

3.15    MOISTURE CONTROL

A.    Uniformly moisten or aerate subgrade and each subsequent fill or backfill layer before compaction to within 2 percent of optimum moisture content.

1.    Do not place backfill or fill material on surfaces that are muddy, frozen, or contain frost or ice.
2.    Remove and replace, or scarify and air-dry satisfactory soil material that is too wet to compact to specified density.

3.    Stockpile or spread and dry removed wet satisfactory soil material.

3.16    COMPACTION          FILL MATERIAL REQUIRED SHOULD MEET THESES STANDARDS

A.    Place backfill and fill materials in layers not more than 8 inches in loose depth for material compacted by heavy compaction equipment, and not more than 4 inches in loose depth for material compacted by hand-operated tampers.

B.    Place backfill and fill materials evenly on all sides of structures to required elevations. Place backfill and fill uniformly along the full length of each structure.

C.    Percentage of Maximum Dry Density Requirements: Compact soil to not less than the following percentages of maximum dry density according to ASTM D 1557:

1.    Under structures, building slabs, steps, and pavements, compact the top 12 inches below subgrade and each layer of backfill or fill material at 95 percent maximum dry density.
2.    Under walkways, compact the top 6 inches below subgrade and each layer of backfill or fill material at 95 percent maximum dry density.

EARTHWORK

EXHIBIT D - PAGE  of

VA 033636

3.    Under lawn or unpaved areas, compact the top 6 inches below subgrade and each layer of backfill or fill material at 90 percent maximum dry density.

3.17    GRADING

A.    General: Uniformly grade areas to a smooth surface, free from irregular surface changes. Comply with compaction requirements and grade to cross sections, lines, and elevations indicated.

    1.    Provide a smooth transition between existing adjacent grades and new grades.
    2.    Cut out soft spots, fill low spots, and trim high spots to conform to required surface tolerances.

B.    Site Grading: Slope grades to direct water away from buildings and to prevent ponding. Finish subgrades to required elevations within the following tolerances:

    1.    Lawn or Unpaved Areas: Plus or minus 1.2 inches.
    2.    Walks: Plus or minus 1.2 inches.
    3.    Pavements: Plus or minus 1/2 inch.

C.    Grading Inside Building Lines: Finish subgrade to a tolerance of 1/2 inch when tested with a 10 foot straightedge.

3.18    SUBBASE AND BASE COURSES

A.    Under pavements and walks, place subbase course material on prepared subgrades. Place base course material over subbases to pavements.

    1.    Compact subbase and base courses at optimum moisture content to required grades, lines, cross sections and thickness to not less than 95 percent of ASTM D 4254 relative density.
    2.    Shape subbase and base to required crown elevations and cross-slope grades.
    3.    When thickness of compacted subbase or base course is 6 inches or less, place materials in a single layer.
    4.    When thickness of compacted subbase or base course exceeds 6 inches, place materials in equal layers, with no layer more than 6 inches thick or less than 3 inches thick when compacted.

B.    Pavement Shoulders: Place shoulders along edges of subbase and base course to prevent lateral movement. Construct shoulders at least 12 inches wide of acceptable soil materials and compact simultaneously with each subbase and base layer.

3.19    DRAINAGE FILL

A.    Under slabs-on-grade, place drainage fill course on prepared subgrade.

    1.    Compact drainage fill to required cross sections and thickness.
    2.    When compacted thickness of drainage fill is 6 inches or less, place materials in a single layer.
    3.    When compacted thickness of drainage fill exceeds 6 inches thick place materials in equal layers, with no layer more than 6 inches thick nor less than 3 inches thick when compacted.

3.20    FIELD QUALITY CONTROL

A.    Quality Control Testing During Construction:

EARTHWORK

02200 - 8

EXHIBIT D - PAGE 2 of 2

At a later date, Landlord and Tenant shall mutually agree upon a demolition contractor's bid to be attached hereto. Such bid shall comply with the requirements of Article 4.C. of this Lease.

