# EXHIBIT 109

Message

---

| | |
|---|---|
| **From**: | Tom [tli@sprgp.com] |
| **Sent**: | 12/15/2017 5:27:42 PM |
| **To**: | O'Connor Cassie [Cassie.O'Connor@us.mcd.com]; HERSH ROSENBERG [hershro@gmail.com] |
| **CC**: | Sam Rottenberg [sam.rottenberg@gmail.com]; Simon Dushinsky [simon@rabskygroup.com] |
| **Subject**: | RE: 840 Atlantic Ave, Brooklyn NY L/C:031-2093; File #40160 |
| **Attachments**: | Lease - executed 11-30-17 (01700040xB2F1A).pdf |

Hi Cassie,

Please see attached lease with redaction, per your request.
Please let me know if you can process now or if you have any questions.

Thanks,
Tom
646 241 0359

---

**From:** O'Connor Cassie [mailto:Cassie.O'Connor@us.mcd.com]
**Sent:** Thursday, December 14, 2017 10:20 AM
**To:** HERSH ROSENBERG <hershro@gmail.com>
**Cc:** Sam Rottenberg <sam.rottenberg@gmail.com>; Simon Dushinsky <simon@rabskygroup.com>; Tom <tli@sprgp.com>
**Subject:** RE: 840 Atlantic Ave, Brooklyn NY L/C:031-2093; File #40160

Mr. Rosenberg,

Since your lease with our former landlord becomes a "Head Lease",  and our lease becomes a sublease, we need a copy for our files.  You can redact any information in that lease that you do with to share, but we do require a copy.

Thanks,
Cassie

**From:** HERSH ROSENBERG [mailto:hershro@gmail.com]
**Sent:** Wednesday, December 13, 2017 4:20 PM
**To:** O'Connor Cassie <Cassie.O'Connor@us.mcd.com>
**Cc:** Sam Rottenberg <sam.rottenberg@gmail.com>; Simon Dushinsky <simon@rabskygroup.com>; tli@sprgp.com
**Subject:** 840 Atlantic Ave, Brooklyn NY L/C:031-2093; File #40160

Dear Ms. O'Connor,


I am writing on behalf of Vanderbilt Atlantic Holdings LLC in response to your letter dated 12/11/17.

Per your request, please find attached the following transaction documents:


- Signed W-9
- Memorandum of Lease

- Assignment and Assumption of Lease

We are supplying a copy of the Memorandum of Lease in place of the Ground Lease.

Please let me know if you are now able to process the change of payee, or if you have any questions.

Thank you,

Hersh Rosenberg
347-563-7939

---

The information contained in this e-mail and any accompanying documents is confidential, may be privileged, and is intended solely for the person and/or entity to whom it is addressed (i.e. those identified in the "To" and "cc" box). They are the property of McDonald's Corporation. Unauthorized review, use, disclosure, or copying of this communication, or any part thereof, is strictly prohibited and may be unlawful. If you have received this e-mail in error, please return the e-mail and attachments to the sender and delete the e-mail and attachments and any copy from your system. McDonald's thanks you for your cooperation.

# LEASE

*BETWEEN*

**M.M.B. Associates, LLC, as Landlord**

*AND*

**Vanderbilt Atlantic Holdings LLC, as Tenant**

*FOR PREMISES LOCATED AT:*

**840 Atlantic Avenue**

**Brooklyn, New York**

---

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015150

Table of Contents

|   |   | Page |
|---|---|------|
| 1. | **DEFINITIONS** | 1 |
| 2. | **TERM** | 20 |

| 6. | **COMPLIANCE** | 25 |
|  | 6.1 *Generally* | 25 |
|  | 6.2 *Copies of Notices* | 25 |

VA 015151

Table of Contents (continued)

Page

9.   **HAZARDOUS SUBSTANCES**................................................................................ 27

   9.1   *Restrictions* .................................................................................................... 27
   9.2   *Compliance; Clean-Up* ................................................................................. 27

11.   **RIGHT OF CONTEST**.......................................................................................... 30

   11.1   *Tenant's Right; Contest Conditions*............................................................. 30
   11.2   *Landlord Obligations and Protections* ........................................................ 31
   11.3   *Miscellaneous* ............................................................................................... 31
   11.4   *Contest Security* ........................................................................................... 31

13.   **LOSSES AND LOSS PROCEEDS**......................................................................... 34

   13.1   *Loss* ............................................................................................................... 34
   13.2   *Total Loss With Regard to Condemnation*................................................... 34
   13.3   *Termination Option Loss* ............................................................................. 34
   13.4   *Revaluation* .................................................................................................. 34
   13.5   *Temporary Condemnation* ........................................................................... 34
   13.6   *Restoration*................................................................................................... 34
   13.7   *Disbursement* ............................................................................................... 34

14.   **REPRESENTATIONS AND WARRANTIES** ......................................................... 35

   14.1   *Due Authorization and Execution* ............................................................... 35
   14.2   *No Litigation* ................................................................................................ 35
   14.3   *No Pending Condemnation* .......................................................................... 35

VA 015152

Table of Contents (continued)

|  |  | Page |
|---|---|---|
| 14.4 | *FIRPTA* | 36 |
| 14.5 | *No Other Tenants* | 36 |
| 14.6 | *Prohibited Party* | 36 |
| **15.** | **LANDLORD'S TRANSFERS** | 36 |
| 15.1 | *Landlord's Right to Convey* | 36 |
| 15.2 | *Release of Landlord* | 36 |
| **16.** | **FEE MORTGAGES** | 36 |
| 16.1 | *Fee Mortgage* | 36 |
| 16.2 | *Successor to Landlord* | 37 |
| 16.3 | *Notices and Cure Rights of Fee Mortgagee* | 37 |
| **20.** | **LEASEHOLD MORTGAGES** | 39 |
| 20.1 | *Leasehold Mortgages* | 40 |
| 20.2 | *Lease Impairments* | 40 |
| 20.3 | *Notices* | 40 |
| 20.4 | *Opportunity to Cure* | 40 |
| 20.5 | *Cure Rights Implementation* | 40 |
| 20.6 | *New Lease* | 40 |
| 20.7 | *Tenant's Rights* | 41 |
| 20.8 | *Certain Proceedings* | 42 |
| 20.9 | *No Merger* | 42 |
| 20.10 | *No Personal Liability* | 42 |
| 20.11 | *Multiple Leasehold Mortgagees* | 42 |
| 20.12 | *Further Assurances* | 42 |
| 20.13 | *Miscellaneous* | 43 |
| **21.** | **INTENTIONALLY OMITTED** | 43 |
| **22.** | **QUIET ENJOYMENT; ACCESS AND INSPECTION; TITLE** | 43 |

VA 015153

Table of Contents (continued)

Page

22.1  *Quiet Enjoyment* ................................................................................. 43
22.2  *Access and Inspection* ....................................................................... 43
22.3  *Title* ...................................................................................................... 44

24.  **END OF TERM** ........................................................................................ 49

25.  **NOTICES** ................................................................................................. 50

27.  **NONRECOURSE** ..................................................................................... 51

28.  **ADDITIONAL DELIVERIES; THIRD PARTIES** ............................... 51

28.1  *Estoppel Certificates* ........................................................................ 51
28.2  *Further Assurances* .......................................................................... 51
28.3  *Memorandum of Lease* ...................................................................... 51
28.4  *Modification* ....................................................................................... 51
28.5  *Successors and Assigns* ..................................................................... 51

29.  **MISCELLANEOUS** ................................................................................. 52

29.1  *Confidentiality* .................................................................................. 52
29.2  *Costs and Expenses; Legal Costs* .................................................... 52
29.3  *No Consequential Damages* ............................................................. 52
29.4  *No Waiver by Silence* ........................................................................ 52
29.5  *Performance Under Protest* ............................................................. 52
29.6  *Survival* .............................................................................................. 52
29.7  *Unavoidable Delay* ........................................................................... 53
29.8  *Vault Space* ........................................................................................ 53

VA 015154

Table of Contents (continued)

Page

**30.    INTERPRETATION, EXECUTION, AND APPLICATION OF LEASE** .......................................................................................................... 53

30.1     *Captions* .............................................................................................. 53
30.2     *Counterparts* ....................................................................................... 53
30.3     *Delivery of Drafts* ............................................................................. 53
30.4     *Entire Agreement* .............................................................................. 53
30.5     *Governing Law* .................................................................................. 53
30.6     *Partial Invalidity* .............................................................................. 53
30.7     *Principles of Interpretation* .............................................................. 53
30.8     *Reasonableness* .................................................................................. 54
30.9     *Exhibits* ............................................................................................. 54

**32.     STATE-SPECIFIC PROVISIONS** ................................................................ 57

32.1     *Delivery Of Premises* ........................................................................ 57
32.2     *Casualty* ............................................................................................ 57
32.3     *Statutory Right or Redemption* ......................................................... 58
32.4     *Consumer Contract Statutes* ............................................................. 58
32.5     *Waiver Of Stay* .................................................................................. 58
32.6     *No Implied Consent To Remaining In Possession* ............................ 58
32.7     *Sidewalk Repairs* .............................................................................. 58

VA 015155

## LEASE

This **LEASE** (this "Lease") is made and entered into as of November 30, 2017 (the "Commencement Date"), between M.M.B. Associates, LLC, a New York limited liability company ("Landlord"), and Vanderbilt Atlantic Holdings LLC, a New York limited liability company ("Tenant").

## *W I T N E S S E T H :*

**WHEREAS**, as of the Commencement Date, Landlord owns the following real property (collectively, the "Property"): (a) the land described in **Exhibit A** attached hereto (the "Land"), with an address of 840 Atlantic Avenue, Brooklyn, New York (Block 1122, Lots 1, 68 and 71); (b) all buildings, structures, and other improvements and appurtenances located on the Land; (c) all right, title, and interest of Landlord, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line of such street or highway; (d) the appurtenances and all the estate and rights of Landlord in and to the Land (including all right, title and interest of Landlord in or to any and all development rights, easement rights and rights of way, if any); and (e) any strips or gores adjoining the Land;

**WHEREAS**, Landlord desires to lease to Tenant the Property, including, but not limited to, the Land and the Improvements (as hereinafter defined) (the "Premises"), and Tenant desires to lease from Landlord the Premises;

**WHEREAS**, the Parties (as hereinafter defined) desire to enter into this Lease to set forth their rights and obligations to each other relating to the Premises; and

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, Landlord hereby leases the Premises to Tenant, and Tenant hereby leases the Premises from Landlord, subject only to the Permitted Exceptions (as hereinafter defined), for the Term (as hereinafter defined), upon the terms and conditions of this Lease.

## 1.   DEFINITIONS

The following terms and phrases as used in this Lease shall be defined as set forth in this Section 1.



"Affiliate" of any specified Person means any other Person Controlling or Controlled by or under common Control with such specified Person. "Affiliated" shall have the correlative meaning.



VA 015156



"Arbitration" means a proceeding under the commercial arbitration rules of the American Arbitration Association, as modified or replaced from time to time.

"Bankruptcy Law" means Title 11, United States Code, and any other or successor state or federal statute relating to assignment for the benefit of creditors, appointment of a receiver or trustee, bankruptcy, composition, insolvency, moratorium, reorganization, or similar matters.

"Bankruptcy Proceeding" means any proceeding, whether voluntary or involuntary, under any Bankruptcy Law.

"Bankruptcy Sale" means a sale of any property, or any interest in any property, under 11 U.S.C. §363 or otherwise in any bankruptcy, insolvency, or similar proceeding affecting the owner of such property.

"Bankruptcy Termination Option" means Tenant's right to treat this Lease as terminated under 11 U.S.C. §365(h)(1)(A)(i) or any comparable provision of law.

"BID" means any business improvement district or similar district or program, proposed or actual, which includes, may include, or affects any portion of the Premises.

{Ground Lease - Execution Version / 01692902.DOCX /}

W:\WPDOCS\CLIENT\849\87624\BA\00301652592.DOCX

2

VA 015157



"Buildings" means all buildings located or to be located on the Premises from time to time.

