UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
MCDONALD'S CORPORATION,

                Plaintiff,

    v.

VANDERBILT ATLANTIC
HOLDINGS LLC,

                Defendant.
------------------------------------------------------X

19 Civ. 06471(DLI) (SLT)

**REPLY DECLARATION OF
PINCHUS "SAM" ROTTENBERG**

PINCHUS "SAM" ROTTENBERG, under the penalties of perjury, declares:

1.      I am a principal of Defendant Vanderbilt Atlantic Holdings LLC ("Vanderbilt"). I make this declaration, based upon personal knowledge, in further support of Vanderbilt's motion for summary judgment dismissing Plaintiff McDonald's Corporation's ("McDonald's") claims and granting Vanderbilt's counterclaim.

2.      In his Declaration in Opposition to Vanderbilt's motion for Summary Judgment, McDonald's attorney, Brendan Walsh, accuses me of submitting a sham declaration in support of Vanderbilt's summary judgment motion. Mr. Walsh criticizes my previous declaration because, while I testified at deposition that I did not remember whether I acquired my interest in M.M.B. before or after Vanderbilt entered into its 99-year ground lease in 2017 with M.M.B., in my declaration I stated that I acquired my interest in M.M.B. before Vanderbilt signed its ground lease with M.M.B.[1] Mr. Wash also criticizes my declaration because I alleged that Mr. Tener never asked for a copy of the M.M.B.-Vanderbilt 99-year ground lease (the "Ground Lease") in connection with his preparation of his appraisal of the FMV of the Premises. Last, Mr. Walsh

---

[1] Defined terms not defined herein have the same meanings as set forth in previous Declaration of Pinchus "Sam" Rottenberg, executed April 28, 2022. (my "Moving Declaration").

criticizes my declaration for discussing *936 Second Avenue L.P. v Second Corporate Development Co., Inc.* 10 N.Y.3d 628 (2008) ("(936 Second Ave."), when at deposition I testified that I was not familiar with that case.

3.      All of Mr. Walsh's criticisms are misplaced.  First, when I acquired my interest in M.M.B. is immaterial to any issue in this case, including McDonald's brand new theory for the supposed relevance of the Ground Lease under which the Ground Lease is a "good comp" for purposes of setting the FMV of Premises. (In its complaint, McDonald's said that the Ground Lease was relevant because a state transfer tax return filed in connection with the creation of the Ground Lease listed the value thereof as $7,000,000; but when Vanderbilt pointed out that the value of the Ground Lease and the land were not the same, McDonald's "reinvented" its theory of the importance of the Ground Lease.)

4.      Regardless, Mr. Walsh misrepresents my testimony. As I have previously explained, Mr. Tener performed a valuation of the Premises on a fee simple basis for my own personal use prior to my engaging him, and his firm KTR, to appraise the Premises for the FMV appraisal process. Yes, Mr. Tener sought a copy of the Ground Lease in connection with an earlier fee simple valuation of the Premises, on an unencumbered basis; but, inasmuch as I was then only seeking a valuation of the unencumbered fee simple title, I asked Mr. Tener to disregard the Ground Lease — in connection with that previous fee simple unencumbered estate appraisal — and he did so.  Then, when I later engaged Mr. Tener to appraise the FMV, Mr. Tener did not seek the Ground Lease for the FMV appraisal process. He did not seek the Ground Lease in connection with the FMV appraisal because, that lease was immaterial to the FMV determination.

**The Ground Lease is irrelevant to the FMV of the Premises**

5.      As I explained in my previous Declaration (and as I mention above), Vanderbilt's

equity in the Ground Lease being valued at $7 million for purposes of computing the New York

State Real Property Transfer tax payable upon the execution of the Ground Lease is irrelevant to

the determination of the FMV of the Premises. (*See* Moving Declaration ¶ 90.)

6.      As I demonstrated in my previous declaration, McDonald's has abandoned its

theory, advanced in its Complaint, that the $7 million valuation of Ground Lease position (which

Vanderbilt and M.M.B. reported to the state taxing authorities) was inconsistent with Mr.

