```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MCDONALD'S CORPORATION,                    :
                                           :
                    Plaintiff,             :
                                           :
        -against-                          :       MEMORANDUM AND ORDER
                                           :       19-cv-6471 (DLI) (ST)
VANDERBILT ATLANTIC HOLDINGS LLC,          :
                                           :
                    Defendant.             :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

On November 15, 2019, McDonald's Corporation ("Plaintiff") filed this breach of contract action against Vanderbilt Atlantic Holdings LLC ("Defendant"). *See*, Compl., Dkt. Entry No. 1. Defendant answered and filed counterclaims. *See*, Answer, Dkt. Entry No. 23. Following the Court's rulings denying Defendant's motion to dismiss, which the Second Circuit affirmed, and Defendant's motion for summary judgment, the parties filed a proposed joint pretrial order ("JPTO") on the remaining claims, to wit, that the other party failed to act in good faith in the fair market value appraisal process for the subject property. *See*, Mem. & Order, Mot. Dismiss, Dkt. Entry No. 22; *McDonald's Corp. v. Vanderbilt Atl. Holdings LLC*, 851 F. App'x 259 (2d Cir. 2021), Dkt. Entry No. 49; Op. & Order, Mot. for Summ. J., Dkt. Entry No. 75; JPTO, Dkt. Entry No. 93.

Pending before the Court are three motions *in limine*. Defendant moves to preclude testimony and documentary evidence related to appraisals conducted prior to April 15, 2019. *See*, Def.'s Mot. to Preclude Appraisals ("Appraisals Mot."), Dkt. Entry No. 96. Plaintiff moves to exclude testimony of Defendant's proposed lay witness Anthony Musto ("Musto") and expert witness Michael P. Hedden ("Hedden"). *See*, Pl.'s Mot. to Exclude Musto ("Musto Mot."), Dkt. Entry No. 97; Pl.'s Mot. to Exclude Hedden ("Hedden Mot."), Dkt. Entry No. 98. For the reasons

set forth below, Defendant's motion to preclude is denied, Plaintiff's motion to exclude the testimony of Musto is granted, and Plaintiff's motion to exclude the testimony of Hedden is denied in part and granted in part.

## BACKGROUND[1]

On March 18, 1998, Plaintiff, as tenant, and Musto, as landlord, entered into a lease agreement ("Lease") under which Plaintiff became the tenant of a parcel of real property located at 840 Atlantic Avenue, Brooklyn, New York ("Property"). JPTO ¶¶ 3, 5; Compl. Ex. 1, at 1. The Lease automatically would extend to additional five-year terms unless Plaintiff gave written notice of termination. Compl. Ex. 1 ¶ 13. For purposes of determining the rent for the subsequent optional terms, the Lease included an Option Rent Addendum ("ORA") that governed the fair market value ("FMV") appraisal process ("FMV process"). *See*, Pl.'s Local Rule 56.1 Statement ("56.1") ¶ 11, Dkt. Entry No. 68-1; Compl. Ex. 1. Towards the end of the initial term of the Lease, M.M.B. Associates LLC, as successor in interest to Musto, entered into a 99-year ground lease with Defendant that, in sum, resulted in Defendant becoming Plaintiff's landlord. *See*, 56.1 ¶¶ 3, 7; Assignment and Assumption of Lease, Dkt. Entry No. 68-29.

On April 8, 2019, Plaintiff's initial twenty-year Lease term expired, and the Lease automatically was extended for the first five-year period. *See*, 56.1 ¶ 6. As documented in a letter Plaintiff sent to Defendant on April 15, 2019, the parties could not agree on the FMV, which triggered the FMV process described in the ORA. *Id.* ¶ 15.; Pl.'s Letter, Apr. 15, 2019, Dkt. Entry No. 66-7. The parties failed to agree on the FMV and did not complete the FMV process. Each party alleges that the opponent engaged in the FMV process in bad faith.

---

[1] The Court assumes familiarity with the factual background and procedural history in this matter, which are set forth in detail in the Court's opinions denying Defendant's motion to dismiss and for summary judgment. Only those facts pertinent to the instant motions are discussed.

