UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| MCDONALD'S CORPORATION, | : | |
| | : | No. 1:19-cv-06471-DLI-ST |
| Plaintiff, | : | |
| | : | **DECLARATION OF DENISE** |
| v. | : | **ALVAREZ IN SUPPORT OF** |
| | : | **PLAINTIFF'S MOTION *IN LIMINE*** |
| VANDERBILT ATLANTIC HOLDINGS | : | **TO PRECLUDE THE ADMISSION OF** |
| LLC, | : | **CERTAIN EMAILS INTO EVIDENCE** |
| | : | |
| Defendant. | : | |

_____

DENISE ALVAREZ, an attorney admitted to practice law in the State of New York and in this Court, declares, pursuant to 28 U.S.C. §1746, as follows:

1.      I am a partner at the law firm of Pashman Stein Walder Hayden, P.C., attorneys for Plaintiff McDonald's Corporation ("McDonald's") in this matter.

2.      I submit this declaration in support of McDonald's motion *in limine* to preclude the admission of certain emails identified by Vanderbilt Atlantic Holdings LLC ("Vanderbilt") on its trial exhibit list submitted with the Amended Proposed Joint Civil Pretrial Order, dated January 3, 2025 [ECF No. 106]. The exhibits that McDonald's seeks to preclude are identified on Vanderbilt's trial exhibit list as Exhibits KK, AAA, BBB, and OOO. I make this declaration based on personal knowledge unless otherwise stated herein.

3.      Counsel for the parties appeared before the Court for a pretrial conference on January 15, 2025. Attached as **Exhibit 1** is a true and correct copy of the transcript of the pretrial conference held on January 15, 2025.

4.      Since the pretrial conference on January 15, 2025, the parties have continued to meet and confer regarding the admissibility of trial exhibits.

1

5.      Attached as **Exhibit 2** is a true and correct copy of an email string between Morris Missry and Michael Meyer, dated May 20, 2019, forwarding an email from Sharon Locatell on the same date, bate stamped MCD007594-95 and identified as Exhibit KK on Vanderbilt's trial exhibit list.

6.      Attached as **Exhibit 3** is a true and correct copy of an email string between Morris Missry and Michael Meyer, dated from July 7, 2019 through July 10, 2019, bate stamped MCD007715-18 and identified as Exhibit AAA on Vanderbilt's trial exhibit list.

7.      Attached as **Exhibit 4** is a true and correct copy of an email string between Morris Missry and Michael Meyer, dated from July 3, 2019 through July 22, 2019, bate stamped MCD007704-08 and identified as Exhibit BBB on Vanderbilt's trial exhibit list.

8.      Attached as **Exhibit 5** is a true and correct copy of an email from Morris Missry to Michael Meyer, dated September 24, 2019, bate stamped MCD007667 and identified as Exhibit OOO on Vanderbilt's trial exhibit list.

9.      Attached as **Exhibit 6** is a true and correct copy of an email string between counsel for the parties, dated from January 17, 2025 through January 22, 2025.


I declare under penalty of perjury that the foregoing is true and correct.


Dated:  February 5, 2025                                    */s/ Denise Alvarez*
                                                            Denise Alvarez

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

MCDONALD'S CORPORATION                : 19-CV-6471(DLI)

      Plaintiffs,                       :

                               :     United States Courthouse

     -against-                          :     Brooklyn, New York

                               :     January 15, 2025

VANDERBILT ATLANTIC HOLDINGS, LLC, :     11:00 a.m.

      Defendant.                         :

- - - - - - - - - - - - - - - - -X

TRANSCRIPT OF CIVIL CAUSE FOR PRETRIAL CONFERENCE
BEFORE THE HONORABLE DORA L. IRIZARRY
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiff:     PASHMAN STEIN WALDER HAYDEN P.C.
                      Attorneys for the Plaintiff -
                      McDonald's Corporation
                         21 Main Street
                         Suite 200
                         Hackensack, New Jersey 07601
                    BY: DENISE ALVAREZ, ESQ.
                        BRENDAN M. WALSH, ESQ.

For the Defendant:     AKERMAN, LLP
                      Attorneys for the Defendant -
                      Vanderbilt Atlantic Holdings, LLC,
                         1251 Avenue of the Americas
                         37th Floor
                         New York, New York 10020
                    BY: JOSHUA D. BERNSTEIN, ESQ.
                        BENJAMIN REID JOELSON, ESQ.
                        TARA L. RAGHAVAN, ESQ.

Court Reporter:  Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                Official Court Reporter

Proceedings recorded by computerized stenography.
Transcript produced by Computer-aided Transcription.

1          (In open court.)

2          COURTROOM DEPUTY:  Civil cause for pretrial

3   conference Docket No. 19-CV-6471 McDonald's Corporation

4   versus Vanderbilt Atlantic Holdings.

5          MS. ALVAREZ:  Denise Alvarez, Pashman Stein Walder

6   Hayden, for McDonald's Corporation.

7          THE COURT:  Good morning.

8          MR. WALSH:  Brendan Walsh also of Pashman, Stein,

9   Walter, Hayden on behalf of McDonald's Corporation.

10         MR. BERNSTEIN:  Joshua Bernstein from Akerman on

11  behalf of the defendant Vanderbilt Atlantic Holdings, LLC.

12         MR. JOELSON:  Benjamin Joelson also from Akerman

13  for defendant Vanderbilt Atlantic Holdings.

14         MS. RAGHAVAN:  Tara Raghavan from Akerman also on

15  behalf of Vanderbilt Atlantic Holdings.

16         THE COURT:  Good morning to all of you.  Again

17  happy new year to everyone.

18         And I just want to acknowledge receipt of a few

19  documents that we're going to be talking about today and

20  that is -- there are four documents, actually.

21         There were two letters that were filed by

22  plaintiff jointly.  There was one letter that was filed

23  jointly on behalf of the parties which was a status report

24  letter that was filed on January 7th of this year, Docket

25  Entry Number 102.  There was a plaintiff's letter noting

1  continuing issues in the case, also filed on January 7th;

2  that's Docket Entry 101.

3         And the first letter noted that the parties were

4  unable to resolve the case by any kind of either agreeing to

5  mediation or otherwise, and requesting that the case proceed

6  to trial and noting that the parties intended to file an

7  amended joint pretrial order.

8         There is defendant's letter of January 10th

9  discussing their positions with respect to some of the

10 outstanding issues.  The Court also did review the amended

11 joint civil pretrial order.  And I would note that it really

12 would have been far more convenient for the Court if the

13 parties had red lined what was different in the amended

14 joint pretrial order.  I know I did not specifically ask for

15 it but it might have been nice.

16         MS. ALVAREZ:  I actually have a red line, your

17 Honor.

18         THE COURT:  It's too late.  I've already done the

19 work and my law clerk has done the work.  I appreciate the

20 offer.

21         So, at this juncture, first of all, let me just

22 say I'm really not pleased with respect to the fact that so

23 much of what's being argued about here really would have

24 been subject for inclusion in the motions in limine for

25 which I gave a schedule last year which the parties had

1    plenty of time to brief, and to bring it to the Court's

2    attention.  You would have had an opinion by me already and

3    we could have moved forward with the trial a whole lot

4    sooner.  And for the life of me, I have no idea why it is

5    that that was not done.

6              I'm also not pleased, and I had high hopes,

7    besides not being pleased, I'm very disappointed because I

8    had some very high hopes that given the entry of new counsel

9    for defendants, and given the tone of the last pretrial

10   conference that we had here in the middle of November, that

11   there would have been far more agreement among the parties,

12   between the parties, with respect to some of the issues and

13   that I would not see continuation of what's been happening

14   with this case since its inception, this tit-for-tat

15   approach, shall we say, with respect to responses to one

16   another.  That's going to end.  I don't have time for that.

17   That has no place in this profession.  The law is not an

18   industry, it is a profession as our Honored Judge Leo

19   Glasser insists.  He must know something after 100 years of

20   life and still working.  And that's what I expect when I see

21   lawyers in front of me.  Petty stuff goes out the window.  I

22   have no time for that; I have no patience for that.  Let's

23   get down to brass tacks and do it professionally.

24             Now, with respect to the 29 exhibits or so that

25   the defendant added for the first time in the amended joint

1  pretrial order, which, first of all, I had no clue from the

2  joint status report whether or not such was necessary.

3          And secondly, there was very little time here with

4  respect to the filing of an amended joint pretrial order

5  given the proximity of the trial date and given that we had

6  this conference here today.

7          Moreover, the defendants had these documents all

8  along.  There is no claim that they were just provided in

9  discovery.  And plaintiff complains that these were ratted

10  added at the last minute on the eve of filing the joint

11  pretrial order, but plaintiff also added two exhibits a few

12  days before that, also fairly close to the date.  Well, I

13  hadn't even set a date for the filing of the amended joint

14  pretrial order and had I not done that there probably would

15  not have been anything filed before today.

16          So both sides are precluded from using those

17  exhibits that were added at the last minute whether it was

18  January 7th or 8th and January 10th.  No good cause has been

19  shown as to why these exhibits could not have been added in

20  the original joint pretrial order.  None whatsoever.  Both

21  sides had these documents.

22          The other thing is that, especially given the

23  discussions that apparently the parties had -- the other

24  thing, I have to say this, because we had a conference

25  November 14th.  Granted, Thanksgiving comes along but the

1   parties didn't meet until December 11th; and yet, I don't

2   get the status letter until January 7th with all of these

3   issues still outstanding.  I don't know why I couldn't have

4   been given a status report earlier than that; that could

5   have been addressed earlier.

6           The other thing is that with respect to the

7   exhibits, the e-mails especially, that the defense is

8   seeking to introduce either for admission of -- by silence

9   or something else, not clear to me what that something else

10  is, plaintiff has objected to those e-mails as hearsay.

11  There is no hearsay exception for these particular e-mails.

12  If anything, perhaps as an admission by silence, it might be

13  construed as an admission by a party opponent; however, none

14  of the exhibits, in particular, those that have been

15  objected to, have some kind of indication as to what the

16  purpose of those exhibits documents are.

17          I already had this discussion with you all in

18  November.  Obviously, for impeachment, there is a whole lot

19  of leeway, you could use a napkin, and if it's something

20  written on an napkin for impeachment purposes, to be a

21  little bit extreme about it, that's one thing.  But to

22  actually seek to introduce into evidence is another thing

23  altogether.  And there's no notation as to what the theory

24  is under which the particular exhibit is and neither

25  plaintiff nor defense did that.  So that falls on both

1   sides.

2           But, in particular, with respect to these

3   contested e-mails, it would have been helpful to know what

4   the theory is.  And, I am sorry, but I am not going to sit

5   in the middle of trial to stop everything to start reading

6   e-mails.  I don't know how long these e-mails are and to

7   then start doing research and stop everything to figure out

8   whether they are admissible.

9           I can't rule on this in a vacuum which is part of

10  the reason why I say that this would have been the perfect

11  subject for a motion in limine:  Attach the darn e-mails as

12  an exhibit so that I can look at them and weigh them and

13  weigh the parties' arguments against the backdrop of the law

14  cited by the parties and any other law that the Court might

15  find on its own.

16          So that being the case, I am going to have the

17  parties brief the issue as another set of motions in limine,

18  not because I enjoy ruling on motions but I think it is a

19  more effective use of time.  And we'll talk about scheduling

20  that towards the end.

21          The same is a true for one of the documents or set

22  of documents that the parties have no agreement on.  This is

23  plaintiff's intent to use or request to use pleadings or to

24  admit pleadings as evidence, I should say.

25          In the first place, I already ruled on that the

1   last time.  And to the extent that the plaintiff is asking

2   for reconsideration of that ruling, then make the proper

3   motion for reconsideration following the proper standards.

4   And, in that regard, it is not clear to me, number one, what

5   are the facts that are different in the pleadings, and

6   exactly what is it that plaintiff objects about, that the

7   defense objects?  Is it that the plaintiff -- what is it

8   that the plaintiffs are seeking to admit these pleadings

9   for?  Change of facts, recitation of facts, or change of

10  theory?  The defense is entitled to change their theory or

11  to argue alternate theories and that is not a basis for

12  admitting pleadings.

13         If it's a change in facts, then maybe that's a

14  possibility.  But, again, not necessarily.  That doesn't

15  necessarily make the pleadings automatically admissible,

16  especially when we're not talking about verified complaints.

17  A point made by the defense in their responsive letter.

18         So with respect to the pleadings, as part of the

19  motion in limine, plaintiff will need to set forth why the

20  Court should reconsider, in light of the proper standard for

21  a motion for reconsideration, and elaborate on what is it

22  about the pleadings.  I mean, at this point, we're right

23  before trial, there's nothing to hold close to the vest

24  here.

25         And to the extent that the defenses are, going

1   back to the e-mails for one second, but to the extent that

2   the defense has argued that this is a premature argument

3   made by plaintiff because, correctly so, correctly argued,

4   obviously, context matters, right?  But we're talking about

5   a document, an e-mail exchange, a conversation, essentially,

6   in writing between or among some individuals.  So why isn't

7   the context readily apparent on the document which is

8   another reason why this would have been properly done in a

9   motion in limine.

