UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| MCDONALD'S CORPORATION, | : | |
| | : | |
| Plaintiff, | : | No. 1:19-cv-06471-DLI-ST |
| | : | |
| v. | : | |
| | : | Date of Service: February 26, 2025 |
| VANDERBILT ATLANTIC HOLDINGS LLC, | : | |
| | : | |
| Defendant. | : | |

# DEFENDANT'S MEMORANDUM OF LAW IN
# OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE
# THE ADMISSION OF CERTAIN EMAILS INTO EVIDENCE

# TABLE OF CONTENTS

                                                                                                 **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

RELEVANT FACTUAL BACKGROUND ............................................................................... 2

    I.     THE RENT RESET PROCESS ............................................................................. 2

    II.    McDONALD'S REFUSED TO RETAIN THE THIRD APPRAISER, PREVENTING COMPLETION OF THE RENT RESET PROCESS ..................... 3

    III.   THE EMAILS McDONALD'S SEEKS TO EXCLUDE ........................................ 4

    IV.   McDONALD'S COMMENCED THIS ACTION ................................................... 7

ARGUMENT ................................................................................................................................. 8

    I.     STATEMENTS NOT OFFERED FOR THE TRUTH ARE NOT HEARSAY ..... 8

    II.    McDONALD'S ARGUMENT VIOLATES FRE 106 .......................................... 9

    III.   THE EMAILS ARE PROPERLY OFFERED FOR THE FACT THAT VANDERBILT SENT THEM TO McDONALD'S ......................................... 10

    IV.   THE EMAILS ARE PROBATIVE OF VANDERBILT'S ADVICE OF COUNSEL DEFENSE .......................................................................................................... 13

    V.    THE MISSRY EMAILS MAY BE USED FOR IMPEACHMENT ..................... 14

CONCLUSION ............................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*936 Second Avenue v. Second Corporate Development Co. Inc.*,
  10 N.Y.3d 628 (2008) ........................................................................................................5

*AngioDynamics, Inc. v. C.R. Bard, Inc.*,
  No. 117CV598BKSCFH, 2022 WL 4225170 (N.D.N.Y. Sept. 13, 2022) ........................11, 12

*Arista Records LLC v. Lime Group LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011) ..............................................................................10, 11

*Asseng v. County of Nassau*,
  No. 14-CV-5275(JS)(AYS), 2021 WL 5966290 (E.D.N.Y. Dec. 16, 2021) ............................11

*CA, Inc. v. Simple.com, Inc.*,
  780 F. Supp. 2d 196 (E.D.N.Y. 2009) .................................................................................8, 10

*Estate of Jaquez v. Flores*,
  No. 10-cv-2881, 2016 WL 1060841 (S.D.N.Y. Mar. 17, 2016) ........................................14, 15

*Floyd v. City of N.Y.*,
  No. 08 Civ. 1034, 2013 WL 1955683 (S.D.N.Y. May 13, 2013) .............................................8

*George v. Celotex Corp.*,
  914 F.2d 26 (2d Cir. 1990) .....................................................................................................10

*Leser v. U.S. Bank Nat. Ass'n*,
  No. 09-CV-2362 KAM MDG, 2012 WL 6738402 (E.D.N.Y. Dec. 29, 2012) .................11, 12

*Maehr v. NRG Home Solar*,
  No. 2:16-cv-03897 (ADS)(SIL), 2019 WL 559423 (E.D.N.Y. Apr. 10, 2019) ...................8, 10

*Phoenix Associates III v. Stone*,
  60 F.3d 95 (2d Cir. 1995) .........................................................................................................9

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
  587 F. Supp. 2d 548 (S.D.N.Y. Oct. 23, 2008) .......................................................................15

*U.S. Bank Nat. Ass'n v. Ables & Hall Builders*,
  696 F. Supp. 2d 428 (S.D.N.Y. 2010) ......................................................................................8

*U.S. v. al Fawwaz*,
  No. 98-cr-1023 (LAK), 2015 WL 13514090 (S.D.N.Y. Feb. 9, 2015) .....................................8

