UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MCDONALD'S CORPORATION, | : : : | |
| Plaintiff, | : : | No. 1:19-cv-06471-DLI-ST |
| v. | : : : | |
| VANDERBILT ATLANTIC HOLDINGS LLC, | : : : | |
| Defendant. | : : | |

# MCDONALD'S CORPORATION'S STATEMENT OF CLAIMS AND DEFENSES

**PASHMAN STEIN WALDER HAYDEN, P.C.**
Brendan M. Walsh, Esq.
Denise Alvarez, Esq.
370 Lexington Avenue, Suite 505
New York, New York 10017
bwalsh@pashmanstein.com
dalvarez@pashmanstein.com

*Attorneys for Plaintiff McDonald's Corporation*

Dated: January 23, 2026

In anticipation of the bench trial scheduled to begin on Monday, February 9, 2026, Plaintiff McDonald's Corporation ("McDonald's") respectfully submits the following Statement of Claims and Defenses in accordance with Section VI.B of Judge Dora L. Irizarry's Individual Motion Practice and Rules for Civil Cases.

**McDonald's Cause of Action for a Declaratory Judgment that Vanderbilt Failed to Cooperate in the FMV Process Required by the McDonald's Lease**

McDonald's has only one claim remaining to be tried in this matter. In McDonald's First Cause of Action, McDonald's seeks a declaratory judgment that Defendant Vanderbilt Atlantic Holdings, LLC ("Vanderbilt") failed to cooperate in the contractually-required fair market rent valuation ("FMV") process that will determine the rent that McDonald's must pay Vanderbilt under the final twenty years of its ground lease, dated March 18, 1998 (from April 9, 2019 through April 8, 2039) (the "McDonald's Lease") for the property located at 840 Atlantic Avenue, Brooklyn, New York (the "Property"). The McDonald's Lease provides that the annual rent for the first extension term (commencing on April 9, 2019) shall be 80% of the fair market rental value of the premises as of April 8, 2019, exclusive of any improvements on the Property, or $192,391/year, whichever is greater, and that the rent for additional extension terms (April 9, 2024 through April 8, 2029, April 9, 2029-April 8, 2034, and April 9, 2034-April 8, 2039) shall be 15% higher than the previous extension term. The Option Rent Addendum to the McDonald's Lease describes a process for determining the FMV of the Property, which is discussed further herein. The Option Rent Addendum also provides:

> If one of the parties . . . fails to cooperate in any way so that the process described [in the Option Rent Addendum] cannot be completed prior to 120 days of the expiration of the primary term of this Lease [i.e., by August 6, 2019], the FMV of the one appraiser

1

> chosen by the cooperating party shall be used to determine the rent
> during the extension periods.

(Pl. Ex. 1 at Exhibit G).[1] McDonald's contends that Vanderbilt failed to cooperate in the FMV process in good faith by not appraising the FMV in accordance with the McDonald's Lease, New York law, and usual and customary appraisal practices, and by not allowing three appraisers to collaborate in the determination of the FMV as required by the McDonald's Lease. As a result of Vanderbilt's actions, McDonald's seeks the following relief:

    a.    A declaration that Vanderbilt failed to cooperate in good faith in the FMV process described in the Option Rent Addendum to the McDonald's Lease;

    b.    A declaration that the FMV of $350,000 calculated by McDonald's appraiser shall alone be used to determine the rent during the extension periods; and

    c.    A declaration that McDonald's annual rent for the first five-year extension period extending from April 9, 2019 through April 8, 2024, is $280,000, or $23,333 per month (80% of the FMV).

To prevail on its declaratory judgment claim, McDonald's will need to show that Vanderbilt did not cooperate in the FMV process as required by the McDonald's Lease. The Court has held that implicit in every contract, including the McDonald's Lease, is the covenant of good faith and fair dealing, and thus, good faith cooperation in the FMV process is a requirement of the McDonald's Lease. Opinion & Order, dated Sept. 27, 2023 [ECF No. 75], at 14-15. McDonald's, as plaintiff, bears the burden of showing that Vanderbilt breached the duty to cooperate in good faith in the FMV process. *Id.* at 15 (quoting *First Niagara Bank N.A. v. Mortg. Builder Software,*

---

[1] "Pl. Ex." refers to the trial exhibits identified by Plaintiff in the Amended Proposed Joint Civil Pretrial Order, filed on January 13, 2025 [ECF No. 106].

