UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MCDONALD'S CORPORATION, | : | |
| | : | |
| Plaintiff, | : | No. 1:19-cv-06471-DLI-ST |
| | : | |
| v. | : | |
| | : | |
| VANDERBILT ATLANTIC HOLDINGS LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## DEFENDANT'S STATEMENT OF THE ELEMENTS OF CLAIMS
## AND DEFENSES AND SUMMARY OF FACTS

Pursuant to Rule VI.B of Judge Dora L. Irizarry's Individual Motion Practice and Rules

for Civil Cases Only, Defendant Vanderbilt Atlantic Holdings LLC ("Vanderbilt"), by and through

its undersigned counsel, respectfully submits its Statement of the Elements of Claims and Defenses

and Summary of Facts, and states as follows:

## I.    SUMMARY OF FACTS[1]

The property at issue, 840 Atlantic Avenue, is located at the southeast corner of Vanderbilt

Avenue and Atlantic Avenue in Brooklyn, New York (Block 1122, Lot 1) (the "Premises" or

"Property").  The Property is owned in fee simple by M.M.B. Associates LLC ("M.M.B.") as

successor-in-interest to Anthony Musto. On March 18, 1998, Musto as landlord and McDonald's

Corporation ("McDonald's") as tenant signed a lease for the Property (the "Lease").

---

[1] The summary reflects facts that Vanderbilt anticipates will be established at trial through admissible documentary and testimonial evidence.

## A.     __The Option Rent Addendum__

The initial Lease term expired on April 9, 2019.  The Lease includes four, five-year renewal options, exercisable by McDonald's.

The Lease contains an "Option Rent Addendum" (the "ORA") that governs the process for setting the rent for the remaining 20 year option term, which is set forth as Exhibit G to the Lease. The ORA provides that the rent payable during the first extension term shall be the greater of "Eighty percent (80%) of the Fair Market Rental Value of the Demised Premises at the end of the primary term, exclusive of any and all improvements then existing on the Demised Premises (called the 'FMV'), as determined by written agreement of Landlord and Tenant; or . . . monthly rent of $16,032.58."  For each subsequent five-year extension period, the rent is "increased by an additional fifteen percent (15%) over the previous period."

The ORA also sets for the process for determining the rent for the 20-year option. Specifically, the ORA provides, in relevant part:

> Landlord shall notify Tenant of Landlord's estimate of the FMV no later than one hundred eighty (180) days prior to the end of the primary term.
>
> Should Landlord and Tenant fail to reach an agreement in writing as to the FMV within ten (10) days from Tenant's receipt of Landlord's estimate of the FMV, the FMV shall be estimated by two qualified MAI or SREA real estate appraisers … one to be appointed and compensated by Tenant and the other to be appointed and compensated by Landlord.  Landlord and Tenant shall appoint their appraisers within 15 days after the date either party notifies the other that it is unable to reach an agreement as to the Fair Market Value. Each appraiser's estimate is to be made by a letter opinion of value.
>
> If, within 20 days from their appointment, the two appraisers can agree to the FMV not differing by more than 15%, then an average of the two appraisals shall be used for the Fair Market Rental Value of the Demised Premises.  If the two appraisals differ by more than 15%, then the two appraisers shall appoint a third appraiser .… The three appraisers so appointed shall then, within 20 days of the date

the third appraiser is appointed, estimate, by means of a letter opinion of value, the FMV. The decisions of the appraisers, or a majority of them, shall be binding on the parties. If the appraisers, or a majority of them, cannot agree on the FMV, it shall be determined by adding all three estimates and dividing the total of all three estimates by the number three.

After describing the rent reset process, the ORA provides the consequences that the parties agreed upon if one party fails to comply with the "process described above." Specifically, the parties agreed, "[i]f one of the parties fails to chose [sic] an appraiser within the specified time period or fails to cooperate in any way so that the process described above cannot be completed prior to 120 days of the expiration of the primary term of this Lease, the FMV of the one appraiser chosen by the cooperating party shall be used to determine the rent during the extension periods." This paragraph further clarifies, to the extent there is any misunderstanding, that the appraisal process is to be entirely blind. The parties specified, "The appraisers shall *not* be given the estimates of the parties until they have issued their letter opinions of value."

Thereafter, the ORA describes the general methodology for how each of the appraisers should value the property for purposes of the rent reset process. This includes specifying that the "rental value shall be established based upon a definition of Fair Market Rental Value as the price which an average well-informed tenant would pay and an average well-informed landlord would accept, *exclusive* of Tenant's improvements, knowing all of the uses to which the property can be put, without duress on either party." In other words, the property is to be valued as vacant land at its highest and best use.

The parties also agreed that the "standard market data approach technique for valuing vacant land shall be used by the appraisers." The ORA clarifies that "[a]ll comparable leases shall be appropriated adjusted, and the written reports shall indicate the reasons for the adjustment so

made." The ORA also clarifies that, "if adequate comparable leases are not available, then a land residual technique … shall be used."

**B.    The M.M.B/Vanderbilt Lease**

On or about November 30, 2017, Vanderbilt entered into a 99-year ground lease with M.M.B., the Landlord under the McDonald's Lease (the "Vanderbilt Lease"). The Vanderbilt Lease expressly acknowledges that the "Premises are subject to the Existing Lease [the McDonald's Lease], and for so long as the Existing Lease in in effect, this [Vanderbilt] Lease is and shall be subject and subordinate to the [McDonald's] Lease." (Vanderbilt Lease § 19.) Additionally, Vanderbilt assumed "all of the obligations of the landlord under the [McDonald's Lease." (*Id.*) Accordingly, Vanderbilt is McDonald's landlord under the McDonald's Lease.

The Vanderbilt Lease was a related-party transaction, as Sam Rottenberg, one of the principals of Vanderbilt, also had an ownership interest in M.M.B. For tax purposes, the Vanderbilt Lease was valued at $7 million, though no money exchanged hands. The purpose of the 99-year Vanderbilt Lease is to rezone the property for residential purposes and construct a mixed-use development on the Premises.

Accordingly, under the Vanderbilt Lease, Vanderbilt is obligated, "within one (1) year following the Commencement Date" to "use best efforts to pursue the completion of the rezoning of the Property." (*Id.* § 31.1.) Vanderbilt is also "required to spend at least Five Hundred Thousand and 00/100 Dollars ($500,000) in connection with having the Property Rezoned…." (*Id.*) Once McDonald's vacates the Property after expiration of the Lease, Vanderbilt is also required to cause construction to commence for redevelopment of the Property as a mixed-use building. (*Id.*) Vanderbilt is also responsible for financing the redevelopment of the Property.

Vanderbilt commenced the process for rezoning the Property in or about 2018. The Property has since been successfully rezoned to allow for mixed-use development, significantly increasing the value of the Property.

### C.    McDonald's Fails to Comply With the Rent Reset *Process*

As noted above, the initial term of the McDonald's Lease expired on April 9, 2019.

On May 10, 2018, nearly a year in advance of the end of the first 20-year Lease term, Vanderbilt sent McDonald's a letter communicating its estimate of the FMV of the Demised Premises as $975,000.00, which would mean that the annual rent payable during the first extension period would be $780,000.00 (80% of the FMV). This estimate of the FMV was mandated by the Lease, which provides that "Landlord shall notify Tenant of Landlord's estimate of the FMV no later than one hundred eighty (180) days prior to the end of the primary term." Thus, Vanderbilt provided this estimate approximately six months prior to the time required by the Lease, thereby getting a head start on the process. McDonald's, however, did not respond to Vanderbilt's estimate in writing during 2018. McDonald's also failed to communicate to Vanderbilt its own determination of the FMV for the Premises during 2018.