Exhibit E

MAR 1 8 1998

INITIAL
& DATE

VA 033638

**TAX ADDENDUM**

THIS IS AN ADDENDUM TO A LEASE dated ___March 18___, 1998, between Anthony M. Musto (Landlord) and McDonald's Corporation (Tenant).

1. Except as provided in Paragraph 5 below, Tenant shall pay promptly and before they become delinquent all taxes, assessments and other impositions generally or specially imposed at any time during the term or any extension of this Lease, upon or against the Demised Premises, including the land and all buildings, furniture, fixtures, equipment and improvements now or later located on the property, lawfully assessed either in the name of the Landlord, fee owner or Tenant. For purposes of this Tax Addendum only, the term "Demised Premises" shall not be deemed to include any easement areas. Within forty-five (45) days of written request therefore, Tenant shall provide Landlord with reasonable evidence of payment of the amounts payable pursuant to the Tax Addendum.

2. (Intentionally Deleted).

3. A prorata adjustment shall be made with respect to the commencement and ending of Tenant's tax liability if the commencement or ending of Tenant's liability does not coincide with the tax year.

4. Tenant shall have the right, in its own name or in the name of Landlord, to make and prosecute application(s) for abatement of taxes or appeals for correction of assessments, and Landlord agrees to cooperate fully with Tenant in this regard. Landlord agrees to sign all necessary instruments in connection with such application or appeal and, in addition, hereby appoints Tenant its agent-in-fact for purposes of such signature, which shall be an agency coupled with an interest. Landlord shall not settle any such application or appeal without Tenant's prior written approval in each instance.

5. Notwithstanding anything contained in this Lease, Tenant shall not be under obligation to pay any part of any franchise, excise, estate, inheritance, income or similar tax which is or may become payable by Landlord or which may be imposed against Landlord or against the rents payable under the Lease or upon the income or profits of Landlord by reason of any law now in force or later enacted. With regard to betterments and special assessments attributable to and levied or assessed against the Demised Premises, Landlord and Tenant agree that they shall be paid for over the maximum period allowed by law and Tenant shall be obligated to pay only those installments which fall due during the term of this Lease and as it may be extended. Tenant shall not be liable for any special assessments or similar tax, levied, assessed, imposed or approved prior to the term of this Lease. Landlord agrees to give Tenant prompt notice of any special assessment proceedings to allow Tenant to oppose such assessments.

6. Tenant shall commence payment of real estate taxes at the same date Tenant commences to pay rent as specified in Exhibit C.

_____                    MAR 1 8 1998
Landlord's Initials          Tenant's Initials

**Exhibit F** (Page 1 of 1)

VA 033639

# OPTION RENT ADDENDUM
*FAIR MARKET VALUE*

**THIS ADDENDUM** is attached to and forms a part of the Ground Lease ("Lease") dated ___March 18___ 1998, between Anthony M. Musto ("Landlord") and McDonald's Corporation ("Tenant"). Notwithstanding anything in the Lease to the contrary, the Landlord and Tenant agree as follows:

The annual rental that shall be payable during the first extension period described in Article 13 of the Lease shall be equivalent to the greater of:

A. Eighty percent (80%) of the Fair Market Rental Value of the Demised Premises at the end of the primary term, exclusive of any and all improvements then existing on the Demised Premises(called the "FMV"), as determined by written agreement of Landlord and Tenant; or

B. During the first five-year option, Tenant shall pay monthly rent of $16,032.58.

The annual rental that shall be payable during each subsequent extension period after the first extension period shall be increased by an additional fifteen percent (15%) over the previous period. Landlord shall notify Tenant of Landlord's estimate of the FMV no later than one hundred eighty (180) days prior to the end of the primary term.