"Building Equipment" means all fixtures incorporated in the Buildings and used, useful, or necessary to operate the Buildings as such (including boilers; compactors; compressors; conduits; ducts; elevators; engines; equipment; escalators; fittings; heating, ventilating and air conditioning systems; machinery; and pipes).

"Business Day" means any weekday on which State-chartered banks are open to conduct regular banking business with bank personnel.

"Casualty" means any damage or destruction of any kind or nature, ordinary or extraordinary, foreseen or unforeseen, affecting any or all Improvements, whether or not insured or insurable.



"Condemnation" means: (a) any temporary or permanent taking of (or of the right to use or occupy) any Premises by condemnation, eminent domain, or any similar proceeding; or (b) any action by any Government not resulting in an actual transfer of an interest in (or of the right to use or occupy) any Premises but creating a right to compensation, such as a change in grade of any street upon which the Premises abut.

"Condemnation Award" means any award(s) paid or payable (whether or not in a separate award) to either party or its Mortgagee after the Commencement Date because of or as compensation for any Condemnation, including: (1) any award made for any improvements that are the subject of the Condemnation; (2) the full amount paid or payable by the condemning authority for the estate that is the subject of the Condemnation, as determined in Condemnation; (3) any interest on such award; and (4) any other sums payable on account of such Condemnation, including for any prepayment premium under any Mortgage.

"Condemnation Effective Date" means, for any Condemnation, the first date when the condemning authority has acquired title to or possession of any portion of the Premises subject to the Condemnation.



VA 015158



{Ground Lease - Execution Version / 01692902.DOCX /}

W:\WLDOC\CLIENTS\0895765\JIAB\00A92262.DOCX

VA 015159



"Contest" shall be as defined in Section 11.1.

"Contest Conditions" shall be as defined in Section 11.1

"Control" means, with respect to any Person, possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether by ownership of Equity Interests, by contract, or otherwise.

"County" means the county where the Premises are located.

"CPI" means the United States Department of Labor, Bureau of Labor Statistics "Consumer Price Index" for Urban Wage Earners and Clerical Workers (CPI-W) published for

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015160

New York - Northern New Jersey - Long Island, NY-NJ-CT-PA, with a base of 1982-1984=100. If the CPI ceases to be published, with no successor index, then the parties shall reasonably agree upon a reasonable substitute index. The CPI for any date means the CPI last published before the calendar month that includes such date.

"CPI Adjustment Factor" means, as of every fifth anniversary of the Commencement Date (each an "Adjustment Date"), the greater of (a) 1.00 or (b) the CPI for such date divided by the CPI for the date occurring five (5) years prior to such Adjustment Date.

"Default" means any Monetary Default or Nonmonetary Default.

"Default Interest" means interest at an annual rate equal to the lesser of: (a) the Prime Rate plus four percent (4%) per annum; or (b) the Usury Limit.

"Environmental Law" means any Law regarding the following at, in, under, above, or upon the Premises or the Improvements: (a) air, environmental, ground water, or soil conditions; or (b) clean-up, control, disposal, generation, storage, release, transportation, or use of, or liability or standards of conduct concerning, Hazardous Substances.



"Equity Interest" means all or any part of any direct or indirect equity or ownership interest(s) (whether stock, partnership interest, beneficial interest in a trust, membership interest, or other interest of an ownership or equity nature) in any entity at any tier of ownership that directly or indirectly owns or holds any ownership or equity interest in a Person.

"Estoppel Certificate" means with regard to a request made by Landlord: a statement, addressed to Landlord or as Landlord directs, and stating whether or not to the best knowledge of Tenant (a) there is a continuing default by Landlord in the performance or observance of any covenant, agreement or condition contained in this Lease to be performed or observed by Landlord, (b) there is a continuing Default or Event of Default and, if so, specifying each such Default and Event of Default, (c) there shall have occurred any event which, with the giving of Notice or passage of time or both, would become a Default or Event of Default and, if so, specifying each such Default or occurrence of which Tenant may have knowledge, (d) the Fixed Rent amount and other Additional Rent currently payable under this Lease, (e) whether or not there are improvements or actions required under this Lease or other executory items that are prerequisite to Tenant's obligation to perform under this Lease, and if so, the nature thereof, (f) whether there is pending any action, Arbitration or proceeding between Landlord and Tenant arising under this Lease, and, if so, the nature thereof, (g) whether or not Tenant has

{Ground Lease - Execution Version / 01692902.DOCX /}

6

VA 015161

counterclaims, defenses or right to offset against any amounts due to Landlord under this Lease and if so, the amount and nature thereof; and whether or not Tenant is entitled to any concessions, rebates or any rent reductions under this Lease for whatever reason as of the date the statement is given, and if so, the amount and nature thereof; (h) that the addresses for notices are as set out in this Lease or as stated in the statement; and (i) in the case of a request by a Fee Mortgagee, prospective Fee Mortgagee or prospective successor to Landlord's interest in this Lease, such other information as such party may reasonably require; and Estoppel Certificate means with regard to a request made by Tenant: a statement, addressed to Tenant or as Tenant directs, and stating whether or not to the best knowledge of Landlord (a) there is a continuing default by Tenant in the performance or observance of any covenant, agreement or condition contained in this Lease to be performed or observed by Tenant, (b) there is a continuing Default or Event of Default and, if so, specifying each such Default and Event of Default, (c) there shall have occurred any event which, with the giving of Notice or passage of time or both, would become a Default or Event of Default and, if so, specifying each such Default or occurrence of which Landlord may have knowledge, (d) the Fixed Rent amount and other Additional Rent currently payable under this Lease, (e) whether or not there are improvements or actions required under this Lease or other executory items that are prerequisite to Landlord's obligation to perform under this Lease, and if so, the nature thereof, (f) whether there is pending any action, Arbitration or proceeding between Landlord and Tenant arising under this Lease, and, if so, the nature thereof, (g) whether or not Landlord has counterclaims, defenses or right to offset against any amounts due to Tenant under this Lease and if so, the amount and nature thereof; and whether or not Landlord is entitled to any concessions, rebates or any rent reductions under this Lease for whatever reason as of the date the statement is given, and if so, the amount and nature thereof; (h) that the addresses for notices are as set out in this Lease or as stated in the statement; and (i) in the case of a request by a Leasehold Mortgagee, prospective Leasehold Mortgagee or prospective successor to Tenant's interest in this Lease, such other information as such party may reasonably require.

"Event of Default" shall be as defined in Section 23.

"Existing Lease" means that certain Ground Lease dated March 18, 1998 between Anthony N. Musto (Landlord's predecessor in interest) and McDonald's Corporation, and all renewals, modifications and amendments thereto, as evidenced by that certain Memorandum of Lease dated April 14, 1998 and recorded on August 24, 1998 in the City Registrar's Office in Reel 4264, File 1854, and that certain Supplement to Lease dated August 12, 1999 and recorded on February 2, 2000 1998 in the City Registrar's Office in Reel 4748, File 1809.

"Existing Tenant" means McDonald's Corporation, and its successors and assigns.



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015162

"Fee Debt Service" means all payments required from time to time under any Fee Mortgage, including principal, interest, late charges, costs of collection, reimbursement of protective advances, and any other sums secured by a Fee Mortgage.

"Fee Estate" means Landlord's fee estate in the Premises, including Landlord's reversionary interest in the Premises after the Expiration Date.

"Fee Mortgage" means any Mortgage, deed of trust, collateral assignment or other voluntary lien (as amended from time to time) that encumbers all or part of the Fee Estate. A Fee Mortgage shall not be superior to this Lease.

"Fee Mortgagee" means any Mortgagee holding a Fee Mortgage.

"FF&E" means all movable furniture, furnishings, equipment, and personal property of Tenant or anyone claiming through Tenant (excluding Building Equipment) that may be removed without material damage to the Improvements and without adversely affecting: (a) the structural integrity of the Improvements; (b) any electrical, plumbing, mechanical, or other system in the Improvements; (c) the present or future operation of any such system; or (d) the present or future provision of any utility service to the Improvements. FF&E includes items such as factory equipment, furniture, movable equipment, telephone, telecommunications and facsimile transmission equipment, point of sale equipment, televisions, radios, network racks, and computer systems and peripherals.

"Financed FF&E" means any FF&E subject to an Equipment Lien in favor of a lessor or lender that: (a) is not an Affiliate of Tenant, and (b) actually provides bona fide financing or a bona fide equipment lease after the Commencement Date for Tenant's acquisition or use of such FF&E.

"Foreclosure Event" means any: (a) foreclosure sale (or trustee's sale, assignment in lieu of foreclosure, Bankruptcy Sale, or similar transfer) affecting the Leasehold Estate; or (b) Leasehold Mortgagee's exercise of any other right or remedy under a Leasehold Mortgage (or applicable law) that divests Tenant of the Leasehold Estate.

"Government" means each and every governmental agency, authority, bureau, department, quasi-governmental body, or other entity or instrumentality having or claiming jurisdiction over the Premises or the Improvements (or any activity this Lease permits), including the United States government, the State and County governments and their subdivisions and municipalities, the New York City government and their subdivisions, Brooklyn Community Board 8, and all other applicable governmental agencies, authorities, and subdivisions thereof. "Government" shall also include any planning commission, board of standards and appeals, department of buildings, city council, zoning board of appeals, or similar body having or claiming jurisdiction over the Premises or the Improvements or any activities on or at the Premises or the Improvements.

VA 015163

"Hazardous Substances" means all flammable substances, explosives, radioactive materials, asbestos, asbestos-containing materials, polychlorinated biphenyls, chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, hazardous wastes, medical wastes, toxic substances or related materials, explosives, petroleum and petroleum products, and any "hazardous" or "toxic" material, substance or waste that is defined by those or similar terms or is regulated as such under any Law, including any material, substance or waste that is: (i) defined as a "hazardous substance" under Section 311 of the Water Pollution Control Act (33 U.S.C. §1317), as amended; (ii) defined as a "hazardous waste" under Section 1004 of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §6901, et seq., as amended; (iii) defined as a "hazardous substance" or "hazardous waste" under Section 101 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Reauthorization Act of 1986, 42 U.S.C. §9601 et seq. or any so-called "superfund" or "superlien" law; (iv) defined as a "pollutant" or "contaminant" under 42 U.S.C.A. §9601(33); (v) defined as "hazardous waste" under 40 C.F.R. Part 260; (vi) defined as a "hazardous chemical" under 29 C.F.R. Part 1910; or (vii) subject to any other Law regulating, relating to or imposing obligations, liability or standards of conduct concerning protection of human health, plant life, animal life, natural resources, property or the enjoyment of life or property free from the presence in the environment of any solid, liquid, gas, odor or any form of energy from whatever source.

"Hazardous Substances Discharge" means any deposit, discharge, generation, release, or spill of Hazardous Substances that occurs at or from the Premises or the Improvements, or on or into the Land, or the Property, or that arises at any time from the use, occupancy, or operation of the Premises or the Improvements or any activities conducted therein or thereon or any adjacent or nearby real property, or resulting from seepage, leakage, or other transmission of Hazardous Substances from other real property to the Land or the Property, whether or not caused by a Party to this Lease and whether occurring before or after the Commencement Date.

"Improvements" means all Buildings, structures, landscaping, driveways, parking areas, sidewalks and other improvements and appurtenances located or to be located on the Premises from time to time.

"Indemnify" means, where this Lease states that any Indemnitor shall "Indemnify" any Indemnitee from, against, or for a particular matter (the "Indemnified Risk"), that the Indemnitor shall indemnify the Indemnitee and defend and hold the Indemnitee harmless from and against any and all actual out of pocket loss, cost, claims, liability, penalties, judgments, damages, and other injury, detriment, or expense (including Legal Costs, interest and penalties) that the Indemnitee suffers or incurs: (a) from, as a result of, or on account of the Indemnified Risk; or (b) in enforcing the Indemnitor's indemnity. Any indemnity contained in this Lease shall not include any consequential, special, indirect or punitive damages. Indemnitor's counsel shall be subject to Indemnitee's approval, not to be unreasonably withheld. Any counsel satisfactory to Indemnitor's insurance carrier shall be automatically deemed satisfactory.