Tener's conclusion that the value of the *Premises* was $16,850,000 (in his FMV assessment).

Of course, the value of the Ground Lease and the value of the land are two completely different

things. The value of the Ground Lease is a function of the relationship between the rent reserved

in the Ground Lease and the value of the land, over the term of the Ground Lease. Thus, the

Ground Lease should be worth far less than the land. Once Vanderbilt exposed that obvious and

fatal flaw in McDonald's argument, McDonald's pivoted and and now contends that the Ground

Lease is relevant to the FMV of the premises because it is a good rental comp. (*See* Moving

Declaration ¶ 104.)

7.      McDonald's new, revised theory also fails. As I set forth in my previous

declaration, the Ground Lease reflects a development deal, under which Vanderbilt's rent was set

on an accommodative basis because it was required to spend vast sums of money in its efforts to

achieve a zoning change (including spending at least $500,000) and then to actually re-develop the

Premises consistent with the changed zoning, if and when McDonald's vacated the Premises. (*See*

Moving Declaration ¶¶ 115-117.) Thus Vanderbilt committed to M.M.B. to spend large sums of

money re-zoning and the re-developing the Premises, and the stated rent reflects a credit for those

obligations.  Of course, Vanderbilt was well aware that it could not compel McDonald's to vacate the Premises before the end of the option terms, provided McDonald's paid the FMV rent once that rental amount was set.  Vanderbilt's expectation was that Vanderbilt would not wish to pay the properly set FMV, but ultimately that would be McDonald's choice.  If McDonald's chose to remain at the Premises after the FMV was set, Vanderbilt would likely have approached McDonald's and attempted to negotiate an agreed upon buy-out of McDonald's lease.  Such transactions are routine in New York City as neighborhoods change and developers develop land to its highest and best use in accordance with prevailing market conditions and zoning law.

8.     The best proof that the Ground Lease is immaterial comes from the mouth of McDonald's own party appraiser, Sharon Locatel.  When asked at her deposition if she knew if Vanderbilt owned the Premises in fee simple, Ms. Locatell testified (emphasis added):

> Q. Do you know how Vanderbilt Atlantic Holdings LLC holds its interest in this are [sic] property at 840 Atlantic Avenue?
> A. Not specifically.
> Q. Do you know if it is a fee simple honor [sic]?
> A. Not specifically. I'm assuming there is a landlord, I think it was a Mr. Musto, was the original landowner, and it's unclear to me whether he is a joint venture with Vanderbilt now and he's contributed the property or, I don't know, I don't know the structure. **It's not relevant to the assignment that I was given, which is to determine fair market rental value,** but  that's my -- that's the extent of my knowledge as to the landlord's position.
> Q. Would it surprise you to learn that Vanderbilt Atlantic Holdings was a ground lessee of the subject property?
> A. No, that wouldn't surprise me.
> Q.  **And knowing that information, would it effect[sic] your conclusions in your reports in any way?**
> **A. No, not at all.**
> Q. Did you ever look –
> MR. WALSH: I just -- my microphone was muted. I objected to attempted to object to the form of the previous question. I just want that on the record.

Deposition of Sharon Locatel. at page 173, line 16 to page 174, line 2 (emphasis added.) (*See* Exhibit FFF to the Declaration of Howard S. Koh, executed April 28, 2022)

9.      But in her Declaration submitted in opposition to Vanderbilt's motion, Ms. Locatell now contends that she was aware of the Ground Lease, because her colleague, Ellen Benjamin had noted it in her file. (A memorandum of ground lease appeared of record, so it was there for any appraiser to see.) But even in her Declaration, Ms. Locatel never states that she sought an unredacted copy of the Ground Lease.   Moreover, nothing in her appraisal report states that her conclusion might be affected by the Ground Lease.   To the contrary, Ms. Locatell squarely contradicts her deposition testimony claiming the Ground Lease is "relevant,"  but in the next breath states it "did not impact her conclusion."