## **LEGAL STANDARD**

"'The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Williams v. City of New York*, 2023 WL 2911023, at *1 (S.D.N.Y. Apr. 12, 2023) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)). "The decision whether to grant an *in limine* motion resides in a district court's inherent and discretionary authority to manage the course of its trials." *Id.* (internal citations omitted). "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Dunham v. Lobello,* 2023 WL 3004623, at *1 (S.D.N.Y. Apr. 19, 2023) (quoting *Jean-Laurent v. Hennessy*, 840 F. Supp.2d 529, 536 (E.D.N.Y. 2011)). Additionally, "[a] trial court's ruling on a motion *in limine* is subject to change when the case unfolds." *Id.* (internal quotation marks and citation omitted). "'Indeed[,] even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.'" *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).

The Federal Rules of Evidence provide that "relevant evidence is generally admissible at trial." *Id.* (citing Fed.R.Evid. 402). Under Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence." Fed.R.Evid. 401. Under Rule 403, "[a] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. District courts have "'[b]road discretion to balance probative value against possible prejudice' under Rule 403." *Olutosin v. Gunsett*, 2019 WL 5616889, at *1 (S.D.N.Y. Oct. 31, 2019) (quoting *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008)).

## **DISCUSSION**

**I.     Defendant's Motion to Preclude Evidence and Testimony Related to Appraisals Prior to April 15, 2019**

Defendant seeks to preclude testimony and documentary evidence relating to extraneous appraisals conducted prior to April 15, 2019.  The ORA's FMV process commenced on April 15, 2019 when Plaintiff sent notice to Defendant that the parties were unable to agree on the FMV.  Defendant contends that any documentary or testimonial evidence of appraisals conducted prior to this date is irrelevant as unrelated to the FMV process.  *See*, Appraisals Mot.  Plaintiff counters that the good faith argument requires a consideration of prior appraisals to show an intent to disrupt the FMV process.  *See*, Opp'n to Appraisals Mot. ("Appraisals Opp'n"), Dkt. Entry No. 96-5.

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without evidence; and the fact is of consequence in determining the action." Fed.R.Evid. 401.  The Second Circuit has recognized that the standard for admissibility under Rule 401 is "very low."  *See*, *United States v. White*, 692 F.3d 235 (2d Cir. 2012).

The inquiry into whether there was good or bad faith in the FMV process necessarily begins when the bad faith purportedly started, not at the technical start of the FMV process, *i.e.*, April 15, 2019.  It is possible that actions or communications bearing on good faith may have occurred prior to April 15, 2019.  For example, Defendant's appraiser, Tom Tener, testified that his appraisals made prior to April 15, 2019 may have been related to the FMV process.  *See,* Dep. Tr. Tom Tener at 183:20-184:8, Dkt. Entry No. 66-22 ("Sitting here at this point, . . . it appears like this was a [sic] audition for this eventual rent decision . . . , it felt like this was all part of leading up to it even though I was not fully aware of it at the time.").  Additionally, Plaintiff's proposed Exhibit 28 is a comprehensive desk review of an appraisal dated February 27, 2019 prepared by Metropolitan Valuation Services ("MVS") for Defendant disclaiming that MVS was "asked to provide an as is

4

value of the subject assuming the property can be developed as of right," while acknowledging that the Property "is currently leased to McDonalds." Walsh Decl. for Appraisals Opp'n, Ex. 5, at 2, Dkt. Entry No. 96-6. As these examples show, documents and communications that predate April 15, 2019, might be relevant to the question of good faith as they may have a "tendency to make a fact more or less probable" and are "of consequence." Fed.R.Evid. 401.