10          With respect to the rezoning documents that

11  plaintiff seeks to introduce.  We had some discussion about

12  that the last time.  Remind me again the FMV process, the

13  fair market value evaluation, process that occurred between

14  2017 and 2019, am I right, or 2018?

15          MR. WALSH:  They started having discussions in

16  sort of early 2018 and then the process, formal process, was

17  2019.

18          THE COURT:  Okay.  Part of the defense arguments

19  in opposing the admission of these documents into evidence

20  is that that you have provided some additional stipulations

21  of fact with respect to the rezoning which covers, let see,

22  seven through ten, I guess, relate to rezoning?

23          MR. WALSH:  Your Honor, from my perspective, seven

24  absolutely relates to the rezoning process.  The others

25  relate to the --

1           THE COURT:  The FMV process?

2           MR. WALSH:  Well, if you recall, there was a

3   motion in limine about pre-April 2019 appraisals and that's

4   what these other stipulations -- you know, so I jotted

5   down -- I got 7 and 24 through 28 relate to rezoning.

6           THE COURT:  Yes.  And that's what I have as well.

7   24 through 28.

8           MR. WALSH:  Right.  Which all postdate the FMV

9   process with one exception that I'm happy to talk about.

10  All of the documents at issue are during the process.

11          THE COURT:  Okay.  Given the stipulations, why is

12  it necessary to introduce documents to that effect?

13          MR. WALSH:  Well, your Honor --

14          THE COURT:  What do the documents add that the

15  stipulations do not on this issue?

16          MR. WALSH:  So it's very important, your Honor.

17          What you said in your decision on the motion in

18  limine is that we must, that plaintiff, I'm quoting, "Must

19  show intent to harm the other contracted party.  Alternative

20  or reckless disregard of the other contracting party's

21  rights under the contract, accordingly, intent is

22  irrelevant."

23          In the summary judgment decision, you said the "Of

24  relevance, here plaintiff argues, and defendant disputes,

25  that the defendant had motivation to retain the high FMV

estimate that Tener had reached originally.  This alleged

motivation bears on whether defendant undertook the ORA

dispute rulings process in good faith.  According to

plaintiff, defendant imposed an unfairly high rent on

plaintiff with the hope that plaintiff would vacate the

property so defendant could execute its plan of quickly

redeveloping the home high-rise mixed-use development which

it could not do if plaintiff remained a tenant on the

property.

So, from our perspective, not only are these

documents relevant, these documents, which I can discuss,

they're among the most important documents in the case

because they bear directly on their intent and motivation

during the process, not after the process.

So they've stipulated that they went through this

rezoning process and that the rezoning was completed.  But

what the documents show, among other things, is that when

Vanderbilt first sent its letter of intent, it's called a

letter of intent, what better document to show intent, they

talk about demolishing the McDonald's restaurant.  They talk

about there they tout the rezoning experience.

Then what the evidence will show during trial is

that McDonalds and Vanderbilt had their first conversations

in January and February and McDonald's made clear to

Vanderbilt that it intended to stay at the property long

1    term through 2039.  What the documents show is right after

2    that conversation, Vanderbilt starts generating

3    architectural drawings of a 17- or 18-story building on this

4    property.

5          It also shows that they started at that point

6    immediately having meetings with the Department of City

7    Planning.  In October of 2018, Vanderbilt prepared what's --

8    and submitted what's called a pre-application statement to

9    the Department of City Planning.  And one of the items on

10   that -- in that form meets to discuss when that proposed

11   redevelopment is going to occur.

12         So this is in October of 2018, right as the

13   parties are about to start the process, Vanderbilt submits

14   this document saying that they anticipated demolition of the

15   McDonald's restaurant and completion of the new high-rise

16   mixed-use building during 2022.  This is after McDonald's

17   had told them earlier in the year that they planned to be

18   there through 2039.  Then, Vanderbilt met with the

19   Department of City Planning on November 13, 2018, and the

20   meeting notes from that reflect that DCP told Vanderbilt

21   that they needed to reidentify, quote, "An appropriate

22   project build year."  15 days after that meeting,

23   November 28th of 2018, Vanderbilt prepared another document

24   stating that, quote, "It is it is expected that the proposed

25   development would be constructed over an, approximately, 18-

1   to 22-month period following approval with completion and

2   occupancy expected to occur in 2022.  This build year was

3   determined in consideration of the amount of time necessary

4   for the development site to be reasonably redeveloped."

5           So Vanderbilt, at that point, was representing to

6   the City that not only were they going to hopefully get the

7   rezoning done, but that McDonald's would be demolished and

8   the building would be done in 2022.

9           And then I mentioned that there was one document

10  among, and it's only eight documents, but there is one

11  document that postdates that, and that's a document that was

12  submitted in February of 2021 that was submitted as part of

13  the formal rezoning where Vanderbilt had essentially the

14  same timeline except they walked it back a year so that they

15  said they expect a completion date of 2023 instead.  And we

16  think that's important because not only is that after this

17  litigation has been filed, but to the extent that they, you

18  know, try to walk back and say, well, at that time, we

19  didn't know what was going to happen.  And, you know, to the

20  extent they try to walk it back, they later submitted

21  documents later on that reaffirmed that and only pushed the

22  deadline back a year.

23          A couple of other things that are interesting and

24  important about the documents.

25          The letter of intent, we think that one of -- it

1   has a separate relevance besides the redevelopment and that

2   we expect that Vanderbilt is going to argue that their

3   decision not to give the Vanderbilt lease to their

4   appraiser, even though he asked for it multiple times, even

5   though it showed that Vanderbilt would be paying essentially

6   the same rent that McDonald's appraiser had concluded to go

7   McDonald's left the property.

8           They're going to argue, we believe, that it was a

9   related party transaction.  And this formal letter of intent

10  that was submitted, you know, by Vanderbilt's principals to

11  MMC we believe undercuts any suggestion that this was a

12  related party transaction such that the appraiser could just

13  ignore it.  So we intend to use it for that separate purpose

14  as well.

15          And then, just one last thing, is there is one

16  document that we identified in our letter.  It was old

17  No. 13, it's on the new PTO; it's No. 8.  It's actually a

18  pre-April 29th valuation document.

19          THE COURT:  It's Exhibit No. 8?

20          MR. WALSH:  Exhibit No. 8.  It was a valuation

21  prepared, I believe, it was either March or April of 2018 by

22  a company called Auterra CRG and we believe -- and it's

23  titled "Valuation."  It's got comps, it's got a calculation

24  of the value, and we believe that it's actually covered by

25  the in limine decision and it's not.  We had improperly

identified it as a redevelopment document but we believe

it's covered by the Court's in limine decision.

So just, you know -- and when you look at, when

you look at the stipulations, and to be clear, we worked

very hard, we prepared stipulations on all of these facts,

they refused to agree to them. The only ones that you see

here were the ones they agreed to for the post-fair market

value process they don't say much; for example, No. 24 in

June 2020, Vanderbilt filed an environmental assessment

statement to the ULURP process. In fact, they stated,

environmental assessment statement is the fact that it's

significant. The fact that's significant is that they

identified a build year of 2023 showing demolition

occurring, you know, years earlier. The only one that

predates is No. 7, and that was when they talked about they

stipulated that they hired a rezoning counsel and a lobbying

group in January of 2018. And when they agreed to that

stipulation, we took off our document.

And so, it started as ten documents. We removed

one of them when we got the stipulation. They wouldn't

agree to stipulations on any of the other facts, and so,

that's kind of where we landed. The stipulations don't get

to the intent in the way, and the motivation, in the way

that the document plainly demonstrate bad faith during the

process and leading up to the process.

1        THE COURT: I'll hear from defense counsel on that

2 issue.

3        MR. BERNSTEIN: So first, your Honor, I just want

4 to start by acknowledging what the Court said at the outset

5 of this conference on behalf of my client and my firm

6 apologizing for the Court's impression of the conduct

7 between the parties. It was certainly not my or my firm's

8 or, more importantly, my client's intent to either get into

9 a tit for tat back and forth with the other side or to

10 frustrate and create more work for the Court. And so, we

11 apologize for that, your Honor.

12        Second, Mr. Joelson is going to handle the issues

13 about the rezoning documents. I just want to point out one

14 issue out if that's okay before Mr. Joelson takes over.

15        THE COURT: Sure.

16        MR. BERNSTEIN: One of the issues that we have is

17 that there is not a witness who can testify who is on either

18 side's witness list to testify about the meaning of these

19 documents, what's something like a build year in an

20 environmental impact statement means, how it's developed,

21 and the involvement of somebody like the principals of

22 Vanderbilt Atlantic in a typical rezoning process. I can

23 speak to that from my general real estate and land use

24 background and can tell the Court --

25        THE COURT: See, now that's not the point here,

okay?  Whether or not it's a protracted process or whatever

it is, the issue is whether or not the defendants, in fact,

in good faith engaged in the fair market value evaluation

process given a lease where the tenant, here plaintiff, had

already expressed an intention to continue the lease moving

forward many years after this proposed rezoning, okay?

So I agree with the defense that, you know,

certainly, the Court does not want to get into a side issue

concerning rezoning, but those particular facts that you're

pointing to really do not go to the heart of the issue with

respect to intent.

And the other thing, this is a bench trial; this

is not a jury trial.  I'm more than capable of, number one,

stopping the lawyers if I think you're going too deep into

the weeds on this issue.

And secondly, and most importantly, to be able to

do the surgery necessary to weed out, to cut out what's not

relevant.  So I'm going to allow these documents to come in

and, obviously, counsel will be able to make their arguments

as they see fit.

Forgive me for one second I am reviewing my notes

to make sure that there is...

I did think all the issues that I have had based

on what's been raised now.  So let me give you a schedule

for the motion in limine.  This is going to mean that we're

1  going to have to push back the trial, and unfortunately,

2  we'll talk about setting a new trial date.  But first, let's

3  set the motion in limine schedule.

4          MR. BERNSTEIN:  Before we do that, your Honor, may

5  I raise an issue?

6          THE COURT:  Yes.

7          MR. BERNSTEIN:  I would like, your Honor, to raise

8  an issue with the new documents on the exhibit list that I

9  understand your Honor has precluded from coming into

10  evidence.

11          THE COURT:  Correct.

12          MR. BERNSTEIN:  I would just like to address that

13  because it was not our intent to put those documents into

14  evidence necessarily.  What they were were potential

15  impeachment documents that if we prepared.

16          THE COURT:  There is no excuse for not putting

17  those in the original joint pretrial order even if that was

18  your intention.  The same thing for plaintiff, for the two

19  different exhibits that were added.  The parties had these

20  exhibits.

21          MR. BERNSTEIN:  Some of them, your Honor, some of

22  them are prior testimony from other cases.

23          THE COURT:  Which have no relevance.  How does it

24  have relevance to this particular plaintiff?

25          MR. BERNSTEIN:  Because there are, depending on

1  what the answers to the questions are, right, we're not

2  asking about other properties, but some of the case involves

3  appraisal methodology as the plaintiff has framed it and

4  there is prior testimony.

5      THE COURT:  I'm not going to go into that now.

6  You talk about getting on a sidetrack, appraisal methodology

7  used on some other project?  That's not relevant here, no.

8  I only care about the appraisal methodology used here.  And,

9  by the way, I have no interest of seeing a textbook because

10  I am not qualified to know whether that textbook, in fact,

11  is the gold standard or whether or even to be able to

12  interpret what it says.  I'm not an accountant; I'm not an

13  appraiser.  The experts will be able to testify as to their

14  methods that they used.  What is the gold standard in

15  everything else, that's what you bring the experts for.

16      So let's set a schedule then.  So why don't we

17  have a simultaneous schedule, if you will; right?  So an

18  opening brief by the defense with respect to the e-mails,

19  okay?  And an opening brief with respect to plaintiff's

20  request concerning the pleadings.  The pleadings.  The

21  inconsistent pleadings.

22      MR. BERNSTEIN:  I only raise this because I was

23  thinking about as motions in limine so shouldn't it be

24  flipped?  We make a motion about the pleadings and they make

25  a motion?

1          THE COURT:  I'm sorry, yes.  Thank you.  I stand

2   corrected.

3          Thank you so much.

4          MR. BERNSTEIN:  No problem.

5          THE COURT:  Correct.  Okay.

6          So, for an opening brief, how is February 5th?

7   That's three weeks.

8          MR. BERNSTEIN:  That's fine with us.

9          THE COURT:  Is that good for plaintiff?

10          MR. WALSH:  Yes, Your Honor.

11          THE COURT:  And is three weeks good for a

12   response?  That would bring us to February 26th.  Yes,

13   February 26th.

14          MR. BERNSTEIN:  More than enough time.

15          MR. WALSH:  That works for us, your Honor.

16          THE COURT:  I'm taking into account there's

17   President's Week in between there and I know folks have kids

18   and stuff and it's always a headache week.

19          MS. ALVAREZ:  Thank you.

20          THE COURT:  So 2/26 for response.  And is three

21   weeks good for a reply?