*U.S. v. Bouterse*,
    765 F. App'x 463 (2d Cir. 2019) ..................................................................................11

*U.S. v. Cooper*,
    No. 19-cr-159 (ARR), 2019 WL 5394622 (E.D.N.Y. Oct. 22, 2019) ........................9

*U.S. v. Coplan*,
    703 F.3d 46 (2d Cir. 2012)............................................................................................11

*U.S. v. Dupree*,
    706 F.3d 131 (2d Cir. 2013)....................................................................................10, 11

*Wright v. Urban Outfitters, Inc.*,
    No. 1:06cv13389, 2009 WL 10736929 (S.D.N.Y. Nov 30, 2009) ........................8, 10

**Rules**

Federal Rule of Evidence 106................................................................................8, 9, 10

Federal Rule of Evidence 801......................................................................................8, 11

Defendant Vanderbilt Atlantic Holdings LLC ("Vanderbilt") respectfully submits this memorandum of law in opposition to Plaintiff McDonald's Corporation's ("McDonald's") motion *in limine* to preclude the admission of certain emails into evidence at the upcoming trial of this matter (the "Motion").

**PRELIMINARY STATEMENT**

McDonald's Motion is an attempt to exclude critical documents that go directly to the heart of Vanderbilt's counterclaims and defenses in this action. These are documents that demonstrate that it was McDonald's, not Vanderbilt, that delayed the completion of the rent reset process. McDonald's claims that the four emails at issue in this Motion are "hearsay" and cannot be admitted into evidence. McDonald's is wrong. Vanderbilt is not offering these documents for the truth of the matter asserted. Thus, they are not hearsay as a matter of law.

McDonald's position is ironic given that the parties have expended significant time and energy addressing the admissibility of documents that McDonald's seeks to use at trial but that are inconsequential to the core of this action, including whether McDonald's could introduce into evidence certain pleadings, a Second Circuit brief, and a slew of zoning applications and related documents that this Court referred to as a "complete side issue." Rather than address Vanderbilt's contentions that it is not offering these four emails for the truth, McDonald's attempts to exclude these emails by arguing that this Court must accept these documents for the truth in order to admit them not for the truth. This argument is nonsensical and contrary to well-established law.

The four documents at issue are emails between Vanderbilt's counsel – Morris Missry ("Missry") – and McDonald's in-house counsel – Mike Meyer ("Meyer") (the "Missry Emails"). In each of these emails, Missry is emailing Meyer to push McDonald's to finally retain the third appraiser, which is a required step under the lease in order to complete the rent reset process.

McDonald's fails to timely respond to these emails and, in fact, never retains the third appraiser. Instead, McDonald's commenced this action claiming that it was Vanderbilt that had delayed the completion of the rent reset process.

Vanderbilt seeks to admit these documents for numerous valid reasons, including among other things: (i) the fact that Vanderbilt sent emails to McDonald's asking to retain the third appraiser; (ii) the fact that McDonald's did not timely respond to these emails; (iii) the fact that it was Vanderbilt's *counsel* that sent these emails, given Vanderbilt's advice of counsel defense; (iv) for the completeness and full context of the parties' communications, particularly as McDonald's admits that Meyer's and Sharon Locatell's ("Locatell") communications are admissible; and (v) for purposes of impeachment.

The law is clear that these four emails are not inadmissible hearsay as a matter of law. Accordingly, for these reasons as well as those stated herein, Vanderbilt respectfully requests that the Court deny McDonald's Motion in its entirety. The Court should not permit McDonald's to hide relevant documents that go to the very heart of this case, particularly in a bench trial.