*Inc.*, 2016 WL 2962817, * 6 (W.D.N.Y. May 23, 2016)). To establish a breach, McDonald must show that Vanderbilt had "intent" to harm McDonald's or alternatively, acted with a "reckless disregard of" McDonald's rights under the contract. *Id.* at 15 (quoting *First Niagara Bank N.A.,* 2016 WL 2962817, *6). In determining whether Vanderbilt breached the covenant to act in good faith, the Court "must examine not only the express language of the parties' contract, but also the course of performance or course of dealing that may exist between the parties." *Id.* at 15 (quoting *First Niagara Bank N.A.,* 2016 WL 2962817, *6).

McDonald's will present substantial evidence at trial to establish that Vanderbilt failed to cooperate in the FMV process in good faith. The Option Rent Addendum sets forth a detailed process for determining the FMV for the first extension term. The Option Rent Addendum provides that the "Landlord [*i.e.,* Vanderbilt] shall notify Tenant [*i.e.,* McDonald's] of Landlord's estimate of the FMV no later than one hundred eighty (180) days prior to the end of the primary term." (Pl. Ex. 1 at Exhibit G). Next, the parties should attempt to reach agreement on the FMV, but "[s]hould Landlord and Tenant fail to reach an agreement in writing as to the FMV . . . the FMV shall be estimated by two qualified MAI or SREA real estate appraisers . . . one to be appointed and compensated by Tenant and the other to be appointed and compensated by Landlord." *Id.* Those party-appointed appraisers are required to estimate the FMV of the Property and attempt to agree on the FMV. *Id.* "If, within 20 days from their appointment, the two appraisers can agree to the FMV not differing by more than 15%, then an average of the two appraisals shall be used for" determining the FMV. *Id.* "If the two appraisals differ by more than 15%, then the two appraisers shall appoint a third appraiser…" *Id.* The Option Rent Addendum then provides a process for the three appraisers to follow:

3

> The three appraisers so appointed shall then, within 20 days of the date the third appraiser is appointed, estimate, by means of a letter opinion of value, the FMV. The decisions of the three appraisers, or a majority of them, shall be binding upon the parties. If the appraisers, or a majority of them, cannot agree on the FMV, it shall be determined by adding all three estimates and dividing the total of all three estimates by the number three.

*Id.* In addition to describing the process, the Option Rent Addendum also describes how the FMV shall be determined:

> The rental value shall be established based upon a definition of Fair Market Rental Value as the price which an average well-informed tenant would pay and an average well-informed landlord would accept, exclusive of Tenant's improvements, knowing all the uses to which the property can be put, without duress on either party.
>
> The standard market data approach technique for valuing vacant land shall be used by the appraisers. All comparable leases shall be appropriately adjusted and the written reports shall indicate the reasons for the adjustment so made. If adequate comparable leases are not available, then a land residual technique, as defined by the American Institute of Real Estate Appraisers, shall be used. The real estate income component used in the residual technique shall be economic rental for hypothetical improvements, but in no event shall any business income be considered in the analysis.

*Id.*

McDonald's entered into the McDonald's Lease with Anthony M. Musto, who was the fee owner of the land in March 1998. Mr. Musto is the majority member of M.M.B. Associates LLC, the current fee owner of the land. Vanderbilt became McDonald's landlord under the McDonald's Lease on November 30, 2017 when Vanderbilt entered into a 99-year ground lease with M.M.B. (the "Vanderbilt Lease"). Vanderbilt cannot dispute that it acquired the McDonald's Lease with the intention of re-developing the Property, but may claim that it was willing to wait until McDonald's is off the Property to do so. However, McDonald's has significant evidence that the Vanderbilt

Lease motivated Vanderbilt to persuade McDonald's to terminate the McDonald's Lease before its expiration, and that Vanderbilt intentionally manipulated the FMV process in an effort to yield an unreasonably high FMV so that McDonald's would either terminate the McDonald's Lease or accept a lower buy-out for the remainder of the McDonald's Lease than would otherwise be fair and appropriate.