In or about June 2018, Vanderbilt retained Tom Tener ("Tener"), Managing Member of KTR Real Estate Advisors LLC ("KTR"), to provide an estimate of the Market Value of the Fee Simple Interest in the subject property, including an opinion of the market ground rent. Tener was not provided with a copy of either the McDonald's Lease or the Vanderbilt Lease in connection with this assignment. Using the sales comparison approach, Tener concluded the market value of the fee simple interest of the property was $18,300,000 and that the rental value was $1,098,000, as of August 20, 2018.

Around the same time, Vanderbilt also retained BBG to conduct an appraisal of the Property "for the purposes of advancing an opinion of the as is value of the fee simple interest as of June 26, 2018." BBG concluded the "highest and best use of the subject property is 2 separate developments: one 14,000 square foot residential development on the R8B portion of the site and one 22,000 square foot commercial development located on the M1-1 portion of the site." BBG concluded the valuation as of June 26, 2018 was $18,800,000. BBG did not analyze the rental value of the site as part of its appraisal.

In October 2018, McDonald's retained Sharon Locatell ("Locatell"), the President of Appraisers and Planners, Inc., to prepare "an appraisal setting forth an estimate of the [Fair Market Rental Value] of the land as of the renewal date as per the Option Rent Addendum." In December 2018, Locatell sent McDonald's two appraisals, both of which purported to "determine the Fair Market Rental Value (FMRV) payable at the commencement of the first five-year renewal term for the demised ground lease Premises at 840 Atlantic Avenue, Brooklyn, New York, as of approximately April, 2019 (date to be provided)." One appraisal used the "sales comparison approach" and determined the land value of the property to be $9,900,000, with rent ranging from $316,800 to $475,000. (*Id.*) The other used the "sales (rental) comparison approach" and valued the FMRV at $300,800, with rent to be $240,640. (*Id.*)

Relying on Locatell's valuation using the "sales comparison approach," McDonald's determined there would be sufficient system cash flow from the Property to extend its tenure. Thus, in December 2018, McDonald's approved the exercise of the option under the Lease.

On January 3, 2019, McDonald's notified Vanderbilt of its decision to "exercise[] its option to extend the term of the Lease []."

Shortly thereafter, Vanderbilt retained Morris Missry ("Missry"), the Managing Partner of Wachtel Missry and the Chair of its Real Estate Department, to represent Vanderbilt during the rent reset process for determining the rent for the next 20-year option terms. After interviewing candidates, on or about March 8, 2019, Missry retained KTR to "prepare an appraisal [of the Premises] as defined within the [ORA]." The engagement letter specifies, "It is anticipated that the FMV will be based on the standard market data approach technique for valuing vacant land (the Sales Comparison Approach)." The KTR engagement letter was signed by Tener.

During March and April 2019, Tener conducted his appraisal of the Premises using the sales comparison approach. On April 1, 2019, Tener reached out to Missry with a question he had about the interpretation of the ORA. Specifically, Tener advised Missry about an opinion issued by the New York Court of Appeals in 2008, titled *936 Second Ave. L.P. v. Second Corp. Dev. Co., Inc.*, 10 N.Y.3d 628, 630 (2008) (the "Second Avenue Case"), that Tener believed might apply to the ORA and require him to consider the 20-year future term of the McDonald's Lease in his appraisal. Tener sent Missry a copy of the case and asked Missry for his interpretation of whether it applied to the ORA. After reviewing the case, Missry responded, "I don't agree with the analysis you mentioned to me and I don't see it in there." Relying on Missry's advice, Tener completed his appraisal of the vacant land, without considering the 20-year remaining term of the McDonald's lease.

Tener completed his appraisal of the Property based on his review of the Lease and ORA in a Restricted Appraisal Report, dated April 15, 2019. Tener "applied 'the standard market data approach technique' (the Sales Comparison Approach) in valuing the Demised Premises as vacant land utilizing sales of similarly zoned residential and industrial development sites." Tener concluded the market value of the Property was $16,850,000, and that the Fair Market Rental

Value, applying an 8% rent multiplier, was $1,348,000.  Accordingly, Tener concluded the rent for the Premises for the first five-year extension term would be $1,078,400.

Despite (1) receiving Vanderbilt's FMV estimate in May of 2018; and (2) notifying Vanderbilt in January of 2019 that it would be exercising its option to extend the Lease, McDonald's waited until after the Lease term expired to take any action towards resetting the rent. On April 15, 2019, McDonald's sent a notice to Vanderbilt stating that "the parties have been unable to reach agreement as to the FMV."  McDonald's further advised in this notice that "the parties shall appoint their appraisers within 15 days of this letter in accordance with Exhibit G [of the Lease]."  McDonald's advised in the letter that it was appointing Sharon Locatell ("Locatell") as its appraiser.  The same day, Vanderbilt responded and appointed Tener as its appraiser.

In April and May 2019, Tener repeatedly reached out to Locatell to coordinate the selection of a third appraiser, in the event it would be necessary.  Locatell rebuffed these efforts, claiming she was "not ready" and that they had until May 20, 2019 to select the third appraiser.

On May 20, 2019, Locatell and Tener jointly reached out to Mark Nakleh ("Nakleh") to inquire about whether he would be interested in serving as the third appraiser.  He agreed to do so.

Around this time, a dispute arose between the parties concerning the process for the third appraiser, specifically whether the third appraiser could speak with the other two appraisers about their letter opinions of value.  McDonald's view was that the Lease permitted the appraisers to speak and agree on a value.  Vanderbilt's view, based on the advice of its attorney (whose advice was based on his review of the ORA), was that the Lease required the third appraiser to issue his or her opinion of value independently and without conferring with the party-appointed appraisers, and that the three letter opinions of value would be averaged together, unless two of them agree

on the same value.  Vanderbilt's counsel believed that the ORA was clear that its intention was to avoid any party-appointed appraiser tainting the process or influencing the third appraiser.

As a compromise, the parties agreed to meet in person, with both party-appointed appraisers, attorneys, and representatives on June 19, 2019 at the offices of Vanderbilt's counsel, Wachtel Missry LLP, in New York City.  The purpose of the June 19, 2019 meeting was to discuss each party's appraisal findings and endeavor to find some common ground. Notably, McDonald's did not complete its letter opinion of value until *right before the meeting*.

During this meeting, Locatell presented her appraisal, dated June 19, 2019.  Locatell interpreted the Lease to require the use of "comparable ground leases involving similar sites."  She also only considered a five-year renewal term, not 20 years.  Based on an analysis of fast food restaurants and banks from properties throughout the outer-boroughs, Locatell concluded the Fair Market Rental Value of the Property was $350,000 per annum.  Accordingly, under the Lease, applying Locatell's valuation, the rent for the first renewal term would be $280,000 per annum.

Tener also presented his appraisal to McDonald's during the meeting.

After the parties exchanged appraisals, McDonald's purported to object to Tener's appraisal.  McDonald's claimed that Tener had erred because it believed, among other things, that he (1) should have agreed that the leases Locatell relied upon were comparable and used those; and (2) needed redo his appraisal to consider the 20-year remaining renewal term of the Lease, which McDonald's claimed was required by the Second Avenue Case.  Despite the fact that the two appraisals were more than 15% apart in value, McDonald's refused to retain the third appraiser.