Should Landlord and Tenant fail to reach an agreement in writing as to the FMV within ten (10) days from Tenant's receipt of Landlord's estimate of the FMV, the FMV shall be estimated by two qualified MAI or SREA real estate appraisers with five years experience in appraising commercial property in the county in which the Demised Premises is located, one to be appointed and compensated by Tenant and the other to be appointed and compensated by Landlord. Landlord and Tenant shall appoint their appraisers within 15 days after the date either party notifies the other that it is unable to reach an agreement as to the Fair Market Value. Each appraiser's estimate is to be made by a letter opinion of value.

If, within 20 days from their appointment, the two appraisers can agree to the FMV not differing by more than 15%, then an average of the two appraisals shall be used for the Fair Market Rental Value of the Demised Premises. If the two appraisals differ by more than 15%, then the two appraisers shall appoint a third appraiser chosen from a list of three appraisers designated by the National Headquarters of the American Institute of Real Estate Appraisers or, if it is no longer in existence, a similar or successor organization.. The three appraisers so appointed shall then, within 20 days of the date the third appraiser is appointed, estimate, by means of a letter opinion of value, the FMV. The decisions of the appraisers, or a majority of them, shall be binding upon the parties. If the appraisers, or a majority of them, cannot agree on the FMV, it shall be determined by adding all three estimates and dividing the total of all three estimates by the number three.

VA 033640

If one of the parties fails to chose an appraiser within the specified time period or fails to cooperate in any way so that the process described above cannot be completed prior to 120 days of the expiration of the primary term of this Lease, the FMV of the one appraiser chosen by the cooperating party shall be used to determine the rent during the extension periods. The appraisers shall not be given the estimates of the parties until they have issued their letter opinions of value. The fee of the third appraiser shall be shared equally by Landlord and Tenant.

The rental value shall be established based upon a definition of Fair Market Rental Value as the price which an average well-informed tenant would pay and an average well-informed landlord would accept, exclusive of Tenant's improvements, knowing all of the uses to which the property can be put, without duress on either party.

The standard market data approach technique for valuing vacant land shall be used by the appraisers. All comparable leases shall be appropriately adjusted, and the written reports shall indicate the reasons for the adjustment so made. If adequate comparable leases are not available, then a land residual technique, as defined by the American Institute of Real Estate Appraisers, shall be used. The real estate income component used in the residual technique shall be economic rental for hypothetical improvements, but in no event shall any business income be considered in the analysis.

Landlord and Tenant agrees to execute and deliver to each other a supplement to this Lease confirming the rent as determined by the method described in this Addendum.


_____            _____  MAR 1 8 1998

Landlord's Initials            Tenant's Initials


**EXHIBIT G**

ENVIRONMENTAL REMEDITAION ADDENDUM

Landlord and Tenant hereby acknowledge that there are underground petroleum storage tanks on the Premises and that such tanks did leak and cause contamination in the surrounding soil or that contamination may have occurred from other sources.

Landlord hereby agrees, at Landlord's sole cost and expense, to properly remove any and all underground tank(s) from the Premises, define the nature and extent of any soil and/or ground water contamination at or from the Premises and clean up all contaminated soil and ground water in accordance with applicable or relevant Federal, State and/or local requirements or standards, and to the satisfaction of Tenant, at, beneath, or from the Premises, within sixty (60) days after Tenant notifies Landlord that all conditions precedent in this Lease have been satisfied. Landlord agrees that all tank removal, investigatory and clean up work shall be performed in a manner to minimize interference with Tenant's development plans, including but not limited to scheduling for the Premises and with Tenant's use of the Premises. Landlord agrees to provide Tenant with the written results of all soil quality, ground water quality, engineering or contamination tests performed in connection with the investigation or clean up.