"Indemnitee" means any Party entitled to be Indemnified under this Lease and its agents, directors, employees, Equity Interest holders, mortgagees, and officers.

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015164

"Indemnitor" means a Party that agrees to Indemnify any other Person.



"Landlord" initially means the Person identified in the opening paragraph of this Lease as the "Landlord". After every Transfer of the Fee Estate, "Landlord" means only the owner(s) of the Fee Estate at the time in question. If any former Landlord no longer has any interest in the Fee Estate or a Transfer of the Fee Estate occurs (in all cases in compliance with this Lease,

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015165

including requirements regarding any Trust Funds), the transferor (including a Fee Mortgagee, or anyone acting for a Fee Mortgagee, that has acquired and then disposed of the Fee Estate) shall be and hereby is entirely freed and relieved of all obligations of Landlord under this Lease accruing from and after the date of such Transfer, provided that the new Landlord has assumed, in a written instrument, memorialized by a memo of such written instrument in recordable form, all of the obligations of any transferor hereunder. It shall be deemed and construed without further agreement between the Parties or their successors in interest or between the Parties and the Person who acquires or owns the Premises, including the Transferee (including a Fee Mortgagee taking title to the Fee Estate or a Person taking title to the Fee Estate from a Fee Mortgagee) on any such Transfer, that such Person has assumed and agreed to carry out any and all agreements, covenants, and obligations of Landlord under this Lease accruing from and after the date of such Transfer.

"Landlord's Percentage" means the percentage represented by a fraction, the numerator of which is the Leased Fee Value and the denominator of which is the sum of the Leased Fee Value plus the Leased Leasehold Value.



"Lease Year" means: (a) the one (1) year period starting on the Commencement Date; and (b) every subsequent period of one (1) year during the Term; provided, however, if the Commencement Date does not fall on the first day of a month, then the first Lease Year shall include the partial month, commencing on the Commencement Date through and including the last day of the calendar month in which the Commencement Date occurs.

"Leased Fee Value" means the fair market value of the Fee Estate determined as if such Fee Estate is unencumbered by any lien representing a monetary obligation (such as a Fee Mortgage) but inclusive of (i) all rights of Landlord under this Lease including, without limitation, the Fee Estate, and (ii) the value of Landlord's reversionary interest in the Building as of the date of such determination, considered as if unimproved and subject to this Lease.

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015166

"Leasehold Estate" means Tenant's leasehold estate, and all of Tenant's rights, privileges, and Preemptive Rights, under this Lease, upon and subject to all the terms and conditions of this Lease, and any direct or indirect interest in such leasehold estate.

"Leased Leasehold Value" means the fair market value of the Leasehold Estate determined as if such Leasehold Estate is unencumbered by any lien representing a monetary obligation (such as a Leasehold Mortgage) but inclusive of (i) all rights of Tenant under this Lease including, without limitation, the Leasehold Estate, and (ii) the value of Tenant's interest in the Building then in existence as of the date of such determination; provided, the Leased Leasehold Value shall exclude the value of Landlord's reversionary interest as of such date in the land and Building upon the expiration of the Term.

"Leasehold Mortgage" means any mortgage, deed of trust, collateral assignment or other voluntary lien (as modified from time to time) encumbering any Lease, the Leasehold Estate and/or the Preemptive Rights. A Leasehold Mortgage shall not attach to the Fee Estate.

"Leasehold Mortgagee" means a holder of a Leasehold Mortgage (and its successors and assigns), provided: (a) such holder is not an Affiliate of Tenant; (b) such holder is an Institutional Lender, and (c) Landlord has received notice of the name and address of such holder and a copy of its Leasehold Mortgage.

"Legal Costs" of any Person means all reasonable actual out of pocket costs and expenses such Person incurs in any legal proceeding (or other matter for which such Person is entitled to be reimbursed for its Legal Costs), and in or as a result of any Bankruptcy Proceeding, including reasonable attorneys' fees, court costs, and expenses.



"Loss" means a Casualty or a Condemnation.

"Loss Proceeds" means any Property Insurance Proceeds or Condemnation Award paid or payable for a Loss.



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015167



"Memorandum of Lease" means a memorandum of this Lease, in the form attached hereto as **Exhibit G**.

"Modification" means any abandonment, amendment, cancellation, discharge, extension, modification, rejection, renewal, replacement, restatement, substitution, supplement, surrender, termination, or waiver of a specified agreement, document, plans or specifications or of any of its terms or provisions, or the acceptance of any cancellation, rejection, surrender, or termination of such agreement, document, or such terms or provisions.

"Modify" means agree to, cause, make, or permit any Modification.

"Monetary Default" means Tenant's failure to pay any Rent or other money (including Real Estate Taxes and insurance premiums) when and as this Lease requires, subject to any applicable notice and cure period set forth in this Lease.

"Mortgage" means either a Fee Mortgage or a Leasehold Mortgage.

"Mortgagee" means the holder of any Mortgage and its successors and assigns.

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015168

"Notice" means any consent, demand, designation, election, notice, or request relating to this Lease, including any Notice of Default. Notices shall be delivered, and shall become effective, only in accordance with the "Notices" Article of this Lease.

"Notify" means give a Notice.



"Parties" means, collectively, Landlord and Tenant.

"Party" means either Landlord or Tenant.



"Permitted Exceptions" means only: (1) the recorded title exceptions affecting the Fee Estate and prior to this Lease as of the Commencement Date, listed as exceptions in Tenant's leasehold policy of title insurance for this Lease; (2) any title exceptions (including Subleases) caused by Tenant's acts or omissions, consented to or requested by Tenant, or resulting from Tenant's Default; (3) intentionally omitted; (4) this Lease and its terms and provisions; (5) any state of facts that an accurate survey would show; and (6) the additional matters listed in **Exhibit D** attached hereto.



"Person" means any individual, association, corporation, Government, joint venture, joint-stock company, limited liability company, partnership, trust, unincorporated organization, or other entity of any kind. (This does not limit any Transfer restriction.)

{Ground Lease - Execution Version / 01692902.DOCX /}

W:\WLK\KK\CLIENT\98857\RELEASE\01692902.DOCX

14

VA 015169



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015170



{Ground Lease - Execution Version / 01692902.DOCX 7}

W:\WDOX\CLIENT\982\7\N\PASB01693302.DOCX

16

VA 015171



"Scheduled Expiration Date" means 11:59 p.m. on the day prior to the ninety-ninth (99th) anniversary of the last day of the calendar month in which the Commencement Date occurs.

"State" means the State of New York.

"Structure" of a Building means only the concrete floors, footings, foundation, load-bearing walls, roof, roof support system, and structural steel or other structural support system of such Building.

"Sublease" means, for the Premises and the Improvements, any: (a) sublease; (b) agreement or arrangement (including a concession, license, management, or occupancy agreement) allowing any Person to occupy, use or possess; (c) subsublease or any further level of subletting; or (d) Modification or assignment of "a" through "c." (Any reference to Subleases does not diminish, impair, limit, or waive any limit on Subleases.)

"Subrent" means all money due and payable by Subtenants under Subleases.

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015172

"Subtenant" means any Person entitled to occupy, use, or possess any portion of the Premises or the Improvements under a Sublease.

"Temporary Condemnation" means a Condemnation of the temporary right to use or occupy all or part of the Premises or the Improvements.

"Tenant's Percentage" means the percentage represented by a fraction, the numerator of which is the Leased Leasehold Value and the denominator of which is the sum of the Leased Fee Value plus the Leased Leasehold Value



"Term" shall be as defined in Section 2.



"Total Loss" means any Condemnation that affects all or substantially all of the Premises and/or the Improvements or, in Tenant's reasonable determination (with Leasehold Mortgagee's consent), any: (a) Loss after which Tenant cannot legally Restore the Improvements as an architectural whole for economic use for their previous purpose; or (b) Casualty after which, because of changes in Laws, Tenant cannot legally Restore the Improvements to substantially their previous size; or (c) any Condemnation resulting in a taking of a portion of the Premises (due either to the area so taken or the location of the part so taken in relation to the part not so taken) which renders the balance of the Premises (under economic conditions or any applicable Laws) incapable of being operated for such purposes that the Premises are then being used in an economically feasible manner after taking into account any restoration work; or (d) in the event that the Initial Development has not yet been substantially completed, any Condemnation which renders such Initial Development or any subsequent Improvements incapable of being constructed for the Permitted Use.



{Ground Lease - Execution Version / 01692902.DOCX /}

18

VA 015173



"Trust Funds" means any funds that this Lease requires or allows Landlord (or anyone acting for Landlord) to hold, and in which Tenant has an interest.



"Usury Limit" means the highest rate of interest, if any, that Law allows under the circumstances.

"Waiver of Subrogation" means a provision in, or endorsement to, any property insurance policy, by which the carrier agrees to waive rights of recovery by way of subrogation against either party to this Lease for any loss such policy covers.

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015174

## 2.   TERM

The term of this Lease (the "Term") shall: (a) commence on the Commencement Date; and (b) continue until the Scheduled Expiration Date, unless terminated sooner as provided in this Lease.



{Ground Lease - Execution Version / 01692902.DOCX /}

W:\WDOX\CLIENT\082\57\NL2A4P\01692902.DOCX

20

VA 015175



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015176



{Ground Lease - Execution Version / 01692902.DOCX /}

W:\W\DOX\CLIEN\T998\0570\LEASE\01692902.DOCX

VA 015177



{Ground Lease – Execution Version / 01692902.DOCX /}

VA 015178



VA 015179



## 6. COMPLIANCE

6.1 *Generally.* Tenant shall during the Term, at Tenant's expense, in all material respects, subject to Tenant's right of Contest: (a) comply with all Laws and Permitted Exceptions; and (b) procure and comply with all Approvals required by Law.

6.2 *Copies of Notices.* Landlord shall promptly give Tenant a copy of any notice of any kind regarding the Premises or the Improvements or any Real Estate Taxes (including any bill or statement), and any notice of nonrenewal or threatened nonrenewal of any Approval that Landlord receives from any Government, utility company, insurance carrier, or insurance rating bureau.



VA 015180



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015181



## 9.    HAZARDOUS SUBSTANCES

9.1    *Restrictions.*   Tenant shall not cause or permit to occur on, under or at the Premises during the Term: (a) any violation of any Environmental Law; or (b) the use, generation, release, manufacture, refining, production, processing, storage, or disposal of any Hazardous Substance, or transportation to or from the Premises of any Hazardous Substance, unless both: (i) reasonably necessary and customary to conduct any legal business in the Premises in accordance with customary standards in such business, or to operate and maintain the Premises for uses this Lease permits and (ii) in compliance with all Environmental Laws.

9.2    *Compliance; Clean-Up.*   Tenant shall, during the Term with respect to acts not caused by Landlord or its agents, servants, contractors or employees, at Tenant's expense: (a) comply with Environmental Law and, to the extent Environmental Law requires, clean up any Hazardous Substance Discharge; (b) make all submissions to, deliver all information required by, and otherwise fully comply with all requirements of any Government under Environmental Laws; (c) if any Government requires any clean-up plan or clean-up because of a Hazardous Substances Discharge, prepare and submit the required plans and all related bonds and other financial assurances; (d) promptly and diligently carry out all such clean-up plans; and

{Ground Lease - Execution Version / 01692962.DOCX /}

VA 015182

(e) Indemnify Landlord against any Hazardous Substances Discharge or violation of Environmental Law; provided, however, Tenant shall not be required to Indemnify Landlord for any Hazardous Substance Discharge that occurred prior to the Commencement Date or any migration of Hazardous Substances from any neighboring land owners. Landlord, at its sole cost and expense, shall with respect to any acts or omissions caused solely by Landlord or its agents, servants, contractors or employees, clean up any discharge of Hazardous Substances on the Premises caused solely by Landlord or its agents, servants, contractors or employees.