10.      This is nothing but double-talk.  If the Ground Lease did not impact her conclusion, then how is it relevant?  That is the definition of "immaterial." More to the point, if the Ground Lease does not affect Ms. Locatell's conclusion, how can Vanderbilt's failure to provide that lease be evidence of a failure to cooperate in the FMV process?  McDonald's papers never explain this.

11.      Although I am not an appraiser, when I was deposed, I did not think that the timing of when I obtained an interest in M.M.B. was material to any issue in this case and was not armed with the date.  I still do not think when I obtained my interest in M.M.B. is relevant.  Nevertheless, before I signed my previous Declaration, I realized that I must have obtained my interest in M.M.B. before I signed the Ground Lease because I had previously stated that the Vanderbilt-M.M.B. transaction was a  related party transaction.  The only reason I would have for saying that was if I owned an interest in M.M.B. at the time the Vanderbilt-M.M.B. Ground Lease became effective and I was able to confirm that fact after the deposition.

**Tener did not ask for the Vanderbilt-M.M.B. Lease for purposes of preparing his FMV appraisal pursuant to the ORA**

12.     In his Declaration, Mr. Walsh states that in my Declaration, I wrote at paragraph 106, "Vanderbilt was never asked for the 2017 Ground Lease and did not withhold it." Walsh Declaration ¶ 15.) That quote is intentionally taken out of context. In the very next sentence, I stated: "There is no evidence, not a shred, showing that Ms. Locatell requested the Ground Lease, but did not get it." (Moving Declaration ¶ 107.) Thus, it was clear that when I wrote, "Vanderbilt was not asked for the 2017 Ground Lease," I meant — by Ms. Locatell. As I plainly explained in paragraph 109 of my previous Declaration, "before he did his FMV assessment, Vanderbilt asked Mr. Tener to appraise the land…. In connection with that land valuation, Mr. Tener did ask for the 2017 ground lease and Vanderbilt responded that it wanted an independent valuation of the land having nothing to do with the 2017 ground lease." In short, I was completely truthful.

13.     Thus, as my previous Declaration explained neither Ms. Locatell nor Mr. Tener asked for a copy of the Ground Lease with respect to *this* assignment, namely preparing an FMV appraisal pursuant to the ORA. It is true that Mr. Tener's standard form engagement letter does ask for copies of any leases that encumber the Premises, but that appears to me to be simply "boilerplate." Mr. Tener never followed up on that request even though he was clearly aware of the existence of the Ground Lease. In this regard, Mr. Tener's position is entirely consistent with Ms. Locatel's position. In Ms. Locatel's own words, the Ground Lease would not affect her FMV determination "at all." (Locatell Dep. page 174 line 3 to line 10).

### The 936 Second Avenue Decision speaks for itself

14.     Even though I am not an attorney, at my deposition, Mr. Walsh asked me about the *936 Second Avenue* case, and I said [I was not familiar with that case. Afterward, when Vanderbilt's attorneys were preparing this motion, I read in a draft memorandum of law about the

*936 Second Avenue* case.  It struck me that reading that case to say that a permissible zoning use (based on the zoning law at the time of the renewal) should <u>not</u> be considered, based on the amount of term remaining, was precisely the opposite of what the drafter intended when he or she wrote that the FMV determination must take into account "all uses to which the property can be put…" If a use is allowed and *936 Second Avenue* is read to stop the appraisers from considering that use, then the appraisers will not be considering "all" the uses to which the property can be put, and as such, reading the case as McDonald's suggests, would frustrate rather than carry out the intent of the parties.  Accordingly, that is what I said in my previous Declaration and I do not see why my prior ignorance of the case should preclude me from saying as much.  Nevertheless, I am informed that the Judge is the one who decides how to read and apply *936 Second Avenue*, so I don't see why my deposition testimony on this point is  important.

## Conclusion

15.     None of the purported deficiencies Mr. Walsh identifies in his declaration have

merit. The Court should grant Vanderbilt's motion for summary judgment.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on June _23_ , 2022

PINCHUS "SAM" ROTTENBERG