Defendant misses the mark in contending that there is "no evidence that any of those appraisals were done 'to prepare for the FMV process.'" *See*, Def.'s Reply ("Appraisals Reply") at 4, Dkt. Entry No. 96-8 (emphasis omitted). Whether the pre-April 15, 2019 appraisals were "explicitly conducted for the purposes of valuing the fee simple interest in the Property as if vacant" is an issue to be determined by the factfinder. *Id.* at 1-2. Defendant also incorrectly argues that intent, or "[w]hat may or may not have motivated a party to fail to cooperate," is not relevant. *See*, Appraisals Mot. at 14. The Court noted in the Opinion and Order denying Defendant's summary judgment motion that the determination of a party's breach of its "obligation or covenant of good faith and fair dealing" requires an examination "not only [of] the express language of the parties' contract, but also [of] any course of performance or course of dealing that may exist between the parties." *See*, Op. & Order at 15, Dkt. Entry No. 75. To prove Defendant breached its duty to cooperate in good faith, Plaintiff must "show[ ] *intent* to harm the other contracting party, or, alternatively, a reckless disregard of the other contracting party's rights under the contract." *Id.* (emphasis added) (citation and internal quotation marks omitted). Accordingly, intent is relevant.

Defendant also argues that the issues to be tried "do not include a determination by this Court of the correctness or accuracy of any appraisal, or of the credibility of either appraiser." Appraisals Mot. at 1. However, there is no claim that Defendant's appraiser was incorrect. A key question is whether the appraisal was reached in bad faith, which may require an inquiry into a

5

variety of matters such as the appraisers' methodologies and credibility, that Defendant attempts to claim are off limits. Contrary to Defendant's interpretation of the Second Circuit's affirmation of this Court's denial of Defendant's motion to dismiss, the Second Circuit did not go "out of its way" to state that this Court should not consider appraisal methodologies. Appraisals Mot. at 11. Instead, the Circuit found that the issue of the parties' compliance with the ORA's cooperation clause "is—whether easy or difficult to resolve, and whether or not requiring consideration of appraisal methodologies—clearly a question of contract interpretation." *McDonald's Corp. v. Vanderbilt Atl. Holdings LLC*, 851 F. App'x 259, 260 (2d Cir. 2021). Appraisal methodology may not be necessary to interpret the contract, but that does not mean that consideration of methodologies is irrelevant in another context.

Risks of prejudice, confusion, and waste of time are lessened by the fact that the case will be decided by a bench trial. "Greater deference is granted to a court's determination of relevance in a bench trial because the court is 'presumed to be able to exclude improper inferences from its own decisional analysis.'" *Chitayat v. Vanderbilt Assocs.*, 2007 WL 2890248, at *2 (E.D.N.Y. Sept. 27, 2007) (quoting *George v. Celotex Corp.,* 914 F.2d 26, 28 (2d Cir. 1990)). The Court may reassess the evidence at trial to determine its need in light of other documentary and testimonial evidence. However, at this stage, preclusion is unwarranted. Accordingly, Defendant's motion to preclude documentary and testimonial evidence related to appraisals conducted prior to April 15, 2019 is denied.

## II.     Plaintiff's Motion to Exclude Testimony of Lay Witness Anthony Musto

Plaintiff moves to exclude the testimony of Defendant's proposed lay witness Anthony Musto because Defendant never included Musto as a potential witness in its disclosures, never updated those discovery disclosures, and made representations that Musto had no relevant information. *See*, Musto Mot. Defendant contends that Plaintiff was on notice that Musto, the

6

prior fee simple owner of the Property, might have potential information, which Plaintiff had opportunities to seek, and, thus, Plaintiff will not be prejudiced by his testimony. *See*, Opp'n to Musto Mot. ("Musto Opp'n"), Dkt. Entry No. 97-5.

Parties must disclose "without awaiting a discovery request . . . the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed.R.Civ.P. 26(a)(1)(A)(i). A party must "supplement or correct its disclosure . . . if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e). A party that fails to comply with these Rules cannot "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). "The purpose of [Rule 37] is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008).