22          MR. BERNSTEIN:  Fine with us.

23          THE COURT:  Is that good for everybody?

24          MS. ALVAREZ:  Yes.

25          MR. WALSH:  Yes.

1        THE COURT:  So how about March 19th?  Are the

2   parties available for an a pretrial conference then on

3   April 23rd?  I have the whole day free so you can tell me

4   what's a good time for you.

5        MR. WALSH:  Your Honor, I had my phone off so I'm

6   turning it on.  Remind me, do you recall or can you see when

7   does Easter fall I know that I'm away?

8        COURTROOM DEPUTY:  It's the 22nd.

9        THE COURT:  When is it?

10        COURTROOM DEPUTY:  April 22nd.

11        THE COURT:  Oh, April.

12        COURTROOM DEPUTY:  Excuse me, 20th.  April 20th.

13   Sunday, April 20th is Easter.

14        MR. WALSH:  I'll be back by then.  I'll be gone

15   before that.

16        THE COURT:  Yes, the week before Easter would not

17   be good for the Court either, plus it's tax week.

18        Is the 23rd then good for everybody?

19        MR. BERNSTEIN:  Yes.

20        MR. WALSH:  Yes.

21        THE COURT:  Does Passover fall around that time,

22   too?

23        COURTROOM DEPUTY:  Passover will be over.

24        THE COURT:  All right.  So the 23rd and I have the

25   whole day open so what's a good time for you all.  You have

1  first.

2          MR. BERNSTEIN:  I would say 10:00 a.m.

3          MR. WALSH:  10:00 or 11:00.

4          THE COURT:  So 4/23.  Now, we could set a trial

5  date now and reserve the time if you like.  I'm looking at

6  May.

7          MR. WALSH:  Your Honor, if we could talk, and I

8  guess our client, I just know that they've got, when we're

9  trying to get schedules the last time around there was a lot

10  of unavailability and we don't have all that updated

11  unavailability right now.

12          THE COURT:  All right.  So.

13          MR. WALSH:  Maybe if you could give us windows and

14  we could submit a letter where we could worked with

15  Vanderbilt's counsel, I'm just not sure.

16          MR. BERNSTEIN:  We will make ourselves available

17  at any time the Court is available.

18          MR. WALSH:  I think for us May works.  I'm not

19  sure about our witnesses, the experts, client

20  representatives.

21          THE COURT:  So right now, I'm looking at -- you

22  wanted how many days, again seven?

23          MR. WALSH:  Six.

24          THE COURT:  Six days.  And I can't meet on Fridays

25  because I have criminal matters.  Although, let's see.  So

1  the week of May 5th, the Court is available the whole week.

2  The week of -- and that's right now, I mean, and the dates

3  get filled really quickly as you could imagine.  The week of

4  May 12th, I'm available with the exception that I already

5  have a sentencing scheduled for the morning of the 14th.

6  Sometimes things happen and those things get adjourned.  But

7  if need be, we can always, since it's a bench trial, we can

8  always continue in the afternoon and I would have the

9  Thursday available of that week.  It's an in-custody person

10  so I really am loathe to move that.

11          MR. WALSH:  Understood.

12          THE COURT:  That time.  And I do have, I'm

13  available the week of May 19th.  Thursday of that week,

14  which is the 22nd, we may need to do the afternoon only.

15  And, again, I'm airing on the side of caution.  If you need

16  more time given that it's a bench trial we have a little

17  more flexibility.

18          MR. BERNSTEIN:  So we will make ourselves

19  available at any time the plaintiff is available and the

20  Court's available.  I want to say that straight out so any

21  of these weeks work for us.  I want to make -- maybe I

22  shouldn't but I want to make a proposal because your Honor

23  is correct that this is a bench trial.  There is a lot of

24  evidentiary issues that both sides have brought up my

25  experience in bench trials judges don't want parties

1  fighting over evidentiary issues and most documents are

2  coming in.

3  THE COURT:  Which is part of the reason I wanted

4  to do this by way of motion in limine so we could just, you

5  know, move through and not waste the witness's testimony

6  either.

7  MR. BERNSTEIN:  I was going to suggest, I don't

8  think there is any hidden bodies here.  I don't think there

9  is any documents that either side is worried about coming

10 into evidence.  We all know what each side has to say, what

11 if we, you know, just let all the exhibits on the exhibit

12 list come in and let's keep the trial date and go forward

13 and not -- and maybe I should have made that proposal a

14 month ago to the plaintiff's counsel and I apologize for not

15 thinking about it until this moment but I'm sure that

16 McDonald's has spent a lot of time preparing already for the

17 trial in a few weeks.  I know that we have, certainly, both

18 of our respective clients have; and so, you know, and I

19 think it's in everybody's interest to get this process done

20 as quickly as possible.  And so, since we were unable to,

21 you know, go through mediation or just agree to put this

22 into the appraisal and higher the neutral finally, I would

23 just suggest that maybe that's a way to handle the situation

24 and keep the trial date.

25 THE COURT:  I don't know what plaintiff's position

1  is but I think that we should proceed as we have discussed
2  at this point, okay?  All right.

3      So you have three weeks to play with, okay?  And
4  if you could let me know, I'll give you enough time to make
5  sure that you get to speak with your clients if you let me
6  know by, say, January 29th, is that enough time to give you
7  time to talk to your folks?

8      MR. WALSH:  More than enough.  Thank you.

9      THE COURT:  Obviously, if you all come to an
10 agreement before that, but I'd like to know at least by then
11 so we can block off those dates and not put anything in
12 there in the interim, okay, that would be very helpful.  I
13 said the 29th, great.

14     Is there anything else I can address with you all
15 today?  I think we covered everything.

16     MR. BERNSTEIN:  That's it, your Honor.

17     THE COURT:  All right.  Well, thank you all very
18 much.  Thank you for waiting.

19     MR. BERNSTEIN:  My apologies again, your Honor.

20     MR. WALSH:  Likewise.

21     THE COURT:  I'm always hopeful for the best moving
22 forward.  Every day is a new day.

23     (WHEREUPON, this matter was concluded.)

24

25              *   *   *

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.


_____

Anthony D. Frisolone, FAPR, RDR, CRR, CRI
Official Court Reporter

## 0

**07601** [1] - 1:16

## 1

**100** [1] - 4:19
**10020** [1] - 1:21
**101** [1] - 3:2
**102** [1] - 2:25
**10:00** [2] - 22:2, 22:3
**10th** [2] - 3:8, 5:18
**11:00** [2] - 1:8, 22:3
**11th** [1] - 6:1
**1251** [1] - 1:20
**12th** [1] - 23:4
**13** [2] - 12:19, 14:17
**14th** [2] - 5:25, 23:5
**15** [2] - 1:7, 12:22
**17** [1] - 12:3
**18** [1] - 12:25
**18-story** [1] - 12:3
**19-CV-6471** [1] - 2:3
**19-CV-6471(DLI** [1] - 1:3
**19th** [2] - 21:1, 23:13

## 2

**2/26** [1] - 20:20
**200** [1] - 1:16
**2017** [1] - 9:14
**2018** [8] - 9:14, 9:16, 12:7, 12:12, 12:19, 12:23, 14:21, 15:17
**2019** [3] - 9:14, 9:17, 10:3
**2020** [1] - 15:9
**2021** [1] - 13:12
**2022** [3] - 12:16, 13:2, 13:8
**2023** [2] - 13:15, 15:13
**2025** [1] - 1:7
**2039** [2] - 12:1, 12:18
**20th** [3] - 21:12, 21:13
**21** [1] - 1:15
**22-month** [1] - 13:1
**22nd** [3] - 21:8, 21:10, 23:14
**23rd** [3] - 21:3, 21:18, 21:24
**24** [3] - 10:5, 10:7, 15:8
**26th** [2] - 20:12, 20:13
**28** [2] - 10:5, 10:7
**28th** [1] - 12:23
**29** [1] - 4:24
**29th** [3] - 14:18, 25:6, 25:13

## 3

**37th** [1] - 1:20

## 4

**4/23** [1] - 22:4

## 5

**5th** [2] - 20:6, 23:1

## 7

**7** [2] - 10:5, 15:15
**7th** [4] - 2:24, 3:1, 5:18, 6:2

## 8

**8** [3] - 14:17, 14:19, 14:20
**8th** [1] - 5:18

## A

**a.m** [2] - 1:8, 22:2
**able** [4] - 17:16, 17:19, 19:11, 19:13
**above-entitled** [1] - 26:4
**absolutely** [1] - 9:24
**according** [1] - 11:3
**accordingly** [1] - 10:21
**account** [1] - 20:16
**accountant** [1] - 19:12
**acknowledge** [1] - 2:18
**acknowledging** [1] - 16:4
**add** [1] - 10:14
**added** [6] - 4:25, 5:10, 5:11, 5:17, 5:19, 18:19
**additional** [1] - 9:20
**address** [2] - 18:12, 25:14
**addressed** [1] - 6:5
**adjourned** [1] - 23:6
**admissible** [2] - 7:8, 8:15
**admission** [4] - 6:8, 6:12, 6:13, 9:19
**admit** [2] - 7:24, 8:8
**admitting** [1] - 8:12
**afternoon** [2] - 23:8, 23:14
**ago** [1] - 24:14
**agree** [4] - 15:6, 15:21, 17:7, 24:21
**agreed** [2] - 15:7, 15:17
**agreeing** [1] - 3:4
**agreement** [3] - 4:11, 7:22, 25:10
**aided** [1] - 1:25
**airing** [1] - 23:15
**Akerman** [3] - 2:10, 2:12, 2:14
**AKERMAN** [1] - 1:18
**alleged** [1] - 11:1
**allow** [1] - 17:18
**alternate** [1] - 8:11
**alternative** [1] - 10:19
**altogether** [1] - 6:23
**ALVAREZ** [5] - 1:17, 2:5, 3:16, 20:19, 20:24
**Alvarez** [1] - 2:5
**amended** [6] - 3:7, 3:10, 3:13, 4:25, 5:4, 5:13
**Americas** [1] - 1:20
**amount** [1] - 13:3
**answers** [1] - 19:1
**anticipated** [1] - 12:14
**apologies** [1] - 25:19
**apologize** [2] - 16:11, 24:14

**apologizing** [1] - 16:6
**apparent** [1] - 9:7
**application** [1] - 12:8
**appraisal** [4] - 19:3, 19:6, 19:8, 24:22
**appraisals** [1] - 10:3
**appraiser** [4] - 14:4, 14:6, 14:12, 19:13
**appreciate** [1] - 3:19
**approach** [1] - 4:15
**appropriate** [1] - 12:21
**approval** [1] - 13:1
**April** [8] - 10:3, 14:18, 14:21, 21:3, 21:10, 21:11, 21:12, 21:13
**architectural** [1] - 12:3
**argue** [3] - 8:11, 14:2, 14:8
**argued** [3] - 3:23, 9:2, 9:3
**argues** [1] - 10:24
**argument** [1] - 9:2
**arguments** [3] - 7:13, 9:18, 17:19
**assessment** [2] - 15:9, 15:11
**ATLANTIC** [1] - 1:8
**Atlantic** [6] - 1:19, 2:4, 2:11, 2:13, 2:15, 16:22
**attach** [1] - 7:11
**attention** [1] - 4:2
**Attorneys** [2] - 1:14, 1:19
**Auterra** [1] - 14:22
**automatically** [1] - 8:15
**available** [10] - 21:2, 22:16, 22:17, 23:1, 23:4, 23:9, 23:13, 23:19, 23:20
**Avenue** [1] - 1:20

## B

**backdrop** [1] - 7:13
**background** [1] - 16:24
**bad** [1] - 15:24
**based** [1] - 17:23
**basis** [1] - 8:11
**bear** [1] - 11:13
**bears** [1] - 11:2
**behalf** [5] - 2:9, 2:11, 2:15, 2:23, 16:5
**bench** [5] - 17:12, 23:7, 23:16, 23:23, 23:25
**BENJAMIN** [1] - 1:22
**Benjamin** [1] - 2:12
**BERNSTEIN** [21] - 1:21, 2:10, 16:3, 16:16, 18:4, 18:7, 18:12, 18:21, 18:25, 19:22, 20:4, 20:8, 20:10, 20:22, 21:19, 22:2, 22:16, 23:18, 24:7, 25:16, 25:19
**Bernstein** [1] - 2:10
**best** [1] - 25:21
**better** [1] - 11:19
**between** [5] - 4:12, 9:6, 9:13, 16:7, 20:17
**bit** [1] - 6:21
**block** [1] - 25:11
**bodies** [1] - 24:8
**brass** [1] - 4:23
**BRENDAN** [1] - 1:17
**Brendan** [1] - 2:8
**brief** [5] - 4:1, 7:17, 19:18, 19:19, 20:6
**bring** [3] - 4:1, 19:15, 20:12
**Brooklyn** [1] - 1:5
**brought** [1] - 23:24
**build** [4] - 12:22, 13:2, 15:13, 16:19