**RELEVANT FACTUAL BACKGROUND**

**I. THE RENT RESET PROCESS**

This case concerns the parties' lease, dated March 18, 1998 (the "Lease"). *See* Dkt. No. 1-1. The Lease contains an Option Rent Addendum (the "ORA") that specifies the process to reset the rent for the 20-year extension terms. *See* Dkt. No. 66-3 at Ex. D. Under the ORA, Vanderbilt (as Landlord) notifies McDonald's (as Tenant) of the Landlord's estimate of the Fair Market Rental Value of the Demised Premises (the "FMV") no later than 180 days prior to the end of the primary term. *Id.* Should Landlord and Tenant fail to reach an agreement as to the FMV, then each of Landlord and Tenant choose a party-appointed appraiser to appraise the FMV of the premises. *Id.* If

the two party-appointed appraisers differ by "more than 15%, then the two appraisers shall appoint a third appraiser[.]" *Id.*

The ORA further provides that, "[i]f one of the parties fails to cho[o]se an appraiser within the specified time period or fails to cooperate in any way so that the process described above cannot be completed prior to 120 days of the expiration of the primary term of this Lease, the FMV of the one appraiser chosen by the cooperating party shall be used to determine the rent during the extension periods." *Id.*

## II. McDONALD'S REFUSED TO RETAIN THE THIRD APPRAISER, PREVENTING COMPLETION OF THE RENT RESET PROCESS

The facts adduced at trial will show that in April 2019, Vanderbilt and McDonald's advised each other of their party-appointed appraisers. Shortly thereafter, the two party-appointed appraisers chose Mark Nakleh to serve as the third appraiser, in the event that their appraisals differed by more than 15%.

Additionally, the facts adduced at trial will show that during a June 2019 meeting between the parties, the two appraisers disclosed their appraisals, which differed more than 15%, requiring a third appraiser to be appointed. McDonald's refused to retain Mr. Nakleh. Instead, the facts at trial will show that McDonald's claimed that Vanderbilt's appraiser had conducted his appraisal improperly. Vanderbilt disagreed, but also pointed out that McDonald's appraisal was not conducted properly. Notwithstanding, both parties instructed their appraisers to redo their appraisals. Both appraisers did so and reached the same conclusions.

Accordingly, the facts at trial will demonstrate that the parties were required to retain the third appraiser in order to complete the rent reset process. McDonald's refused to do so.

### III. THE EMAILS McDONALD'S SEEKS TO EXCLUDE

McDonald's refusal to appoint Mr. Nakleh, and Vanderbilt's efforts to encourage McDonald's to do so, are memorialized in email communications. The following are the emails that McDonald's seeks to exclude on the basis of hearsay:

**Defendant's Exhibit KK (Dkt. No. 110-2 at Ex. 2.).**

Defendant's Exhibit KK is an email, dated May 20, 2019, from McDonald's appraiser (Sharon Locatell) to Vanderbilt's appraiser (Tom Tener). In the email, Ms. Locatell asks Mr. Tener to call her "if you're able and we can get [sic] Marc [Nakleh] appointed today." This email was, then, forwarded by McDonald's in-house counsel to Vanderbilt's counsel the same day.

Although McDonald's agrees that these two emails in the chain are admissible, McDonald's seeks to exclude Vanderbilt's response to Meyer's email. (*See* Motion at 2.) Specifically, Mr. Missry wrote, "We [Vanderbilt] are in agreement with the appraisers appointing a third and they have apparently agreed to contact Mark Nakleh to see if he would act as the third appraiser." Mr. Missry continued, "We strongly disagree with McDonald's interpretation as to the process, which is clear as day in the lease. I frankly don't know why you need another day or two to come to the conclusion that we discussed."

Vanderbilt seeks to admit this email chain, including Mr. Missry's response, to show, among other things, that (i) Vanderbilt told McDonald's that it wanted the parties to appoint the third appraiser, as required in the ORA, as early as May 20, 2019; (ii) that there was a disagreement between the parties as to how to interpret the ORA; and (iii) that the primary person communicating with McDonald's regarding the ORA process was Vanderbilt's counsel, not Vanderbilt's principal.

4

Significantly, McDonald's objection to Defendant's Exhibit KK is perplexing, as the entire contents of Defendant's Exhibit KK are included within Plaintiff's Exhibit 110, to which Vanderbilt did not object.