McDonald's will show that the Vanderbilt Lease contains numerous provisions that would benefit Vanderbilt only if the McDonald's Lease were terminated. For example, the Vanderbilt Lease provides that so long as the McDonald's Lease remains in effect, Vanderbilt must pay all the rent that it receives from McDonald's to M.M.B. as Vanderbilt's rent. (Pl. Ex. 5 at § 3.1). In other words, although Vanderbilt is McDonald's landlord and controls the FMV process, Vanderbilt cannot keep any portion of the rent that McDonald's pays as long as the McDonald's Lease is in effect; all of McDonald's rent payments to Vanderbilt are passed 100% through to M.M.B. as Vanderbilt's rent.

The amount of rent that Vanderbilt must pay to M.M.B. after the McDonald's Lease terminates depends on whether (1) the Property has been rezoned; and (2) how soon the McDonald's Lease terminates. The Vanderbilt Lease provides that, if the McDonald's Lease terminates and the Property has *not* been rezoned, Vanderbilt's rent will be $10 per buildable square foot in the first year with the rent increasing 2% per year thereafter for the first ten years or until the Property is rezoned. (Pl. Ex. 5 at § 3.1.1). Because the Property is approximately 36,000 square feet, that would result in an annual rent of approximately $360,000. If the McDonald's Lease terminates *before* November 30, 2027 and the Property *has been* rezoned by that time, Vanderbilt's rent will be $10 per buildable square foot of the rezoned floor area and will increase 2% per year

5

for the remainder of the McDonald's Lease. (*Id.* at § 3.1.1). If, however, the Property *is rezoned* but the McDonald's Lease does not terminate until *after* November 30, 2027, Vanderbilt's rent will be the lesser of the "Fair Market Value of the Premises" or $19 per buildable square foot of the rezoned floor area. (*Id.* at § 3.1.2). In other words, Vanderbilt can lock in a starting rent of $10 per buildable square foot only if the McDonald's Lease is terminated before November 30, 2027. If the McDonald's Lease is not terminated until after November 27, 2027, Vanderbilt will need to engage in a fair market valuation process and could be required to pay a starting rent as high as $19 per square foot. These provisions incentivizing Vanderbilt to terminate the McDonald's Lease before November 27, 2027 are contained in the Vanderbilt Lease despite the fact that the McDonald's Lease gives McDonald's the unilateral right to extend the McDonald's Lease through April 8, 2039.

The evidence at trial will show that, long before the commencement of the FMV process, Vanderbilt planned to redevelop the Property without a McDonald's and would use the FMV process to further this goal. On January 17, 2018—less than two months after Vanderbilt entered into the Vanderbilt Lease—Simon Dushinsky, a member of Vanderbilt, retained the law firm of Slater & Beckerman to provide legal advice and lobbying services for a "rezoning of the [Property] for greater density." Amended Joint Civil Pretrial Order, dated Jan. 13, 2025 [ECF No. 106] at p. 7 ("Stipulations of Fact & Law") at No. 7). Also in early 2018, Sam Rottenberg, a member of Vanderbilt and Vanderbilt's principal, reached out to McDonald's for the first time because he wanted to understand whether McDonald's intended to remain on the Property. Mr. Rottenberg spoke to Carol DeMarco, McDonald's asset manager for the Property in February 2018. During that conversation, Mr. Rottenberg informed Ms. DeMarco that Vanderbilt considered the Property

6

to be a redevelopment site and inquired about what McDonald's would do if it did not like the rent for the first extension term. Ms. DeMarco explained that McDonald's planned to stay on the Property for the long term and planned to modernize the restaurant. Mr. Rottenberg, however, was focused on whether McDonald's would remain on the Property if it did not like the rent. The evidence at trial will show that despite McDonald's stated intention to stay on the Property, Vanderbilt moved forward with redevelopment plans, retaining an architect and other professionals to plan for the development of a high-rise mixed-use building on the Property without a McDonald's. Documentary evidence will show that, despite McDonald's having the right to stay on the Property until 2039, Vanderbilt anticipated beginning construction of an 18-story mixed-use residential and commercial building on the Property in 2020 or 2021, "with completion and occupancy expected to occur in 2022." (Pl. Ex. 37 at VA 018778.)