Vanderbilt also noted areas of Locatell's report that it disagreed with, including her (1) use of a five-year term, rather than considering the 20-year remaining renewal term of the Lease, and (2) use of properties located in areas that Vanderbilt did not view as comparable, such as the Bronx.

In an effort to compromise and move the rent re-set process forward, Vanderbilt agreed to McDonald's demand that Tener prepare another appraisal that considered the 20-year remaining renewal term of the Lease. To do this, Tener applied the residual approach permitted under the Lease, as he did not identify any adequate comparable leases. Tener presented his analysis in a revised letter opinion of value, dated July 30, 2019. Based on the land residual analysis, Tener concluded "a Fair Market Rental Value between $1,310,600 and $1,478,300." Thus, Tener continued to estimate the FMV of the Property at $1,348,000 per annum, with an annual rent of rental value of $1,078,400.

Despite Vanderbilt's concession and attempts at cooperation, by letter, dated July 23, 2019, McDonald's in-house counsel, Michael Meyer ("Meyer"), sent Missry a letter alleging that Vanderbilt had breached the cooperation provision in the ORA through Tener's purported failure to (1) use lease comparables (of which Tener could not identify any); and (2) consider the 20-year encumbrance of the remaining Lease term. McDonald's claimed that these issues would purportedly "make it impossible for the Parties to agree on the instructions to be given to the third appraiser contemplated by the Option Rent Addendum." Accordingly, McDonald's demanded that Vanderbilt cause a new estimate of FMV to be performed in accordance with McDonald's unilateral interpretation of the ORA.

Vanderbilt strongly disagreed with McDonald's contention, particularly as it had been McDonald's that had repeatedly delayed the rent reset process and who refused to complete the

rent reset process by retaining the third appraiser. Indeed, the only "instructions" that needed to be provided to the third appraiser was the ORA itself.

In a further effort to compromise, Vanderbilt and McDonald's entered into a letter agreement on September 16, 2019, whereby both parties agreed to revise their appraisals to consider a 20-year renewal term and to retain the third appraiser within twenty-one (21) days of the agreement, *i.e.*, October 7, 2019. Specifically, the letter agreement provided, in relevant part:

1. Within three (3) weeks of the date of this letter, each Party's appraiser will send to the other Party's appraiser his or her respective (i) updated letter opinion of value [] and stating the methodology of valuation and conclusions; and (ii) identifying the comparable transactions on which the conclusions are based.

2. The respective appraisers will engage in a non-prejudicial and non-binding discussion and exchange information for the purposes of assisting the Parties in reaching a negotiated FMV as defined in the Lease [].

3. The Parties have selected Mark Nakleh as the third appraiser pursuant to the terms of the Lease and agree to engage Mr. Nakleh within 21 days of this agreement. The Parties further agree that their appraisers shall jointly communicate with Mr. Nakleh that the Parties intend to retain him upon agreement regarding the process set forth in the Lease [].

4. The Parties, their appraisers and other representatives will keep their respective letter opinion of value confidential from the third appraiser and shall not disclose such letter opinion of value [] to the third appraiser until such time as the Parties agree in writing that each letter's opinion of value may be disclosed to the third appraiser.

On September 20, 2019, Locatell and Tener met at Locatell's office to exchange their revised letter opinions of value. Locatell's FMV estimate contained in her revised letter opinion of value, dated September 20, 2019, continued to be $350,000. As noted above, Tener's FMV estimate also remained the same. Accordingly, there was a dispute that would require the appointment of the third appraiser.

Yet, McDonald's refused to retain the third appraiser. During October 2019, Missry repeatedly reached out to Meyer by email and phone, encouraging McDonald's to comply with the FMV rent reset process set forth in the ORA and the parties' letter agreement, and retain the third appraiser. McDonald's failed to respond to many of those communications and outright refused to retain the third appraiser. Instead, Meyer continued to insist that Tener's appraisal was deficient and indicated that McDonald's could not move forward with the third appraiser until that purported deficiency was remedied.

Instead of cooperating to move the process forward, McDonald's had its outside counsel, Pashman Stein, send a letter, dated November 1, 2019, to Missry, threatening to "pursue its rights in litigation." In that letter, McDonald's continued to claim that Vanderbilt's appraisal did not comply with the Lease because Tener applied the residual analysis, rather than comparing leases. McDonald's also claimed that Vanderbilt's attempts to rezone the Property, in compliance with the Vanderbilt Lease, somehow showed an "attempt to corrupt the FMV process." McDonald's demanded that Vanderbilt "redo" its appraisal yet again to meet McDonald's satisfaction and indicated that McDonald's could not get to the step of retaining the third appraiser until Vanderbilt did so.

McDonald's never retained the third appraiser.

### D. McDonald's Commences This Action For A Declaration That Locatell's Appraisal Controls Rent for the Next 20 Years

On November 15, 2019, McDonald's commenced this action seeking a declaration that "Vanderbilt failed to cooperate in the [] FMV process []." Dkt. 93.

McDonald's claim is based on two contentions: (1) Vanderbilt purportedly "failed to cooperate in good faith by [] not appraising the FMV in accordance with the Lease, New York law, and usual and customary appraisal practices;" and (2) Vanderbilt purportedly "failed to

cooperate in good faith by [] refusing to agree to any process that would allow the three appraisers, if necessary, to work collaboratively to determine 'if the appraisers, or a majority of them' can agree on the FMV []." *Id*.

Vanderbilt asserts a counterclaim for a declaration that: (1) McDonald's failed to cooperate with the FMV process prescribed in the ORA such that the process could not be completed in the applicable time period; and (2) McDonald's delayed and refused to engage the third appraiser. *Id*.

Vanderbilt also asserts the following defenses to McDonald's claim: (1) Vanderbilt relied on the advice of its counsel, Missry, and appraiser, Tener, throughout the fair market valuation process prescribed in the ORA; (2) at a minimum, Vanderbilt substantially complied with the fair market valuation process prescribed in the ORA and thus satisfied its duty to cooperate; (3) McDonald's claims are barred by its own bad faith conduct with respect to the fair market valuation process prescribed in the ORA and prior breach of its obligations; (4) McDonald's waived its claims that Vanderbilt failed to cooperate in the fair market valuation process prescribed in the ORA by entering into the letter agreement in September 2019; (5) the letter agreement executed by the parties in September 2019 amended the ORA and extended the parties' time to complete the fair market valuation process prescribed in the ORA; and (6) McDonald's declaratory judgment claim that Vanderbilt has failed to cooperate in good faith is nothing more than a disagreement with Vanderbilt's appraiser's expert judgment and appraisal techniques, and thus is not cognizable.

Notably, McDonald's has profited from the commencement of this lawsuit and refusal to retain the third appraiser. For the past seven years while this action was pending, McDonald's has paid only the bare minimum amount of rent due under the ORA – $16,032.58 each month ($192,390.96 per annum) for April 10, 2019 – April 9, 2023, and $18,437.47 each month ($221,249.60 per annum) for April 10, 2023 – present.

McDonald's has paid this below market rent, even though its own valuation would have required McDonald's to pay hundreds of thousands of dollars more in rent to Vanderbilt during this time.[2] Critically, if McDonald's had retained the third appraiser, as the ORA requires, and he had come to an estimate of FMV somewhere in the middle of the two party-appointed appraiser's valuations, McDonald's would have paid millions of dollars more to Vanderbilt over the past six years. Instead, McDonald's has operated the restaurant for the past seven years, paying significantly under-market rent, raking in the millions of dollars in savings as profits for itself.