When the underground tanks have been properly removed, and all contaminated soil and ground water have been cleaned up, Landlord agrees to promptly notify Tenant and allow Tenant and any governmental agency to inspect or test the Premises to determine that all contaminated soil and ground water have been cleaned up and all applicable governmental rules, standards and regulations have been complied with. Further, Landlord agrees to provide Tenant with a "No further Action" or "clean letter" from the overseeing governmental agency. If Tenant's engineer determines that all contaminated soil has been removed, Tenant shall proceed with construction prior to receipt of such letter. If Tenant's engineer determines that all contaminated soil has not been removed, Landlord and Tenant shall mutually agree upon a second engineer and the determination of such engineer shall be binding upon the parties. Landlord shall also perform any post-occupancy monitoring of soils and/or ground water at or about the Premises which may be required to comply with any governmental rules, standards or regulations and shall provide Tenant with copies of the results of any such monitoring on a quarterly basis.

Landlord further acknowledges that the results of the soil and ground water tests conducted by Tenant, as well as any test previously conducted by Landlord, may be revealed to or legally discovered by other parties, including but not limited to governmental or regulatory agencies. Landlord agrees that Tenant is released from all liability to Landlord for any costs, expenses, claims or causes of action associated with or resulting from the release or discovery of the tests or other information on the condition of the Premises.

If Tenant or any governmental agency with lawful jurisdiction determines that all of the contaminated soil and ground water have not been cleaned up to its satisfaction,

VA 033642

Landlord agrees to comply with reasonable directions from any applicable governmental agency to remedy any deficiency in Landlord's clean up of the Premises. Such compliance with directions shall be done in a timely manner acceptable to Tenant and/or other directing agency.

Landlord further agrees to indemnify and hold Tenant harmless in the event that contamination from petroleum hydrocarbons, hazardous substances or other governmentally defined constituents is discovered to have been transported or migrated to other properties. This hold harmless and indemnity shall survive the termination of this Lease and shall be binding on Landlord's heirs, successors and assigns.

Landlord's obligations to perform the above described work will hereinafter be referred to as "Landlord's Work". Landlord further promises to (1) pay all costs to complete Landlord's Work in a timely manner; (2) provide affidavits, statements and waivers reasonably required by Tenant to insure that all lien rights have been released; (3) perform all of Landlord's Work in a good, professional workmanlike manner consistent with practices in the area for similar work; (4) indemnify, defend and hold harmless Tenant from all costs, claims, and damages arising out of or related to Landlord's Work; (5) coordinate all of Landlord's Work with the appropriate governmental agency(s) and (6) obtain all necessary permits, and governmental approvals or licenses to perform Landlord's Work and provide Tenant with satisfactory proof that permits, approvals and licenses have been obtained.

In the event that Landlord's Work has not been completed within the time limit provided and all other conditions precedent have been satisfied, Tenant may, at its sole option, (1) declare Landlord in default and demand performance, (2) declare Landlord in default and perform Landlord's Work itself and deduct any amounts expended performing Landlord's Work from Tenant's rent next due, or (3) terminate this Lease. Landlord shall not have the right to terminate this Lease if Tenant has notified Landlord that all other conditions precedent have been met and Landlord has not completed Landlord's Work. Tenant shall not have any right to terminate this Lease pursuant to this paragraph after Tenant commences construction of its improvements on the Demised Premises.

At Tenant's option, Tenant may undertake grading and foundation excavation work on the Premises prior to completion of remediation. If such activities involve the removal of any contaminated soils from the Premises or increased costs due to the contaminated nature of any soils, Landlord hereby agrees to contract and pay for the costs of any special transportation or disposal needed to the contaminated soils and such increased costs of grading and excavation. To the best of its ability, Tenant shall coordinate its grading and excavation activities with the Landlord to minimize the interference with any of Landlord's Work and the costs of grading, excavation and removal of any contaminated soils.

If Tenant elects to begin construction prior to the completion of Landlord's Work, Landlord will continue to remain liable for proper completion of Landlord's Work not performed by Landlord prior to the commencement of construction and for any

VA 033643

damages related to the presence or migration of contaminants and to Landlord's Work performed by Landlord, including any third party or governmental agency claims.

## EXHIBIT H

VA 033644