{Ground Lease - Execution Version / 01692902.DOCX /}

WWW:IODOCCLIENTS\341530.LEASE\01692902.DOCX

28

VA 015183



## 11.    RIGHT OF CONTEST

11.1    *Tenant's Right; Contest Conditions.*  Notwithstanding anything to the contrary in this Lease, Tenant shall have the exclusive right to contest, at its sole cost, by appropriate legal proceedings diligently conducted in good faith, the amount or validity of any Real Estate Taxes or Prohibited Lien; the valuation, assessment, or reassessment (whether proposed, phased, or final) of the Premises and/or the Improvements for Real Estate Taxes; the amount of any Real Estate Tax; the validity of any Law or its application to the Premises and/or the Improvements; the terms or conditions of, or requirements for, any Approval; or the validity or merit of any claim against which this Lease requires Tenant to Indemnify Landlord (any of the foregoing, a "Contest").  Tenant may defer payment or performance of the contested obligation pending outcome of the Contest, provided that Tenant causes the following conditions (collectively, the

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015184

"Contest Conditions") to remain satisfied (and any dispute about Tenant's satisfaction of the Contest Conditions shall be resolved by Arbitration). Notwithstanding anything contained herein to the contrary, Landlord agrees to reasonably cooperate with Tenant in connection with any Contest hereunder at no cost or expense to Landlord.

        11.1.1    *No Criminal Act.* Such deferral or noncompliance shall not constitute a criminal act by Landlord or subject Landlord to a material risk of any fine or penalty, except civil penalties for which Tenant has given Landlord a bond, letter of credit, or other security reasonably satisfactory to Landlord (the "Contest Security") in an amount equal to the reasonably estimated amount of such civil penalties.

        11.1.2    *No Liability.* Such deferral or noncompliance creates no imminent risk of a lien, charge, or other liability of any kind against the Fee Estate, unless Tenant has given Landlord Contest Security equal to the reasonably estimated amount of such lien, charge, or other liability.

        11.1.3    *No Forfeiture.* Such deferral or noncompliance will not place the Fee Estate in imminent danger of being forfeited or lost.

        11.1.4    *No Cost to Landlord.* Such Contest shall be without cost, liability, or expense to Landlord.

        11.1.5    *Diligence.* Tenant shall prosecute such Contest with reasonable diligence and in good faith.

        11.1.6    *Payment.* If required for such Contest, Tenant shall have paid the Contested Real Estate Taxes or other matter.

        11.1.7    *Collection of Real Estate Taxes.* If such Contest relates to any Real Estate Tax, then such Contest shall suspend its collection from Landlord and the Fee Estate.

        11.1.8    *No Tax Deed.* If, at any time, payment of any Real Estate Taxes is necessary to prevent the imminent (i.e., within thirty (30) days) delivery of a tax deed of the Fee Estate for nonpayment, then Tenant shall pay or cause to be paid the sums in sufficient time to prevent delivery of such deed.

        11.1.9    *No Event of Default.* No Uncured Event of Default shall exist under this Lease at the time of such Contest.

        11.1.10  *Security.* Except for any Contest involving the Real Estate Taxes, if the amount at issue in such Contest (and all other Contests then pending) exceeds an amount equal to $100,000.00 times the CPI Adjustment Factor, then Tenant shall, before proceeding with such Contest, give Landlord Contest Security equal to such excess (less any Contest Security otherwise provided for the same Contest).

VA 015185

11.1.11 *Named Parties.* If Landlord has been named as a party in any action, then Tenant shall use commercially reasonable efforts to cause Landlord to be removed as such party and Tenant substituted in Landlord's place, if permissible under the circumstances.

11.2 *Landlord Obligations and Protections.* Landlord need not join in any Contest unless (a) Tenant has complied with the Contest Conditions; and (b) such Contest must be initiated or prosecuted in Landlord's name. In such case, Landlord shall cooperate, as Tenant reasonably requests, to permit the Contest to be prosecuted in Landlord's name. Landlord shall give Tenant any documents, deliveries, and information in Landlord's control and reasonably necessary for Tenant to prosecute its Contest. Landlord shall otherwise assist Tenant in such Contest as Tenant reasonably requires. Tenant shall pay all reasonable costs and expenses, including Legal Costs, of any Contest.

11.3 *Miscellaneous.* Tenant shall be entitled to any refund of any Real Estate Taxes (and penalties and interest paid by Tenant), to the extent attributable to periods within the Term, whether such refund is made during or after the Term. When Tenant concludes Tenant's Contest of any Real Estate Taxes, Tenant shall pay the amount of such Real Estate Taxes (if any) as has been finally determined in such Contest to be due, to the extent attributable to periods within the Term, and any costs, interest, penalties, or other liabilities in connection with such Real Estate Taxes. Upon final determination of Tenant's Contest of a Law, Tenant shall comply with such final determination. So long as the Contest Conditions remain satisfied, Landlord shall enter no objection to any Contest. Landlord may contest any matter for which Tenant is entitled to (but does not) prosecute a Contest, but only if: (a) Landlord Notifies Tenant of Landlord's intention to do so; (b) Tenant fails to commence such Contest within thirty (30) days after receipt of such Notice; and (c) Landlord's contest complies with all conditions and covenants that would apply to a Contest by Tenant, transposing references to the parties and their interests as appropriate.

11.4 *Contest Security.* Landlord shall promptly release any Contest Security to Tenant after the Contest has been resolved and Tenant has performed its obligations, if any, as determined by such resolution. Landlord shall hold any Contest Security in the same manner as a prudent landlord would hold a security deposit under a commercial lease in New York City.



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015186



W:\WPDOCS\CLIENT\9895742\LEASE\01692\Q.DOCX

VA 015187



## 13. LOSSES AND LOSS PROCEEDS

13.1 *Loss.* If a Loss occurs: (a) the Party that first becomes aware of such Loss shall notify the other Party; (b) Leasehold Mortgagee may participate in negotiating and settling any claim to, and supervise and control the receipt of, Loss Proceeds; (c) the Parties shall direct the payor to pay all Loss Proceeds to Leasehold Mortgagee and if there is no Leasehold Mortgagee to an Institutional Lender pursuant to a mutually acceptable escrow agreement; (d) Loss Proceeds shall be applied as set forth below until exhausted; (e) Tenant's rights to receive Loss Proceeds shall be subject to the rights of Leasehold Mortgagee(s); (f) Landlord's rights to receive Loss Proceeds shall be subject to rights of Fee Mortgagee(s); and (g) the Parties shall have the following rights and obligations.

13.2 *Total Loss With Regard to Condemnation.* If a Total Loss occurs with regard to a Condemnation, this Lease shall terminate effective as of the date of the Condemnation Effective Date. The Loss Proceeds with regard to a Condemnation shall be disbursed to Landlord and Tenant with Landlord receiving Landlord's Percentage of the Loss Proceeds and Tenant

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015188

receiving Tenant's Percentage of the Loss Proceeds. Any amounts payable to the Landlord shall be subject to the rights of any Fee Mortgagee under any applicable Fee Mortgage and payable from Landlord's Percentage of the Loss Proceeds; and any amounts payable to the Tenant shall be subject to the rights of any Leasehold Mortgagee under any applicable Leasehold Mortgage and payable from Tenant's Percentage of the Loss Proceeds.

13.3    *Termination Option Loss.* If a Termination Option Loss occurs or a Total Loss with regard to a Casualty, Tenant may (subject to the provisions of this Lease with respect to Lease Impairments) terminate this Lease by Notice to Landlord within thirty (30) days after the date that such Termination Option Loss occurs, time being of the essence with respect to the giving of such Notice. If Tenant timely exercises such right to terminate in connection with a Termination Option Loss, then Landlord shall receive all Loss Proceeds. If Tenant timely exercises such right to terminate in connection with a Total Loss the Loss Proceeds shall be disbursed to Landlord and Tenant as follows: Landlord receiving Landlord's Percentage of the Loss Proceeds and Tenant receiving Tenant's Percentage of the Loss Proceeds. Any amounts payable to the Landlord shall be subject to the rights of any Fee Mortgagee under any applicable Fee Mortgage and payable from Landlord's Percentage of the Loss Proceeds; and any amounts payable to the Tenant shall be subject to the rights of any Leasehold Mortgagee under any applicable Leasehold Mortgage and payable from Tenant's Percentage of the Loss Proceeds; provided, however, that with respect to a Total Loss with regard to a Casualty, Leasehold Mortgagee, to the extent required under the Leasehold Mortgage, the Leasehold Mortgagee shall be paid the insurance proceeds for the Initial Development in full prior to any disbursement to Landlord or Tenant, with Tenant receiving all remaining Loss Proceeds, if any.

13.4    *Revaluation.* Upon any Condemnation of the Premises or any portion thereof and/or the Improvements or any portion thereof, except a Temporary Condemnation or a Total Loss, and this Lease does not terminate on account of a Loss, Tenant shall receive and apply Loss Proceeds to Restore the Improvements to a Permitted Use (comparable in size and quality, subject to then existing market conditions), to the extent Law permits and to the extent reasonably possible under the circumstances and the remaining Loss Proceeds shall be disbursed to Tenant. In such event, future Rent under this Lease shall decrease by the product of such future Rent (measured as if the Condemnation had not occurred) multiplied by the percentage of the Premises so taken.

13.5    *Temporary Condemnation.* In the event of a Temporary Condemnation, all Loss Proceeds shall be payable to Tenant.

13.6    *Restoration.* If this Lease does not terminate on account of a Casualty, subject to the terms of any Leasehold Mortgage, Tenant shall apply Loss Proceeds to Restore the Improvements to a Permitted Use (comparable in size and quality, subject to then existing market conditions), to the extent Law permits and to the extent reasonably possible under the circumstances.

13.7    *Disbursement.* To the extent that this Lease requires Tenant to apply Loss Proceeds for a specified purpose, such Loss Proceeds shall (except as this Lease otherwise provides) be disbursed: (a) from time to time under reasonable and customary disbursement

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015189

procedures as Leasehold Mortgagee (or, absent any Leasehold Mortgagee, Landlord) reasonably requires; and (b) to Tenant, only if and when Tenant has accomplished the specified purpose.

## 14. REPRESENTATIONS AND WARRANTIES

Landlord represents and warrants to Tenant that the following facts and conditions exist and are true as of the Commencement Date. In addition, Tenant makes, for the benefit of Landlord, certain reciprocal representations and warranties as set forth below.

14.1    *Due Authorization and Execution.*  Landlord has full right, title, authority, and capacity to execute and perform this Lease, the Memorandum of Lease, and any other agreements and documents to which Landlord is a party and referred to or required by this Lease (collectively, the "Lease-Related Documents"); the execution and delivery of the Lease-Related Documents have been duly authorized by all requisite actions of Landlord; the Lease-Related Documents constitute valid, binding, and enforceable obligations of Landlord; and neither the execution of the Lease-Related Documents nor the consummation of the transactions contemplate thereby violates any agreement (including Landlord's organizational documents), contract, or other restriction to which Landlord is a party or is bound. Tenant makes to Landlord representations and warranties reciprocal to those in the preceding sentence.

14.2    *No Litigation.*  There is no existing or, to Landlord's knowledge, pending or threatened litigation, suit, action, or proceeding before any court or administrative agency affecting Landlord or the Premises that would, if adversely determined, materially adversely affect Landlord, the Premises, this Lease, the Leasehold Estate, or Tenant's ability to develop and operate the Premises.

14.3    *No Pending Condemnation.*  There is no existing or, to Landlord's knowledge, pending or threatened Condemnation affecting any portion of the Premises that will materially adversely affect the use and operation of the Premises, the value of the Premises or access to the Premises.

14.4    *FIRPTA.*  Landlord is not a "foreign person" within the meaning of United States Internal Revenue Code §1445(f)(3).

14.5    *No Other Tenants.*  Except for the Existing Tenant, Tenant is the only lessee of the Premises. Except for the Existing Tenant, no other Person has any right to lease, use, or occupy the Premises.

14.6    *Prohibited Party.*  Landlord and Tenant are not acting, directly or indirectly for, or on behalf of, any person, group, entity or nation named by any Executive Order of the President of the United States of America (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) or the United States Treasury Department, as a terrorist, "Specially Designated National and Blocked Person," or other banned or blocked person, entity, or nation pursuant to any law that is enforced or administered by the United States Office of Foreign Assets Control, and is not engaging in this transaction, directly or indirectly, on behalf

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015190

of, or instigating or facilitating this transaction, directly or indirectly, on behalf of, any such person, group, entity or nation.