Discovery was completed on January 21, 2022. *See*, Mot. for Premotion Conference, Dkt. Entry No. 58. Defendant did not disclose Musto as a potential lay witness until it drafted the JPTO that was filed January 24, 2024. Defendant nevertheless claims that Plaintiff has been on notice of Musto and his potentially relevant testimony since the early days of this case. *See generally*, Musto Opp'n. There is no dispute that Plaintiff knew about Musto and his potentially relevant testimony, as Plaintiff previously sought information from Musto in April 2021 when it served him with a subpoena for documents. *See*, Mot. for Protective Order, Dkt. Entry No. 39. Defendant moved to quash that subpoena, arguing that "[n]one of the documents demanded in the Subpoenas are relevant to this case" and that the requested information had no "probative value to the central

7

question in this case, namely what instructions both sides gave their party appraisers." *Id*. On April 28, 2021, the Honorable Steven Tiscione, Magistrate Judge of this Court, granted in part and denied in part Defendant's motion, ordering Plaintiff to "revise the subpoenas to third parties to narrow the scope to documents that cannot be directly obtained from discovery requests to Defendant in light of Defendant's agreement to produce such documents." *See*, Minute Order, Apr. 28, 2021, Dkt. Entry No. 42. It is not clear whether Defendant produced such documents. However it is clear that Defendant never disclosed Musto as a person with discoverable information that it would use to support its claims or defenses until it drafted the proposed JPTO nearly three years after the motion to quash and two years after discovery was complete. *See*, JPTO at 10. Instead, Defendant insisted that Musto had no relevant information to provide in this litigation and vehemently opposed Plaintiff's subpoena. Defendant cannot have it both ways.

Awareness or notice of a witness's existence does not absolve a party of its Rule 26 obligations. *See, Leong v. 127 Glen Head Inc.*, 2016 WL 845325, at *4 (E.D.N.Y. Mar. 2, 2016) ("The case law makes clear that, even if Defendants were aware that these individuals existed, that awareness did not absolve Plaintiff of her Rule 26(a)(1)(A) disclosure obligation, which is fulfilled only if Plaintiff informed Defendants that she might call the witnesses in support of her claims or defenses.") (internal quotation and modifications omitted). Mere mention of a witness's name in a deposition or discovery response is similarly insufficient to satisfy a party's Rule 26 obligations. *See, Fetisov v. AY Builders, Inc.*, 2011 WL 6009971, at *1-2 (E.D.N.Y. Nov. 28, 2011) (Mann, M.J.), *R. & R. adopted* in 2012 WL 213770 (E.D.N.Y. Jan. 24, 2012) (precluding testimony of a witness whose identity was not disclosed in Rule 26(a) initial disclosures or in response to interrogatories, but whose name came up during deposition). "Rather, to satisfy Rule 26, parties must make an unequivocal statement that they may rely upon an individual on a motion or at trial."

8

*Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 73 (E.D.N.Y. 2012). Defendant made no such statement until it submitted the proposed JPTO.

Information not disclosed properly or timely still might be admitted if the failure to disclose "was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Defendant, not Plaintiff, bears the burden of proving "substantial justification or harmlessness" since it was the one "who has failed to disclose information pursuant to Rule 26." *Wright v. Aargo Sec. Servs., Inc.*, 2001 WL 1035139, at *2 (S.D.N.Y. Sept. 7, 2001). Defendant claims that the failure is harmless because Plaintiff was "well aware of the identity of the undisclosed witness and the scope of knowledge well before the trial." *Evans v. United States*, 978 F. Supp.2d 148, 154 (E.D.N.Y. 2013). As discussed above, awareness does not absolve Defendant of its Rule 26 obligations and does not establish harmlessness. Now, two years after discovery was completed, Defendant has reversed its position that any information Musto could provide is irrelevant and contends that Musto's testimony not only is "critical," but that preclusion would "severely prejudice" it. *See*, Opp'n at 16. Defendant has failed to show a lack of harm or prejudice to Plaintiff, who did not receive documents or information from Musto it had requested during discovery and has not had an opportunity to depose him and modify its discovery accordingly, which might have happened had Defendant timely disclosed that Musto was a potential witness.