**building** [3] - 12:3, 12:16, 13:8

## C

**calculation** [1] - 14:23
**capable** [1] - 17:13
**care** [1] - 19:8
**case** [7] - 3:1, 3:4, 3:5, 4:14, 7:16, 11:12, 19:2
**cases** [1] - 18:22
**caution** [1] - 23:15
**certainly** [3] - 16:7, 17:8, 24:17
**CERTIFICATE** [1] - 26:2
**certify** [1] - 26:3
**change** [4] - 8:9, 8:10, 8:13
**cited** [1] - 7:14
**City** [4] - 12:6, 12:9, 12:19, 13:6
**civil** [2] - 2:2, 3:11
**claim** [1] - 5:8
**clear** [4] - 6:9, 8:4, 11:24, 15:4
**clerk** [1] - 3:19
**client** [3] - 16:5, 22:8, 22:19
**client's** [1] - 16:8
**clients** [2] - 24:18, 25:5
**close** [2] - 5:12, 8:23
**clue** [1] - 5:1
**coming** [3] - 18:9, 24:2, 24:9
**company** [1] - 14:22
**complains** [1] - 5:9
**complaints** [1] - 8:16
**completed** [1] - 11:16
**completion** [3] - 12:15, 13:1, 13:15
**comps** [1] - 14:23
**Computer** [1] - 1:25
**Computer-aided** [1] - 1:25
**computerized** [1] - 1:25
**concerning** [2] - 17:9, 19:20
**concluded** [2] - 14:6, 25:23
**conduct** [1] - 16:6
**conference** [6] - 2:3, 4:10, 5:6, 5:24, 16:5, 21:2
**consideration** [1] - 13:3
**constructed** [1] - 12:25
**construed** [1] - 6:13
**contested** [1] - 7:3
**context** [2] - 9:4, 9:7
**continuation** [1] - 4:13
**continue** [2] - 17:5, 23:8
**continuing** [1] - 3:1
**contract** [1] - 10:21
**contracted** [1] - 10:19
**contracting** [1] - 10:20
**convenient** [1] - 3:12
**conversation** [2] - 9:5, 12:2
**conversations** [1] - 11:23
**CORPORATION** [1] - 1:3
**Corporation** [4] - 1:15, 2:3, 2:6, 2:9
**correct** [4] - 18:11, 20:5, 23:23, 26:3
**corrected** [1] - 20:2
**correctly** [2] - 9:3
**counsel** [4] - 4:8, 15:16, 16:1, 17:19, 22:15, 24:14
**couple** [1] - 13:23
**Court** [14] - 1:23, 1:24, 3:10, 3:12, 7:14, 8:20, 16:4, 16:10, 16:24, 17:8, 21:17,

22:17, 23:1, 26:10
**court** [1] - 2:1
**Court's** [4] - 4:1, 15:2, 16:6, 23:20
**Courthouse** [1] - 1:5
**covered** [3] - 14:24, 15:2, 25:15
**covers** [1] - 9:21
**create** [1] - 16:10
**CRG** [1] - 14:22
**criminal** [1] - 22:25
**custody** [1] - 23:9
**cut** [1] - 17:17

## D

**darn** [1] - 7:11
**date** [8] - 5:5, 5:12, 5:13, 13:15, 18:2, 22:5, 24:12, 24:24
**dates** [2] - 23:2, 25:11
**days** [4] - 5:12, 12:22, 22:22, 22:24
**DCP** [1] - 12:20
**deadline** [1] - 13:22
**December** [1] - 6:1
**decision** [5] - 10:17, 10:23, 14:3, 14:25, 15:2
**deep** [1] - 17:14
**defendant** [6] - 1:9, 2:13, 10:24, 11:2, 11:4, 11:6
**defendant's** [1] - 3:8
**defendants** [4] - 4:9, 5:7, 17:2
**defense** [10] - 6:7, 6:25, 8:7, 8:10, 8:17, 9:2, 9:18, 16:1, 17:7, 19:18
**defenses** [1] - 8:25
**demolished** [1] - 13:7
**demolishing** [1] - 11:20
**demolition** [2] - 12:14, 15:13
**demonstrate** [1] - 15:24
**DENISE** [1] - 1:17
**Denise** [1] - 2:5
**Department** [3] - 12:6, 12:9, 12:19
**DEPUTY** [5] - 2:2, 21:8, 21:10, 21:12, 21:23
**determined** [1] - 13:3
**developed** [1] - 16:20
**development** [3] - 11:7, 12:25, 13:4
**different** [3] - 3:13, 8:5, 18:19
**directly** [1] - 11:13
**disappointed** [1] - 4:7
**discovery** [1] - 5:9
**discuss** [2] - 11:11, 12:10
**discussed** [1] - 25:1
**discussing** [1] - 3:9
**discussion** [2] - 6:17, 9:11
**discussions** [2] - 5:23, 9:15
**dispute** [1] - 11:3
**disputes** [1] - 10:24
**disregard** [1] - 10:20
**Docket** [3] - 2:3, 2:24, 3:2
**document** [13] - 9:5, 9:7, 11:19, 12:14, 12:23, 13:9, 13:11, 14:16, 14:18, 15:1, 15:18, 15:24
**documents** [29] - 2:19, 2:20, 5:7, 5:21, 6:16, 7:21, 7:22, 9:10, 9:19, 10:10, 10:12, 10:14, 11:11, 11:12, 11:17, 12:1, 13:10, 13:21, 13:24, 15:19, 16:3, 16:19, 17:18, 18:8, 18:13, 18:15, 24:1, 24:9

**done** [8] - 3:18, 3:19, 4:5, 5:14, 9:8, 13:7, 13:8, 24:19
**DORA** [1] - 1:11
**down** [2] - 4:23, 10:5
**drawings** [1] - 12:3
**during** [5] - 10:10, 11:14, 11:22, 12:16, 15:24

## E

**e-mail** [1] - 9:5
**e-mails** [9] - 6:7, 6:10, 6:11, 7:3, 7:6, 7:11, 9:1, 19:18
**early** [1] - 9:16
**Easter** [3] - 21:7, 21:13, 21:16
**effect** [1] - 10:12
**effective** [1] - 7:19
**eight** [1] - 13:10
**either** [8] - 3:4, 6:8, 14:21, 16:8, 16:17, 21:17, 24:6, 24:9
**elaborate** [1] - 8:21
**end** [2] - 4:16, 7:20
**engaged** [1] - 17:3
**enjoy** [1] - 7:18
**entitled** [2] - 8:10, 26:4
**entry** [1] - 4:8
**Entry** [2] - 2:25, 3:2
**environmental** [3] - 15:9, 15:11, 16:20
**especially** [3] - 5:22, 6:7, 8:16
**ESQ** [5] - 1:17, 1:17, 1:21, 1:22, 1:22
**essentially** [3] - 9:5, 13:13, 14:5
**estate** [1] - 16:23
**estimate** [1] - 11:1
**evaluation** [2] - 9:13, 17:3
**eve** [1] - 5:10
**evidence** [6] - 6:22, 7:24, 9:19, 11:22, 18:10, 18:14, 24:10
**evidentiary** [2] - 23:24, 24:1
**exactly** [1] - 8:6
**example** [1] - 15:8
**except** [1] - 13:14
**exception** [3] - 6:11, 10:9, 23:4
**exchange** [1] - 9:5
**excuse** [2] - 18:16, 21:12
**execute** [1] - 11:6
**Exhibit** [2] - 14:19, 14:20
**exhibit** [4] - 6:24, 7:12, 18:8, 24:11
**exhibits** [10] - 4:24, 5:11, 5:17, 5:19, 6:7, 6:14, 6:16, 18:19, 18:20, 24:11
**expect** [3] - 4:20, 13:15, 14:2
**expected** [2] - 12:24, 13:2
**experience** [2] - 11:21, 23:25
**experts** [3] - 19:13, 19:15, 22:19
**expressed** [1] - 17:5
**extent** [5] - 8:1, 8:25, 9:1, 13:17, 13:20
**extreme** [1] - 6:21

## F

**fact** [7] - 3:22, 9:21, 15:10, 15:11, 15:12, 17:2, 19:10
**facts** [7] - 8:5, 8:9, 8:13, 15:5, 15:21, 17:9
**fair** [3] - 9:13, 15:7, 17:3

**fairly** [1] - 5:12
**faith** [3] - 11:3, 15:24, 17:3
**fall** [2] - 21:7, 21:21
**falls** [1] - 6:25
**far** [2] - 3:12, 4:11
**February** [5] - 11:24, 13:12, 20:6, 20:12, 20:13
**few** [3] - 2:18, 5:11, 24:17
**fighting** [1] - 24:1
**figure** [1] - 7:7
**file** [1] - 3:6
**filed** [7] - 2:21, 2:22, 2:24, 3:1, 5:15, 13:17, 15:9
**filing** [3] - 5:4, 5:10, 5:13
**filled** [1] - 23:3
**finally** [1] - 24:22
**fine** [2] - 20:8, 20:22
**firm** [1] - 16:5
**firm's** [1] - 16:7
**first** [10] - 3:3, 3:21, 4:25, 5:1, 7:25, 11:18, 11:23, 16:3, 18:2, 22:1
**fit** [1] - 17:20
**flexibility** [1] - 23:17
**flipped** [1] - 19:24
**Floor** [1] - 1:20
**FMV** [4] - 9:12, 10:1, 10:8, 10:25
**folks** [2] - 20:17, 25:7
**following** [2] - 8:3, 13:1
**foregoing** [1] - 26:3
**forgive** [1] - 17:21
**form** [1] - 12:10
**formal** [3] - 9:16, 13:13, 14:9
**forth** [2] - 8:19, 16:9
**forward** [4] - 4:3, 17:6, 24:12, 25:22
**four** [1] - 2:20
**framed** [1] - 19:3
**free** [1] - 21:3
**Fridays** [1] - 22:24
**front** [1] - 4:21
**frustrate** [1] - 16:10

## G

**general** [1] - 16:23
**generating** [1] - 12:2
**given** [9] - 4:8, 4:9, 5:5, 5:22, 6:4, 10:11, 17:4, 23:16
**Glasser** [1] - 4:19
**gold** [2] - 19:11, 19:14
**granted** [1] - 5:25
**great** [1] - 25:13
**group** [1] - 15:17
**guess** [2] - 9:22, 22:8

## H

**Hackensack** [1] - 1:16
**handle** [2] - 16:12, 24:23
**happy** [2] - 2:17, 10:9
**hard** [1] - 15:5
**harm** [1] - 10:19
**HAYDEN** [1] - 1:14
**Hayden** [2] - 2:6, 2:9
**headache** [1] - 20:18

**hear** [1] - 16:1
**hearsay** [2] - 6:10, 6:11
**heart** [1] - 17:10
**helpful** [2] - 7:3, 25:12
**hidden** [1] - 24:8
**high** [6] - 4:6, 4:8, 10:25, 11:4, 11:7, 12:15
**high-rise** [2] - 11:7, 12:15
**higher** [1] - 24:22
**hired** [1] - 15:16
**hold** [1] - 8:23
**HOLDINGS** [1] - 1:8
**Holdings** [5] - 1:19, 2:4, 2:11, 2:13, 2:15
**home** [1] - 11:7
**Honor** [17] - 3:17, 9:23, 10:13, 10:16, 16:3, 16:11, 18:4, 18:7, 18:9, 18:21, 20:10, 20:15, 21:5, 22:7, 23:22, 25:16, 25:19
**HONORABLE** [1] - 1:11
**Honored** [1] - 4:18
**hope** [1] - 11:5
**hopeful** [1] - 25:21
**hopefully** [1] - 13:6
**hopes** [2] - 4:6, 4:8

## I

**idea** [1] - 4:4
**identified** [3] - 14:16, 15:1, 15:13
**ignore** [1] - 14:13
**imagine** [1] - 23:3
**immediately** [1] - 12:6
**impact** [1] - 16:20
**impeachment** [3] - 6:18, 6:20, 18:15
**important** [4] - 10:16, 11:12, 13:16, 13:24
**importantly** [2] - 16:8, 17:16
**imposed** [1] - 11:4
**impression** [1] - 16:6
**improperly** [1] - 14:25
**in-custody** [1] - 23:9
**inception** [1] - 4:14
**inclusion** [1] - 3:24
**inconsistent** [1] - 19:21
**indication** [1] - 6:15
**individuals** [1] - 9:6
**industry** [1] - 4:18
**insists** [1] - 4:19
**instead** [1] - 13:15
**intend** [1] - 14:13
**intended** [2] - 3:6, 11:25
**intent** [9] - 7:23, 10:19, 10:21, 11:13, 11:19, 15:23, 16:8, 17:11, 18:13
**intention** [2] - 17:5, 18:18
**interest** [2] - 19:9, 24:19
**interesting** [1] - 13:23
**interim** [1] - 25:12
**interpret** [1] - 19:12
**introduce** [4] - 6:8, 6:22, 9:11, 10:12
**involvement** [1] - 16:21
**involves** [1] - 19:2
**IRIZARRY** [1] - 1:11
**irrelevant** [1] - 10:22
**is..** [1] - 17:22
**issue** [11] - 7:17, 10:10, 10:15, 16:2,