**Defendant's Exhibit AAA (Dkt. No. 110-2 at Ex. 3.).**

Defendant's Exhibit AAA is an email chain between Vanderbilt's counsel and McDonald's in-house counsel, from July 3, 2019 through July 10, 2019, regarding a letter agreement that the parties eventually entered into relating to the parties' appraisals and appointing the third appraiser. The initial email in the chain is from Mr. Missry, on July 3, 2019, conveying "my changes to the letter agreement" and asking Mr. Meyer to "[l]et [him] know if these are ok." After four days passed without a response, Mr. Missry wrote again, "Mike?" McDonald's seeks to exclude these emails.

On July 8, 2019, Mr. Meyer responded and let Mr. Missry know that they were "reviewing [Mr. Missry's] proposed revisions" and "[h]ope to have something back in the next day or so." McDonald's concedes that this email may be admitted into evidence.

However, McDonald's seeks to exclude Mr. Missry's response on July 8, 2019, in which he wrote, "Ok thanks. I think we should get through this and let the appraisers do their thing which may obviate the need to go in other directions."

Again, McDonald's concedes that Mr. Meyer's response to Mr. Missry's email, dated July 10, 2019, should be admitted into evidence. In that email, Mr. Meyer outlines why McDonald's believes that there is a "fundamental" consideration to the rent reset analysis that "will dictate what comps and information will be included in the discussions [between the appraisers]." Specifically, Mr. Meyer references the decision in *936 Second Avenue v. Second Corporate Development Co. Inc.*, 10 N.Y.3d 628 (2008) and advises that McDonald's position is that "the Lease must be taken

5

into consideration by the appraisers." Mr. Meyer further advises that it "need[s] to understand [Mr. Missry's] position before [McDonald's will] spend additional time and money on further discussions since it is likely that the appraisers will continue to talk past each other…." and to "[l]et [him] know how [Mr. Missry] wan[ed] to proceed." Mr. Meyer also attached his "proposed revisions" to the letter agreement.

Mr. Missry responded to this email the same day. McDonald's seeks to exclude that response from evidence. Specifically, Mr. Missry wrote, "Mike, I am not following your revisions or logic. We all discussed allowing the appraisers to exchange information including comps but not their respective Opinion. We would li[k]e to keep it that way." Mr. Missry continued, "I don't want to litigate positions now. There is no reason to do that. The appraisers can exchange any information they choose and then we can have another discussion."

Vanderbilt seeks to admit this email chain at trial to show, among other things, that it was Mr. Missry – Vanderbilt's counsel – that was directing the ORA process, including making legal decisions and revisions to draft agreements, which Vanderbilt relied on. Additionally, Vanderbilt seeks to admit this document because it shows that Vanderbilt advised McDonald's that it "[did not] want to litigate" and was open to having the "appraisers [] exchange any information they choose."

**Defendant's Exhibit BBB (Dkt. No. 110-2 at Ex. 4.).**

Defendant's Exhibit BBB is a continuation of the email chain set forth in Defendant's Exhibit AAA. After Mr. Missry's July 10, 2019 email to McDonald's counsel described above, McDonald's did not respond. Thus, on July 16, 2019, Mr. Missry again emailed Mr. Meyer, "Are we finalizing the letter?" Again, Mr. Meyer did not respond. On July 22, 2019, Mr. Missry

6

emailed McDonald's again, "Mike, would like to finalize the letter and take next steps. Please get back to me. Thank you."

McDonald's seeks to exclude both of these emails, though it admits that Mr. Meyer's July 10, 2019 email in the chain is admissible. Vanderbilt seeks to admit these emails to show, among other things, that Vanderbilt sent McDonald's emails to continue to move the ORA process forward, but McDonald's delayed the process and did not timely respond.

**Defendant's Exhibit OOO (Dkt. No. 110-2 at Ex. 5.).**

Defendant's Exhibit OOO is a single email from Vanderbilt's counsel to McDonald's counsel, dated September 24, 2019. In this email, Mr. Missry wrote, "Mike, I know that Sharon and Tom [the party appointed appraisers] are setting up a call or meeting to share and discuss their results. I wanted to discuss retaining the third appraiser with you and get him signed up. Are you available later today for a call?" McDonald's seeks to exclude this email.