McDonald's will present evidence showing that because Vanderbilt planned to redevelop the Property without a McDonald's, Vanderbilt intentionally corrupted the FMV process hoping that McDonald's would terminate the McDonald's Lease. On May 10, 2018, Vanderbilt sent a letter to McDonald's, advising that it had determined that the fair market rental value of the Property to be $975,000 per year, resulting in an annual rent of $780,000 (80% of the FMV). (Pl. Ex. 12). That would be more than a 400% increase in the rent that McDonald's was paying at the time. The evidence will show that Vanderbilt had no rational basis for this estimate; it did not have an appraisal or any reliable evidence supporting that increase. On April 15, 2019, McDonald's advised Vanderbilt that the parties could not agree on a FMV and designated Sharon Locatell of Appraisers & Planners, Inc. ("Appraisers & Planners") as its party-appointed appraiser. (Stipulations of Fact

7

& Law at No. 17). Vanderbilt responded on the same date, designating Thomas Tener of KTR Real Estate Advisors LLC ("KTR") as Vanderbilt's party-appointed appraiser. *Id.* at No. 18.

The evidence will show that prior to designating Mr. Tener as its appraiser for the FMV process, Vanderbilt auditioned multiple appraisers, including BBG Real Estate Services ("BBG"), Mr. Tener of KTR, and Republic Valuations ("Republic"), in preparation for the FMV process. The evidence will also show that Sam Rottenberg, Vanderbilt's principal, was actively involved in the retention of these appraisers and the FMV process. Vanderbilt retained BBG, KTR and Republic to estimate the fee simple interest of the Property (Stipulations of Fact & Law at Nos. 8-10), but provided incorrect and incomplete information to them. For example, Vanderbilt's first retention letter with KTR, dated June 27, 2018, states that the McDonald's Lease will be expiring in the near term even though the McDonald's Lease does not expire until 2039. The June 27, 2018 retention letter also states that the Vanderbilt Lease was between "related entities" even though there is no evidence establishing a direct relationship between Vanderbilt and M.M.B. (Pl. Ex. 17). The evidence also shows that Mr. Tener requested "copies of any leases that encumber the properties" multiple times, including in the June 27, 2018 retention letter, *id.*, but neither Mr. Rottenberg nor anyone at Vanderbilt ever provided Mr. Tener with a copy of the Vanderbilt Lease. Similarly, Vanderbilt requested that Republic conduct its appraisal as if the Property were not encumbered.

After these fee simple appraisals were completed, Vanderbilt retained Metropolitan Valuation Services ("Metropolitan"), another appraisal firm, to perform "desk reviews" of the appraisals of KTR and BBG. (Stipulations of Fact & Law at No. 12). Specifically, Vanderbilt retained Metropolitan to "opine on the reasonability and credibility of the reported value opinions and suggest areas (if any) where such conclusions may be impacted or clarified." (Pl. Ex. 21). The