## II.  ELEMENTS OF DEFENDANT'S COUNTERCLAIMS AND SUMMARY OF FACTUAL BASES

### A.  McDonald's failed to cooperate with the fair market valuation process in the ORA such that the process could not be completed in the applicable time period.

The Second Circuit generally treats a breach of a cooperation clause as a simple breach of contract claim, requiring Vanderbilt to prove the following elements: (1) existence of a contract; (2) Vanderbilt's performance under the contract; (3) McDonald's breach of the contract; and (4) resulting damages. *See EDF Renewable Dev.. Inc. v. Cnty. of Suffolk*, No. CV 13-33-3361, 2016 WL 6804939, at *15-16 (E.D.N.Y. Nov. 17, 2016), *aff'd sub nom.* 693 F. App'x 42 (2d Cir. 2017); *U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 264 (S.D.N.Y. 2017).

The ORA provides, "Landlord shall notify Tenant of Landlord's estimate of the FMV no later than one hundred eighty (180) days prior to the end of the primary term." The ORA defines FMV as "the price which an average well-informed tenant would pay and an average well-informed landlord would accept, exclusive of Tenant's improvements, knowing all of the uses to which the property can be put, without duress on either party."

---

[2] Locatell's valuation would require McDonald's to pay $23,333.33 each month ($280,000 per annum) for April 10, 2019 – April 9, 2023, and $26,833.33 each month ($322,000 per annum) for April 10, 2023 – present. This is a difference of approximately $730,000.

If Vanderbilt and McDonald's cannot agree on the FMV, each party must appoint a party-appraiser within 15 days after the date either party notifies the other that is unable to reach an agreement as to the FMV. The ORA further provides that if the two appraisals differ by more than fifteen (15) percent, the two party-appraisers are required to appoint a third appraiser. The ORA then requires that the three appraisers "estimate, by means of a letter opinion of value, the FMV." In the event that the appraisers, or a majority of them, cannot agree on the FMV, "it shall be determined by adding all three estimates and dividing the total of all three estimates by the number three."

The ORA further provides that "[i]f one of the parties fails to chose [sic] an appraiser within the specified time period or fails to cooperate in any way **so that the process described above** cannot be completed prior to 120 days of the expiration of the primary term of the Lease, the FMV of the one appraiser chosen by the cooperating party shall be used to determine the rent during the extension periods." (emphasis added.)

The ORA unambiguously confines the phrase "fails to cooperate in any way" to the "process described above." That process pertains solely to the procedural deadlines governing (1) the Landlord's notice to Tenant of its FMV estimate; (2) the appointment of the party appraisers; (3) the appointment of a third appraiser; and (4) the issuance of letter opinions of value by the three appraisers. The appraisal methodology, by contrast, is addressed in a separate provision ***below***. To collapse these provisions, as McDonald's urges, would disregard both the deliberate sequencing of the ORA, and the well-established rule that unambiguous contracts must be enforced according to their plain terms.

This sequencing must be given effect under settled principles of contractual interpretation. *See Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (N.Y. 2002) ("[A] written agreement that

is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms [without the aid of extrinsic evidence].”); *see also Network Publishing Corp. v. Shapiro*, 895 F.2d 97, 99 (2d Cir. 1990) (“‘[W]e must consider the words [of the contract] themselves[,] for they are always the most important evidence of the parties’ intention.’”).

Canons of interpretation enforce this reading. For example, the doctrine of *expressio unius est exclusio alterius* confirms that the inclusion of procedural deadlines within the “process described above” necessarily excludes matters—such as the appraisal methodology—that the ORA addresses separately below. *See Two Guys from Harrison-N.Y. v. S.F.R. Realty Assoc.*, 63 N.Y.2d 396, 404 (N.Y. 1984) (interpreting real estate contract using doctrine of *expression unius* and holding “the specification of certain permitted activities in Paragraph 6(a) should be read as implicitly prohibiting other alterations”); *see also City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 401 (2d Cir. 2008) (applying ejusdem generis doctrine) (“[W]here specific words follow a general word, the specific words restrict application of the general term to things that are similar to those enumerated.’”); *Palmer v. Amazon.com, Inc.*, 51 F.4th 491, 515 (2d Cir. 2022) (“the language … ‘any other liability whatsoever’ [] cannot be divorced from the monetary awards listed later in the same sentence: ‘damages, contribution, or indemnity,’” and holding, “[t]hat list of monetary awards confirms that the ‘liability’ referenced in the [] exclusivity provision is confined to claims for retrospective damages and does not encompass claims for injunctive relief”).

Vanderbilt performed under the ORA: (1) Vanderbilt notified McDonald’s of Vanderbilt’s estimate of the FMV on May 10, 2018 – approximately five months in advance of the deadline provided in the ORA; (2) Vanderbilt notified McDonald’s of its party-appointed appraiser, Thomas Tener, on April 15, 2019 – less than fifteen (15) days after McDonald’s gave notice to Vanderbilt that the parties were unable to reach agreement on the FMV; (3) Tener prepared an appraisal of

the Property, including an estimate of the FMV, dated April 15, 2019; (4) Tener made multiple attempts to schedule a meeting with McDonald's appraiser, Sharon Locatell; (5) Vanderbilt cooperated with McDonald's in designating Mark Nakleh as the third-party appraiser; and (6) Vanderbilt reached out to McDonald's multiple times in attempts to engage Nakleh beginning as early as April 2019 and continuing through October 2019, but was met with delays, excuses and ultimately refusal.

In contrast, the evidence will show that McDonald's waited nearly a year, until April 15, 2019, to respond to Vanderbilt's FMV estimate in writing and inform Vanderbilt that the parties were unable to reach agreement on the FMV, and finally commence the appraisal process. Documentary and testimonial evidence will also show that McDonald's prevented the completion of the rent re-set process set forth in the ORA by (1) its appraiser's failure to devote attention to the appraisal assignment for several weeks; (2) delaying the selection of the third appraiser; (3) delaying the finalization of the September 2019 Letter Agreement, and (4) ultimately refusing to retain the third appraiser.

Vanderbilt's attorney, Morris Missry, made numerous attempts via email and phone to move the appraisal process forward and engage the third appraiser. Even *after* Vanderbilt agreed to and did revise its appraisal in accordance with McDonald's interpretation of the Lease and caselaw (despite Vanderbilt's good faith beliefs to the contrary and simply in an effort to resolve the dispute and move the process forward), McDonald's delayed and ultimately refused to engage Nakleh. Thus, the evidence will show it was Vanderbilt that repeatedly attempted to move the rent reset process forward and agreed to cooperate with McDonald's in order to resolve disputes, while McDonald's refused to cooperate and refused to complete the rent reset process expressly set forth in the ORA.

Thus, in contrast to Vanderbilt's timely submission of its FMV estimate, timely appointment of its appraiser, timely completion of its appraisals and timely selection of the third appraiser, and multiple concessions to McDonald's in order to move the rent reset process forward, McDonald's delays alone prevented the process described in the ORA from being completed. McDonald's refusal to engage Nakleh based on its own self-serving, unilateral determination that Tener's appraisal was deficient constitutes a failure to cooperate under the ORA and prevented the rent reset process from being completed in accordance with the Lease. *See EDF*, 2016 WL 6804939, at *16 (finding that "every action taken by the County after the January 2012 Meeting, including evading [plaintiff's] phone calls and requests for information, and failing to collaborate on a previously agreed upon parking plan, was aimed at frustrating, rather than furthering, the process[]").