## 15.   LANDLORD'S TRANSFERS

15.1   *Landlord's Right to Convey.*  Landlord (or the holder of any Equity Interest in Landlord) may Transfer the Fee Estate (or such Equity Interest) from time to time. Landlord shall notify Tenant of such Transfer.

15.2   *Release of Landlord.*  Upon any Transfer of the entire Fee Estate, the grantor shall be automatically freed and relieved from all liability (excluding liability previously accrued) for performance of any covenants or obligations to be performed by Landlord after the Transfer, provided that: (i) Landlord delivers and turns over to the grantee all Trust Funds; and (ii) such successor Landlord acknowledges to Tenant receipt of such Trust Funds and assumes Landlord's past, present, and future obligations under this Lease, subject to the Nonrecourse Clause in a written instrument. This Lease shall bind Landlord only while Landlord owns the Fee Estate, except as to any liabilities and obligations accrued before the date of Transfer of the Fee Estate or arising from failure to turn over Trust Funds.

## 16.   FEE MORTGAGES

16.1   *Fee Mortgage.*  Subject to the further provisions of this Article 16, Landlord shall have the unqualified right, from time to time and at any time, to grant one or more Fee Mortgages. This Lease and Tenant's Leasehold Estate in this Lease, as the same may be modified, amended or renewed, and any New Lease or the leasehold interest of the Tenant under a New Lease as provided for in Article 20 hereof shall be superior to any Fee Mortgage placed on the Premises after the Commencement Date. Notwithstanding anything to the contrary contained herein, Tenant acknowledges that the Premises is currently encumbered by a Fee Mortgage held by Webster Bank (the "Existing Mortgage"). Landlord covenants to have such Fee Mortgage discharged and/or removed from record prior to Tenant's filing of its application to have the Premises Rezoned; provided that Tenant delivers to Landlord written notice at least ninety (90) days prior to Tenant's filing of its application to have the Premises Rezoned.

16.2   *Successor to Landlord.*  If any Fee Mortgagee, or any of its successors or assigns, or any other person claiming by or through any such Fee Mortgagee or by or through any foreclosure proceeding pursuant to any such Fee Mortgage, shall succeed to the rights of Landlord under this Lease, Tenant shall attorn to and recognize such successor as Tenant's landlord under this Lease, and Tenant shall promptly execute and deliver at any time any instrument that may be necessary to evidence such attornment. Upon such attornment, this Lease shall continue in full force and effect as a direct lease between Tenant and such successor landlord, upon and subject to all of the then executory terms, covenants and conditions of this Lease. The provisions of this Section shall be self-operative, and no instrument of any such attornment shall be required or needed by the holders of any such Fee Mortgage.  In confirmation of any such attornment Tenant shall, at Landlord's request or at the request of any such Fee Mortgagee, promptly execute and deliver such further instruments as may be reasonably required by any such Fee Mortgagee. Notwithstanding anything to the contrary

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015191

contained in this Lease, in the event any default notice is received pursuant to the Existing Mortgage by Landlord, Landlord shall provide Tenant with a copy of any notice of default issued by the holder of the Existing Mortgage. In the event of any such default notice, the substance of which remains uncured by Landlord beyond the expiration of any applicable notice, grace and/or cure period, Tenant may, in its sole discretion, cure such default of Landlord under the Existing Mortgage and offset the actual amount expended by Tenant in connection with the curing of such default against Tenant's Fixed Rent payments due under this Lease until Tenant has recovered the actual amount expended in connection with such cure.

16.3    *Notices and Cure Rights of Fee Mortgagee.*  If Landlord or a Fee Mortgagee gives Tenant Notice of the name and address of a Fee Mortgagee, then Tenant hereby agrees to give to any such Fee Mortgagee copies of all notices sent by Tenant to Landlord under this Lease at the same time and in the same manner as and whenever Tenant shall give any such Notice to Landlord, and no such Notice shall be deemed given to Landlord hereunder unless and until a copy of such Notice shall have been so delivered to such Fee Mortgagee. Such Fee Mortgagee shall have the right to remedy any default of Landlord under this Lease, or to cause any default of Landlord under this Lease to be remedied and, for such purpose, Tenant hereby grants such Fee Mortgagee such additional period of time as may be reasonable to enable such Fee Mortgagee to remedy, or cause to be remedied, any such default in addition to the period given to Landlord for remedying, or causing to be remedied, any such default. Tenant shall accept performance by such Fee Mortgagee of any term, covenant, condition or agreement to be performed by Landlord under this Lease with the same force and effect as though performed by Landlord. No default under this Lease shall exist or shall be deemed to exist as long as such Fee Mortgagee, in good faith, shall have commenced to cure such default and shall be prosecuting the same to completion with reasonable diligence, subject to Force Majeure. In the event of the termination of this Lease by reason of Landlord's default hereunder, upon such Fee Mortgagee's written request, given within thirty (30) days after any such termination, Tenant, within thirty (30) days after receipt of such request, shall execute and deliver to such Fee Mortgagee or its designee or nominee a new lease of the Premises upon substantially all of the terms contained herein for the remainder of the Term of this Lease upon all of the terms, covenants and conditions of this Lease. Neither such Fee Mortgagee nor its designee or nominee shall become liable under this Lease unless and until such Fee Mortgagee or its designee or nominee becomes, and then only for so long as such Fee Mortgagee or its designee or nominee remains, the fee owner of the Premises. Such Fee Mortgagee shall have the right, without Tenant's consent, to foreclose the Fee Mortgage or to accept a deed in lieu of foreclosure of such Fee Mortgage.



{Ground Lease - Execution Version / 01692902.DOCX 4}

VA 015192



{Ground Lease - Execution Version / 01692902.DOCX /}

W:\WDOX\CLIENT\969\57\PLEA\01601672902.DOCX

VA 015193



## 20.   LEASEHOLD MORTGAGES.

20.1   *Leasehold Mortgages.*   Without Landlord's consent, at any time(s): (a) provided that any monetary or material nonmonetary Event of Default has been, or simultaneously is, cured, Tenant may grant Leasehold Mortgage(s); (b) any Leasehold Mortgagee may initiate and complete any Foreclosure Event and exercise any other rights and remedies against Tenant and the Leasehold Estate (but not the Fee Estate) under its Leasehold Mortgage; and (c) any transferee through a Foreclosure Event, and its successors and assigns, may assign this Lease.

{Ground Lease - Execution Version / 01692902.DOCX f}

VA 015194

20.2    *Lease Impairments.* Any Lease Impairment made without Leasehold Mortgagee's consent shall (at Leasehold Mortgagee's option) be null, void, and of no force or effect, and not bind Tenant, Leasehold Mortgagee or New Tenant.

20.3    *Notices.* Any Notice from Landlord to Tenant shall have no effect unless Landlord gives a copy of such Notice to Leasehold Mortgagee. If any Default occurs for which Landlord intends to exercise any remedy, Landlord shall promptly give Leasehold Mortgagee a Notice of Default.



20.6    *New Lease.* If this Lease terminates for any reason (except with Leasehold Mortgagee's consent or because of a Total Loss), even if Leasehold Mortgagee failed to timely exercise its cure rights for a Default, Landlord shall promptly give Leasehold Mortgagee a Lease Termination Notice. By giving notice to Landlord on or before the day that is forty-five (45) days after Leasehold Mortgagee receives the Lease Termination Notice, Leasehold Mortgagee may require Landlord to promptly enter into a New Lease with New Tenant. Landlord need not do so, however, unless New Tenant has, consistent with the Lease Termination Notice: (a) cured all reasonably curable Defaults other than Tenant-Specific Defaults; and (b) reimbursed

VA 015195

Landlord's reasonable costs and expenses (including reasonable attorneys' fees and expenses) to terminate this Lease, recover the Premises and the Improvements, and enter into the New Lease.

20.6.1  *New Lease Implementation.*  If Leasehold Mortgagee timely requests a New Lease in conformity with this Lease, then, from the date that this Lease terminates until the date that Landlord and New Tenant execute and deliver a New Lease, Landlord shall not: (a) operate the Premises or the Improvements in an unreasonable manner; (b) terminate or materially Modify any Sublease except in the case of a Subtenant's default and in such event only pursuant to the terms of its sublease; or (c) lease any portion of the Premises or any portion of the Improvements except to New Tenant. When Landlord and New Tenant execute and deliver a New Lease, Landlord shall transfer to New Tenant all Subleases (together with any security or other deposits held by Tenant and not applied under such Subleases to the extent Landlord has actually received the same), service contracts, operation of the Premises and the Improvements, and net income Landlord collected from the Premises and the Improvements during the period described in the previous sentence, and Landlord shall cause every Fee Mortgagee to subordinate unconditionally to the New Lease. Landlord agrees to execute, and shall use commercially reasonable efforts to cause any Fee Mortgagee to execute, any instruments reasonably necessary to maintain the priority of the New Lease over any Fee Mortgage; all at Tenant's cost and expense. In addition, Landlord shall assign to the New Tenant all of its right, title and interest in and to Loss Proceeds or any other monies Tenant is entitled to under this Lease, if any, then held by, or payable to, or previously paid to Landlord that Tenant would have been entitled to receive but for the occurrence of an Event of Default and the expiration of any cure periods.

In the event of rejection in connection with a bankruptcy proceeding by Tenant, a trustee in a bankruptcy or such other party to such proceeding on behalf of Tenant, as applicable, such rejection shall be deemed an assignment by Tenant to Leasehold Mortgagee of all of Tenant's right, title and interest in and to the Lease and the Lease shall not terminate. In connection therewith, Leasehold Mortgagee shall have all of the right, title and interest of the Tenant as if such bankruptcy proceeding has not occurred, unless Leasehold Mortgagee shall reject such deemed assignment by notice in writing to Landlord within sixty (60) days following rejection of the Lease by Tenant, the trustee in bankruptcy or such other party to such proceeding, as applicable. If any court of competent jurisdiction shall determine that, notwithstanding the terms of the preceding sentences, the Lease shall have been terminated as a result of a rejection by Tenant, the trustee in the bankruptcy or such other party to such proceeding, as applicable or the Lease shall have been terminated by Landlord for any other reason, Landlord shall, on Leasehold Mortgagee's written election, enter into a New Lease with the Leasehold Mortgagee in accordance with the provisions of this Article 20, it being the intention of the parties to preserve the Lease and the leasehold estate created by the Lease for the benefit of Leasehold Mortgagee without interruption of this Lease in bankruptcy by Tenant, or of any succeeding Lease made pursuant to the provisions of this Article 20 prior to the Expiration Date.

20.7  *Tenant's Rights.*  If Tenant's period to exercise any Preemptive Right expires, Landlord shall promptly Notify Leasehold Mortgagee thereof. Until forty-five (45) days after Leasehold Mortgagee receives such Notice, Leasehold Mortgagee may exercise such Preemptive Right for Tenant. Notwithstanding anything to the contrary in this Lease, so long as Leasehold

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015196

Mortgagee's time to obtain a New Lease has not expired, Leasehold Mortgagee may exercise Tenant's rights (including Preemptive Rights) under this Lease, even if a Default exists or Tenant has otherwise not satisfied conditions within Tenant's control. Tenant irrevocably assigns to Leasehold Mortgagee: (a) to the exclusion of Tenant and any other Person, any right to exercise any Bankruptcy Termination Option; and (b) any right of Tenant to object to any Bankruptcy Sale by Landlord.

20.8    *Certain Proceedings.* If Landlord or Tenant initiates any appraisal, Arbitration, litigation, or other dispute resolution proceeding affecting this Lease, then the Parties shall simultaneously notify Leasehold Mortgagee. Leasehold Mortgagee may participate in such proceedings on Tenant's behalf, or exercise any or all of Tenant's rights in such proceedings, in each case (at Leasehold Mortgagee's option) to the exclusion of Tenant. No settlement shall be effective without Leasehold Mortgagee's consent, unless Tenant simultaneously pays the settlement, the amount at issue does not exceed $1,000,000.00, and the claimant has released (or does not assert) any claim against Leasehold Mortgagee.