Defendant claims that the failure to disclose was justified because Plaintiff has made "the potential development of the property a focus of the trial," which now makes Musto's testimony critical. Opp'n at 16. It is not clear that Plaintiff has put property value at issue, especially as Defendant argues that it is not the Court's role to determine the correctness of appraisers' valuations. *See, e.g.*, Appraisals Mot. at 9-10 (arguing that "it is not the Court's role and responsibility to critique an appraiser's expert judgments," and noting that Plaintiff's "position through this litigation that '[Defendant's appraiser] is wrong' and '[Plaintiff's appraiser] is right'

9

is simply a red herring"). Defendant argued in the motion to quash that communications about the Property value, among other things, "will not reveal anything on [the key factual] issues." Protective Order at 3. Defendant has not shown that the failure to disclose was substantially justified.

Courts have the discretion to preclude evidence as a result of noncompliance with Rule 26. *See*, *Cates v. Trustees of Columbia Univ. in City of New York*, 330 F.R.D. 369, 373 (S.D.N.Y. 2019). When determining whether to preclude evidence or testimony, a Court should consider "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico,* 440 F.3d 104, 117 (2d Cir. 2006).

Here, preclusion is appropriate. First, Defendant has not offered a satisfactory answer or justification for its failure to disclose. Defendant's recent change of counsel is not a valid excuse. *See,* Musto Opp'n at 10; *See also*, *Grabin v. Marymount Manhattan Coll.*, 659 F. App'x 7, 10 (2d Cir. 2016) (summary order) (affirming district court's preclusion of a witness because change of counsel alone is an insufficient reason to excuse noncompliance with Rule 26's disclosure requirement). Second, Defendant has not demonstrated sufficiently the importance of Musto's testimony, particularly in light of Defendant's prior representations to the contrary in the motion to quash. Third, admission of Musto's testimony at this stage would prejudice Plaintiff who did not have the opportunity to depose Musto, obtain information in his possession, or tailor its discovery based on that information. Fourth, while a continuance theoretically always is possible, the circumstances here weigh against it: this case is over five years old, discovery has been completed for over two years, the Court has ruled on the summary judgment motion, and Defendant previously fought the subpoena to Musto. *See*, *Lujan*, 284 F.R.D. at 71 ("While a

continuance is always theoretically possible, the closure of discovery weighs against a continuance."); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2013 WL 4409434, at *15 (E.D.N.Y. Aug. 2, 2013), *R. & R. adopted as modified*, 2013 WL 5502852 (E.D.N.Y. Oct. 1, 2013) (finding the continuance prong weighed in favor of preclusion where the case was almost two-and-one-half years old, discovery was closed for over one year, and summary judgment motions had been submitted). Accordingly, Plaintiff's motion to exclude the testimony of Musto is granted.

### III. Plaintiff's Motion to Exclude Testimony of Expert Witness Michael P. Hedden

Defendant seeks to call Hedden as an expert witness to testify about "(1) his professional background, experience and qualifications; (2) his review of Thomas Tener's appraisal prepared on July 30, 2019 including Tener's appraisal methods and techniques; and (3) the purpose and role of a neutral third-party appraiser." *See*, JPTO at 11. Plaintiff moves to exclude his testimony on the basis that his expert opinion "is not based on sufficient facts or methodology" and lacked "independent analysis" to support testimony on the "Property's highest and best use." Hedden Mot. at 2. Plaintiff also contends that Hedden should not be able to testify about third party appraisers because his report did not cover the topic and such opinion purports to engage in contract interpretation. *Id.* Defendant counters that Hedden's review comported with the standards set forth in the Uniform Standards of Professional Appraisal Practice ("USPAP") and meets the requirements for expert testimony. *See*, Opp'n to Hedden Mot. ("Hedden Opp'n") at 2-4, Dkt. Entry No. 98-5.

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b)

11

the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed.R.Evid. 702. The proponent of the proposed expert testimony bears the burden of demonstrating admissibility by a preponderance of the evidence. *SEC v. Tourre*, 950 F. Supp.2d 666, 674 (S.D.N.Y. 2013).

To be reliable, expert testimony must be based on sufficient facts or data, and it must be the product of reliable principles or methods properly applied. The court's task "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999). In other words, expert testimony should be excluded if it is "speculative or conjectural," or if it is based on assumptions that are "'so unrealistic and contradictory as to suggest bad faith' or to be in essence an 'apples and oranges comparison.'" *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d. Cir. 1996) (quoting *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984)). An expert's opinion is inadmissible if it "is connected to existing data only by the *ipse dixit* of the expert," for a "court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (citation omitted); *accord* Fed.R.Evid. 702 Advisory Committee's Note (2000 Amendments) ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'").