16:14, 17:2, 17:8, 17:10, 17:15, 18:5, 18:8
**issues** [9] - 3:1, 3:10, 4:12, 6:3, 16:12, 16:16, 17:23, 23:24, 24:1
**items** [1] - 12:9

## J

**January** [10] - 1:7, 2:24, 3:1, 3:8, 5:18, 6:2, 11:24, 15:17, 25:6
**Jersey** [1] - 1:16
**Joelson** [3] - 2:12, 16:12, 16:14
**JOELSON** [2] - 1:22, 2:12
**joint** [2] - 3:11, 5:2
**joint pretrial order** [8] - 3:7, 3:14, 4:25, 5:4, 5:10, 5:13, 5:20, 18:17
**jointly** [2] - 2:22, 2:23
**JOSHUA** [1] - 1:21
**Joshua** [1] - 2:10
**jotted** [1] - 10:4
**Judge** [1] - 4:18
**judges** [1] - 23:25
**judgment** [1] - 10:23
**juncture** [1] - 3:21
**June** [1] - 15:9
**jury** [1] - 17:13

## K

**keep** [2] - 24:12, 24:24
**kids** [1] - 20:17
**kind** [3] - 3:4, 6:15, 15:22

## L

**land** [1] - 16:23
**landed** [1] - 15:22
**last** [8] - 3:25, 4:9, 5:10, 5:17, 8:1, 9:12, 14:15, 22:9
**late** [1] - 3:18
**law** [4] - 3:19, 4:17, 7:13, 7:14
**lawyers** [2] - 4:21, 17:14
**leading** [1] - 15:25
**lease** [3] - 14:3, 17:4, 17:5
**least** [1] - 25:10
**leeway** [1] - 6:19
**left** [1] - 14:7
**Leo** [1] - 4:18
**letter** [9] - 2:22, 2:24, 2:25, 3:3, 3:8, 6:2, 8:17, 14:16, 22:14
**letter of intent** [4] - 11:18, 11:19, 13:25, 14:9
**letters** [1] - 2:21
**life** [2] - 4:4, 4:20
**light** [1] - 8:20
**likewise** [1] - 25:20
**limine** [13] - 3:24, 7:11, 7:17, 8:19, 9:9, 10:3, 10:18, 14:25, 15:2, 17:25, 18:3, 19:23, 24:4
**line** [1] - 3:16
**lined** [1] - 3:13
**list** [3] - 16:18, 18:8, 24:12
**litigation** [1] - 13:17
**LLC** [3] - 1:8, 1:19, 2:11

**LLP** [1] - 1:18
**loathe** [1] - 23:10
**lobbying** [1] - 15:16
**look** [3] - 7:12, 15:3, 15:4
**looking** [2] - 22:5, 22:21

## M

**mail** [1] - 9:5
**mails** [9] - 6:7, 6:10, 6:11, 7:3, 7:6, 7:11, 9:1, 19:18
**Main Street** [1] - 1:15
**March** [2] - 14:21, 21:1
**market** [3] - 9:13, 15:7, 17:3
**matter** [2] - 25:23, 26:4
**matters** [2] - 9:4, 22:25
**MCDONALD'S** [1] - 1:3
**McDonald's** [12] - 1:15, 2:3, 2:6, 2:9, 11:20, 11:24, 12:15, 12:16, 13:7, 14:6, 14:7, 24:16
**McDonalds** [1] - 11:23
**mean** [3] - 8:22, 17:25, 23:2
**meaning** [1] - 16:18
**means** [1] - 16:20
**mediation** [3] - 3:5, 24:21
**meet** [2] - 6:1, 22:24
**meeting** [2] - 12:20, 12:22
**meetings** [1] - 12:6
**meets** [1] - 12:10
**mentioned** [1] - 13:9
**met** [1] - 12:18
**methodology** [3] - 19:3, 19:6, 19:8
**methods** [1] - 19:14
**middle** [2] - 4:10, 7:5
**might** [3] - 3:15, 6:12, 7:14
**minute** [2] - 5:10, 5:17
**mixed** [2] - 11:7, 12:16
**mixed-use** [2] - 11:7, 12:16
**MMC** [1] - 14:11
**moment** [1] - 24:15
**month** [1] - 24:14
**moreover** [1] - 5:7
**morning** [3] - 2:7, 2:16, 23:5
**most** [3] - 11:12, 17:16, 24:1
**motion** [12] - 7:11, 8:3, 8:19, 8:21, 9:9, 10:3, 10:17, 17:25, 18:3, 19:24, 19:25, 24:4
**motions** [4] - 3:24, 7:17, 7:18, 19:23
**motivation** [4] - 10:25, 11:2, 11:13, 15:23
**move** [2] - 23:10, 24:5
**moved** [1] - 4:3
**moving** [2] - 17:5, 25:21
**MS** [5] - 2:5, 2:14, 3:16, 20:19, 20:24
**multiple** [1] - 14:4

## N

**napkin** [2] - 6:19, 6:20
**necessarily** [3] - 8:14, 8:15, 18:14
**necessary** [4] - 5:2, 10:12, 13:3, 17:17
**need** [4] - 8:19, 23:7, 23:14, 23:15
**needed** [1] - 12:21
**neutral** [1] - 24:22

**new** [7] - 2:17, 4:8, 12:15, 14:17, 18:2, 18:8, 25:22
**New** [4] - 1:5, 1:16, 1:21
**nice** [1] - 3:15
**none** [2] - 5:20, 6:13
**notation** [1] - 6:23
**note** [1] - 3:11
**noted** [1] - 3:3
**notes** [2] - 12:20, 17:21
**nothing** [1] - 8:23
**noting** [2] - 2:25, 3:6
**November** [5] - 4:10, 5:25, 6:18, 12:19, 12:23
**number** [2] - 8:4, 17:13
**Number** [1] - 2:25

## O

**objected** [2] - 6:10, 6:15
**objects** [2] - 8:6, 8:7
**obviously** [4] - 6:18, 9:4, 17:19, 25:9
**occupancy** [1] - 13:2
**occur** [2] - 12:11, 13:2
**occurred** [1] - 9:13
**occurring** [1] - 15:14
**October** [2] - 12:7, 12:12
**offer** [1] - 3:20
**Official** [2] - 1:24, 26:10
**old** [1] - 14:16
**one** [19] - 2:22, 4:15, 6:21, 7:21, 8:4, 9:1, 10:9, 12:9, 13:9, 13:10, 13:25, 14:15, 15:14, 15:20, 16:13, 16:16, 17:13, 17:21
**ones** [2] - 15:6, 15:7
**open** [2] - 2:1, 21:25
**opening** [3] - 19:18, 19:19, 20:6
**opinion** [1] - 4:2
**opponent** [1] - 6:13
**opposing** [1] - 9:19
**ORA** [1] - 11:2
**order** [1] - 3:11
**original** [2] - 5:20, 18:17
**originally** [1] - 11:1
**otherwise** [1] - 3:5
**ourselves** [2] - 22:16, 23:18
**outset** [1] - 16:4
**outstanding** [2] - 3:10, 6:3
**own** [1] - 7:15

## P

**P.C** [1] - 1:14
**part** [5] - 7:9, 8:18, 9:18, 13:12, 24:3
**particular** [6] - 6:11, 6:14, 6:24, 7:2, 17:9, 18:24
**parties** [17] - 2:23, 3:3, 3:6, 3:13, 3:25, 4:11, 4:12, 5:23, 6:1, 7:14, 7:17, 7:22, 12:13, 16:7, 18:19, 21:2, 23:25
**parties'** [1] - 7:13
**party** [6] - 6:13, 10:19, 14:9, 14:12
**party's** [1] - 10:20
**Pashman** [2] - 2:5, 2:8
**PASHMAN** [1] - 1:14
**Passover** [2] - 21:21, 21:23
**patience** [1] - 4:22

**paying** [1] - 14:5
**perfect** [1] - 7:10
**perhaps** [1] - 6:12
**period** [1] - 13:1
**person** [1] - 23:9
**perspective** [2] - 9:23, 11:10
**petty** [1] - 4:21
**phone** [1] - 21:5
**place** [2] - 4:17, 7:25
**plainly** [1] - 15:24
**Plaintiff** [2] - 1:14, 1:14
**plaintiff** [23] - 2:22, 5:9, 5:11, 6:10, 6:25, 8:1, 8:6, 8:7, 8:19, 9:3, 9:11, 10:18, 10:24, 11:4, 11:5, 11:8, 17:4, 18:18, 18:24, 19:3, 20:9, 23:19
**plaintiff's** [5] - 2:25, 7:23, 19:19, 24:14, 24:25
**plaintiffs** [1] - 8:8
**Plaintiffs** [1] - 1:4
**plan** [1] - 11:6
**planned** [1] - 12:17
**Planning** [3] - 12:7, 12:9, 12:19
**play** [1] - 25:3
**pleadings** [12] - 7:23, 7:24, 8:5, 8:8, 8:12, 8:15, 8:18, 8:22, 19:20, 19:21, 19:24
**pleased** [3] - 3:22, 4:6, 4:7
**plenty** [1] - 4:1
**plus** [1] - 21:17
**point** [7] - 8:17, 8:22, 12:5, 13:5, 16:13, 16:25, 25:2
**pointing** [1] - 17:10
**position** [1] - 24:25
**positions** [1] - 3:9
**possibility** [1] - 8:14
**possible** [1] - 24:20
**post** [1] - 15:7
**post-fair** [1] - 15:7
**postdate** [1] - 10:8
**postdates** [1] - 13:11
**potential** [1] - 18:14
**pre** [3] - 10:3, 12:8, 14:18
**pre-application** [1] - 12:8
**pre-April** [1] - 10:3, 14:18
**precluded** [2] - 5:16, 18:9
**predates** [1] - 15:15
**premature** [1] - 9:2
**prepared** [5] - 12:7, 12:23, 14:21, 15:5, 18:15
**preparing** [1] - 24:16
**President's** [1] - 20:17
**pretrial** [4] - 2:2, 3:11, 4:9, 21:2
**PRETRIAL** [1] - 1:11
**principals** [2] - 14:10, 16:21
**problem** [1] - 20:4
**proceed** [2] - 3:5, 25:1
**Proceedings** [1] - 1:25
**proceedings** [1] - 26:4
**process** [21] - 9:12, 9:13, 9:16, 9:24, 10:1, 10:9, 10:10, 11:3, 11:14, 11:16, 12:13, 15:8, 15:10, 15:25, 16:22, 17:1, 17:4, 24:19
**produced** [1] - 1:25
**profession** [2] - 4:17, 4:18
**professionally** [1] - 4:23

project [2] - 12:22, 19:7
proper [3] - 8:2, 8:3, 8:20
properly [1] - 9:8
properties [1] - 19:2
property [5] - 11:6, 11:9, 11:25, 12:4, 14:7
proposal [2] - 23:22, 24:13
proposed [3] - 12:10, 12:24, 17:6
protracted [1] - 17:1
provided [2] - 5:8, 9:20
proximity [1] - 5:5
PTO [1] - 14:17
purpose [2] - 6:16, 14:13
purposes [1] - 6:20
push [1] - 18:1
pushed [1] - 13:21
put [3] - 18:13, 24:21, 25:11
putting [1] - 18:16

**Q**

qualified [1] - 19:10
questions [1] - 19:1
quickly [3] - 11:6, 23:3, 24:20
quote [2] - 12:21, 12:24
quoting [1] - 10:18

**R**

RAGHAVAN [2] - 1:22, 2:14
Raghavan [1] - 2:14
raise [3] - 18:5, 18:7, 19:22
raised [1] - 17:24
ratted [1] - 5:9
reached [1] - 11:1
readily [1] - 9:7
reading [1] - 7:5
reaffirmed [1] - 13:21
real [1] - 16:23
really [6] - 3:11, 3:22, 3:23, 17:10, 23:3, 23:10
reason [3] - 7:10, 9:8, 24:3
reasonably [1] - 13:4
receipt [1] - 2:18
recitation [1] - 8:9
reckless [1] - 10:20
reconsider [1] - 8:20
reconsideration [3] - 8:2, 8:3, 8:21
record [1] - 26:4
recorded [1] - 1:25
red [2] - 3:13, 3:16
redeveloped [1] - 13:4
redeveloping [1] - 11:7
redevelopment [3] - 12:11, 14:1, 15:1
reflect [1] - 12:20
refused [1] - 15:6
regard [1] - 8:4
REID [1] - 1:22
reidentify [1] - 12:21
relate [3] - 9:22, 9:25, 10:5
related [2] - 14:9, 14:12
relates [1] - 9:24
relevance [4] - 10:24, 14:1, 18:23, 18:24
relevant [3] - 11:11, 17:18, 19:7

remained [1] - 11:8
remind [2] - 9:12, 21:6
removed [1] - 15:19
rent [2] - 11:4, 14:6
reply [1] - 20:21
report [3] - 2:23, 5:2, 6:4
REPORTER [1] - 26:2
Reporter [3] - 1:23, 1:24, 26:10
representatives [1] - 22:20
representing [1] - 13:5
request [2] - 7:23, 19:20
requesting [1] - 3:5
research [1] - 7:7
reserve [1] - 22:5
resolve [1] - 3:4
respect [14] - 3:9, 3:22, 4:12, 4:15, 4:24, 5:4, 6:6, 7:2, 8:18, 9:10, 9:21, 17:11, 19:18, 19:19
respective [1] - 24:18
response [2] - 20:12, 20:20
responses [1] - 4:15
responsive [1] - 8:17
restaurant [2] - 11:20, 12:15
retain [1] - 10:25
review [1] - 3:10
reviewing [1] - 17:21
rezoning [15] - 9:10, 9:21, 9:22, 9:24, 10:5, 11:16, 11:21, 13:7, 13:13, 15:16, 16:13, 16:22, 17:6, 17:9
rights [1] - 10:21
rise [2] - 11:7, 12:15
rule [1] - 7:9
ruled [1] - 7:25
ruling [2] - 7:18, 8:2
rulings [1] - 11:3