Vanderbilt seeks to admit this email to show, among other things, that Vanderbilt's counsel emailed McDonald's counsel in September 2019 – in addition to earlier and later emails – asking to discuss appointing the third appraiser, a required step to complete the ORA process, but that McDonald's never agreed to retain the third appraiser.

## IV. McDONALD'S COMMENCED THIS ACTION

On November 15, 2019, McDonald's commenced this action against Vanderbilt, seeking a declaration that it was Vanderbilt that "failed to cooperate in good faith by, among other things, not appraising FMV in accordance with the Lease, New York law, and usual and customary appraisal practices." Compl. ¶¶ 78-79 (Dkt. No. 1).

Vanderbilt counterclaimed for a declaration that McDonald's had, "in bad faith, [] failed to cooperate with the appraisal provisions of the [ORA] by having blocked the three appraisers

from estimating, by means of a letter opinion of value, the FMV of the Demised Premises and by commencing this action." Answer and Amended Counterclaim at ¶ 142; *see id.* ¶¶ 139-145 (Dkt. No. 28).

## **ARGUMENT**

### I. **STATEMENTS NOT OFFERED FOR THE TRUTH ARE NOT HEARSAY**

Federal Rule of Evidence 801(c) provides that a statement is only hearsay if the declarant made a statement out-of-court and if that statement is offered "to prove the truth of the matter asserted in the statement." When evidence is not being offered to prove the truth of the matter asserted, then it is not hearsay. *U.S. v. al Fawwaz*, No. 98-cr-1023 (LAK), 2015 WL 13514090, at *3 (S.D.N.Y. Feb. 9, 2015) (citing *Anderson v. United States*, 417 U.S. 211, 219 (1974)).

It is well-established that "[a] statement is not hearsay [] if the significance of the offered statement lies solely in the fact that it was made, and no issue is raised as to the truth of anything asserted." *Maehr v. NRG Home Solar*, No. 2:16-cv-03897 (ADS)(SIL), 2019 WL 559423, at *2 (E.D.N.Y. Apr. 10, 2019); *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 227-28 (E.D.N.Y. 2009); *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 435 (S.D.N.Y. 2010); *Wright v. Urban Outfitters, Inc.*, No. 1:06cv13389, 2009 WL 10736929, at *4 (S.D.N.Y. Nov 30, 2009). Thus, so long as the party is introducing the documents at issue for a non-hearsay purpose, such documents are admissible. *Maehr*, 2019 WL 559423, at * 2.

Further, it is important to note that "hearsay testimony need not be so strenuously guarded" during a bench trial. *Floyd v. City of N.Y.*, No. 08 Civ. 1034, 2013 WL 1955683, at *2 (S.D.N.Y. May 13, 2013).

## II. McDONALD'S ARGUMENT VIOLATES FRE 106

In its Motion, McDonald's concedes that it has "no objection to the admission of the portions of the email strings reflecting communications from individuals at McDonald's and/or McDonald's appraiser, Sharon Locatell," but contends that "[a]ll communications from Mr. Missry constitute inadmissible hearsay and should be precluded." (Motion at 2.) In other words, McDonald's wants this Court to admit McDonald's version of the events, while eliminating from evidence the complete email showing Vanderbilt's emails and responses, and the entire context of the communications. This is not proper.

Federal Rule of Evidence 106, known as the Completeness Rule, provides: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement--that in fairness ought to be considered at the same time." FRE 106. This rule "requires 'that a statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact." *U.S. v. Cooper*, No. 19-cr-159 (ARR), 2019 WL 5394622, at *6 (E.D.N.Y. Oct. 22, 2019) (citing *U.S. v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)); *Phoenix Associates III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995). Notably, FRE 106 was amended in 2023 to clarify that the adverse party may require the introduction of the complete statement even "over a hearsay objection." FRE 106.