8

evidence will show that Vanderbilt requested the desk reviews in preparation for the FMV process and that the desk reviews influenced Vanderbilt's decision to retain Mr. Tener as its appraiser for the FMV process. On February 26, 2019, Metropolitan sent Sam Rottenberg and Tom Li of Vanderbilt, as well as Morris Missry, Vanderbilt's counsel, its desk review of KTR's report, concluding that "the KTR Report in its current form is slightly more credible [than the BBG Report], though the BBG Report can get there with some minor amplification." (Pl. Ex. 22 at VA 012456). Metropolitan, however, also advised that KTR's fee simple appraisal be modified in certain respects if Vanderbilt intended to use the appraisal for the FMV process. *Id.* Specifically, Metropolitan stated "Should the [KTR] Appraisal be utilized in conjunction with the ground rent re-set [for the McDonald's Lease], the Highest and Best Use Analysis as improved should consider the encumbrance in place with respect to the [McDonald's] Lease, which precludes near-term demolition." (*Id.* at VA 012468). Metropolitan also opined that "no consideration [should] be given to any potential 'up-zoning'" of the Property when valuing FMV under the McDonald's Lease because such a rezoning "would be highly speculative without formal, or at least anecdotal municipal approval." (*Id.* at VA 012474 and 012466). The evidence will show that despite these recommendations, Mr. Missry, on Vanderbilt's behalf, instructed Mr. Tener not to consider the encumbrance of the McDonald's Lease in his FMV analysis and that Mr. Tener took the potential upzoning of the Property into consideration.

McDonald's will present evidence to show that Vanderbilt took steps to ensure that Tom Tener conducted a FMV appraisal that resulted in an unreasonably high rent for the Property, even if that meant disregarding the terms of the McDonald's Lease, New York law, and industry-wide appraisal practices. In an appraisal dated April 15, 2019, Mr. Tener determined that the FMV of

9

the Property was $1,348,000, resulting in an estimated annual rent of $1,078,400. (Pl. Ex. 29). In contrast, Ms. Locatell, McDonald's appraiser, estimated the FMV of the Property to be $350,000, resulting in an annual rent of $280,000. (Pl. Ex. 105).

Unlike Ms. Locatell's appraisal, Mr. Tener's appraisal did not comply with the McDonald's Lease, New York law, or industry-wide appraisal practices. For example, Mr. Tener did not consider the term of the McDonald's Lease in his analysis, despite his own belief that the New York Court of Appeals decision in *936 Second Avenue, L.P. v. Second Corporate Development Co., Inc.,* 10 N.Y.3d 628 (2008), required him to consider the encumbrance of the McDonald's Lease. Mr. Tener discussed the decision with Mr. Missry and sent him a copy of the decision. Within minutes, Mr. Missry responded that *936 Second Avenue* did not apply to the McDonald's Lease and Mr. Tener followed his instruction to disregard the encumbrance of the McDonald's Lease despite Mr. Tener's own belief that New York law required him to consider the encumbrance. (Pl. Exs. 26-28). And this is despite Metropolitan's express conclusion that the encumbrance of the McDonald's Lease must be considered in the FMV analysis. In other words, Vanderbilt refused to have its appraiser consider the encumbrance of the McDonald's Lease even though it knew that binding New York State law required it to do so.

In addition, Mr. Tener performed his FMV analysis using fee simple land sales rather than adjusting comparable ground leases, as required by the express language of the McDonald's Lease. Further, Mr. Tener included a premium for upzoning despite contrary law and Metropolitan's conclusion that doing so would render the appraisal "highly speculative."

As further evidence that Vanderbilt failed to cooperate in the FMV process, Vanderbilt refused to provide Mr. Tener with a copy of the Vanderbilt Lease despite Mr. Tener's renewed

10

request—made in a separate engagement letter for the FMV process—for "[c]opies of any leases that encumber the properties." (Pl. Ex. 25). The evidence will show that Vanderbilt failed to comply with Mr. Tener's repeated requests for leases that encumber the Property, and that Mr. Tener never saw a copy of the Vanderbilt Lease until his deposition in this matter. Thus, Mr. Tener was not aware—until his deposition—that had McDonald's terminated the McDonald's Lease at the end of its initial term, Vanderbilt would have owed M.M.B. rent in the amount of $360,000 for the first year, a number remarkably close to Ms. Locatell's FMV of $350,000. (Pl. Ex. 105). The evidence will show that had Mr. Tener seen the Vanderbilt Lease before completing his FMV appraisal, he would have analyzed the economics of the Vanderbilt Lease and the alleged non-arm's length nature of the transaction, which would have been consistent with industry-wide practices. Mr. Tener's failure to do so is a direct result of Vanderbilt withholding information relevant to the FMV analysis, in order to ensure that Mr. Tener arrived at an unreasonably high FMV.