**B.** **McDonald's also failed to cooperate with the September 2019 Letter Agreement by delaying and refusing to engage the third appraiser, Nakleh.**

On September 16, 2019, and in an effort to resolve the parties' disagreements over the role of the third appraiser and McDonald's complaints regarding Tener's appraisal, Vanderbilt and McDonald's executed a letter agreement agreeing within three weeks to (1) exchange opinions of value between the two party-appointed appraisers, and have them discuss and exchange information; and (2) engage the third appraiser, Mark Nakleh.

Documentary and testimonial evidence will show that Vanderbilt performed under the September 2019 Letter Agreement: (1) Tener provided his appraisal to Locatell on September 27, 2019 – 11 days after the September 2019 Letter Agreement was executed; and (2) Vanderbilt reached out to McDonald's multiple times to engage Mark Nakleh.

Documentary and testimonial evidence will further show that McDonald's failed to cooperate with the process mandated by the September 2019 Letter Agreement by refusing to

engage Nakleh by October 7, 2019 (three weeks after the execution of the contract). In fact, McDonald's refused to even discuss retaining the third appraiser with Vanderbilt unless Tener redid his appraisal again, and then McDonald's stopped responding to Vanderbilt's communications in late October 2019 and instead chose to initiate this action. McDonald's never sought an extension of the deadline set forth in the September 16, 2019 Letter Agreement.

*     *     *

Accordingly, Vanderbilt is entitled to a declaration that McDonald's failed to choose an appraiser within the specified time period and failed to cooperate with the process mandated by the ORA and September 2019 Letter Agreement and, as a result, the FMV of the Property is set at $1,348,000 per annum.

## III.  ELEMENTS OF DEFENSES TO PLAINTIFF'S CLAIMS AND SUMMARY OF FACTUAL BASIS

### A.  Vanderbilt Met Every Procedural Requirement In the Entire Rent Reset "Process Described Above"

The evidence and the text of the ORA demonstrate that Vanderbilt fully and timely cooperated in every aspect of the rent reset procedural process described in the Lease.

McDonald's claim against Vanderbilt is entirely rooted in critiques of Vanderbilt's appraiser's methodology which falls entirely outside the rent reset procedural requirements of the ORA. *See* Dkt 93. By conflating the procedural framework set forth in the ORA with substantive disputes over appraisal methodology, McDonald's attempts to create ambiguity where none exists. The plain language and deliberate structure of the ORA make clear that Vanderbilt fully and timely complied with every procedural step required, and that McDonald's position should thereby be rejected as inconsistent with the contract's unambiguous terms.

McDonald's attempt to recast the scope of the rent reset process cooperation clause to encompass matters beyond those expressly identified in "the process described above" finds no support in the text of the Lease and contravenes fundamental tenets of New York contract law. No ambiguity exists where, as here, the contract language has "'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010).

Both documentary and testimonial evidence will show that Vanderbilt fully and timely complied with every step of the rent reset process described in the ORA: (1) Vanderbilt notified McDonald's of Vanderbilt's estimate of the FMV on May 10, 2018 – approximately five months in advance of the deadline provided in the ORA; (2) Vanderbilt notified McDonald's of its party-appointed appraiser, Thomas Tener, on April 15, 2019 – less than fifteen (15) days after McDonald's gave notice to Vanderbilt that the parties were unable to reach agreement on the FMV; (3) Tener prepared an appraisal of the Property, including an estimate of the FMV, dated April 15, 2019; (4) Tener made multiple attempts to schedule a meeting with McDonald's appraiser, Sharon Locatell; (5) Vanderbilt cooperated with McDonald's in designating Mark Nakleh as the third-party appraiser; and (6) Vanderbilt reached out to McDonald's multiple times in attempts to engage Nakleh beginning as early as April 2019 and continuing through October 2019, but was met with delays, excuses and ultimately refusal.

In short, the record will demonstrate that Vanderbilt not only satisfied but exceeded its obligations under the ORA's rent reset process, and that any failure to complete the appraisal lies squarely with McDonald's own noncooperation and its unilateral departure from the procedural framework mandated by the ORA.

**B.**     **McDonald's declaratory judgment claim that Vanderbilt failed to cooperate is nothing more than a disagreement with Tener's appraisal techniques**

In addition to McDonald's claim failing under the plain language of the ORA, Second Circuit case law holds that it is not the Court's role and responsibility to critique an appraiser's expert judgments, including evaluation of an appraiser's underlying assumptions. *Questrom v. Federated Dep't Stores, Inc.*, 41 F. Supp. 2d 294, 304 (S.D.N.Y. 1999), *aff'd* 2 F. App'x 81 (2d Cir. 2001) ("Questrom's first contention [] amounts to nothing more than disagreement with [the appraiser's] business judgment and therefore is insufficient to sustain the breach of contract claim"); *Id*. at 305 ("Questrom's complaint that [the appraiser] considered Miller's memorandum therefore at bottom is no more than a complaint about [the appraiser's] exercise of business judgment. Like his allegation about valuation techniques, this is an insufficient basis for his claim."); *see also Silverstein v. Xl Specialty Ins. Co.*, No. 15-CV-6818 (VEC), 2016 WL 3963129, at *5 (S.D.N.Y. July 21, 2016) (quoting *Questrom* for the proposition that "'[J]udicial review of [an appraiser's] determination is limited'" and declining to critique *Id*. at *6 "judgment calls within the purview of the appraiser.") Instead, both the ORA and the law provide that those issues are left to the appraisal process itself.

The ORA contains a procedure for the selection of a third appraiser and it is that procedure that was created to resolve disagreements between the party-appointed appraisers. The appraisal process becomes necessary "[s]hould Landlord and Tenant fail to reach an agreement in writing as to the FMV …," in which case "the FMV shall be estimated by two qualified MAI or SREA real estate appraisers."

The ORA requires the party-appointed appraisers to "estimate" the FMV in a "letter opinion of value" based on very general guidelines.  The ORA does not require a particular outcome or otherwise restrict the appraiser in its expert judgments. However, McDonald's "one

claim remaining to be tried" in the First Cause of Action in the Complaint for a declaratory judgment that Vanderbilt failed to cooperate in the FMV process is premised on subjective critiques of Tener's appraisal methods.

For example, in support of this claim, McDonald's points to, among other things, (1) Tener's determination that no adequate comparable leases were available; (2) whether Tener "adequately consider[ed] all encumbrances on the Property"; and (3) Tener's reliance on purportedly "inappropriate" construction cost data. Such critiques and disagreements with Tener's expert judgment and appraisal methodology are insufficient to sustain McDonald's declaratory judgment claim and are not for this Court to decide. Indeed, the ORA here provides a method for resolution of such disagreements over appraisal methodology: the appointment of the third appraiser. And here, "[a]ll that we may be concerned with is whether the appraisers acted honestly and in good faith, in the exercise of their wide discretion as to methods of procedure and sources of information. There [is] no showing otherwise." *Rice v. Ritz Assocs., Inc.*, 88 A.D.2d 513, 514 (1982), *aff'd*, 58 N.Y.2d 923 (1983) *citing Omaha Water Co. v. City of Omaha,* 162 F. 225, 232 (8th Cir. 1908), *aff'd*, 218 U.S. 180, 30 S. Ct. 615 (1910).