20.9    *No Merger.* If the Leasehold Estate and the Fee Estate are ever commonly held, they shall remain separate and distinct estates (and not merge) without Leasehold Mortgagee's and Fee Mortgagee's consent.

20.10    *No Personal Liability.* No Leasehold Mortgagee or New Tenant shall ever have any liability under this Lease beyond its interest in this Lease and the Improvements, even if it becomes Tenant hereunder or assumes this Lease. Any such liability shall: (a) not extend to any Default that occurred before such Tenant became the tenant under this Lease (or the New Tenant under a New Lease), except as identified in a Notice of Default (or Lease Termination Notice) delivered to Leasehold Mortgagee before such Tenant became the tenant under this Lease (or the New Tenant under a New Lease) and then only with respect to Defaults that are not Defaults described in clause (b) of the definition of Tenant-Specific Defaults; and (b) terminate if and when any such Tenant assigns (and the assignee assumes) or abandons this Lease (or a New Lease).

20.11    *Multiple Leasehold Mortgagees.* If at any time multiple Leasehold Mortgagees exist: (a) any consent by or notice to a Leasehold Mortgagee refers to all Leasehold Mortgagees; (b) the most senior Leasehold Mortgagee may exercise all rights of Leasehold Mortgagees, to the exclusion of junior Leasehold Mortgagees; (b) to the extent that the most senior Leasehold Mortgagee declines to do so, any other Leasehold Mortgagee may exercise those rights, in order of priority; and (c) if Leasehold Mortgagees do not agree on priorities, a written determination of priority issued by a title insurance company licensed in the State shall govern.

20.12    *Further Assurances.* Upon request from Tenant or any Leasehold Mortgagee (prospective or current), Landlord shall promptly, under documentation reasonably satisfactory to the requesting Person: (a) acknowledge any Subtenant's nondisturbance and recognition rights (provided such Subtenant joins in such agreement); (b) agree directly with Leasehold Mortgagee that it may exercise against Landlord all Leasehold Mortgagee's rights in this Lease; (c) certify (subject to any then exception reasonably specified) that this Lease is in full force and effect, that no Lease Impairment has occurred, that, to Landlord's knowledge, no Default exists, the date

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015197

through which Rent has been paid, and other similar matters as reasonably requested; and (d) provided Tenant reimburses Landlord's reasonable attorneys' fees and expenses, amend this Lease as any current or prospective Leasehold Mortgagee reasonably requests, provided such amendment does not materially adversely affect Landlord or reduce any payment required hereunder.

20.13 *Miscellaneous.* Notwithstanding anything to the contrary in this Lease, Leasehold Mortgagee may: (a) exercise its rights through an Affiliate, assignee, designee, nominee, subsidiary or other Person, acting in its own name or in Leasehold Mortgagee's name (and anyone acting under this clause "a" shall automatically have the same protections, rights, and limitations of liability as Leasehold Mortgagee); (b) refrain from curing any Default; (c) abandon such cure or Foreclosure Event at any time; or (d) withhold consent or approval for any reason or no reason, except where this Lease states otherwise. Any such consent or approval must be written. To the extent any Leasehold Mortgagee's rights under this Lease apply after this Lease terminates, such rights shall survive such termination. No holder of a Leasehold Mortgage shall become liable under the provisions of this Lease unless and until such time as it becomes, and then only for so long as it remains, the owner of a leasehold estate created hereby or in accordance with a New Lease. A default by Tenant under a Leasehold Mortgage shall not constitute an Event of Default hereunder, except to the extent Tenant's acts or omissions constitute an Event of Default pursuant to the terms hereof. Furthermore, a Foreclosure Event pursuant to the terms of any Leasehold Mortgage shall not require Landlord's consent, violate the terms of this Lease or in and of itself constitute an Event of Default hereunder.

## 21. INTENTIONALLY OMITTED

## 22. QUIET ENJOYMENT; ACCESS AND INSPECTION; TITLE

22.1 *Quiet Enjoyment.* So long as this Lease has not been terminated, Landlord covenants that Tenant shall and may peaceably and quietly have, hold, and enjoy the Premises for the Term, subject to the terms of this Lease, without molestation, hindrance, or disturbance by or from Landlord or anyone claiming by or through Landlord or having title to the Premises paramount to Landlord, and free of any encumbrance created or suffered by Landlord, except Permitted Exceptions.



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015198



22.3   *Title.*  Notwithstanding anything to the contrary in this Lease, all Improvements, Building Equipment, and FF&E located in, on, or at the Premises shall, during the Term, be owned by, and belong to, Tenant.  All benefits and burdens of ownership of the foregoing, including title, depreciation, tax credits, and all other tax items, shall be and remain in Tenant during the Term. Tenant shall be treated as the owner of the Improvements, Building Equipment, and FF&E and all materials and equipment incorporated therein for federal, state and local income tax purposes under applicable law. Landlord shall, upon reasonable request and at the cost of Tenant, take such reasonable actions as may be reasonably requested by Tenant to confirm such ownership in Tenant of the Improvements, Building Equipment, and FF&E for such purposes and in no event shall Landlord knowingly take any tax position contrary to the foregoing.



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015199



{Ground Lease - Execution Version / 01692902.DOCX /}

W:\WDOX\CLIENTS\0027\CLEASE\01692902.DOCX

45

VA 015200



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015201



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015202



{Ground Lease - Execution Version / 01692902.DOCX /}

48

VA 015203



## 24.    END OF TERM

Upon the expiration or earlier termination of the Term: (a) all Improvements, and Building Equipment, to the extent then existing, shall become Landlord's property and Tenant waives any and all claims for compensation resulting from Landlord's retention or disposition of same; (b) Tenant shall deliver to Landlord possession of the Premises and the Improvements in the condition that this Lease requires, subject to reasonable wear and tear and any Loss that this Lease does not require Tenant to Restore; (c) Tenant shall surrender any right, title, or interest in and to the Premises and the Improvements and deliver such evidence and confirmation thereof as Landlord reasonably requires; (d) Tenant shall deliver the Premises and the Improvements free and clear of all:  (i) Subleases, and (ii) liens except (1) Permitted Exceptions and (2) liens that Landlord or any of its agents caused; (e) Tenant shall assign to Landlord, without recourse, and give Landlord copies or originals of, all assignable licenses, permits, contracts, warranties, and guarantees then in effect for the Premises and the Improvements; (f) the parties shall cooperate to achieve an orderly transition of operations from Tenant to Landlord without interruption, including delivery of such books and records (or copies thereof) as Landlord reasonably requires; (g) the parties shall adjust for Real Estate Taxes and all other expenses and income of the

Premises and the Improvements and any prepaid Rent and shall make such payments as shall be appropriate on account of such adjustment in the same manner as for a sale of the Premises (but any sums otherwise payable to Tenant shall first be applied to cure any Default(s) then existing); (h) the parties shall terminate the Memorandum of Lease; and (i) Tenant shall assign to Landlord, and Landlord shall reimburse Tenant for, all utility and other service provider deposits for the Premises. Notwithstanding anything to the contrary in this paragraph, Tenant may remove from the Premises any FF&E and Building Equipment, but Tenant must do so, if at all, before or within forty-five (45) days after the expiration or earlier termination of the Term. Tenant shall repair any material damage from any such removal. During such forty-five (45) day period: (x) Tenant may enter the Premises for such purposes, without being deemed a holdover; (y) Landlord shall have no obligation to preserve or protect such FF&E or Building Equipment; and (z) in entering the Premises, Tenant shall comply with Landlord's reasonable instructions. Tenant's FF&E and Building Equipment not removed within forty-five (45) days after the Expiration Date shall be deemed abandoned.

## 25. NOTICES

All Notices shall be in writing and addressed to Landlord and Tenant (and their designated copy recipients) as set forth in **Exhibit E** attached hereto. Notices (including any required copies as set forth in **Exhibit E** attached hereto) shall be delivered by Federal Express or other overnight (one-night) courier service to the addresses set forth in **Exhibit E** attached hereto, in which case they shall be deemed delivered on the date of delivery (or when delivery has been attempted twice, as evidenced by the written report of the courier service) to such address(es). Notwithstanding the foregoing, Notices for the regular payment of Rent under this Lease (as opposed to late payments, for example) may be sent by first class mail, in which case they shall be deemed delivered three (3) Business Days after deposit in the United States mail, provided that no postal strike (or other event likely to disrupt postal service) is then in effect. Either party may change its address by Notice in compliance with this Lease. Notice of such a change shall be effective only upon receipt. Any party giving a Notice may request the recipient to acknowledge receipt of such Notice. The recipient shall promptly comply with any such request, but failure to do so shall not limit the effectiveness of any Notice. Any attorney may give any Notice on behalf of its client.



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015205

## 27. NONRECOURSE

Notwithstanding anything to the contrary in this Lease, the liability under this Lease of Landlord or Tenant and each of their parent(s), subsidiary(ies), or affiliated corporations or other entities, and any of its constituent partners, joint venturers, or tenants-in-common, for damages or otherwise, shall be enforceable against, and shall not extend beyond, their interests in the Premises (including the proceeds thereof). No property or assets whatsoever, except Landlord's and Tenant's interest in the Premises (including the proceeds thereof), respectively, shall be subject to levy, execution or any other enforcement procedure for the satisfaction of any remedies (monetary or otherwise) of the other party arising under or in connection with this Lease. No shareholder, officer, member, manager, director, agent, or employee of Landlord or Tenant shall have any liability under this Lease. (This Lease sometimes refers to this paragraph as the "Nonrecourse Clause.")

## 28. ADDITIONAL DELIVERIES; THIRD PARTIES

28.1 *Estoppel Certificates.* Up to twice a year (or as many times as reasonably needed by Tenant in connection with a Leasehold Mortgage or subleasing of the Premises or any portion thereof), each Party (a "Requesting Party") may require the other Party (a "Certifying Party") to execute, acknowledge, and deliver to the Requesting Party (or directly to a designated third party) up to four original counterparts of an Estoppel Certificate. The Certifying Party shall sign, acknowledge, and return such Estoppel Certificate within fifteen (15) days after request therefor, even if the Requesting Party is in Default. Any Estoppel Certificate shall bind the Certifying Party.

28.2 *Further Assurances.* Each Party shall execute and deliver such further documents, and perform such further acts, as may be reasonably necessary to achieve the Parties' intent in entering into this Lease.

28.3 *Memorandum of Lease.* Upon request by either, the Parties shall promptly execute, acknowledge, and deliver duplicate originals of a Memorandum of Lease. Either Party may record such Memorandum of Lease. Any taxes imposed upon such recording shall be paid by Tenant. If the Parties amend this Lease, then the Parties shall have the same rights and obligations regarding a memorandum of such amendment as they do for the Memorandum of Lease. Tenant may at any time by Notice to Landlord elect to require the Memorandum of Lease to be terminated.

28.4 *Modification.* Any Modification of this Lease must be in writing signed by the party to be bound.

28.5 *Successors and Assigns.* This Lease shall bind and benefit Landlord and Tenant and their successors and assigns, but this shall not limit or supersede any Transfer restrictions. Nothing in this Lease confers on any Person (except Landlord, Tenant, Leasehold Mortgagees, and Fee Mortgagees) any right to insist upon, or to enforce against Landlord or Tenant, the performance or observance by either party of its obligations under this Lease.

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015206

## 29.    MISCELLANEOUS

29.1    *Confidentiality.*   Landlord shall maintain the confidentiality of any information that Tenant gives Landlord about the Premises.  Landlord shall require any actual or prospective Fee Mortgagee or Transferee to maintain the confidentiality of such materials, all under a direct confidentiality agreement between Tenant and such actual or prospective Fee Mortgagee or Transferee, in normal and customary form reasonably satisfactory to Tenant.