A court has broad discretion to admit or exclude expert testimony. *See*, *Kumho*, 526 U.S. at 152 (concluding "that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). The court has even greater flexibility "where it is the trier of fact given the absence of the need to protect juries from dubious expert evidence." *Chitayat*, 2007 WL 2890248, at *2.

### A. Hedden's Report

Plaintiff contends that Hedden's report was not based on sufficient facts or data. Instead, Plaintiff claims that Hedden did not perform any independent research or analysis and based his report on a reading of "Tener's second FMV estimate and some subset of his work papers" and his "subjective belief that Tener and his firm were qualified appraisers with a good reputation." *See*, Hedden Mot. at 2, 7. In response, Defendant contends that Hedden's review comported with USPAP standards, and, therefore, is based on sufficient facts and data.

Hedden was retained to conduct an appraisal review, as opposed to an independent appraisal. As the report noted, the scope of the work was to determine whether: (1) Tener's report contained adequate and relevant data; (2) the appraisal methods and techniques used were appropriate given the language of the Lease; and (3) the analyses, opinions, and conclusions in the report were appropriate, credible, and reasonable for the intended use of the intended user within the context of the Lease. *See*, Walsh Decl. for Hedden Mot., Ex. 1 ("Hedden Report") ¶ 15, Dkt. Entry No. 98-3. To complete this work, Hedden: (1) conducted a "thorough review" of Tener's report; (2) "conducted a mathematical calculation check of the models" in Tener's report; (3) conducted a site inspection; (4) reviewed Tener's work papers and other information, such as deposition transcripts, exhibits, and email communications; and (5) checked Tener's adherence to USPAP requirements. Hedden Report ¶¶ 66-70. Hedden also noted that he considered Tener's "local and technical competency." Hedden Report ¶ 77. However, Hedden testified that he did not do independent research to reach his "ultimate conclusion," as it was outside the scope of the work and not necessary "to render the opinion that I did given the language in the lease and given the use and user of this report." Dep. Tr. Hedden at 103:7-24, 104:3-23, Dkt. Entry No. 66-25.

Hedden acknowledged that both appraisals and appraisal reviews "are inherently subjective undertakings," and the goal of a review "is to provide an opinion regarding the quality of the

13

original appraiser's work." Hedden Report ¶ 71. He concluded that Tener's "analysis, opinions and conclusions" were "appropriate, credible and reasonable." Hedden Report ¶ 78.

USPAP Standard 3 requires an appraisal reviewer to "identify the problem to be solved, determine the scope of work *necessary* to solve the problem, and correctly complete research and analyses *necessary* to produce a credible appraisal review." Walsh Decl. for Hedden Mot., Ex. 2 ("USPAP Guidelines"), at line 777 (emphasis added). The appraiser determines what, if any, independent research and analysis is required. The nature of the appraisal review means that Hedden was not required to replicate or check Tener's underlying work. That Hedden "did no independent research" does not mean he did not comply with USPAP standards or conduct an acceptable appraisal review. *See*, Hedden Mot. at 11. Plaintiff seeks to impose an artificial standard on Hedden's appraisal review. Instead, Plaintiff's challenges are "better left for cross-examination rather than exclusion." *See*, *Rondout Valley Cent. Sch. Dist. v. Coneco Corp.*, 321 F. Supp.2d 469, 478 (N.D.N.Y. June 14, 2004); *See also*, *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995) (finding that disputes about the strength of an expert's credentials, methodology, or opinion "go to the weight, not the admissibility, of his testimony").