**S**

schedule [5] - 3:25, 17:24, 18:3, 19:16, 19:17
scheduled [1] - 23:5
schedules [1] - 22:9
scheduling [1] - 7:19
second [3] - 9:1, 16:12, 17:21
secondly [2] - 5:3, 17:16
see [8] - 4:13, 4:20, 9:21, 15:6, 16:25, 17:20, 21:6, 22:25
seeing [1] - 19:9
seek [1] - 6:22
seeking [2] - 6:8, 8:8
seeks [1] - 9:11
sent [1] - 11:18
sentencing [1] - 23:5
separate [2] - 14:1, 14:13
set [7] - 5:13, 7:17, 7:21, 8:19, 18:3, 19:16, 22:4
setting [1] - 18:2
seven [3] - 9:22, 9:23, 22:22
shall [1] - 4:15
show [5] - 10:19, 11:17, 11:19, 11:22, 12:1
showed [1] - 14:5
showing [1] - 15:13
shown [1] - 5:19
shows [1] - 12:5

side [5] - 16:9, 17:8, 23:15, 24:9, 24:10
side's [1] - 16:18
sides [4] - 5:16, 5:21, 7:1, 23:24
sidetrack [1] - 19:6
significant [1] - 15:12
silence [2] - 6:8, 6:12
simultaneous [1] - 19:17
sit [1] - 7:4
site [1] - 13:4
situation [1] - 24:23
six [2] - 22:23, 22:24
sometimes [1] - 23:6
sooner [1] - 4:4
sorry [2] - 7:4, 20:1
sort [1] - 9:16
specifically [1] - 3:14
spent [1] - 24:16
stand [1] - 20:1
standard [3] - 8:20, 19:11, 19:14
standards [1] - 8:3
start [4] - 7:5, 7:7, 12:13, 16:4
started [3] - 9:15, 12:5, 15:19
starts [1] - 12:2
statement [4] - 12:8, 15:10, 15:11, 16:20
stating [1] - 12:24
status [4] - 2:23, 5:2, 6:2, 6:4
stay [1] - 11:25
STEIN [1] - 1:14
Stein [2] - 2:5, 2:8
stenography [1] - 1:25
still [2] - 4:20, 6:3
stipulated [2] - 11:15, 15:16
stipulation [2] - 15:18, 15:20
stipulations [8] - 9:20, 10:4, 10:11, 10:15, 15:4, 15:5, 15:21, 15:22
stop [2] - 7:5, 7:7
stopping [1] - 17:14
straight [1] - 23:20
stuff [2] - 4:21, 20:18
subject [2] - 3:24, 7:11
submit [1] - 22:14
submits [1] - 12:13
submitted [5] - 12:8, 13:12, 13:20, 14:10
suggest [2] - 24:7, 24:23
suggestion [1] - 14:11
Suite [1] - 1:16
summary [1] - 10:23
Sunday [1] - 21:13
surgery [1] - 17:17

**T**

tacks [1] - 4:23
TARA [1] - 1:22
Tara [1] - 2:14
tat [2] - 4:14, 16:9
tax [1] - 21:17
ten [2] - 9:22, 15:19
tenant [2] - 11:8, 17:4
Tener [1] - 11:1
term [1] - 12:1
testify [3] - 16:17, 16:18, 19:13
testimony [3] - 18:22, 19:4, 24:5

**textbook** [2] - 19:9, 19:10
**Thanksgiving** [1] - 5:25
**the defendant** [5] - 1:18, 1:19, 2:11, 4:25, 10:25
**theories** [1] - 8:11
**theory** [4] - 6:23, 7:4, 8:10
**they've** [2] - 11:15, 22:8
**thinking** [1] - 19:23, 24:15
**three** [4] - 20:7, 20:11, 20:20, 25:3
**Thursday** [2] - 23:9, 23:13
**timeline** [1] - 13:14
**tit** [2] - 4:14, 16:9
**tit-for-tat** [1] - 4:14
**titled** [1] - 14:23
**today** [4] - 2:19, 5:6, 5:15, 25:15
**tone** [1] - 4:9
**took** [1] - 15:18
**tout** [1] - 11:21
**towards** [1] - 7:20
**transaction** [2] - 14:9, 14:12
**Transcript** [1] - 1:25
**transcript** [1] - 26:3
**TRANSCRIPT** [1] - 1:11
**Transcription** [1] - 1:25
**trial** [17] - 3:6, 4:3, 5:5, 7:5, 8:23, 11:22, 17:12, 17:13, 18:1, 18:2, 22:4, 23:7, 23:16, 23:23, 24:12, 24:17, 24:24
**trials** [1] - 23:25
**true** [1] - 7:21
**try** [2] - 13:18, 13:20
**trying** [1] - 22:9
**turning** [1] - 21:6
**two** [3] - 2:21, 5:11, 18:18
**typical** [1] - 16:22

## U

**ULURP** [1] - 15:10
**unable** [2] - 3:4, 24:20
**unavailability** [2] - 22:10, 22:11
**under** [2] - 6:24, 10:21
**undercuts** [1] - 14:11
**understood** [1] - 23:11
**undertook** [1] - 11:2
**unfairly** [1] - 11:4
**unfortunately** [1] - 18:1
**United States** [3] - 1:1, 1:5, 1:12
**up** [2] - 15:25, 23:24
**updated** [1] - 22:10

## V

**vacate** [1] - 11:5
**vacuum** [1] - 7:9
**valuation** [2] - 14:18, 14:20
**Valuation** [1] - 14:23
**value** [4] - 9:13, 14:24, 15:8, 17:3
**VANDERBILT** [1] - 1:8
**Vanderbilt** [21] - 1:19, 2:4, 2:11, 2:13, 2:15, 11:18, 11:23, 11:25, 12:2, 12:7, 12:13, 12:18, 12:20, 12:23, 13:5, 13:13, 14:2, 14:3, 14:5, 15:9, 16:22
**Vanderbilt's** [2] - 14:10, 22:15
**verified** [1] - 8:16

**versus** [1] - 2:4
**vest** [1] - 8:23

## W

**waiting** [1] - 25:18
**WALDER** [1] - 1:14
**Walder** [1] - 2:5
**walk** [2] - 13:18, 13:20
**walked** [1] - 13:14
**Walsh** [1] - 2:8
**WALSH** [23] - 1:17, 2:8, 9:15, 9:23, 10:2, 10:8, 10:13, 10:16, 14:20, 20:10, 20:15, 20:25, 21:5, 21:14, 21:20, 22:3, 22:7, 22:13, 22:18, 22:23, 23:11, 25:8, 25:20
**Walter** [1] - 2:9
**waste** [1] - 24:5
**weed** [1] - 17:17
**weeds** [1] - 17:15
**week** [10] - 20:18, 21:16, 21:17, 23:1, 23:2, 23:3, 23:9, 23:13
**Week** [1] - 20:17
**weeks** [6] - 20:7, 20:11, 20:21, 23:21, 24:17, 25:3
**weigh** [2] - 7:12, 7:13
**whatsoever** [1] - 5:20
**whole** [5] - 4:3, 6:18, 21:3, 21:25, 23:1
**window** [1] - 4:21
**windows** [1] - 22:13
**witness** [2] - 16:17, 16:18
**witness's** [1] - 24:5
**witnesses** [1] - 22:19
**works** [2] - 20:15, 22:18
**worried** [1] - 24:9
**writing** [1] - 9:6
**written** [1] - 6:20

## Y

**year** [10] - 2:17, 2:24, 3:25, 12:17, 12:22, 13:2, 13:14, 13:22, 15:13, 16:19
**years** [3] - 4:19, 15:14, 17:6
**York** [3] - 1:5, 1:21

# EXHIBIT 2

| From: | Morris Missry |
|-------|---------------|
| Sent: | Monday, May 20, 2019 4:00 PM CDT |
| To: | Meyer Michael |
| Subject: | RE: 840 Atlantic Ave |

We are in agreement with the appraisers appointing a third and they have apparently agreed to contact Mark Nakleh to see if he would act as the third appraiser. We strongly disagree with McDonald's interpretation as to the process, which is clear as day in the lease. I frankly don't know why you need another day or two to come to the conclusion that we discussed.

Morris Missry, Esq.
WACHTEL MISSRY LLP
One Dag Hammarskjold Plaza
885 Second Avenue | New York, NY 10017
Telephone: 212 909-9557 | Facsimile: 212 909-9448
Email: Missry@wmllp.com | Website: www.wmllp.com

**From:** Meyer Michael <Michael.Meyer@us.mcd.com>
**Sent:** Monday, May 20, 2019 3:56 PM
**To:** Morris Missry <MISSRY@wmllp.com>
**Subject:** FW: 840 Atlantic Ave

Hi Morris,

See below. The appraisers have agreed upon Mark Nakleh as a 3rd appraiser and Sharon is trying to get him appointed in order to comply with the prior agreement between the parties. Any assistance is appreciated.

Thanks,

Mike

**From:** Sharon Locatell
**Sent:** Monday, May 20, 2019 3:26 PM
**To:** tjtener@ktrfirst.com
**Subject:** 840 Atlantic Ave

Hi Tom,

I tried your office. Can you give me a call if you're able and we can get Marc appointed today. I believe the outside date is today, May 20, 2019.

Thanks
Sharon

You can try me on my cell after 4pm. 718-440-6766

MCD007594

Sharon Locatell, MAI, CRE, MRICS
President
Appraisers & Planners, Inc.

9 East 40th Street
New York, New York 10016

(phone) 212-683-1122
slocatell@appraiser-plan.com

---

The information contained in this e-mail and any accompanying documents is confidential, may be privileged, and is intended solely for the person and/or entity to whom it is addressed (i.e. those identified in the "To" and "cc" box). They are the property of McDonald's Corporation. Unauthorized review, use, disclosure, or copying of this communication, or any part thereof, is strictly prohibited and may be unlawful. If you have received this e-mail in error, please return the e-mail and attachments to the sender and delete the e-mail and attachments and any copy from your system. McDonald's thanks you for your cooperation.

---

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

IMPORTANT NOTICES: NOTICE UNDER E-SIGN ACT: Unless specifically set forth herein, the transmission of this communication is not intended to be a legally binding electronic signature; and no offer, commitment or assent by or on behalf of the sender or the sender's client is expressed or implied by the sending of this email, or any attachments hereto. NOTICE OF ATTORNEY'S CONFIDENTIALITY: This email is confidential and may also be privileged. If you are not the intended recipient please delete it and notify us immediately by telephoning or e-mailing the sender. You should not copy it or use it for any purpose nor disclose its contents to any other person.

*****************************************

U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.

*****************************************

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT 3

Mike, I'm not following your revisions or logic. We all discussed allowing the appraisers exchange information including comps but not their respective Opinions. We would lie to keep it that way. Additionally, I don't know why you took out the "Settlement Discussions" language. Please explain. Lastly, I don't want to litigate any positions now. There is no reason to do that. The appraisers can exchange any information they choose and then we can have another discussion.

Morris Missry, Esq.
WACHTEL MISSRY LLP
One Dag Hammarskjold Plaza
885 Second Avenue | New York, NY 10017
Telephone: 212 909-9557 | Facsimile: 212 909-9448
Email: Missry@wmllp.com | Website:
https://nam02.safelinks.protection.outlook.com/?url=www.wmllp.com&amp;data=02%7C01%7CMichael.Meyer%40us.mcd.com%7C240a953998704e5a3ca308d7057a4c73%7Cc05b8d5ab8834afbae93db5db239911c%7C0%7C0%7C636983895136761271&amp;sdata=iK%2FrAWIhrxrVIWwqoynPxrEhKINnW%2FJ2tG7EdzPe2O0%3D&amp;reserved=0

-----Original Message-----
From: Meyer Michael <Michael.Meyer@us.mcd.com>
Sent: Wednesday, July 10, 2019 5:01 PM
To: Morris Missry <MISSRY@wmllp.com>
Subject: RE: L_C 031-2093 Brooklyn NY_Letter [MCD-LEGAL_USA.FID962110]

Morris,

As we've stated all along, we fully support having the appraisers talk further in the hopes that the parties can reach an agreement on the rent. However, the question of whether the existing ground lease should be taken into consideration is fundamental to the analysis, because it will dictate what comps and information will be included in the discussions. We do not consider this to be a complicated issue. In 936 Second Ave. LP v. Second Corporate Dev. Co, Inc., 10 N.Y.3d 628 (2008), the Court of Appeals of New York squarely held that "absent an agreement to the contrary, the effect of a net lease must be considered in valuing property for the purpose of setting rent for a renewal lease term. Such a rule comports with precedent, appraisal practices and common sense. If the parties to a lease desire to exclude that encumbrance in valuing the property, they only need to include language to that effect in their agreement." Because the Lease does not include any language to that effect, the Lease must be taken into consideration by the appraisers. If you disagree, we need to understand your position before we spend additional time and money on further discussions since it is likely that the appraisers will continue to talk past each other due to the absence of an agreement on this core issue. Let me know how you want to proceed.