As the United States Supreme Court has noted, "[t]he common-law doctrine of completeness, on which Rule 106 is based, [] requires that a full document or set of documents be introduced: '[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible.'" *Stone*, 60 F.3d at 102 (citing *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 172 (1988)). Furthermore, FRE 106

9

requires admission of the complete document, here the email chains, "to ensure a 'fair and impartial understanding' of the admitted portion." *Cooper*, 2019 WL 5394622, at *6 (quoting *U.S. v. Capaldo*, 402 F.2d 821, 824 (2d Cir. 1968)).

Here, McDonald's concedes that it has "no objection to the admission of the portions of the email strings reflecting communications from individuals at McDonald's and/or McDonald's appraiser." (Motion at 2.) However, in order for Vanderbilt to admit these statements, it is required under FRE 106 to introduce the entire email chain, including Vanderbilt's communications. Mr. Missry's emails are critical to provide context and a full understanding of the email exchanges between Mr. Missry and Mr. Meyer.

Accordingly, for this reason alone, McDonald's Motion must be denied, as McDonald's has admitted that certain portions of the Missry Emails are admissible.

## III. THE EMAILS ARE PROPERLY OFFERED FOR THE FACT THAT VANDERBILT SENT THEM TO McDONALD'S

McDonald's Motion should also be denied because it is well-established that emails are not hearsay, and are admissible, where they are being offered for the fact that they were sent and received.

It is foundational law of evidence that "[a] statement is not hearsay [] if the significance of the offered statement lies solely in the fact that it was made, and no issue is raised as to the truth of anything asserted." *Maehr*, at *2. Indeed, documents are routinely admitted as non-hearsay when they are introduced to show that the opposing party had notice of a certain event or occurrence. *Wright*, 2009 WL 10736929, at *4 (holding that emails presented to establish defendant's notice of plaintiff's complaints were not hearsay because they were not presented "to establish the truth of their contents, but to establish that the defendant had notice of her complaints."); *CA, Inc.*, 780 F. Supp. 2d at 227-28 (holding that emails were not hearsay and were

admissible because they were introduced to show that a website was available to the public and further holding that replies to emails were also admissible because they showed others accessed, used, and were aware of the web page); *Arista Records LLC v. Lime Group LLC,* 784 F. Supp. 2d 398, 421 (S.D.N.Y. 2011) ("Out-of-court statements are also not considered hearsay if used to prove notice or knowledge"); *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990); *U.S. v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013).

Additionally, it is well-established that "[o]ut-of-court statements are not hearsay if offered to show the context within which parties were acting, or to show a party's motive or intent for behavior." *Arista Records LLC*, 784 F. Supp. 2d 398 at 420-21; *Leser v. U.S. Bank Nat. Ass'n*, No. 09-CV-2362 KAM MDG, 2012 WL 6738402, at *5 (E.D.N.Y. Dec. 29, 2012) (same); *Asseng v. County of Nassau*, No. 14-CV-5275(JS)(AYS), 2021 WL 5966290, at *7 (E.D.N.Y. Dec. 16, 2021); *see AngioDynamics, Inc. v. C.R. Bard, Inc.*, No. 117CV598BKSCFH, 2022 WL 4225170, at *5 (N.D.N.Y. Sept. 13, 2022). Evidence is also not hearsay if it is proffered to show the effect on the recipient. *Leser*, 2012 WL 6738402, at *5; *Dupree*, 706 F.3d at 136 ("[A] statement offered to show its effect on the listener is not hearsay."); *see also U.S. v. Bouterse*, 765 F. App'x 463, 468 (2d Cir. 2019) ("[S]tatements not offered for their truth, but instead, for their effect on the listener or for context, may be introduced as non-hearsay statements.").

Similarly, inquiries are not assertions and, therefore, "cannot be hearsay statement[s]." *See AngioDynamics, Inc.*, at *5; *U.S. v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012) ("[T]he questions posed by the IRS agent were not hearsay, because as a matter of law, questions are not 'assertions' within the meaning of Rule 801").