The evidence will show that after months of negotiations with McDonald's, Vanderbilt finally agreed in late August 2019 that Mr. Tener would redo his appraisal in compliance with the McDonald's Lease, including by considering the encumbrance of the McDonald's Lease in his FMV estimate. But this concession constitutes additional evidence that Vanderbilt failed to cooperate in the FMV process because Vanderbilt did not agree to consider the encumbrance until it confirmed, with Mr. Tener, that his "revised" letter of opinion of value concluded to the same FMV as his original, non-compliant analysis. Mr. Tener produced his revised analysis on September 27, 2019 even though it is dated July 30, 2019. The evidence will show that Mr. Tener's "revised" analysis was identical to his original, flawed analysis except for the addition of one new paragraph titled "Land Residual." (Pl. Ex. 33). That paragraph peripherally described the land

11

residual analysis and stated that it resulted in "a Fair Market Rental Value between $1,310,600 and $1,478,300 per year," which, Mr. Tener concluded, is "directly supportive" of his original estimated FMV of $1,348,000. *Id.* In other words, Vanderbilt's proposed FMV did not change despite the fact that its original estimate was based on the assumption that the Property could be used into perpetuity, while its second estimate was based on the assumption that the Property could be used for only twenty years.

Amanda Aaron, a Brooklyn-based, MAI-designated appraiser with over 25 years of experience, will testify at trial as McDonald's expert witness. Ms. Aaron's testimony will show that Vanderbilt failed to cooperate in the FMV process by insisting on a FMV appraisal that disregards the terms of the McDonald's Lease, New York law, and the appraisal standards set forth by the Appraisal Institute of Real Estate Appraisers and the Uniform Standards of Professional Appraisal Practice ("USPAP"). Ms. Aaron will opine that Mr. Tener's appraisal suffers from at least four flaws that render it non-compliant and non-credible.

*First,* Ms. Aaron will explain that Mr. Tener's appraisal disregards the instructions in the McDonald's Lease to adjust comparable ground leases, without explanation, even though such leases were available in the market area. Instead, Mr. Tener used fee simple land sales to determine the FMV, which conflates fee simple and leasehold value in contravention of USPAP's instructions not to present misleading analyses or conclusions. *Second,* Ms. Aaron will explain that Mr. Tener's land residual analysis not only fails to comply with the lease's requirement that comparable ground leases be adjusted, but also fails to comply with basic appraisal rules and procedures for performing land residual analyses, violating both the terms of the McDonald's Lease and USPAP appraisal requirements. *Third,* Ms. Aaron will testify that Mr. Tener failed to abide by binding New York

12

case law when he refused to consider the encumbrance of the McDonald's Lease and considered the possibility of a rezoning in his original analysis. *Fourth,* Ms. Aaron will testify that Mr. Tener should have evaluated the Vanderbilt Lease—which Vanderbilt withheld from him—in determining whether his appraisal was reasonable. Indeed, Ms. Aaron contends that the Vanderbilt Lease "represents the value of the property as encumbered by the McDonald's sublease" and therefore constitutes an "important piece of market information" that USPAP required him to consider. Vanderbilt's refusal to provide such information, relevant to the FMV process and requested by Mr. Tener multiple times, is further evidence of Vanderbilt's failure to cooperate in the FMV process.