In sum, McDonald's claim that Vanderbilt failed to cooperate – premised on Vanderbilt purportedly issuing an appraisal that failed to take into account the McDonald's Lease as an encumbrance and apply "customary appraisal practices" – forces this Court to evaluate the underlying assumptions made by the appraisers and is therefore not cognizable. *See Rice,* 88 A.D.2d at 514 *citing Moore v. Eadie,* 245 N.Y. 166, 174 (1927) ("The trial judge may have believed the witnesses for the plaintiffs as to valuation, instead of the witnesses for the defendant; but the parties by the lease had submitted this question for final determination to appraisers, not to the courts. A difference of opinion due to a conflict in testimony did not give jurisdiction to a court

of equity to interfere with the award. As the appraisers had jurisdiction under our interpretation of the lease, their award must stand.")

### C. Vanderbilt relied on the advice of its counsel, Morris Missry, and appraiser, Thomas Tener, throughout the fair market valuation process

The advice of counsel defense can be successfully argued in cases where the defendant's alleged "bad faith" is brought into question. *See Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991) (noting that "reliance on the advice of counsel [is a] factor[] that support[s] a finding of good faith."). Under Second Circuit law, a party asserting the advice of counsel defense must show: (1) the client provided full and accurate disclosure of the issue to its attorney; (2) the attorney rendered some form of an opinion or advice on the particular issue; (3) the client relied on the advice provided; and (4) the client's reliance on the attorney's advice was reasonable and made in good faith. *See U.S. Commodity Futures Trading Com'n v. McCrudden*, No. CV 10–5567(DRH)(AKT), 2015 WL 5944229, at *26 (E.D.N.Y. Oct. 13, 2015) ("The Second Circuit has made clear that reliance upon advice of counsel is a defense if an individual 'made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith.'"); *U.S. v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *Mrs. United States National Pageant, Inc. v. Williams*, No. 18-CV-6587MWP, 2022 WL 4115305, at *5 (W.D.N.Y. Sept. 9, 2022).

#### i. Vanderbilt Provided Full and Accurate Disclosure of the Issues to Its Attorney

Vanderbilt's attorney, Morris Missry, was hired to advise Vanderbilt on the rent reset process proscribed under the ORA and the interpretation of those particular lease provisions.

On behalf of Vanderbilt, Missry engaged Tener, who provided two appraisals of the Property pursuant to the ORA: (1) the first appraisal, dated April 15, 2019, in which Tener

estimated the FMV at $1,348,000 per annum; and (2) the second appraisal, dated July 30, 2019, in which Tener again estimated the FMV at $1,348,000 per annum.

Documentary and testimonial evidence will show that Vanderbilt provided Missry with complete and accurate disclosure of the issues governing the appraisals. Both Missry and Tener understood, most importantly, that Tener's appraisal was intended for use in the determination of the FMV of the Property and was to be prepared in conformity with the ORA. Vanderbilt provided Missry with, among other things, copies of the McDonald's Lease, including the ORA.

### ii. Vanderbilt's Attorney Rendered Advice on the Issues

Missry, an incredibly experienced real estate attorney, was hired to advise Vanderbilt on the rent reset process set forth in the ORA and the interpretation of those particular lease provisions. Documentary and testimonial evidence will show that Missry rendered advice on these issues, including, in particular, his opinion regarding (1) the applicability of the Second Avenue Case; and (2) the role of the third appraiser in the ORA process. Missry advised Vanderbilt's appraiser, Tener, that the Second Avenue Case was not applicable and that Tener should not take the encumbrance of the McDonald's Lease into account when calculating the FMV. Missry further rendered advice with respect to the role of the third appraiser based on his interpretation of the Lease, including advising that McDonald's initial proposed engagement letter for the third appraiser was inconsistent with the terms of the Lease and that the Lease requires that the third appraiser issue his letter opinion of value without conferring with the two party-appointed appraisers.

### iii. Vanderbilt Relied on the Advice Provided by its Attorney

Vanderbilt relied on the advice of its attorney, Missry, and the appraiser retained by Missry, with respect to the April 15, 2019 appraisal. Documentary and testimonial evidence will show that

Missry advised Tener not to take the McDonald's lease into account in determining the FMV of the Property and Tener's April 15, 2019 appraisal reflects that advice.

The evidence will further show that Vanderbilt did not instruct Missry or Tener in any way with respect to the Second Avenue Case and rendered no opinion itself with regard to its applicability. Tener's instructions came from Vanderbilt's attorney, Missry, alone. *See*, *e.g.*, *LNC Invs., Inc. v. First Fid. Bank*, No. 92 CIV. 7584 MBM, 1997 WL 528283, at *22 (S.D.N.Y. Aug. 27, 1997) (finding each fiduciary established actual reliance on advice of counsel). The evidence will show that Rottenberg, Vanderbilt's principal, who is not an attorney or an appraiser, had no opinion or independent knowledge of the Second Avenue Case or its role in the appraisal here. Rather, he deferred at all times to the experts he retained to guide him through the ORA process – his trusted counsel, Missry, and the appraiser Missry had retained.

Vanderbilt also relied on the advice of its attorney with respect to interpreting the Lease's requirements on the role of the third appraiser. Missry interpreted the Lease and advised Tener and Vanderbilt of that interpretation. Vanderbilt itself, again, had no independent input or opinion on this issue and deferred to its attorney. Vanderbilt, in reliance upon and through its attorney, relayed that interpretation to McDonald's, and Missry's interpretation of the Lease informed and guided Vanderbilt's position in discussions with McDonald's.

### iv. Vanderbilt's Reliance on its Attorney's Advice was Reasonable and in Good Faith

Documentary and testimonial evidence will show that Vanderbilt's reliance on its attorney, Missry, was in good faith. Rottenberg, Vanderbilt's principal, is not an attorney and has no legal background. Nor is he an appraiser. Accordingly, Vanderbilt engaged Missry to guide Vanderbilt through the appraisal process set forth in the ORA, including interpretation of those specific lease provisions as well as analysis of caselaw and any other applicable legal doctrines. *See Gordon v.*

*Nationwide Mut. Ins. Co.*, 30 N.Y.2d 427, 433 (1972) (dismissing plaintiff's complaint for breach of good faith and holding that there was no showing of defendant's bad faith because defendant relied on its counsel's interpretation of the insurance policy and a relevant legal opinion).

McDonald's claims that (1) Vanderbilt's failure take into account the McDonald's Lease as an encumbrance in determining the FMV in Tener's April 15, 2019 appraisal; and (2) Vanderbilt's position on the role of the third appraiser, are evidence of Vanderbilt's bad faith.

First, the evidence will show that Vanderbilt took every step to ensure compliance with the ORA in hiring an experienced real estate attorney, the Chair of Wachtel Missry's Real Estate Department, to facilitate the appraisal process and Vanderbilt relied on his advice in good faith. *See*, *e.g., United States v. Scully*, 877 F.3d 464, 475 (2d Cir. 2017) (holding that defendants' advice of counsel defense should have been heard by the jury particularly because defendants' attorneys had experience as former federal prosecutors and worked on FDA compliance matters, which was the subject matter of defendants' alleged crimes); *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, 580 F. Supp. 634, 639 (S.D.N.Y. 1984) ("If words mean anything, it is possible in theory to visualize an infringer who infringed without meaning to do so; who did not set out with the willful, deliberate and fraudulent intent to infringe; who, on the contrary, before acting received professional and presumably expensive advice that the acts subsequently judicially held to be infringing were not infringing").

Second, testimonial and documentary evidence will further show that Vanderbilt reasonably relied on Tener and his appraisal expertise.  It was Tener who chose the land sales comparison approach, without input from either Vanderbilt or Vanderbilt's counsel.  It was also Tener who determined what analysis to conduct, which comparables to rely or not rely upon, and which assumptions were appropriate for his analysis.