29.2    *Costs and Expenses; Legal Costs.*   In the event of any litigation or dispute between the parties, or claim made by either party against the other, arising from this Lease or the landlord-tenant relationship under this Lease, or Landlord's enforcement of this Lease upon a Default, or to enforce or interpret this Lease or seek declaratory or injunctive relief in connection with this Lease, or to exercise any right or remedy under or arising from this Lease, or to regain or attempt to regain possession of the Premises or terminate this Lease, or in any Bankruptcy Proceeding affecting the other party to this Lease, the prevailing party shall be entitled to reimbursement of its Legal Costs with Default Interest and all other reasonable costs and expenses incurred in enforcing this Lease or curing the other party's default.  If either party requests any amendment or modification to this Lease, then such party shall reimburse the other party's Legal Costs incurred in considering, reviewing, and otherwise processing such request.

29.3    *No Consequential Damages.*   Whenever either party may seek or claim damages against the other party (whether by reason of a breach of this Lease by such party, in enforcement of any indemnity obligation, for misrepresentation or breach of warranty, or otherwise), neither Landlord nor Tenant shall seek, nor shall there be awarded or granted by any court, arbitrator, or other adjudicator, any speculative, consequential, collateral, special, punitive, or indirect damages, whether such breach shall be willful, knowing, intentional, deliberate, or otherwise. The parties intend that any damages awarded to either party shall be limited to actual, direct damages sustained by the aggrieved party.  Neither party shall be liable for any loss of profits suffered or claimed to have been suffered by the other.

29.4    *No Waiver by Silence.*   Failure of either party to complain of any act or omission on the part of the other party shall not be deemed a waiver by the noncomplaining party of any of its rights under this Lease.  No waiver by either party at any time, express or implied, of any breach of this Lease shall waive such breach or any other breach.

29.5    *Performance Under Protest.*   If a dispute arises about performance of any obligation under this Lease, the party against which such obligation is asserted shall have the right to perform it under protest, which shall not be regarded as voluntary performance. A party that has performed under protest may institute appropriate proceedings to recover any amount paid or the reasonable cost of otherwise complying with any such obligation, with interest at the Prime Rate.

29.6    *Survival.*   All rights and obligations that by their nature are to be performed after any termination of this Lease shall survive any such termination.

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015207

29.7   *Unavoidable Delay.*   Each party's obligation to perform or observe any nonmonetary obligation under this Lease shall be suspended during such time as such performance or observance is prevented or delayed by Unavoidable Delay.

29.8   *Vault Space.*   Any vaults and other areas now existing or later built extending beyond the building line of the Premises are not part of the Premises, but Tenant may occupy and use them during the Term, subject to applicable Law and payment of applicable Real Estate Taxes. No revocation by any Government of any license or permit to maintain and use any such vault shall in any way affect this Lease or the Rent. Landlord makes no representation or warranty about any such vault or Tenant's right to use or occupy it for any purpose, or any fees or taxes that may be imposed on account of such use or occupancy.

## 30.   INTERPRETATION, EXECUTION, AND APPLICATION OF LEASE

30.1   *Captions.*   The captions of this Lease are for convenience and reference only. They in no way affect this Lease.

30.2   *Counterparts.*   This Lease may be executed in counterparts.

30.3   *Delivery of Drafts.*   Neither party shall be bound by this Lease unless and until such party shall have executed and delivered at least one counterpart of this Lease. The submission of draft(s) or comment(s) on drafts shall bind neither party in any way. Such draft(s) and comment(s) shall not be considered in interpreting this Lease.

30.4   *Entire Agreement.*   This Lease contains all terms, covenants, and conditions about the Premises. The parties have no other understandings or agreements, oral or written, about the Premises or the Improvements or Tenant's use or occupancy of, or any interest of Tenant in, the Premises or the Improvements.

30.5   *Governing Law.*   This Lease, its interpretation and performance, the relationship between the parties, and any disputes arising from or relating to any of the foregoing, shall be governed, construed, interpreted, and regulated under the laws of the State, without regard to principles of conflict of laws.

30.6   *Partial Invalidity.*   If any term or provision of this Lease or its application to any party or circumstance shall to any extent be invalid or unenforceable, then the remainder of this Lease, or the application of such term or provision to persons or circumstances except those as to which it is invalid or unenforceable, shall not be affected by such invalidity. All remaining provisions of this Lease shall be valid and be enforced to the fullest extent Law allows.

30.7   *Principles of Interpretation.*   No inference in favor of or against any party shall be drawn from the fact that such party has drafted any part of this Lease. The parties have both participated substantially in its negotiation, drafting, and revision, with advice from counsel and other advisers. A term defined in the singular may be used in the plural, and vice versa, all in accordance with ordinary principles of English grammar, which also govern all other language in this Lease. The words "include" and "including" shall be construed to be followed by the words: "without limitation." Each of these terms shall be interpreted as if followed by the words "(or

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015208

any part of it)" except where the context clearly requires otherwise: Building Equipment; FF&E; Fee Estate; Improvements; Land; Leasehold Estate; Premises; Structure; and any other similar collective noun. Every reference to any document, including this Lease, refers to such document as Modified from time to time (except, at Landlord's option, any Modification that violates this Lease), and includes all exhibits, schedules, and riders to such document. The word "or" includes the word "and."

30.8    *Reasonableness.* Wherever this Lease states that a party shall not unreasonably withhold approval: (a) such approval shall not be unreasonably delayed or conditioned; (b) no withholding of approval shall be deemed reasonable unless withheld by Notice specifying reasonable grounds, in reasonable detail, for such withholding, and indicating specific reasonable changes in the proposal under consideration that would make it acceptable; (c) if a party grants its consent (or fails to object) to any matter, this shall not waive its rights to require such consent for any further or similar matter; and (d) any dispute on the withholding or delay of consent shall be determined by Arbitration.

30.9    *Exhibits.*  The Exhibits attached hereto are incorporated herein by this reference.



{Ground Lease - Execution Version / 01692902 DOCX /}

VA 015209



{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015210



{Ground Lease - Execution Version / 01692902.DOCX /}

W:\WORD\CLIENTS\81572\LEASE\01692902.DOCX

VA 015211



## 32.   STATE-SPECIFIC PROVISIONS

32.1   *Delivery Of Premises.*  Tenant waives the provisions of New York Real Property Law (the "RPL") §223-a. The provisions of this Lease on Landlord's delivery of the Premises constitute "an express provision to the contrary" under RPL §223-a.

32.2   *Casualty.*  The provisions of this Lease on Casualty are an express agreement as to damage or destruction of the Premises or the Improvements by Casualty. RPL §227, providing for such a contingency absent an express agreement, shall not apply.

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015212

32.3    *Statutory    Right   or   Redemption.*    Tenant specifically waives the right of redemption provided for in New York Real Property Actions and Proceedings Law ("RPAPL") §761.

32.4    *Consumer Contract Statutes.*   Tenant acknowledges that this Lease is not entered into for personal, family or household purposes, and therefore GOL §5-327 (and any other Law whose effect is limited to transactions entered into for personal, family, or household purposes) has no application to this Lease.

32.5    *Waiver Of Stay.*   Tenant expressly waives, for every Indemnitee of Tenant, any rights under Civil Practice Law and Rules §2201, in connection with any holdover proceeding or other action or proceeding about this Lease or Tenant's rights as a tenant of the Premises.

32.6    *No Implied Consent To Remaining In Possession.*   Notwithstanding anything to the contrary in RPAPL §711(2) or any other applicable Law or rule of procedure, Landlord's acceptance of any partial payment on account of Rent, even if acknowledged in writing, shall not be deemed to constitute Landlord's "express consent in writing to permit the tenant to continue in possession" as referred to in RPAPL §711(2). Landlord shall not be deemed to have granted such "express consent in writing to permit the tenant to continue in possession" unless such alleged written consent by Landlord expressly refers to RPAPL §711(2) and expressly states (i.e., contains substantially the following words): "Landlord consents to Tenant's remaining in possession notwithstanding nonpayment of Rent."

32.7    *Sidewalk Repairs.*   To the extent that this Lease requires Tenant to maintain or repair any sidewalk, Tenant shall perform all obligations of Landlord (and shall Indemnify Landlord against any liability) under City Administrative Code §§2-710 and -711.

*[Signatures on Next Page.]*

IN WITNESS WHEREOF, Landlord and Tenant have executed this Lease as of the Commencement Date.

**LANDLORD:**

**M.M.B. ASSOCIATES, LLC**
a New York limited liability company

By: _Anthony Musto_
    Name: Anthony Musto
    Title: Managing Member

**TENANT**

**VANDERBILT ATLANTIC HOLDINGS LLC**
a New York limited liability company

By: _____
    Name:
    Title:

*Exhibits:*

**Exhibit A** Legal Description of the Land

**Exhibit B** ████████████████████████████

**Exhibit C** [Reserved]

**Exhibit D** Additional Permitted Exceptions

**Exhibit E** Notice Addresses (Including Required Copy Recipients)

**Exhibit F** ████████████████████████████

**Exhibit G** Form of Memorandum of Lease

VA 015214

**IN WITNESS WHEREOF,** Landlord and Tenant have executed this Lease as of the Commencement Date.

**LANDLORD:**

**M.M.B. ASSOCIATES, LLC**
a New York limited liability company

By: _____
    Name:
    Title:

**TENANT**

**VANDERBILT ATLANTIC HOLDINGS LLC**
a New York limited liability company

By: _____
    Name:   Simon Dushinsky
    Title:   Member

*Exhibits:*

**Exhibit A** Legal Description of the Land

**Exhibit B** █████████████████████████████

**Exhibit C** [Reserved]

**Exhibit D** Additional Permitted Exceptions

**Exhibit E** Notice Addresses (Including Required Copy Recipients)

**Exhibit F** █████████████████████████████

**Exhibit G** Form of Memorandum of Lease

VA 015215

# EXHIBIT A

## LEGAL DESCRIPTION OF THE LAND

### SCHEDULE A:

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point at the corner formed by the intersection of the Southerly side of ATLANTIC AVENUE, (as now open and in use, 120.00 feet wide) with the easterly side of VANDERBILT AVENUE (as now open and in use, 100.00 feet wide);

RUNNING THENCE: Easterly along the southerly side of ATLANTIC AVENUE, 170.00 feet;

THENCE:   Southerly at right angles to the southerly side of ATLANTIC AVENUE, 200.00 feet to the northerly side of PACIFIC STREET (as now open and in use, 70.00 feet wide);

THENCE:   Westerly at right angles to the last mentioned line and along the northerly side of PACIFIC STREET, 75.00 feet;

THENCE:   Northerly at right angles to the northerly side of PACIFIC STREET, 100.00 feet;

THENCE:   Westerly at right angles to the last mentioned line, 50.00 feet;

THENCE:   Southerly at right angles to the last mentioned line, 100.00 feet to the northerly side of PACIFIC STREET;

THENCE:   Westerly at right angles to the last mentioned line and along the northerly side of PACIFIC STREET, 45.00 feet to the easterly side of VANDERBILT AVENUE;

THENCE:   northerly at right angles to the northerly side of PACIFIC STREET and along the easterly side of VANDERBILT AVENUE, 200.00 feet to the place or point of BEGINNING

*Block 1122*
*Lot 1, 68 + 71*

[Ground Lease - Execution Version / 01692302.DOCX /] WAWDOX0CLIENTS\93572\LEASE\01692902.DOCX

VA 015216

**EXHIBIT B**



VA 015217

## EXHIBIT C

[Reserved]

{Ground Lease - Execution Version / 01692902.DOCX /} W:\WDOX\CLIENTS\8257\2\LEASE\01692902.DOCX

VA 015218

## EXHIBIT D

ADDITIONAL PERMITTED EXCEPTIONS

Permitted Exceptions shall include all of the following, as they existed on the Effective Date:

1.      the Existing Lease;

2.      All rights, if any, for electricity, gas, telephone, water, cable television, and any other utilities to maintain and operate lines, cables, poles, and distribution boxes in, over, and upon the Premises, provided that none of those rights impose any monetary obligation on Tenant;

3.      Possible de minimis projections or encroachments of stoops, areas, steps, sills, trim, cornices, standpipes, fire escapes, coal chutes, casings, ledges, lintels, porticos, keystones, windows, hedges, copings, or objects upon, under, or above any adjoining buildings or streets or avenues or those belonging to adjoining premises which encroach upon the Premises;

4.      Variations between the tax diagram or the tax map and the record description;

5.      All notes or notices of any violation of law or municipal ordinances, orders, or requirements noted in or issued by any governmental or quasi-governmental authority or departments having or asserting jurisdiction, now or hereafter affecting the Premises; and

6.      Real property taxes, charges, rents, assessments, and any other governmental charges which are not yet due and payable.