Plaintiff's other bases for exclusion similarly are unavailing. Plaintiff's comparison of Hedden's appraisal review with that of Plaintiff's expert, Amanda Aaron, is insufficient to exclude Hedden's testimony. Plaintiff points to the USPAP guidelines stating that the scope of work is acceptable "when it meets or exceeds . . . what an appraiser's peer's actions would be in performing the same or similar assignment." *See*, Hedden Mot. at 13; USPAP Guidelines, at line 381-83. Ms. Aaron may be a peer, but this single point of comparison does not demonstrate an industry practice that would justify exclusion. Moreover, the scope of their respective work appears to have been different as Hedden conducted a *quality* appraisal review, whereas Aaron conducted a more *quantitative* review. *See*, Hedden Mot. at 12-13 (describing Aaron's methodology); Hedden Opp'n

14

at 1 ("Mr. Hedden (unlike McDonald's' expert) did not undertake a quantitative review of the various assumptions and judgments of the parties' appraisers."). Challenges to appraisal reviewers' opinions of quality, as opposed to opinions of value, "go to the weight rather than the admissibility." *SEC v. Yorkville Advisors, LLC*, 305 F. Supp.3d 486, 508 (S.D.N.Y. Mar. 29, 2018). Finally, Hedden's consideration of Tener's competency and experience is not improper, and does not reflect a rubber stamp of Tener's report. Indeed, such a consideration would seem to be relevant in an appraisal review. Plaintiff's challenges go to weight, not admissibility, and exclusion is less necessary when there is no "need to protect juries from dubious expert evidence." *Chitayat*, 2007 WL 2890248, at *2.

### B. Hedden's Opinion on the "Highest and Best Use" of the Property

Plaintiff seeks to preclude Hedden's testimony that Tener "correctly concluded" that "the highest and best use required valuing the [P]roperty based on the construction of a new building consistent with the [P]roperty's zoning which allowed for 39,000 square feet." Hedden Mot. at 13; Hedden Report ¶ 75. Plaintiff contends that this opinion is outside the scope of an appraisal review, and Hedden did not perform the analysis necessary to reach that opinion independently. Hedden Mot. at 14. In response, Defendant contends that this is an opinion of quality and credibility regarding Tener's appraisal rather than a separate valuation.

The scope of Hedden's appraisal review included determining whether "the appraisal methods and techniques used in the Report are appropriate given the language in the lease" and "the analyses, opinions and conclusions in the Report are appropriate, credible, and reasonable . . . ." Hedden Report ¶ 15. His opinion that Tener "correctly concluded" *how* to consider the highest and best use was an opinion of the quality, not value, of Tener's appraisal. Plaintiff may challenge the credibility and accuracy of the opinion at trial, but preclusion is unwarranted, especially since

15

this will be a bench trial. *See, Chitayat*, 2007 WL 2890248, at *2 (recognizing the reduced "need to protect juries from dubious expert evidence" in a bench trial).

### C. Hedden's Expert Testimony About Neutral Third Party Appraisers

Plaintiff seeks to preclude Hedden's testimony about the purpose and role of a neutral third party appraiser because such information was not included in the expert report and the topic is a matter of contract interpretation. Hedden Mot. at 16. Defendant counters that Plaintiff asked about this topic during his deposition, and the proposed testimony is not a matter of contract interpretation, but rather is based, in part, on his 41 years of experience. Hedden Opp'n at 16.

As an initial matter, the Court doubts that this testimony would aid the Court in any finding of fact. Moreover, as the Court previously stated, "the role of the third appraiser . . . is a matter of contract interpretation." Mem. & Order, Dkt. Entry No. 22. Further, this topic was not within the scope of Hedden's appraisal review and was not discussed in the report. Hedden Report ¶ 15 (describing the scope of the appraisal review). A review of the transcript of the deposition of Hedden shows that this was not a substantively significant subject of the deposition. Plaintiff did not open the door to Hedden's opinions on neutral third party appraisers. Accordingly, Hedden's testimony regarding the role of a third appraiser is precluded.

**[REST OF PAGE INTENTIONALLY LEFT BLANK]**

## **CONCLUSION**

For the reasons set forth above, Defendant's motion is denied, Plaintiff's motion to exclude the testimony of Musto is granted, and Plaintiff's motion to exclude the testimony of Hedden is denied in part and granted in part.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2024

/s/
DORA L. IRIZARRY
United States District Judge