Regarding the letter agreement, please see my proposed revisions attached - clean and redlined.

Thanks,

Mike

-----Original Message-----
From: Morris Missry <MISSRY@wmllp.com>
Sent: Monday, July 8, 2019 11:05 AM
To: Meyer Michael <Michael.Meyer@us.mcd.com>
Subject: RE: L_C 031-2093 Brooklyn NY_Letter Agreement(1081319.1) (002) Modified 07-02-19.doc

Ok thanks.  I think we should get through this and let the appraisers do their thing which may obviate the need to go in other directions.

Morris Missry, Esq.
WACHTEL MISSRY LLP
One Dag Hammarskjold Plaza
885 Second Avenue | New York, NY 10017
Telephone: 212 909-9557 | Facsimile: 212 909-9448
Email: Missry@wmllp.com | Website:
https://nam02.safelinks.protection.outlook.com/?url=www.wmllp.com&amp;data=02%7C01%7CMichael.Meyer%4
0us.mcd.com%7C240a953998704e5a3ca308d7057a4c73%7Cc05b8d5ab8834afbae93db5db239911c%7C0%7C0%7
C636983895136671271&amp;sdata=iK%2FrAWIhrxrVIWwqoynPxrEhKINnW%2FJ2tG7EdzPe2O0%3D&amp;re
served=0

-----Original Message-----
From: Meyer Michael <Michael.Meyer@us.mcd.com>
Sent: Monday, July 8, 2019 9:25 AM
To: Morris Missry <MISSRY@wmllp.com>
Subject: Re: L_C 031-2093 Brooklyn NY_Letter Agreement(1081319.1) (002) Modified 07-02-19.doc

Good morning Morris,

We are reviewing your proposed revisions.  Hope to have something back in the next day or so.  Any update on the case law research?

Thanks,

Mike

Sent from my iPhone

> On Jul 7, 2019, at 6:12 PM, Morris Missry <MISSRY@wmllp.com> wrote:
>
> Mike?
>
> Morris Missry, Esq.
> WACHTEL MISSRY LLP
> One Dag Hammarskjold Plaza<x-apple-data-detectors://3/2>
> 885 Second Avenue | New York, NY 10017<x-apple-data-detectors://3/2>
> Telephone: 212 909-9557<tel:212%20909-9557>
> Facsimile: 212 909-9448<tel:212%20909-9448>
> Email: Missry@wmllp.com<mailto:Missry@wmllp.com>
> Website:
https://nam02.safelinks.protection.outlook.com/?url=www.wmllp.com&amp;data=02%7C01%7CMichael.Meyer%4
0us.mcd.com%7C240a953998704e5a3ca308d7057a4c73%7Cc05b8d5ab8834afbae93db5db239911c%7C0%7C0%7
C636983895136671271&amp;sdata=iK%2FrAWIhrxrVIWwqoynPxrEhKINnW%2FJ2tG7EdzPe2O0%3D&amp;re
served=0<https://nam02.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.wmllp.com%2F&amp;data=
02%7C01%7CMichael.Meyer%40us.mcd.com%7C240a953998704e5a3ca308d7057a4c73%7Cc05b8d5ab8834afba
e93db5db239911c%7C0%7C0%7C636983895136671271&amp;sdata=JOnx8%2BjKQb04rEutHBwjM8GwzzQbIJ
z%2FMMXk2iamSME%3D&amp;reserved=0>
>
> On Jul 3, 2019, at 11:49 AM, Morris Missry <MISSRY@wmllp.com<mailto:MISSRY@wmllp.com>> wrote:
>
> Mike, please see my changes to the letter agreement.  Let me know if these are ok.  Thanks.  Enjoy the Holiday weekend.

MCD007716

> <L_C 031-2093 Brooklyn NY_Letter Agreement(1081319.1) (002) Modified 07-02-19.doc>
>
>
>
>
> IMPORTANT NOTICES: NOTICE UNDER E-SIGN ACT: Unless specifically set forth herein, the transmission of this communication is not intended to be a legally binding electronic signature; and no offer, commitment or assent by or on behalf of the sender or the sender's client is expressed or implied by the sending of this email, or any attachments hereto. NOTICE OF ATTORNEY'S CONFIDENTIALITY: This email is confidential and may also be privileged. If you are not the intended recipient please delete it and notify us immediately by telephoning or e-mailing the sender. You should not copy it or use it for any purpose nor disclose its contents to any other person.
> **************************************
> U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.
> **************************************
> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

_____

The information contained in this e-mail and any accompanying documents is confidential, may be privileged, and is intended solely for the person and/or entity to whom it is addressed (i.e. those identified in the "To" and "cc" box). They are the property of McDonald's Corporation. Unauthorized review, use, disclosure, or copying of this communication, or any part thereof, is strictly prohibited and may be unlawful. If you have received this e-mail in error, please return the e-mail and attachments to the sender and delete the e-mail and attachments and any copy from your system. McDonald's thanks you for your cooperation.

----------

This email has been scanned for spam and viruses by Proofpoint Essentials. Visit the following link to report this email as spam:
https://nam02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fus1.proofpointessentials.com%2Findex01.php%3Fmod_id%3D11%26mod_option%3Dlogitem%26mail_id%3D1562592301-ApU5FxYO1dmV%26r_address%3Dmissry%2540wmllp.com%26report&amp;data=02%7C01%7CMichael.Meyer%40us.mcd.com%7C240a953998704e5a3ca308d7057a4c73%7Cc05b8d5ab8834afbae93db5db239911c%7C0%7C0%7C636983895136761271&amp;sdata=z57ar3RvIb9BqbdmOODb2JQL8CQLcjMaRYJXxsYpa2U%3D&amp;reserved=0=
**************************************
U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.
**************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

_____

The information contained in this e-mail and any accompanying documents is confidential, may be privileged, and is intended solely for the person and/or entity to whom it is addressed (i.e. those identified in the "To" and "cc" box). They are the property of McDonald's Corporation. Unauthorized review, use, disclosure, or copying of this communication, or any part thereof, is strictly prohibited and may be unlawful. If you have received this e-mail in error, please return the e-mail and attachments to the sender and delete the e-mail and attachments and any copy from your system. McDonald's thanks you for your cooperation.

----------

This email has been scanned for spam and viruses by Proofpoint Essentials. Visit the following link to report this email as spam:

https://nam02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fus1.proofpointessentials.com%2Findex01.php%3Fmod_id%3D11%26mod_option%3Dlogitem%26mail_id%3D1562792480-pZUa3S8toZrH%26r_address%3Dmissry%2540wmllp.com%26report&amp;data=02%7C01%7CMichael.Meyer%40us.mcd.com%7C240a953998704e5a3ca308d7057a4c73%7Cc05b8d5ab8834afbae93db5db239911c%7C0%7C0%7C636983895136771280&amp;sdata=EoR1MihlR3PgwbGiaP5Q7UsMn1ZX4G6I0BZdpAyzllc%3D&amp;reserved=0=

*************************************
U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.
*************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

MCD007718

# EXHIBIT 4

Mike, would like to finalize the letter and take the next steps.  Please get back to me. Thank you.

Morris Missry, Esq.
WACHTEL MISSRY LLP
One Dag Hammarskjold Plaza
885 Second Avenue | New York, NY 10017
Telephone: 212 909-9557  | Facsimile: 212 909-9448
Email: Missry@wmllp.com | Website: www.wmllp.com

---

**From:** Morris Missry <MISSRY@wmllp.com>
**Sent:** Tuesday, July 16, 2019 6:11 PM
**To:** Meyer Michael <Michael.Meyer@us.mcd.com>
**Subject:** Re: L_C 031-2093 Brooklyn NY_Letter [MCD-LEGAL_USA.FID962110]

Are we finalizing the letter?

> Morris Missry, Esq.
> WACHTEL MISSRY LLP
> One Dag Hammarskjold Plaza
> 885 Second Avenue | New York, NY 10017
> Telephone: 212 909-9557
> Facsimile: 212 909-9448
> Email: Missry@wmllp.com
> Website: www.wmllp.com

On Jul 10, 2019, at 5:01 PM, Meyer Michael <Michael.Meyer@us.mcd.com> wrote:

> Morris,
>
> As we've stated all along, we fully support having the appraisers talk further in the hopes that the parties can reach an agreement on the rent.  However, the question of whether the existing ground lease should be taken into consideration is fundamental to the analysis, because it will dictate what comps and information will be included in the discussions. We do not consider this to be a complicated issue. In 936 Second Ave. LP v. Second Corporate Dev. Co, Inc., 10 N.Y.3d 628 (2008), the Court of Appeals of New York squarely held that "absent an agreement to the contrary, the effect of a net lease must be considered in valuing property for the purpose of setting rent for a renewal lease term. Such a rule comports with precedent, appraisal practices and common sense. If the parties to a lease desire to exclude that encumbrance in valuing the property, they only need to include language to that effect in their agreement." Because the Lease does not include any language to that effect, the Lease must be taken into consideration by the appraisers. If you disagree, we need to understand your position before we spend additional time and money on further discussions since it is likely that the appraisers will continue to talk past each other due to the absence of an agreement on this core issue. Let me know how you want to proceed.

Regarding the letter agreement, please see my proposed revisions attached - clean and redlined.

Thanks,

Mike


-----Original Message-----
From: Morris Missry <MISSRY@wmllp.com>
Sent: Monday, July 8, 2019 11:05 AM
To: Meyer Michael <Michael.Meyer@us.mcd.com>
Subject: RE: L_C 031-2093 Brooklyn NY_Letter Agreement(1081319.1) (002) Modified 07-02-19.doc

Ok thanks.  I think we should get through this and let the appraisers do their thing which may obviate the need to go in other directions.

Morris Missry, Esq.
WACHTEL MISSRY LLP
One Dag Hammarskjold Plaza
885 Second Avenue | New York, NY 10017
Telephone: 212 909-9557  | Facsimile: 212 909-9448
Email: Missry@wmllp.com | Website:
https://nam02.safelinks.protection.outlook.com/?url=www.wmllp.com&amp;data=02%7C01%7CMic
hael.Meyer%40us.mcd.com%7C397e730f2ad2410a9fbc08d703bdffdd%7Cc05b8d5ab8834afbae93db
5db239911c%7C0%7C0%7C636981986946551443&amp;sdata=DaXBavNOIz6LQXTLxLlS%2FhdMvSI%
2FG3lGgN%2FrfslvIJU%3D&amp;reserved=0

-----Original Message-----
From: Meyer Michael <Michael.Meyer@us.mcd.com>
Sent: Monday, July 8, 2019 9:25 AM
To: Morris Missry <MISSRY@wmllp.com>
Subject: Re: L_C 031-2093 Brooklyn NY_Letter Agreement(1081319.1) (002) Modified 07-02-19.doc

Good morning Morris,

We are reviewing your proposed revisions.  Hope to have something back in the next day or so.  Any update on the case law research?

Thanks,

Mike

Sent from my iPhone

MCD007705

On Jul 7, 2019, at 6:12 PM, Morris Missry <MISSRY@wmllp.com> wrote:

Mike?

Morris Missry, Esq.

WACHTEL MISSRY LLP

One Dag Hammarskjold Plaza<x-apple-data-detectors://3/2>

885 Second Avenue | New York, NY 10017<x-apple-data-detectors://3/2>

Telephone: 212 909-9557<tel:212%20909-9557>

Facsimile: 212 909-9448<tel:212%20909-9448>

Email: Missry@wmllp.com<mailto:Missry@wmllp.com>

Website:
https://nam02.safelinks.protection.outlook.com/?url=www.wmllp.com&amp;data=02%7C01%7C
Michael.Meyer%40us.mcd.com%7C397e730f2ad2410a9fbc08d703bdffdd%7Cc05b8d5ab8834afb
ae93db5db239911c%7C0%7C0%7C636981986946551443&amp;sdata=DaXBavNOIz6LQXTLxlLlS%2
FhdMvSI%2FG3lGgN%2FrfsIvIJU%3D&amp;reserved=0<https://nam02.safelinks.protection.outloo
k.com/?url=http%3A%2F%2Fwww.wmllp.com%2F&amp;data=02%7C01%7CMichael.Meyer%40us
.mcd.com%7C397e730f2ad2410a9fbc08d703bdffdd%7Cc05b8d5ab8834afbae93db5db239911c%
7C0%7C0%7C636981986946551443&amp;sdata=OIa%2BvW7YYS%2B8jh5mlnQpvxnREhnAjSd4Y6
4nHkZDCgA%3D&amp;reserved=0>

On Jul 3, 2019, at 11:49 AM, Morris Missry <MISSRY@wmllp.com<mailto:MISSRY@wmllp.com>>
wrote:

Mike, please see my changes to the letter agreement.  Let me know if these are ok.  Thanks.
 Enjoy the Holiday weekend.