Vanderbilt has previously advised McDonald's that it seeks to admit these emails for the fact that they were sent and to demonstrate the disagreement between the parties, *i.e.*, McDonald's

refusal to retain the third appraiser. McDonald's, however, argues that these emails are hearsay because "Vanderbilt intends to use the emails to prove matters that are essentially stated by Missry in the emails and/or requires that the fact finder assume that the statements made by Mr. Missry in those emails are true." (Motion at 4.) This is false.

For example, in Defendant's Ex. KK, Missry wrote to Meyer that Vanderbilt "strongly disagree[s] with McDonald's interpretation as to the [appraisal] process, which is clear as day in the lease." Vanderbilt is not offering this email chain as proof that the lease is, in fact, clear as day. Instead, Vanderbilt is offering this email to show, among other things, Vanderbilt and McDonald's disagreed about the rent reset process and what the Lease meant, as that is important context for understanding the dispute between the parties.

By way of another example, in Defendant's Exhibits AAA and BBB, Missry emails Meyer repeatedly asking about the retention of the third appraiser. In one email, Missry wrote, "I think we should get through this and let the appraisers do their thing which may obviate the need to go in other directions." There is no part of this email that is being offered for the truth. Instead, Vanderbilt is offering it to show that Vanderbilt's counsel was trying to get McDonald's to proceed with the required next step in the rent reset process – retaining the third appraiser.

As another example, in Defendant's Exhibit BBB, Vanderbilt's counsel wrote, "Mike, would like to finalize the letter and take the next steps. Please get back to me. Thanks." Again, Vanderbilt is not offering this email for the truth that Missry wanted to take next steps, but for the fact that Vanderbilt's counsel told McDonald's of its desire (whether genuine or not) to retain the third appraiser and that McDonald's continuously ignored Vanderbilt, and failed and refused to hire the third appraiser.

The law is clear that documents are admissible in their entirety where they are offered for the fact that they were sent – *i.e.*, not for the truth. *Leser*, at *5 (permitting defendant to admit emails to show the "effect on the recipients… [and] not for the truth of the matter asserted therein" and that "[o]ut-of-court statements are also not considered hearsay if used to prove notice or knowledge."); *AngioDynamics, Inc.*, at *5 (holding that emails were not hearsay because they were "inquiries or statements which do not contain any assertion").

Moreover, numerous of Mr. Missry's emails are inquiries, which are not assertions and "cannot be hearsay statement[s]" as a matter of law. *See AngioDynamics, Inc.*, at *5; *U.S. v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012). (*See e.g.*, Def's. Ex. BBB, Dkt. No. 110-2 at Ex. 4 (Mr. Missry writing to Mr. Meyer on July 16, 2019, "Are we finalizing the letter?"), *id.* (Mr. Missry writing to Mr. Meyer on July 7, 2019, "Mike?"), Def's. Ex. OOO, Dkt. No. 110-2 at Ex. 5 (Mr. Missry writing to Mr. Meyer on September 24, 2019, "Are you available later today for a call?").

For these reasons, the Missry Emails are not hearsay. and the Motion should be denied.

### IV. THE EMAILS ARE PROBATIVE OF VANDERBILT'S ADVICE OF COUNSEL DEFENSE

In addition to the foregoing, Vanderbilt also proffers these emails to show that it was Vanderbilt's counsel – Morris Missry – that was leading the ORA process, including based on his interpretation of the Lease. Thus, the emails are probative of Vanderbilt's advice of counsel defense in that they show that Missry – not Mr. Rottenberg, Mr. Li, or any of Vanderbilt's other agents – took an active role in the ORA process. Vanderbilt's principals had little direct involvement, but instead deferred to their counsel to communicate with McDonald's and effectuate the ORA process.

13

The emails at issue are all with Vanderbilt's counsel. None include Vanderbilt's principal on them. Thus, these emails standing alone show that Vanderbilt was relying on counsel for purposes of the ORA.

By way of example, in Defendant's Ex. KK, Missry wrote to Meyer that Vanderbilt "strongly disagree[s] with McDonald's interpretation as to the [appraisal] process, which is clear as day in the lease." This email is admissible for the purpose of showing that it was Missry who was corresponding with Meyer and providing his interpretation of the lease – which is relevant to Vanderbilt's advice of counsel defense.