The evidence presented at trial will demonstrate that Vanderbilt also failed to cooperate in the FMV process by taking an unreasonable position regarding the role of the third appraiser that is completely unsupported by the plain language of the McDonald's Lease and prevented the FMV process from moving forward. The Option Rent Addendum provides that within 20 days of the third appraiser being appointed, "the three appraisers so appointed shall . . . estimate, by means of a letter opinion of value, the FMV." (Pl. Ex. 1 at Exhibit G). This language makes clear that the three appraisers must work together to try to agree on the FMV in "*a* letter opinion of value." Vanderbilt, however, took the position that the three appraisers must work completely independently to arrive at three separate letter opinions of value, and if the third appraiser's FMV did not match—to the penny—with at least one appraiser's FMV, then the three appraisals would need to be averaged. Vanderbilt knew that it was almost impossible for the third appraiser's estimate to match any estimate to the penny. Vanderbilt also knew that, with Mr. Tener's inflated FMV estimate of $1,348,000, averaging the three appraisals would result in a much higher

13

valuation than if the three appraisers collaborated to arrive at "a letter opinion of value" as required by the McDonald's Lease.

Vanderbilt's untenable position prevented the entire FMV process from moving forward. Even though the parties agreed, on May 9, 2019, to appoint Marc Nakleh as the third appraiser, the process could not proceed without an agreement on whether Mr. Nakleh would determine the FMV with or without the collaboration of Ms. Locatell and Mr. Tener. The parties therefore executed an agreement in September 2019 where they agreed to retain Marc Nakleh after the party appraisers exchanged "updated" letter opinions of value, but recognized that the retention would occur only "upon agreement regarding the process set forth in the Lease." (Pl. Ex. 86). The evidence will show that, not only did Vanderbilt fail to produce an "updated" FMV estimate that complied with the requirements of the McDonald's Lease, Vanderbilt consistently refused to allow the appraisers to collaborate in determining the FMV, halting the entire FMV process and forcing McDonald's to file suit. However, over one year after McDonald's filed the instant suit, Vanderbilt—without explanation but likely for strategic purposes—completely reversed positions. In its Answer and Amended Counterclaim filed on December 3, 2020, Vanderbilt requested a judgment from this Court "directing that the three appraisers, *i.e.* Mr. Tener, Ms. Locatell, and Mr. Nakleh, or a majority of them, *collaborate* and estimate the FMV of the Demised Premises within twenty days of the entry of a final judgment in this action…." Additional Stipulations Regarding Vanderbilt's Pleadings and Its Brief [ECF No. 108-1] at No. 2 (emphasis added). This complete about-face in its position on the role of the third appraiser—long after the FMV process came to a halt—is even more evidence of Vanderbilt's failure to cooperate in the FMV process.

As demonstrated above, Vanderbilt had no intention of participating in a legitimate FMV process. The evidence will show that Vanderbilt acquired the McDonald's Lease for the sole purpose of redeveloping the Property into a high-rise, mixed use development and that it needed McDonald's off the Property to do so. Indeed, the provisions of the Vanderbilt Lease incentivized Vanderbilt to rezone the Property and terminate the McDonald's Lease as soon as possible. When Mr. Rottenberg learned that McDonald's intended to remain on the Property, he immediately wondered—and asked McDonald's—what would McDonald's do if it did not like the rent resulting from the FMV process. It was Vanderbilt's goal to ensure that the FMV process resulted in an unreasonably high rent number so that McDonald's would seek to terminate the McDonald's Lease. Vanderbilt fulfilled this goal by commissioning a FMV appraisal that disregarded the express terms of the McDonald's Lease, violated binding New York case law, and was inconsistent with industry standard practices and USPAP's appraisal requirements. Vanderbilt's actions in ensuring an unreasonable FMV based on a non-compliant and non-credible appraisal do not constitute good faith cooperation in the FMV process. To the contrary, the evidence demonstrates that Vanderbilt, while appearing to take the necessary steps in the FMV process, acted with intent to harm, or at a minimum, with a reckless disregard to, McDonald's rights under the McDonald's Lease, including, without limitation, McDonald's rights to remain on the Property until 2039 and pay 80% of the FMV for the first extension term. Rather, Vanderbilt sought to drastically increase the rent—by whatever means—so that McDonald's would agree to vacate the Property, opening the door to Vanderbilt's redevelopment plans.