Third, there has never been a determination by this Court (nor has McDonald's ever sought one) as to whether the ORA requires the Lease be taken into account as an encumbrance when estimating the FMV. The lease at issue in the Second Avenue Case specifically defined the "value of the demised premises to include the value of both the land and the buildings and improvements located on it." *936 Second Ave. L.P. v. Second Corp. Dev. Co. Inc.*, 10 N.Y.3d 628, 630 (2008). The New York Court of Appeals held that "[b]ecause the net lease does not exclude its consideration, we conclude that it must be taken into account in valuing the property." *Id*. In contrast, the ORA defines the FMV as "the price an average well informed tenant would pay and an average well informed landlord would accept, **exclusive of tenant improvements**, knowing all of the uses to which the property can be put" on the Property. (emphasis added.) Accordingly, a reasonable attorney analyzing this language and the Second Avenue Case on behalf of its client could (and did) conclude that the ORA's language specifically *excludes* consideration of the McDonald's lease (*i.e.*, a tenant improvement). McDonald's unilateral interpretation of the Second Avenue Case (and Vanderbilt's cooperative conduct in revising Tener's appraisal in accordance with that interpretation) is not evidence of any bad faith on Vanderbilt's part.

> **D.     At a minimum, Vanderbilt acted in good faith and substantially complied with the fair market valuation process and thus satisfied its duty to cooperate.**

McDonald's claim also fails because the evidence will show that Vanderbilt acted in good faith and substantially complied with the ORA.

"[S]ince there is a presumption that all parties act in good faith, the burden of proving a breach of the covenant of good faith and fair dealing is on the person asserting the absence of good faith.'" *First Niagara Bank N.A. v. Mortgage Builder Software, Inc.*, No. 13-CV-592S, 2016 WL 2962817, at *6 (W.D.N.Y. May 22, 2016) (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F. 3d 89, 98 (2d Cir. 2007)). In meeting its burden, McDonald's must show an

intent by Vanderbilt to harm McDonald's or a reckless disregard of McDonald's rights under the ORA. *See Paul v. Bank of Am. Corp.*, No. 09-CV-1932 (ENV) (JMA), 2011 WL 684083, at *6 (E.D.N.Y. Feb. 16, 2011). Bad faith behavior "requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract." *Gordon v. Nationwide Mut. Ins. Co.*, 30 N.Y.2d 427, 437 (1972); *see also Cohen v. New York Prop. Ins. Underwriting Ass'n*, 65 A.D.2d 71 (1st Dep't 1978) (Bad faith exists "'…where the wrong complained of is morally culpable, or is actuated by evil and reprehensible motives, not only to punish the defendant but to deter him, as well as others who might otherwise be so prompted, from indulging in similar conduct in the future'").

Vanderbilt's duty to cooperate is "satisfied by substantial compliance" and where a delay in compliance is neither lengthy nor willful, and is accompanied by a satisfactory explanation, a finding of bad faith is inappropriate. *See also V.M.V. Mgt. Co. Inc. v. Peerless Ins.,* 15 A.D.3d 647, 647 (2d Dep't 2005).

As noted herein, McDonald's claims that Vanderbilt "failed to cooperate" because (1) Vanderbilt's appraiser did not apply the Second Avenue Case in his determination of the FMV; (2) Vanderbilt's appraiser did not perform an appraisal that McDonald's believes applies the right techniques; and (3) Vanderbilt's attorney did not properly interpret the role of the third appraiser. Testimonial and documentary evidence will show that McDonald's claims are false and, at the very least, no action was taken in bad faith.

That aside, the testimonial and documentary evidence will show (and McDonald's cannot dispute) that Vanderbilt acted in good faith and substantially complied with the FMV process set forth in the ORA by, among other things, the following conduct: (1) Vanderbilt notified McDonald's of Vanderbilt's estimate of the FMV on May 10, 2018 – more than one hundred and

eighty (180) days prior to the expiration of the primary term of the lease; (2) Vanderbilt notified McDonald's of its party-appointed appraiser, Tener, on April 15, 2019 – less than fifteen (15) days after McDonald's gave notice to Vanderbilt that the parties were unable to reach agreement on the FMV; (3) Tener prepared an appraisal of the Property, including an estimate of the FMV, dated April 15, 2019; (4) Tener made multiple attempts to schedule a meeting with McDonald's appraiser, Sharon Locatell; (5) Vanderbilt cooperated with McDonald's in designating Mark Nakleh as the third appraiser; (6) in an effort to move the appraisal process forward and resolve an ongoing dispute between the parties, Vanderbilt agreed to and did issue a revised appraisal taking into account the McDonald's lease – the July 30, 2019 appraisal; and (7) Vanderbilt reached out to McDonald's multiple times in attempts to engage Nakleh in accordance with both the ORA and the September 2019 Letter Agreement (but was met with delays, excuses and refusals). This conduct is the opposite of bad faith. Indeed, it was McDonald's – not Vanderbilt – that stopped responding and prevented the parties from engaging Nakleh by the deadline set forth in the September 2019 Letter Agreement.

Further, the evidence will show that Vanderbilt's positions on Second Avenue applicability and the role of the third appraiser were accompanied by reasonable, good faith explanations including (1) Vanderbilt relied on the advice of its attorney, Missry; and (2) at *best*, the Lease is ambiguous with respect to the role of the third-appraiser and whether or not collaboration is allowed, and when and to what extent.

Additionally, even if McDonald's is correct that the Second Avenue Case and the ORA require Vanderbilt's appraiser to consider the encumbrance of the McDonald's Lease, this does not amount to any failure to cooperate under the terms of the Lease. As described in Section II.A, the failure to cooperate pertains specifically to preventing the completion of the "process described

above," which includes only: (1) Vanderbilt's notification to McDonald's of its FMV estimate; (2) determination of whether the parties are able to reach agreement on the FMV; (3) appointment of the parties' respective appraisers if the parties are unable to agree on the FMV; (4) issuance of the appraisers' letter opinions of value; (5) the appointment of a third appraiser in the event the parties' appraisals differ by more than fifteen percent (15%); (6) the issuance of an opinion of value by that third appraiser; (7) final determination of the FMV either by the majority of the appraisers, or, if they cannot agree, by averaging the three FMV estimates. McDonald's cannot prove that Vanderbilt failed to comply with any of these deadlines of the ORA. Indeed, it is McDonald's who failed respond to Vanderbilt's May 2018 letter for almost a year, delaying the rent reset process, and refused to engage the third appraiser, thereby preventing the completion of the FMV process.

McDonald's claims are entirely predicated upon McDonald's dislike of Tener's appraisal methodology and results, and McDonald's unilateral interpretation of the ORA and the Second Avenue Case. These disagreements have nothing to do with the procedural mechanisms required in the process mandated by the ORA (and which are subject to the cooperation clause). McDonald's then decided that, because it disagreed with Vanderbilt's appraisal, it could unilaterally determine that it no longer needed to cooperate in the rent re-set process. Simply put, McDonald's directly failed to cooperate by refusing to complete the rent reset process, whereas the proof at trial will not come close to showing that Vanderbilt failed to cooperate in "the process described above" in the first three paragraphs of Section B of the ORA.