7.      Covenants, conditions, easements, restrictions, leases, agreements of record

A. Terms and conditions as set forth in Nuisance C&R's in Liber 201 Page 231.

B. Terms and conditions as set forth in the Memorandum of Lease in Reel 4264 Page 1854.

C. Terms and conditions as set forth in Waiver of Legal Grade in Reel 4309 Page 704.

D. Terms and conditions as set forth in Covenant Not to Compete in Reel 4394 Page 469.

E. Terms and conditions as set forth in Supplement to Lease in Reel 4748 Page 1809.

F. Terms and conditions as set forth in Subordination, No-Disturbance Agreement in CRFN 2016000119749.

VA 015219

8.      UCC-1 Financing Statement with M.M.B. Associates LLC as the debtor, and Webster Bank, National Association as the secured party, filed March 29, 2016 in CRFN 2016000109831 (subject to Article 16).

9.      Assignment of Leases and Rents with M.M.B. Associates LLC as assignor, and Webster Bank, National Association as the assignee, recorded on April 6, 2016, in CRFN 201600011748 (subject to Article 16).

10.     Mortgage with M.M.B. Associates LLC as the mortgagor, and Webster Bank, National Association as mortgagee, in the amount of $1,200,000.00, dated March 23, 2016, and recorded on April 6, 2016 in CRFN 2016000119747 (subject to Article 16).

VA 015220

## EXHIBIT E

### NOTICE ADDRESSEES
### (INCLUDING REQUIRED COPY RECIPIENTS)

| Party: | Notice Address: | With a Copy to: |
|--------|-----------------|-----------------|
| Landlord | M.M.B. Associates, LLC<br>c/o Crosstown Companies<br>97-77 Queens Boulevard<br>Suite 1120<br>Rego Park, New York 11374<br>Attn: Anthony Musto | Westerman Ball Ederer Miller Zucker<br>& Sharfstein, LLP<br>1201 RXR Plaza<br>Uniondale, New York 11556<br>Attn: Jay Levinton, Esq. |
| Tenant | Vanderbilt Atlantic Holdings LLC<br>390 Berry Street<br>Suite 201<br>Brooklyn, New York 11249<br>Attn: Simon Dushinsky | Eiseman Levine Lehrhaupt & Kakoyiannis<br>805 Third Avenue, 10th Floor<br>New York, New York 10022<br>Attn: Jonathan Eiseman, Esq. |

VA 015221



{Ground Lease - Transaction Version 1.0 (080802.DOCX // WSWD2XPCLJKNTN4957SELLA3E61692902.DOCX

VA 015222



VA 015223



VA 015224



VA 015225



[Redacted Lease - Execution Version 7/19/2012.DOCX //WAWDOX\CLIENT\6857\WLEASE\01655192.DOCX

VA 015226



(Ground Lease - Executive Version #016#1892.DOCX#; W:\WP\DOCS.BIN\798\97-JJ.LEASE\016\92\92.DOCX

VA 015227



VA 015228



VA 015229



VA 015230



[Counsel Lease – Execution Version (4310 8260).DOCX /] W:\WDOX\CLIENT\8089\TUX.XX\XXX.\3695392.DOCX

VA 015231



VA 015232



VA 015233



VA 015234





VA 015236

## EXHIBIT G

FORM OF MEMORANDUM OF LEASE

## MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE (the "Memorandum") is entered into as of _____, 20__ (the "Effective Date") by and between M.M.B. Associates, LLC ("Landlord"), having an address at c/o Crosstown Companies, 97-77 Queens Boulevard, Suite 1120, Rego Park, New York 11374 and Vanderbilt Atlantic Holdings LLC, a New York limited liability company ("Tenant"), having an address at 390 Berry Street, Suite 201, Brooklyn, New York 11249.

*1.*    *Premises.* Landlord owns the parcel of real property commonly known as 840 Atlantic Avenue, Brooklyn, New York 11238, more particularly described in Exhibit A (the "Premises").

*2.*    *Lease.* Landlord and Tenant entered into a Lease for the Premises with an effective date of November ___, 2017 (the "Lease").

*3.*    *Demise of Tenant's Premises.* For good and valuable consideration, Landlord has demised the Premises to Tenant as described in the Lease.

*4.*    *Term.* The "Commencement Date" is November ___, 2017. The Term of the Lease began on the Commencement Date and expires on the day prior to the ninety-ninth (99th) anniversary of the last day of the calendar month in which the Commencement Date occurs, unless the Lease is terminated earlier, as provided therein.

*5.*    *Successors and Assigns.* The Lease and this Memorandum will bind and benefit the parties and their successors and permitted assigns. The foregoing is not intended to, and is not to be construed so as to, affect any restrictions or limitations on assignment or other transfers pursuant to the Lease.

*6.*    *Further Assurances.* Each party agrees to execute, acknowledge (where necessary), and deliver such further documents, and perform such further acts, as may be reasonably necessary to achieve the intent of the parties as expressed in the Lease and this Memorandum. If the Lease terminates, then Tenant will execute, acknowledge (where necessary), and deliver such documents that are required by Landlord or by any title insurance, abstract company, or institutional lender to remove this Memorandum of record.

*7.*    *Counterparts.* This Memorandum may be executed in counterparts.

### [Executions on Following Page]

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015237

IN WITNESS WHEREOF, Landlord and Tenant have executed this Memorandum as of the Effective Date.

LANDLORD                                        TENANT

M.M.B. Associates, LLC                          Vanderbilt Atlantic Holdings LLC

By: _____                     By: _____

Its: _____                    Its: _____

Date Executed: _____                  Date Executed: _____


## ACKNOWLEDGEMENTS

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF             )

On the _____ day of _____ in the year 2017 before me, the undersigned, a Notary Public in and for said State, personally appeared Anthony Musto, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public


STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF             )

On the _____ day of _____ in the year 2017 before me, the undersigned, a Notary Public in and for said State, personally appeared Simon Dushinsky, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public

{Ground Lease - Execution Version / 01692902.DOCX /}

Exhibit A

## SCHEDULE A:

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point at the corner formed by the intersection of the Southerly side of ATLANTIC AVENUE, (as now open and in use, 120.00 feet wide) with the easterly side of VANDERBILT AVENUE (as now open and in use, 100.00 feet wide);

RUNNING THENCE: Easterly along the southerly side of ATLANTIC AVENUE, 170.00 feet;

THENCE:   Southerly at right angles to the southerly side of ATLANTIC AVENUE, 200.00 feet to the northerly side of PACIFIC STREET (as now open and in use, 70.00 feet wide);

THENCE:   Westerly at right angles to the last mentioned line and along the northerly side of PACIFIC STREET, 75.00 feet;

THENCE:   Northerly at right angles to the northerly side of PACIFIC STREET, 100.00 feet;

THENCE:   Westerly at right angles to the last mentioned line, 50.00 feet;

THENCE:   Southerly at right angles to the last mentioned line, 100.00 feet to the northerly side of PACIFIC STREET;

THENCE:   Westerly at right angles to the last mentioned line and along the northerly side of PACIFIC STREET, 45.00 feet to the easterly side of VANDERBILT AVENUE;

THENCE:   northerly at right angles to the northerly side of PACIFIC STREET and along the easterly side of VANDERBILT AVENUE, 200.00 feet to the place or point of BEGINNING

*Block 1122*
*lot 1, 68 & 71*

VA 015239

## EXHIBIT H

FORM OF ASSIGNMENT OF LEASE

## ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION OF LEASE (this "Assignment and Assumption") between M.M.B. ASSOCIATES, LLC, a New York limited liability company with an address at c/o Crosstown Companies, 97-77 Queens Boulevard, Suite 1120, Rego Park, New York 11374 ("Assignor"), in consideration of the sum of One Dollar ($1.00) and other valuable consideration paid by VANDERBILT ATLANTIC HOLDINGS LLC, a New York limited liability company with an address at 390 Berry Street, Suite 201, Brooklyn, New York 11249 ("Assignee"), the receipt whereof is hereby acknowledged, does hereby sell, assign, transfer and set over unto Assignee, its successors and assigns, all of its right, title and interest in the Existing Lease (defined below).

WHEREAS, Assignor has ground leased the real property located at 840 Atlantic Avenue, Brooklyn, New York, and more particularly described in Schedule A annexed hereto and made a part hereof (the "Property") to Assignee pursuant to a Lease dated November __, 2017 (the "Ground Lease"); and

WHEREAS, Assignee has ground leased the Property from Assignor pursuant to the Ground Lease; and

WHEREAS, Assignor desires to assign, and Assignee desires to assume, all of the rights, interests, and obligations of Assignor, as landlord, which arise under that certain Ground Lease dated March 18, 1998 between Anthony N. Musto (Landlord's predecessor in interest) and McDonald's Corporation, and all renewals, modifications and amendments thereto, as evidenced by that certain Memorandum of Lease dated April 14, 1998 and recorded on August 24, 1998 in the City Registrar's Office in Reel 4264, File 1854, and that certain Supplement to Lease dated August 12, 1999 and recorded on February 2, 2000 1998 in the City Registrar's Office in Reel 4748, File 1809 from and after the date of this Assignment and Assumption (the "Existing Lease").

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt of which is hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.      Assignor does hereby assign to Assignee all of its right, title and interest in and to the Existing Lease.

2.      Assignee hereby assumes from Assignor and agrees to be bound by the terms, covenants and conditions of the Existing Lease from and after the date hereof.

3.      This Assignment and Assumption inures to the benefit of and binds all parties hereto, together with their respective successors and assigns.

{Ground Lease - Execution Version / 01692902.DOCX /}

4.      This Assignment and Assumption shall become effective upon its delivery. It may be executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

5.      If any clause, provision or section of this Assignment and Assumption shall be ruled invalid by any court of competent jurisdiction, the invalidity of such clause, provision or section shall not affect any of the remaining provisions hereof.

6.      This Assignment and Assumption shall be interpreted, governed by, and construed in accordance with the applicable laws of the State of New York.

**_Signature Page Follows_**

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015241

IN WITNESS WHEREOF, Assignor and Assignee have caused this Assignment and Assumption to be executed in their respective names, all as of the _____ day of _____, 2017.

ASSIGNOR:

M.M.B. ASSOCIATES, LLC

By: _____
       Name:
       Title:

ASSIGNEE:

VANDERBILT ATLANTIC HOLDINGS LLC

By: _____
       Name:
       Title:

{Ground Lease - Execution Version / 01692902.DOCX /}

VA 015242

Schedule A

## PROPERTY DESCRIPTION

**SCHEDULE A:**

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point at the corner formed by the intersection of the Southerly side of ATLANTIC AVENUE, (as now open and in use, 120.00 feet wide) with the easterly side of VANDERBILT AVENUE (as now open and in use, 100.00 feet wide);

RUNNING THENCE: Easterly along the southerly side of ATLANTIC AVENUE, 170.00 feet;

THENCE:   Southerly at right angles to the southerly side of ATLANTIC AVENUE, 200.00 feet to the northerly side of PACIFIC STREET (as now open and in use, 70.00 feet wide);

THENCE:   Westerly at right angles to the last mentioned line and along the northerly side of PACIFIC STREET, 75.00 feet;

THENCE:   Northerly at right angles to the northerly side of PACIFIC STREET, 100.00 feet;

THENCE:   Westerly at right angles to the last mentioned line, 50.00 feet;

THENCE:   Southerly at right angles to the last mentioned line, 100.00 feet to the northerly side of PACIFIC STREET;

THENCE:   Westerly at right angles to the last mentioned line and along the northerly side of PACIFIC STREET, 45.00 feet to the easterly side of VANDERBILT AVENUE;

THENCE:   northerly at right angles to the northerly side of PACIFIC STREET and along the easterly side of VANDERBILT AVENUE, 200.00 feet to the place or point of BEGINNING

*Block 1122*
*lot 1, 68 & 71*

VA 015243