<L_C 031-2093 Brooklyn NY_Letter Agreement(1081319.1) (002) Modified 07-02-19.doc>

IMPORTANT NOTICES: NOTICE UNDER E-SIGN ACT: Unless specifically set forth herein, the
transmission of this communication is not intended to be a legally binding electronic signature;
and no offer, commitment or assent by or on behalf of the sender or the sender's client is
expressed or implied by the sending of this email, or any attachments hereto. NOTICE OF
ATTORNEY'S CONFIDENTIALITY: This email is confidential and may also be privileged. If you are
not the intended recipient please delete it and notify us immediately by telephoning or e-mailing
the sender. You should not copy it or use it for any purpose nor disclose its contents to any other
person.

*************************************

U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

_____

The information contained in this e-mail and any accompanying documents is confidential, may be privileged, and is intended solely for the person and/or entity to whom it is addressed (i.e. those identified in the "To" and "cc" box). They are the property of McDonald's Corporation. Unauthorized review, use, disclosure, or copying of this communication, or any part thereof, is strictly prohibited and may be unlawful. If you have received this e-mail in error, please return the e-mail and attachments to the sender and delete the e-mail and attachments and any copy from your system. McDonald's thanks you for your cooperation.

----------

This email has been scanned for spam and viruses by Proofpoint Essentials. Visit the following link to report this email as spam:

https://nam02.safelinks.protection.outlook.com/?url=https%3A%2F%2Fus1.proofpointessentials.com%2Findex01.php%3Fmod_id%3D11%26mod_option%3Dlogitem%26mail_id%3D1562592301-ApU5FxYO1dmV%26r_address%3Dmissry%2540wmllp.com%26report&amp;data=02%7C01%7CMichael.Meyer%40us.mcd.com%7C397e730f2ad2410a9fbc08d703bdffdd%7Cc05b8d5ab8834afbae93db5db239911c%7C0%7C0%7C636981986946551443&amp;sdata=ImIbtrKSKYtl8THW8pU7xcmWoIGitXg3tMGAjZzSIBU%3D&amp;reserved=0=

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

_____

The information contained in this e-mail and any accompanying documents is confidential, may be privileged, and is intended solely for the person and/or entity to whom it is addressed (i.e. those identified in the "To" and "cc" box). They are the property of McDonald's Corporation. Unauthorized review, use, disclosure, or copying of this communication, or any part thereof, is strictly prohibited and may be unlawful. If you have received this e-mail in error, please return the e-mail and attachments to the sender and delete the e-mail and attachments and any copy from your system. McDonald's thanks you for your cooperation.

----------

This email has been scanned for spam and viruses by Proofpoint Essentials. Visit the following link to report this email as spam:

https://us1.proofpointessentials.com/index01.php?mod_id=11&mod_option=logitem&mail_id=1562792480-pZUa3S8toZrH&r_address=missry%40wmllp.com&report=

\<L_C 031-2093 Brooklyn NY_Letter Agreement REDLINE 7.10.19(1401305.1).pdf\>

\<L_C 031-2093 Brooklyn, NY_Letter Agreement(1081319.4).doc\>

****************************************
U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.
****************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT 5

Mike, I know that Sharon and Tom are setting up a call or meeting to share and discuss their results.  I wanted to discuss retaining the third appraiser with you and get him signed up.  Are you available later today for a call?

Morris Missry, Esq.
WACHTEL MISSRY LLP
One Dag Hammarskjold Plaza
885 Second Avenue | New York, NY 10017
Telephone: 212 909-9557
Facsimile: 212 909-9448
Email: Missry@wmllp.com
Website: www.wmllp.com

IMPORTANT NOTICES: NOTICE UNDER E-SIGN ACT: Unless specifically set forth herein, the transmission of this communication is not intended to be a legally binding electronic signature; and no offer, commitment or assent by or on behalf of the sender or the sender's client is expressed or implied by the sending of this email, or any attachments hereto. NOTICE OF ATTORNEY'S CONFIDENTIALITY: This email is confidential and may also be privileged. If you are not the intended recipient please delete it and notify us immediately by telephoning or e-mailing the sender. You should not copy it or use it for any purpose nor disclose its contents to any other person.

*****************************************
U.S. Treasury Circular 230 Notice: Any U.S. federal tax advice included in this communication was not intended or written to be used, and cannot be used, for the purpose of avoiding U.S. federal tax penalties.
*****************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT 6

| From: | benjamin.joelson@akerman.com |
| --- | --- |
| To: | Denise Alvarez |
| Cc: | joshua.bernstein@akerman.com; tara.raghavan@akerman.com; Brendan M. Walsh; kathleen.prystowsky@akerman.com; elizabeth.puccio-williams@akerman.com |
| Subject: | RE: McDonald"s v. Vanderbilt -- Trial Exhibits Follow Up |
| Date: | Wednesday, January 22, 2025 12:36:29 PM |

**EXTERNAL:** This email originated from outside of the organization.

Denise,

We have reviewed the nine exhibits that McDonald's identified in the second footnote of its January 7, 2025 letter to the Court and we determined that we will not be seeking to admit those documents under the adoptive admissions exception to the hearsay rule.

However, the majority of these documents are admissible as party opponent statements. Specifically, Exhibits V, Y, VV, WW, and XX are squarely admissions by McDonald's or its agents. Further, these documents may be used for purposes of impeachment and to demonstrate the analysis considered by McDonald's appraiser. In short, there are numerous bases for the admission and/or use of these documents.

As to Exhibits KK, AAA, BBB, and OOO, these may be used to demonstrate that Vanderbilt was diligently pursuing the process under the ORA and seeking to move the rent reset process forward. They may also be used to show that Vanderbilt was relying on the advice and expertise of its counsel in the process. Thus, the emails from Morris Missry in these exhibits are not being used for the truth of the matter asserted, but to demonstrate Mr. Missry's role and input throughout the ORA process. These documents may also be used for purposes of impeachment.

In sum, there are numerous admissible bases for all of the documents that you referenced in footnote 2 of your January 7th letter to court. We hope that this correspondence and the upcoming conference this Thursday resolves these issues.

Thank you.

**Benjamin R. Joelson**
Partner
Akerman LLP | 1251 Avenue of the Americas, 37th Floor | New York, NY 10020
D: 212 880 3815 | T: 212 880 3800 | F: 212 880 8965
benjamin.joelson@akerman.com

---

**From:** Denise Alvarez <DAlvarez@pashmanstein.com>
**Sent:** Saturday, January 18, 2025 7:49 AM
**To:** Joelson, Benjamin (Ptnr-NY) <benjamin.joelson@akerman.com>
**Cc:** Bernstein, Joshua (Ptnr-NY) <joshua.bernstein@akerman.com>; Raghavan, Tara (Ptnr-NY) <tara.raghavan@akerman.com>; Brendan M. Walsh <BWalsh@pashmanstein.com>; Prystowsky, Kathleen (Ptnr-NY) <kathleen.prystowsky@akerman.com>; Puccio-Williams, Elizabeth (Assoc-NY) <elizabeth.puccio-williams@akerman.com>

**Subject:** Re: McDonald's v. Vanderbilt -- Trial Exhibits Follow Up

**[External to Akerman]**

Yes, I will

On Jan 17, 2025, at 7:29 PM, benjamin.joelson@akerman.com wrote:

**EXTERNAL:** This email originated from outside of the organization.

Will you be sending a Zoom invite?

**Benjamin R. Joelson**
Partner
Akerman LLP | 1251 Avenue of the Americas, 37th Floor | New York, NY 10020
D: 212 880 3815 | T: 212 880 3800 | F: 212 880 8965
benjamin.joelson@akerman.com

**Denise Alvarez**
Partner
Pashman Stein Walder Hayden, P.C.
201.270.4946 Direct
dalvarez@pashmanstein.com

**From:** Denise Alvarez <DAlvarez@pashmanstein.com>
**Sent:** Friday, January 17, 2025 3:43 PM
**To:** Joelson, Benjamin (Ptnr-NY) <benjamin.joelson@akerman.com>; Bernstein, Joshua (Ptnr-NY) <joshua.bernstein@akerman.com>; Raghavan, Tara (Ptnr-NY) <tara.raghavan@akerman.com>
**Cc:** Brendan M. Walsh <BWalsh@pashmanstein.com>; Prystowsky, Kathleen (Ptnr-NY) <kathleen.prystowsky@akerman.com>; Puccio-Williams, Elizabeth (Assoc-NY) <elizabeth.puccio-williams@akerman.com>
**Subject:** RE: McDonald's v. Vanderbilt -- Trial Exhibits Follow Up

**[External to Akerman]**

Benjamin:

I confirm that we will not be filing a statement of elements/defenses/facts today, as you discussed with Brendan earlier.  We suggest that we convene by Zoom on Thursday at 1pm, but it's pertinent that we hear from you about which exhibits you contend are admissions by silence by 5pm on Wednesday so that we can be prepared for that meeting.

As for the trial dates, we should have confirmation from our witnesses on their availability very soon and will confer with you before submitting a letter to the Court.

Thanks
Denise

**Denise Alvarez**
Partner
Pashman Stein Walder Hayden, P.C.
**201.270.4946** Direct
dalvarez@pashmanstein.com

---

**From:** benjamin.joelson@akerman.com <benjamin.joelson@akerman.com>
**Sent:** Friday, January 17, 2025 3:22 PM
**To:** Denise Alvarez <DAlvarez@pashmanstein.com>; joshua.bernstein@akerman.com; tara.raghavan@akerman.com
**Cc:** Brendan M. Walsh <BWalsh@pashmanstein.com>; kathleen.prystowsky@akerman.com; elizabeth.puccio-williams@akerman.com
**Subject:** RE: McDonald's v. Vanderbilt -- Trial Exhibits Follow Up

**EXTERNAL:** This email originated from outside of the organization.

Denise,

Please make sure that my colleagues Kathleen and Elizabeth are copied on all communications in this case.

We can make ourselves available Thursday or Friday at 1 p.m. to discuss the exhibits issues.  Let us know if either works.

Also, this will confirm our conversation from earlier where we agreed that neither of us will be filing today the statement of elements/defenses/facts required by Judge Irizarry's rules in light of the adjournment of the trial, and that the deadlines for the various filings/exchanges in her rules will be tied to the new trial date once assigned. On that note, as I said in my email on Wednesday, we did not realize that there is a Jewish holiday in May which may conflict with a couple of the dates proposed by the judge.  So we would appreciate if we could all confer about dates after you've had a chance to speak with your client/witnesses and then we can submit a joint letter to the Court regarding the trial date.

Thanks.

**Benjamin R. Joelson**
Partner
Akerman LLP | 1251 Avenue of the Americas, 37th Floor | New York, NY 10020
D: 212 880 3815 | T: 212 880 3800 | F: 212 880 8965
benjamin.joelson@akerman.com


vCard | Profile


<image002.jpg>

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

---

**From:** Denise Alvarez <DAlvarez@pashmanstein.com>
**Sent:** Friday, January 17, 2025 1:04 PM
**To:** Bernstein, Joshua (Ptnr-NY) <joshua.bernstein@akerman.com>; Joelson, Benjamin (Ptnr-NY) <benjamin.joelson@akerman.com>; Raghavan, Tara (Ptnr-NY) <tara.raghavan@akerman.com>
**Cc:** Brendan M. Walsh <BWalsh@pashmanstein.com>
**Subject:** McDonald's v. Vanderbilt -- Trial Exhibits Follow Up

**[External to Akerman]**

Counsel:

As we discussed after the pre-trial conference on Wednesday, we would like to reach agreement as to some of the trial exhibits in an attempt to avoid motion practice. To do so, we need to understand which exhibits Vanderbilt is seeking to admit as admissions by silence/adoptive admissions. As noted in your letter to the Court dated January 10, 2025, it is Vanderbilt's position that many of the exhibits are admissible on other grounds, and not as adoptive admissions. Thus, in order to resolve this, we need to know which ones you contend are adoptive admissions. Please provide us with a list of such exhibits by close of business on Wednesday, January 22.

In addition, please let us know your availability for a call next Thursday or Friday to discuss this issue as well as the pleadings issue. Thank you.

Regards,
Denise

Denise Alvarez

Partner
Pashman Stein Walder Hayden, P.C.

**201.270.4946 Direct**
dalvarez@pashmanstein.com

Court Plaza South, 21 Main Street, Suite 200, Hackensack, NJ 07601
201.488.8200 | 201.488.5556 Fax | **pashmanstein.com**