In the Motion, McDonald's makes the conclusory statement that the emails are "not probative of the fact that Vanderbilt relied on Mr. Missry's advice." (Motion at 5.) This is not a legitimate basis to exclude the documents, as it is not McDonald's that gets to decide what is, and is not, probative on this issue. Instead, this argument is merely a critique of Vanderbilt's interpretation of the documents. Critically, however, McDonald's does not argue that the emails are not relevant – they concede this point. Thus, McDonald's argument goes entirely to the *weight* of the evidence, not its admissibility.

For this reason, as well, the Motion should be denied, as the emails are admissible to show Vanderbilt relied on Mr. Missry, which supports a central element of Vanderbilt's defense.

### V. THE MISSRY EMAILS MAY BE USED FOR IMPEACHMENT

Additionally, Vanderbilt may also need to use these emails for purposes of impeachment, should Mr. Meyer testify, for example, that Vanderbilt never attempted to retain the third appraiser, that Vanderbilt refused to let the appraisers discuss underlying comparables that formed the basis of their appraisals, or that Vanderbilt was being directly adversarial with McDonald's during the ORA process. In order to impeach Mr. Meyer (or any McDonald's witness) as to any of these

points, Vanderbilt must have the emails at issue in this Motion at its disposal. Indeed, the law is clear that impeachment evidence may be introduced should the witness open the door to certain issues or subjects. *See Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 571 (S.D.N.Y. Oct. 23, 2008) (allowing evidence to be used for impeachment purposes should defendant open the door).

In the Motion, McDonald's attempts to preclude Vanderbilt from relying on these four emails by arguing that Vanderbilt cannot simply claim the documents are to be admitted for impeachment purposes, but must also demonstrate that the documents are admissible. (*See* Motion at 4.) As explained above, Vanderbilt has provided numerous admissible bases for these emails, rendering this argument superfluous.

Additionally, the one case that McDonald's relies on to support its conclusory argument, *Estate of Jaquez v. Flores*, No. 10-cv-2881, 2016 WL 1060841, at *10 (S.D.N.Y. Mar. 17, 2016), is readily distinguishable. In *Flores*, the court precluded plaintiffs from referring to or offering portions of a NYPD Patrol Guide. In so holding, the court observed that it was "at this time unclear how these materials would constitute proper impeachment evidence," but also noted that "[i]f plaintiffs believe there is a proper use for them as impeachment in response to a specific line of questioning at trial, they may make an appropriate application at that time." *Id.*, at *10. Notably, it appears that the plaintiff in *Flores* conceded that the NYPD Patrol Guide was not admissible, but solely sought to use the document for impeachment purposes. In contrast, the Missry Emails, unlike the NYPD Patrol Guide, are independently admissible on numerous grounds, as detailed above. Vanderbilt intends to use those documents in its case-in-chief. Furthermore, Vanderbilt has demonstrated above how and why these documents are proper impeachment evidence, unlike the plaintiff in *Flores*.

15

Accordingly, even if the Missry Emails were solely being proffered for purposes of impeachment, which they are not, they are also admissible for this purpose. For this reason, as well, the Motion should be denied.

## **CONCLUSION**

For these reasons, Vanderbilt respectfully requests that McDonald's motion *in limine* be denied in its entirety.

Dated: New York, New York
       February 26, 2025

**AKERMAN LLP**

*/s/ Joshua D. Bernstein*
Joshua D. Bernstein
Benjamin R. Joelson
Kathleen M. Prystowsky
Tara L. Raghavan
Elizabeth C. Puccio-Williams
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
(212) 880-3800
joshua.bernstein@akerman.com
benjamin.joelson@akerman.com
kathleen.prystowsky@akerman.com
tara.raghavan@akerman.com
elizabeth.puccio-williams@akerman.com

*Attorneys for Defendant*
*Vanderbilt Atlantic Holding, LLC*