Vanderbilt cemented its unreasonably high appraisal by insisting, without a credible basis, that the third appraiser could not collaborate with the party appraisers in determining the FMV of

15

the Property, which inevitably would result in the averaging of the three proposed FMVs when the third appraiser's number is not identical to that of another appraiser. Vanderbilt's unreasonable position—which it reversed over one year later—prevented the third appraiser process from moving forward, and constitutes further evidence of Vanderbilt's refusal to cooperate in the FMV process.

### **McDonald's Defenses to Vanderbilt's Cause of Action for a Declaratory Judgment that McDonald's Failed to Cooperate in the FMV Process Required by the McDonald's Lease**

Vanderbilt also asserts a declaratory judgment claim against McDonald's, seeking a declaration that McDonald's failed to cooperate in the FMV process. Vanderbilt's primary basis for its position is that McDonald's declined to move forward with a third appraiser absent an agreement on process. There is no evidence supporting this position.

Vanderbilt has repeatedly argued that an agreement executed between the parties, dated September 16, 2019 (the "September 2019 Agreement"), "unconditionally" obligated the parties to engage Marc Nakleh by October 7, 2019, and that McDonald's failed to cooperate by refusing to engage him. *See, e.g.,* Vanderbilt's Memorandum of Law in Support of Motion for Summary Judgment [ECF No. 66-27] at p. 2, 6, 23-25. The evidence will show that McDonald's entered into the September 2019 Agreement to try to resolve the parties' differences over the FMV process and avoid litigation. Not only did the September 2019 Agreement provide that the parties would engage Mr. Nakleh, but it also provided that Vanderbilt would "update" its "letter opinion of value" with the understanding that it would consider the encumbrance of the McDonald's Lease in the determination of the FMV. (Pl. Ex. 86).

It was Vanderbilt—not McDonald's—that breached the September 2019 Agreement. As for the retention of Mr. Nakleh, the September 2019 Agreement recognizes that his retention can only

occur "upon agreement regarding the process set forth in the [McDonald's] Lease" for the role of the third appraiser. (Pl. Ex. 86). Thus, the parties had no obligation to retain Mr. Nakleh because they never reached agreement on this issue. Instead, Vanderbilt insisted (until it was no longer convenient) on taking the unsupportable position that the third appraiser could not collaborate with the party appraisers in the determination of the FMV. Even if the parties had engaged Nakleh, they would not have been able to direct him on how to proceed given this fundamental disagreement. Furthermore, Vanderbilt breached the September 2019 Agreement by producing another non-compliant FMV appraisal, that did not revise or even "update" its initial FMV estimate. Accordingly, McDonald's did not breach the September 2019 Agreement and fully cooperated in the FMV process.

It appears that Vanderbilt may also argue that McDonald's was somehow delaying the FMV process. *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion *in Limine* to Preclude the Admission of Certain Emails into Evidence [ECF No. 111] at p. 1-2. Other than self-serving statements by its own principals and agents, there is no evidence demonstrating that McDonald's delayed the FMV process. The evidence will show that McDonald's moved forward with the process in a timely manner and in accordance with an extension that Vanderbilt requested. The parties agreed to retain Marc Nakleh as the third appraiser in a timely fashion, but the process came to a halt because of the parties' disagreement on the role of the third appraiser and Vanderbilt's failure to produce a FMV estimate that complied with the terms of the McDonald's Lease. This failure was not of McDonald's own making, but due to Vanderbilt's refusal—until over one year later and in the midst of this litigation—to allow the three appraisers to collaborate as required by the McDonald's Lease. Vanderbilt's refusal to abide by the terms of the McDonald's

Lease until it suited Vanderbilt constitutes further evidence that Vanderbilt did not cooperate in the FMV process in good faith. Accordingly, the FMV determined by McDonald's appraiser should be used to determine the rent for the first extension term of the McDonald's Lease, with 15% increases for each subsequent term.

Dated:  January 23, 2026

>Respectfully submitted,
>
>PASHMAN STEIN WALDER HAYDEN, P.C.
>
>*/s/ Denise Alvarez*
>Denise Alvarez
>Brendan M. Walsh
>*Attorneys for Plaintiff McDonald's Corporation*