Lacking any actual evidence of a failure to cooperate, McDonald's will also attempt to mischaracterize Vanderbilt's zoning efforts as evidence of Vanderbilt's bad faith. This is a red herring. Section 31.1 of the Vanderbilt Lease specifically states that, "as a material inducement for

[M.M.B.] to enter into the [ground lease with Vanderbilt]," Vanderbilt must commence the process of rezoning and "use best efforts to pursue the completion of rezoning of the Property." The Vanderbilt Lease explicitly acknowledges McDonald's as an "Existing Tenant" with the right to stay on the Property until expiration or termination of its lease. In fact, the Lease also expressly contemplates that Vanderbilt will perform all of the obligations of landlord under the McDonald's Lease, including undertaking the rent reset process with McDonald's. Specifically, Section 19 of the Lease requires Vanderbilt to "keep Landlord apprised of its negotiations, and promptly provide copies of all correspondence with, [McDonald's] in connection with [Vanderbilt's] and [McDonald's] determination of the fair market value for each option period under the [McDonald's] Lease." Further, the Lease explicitly provides that, "[i]n the event of any conflict between the [McDonald's] Lease and this Lease, the [McDonald's] Lease shall in all respects control."

Yet, McDonald's alleges that Vanderbilt's rezoning efforts somehow support the contention that Vanderbilt was attempting to use the rent re-set process to force McDonald's to vacate the Property. There is not a shred of evidence to support this contention. As of this trial, the rezoning of the property has long been completed; yet, McDonald's is still in possession of the Premises, having exercised its renewal options. Vanderbilt has not taken any steps to terminate the McDonald's Lease (such as attempting to find grounds for default under the Lease). Instead, McDonald's has directly benefited financially from this litigation, paying the minimum amount of rent due under the McDonald's Lease for the past six years, even though McDonald's own valuation of the Property would require McDonald's to have paid hundreds of thousands of dollars in additional rent to Vanderbilt while this action was pending. Thus, McDonald's attempts to paint Vanderbilt's compliance with its contractual obligations to M.M.B. as evidence of bad faith are

not only unpersuasive and lack evidentiary support, but McDonald's failure to comply with its contractual obligations resulted in a direct financial benefit to McDonald's.

In sum, at the very minimum, Vanderbilt acted in good faith and has substantially complied with the FMV process set forth in the ORA. Therefore, McDonald's claim fails.

### E. McDonald's claims are barred by its own bad faith conduct and prior breach of its obligations.

Under New York law, a party that has materially breached a contract is generally barred from seeking relief for breach of contract by the other party. *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 414 (S.D.N.Y. 2004). A material breach is one that goes to the root of the agreement and is so substantial that it defeats the object of the parties in making the contract. *Id.* at 417. When a party commits a material breach, the other party is relieved or excused from its further performance obligations. *Id.*

While McDonald's claim is for a declaratory judgment, it is contingent on a finding that Vanderbilt breached the ORA by failing to cooperate in the rent re-set process. However, McDonald's claim ignores the salient fact that it was McDonald's – not Vanderbilt – that prevented the appraisal process from being completed. McDonald's materially breached the ORA and September 2019 Letter Agreement when it stopped responding to Vanderbilt and prevented the parties from engaging Nakleh by the deadline set forth in the September 2019 Letter Agreement. Thus, McDonald's should be precluded from the relief it seeks due to its own bad faith conduct and material breaches of the ORA. *See EXRP 14 Holdings LLC v. LS-14 Ave LLC,* 228 A.D.3d 498, 499 (1st Dep't 2024); *DeCapua v. Dine-A-Mate, Inc.*, 292 A.D.2d 489, 491 (2d Dep't 2002) ("The plaintiff was not entitled to enforce the restrictive covenant in the contract since he breached the contract first by failing to make royalty payments.").

**F.     McDonald's waived its claims that Vanderbilt failed to cooperate by entering into the letter agreement in September 2019.**

A waiver is the voluntary abandonment or relinquishment of a known right. *Madison Ave. Leasehold, LLC v. Madison Bentley Associates LLC,* , 5 (1st Dep't 2006); *see, e.g., 61 E. 72nd St. Corp. v. Zimberg*, 161 A.D.2d 542, 543 (1st Dep't 1990) (holding that plaintiff "waived the right to proceed on the basis of continuous default, notwithstanding the non-waiver clause of the lease.") "Under New York law, parties may modify a contract by another agreement, by course of performance, or by conduct amounting to waiver or estoppel." *Kaplan v. Old Mut. PLC*, 526 Fed.Appx. 70, 72 (2d Cir. 2013) (internal citations and quotations omitted). Written amendments or modifications to a contract's terms are routinely enforced. *Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A.*, 247 F. Supp. 2d 352, 362 (S.D.N.Y. 2002) (enforcing the parties' letter agreement modifying the lease terms); *Lawrence M. Kamhi, M.D., P.C. v. East Coast Pain Management, P.C.*, 117 A.D.3d 726, 727 (2d Dep't 2019) (enforcing the modified terms of the parties' agreement); *British Am. Dev. Corp. v. Schodack Exit Ten, LLC*, 83 A.D.3d 1247, 1249 (3d Dep't 2011) (enforcing the parties' operating agreement as modified by promissory notes).

Section 19.C of the McDonald's Lease provides "[n]o [] alterations or modifications of this Lease or any agreements in connection with this Lease shall be valid unless in writing duly executed by both Landlord and Tenant."

The original deadline set forth in the ORA for completion of the appraisal process was August 7, 2019 (120 days after the expiration of the primary term). In the months leading up to this deadline, the parties continued to discuss their disagreements over the appraisal process and McDonald's objection to Tener's April 15, 2019 appraisal. Significantly, on June 19, 2019,  the parties met at the offices of Wachtell Missry to discuss their respective appraisals and McDonald's disagreements with how Tener had performed his appraisal and how Missry interpreted the role of

the third appraiser.  Then, just two weeks before the original ORA deadline, on July 23, 2019, McDonald's sent Vanderbilt a letter (1) objecting to Tener's valuation approach and failure to consider the McDonald's Lease; (2) outlining the parties' disagreement regarding the role of third appraiser; and (3) demanding that Tener redo his appraisal.

Despite these disagreements and the known August 7, 2019 deadline, McDonald's and Vanderbilt agreed that Tener would prepare a revised appraisal, which he did on July 30, 2019, and which again estimated the FMV at $1,348,000 per annum. Locatell also prepared another appraisal, dated September 20, 2019, and she again estimated the FMV at $350,000 per annum.

Critically, on September 16, 2019 (more than one month after the original deadline in the ORA expired), the parties executed the September 2019 Letter Agreement identifying Marc Nakleh as the agreed-upon third-party appraiser and providing that the parties agree to engage Nakleh within 21 days of the agreement. When McDonald's executed the September 2019 Letter Agreement, it was fully aware that the original ORA deadline had expired and knowingly agreed to extend that deadline – waiving any claims that Vanderbilt's alleged conduct caused the parties to be unable to complete the rent reset process by August 7, 2019. *See In re Best Film & Video Corp.*, 46 B.R. 861, 872 (Bankr. E.D.N.Y. 1985) ("The only breach D.C. Films waived was the failure to open on July 15, 1983. It waived that breach when it amended its distribution agreement with Best Film with full knowledge that the play date had come and gone and the film had not been opened for exhibition.")

Dated: New York, New York  
      January 23, 2026

**AKERMAN LLP**

*s/ Benjamin R. Joelson*  
Joshua D. Bernstein  
Benjamin R. Joelson  
Kathleen M. Prystowsky  
Tara L. Raghavan

Alexandra N. Getsos
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
(212) 880-3800
Joshua.Bernstein@akerman.com
Benjamin.Joelson@akerman.com
Kathleen.Prystowsky@akerman.com
Tara.Raghavan@akerman.com
Alexandra.getsos@akerman.com

*Attorneys for Defendant*